David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070

TUCKER ELLIS LLP
David J. Steele, CA Bar No. 209797
david.steele@tuckerellis.com
Howard A. Kroll, CA Bar No. 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen, CA Bar No. 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Facebook, Inc., Instagram, LLC and
WhatsApp Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation, | Case No. |
| | **COMPLAINT FOR CYBERSQUATTING; TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; AND DILUTION** |
| Plaintiffs, | |
| v. | **DEMAND FOR JURY TRIAL** |
| Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation, | |
| Defendants. | |

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Plaintiffs Facebook, Inc. ("Facebook"), Instagram, LLC ("Instagram"), and WhatsApp Inc. ("WhatsApp") (collectively "Plaintiffs") by and through their attorneys, Tucker Ellis LLP, file their complaint against Defendants Namecheap, Inc. ("Namecheap), and Whoisguard, Inc. ("Whoisguard") (collectively "Defendants") for injunctive relief and damages.

## I.   INTRODUCTION

1.     Cybercrime is highly dependent on Internet domain names, which are registered and used to send spear-phishing emails, operate malware, and engage in other types of online abuse. According to the Internet Corporation of Assigned Names and Numbers ("ICANN"), as of July 31, 2019, there were over 800,000 resolving domain names used for phishing, malware, spam, and botnets.

2.     Cybercriminals often rely on proxy services to hide their ownership and control of malicious domains from the public. Proxy services conceal the domain name registrant's identity normally listed on publicly available domain name registration records. These proxy services, like the services offered by Defendants, are increasingly used by cybercriminals and spammers as they cycle through domain names in order to conceal their identities and evade detection.

3.     Namecheap is an ICANN-accredited domain name registrar.

4.     Whoisguard, which is Namecheap's alter ego, provides a proxy service to Namecheap's customers (Whoisguard and Namecheap refer to this service as "WhoisGuard" with a capital "G").

5.     Whoisguard registers the domain name (as the registrant) and licenses the domain name to the individual or entity who uses the domain name (the "Licensee").

6.     Whoisguard is listed as the registrant for domain names which use the WhoisGuard service on publicly available domain name registration records.

7.     Countless domain names registered by Whoisguard and licensed to Licensee(s) are used in connection with online abuse, including phishing, malware, spam and trademark infringement.

8.     Despite notice, Namecheap has repeatedly failed to take "… steps to investigate and respond appropriately to any reports of abuse" as required by the ICANN Registrar Accreditation Agreement ("RAA").

9.     Even when Whoisguard has received reasonable evidence of actionable harm caused by one of the domain names Whoisguard registered, Whoisguard has failed to provide the identity or contact information of its Licensee(s) to the victim of that harm.

10.     According to the Internet anti-spam organization, Spamhaus.org, Namecheap was responsible for more fraudulent domain registrations than the next three registrars on the "Top 20" list combined. In Spamhaus' third-quarter 2019 report, it explained: "The US-based domain registrar 'Namecheap' continued to be the favorite place for malware authors to register their botnet C&C domains." In Spamhaus' 2019 overall report, it stated: "Namecheap was (again) the most abused registrar: Around 25% of all botnet C&C domain names were registered through this US-based registrar. It's the third consecutive year that Namecheap has held the pole position in our annual ranking of most abused domain registrars."

11.     In 2018, Internet security expert Brian Krebs, who writes extensively on cybersecurity matters, reported on a so-called sextortion email scam that was making its way around the Internet. Krebs reviewed the domain names used in the scams and noted: "most were registered at the end of May 2018 through domain registrar Namecheap."

12.     One such example Krebs discussed in his 2018 report involved uscourtsgov.com and numerous other domain names that were used in connection with a ransomware scam that was perpetrated by sending out spam emails. These domain names were registered through Namecheap.

13.     Whoisguard and its alter ego, Namecheap, has and continues to register, as the registrant, domain names used for malicious activity, including phishing and online fraud. Many of these domain names infringed and continue to infringe on

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

COMPLAINT

1    Plaintiffs' trademarks.

2        14.    Whoisguard and Namecheap, as its alter ego, with a bad faith intent to

3    profit from Plaintiffs' trademarks, registered (as the registrant), trafficked in (as the

4    licensor), and/or used domain names that are identical or confusingly similar to

5    Plaintiffs' trademarks in violation of 15 U.S.C. § 1125.

6        15.    Namecheap and Whoisguard agreed in the Domain Name Registration

7    Agreement that, "if [Whoisguard] license[s] the use of the domain name registered to

8    [Whoisguard] to a third party, [Whoisguard] nonetheless remain[s] the domain name

9    holder of record, and remain[s] responsible for all obligations under this Agreement,

10   including but not limited to … ensuring non-infringement of any third party intellectual

11   property rights or other rights."

12       16.    Namecheap and Whoisguard also agreed that Whoisguard, as the

13   Registered Name Holder, shall accept liability for harm caused by wrongful use of the

14   Registered Name, unless it discloses the current contact information provided by the

15   licensee and the identity of the licensee.

16       17.    Plaintiffs have sent multiple notices to Whoisguard providing reasonable

17   evidence of actionable harm and requesting that Whoisguard disclose the identity and

18   current contact information for the relevant Whoisguard's Licensees.

19       18.    Whoisguard failed to disclose the identity and current contact information

20   for the Licensees and, therefore, Whoisguard and Namecheap, as its alter ego, have

21   agreed to accept liability for the harm caused by the use of the domain names.

22       19.    Plaintiffs seek damages and injunctive relief against Defendants to stop

23   their ongoing unlawful and harmful conduct, pursuant to the Lanham Act and the Anti-

24   Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125.

25   **II.    THE PARTIES**

26       20.    Plaintiff Facebook, Inc. is a Delaware corporation with its principal place

27   of business in Menlo Park, California.

28       21.    Plaintiff Instagram, LLC is a Delaware limited liability company with its

principal place of business in Menlo Park, California.

22.     Plaintiff WhatsApp Inc. is a Delaware corporation with its principal place of business in Menlo Park, California.

23.     Defendant Namecheap, Inc. is a Delaware corporation with its principal place of business in Phoenix, Arizona.

24.     Defendant Whoisguard, Inc. is a Republic of Panama corporation with its principal place of business in Phoenix, Arizona.

25.     At all times material to this action, Namecheap and Whoisguard have been and continue to be instrumentalities and alter egos of each other. Namecheap is also the direct participant in the actions of Whoisguard as alleged in this Complaint.

## III.     JURISDICTION AND VENUE

26.     The Court has federal question jurisdiction over the federal causes of action alleged in this complaint pursuant to 28 U.S.C. § 1331.

27.     The Court has general jurisdiction over Namecheap because its principal place of business is in Phoenix, Arizona. Namecheap further operates its datacenters in Arizona, both its headquarters and employees are in Arizona, and Namecheap specifies Arizona in the forum selection clauses in its contracts.

28.     The Court has personal jurisdiction over Whoisguard because the business of Whoisguard is to provide services to Namecheap in Arizona. Further, Whoisguard's principal place of business is in Phoenix, Arizona. Whoisguard further operates its datacenters in Arizona, both its headquarters and employees are in Arizona, and Whoisguard specifies Arizona in the forum selection clauses in its contracts.

29.     Namecheap and Whoisguard have entered into one or more contracts for domain name registration services and proxy services used in connection with Defendants' unlawful scheme; a material term of these contracts was Defendants' agreement to submit to the Court's jurisdiction. A copy of Namecheap's Domain Name Registration Agreement (including the referenced agreements which form part of the agreement) is attached to this Complaint as Exhibit 1. A copy of Whoisguard's proxy

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

service agreement, titled Namecheap WHOIS Proxy Agreement ("Whoisguard's Proxy Agreement") is attached to this Complaint as Exhibit 2.

30.     Venue is proper with respect to each of the Defendants pursuant to 28 U.S.C. §1391(b)(1) because Defendants reside in this judicial district. Venue is also proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged occurred in this district. In the alternative, venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(3) because Defendants are subject to the Court's personal jurisdiction.

## IV.    FACTUAL ALLEGATIONS

### A.     Background on Plaintiffs and their Trademarks

31.     Amongst other products and services, Facebook offers a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices.

32.     Facebook owns the exclusive rights to numerous trademarks and service marks to provide its online services, including the distinctive FACEBOOK wordmark and stylized mark, having used the marks in connection with its services since at least as early as 2004.

33.     In addition to its extensive common law rights, Facebook owns numerous United States registrations for its FACEBOOK marks including, but not limited to:

> a.  United States Registration Number 3,122,052; and

> b.  United States Registration Number 3,881,770.

34.     Copies of these registration certificates are attached to this Complaint as Exhibit 3. Facebook's common law and registered trademarks are collectively referred to as the "Facebook Trademarks."

35.     Facebook's use of the Facebook Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Facebook has made, and continues to make, a substantial investment of time, effort, and expense in the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

promotion of Facebook and the Facebook Trademarks. As a result of Facebook's efforts and use, the Facebook Trademarks are famous (and have been famous since at least as early as 2011) as they are recognized within the US and around the world as signifying high quality, authentic goods and services provided by Facebook.

36.     Facebook owns the exclusive rights to the distinctive FB wordmark, having used the marks in connection with its services since at least as early as 2014.

37.     In addition to its extensive common law rights, Facebook owns numerous United States registrations for its FB marks including, but not limited to:

    a.   United States Registration Number 4,659,777;

    b.   United States Registration Number 4,764,764;

    c.   United States Registration Number 4,782,234; and

    d.   United States Registration Number 4,782,235

38.     Copies of these registration certificates are attached to this Complaint as Exhibit 4. Facebook's common law and registered trademarks are collectively referred to as the "FB Trademarks."

39.     Facebook's use of the FB Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Facebook has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Facebook and the FB Trademarks.

40.     Instagram offers a photo and video sharing and editing service, mobile application, and social network. Instagram users can choose to share their photos and videos with their followers online.

41.     Instagram owns the exclusive rights to the distinctive INSTAGRAM wordmark and stylized mark, having used the marks in connection with its goods and services since at least as early as 2010.

42.     In addition to its extensive common law rights, Instagram owns numerous United States registrations for the INSTAGRAM marks including, but not limited to:

    a.   United States Registration Number 4,795,634;

b. United States Registration Number 4,146,057;

c. United States Registration Number 4,756,754;

d. United States Registration Number 5,566,030;

e. United States Registration Number 4,170,675;

f. United States Registration Number 4,856,047;

g. United States Registration Number 4,822,600;

h. United States Registration Number 4,827,509;

i. United States Registration Number 4,863,595; and

j. United States Registration Number 5,019,151.

43.    Copies of these registration certificates are attached to this Complaint as Exhibit 5. Instagram's common law and registered trademarks are collectively referred to as the "Instagram Trademarks."

44.    Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Trademarks. As a result of Instagram's efforts and use, the Instagram Trademarks are famous (and have been famous since at least as early as 2014) as they are recognized within the US and around the world as signifying high quality, authentic goods and services provided by Instagram.

45.    WhatsApp offers a private messaging service provided both for mobile devices and desktop computers.

46.    WhatsApp owns the exclusive rights to several trademark and service marks including the distinctive WHATSAPP trademark, having used the mark in connection with its goods and services since at least as early as 2009.

47.    In addition to its extensive common law rights, WhatsApp owns numerous United States registrations for the WHATSAPP mark including, but not limited to:

a. United States Registration Number 3,939,463;

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

b. United States Registration Number 4,083,272;

c. United States Registration Number 5,492,738; and

d. United States Registration Number 5,520,108.

48. Copies of these registration certificates are attached to this Complaint as Exhibit 6. WhatsApp's common law and registered trademarks are collectively referred to as the "WhatsApp Trademarks."

49. WhatsApp's use of the WhatsApp Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. WhatsApp has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of WhatsApp and the WhatsApp Trademarks. As a result of WhatsApp's efforts and use, the WhatsApp Trademarks are inextricably linked with the products and services offered by WhatsApp.

50. The Facebook Trademarks, FB Trademarks, Instagram Trademarks and WhatsApp Trademarks are collectively referred to as "Plaintiffs' Trademarks."

**B. Whoisguard is the Registrant of the Domain Names**

51. Namecheap is accredited by ICANN and subject to ICANN's RAA. A copy of the RAA is attached to this Complaint as Exhibit 7.

52. Whoisguard provides a domain registration proxy service: Whoisguard registers a domain name in its own name and, as the registrant and owner of the domain name, licenses the domain name to one of its Licensees for that Licensee's use.

53. Whoisguard's Proxy Agreement provides, "[b]y subscribing to the Namecheap WHOIS Privacy Protection Services . . . you [the Licensee] are engaging Whoisguard to administer and register each domain name controlled by you . . . in the name of WhoisGuard." *See* Exhibit 2.

54. Namecheap explains on its website that, "[t]he only potential drawback of domain privacy comes down to ownership. Technically the domain name registrant owns the website (in the eyes of ICANN), not you." A copy of Namecheap's webpage with this text highlighted is attached as Exhibit 8.

55.     As the registrant of the registered domain names, Whoisguard's contact information is listed as that of the registrant in the WHOIS directory. The WHOIS directory contains important information about domain names, including the identity and contact information for the registrant of the domain name.

56.     Whoisguard agreed, when it registered the domain names pursuant to the domain name registration agreement, that "if [Whoisguard] license[s] the use of the domain name registered to [Whoisguard] to a third party, [Whoisguard] nonetheless remain[s] the domain name holder of record, and remain[s] responsible for all obligations under this Agreement … ." *See* Exhibit 1.

**C.      Namecheap is Responsible for the Actions of Whoisguard, its Alter Ego**

57.     At all times material to this action, Whoisguard was the alter ego of Namecheap. The acts of Whoisguard were in the scope of such relationship. In doing the acts and failing to act as alleged in this Complaint, each Defendant acted with the knowledge, permission, and the consent of each of the other Defendant, and each Defendant aided and abetted the other Defendant in the acts or omissions alleged in this Complaint.

58.     Whoisguard is not a separate autonomous entity from Namecheap.

59.     Namecheap controls certain business operations of Whoisguard. For example, Namecheap describes the service as "WhoisGuard by Namecheap." An annotated screen capture of Namecheap's webpage is attached as Exhibit 9. Whoisguard provides a domain name registration proxy service on behalf of Namecheap.

60.     The WhoisGuard service is integrated within Namecheap's own website, and Namecheap's customers obtain the WhoisGuard service directly from their Namecheap user account. A copy of Namecheap's support page for the question: "How do I enable WhoisGuard for my domain?" is attached to this Complaint as Exhibit 10.

61.     There is no charge for the WhoisGuard service. Namecheap simply provides Namecheap's WhoisGuard service to its customers as a part of Namecheap's

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1  regular service. *See* Exhibit 9.

2       62.    In the past when Whoisguard was served with reasonable evidence of

3  actionable harm and a request for Whoisguard's Licensees' information, Namecheap,

4  instead of Whoisguard, provided the responsive information concerning the Whoisguard

5  Licensee to the noticing party. As discussed further in this Complaint, Namecheap and

6  Whoisguard now fail to disclose the responsive information to the noticing party.

7       63.    On information and belief, when Whoisguard is served with a subpoena

8  seeking Whoisguard's Licensees' information, Namecheap, instead of Whoisguard,

9  responds to and provides the responsive information concerning Whoisguard's

10  Licensees.

11      64.    When administrative domain name complaints are filed against

12  Whoisguard's Licensees using the WhoisGuard service, Namecheap, instead of

13  Whoisguard, discloses the name of Whoisguard's Licensees to the dispute provider's

14  administrator.

15      65.    According to historic WHOIS information for whoisguard.com

16  (Whoisguard's domain name), Namecheap owned the domain name in the past, and

17  Namecheap was also listed as the technical contact. Today the WHOIS information for

18  whoisguard.com is hidden by the WhoisGuard proxy service.

19      66.    On information and belief, Namecheap still operates the whoisguard.com

20  domain name and controls the content available on the website available at

21  whoisguard.com.

22      67.    Namecheap and Whoisguard are instrumentalities and alter egos of each

23  other. In view of the facts above, observing the separate corporate form of Whoisguard

24  from Namecheap would sanction a fraud and promote injustice.

25      68.    In addition, Namecheap is liable for the actions of Whoisguard, as alleged

26  in this Complaint, under the theory of direct participant liability.

27

28

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**D.      Defendants Registered, Trafficked In, and/or Used the Infringing Domain Names**

69.      Whoisguard registered, trafficked in, or used at least forty-five domain names that are identical or confusingly similar to the Facebook Trademarks, FB Trademarks, Instagram Trademarks, and WhatsApp Trademarks (the "Infringing Domain Names"). For example:

70.      Whoisguard registered, trafficked in, or used at least the following Infringing Domain Names that are identical or confusingly similar to the Facebook Trademarks:

xn--faceboo-jhb.net (facebоok.net)

facebo0k-login.com

facebok-securty.com

facebokloginpage.site

facebooksupport.email

howtohackfacebook-account.com

facebookvideodownload.online

facebookvideodownloaderonline.com

faceboookmail.online

facebokloginpage.space

facebokproblemsolution.com

facebokprofile.com

71.      Whoisguard registered, trafficked in, or used at least the following Infringing Domain Names that are identical or confusingly similar to the FB Trademarks:

fbpokerforte.com

fbhelp.me

72.      Whoisguard registered, trafficked in, or used at least the following Infringing Domain Names that are identical or confusingly similar to the Instagram

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Trademarks:

xn--nstaram-yya574a.com (ìnstagram.com)

lnstagrambusinesshelp.com

weblogin-instagram.com

instagramlogin.org

instagramlogin.site

instagramverify.services

securedlogin-lnstagram.com

security-instagram.email

verified-lnstagram.com

inst4gram.com

instagram-download.pictures

instagram-spy.online

instagramspy.info

hackanyinstagram.com

hackinganinstagram.com

cdninstagram.download

cryptoinstagram.com

73.    Whoisguard registered, trafficked in, or used at least the following Infringing Domain Names that are identical or confusingly similar to the WhatsApp Trademarks:

whatapp.services

joinwhatsappgroup.online

backupmywhatsapp.online

download-whatsapp.online

whatsappdownload.site

whatsappsex.club

whatsapptricks.club

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

whatzapphacks.xyz

freewhatsappspy.com

freewhatsapptracker.com

ggirlsnumberwhatsapp.online

whatsapp-sohbet.xyz

whatsapponline.bid

whatsapp-sohbet.club

74.    Whoisguard is or was the registrant for each of the Infringing Domain Names. A copy of the WHOIS entries for each of the Infringing Domain Names is attached to this Complaint as Exhibit 11.

75.    Whoisguard registered each of the Infringing Domain Names for one or more of Whoisguard's Licensees.

76.    Whoisguard trafficked in the Infringing Domain Names by licensing the Infringing Domain Names to its Licensees.

77.    Plaintiffs' Facebook Trademarks and Instagram Trademarks were distinctive and famous when Whoisguard registered, trafficked in, or used the Infringing Domain Names.

78.    Plaintiffs' FB Trademarks and WhatsApp Trademarks were distinctive when Whoisguard registered, trafficked in, or used the Infringing Domain Names.

79.    The Licensees used the Infringing Domain Names.

**E.    Defendants' Failure to Disclose Contact Information**

80.    Under the RAA, which governs Namecheap's permission under ICANN to act as a registrar, and by incorporation Namecheap's Domain Name Registration Agreement, Namecheap and Whoisguard agreed that Whoisguard, as the Registered Name Holder, "shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing [Whoisguard] reasonable evidence of actionable harm." Exhibit 1 and Exhibit 7.

81.     Namecheap's Domain Name Registration Agreement and Whoisguard's Proxy Agreement anticipate that they will be sued for misuse of domain names, including for trademark infringement and cybersquatting, and they require parties to their respective agreements to indemnify them against such claims. *See* Exhibits 1-2.

82.     Namecheap's Domain Name Registration Agreement states that it will cancel its proxy service if a domain name is alleged to infringe on a third party's trademark or if it receives valid evidence of trademark infringement. *See* Exhibit 1.

83.     Between October 2, 2018 and February 7, 2020, Plaintiffs' authorized representatives sent at least the following notices to Whoisguard with evidence that each of the Infringing Domain Names caused Plaintiffs actionable harm and with a request that Whoisguard disclose the identities of the registrant(s) ("Plaintiffs' Notices"):

a.     On October 2, 2018, Plaintiffs' authorized representatives sent notice regarding fbhelp.me.

b.     On November 1, 2018, Plaintiffs' authorized representatives sent notice regarding whatsapp-sohbet.xyz; whatsapponline.bid; and whatsapp-sohbet.club

c.     On January 23, 2019, Plaintiffs' authorized representatives sent notice regarding: xn--faceboo-jhb.net (facebоок.net).

d.     On May 5, 2019, Plaintiffs' authorized representatives sent notice regarding: facebo0k-login.com.

e.     On May 30, 2019, Plaintiffs' authorized representatives sent notice regarding instagram-download.pictures and facebokprofile.com.

f.     On June 7, 2019, Plaintiffs' authorized representatives sent notice regarding whatapp.services; whatsappsex.club; whatsapptricks.club; and cryptoinstagram.com.

g.     On June 13, 2019, Plaintiffs' authorized representatives sent notice regarding inst4gram.com.

h.     On June 14, 2019, Plaintiffs' authorized representatives sent notice

regarding facebok-securty.com.

i.      On June 29, 2019, Plaintiffs' authorized representatives sent notice regarding facebooksupport.email.

j.      On July 15, 2019, Plaintiffs' authorized representatives sent notice regarding facebokproblemsolution.com; facebookvideodownloaderonline.com; freewhatsappspy.com.

k.      On July 15, 2019, Plaintiffs' authorized representatives sent notice regarding freewhatsapptracker.com; hackanyinstagram.com; and hackinganinstagram.com.

l.      On July 18, 2019, Plaintiffs' authorized representatives sent notice regarding howtohackfacebook-account.com; securedlogin-lnstagram.com; verified-lnstagram.com; and weblogin-instagram.com.

m.     On July 22, 2019, Plaintiffs' authorized representatives sent notice regarding cdninstagram.download; security-instagram.email; instagramspy.info; backupmywhatsapp.online; and download-whatsapp.online.

n.      On July 25, 2019, Plaintiffs' authorized representatives sent notice regarding facebookvideodownload.online; faceboookmail.online; ggirlsnumberwhatsapp.online; instagram-spy.online; and joinwhatsappgroup.online.

o.      On July 29, 2019, Plaintiffs' authorized representatives sent notice including instagramlogin.org; instagramverify.services; facebokloginpage.site; instagramlogin.site; whatsappdownload.site; facebokloginpage.space; and whatzapphacks.xyz.

p.      On September 14, 2019, Plaintiffs' authorized representatives sent notice regarding xn--nstaram-yya574a.com (ìnstagram.com).

q.      On February 7, 2020, Plaintiffs' authorized representatives sent notice regarding fbpokerforte.com and lnstagrambusinesshelp.com.

84.     After receipt of Plaintiffs' Notices, which presented Whoisguard with

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

reasonable evidence of actionable harm by Plaintiffs or their authorized representatives that one or more domain names infringed or cybersquatted on Plaintiffs' Trademarks, Whoisguard failed to disclose the identity or any contact information of the Licensee(s) of these domain names.

**F.    Defendants' Bad Faith Intent to Profit**

85.    The Licensees of the Infringing Domain Names intended to divert consumers to websites using domain names that were identical or confusingly similar to the Facebook Trademarks, the FB Trademarks, the Instagram Trademarks, and the WhatsApp Trademarks.

86.    In some instances, the Infringing Domain Names have been used for malicious activity, including misdirecting visitors to commercial sites or to websites involved in scams, phishing, and selling purported tools for hacking. Screenshots of several of these websites hosted at the Infringing Domain Names are attached to this Complaint as Exhibit 12.

87.    One or more of the Licensees also used some of the Infringing Domain Names in connection with email services (sending and/or receiving emails from the Infringing Domain Names that are confusingly similar to the Facebook Trademarks, the FB Trademarks, the Instagram Trademarks, or the WhatsApp Trademarks). Specifically, at least the following domain names had domain name servers configured with email exchange records so as to facilitate email:

cdninstagram.download

fbpokerforte.com

facebookvideodownload.online

freewhatsappspy.com

freewhatsapptracker.com

hackanyinstagram.com

instagramlogin.org

instagramspy.info

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

lnstagrambusinesshelp.com

security-instagram.email

verified-lnstagram.com

weblogin-instagram.com

whatsappsex.club

88.     Upon information and belief, Namecheap profits from the provision of the WhoisGuard service to Namecheap's customers without charge because use of that service induces the customers to use Namecheap's registrar services and other related services.

89.     Whoisguard's actions are part of a deliberate scheme by Whoisguard and Namecheap to shield the identity of the Licensees to aid them in cybersquatting, including cybersquatting on Plaintiffs' Trademarks, to further Namecheap's business interests.

90.     Whoisguard and Namecheap knowingly and intentionally shield the identities of the Licensees who are trademark infringers and cybersquatters, including those who infringe and cybersquat on Plaintiffs' Trademarks.

91.     Whoisguard and Namecheap have an economic incentive to resist any attempts to expose the identities of its Licensees, even when presented with reasonable evidence of actionable harm by Plaintiffs and others.

92.     Whoisguard continued to provide the WhoisGuard service even after it received Plaintiffs' Notices which provided reasonable evidence of actionable harm to Plaintiffs caused by Whoisguard's Licensees.

93.     Defendants are aware that the WhoisGuard service is being used to infringe the trademark rights of trademark owners. A search of domain name complaints filed under ICANN's Uniform Domain Name Dispute Resolution Policy ("UDRP") found over one thousand UDRP complaints filed against Whoisguard for cybersquatting, and the vast majority of these UDRP complaints were decided against Whoisguard, resulting in the transfer of the domain name(s) to the trademark owner

bringing the complaint. An annotated printout of the first page of this search is attached as Exhibit 13.

94.     Whoisguard has registered multiple domain names that it knew or should have known were identical or confusingly similar to marks of others that were distinctive at the time of registration of the domain names, or dilutive of famous marks of others that were famous at the time of registration of the domain names. A table showing examples of some of Defendants' registered domains that were the subject of UDRP complaints is attached as Exhibit 14.

95.     Moreover, Plaintiffs have prevailed in several UDRP complaints against Whoisguard, recovering domain names that were identical or confusingly similar to Plaintiffs' Trademarks.

96.     When an attorney for Facebook sent its January 23, 2019 notice to Namecheap and Whoisguard regarding the infringing domain name xn--faceboo-jhb.net (facebook.net) and requesting the identity of the Licensee, Namecheap made misrepresentations in its reply, stating in part:

> "[i]f the Whois contact information of the domain is protected by the WhoisGuard service, we must emphasize that under the WhoisGuard Service Agreement at https://www.namecheap.com/legal/whoisguard/whoisguard-agreement.aspx no disclosure of contact details is possible until we are in receipt of a US Court Order."

97.     In truth, however, the agreement Namecheap cited actually states that Namecheap "reserves the right in its sole judgment and discretion to disclose your [the Licensee's] personal protected information, or instruct Whoisguard to disclose such information, in the event any of the following occur: If the Protected Domain(s) is (are) alleged to violate or infringe a third party's trademark, trade name, copyright interests or other legal rights of third parties."

98.     Whoisguard also made a misrepresentation in its reply to the January 23, 2019 notice stating in part: "[p]lease be advised that WhoisGuard does not own,

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

administer, host or provide registration services to the Domain, but simply provides anonymous privacy protection services to a domain registrant. We cannot remove any content, or links, from the website, provide the registrant contact information, or terminate the Privacy Protection as we do not have control over the service."

99.    In truth, however, Whoisguard's Proxy Agreement with its Licensees plainly states: "[b]y subscribing to the Namecheap WHOIS Privacy Protection Services . . . you [the Licensee] are engaging Whoisguard to administer and register each domain name controlled by you . . . in the name of WhoisGuard." *See* Exhibit 2.

100.    Whoisguard's Proxy Agreement also states that it can disclose the identity of Licensee if the domain name at issue is "alleged to violate or infringe a third party's trademark, trade name, copyright interests or other legal rights of third parties."

101.    Whoisguard's Proxy Agreements make clear that Whoisguard provides the proxy service for the xn--faceboo-jhb.net (facebooк.net) domain name. *See* Exhibit 2.[1]

102.    Whoisguard's reply to Facebook's January 23, 2019 notice intentionally provided material and misleading false contact information regarding the xn--faceboo-jhb.net (facebooк.net) domain name to Facebook. That is, Whoisguard stated that "WhoisGuard does not own [or] administer … the Domain," when in fact, Whoisguard both owned and administered the domain name. *See* Exhibit 2.

103.    When Whoisguard receives notices from trademark owners of reasonable evidence of actionable harm caused by domain names Whoisguard owns, Whoisguard routinely advises the trademark owner that it does not own or administer the domain name.

104.    Whoisguard has engaged in a pattern of conduct where it intentionally

[1] Because the domain name system only supports the ASCII character set (e.g., a-z, 0-9), a method of encoding other internationalized characters was created. The domain name xn--faceboo-jhb.net, when displayed on a user's browser, simply replaces the letter ASCII character "к" with the Ancient Greek "к" and is displayed as facebooк.net.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

provides material and misleading false contact information for domain names it owns and administers.

## FIRST CAUSE OF ACTION

### [Cybersquatting on Plaintiffs' Trademarks Under 15 U.S.C. § 1125(d)]

105. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

106. Plaintiffs' Trademarks were distinctive or famous and federally registered at the United States Patent and Trademark Office at the time Defendants registered (as the registrant), trafficked in, or used in the Infringing Domain Names.

107. One or more of the Infringing Domain Names are confusingly similar to Plaintiffs' Trademarks.

108. One or more of the Infringing Domain Names are dilutive of the Facebook Trademarks or Instagram Trademarks.

109. Defendants registered (as the registrant), trafficked in, or used one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks.

110. Licensees registered, trafficked in, or used one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks.

111. Defendants and Licensees do not have any trademark or other intellectual property rights in the Infringing Domain Names.

112. The Infringing Domain Names do not consist of the legal name of the Defendants or the Licensees, nor do they consist of a name that is otherwise commonly used to identify them.

113. Defendants and Licensees have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

114. Defendants and Licensees have not made any *bona fide* noncommercial or fair use of Plaintiffs' Trademarks on a website accessible at any of the Infringing

Domain Names.

115.   Defendants registered (as the registrant), trafficked in, or used one or more of the Infringing Domain Names to divert consumers from Plaintiffs' legitimate websites to websites accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

116.   Licensees registered (as the registrant), trafficked in, or used one or more of the Infringing Domain Names to divert consumers from Plaintiffs' legitimate websites to websites accessible under the Infringing Domain Names for Licensees' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

117.   Defendants registered multiple domain names which Defendants knew were identical or confusingly similar to marks of others that were distinctive at the time of registration of such domain names.

118.   Defendants have provided material and misleading false contact information, as well as made other misrepresentations, in response to notices from trademark owners in an effort to shield and protect the Licensees from liability for cybersquatting and trademark infringement.

119.   Defendants' registration, use, and/or trafficking in the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

120.   Licensees' registration, use, and/or trafficking in the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), and has harmed Plaintiffs.

121.   Defendants agreed that they are liable for the harm to Plaintiffs caused by the Licensees' registration, use, and/or trafficking in the Infringing Domain Names in violation of the Lanham Act.

122.   Since Defendants did not disclose the name of the Licensees in response

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

to Plaintiffs' Notices, Defendants are liable for the harm to Plaintiffs caused by the Licensees' registration, use, and/or trafficking in the Infringing Domain Names in violation of the Lanham Act.

123.   Plaintiffs' remedy at law is not adequate to compensate them for the injuries Defendants inflicted on Plaintiffs. Accordingly, Plaintiffs are entitled to permanent injunctive relief pursuant to 15 U.S.C. § 1116.

124.   Plaintiffs are entitled to recover Defendants' profits, Plaintiffs' actual damages, and the costs of this action. Instead of actual damages and profits, Plaintiffs may alternatively elect to an award of statutory damages under 15 U.S.C. § 1117(d) in an amount of $100,000 per domain name.

125.   This is an exceptional case, entitling Plaintiffs to an award of reasonable attorneys' fees under 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of**

**Plaintiffs' Trademarks Under 15 U.S.C. § 1114]**

126.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

127.   Licensees have used Plaintiffs' Trademarks in interstate commerce. Licensees' use of Plaintiffs' Trademarks is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval by Plaintiffs of Licensees' websites.

128.   The above-described acts of Licensees constitute trademark and service mark infringement in violation of 15 U.S.C. § 1114(1) and entitle Plaintiffs to relief.

129.   Licensees have unfairly profited from the alleged trademark and service mark infringement.

130.   By reason of Licensees' acts of trademark and service mark infringement, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Trademarks.

131.   Defendants agreed that they are liable for the harm to Plaintiffs caused by the Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

132.   Since Defendants did not disclose the name of the Licensees in response to Plaintiffs' Notices, Defendants are liable for the harm to Plaintiffs caused by the Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

133.   Plaintiffs are entitled to recover Licensees' profits, Plaintiffs' actual damages, and the costs of this action. Plaintiffs are also entitled to have their damages trebled under 15 U.S.C. § 1117(a).

134.   This is an exceptional case, making Plaintiffs eligible for an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**THIRD CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of Plaintiffs' Trademarks and False Designation of Origin Under 15 U.S.C. § 1125(a)]**

135.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

136.   Plaintiffs' Trademarks are distinctive marks that are associated with Plaintiffs and exclusively identify their respective businesses, products, and services.

137.   Licensees' use in commerce of Plaintiffs' Trademarks, and variations thereof, is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Licensees' goods and services are authorized, sponsored, or approved by, or are affiliated with, Plaintiffs.

138.   Licensees' acts constitute trademark and service mark infringement of Plaintiffs' Trademarks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Plaintiffs to relief.

139.   Licensees have unfairly profited from their conduct.

140.   By reason of the above-described acts of Licensees, Plaintiffs have suffered damage to the goodwill associated with Plaintiffs' Trademarks.

141.   Defendants agreed that they are liable for the harm to Plaintiffs caused by the Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

142.   Since Defendants did not disclose the name of the Licensees in response

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1   to Plaintiffs' Notices, Defendants are liable for the harm to Plaintiffs caused by the
2   Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

3        143.   Plaintiffs are entitled to recover Licensees' profits, Plaintiffs' actual
4   damages, and the costs of this action. Plaintiffs are also entitled to have their damages
5   trebled under 15 U.S.C. § 1117(a).

6        144.   This is an exceptional case, making Plaintiffs eligible for an award of
7   reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

8                        **FOURTH CAUSE OF ACTION**
9              **[Dilution of the Facebook Trademarks and Instagram**
10                **Trademarks Under 15 U.S.C. § 1125(c)]**

11       145.   Facebook and Instagram reallege and incorporate by reference all of the
12  preceding paragraphs.

13       146.   The Facebook Trademarks and Instagram Trademarks are famous, as that
14  term is used in 15 U.S.C. § 1125(c), and they were famous before Licensees' use of
15  them and variations of the trademarks in commerce. This fame is based on, among other
16  things, the inherent distinctiveness and federal registration of each of the Facebook
17  Trademarks and Instagram Trademarks as well as the extensive and exclusive
18  worldwide use, advertising, promotion, and recognition of them.

19       147.   Licensees' use of the Facebook Trademarks and Instagram Trademarks,
20  and variations thereof, in commerce is likely to cause dilution by blurring or dilution by
21  tarnishment of these trademarks.

22       148.   Licensees' acts constitute dilution by blurring and dilution by tarnishment
23  in violation of 15 U.S.C. § 1125(c), entitling Facebook and Instagram to relief.

24       149.   Licensees have unfairly profited from their conduct.

25       150.   Licensees damaged the goodwill associated with the Facebook
26  Trademarks and the Instagram Trademarks, and they will continue to cause irreparable
27  harm.

28       151.   Defendants agreed that they are liable for the harm to Plaintiffs caused by

*TUCKER ELLIS LLP*
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

the Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

152.   Since Defendants did not disclose the name of the Licensees in response to Plaintiffs' Notices, Defendants are liable for the harm to Plaintiffs caused by the Licensees' use of the Infringing Domain Names in violation of the Lanham Act.

153.   Because Licensees acted willfully, Facebook and Instagram are entitled to damages against Defendants, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

154.   This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1.   That the Court find that Defendants have registered, trafficked in, or used one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(d).

2.   That the Court enter a judgment against Defendants that Defendants have infringed the rights of Plaintiffs in Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(d).

3.   That the Court find that:

a.   Licensees have registered, trafficked in, or used one or more of the Infringing Domain Names with a bad faith intent to profit from Plaintiffs' Trademarks in violation of 15 U.S.C. § 1125(d);

b.   Licensees have infringed the rights of Plaintiffs in the federally registered Facebook Trademarks, FB Trademarks, Instagram Trademarks, and WhatsApp Trademarks in violation of 15 U.S.C. § 1114(1);

c.   Licensees have infringed the rights of Plaintiffs in the Facebook Trademarks, FB Trademarks, Instagram Trademarks and WhatsApp Trademarks in violation of 15 U.S.C. § 1125(a); and

d.   Licensees have infringed the rights of Plaintiffs in the federally

registered Facebook Trademarks and Instagram Trademarks in violation of 15 U.S.C. § 1125(c).

4.     That each of the above acts was willful.

5.     That the Court enter a judgment against Defendants that Defendants are liable for the harm caused to Plaintiffs by the Licensees' infringement of the Plaintiffs' Trademarks in violation of the Lanham Act and that these damages be trebled due to Licensees' willfulness, in accordance with the provisions of 15 U.S.C. § 1117

6.     That the Court issue a permanent injunction enjoining and restraining Defendants, their officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with them, from registering, using, or trafficking in, with a bad faith intent to profit, any domain name that is identical or confusingly similar to the Facebook Trademarks, FB Trademarks, Instagram Trademarks, or WhatsApp Trademarks.

7.     That Defendants be ordered to account for and disgorge to Plaintiffs all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of.

8.     That Plaintiffs be awarded $100,000 in statutory damages per infringing domain name by reason of Defendants' cybersquatting, in accordance with the provisions of 15 U.S.C. § 1117.

9.     That Plaintiffs be awarded an amount sufficient to reimburse Plaintiffs for the costs of corrective advertising.

10.    That Plaintiffs be awarded prejudgment interest on all infringement damages.

11.    That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

12.    That the Court award Plaintiffs their costs of suit incurred herein.

13.    That the Court award such other or further relief as the Court may deem just and proper.

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1

2   DATED: March 04, 2020                    SNELL & WILMER L.L.P.

3

4

5                                            By: s/David G. Barker
                                             David G. Barker
6                                            Jacob C. Jones
                                             One Arizona Center
7                                            400 E. Van Buren, Suite 1900
                                             Phoenix, Arizona 85004-2202
8

9                                            TUCKER ELLIS LLP
                                             David J. Steele
10                                           Howard A. Kroll
                                             Steven E. Lauridsen
11                                           515 South Flower Street
                                             Forty-Second Floor
12                                           Los Angeles, CA 90071-2223

13
                                             Attorneys for Plaintiffs,
14                                           Facebook, Inc., Instagram, LLC,
                                             and WhatsApp Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1

## DEMAND FOR TRIAL BY JURY

2    Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp Inc. hereby demand a

3  trial by jury to decide all issues so triable in this case.

4

5  DATED: March 04, 2020                    SNELL & WILMER L.L.P.

6

7

8                                           By: s/David G. Barker
                                            David G. Barker
9                                           Jacob C. Jones
                                            One Arizona Center
10                                          400 E. Van Buren, Suite 1900
                                            Phoenix, Arizona 85004-2202
11

12                                          TUCKER ELLIS LLP
                                            David J. Steele
13                                          Howard A. Kroll
                                            Steven E. Lauridsen
14                                          515 South Flower Street
                                            Forty-Second Floor
15                                          Los Angeles, CA 90071-2223
16

17                                          Attorneys for Plaintiffs,
                                            Facebook, Inc., Instagram, LLC,
18                                          and WhatsApp Inc.

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

COMPLAINT