**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Telephone:    310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com


**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com

Attorneys for Defendants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation; and WhoisGuard, Inc., a Republic of Panama corporation,<br><br>Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**DEFENDANT WHOISGUARD INC.'S MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Concurrently filed with Declaration of Vernon Emmanuel Salazar Zurita]*<br><br>(Oral Argument Requested) |

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant WhoisGuard, Inc. ("WhoisGuard") moves to dismiss the Complaint filed by Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp Inc. (collectively, "Plaintiffs") for lack of personal jurisdiction, or alternatively, for failure to state a claim upon which relief can be granted. This motion is supported by the following memorandum of points and authorities.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.  INTRODUCTION**

Notwithstanding the numerous reasons Plaintiffs' Complaint is deficiently pleaded and devoid of substantive merit—which are set forth in detail in Namecheap, Inc.'s ("Namecheap") concurrently filed Motion to Dismiss—this action should be dismissed with prejudice as to WhoisGuard for a more basic reason: Plaintiffs fail to establish, and cannot plausibly establish, personal jurisdiction over WhoisGuard.

WhoisGuard is incorporated in the Republic of Panama. Contrary to Plaintiffs' allegations, its principal place of business is not located in Arizona. This is not an "exceptional" case in which WhoisGuard has contacts that are substantial and of such a nature as to render it "at home" in Arizona. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). In addition, none of Plaintiffs' claims arise out of conduct by WhoisGuard that occurred in or was directed toward Arizona. Nor can Plaintiffs impute Namecheap's Arizona contacts to WhoisGuard to establish jurisdiction under an alter ego theory. Finally, contrary to Plaintiffs' allegations, WhoisGuard did not specify Arizona in any forum selection clause to which it is a party. The Court should therefore dismiss WhoisGuard with prejudice for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

In the alternative, the Court should dismiss all claims as to WhoisGuard pursuant to Fed. R. Civ. P. 12(b)(6) for the reasons set forth in Namecheap's concurrently filed motion to dismiss. Pursuant to Local Rule 7.1(d)(2), WhoisGuard joins in and incorporates by reference the arguments in Namecheap's motion, which equally apply to Plaintiffs' claims against WhoisGuard and are recapitulated briefly in Section IV below.

15744742

## II. STATEMENT OF FACTS

### A. Plaintiffs' Claims

The facts of this case are set forth in detail in Namecheap's concurrently filed motion to dismiss. In short, Plaintiffs allege that customers of Namecheap, an Internet domain name registrar, registered and used domain names that are identical or confusingly similar to Plaintiffs' trademarks. Complaint, ¶¶ 107, 110. WhoisGuard administered the domain names and provided privacy protection services to Namecheap's customers which prevented the customers' personal information from being made publicly available in the WHOIS database.[1] *Id*. at ¶¶ 52-55 & Exh. 2, ¶ 2. Plaintiffs further allege that WhoisGuard failed to disclose the identity or contact information of the customers who registered the domains after Plaintiffs' representatives provided notice that the domains infringed or cybersquatted on Plaintiffs' trademarks. *Id*. at ¶ 84.

Notwithstanding the fact that Defendants are merely service providers and did not select or control the domain names at issue (*see id*. at Exh. 2, ¶¶ 2-3) Plaintiffs seek to hold Namecheap and WhoisGuard liable for (1) cybersquatting, (2) trademark infringement, (3) false designation of origin, and (4) dilution of their trademarks. All of Plaintiffs claims are asserted under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

### B. Allegations Relevant to Personal Jurisdiction Over WhoisGuard

The Complaint alleges that the Court has personal jurisdiction over WhoisGuard based on the allegations that "the business of WhoisGuard is to provide services to Namecheap in Arizona;" WhoisGuard's principal place of business is in Phoenix, Arizona; WhoisGuard operates datacenters in Arizona; its headquarters and employees are in Arizona; and "Whoisguard specifies Arizona in the forum selection clauses in its contracts." Complaint, ¶ 28.

Contrary to the Complaint's allegations, WhoisGuard's principal place of business is in Panama City, Republic of Panama, not Phoenix, Arizona. Declaration of Vernon

---

[1] The WHOIS database is a centralized, publicly accessible database of information concerning all domain names in a top-level domain (*e.g.*, ".com," ".net," ".org," or ".edu"). *Solid Host, NL v. Namecheap, Inc*., 652 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009).

2

15744742

Emmanuel Salazar Zurita filed herewith ("Zurita Decl."), ¶ 3. WhoisGuard has no offices or employees in Arizona. *Id*. at ¶ 4. Also contrary to Plaintiffs' allegations, the forum selection clauses of WhoisGuard's contracts between it and users of its services specify the courts of the Republic of Panama, not Arizona, as the forum in which disputes must be resolved. *Id*. at Exh. 1, ¶ 13 & Exh. 2, ¶ 14. The business of WhoisGuard is to provide a WHOIS privacy protection service to users who registrar domain names. *Id*. at ¶ 2.

Plaintiffs allege that Namecheap is the alter ego of WhoisGuard because Namecheap describes the service as "WhoisGuard by Namecheap;" customers can enable the WhoisGuard service from their Namecheap account; the WhoisGuard service is offered for free to Namecheap's customers; in the past, when third parties requested a registrant's identity and contact information from WhoisGuard, Namecheap, instead of WhoisGuard, provided the responsive information; and when WhoisGuard is served with a subpoena or when an administrative domain name complaint is filed against WhoisGuard's licensees, Namecheap, instead of WhoisGuard, responds. Complaint, ¶¶ 59-64. Plaintiffs also allege that Namecheap previously owned the whoisguard.com domain name and, on information and belief, that it currently operates and controls the whoisguard.com website. *Id*. at ¶¶ 65-66.

Contrary to the Complaint's allegations, WhoisGuard and Namecheap are separate corporations. Zurita Decl., ¶¶ 3, 8. WhoisGuard provides its WHOIS privacy protection services to customers of Namecheap pursuant to a service agreement between WhoisGuard and Namecheap. *Id*. at ¶ 7. WhoisGuard maintains its own corporate structure, has its own officers, keeps its own books and records, pays its own taxes, and follows all corporate formalities required under the law of the Republic of Panama. *Id*. at ¶ 8. Further, WhoisGuard, not Namecheap, owns the whoisguard.com domain and website. *Id*. at ¶ 9.

### III. THE COURT LACKS PERSONAL JURISDICTION OVER WHOISGUARD

Plaintiffs bear the burden of establishing personal jurisdiction over WhoisGuard. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where a motion to dismiss for lack of personal jurisdiction is based on written submissions rather

3

15744742

than an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdictional facts. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). While uncontroverted allegations must be taken as true, the plaintiff cannot "simply rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

Where, as here, there is no applicable federal statute governing personal jurisdiction, federal courts follow the law of the state in which the district court is located. *Daimler*, 571 U.S. at 125. Under Arizona's long-arm statute, personal jurisdiction may be asserted to the extent permitted by the Due Process Clause of the United States Constitution. *Brink v. First Credit Res.*, 57 F. Supp. 2d. 848, 859 (D. Ariz. 1999); Ariz. R. Civ. P. 4.2(a). Therefore, to determine whether there is personal jurisdiction over a defendant, courts inquire whether the exercise of jurisdiction "comports with the limits imposed by federal due process." *Ranza*, 793 F.3d at 1068 (quoting *Daimler*, 571 U.S. at 125). Courts undertake this analysis based on two types of personal jurisdiction, general and specific (*id.* at 1068-69), neither of which exists here as to WhoisGuard.

### A. WhoisGuard Is Not "At Home" in Arizona for Purposes of General Jurisdiction

To establish general personal jurisdiction, WhoisGuard's "affiliations with [Arizona] [must be] so continuous and systematic as to render it essentially at home" in Arizona. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). The Supreme Court has cautioned that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there" and that for a corporation, it is a place "in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (internal citations and quotation marks omitted). Only in an "exceptional" case will "a corporation's operations in a forum other than its formal place of incorporation or principal place of

4

business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139, n.19.

WhoisGuard's contacts with Arizona fall far short of the "continuous and systematic" contacts that, in rare instances, warrant general jurisdiction over non-domiciliaries. *See id.* at 138-39. Plaintiffs concede that WhoisGuard is incorporated in the Republic of Panama, not Arizona. WhoisGuard's principal place of business is in Panama City. Zurita Decl., ¶ 3. It is not licensed to do business in Arizona. *Id*. at ¶ 4. It does not maintain offices, telephone numbers, or bank accounts in Arizona, has no employees or agents for service of process in Arizona, and neither owns nor leases any real estate there. *Id*. Even if WhoisGuard's datacenters are located in Arizona, that is insufficient to establish personal jurisdiction. Plaintiffs "cannot rely on the fortuitous location of Defendant's servers to establish personal jurisdiction. If the mere location of a server could create personal jurisdiction, any state where a server is located would have personal jurisdiction over any user of that server." *Man-D-Tec, Inc. v. Nylube Prods. Co.*, No. CV-11-1573-PHX-GMS, 2012 WL 1831521, *2 (D. Ariz. May 18, 2012) (Snow, J.) (internal citation and quotation marks omitted). Moreover, users in Arizona represent less than one percent of WhoisGuard's total user base. Zurita Decl., ¶ 5. This is insufficient to establish general jurisdiction. *See Man-D-Tec*, 2012 WL 1831521 at *3 (Arizona sales amounting to 0.5% of defendant's total sales were insufficient to establish general jurisdiction where there was no other evidence of systematic forum activities).

Accordingly, this Court lacks general jurisdiction over WhoisGuard.

**B.     The Court Lacks Specific Jurisdiction Over WhoisGuard**

For the Court to exercise specific jurisdiction over WhoisGuard, "the suit must arise out of or relate to [WhoisGuard's] contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017) (internal quotation marks and brackets omitted). Three requirements must be met: (1) the defendant must have purposefully directed its activities or purposefully availed itself of the benefits afforded by the forum's laws; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) the

5

exercise of jurisdiction must comport with fair play and substantial justice. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017). None of the requirements are met here.

### 1. *WhoisGuard Did Not Purposefully Direct its Activities Towards Arizona*

Under the first prong of the test for specific jurisdiction, the "purposeful availment" test applies where the underlying claims arise from a contract, while the "purposeful direction" test applies where the claims arise from tortious conduct. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Because Plaintiffs' cybersquatting and trademark claims arise in tort, the purposeful direction test applies. *See Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1087 (D. Or. 2016) (because trademark claims arise in tort, purposeful direction applies).

To establish purposeful direction, Plaintiffs must show that WhoisGuard "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill*, 873 F.3d at 1142 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 111 (9th Cir. 2002)).

Plaintiffs allege no intentional conduct by WhoisGuard aimed at Arizona. The Complaint alleges only that WhoisGuard "registered, trafficked in, or used" the infringing domain names, that it failed to disclose the identity or contact information of its users to Plaintiffs, and that it continued to provide its privacy service even after it received notices from Plaintiffs. Complaint, ¶¶ 70-73, 84, 92. None of this alleged conduct has any connection to Arizona sufficient to establish jurisdiction over WhoisGuard. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("[S]imply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another."). Further, Plaintiffs are not based in Arizona and do not allege that any injury was suffered in Arizona. Therefore, Plaintiffs cannot

15744742

demonstrate purposeful direction.

### 2. *The Claims Do Not Arise out of any Activities of WhoisGuard in Arizona*

Under the second prong of the test for specific jurisdiction, the "arising out of" requirement is met if, "but for" the contacts between the defendant and the forum state, plaintiffs' cause of action would not have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Again, Plaintiffs allege no activity by WhoisGuard that occurred in Arizona, nor any injury that occurred in Arizona. Therefore, there is no Arizona contact "but for" which their claims would not have arisen, and the second prong is not met.

### 3. *Exercising Personal Jurisdiction Over WhoisGuard Would be Unreasonable*

In evaluating the reasonableness of the exercise of jurisdiction, courts consider the burden on the defendant in defending in the forum, the interest of the forum state in adjudicating the dispute, the importance of the forum to the plaintiff's interest in obtaining convenient and effective relief, and considerations of judicial efficiency in adjudicating the case. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). Considering that WhoisGuard is a company incorporated outside of the United States, and the slight interests of Plaintiffs and the State of Arizona, the exercise of jurisdiction over WhoisGuard would be unreasonable and unfair.

Where, as in this case, a defendant is a foreign company, the "unique burdens" on the defendant having to defend itself here should be given "significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., v. Super. Ct.*, 480 U.S. 102, 114 (1987). The concept of "fair play and substantial justice" inherent in Constitutional Due Process prevents a defendant from being unduly burdened by having to defend itself in a faraway and inconvenient forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 323-24 (1945); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 944-45 (11th Cir. 1997) (summarizing Supreme Court opinions on "fair play and substantial justice" requirement). It would be

15744742

unreasonable to require WhoisGuard, a Panamanian corporation, to defend itself in a foreign nation's judicial system. *See Asahi*, 480 U.S. at 114.

Next, the State of Arizona has no particularized interest in adjudicating this dispute given the federal nature of Plaintiffs' claims for violation of the Lanham Act. *Cf. Patent Rights Prot. Grp., LLC fv. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010) (because patent infringement is a matter of federal law, forum state's interest in "furthering fundamental substantive social policies" is not implicated). Moreover, because Plaintiffs are not Arizona residents, Arizona's legitimate interests in the dispute and the importance of an Arizona forum to Plaintiffs' interests in obtaining relief are considerably diminished. *See Asahi*, 480 U.S. at 114; Complaint, ¶¶ 20-22.

Accordingly, Plaintiffs' Complaint fails to meet any of the three prongs of the test. This Court lacks specific jurisdiction over WhoisGuard.

**C.     Plaintiffs Cannot Establish Jurisdiction Under the Alter Ego Test**

Plaintiffs cannot establish personal jurisdiction over WhoisGuard by imputing the Arizona contacts of Namecheap to it either. While there previously was an "agency test" for personal jurisdiction, following the Supreme Court's opinion in *Daimler*, an agency relationship is no longer sufficient to impute one entity's forum contacts to another defendant entity. *Daimler*, 571 U.S. at 134-36; *Ranza*, 793 F.3d at 1071 (Supreme Court invalidates the "agency test"). Post-*Daimler*, to justify imputing one defendant's forum contacts to another, a plaintiff must demonstrate that the two defendants are "not really separate entities" under the more rigorous "alter ego test." *Ranza*, 793 F.3d at 1071; *see Davis v. Metro Prods. Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional context parallel to those used in liability contexts.").

To satisfy the alter ego test under federal law,[2] a "plaintiff must make out a prima

---

[2] "In federal-question cases such as this, district courts apply federal common law when determining whether they can exercise personal jurisdiction over a party based on an alter ego theory." *McGeachy v. Pinto Alley Mining Corp.*, 2:16-cv-03348 JWS, 2017 WL

15744742

facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate entities would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)). Plaintiffs cannot meet either prong.

### 1. *Unity of Interest and Ownership*

The "unity of interest and ownership" prong of the alter ego test requires a showing that Namecheap controls WhoisGuard "to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1074. There must be "pervasive control," such as when a parent corporation "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id*. If the two entities observed corporate formalities, even where a corporation is directly involved in its subsidiary's decision-making and general business policies, provides loans and financing to the subsidiary, and maintains overlapping directors and officers with the subsidiary, the level of control is still insufficient to negate the entities' separate personalities. *Unocal*, 248 F.3d at 927-28.

Plaintiffs cannot show that Namecheap exerted the strict level of control over WhoisGuard required under the "unity of interest and ownership" prong of the test. WhoisGuard and Namecheap are two separate entities that observe their own corporate formalities. Zurita Decl., ¶ 8. Further, WhoisGuard maintains its own corporate officers, keeps its own books and records, and pays its own taxes. *Id*. The complaint makes no showing that WhoisGuard is undercapitalized.

The alter ego allegations in the Complaint are insufficient to establish that WhoisGuard and Namecheap are "not really separate entities." Again, Plaintiffs may not simply rest on the allegations of their Complaint, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys.*, 551 F.2d at 787.

---

3130639, *4 (D. Ariz. July 24, 2017) (internal quotation marks omitted); *but see Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 769 n.3 (9th Cir. 1992) (noting strong presumption that state law should be incorporated into federal common law where corporate law is at issue). Even if Arizona law were to apply, however, "the alter ego doctrine is substantially the same under federal and Arizona law." *McGeachy*, 2017 WL 3130639 at *4 n.1.

9

The fact that Namecheap describes WhoisGuard's service as "WhoisGuard by Namecheap" only demonstrates that WhoisGuard is a service provider of Namecheap. Further, that the service is offered for free is proof of nothing, as WhoisGuard provides its services to customers of Namecheap pursuant to a services agreement between WhoisGuard and Namecheap. Zurita Decl., ¶ 7. Similarly, Namecheap providing customer information to requests, subpoenas, or in response to administrative complaints on behalf of WhoisGuard is attributable to the services agreement between the two. *See id.* Contrary to Plaintiffs' suggestion, the existence of a service agreement between the two companies actually weighs *against* an alter ego relationship because it shows "that the two corporations were dealing with each other as separate and independent entities dealing at arm's length." *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1179 (D. Ariz. 2010) (Snow, J.). Plaintiffs also allege on information and belief that Namecheap currently owns the whoisguard.com domain and website, but this is inaccurate. WhoisGuard, not Namecheap, owns whoisguard.com. Zurita Decl., ¶ 9.

Merely establishing a connection between the two companies is insufficient to justify disregarding their separate corporate form; Plaintiffs must present facts to establish that Namecheap "exercised substantially total control over the management and activities" of WhoisGuard. *Patterson*, 684 F. Supp. 2d at 1179. Plaintiffs have not met, and cannot meet, this rigorous test under the first prong.

### 2. *Fraud or Injustice*

Nor can Plaintiffs demonstrate that fraud or injustice would result if WhoisGuard's corporate form were not disregarded, as required by the second prong of the alter ego test. To satisfy this prong, Plaintiffs would need to show that the entity was formed to perpetrate a fraud or is being used for fraudulent purposes. Given that the privacy services provided by WhoisGuard are "indisputably legal," (*see Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1110 (C.D. Cal. 2009)), and are offered to all of Namecheap's customers (not just to cybersquatters), Plaintiffs cannot make this showing. Moreover, WhoisGuard's privacy services and the relationship between Namecheap and WhoisGuard do not prevent

15744742

victims of trademark infringement or cybersquatting from seeking redress with the courts or filing administrative actions with WIPO or ICANN. *See Rosen v. Imagevenue.com*, CV 13-01742 SJO (MANx), 2013 WL 12132052, *5 (C.D. Cal. Nov. 26, 2013). Indeed, by Plaintiffs' own admission, when a subpoena is served on WhoisGuard or an administrative trademark action (through ICANN or WIPO) is filed against it, the unmasked WHOIS customer information is provided. Complaint, ¶¶ 63-64.

Accordingly, Plaintiffs cannot meet their burden on the second prong and cannot impute Namecheap's Arizona contacts to WhoisGuard under the alter ego test.

### D. WhoisGuard Did Not Agree to Litigate this Dispute in Arizona

The Complaint also alleges that the Court has personal jurisdiction over WhoisGuard because "WhoisGuard specifies Arizona in the forum selection clauses in its contracts," *Id*. at ¶ 28, but this allegation is incorrect. The forum selection clauses of WhoisGuard's contracts with its users specify the Republic of Panama, not Arizona. Zurita Decl., Exh. 1, ¶ 13 & Exh. 2, ¶ 14.

While Namecheap's Domain Name Registration Agreement and WHOIS Proxy Agreement do include Arizona forum selection clauses (*see* Complaint, Exhs. 1 & 2), Plaintiffs cannot rely on those contracts to establish jurisdiction over WhoisGuard because WhoisGuard is not a party to them. A forum selection cause may give rise to a waiver of a defendants' objections to personal jurisdiction only if the defendant agreed to be bound to it. *Holland Am. Line Inc. v. Wartsilla N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007); *Wu v. BDK DSD*, No. CV-15-01898-PHX-DLR, 2016 WL 1059534, *2 (D. Ariz. March 17, 2016) ("Much like contract formation, personal jurisdiction based on a forum selection clause is grounded on some form of consent.").

Both of the Namecheap contracts attached as Exhibits 1 and 2 to the Complaint are agreements between it and its customers. WhoisGuard is not a party to either agreement, despite Plaintiffs' inaccurate characterization of the Namecheap WHOIS Proxy Agreement as "Whoisguard's Proxy Agreement." Complaint, ¶ 29. The Namecheap WHOIS Proxy Agreement provides that it is a supplement to "your [*i.e*., the customer's] Domain

Registration Agreement and/or Hosting Services Agreement between you on the one hand and Namecheap on the other hand[.]" *Id.*, Exh. 2, ¶ 1. There is no evidence that WhoisGuard assented to its terms. *See Holland Am.*, 485 F.3d at 458 (no personal jurisdiction where plaintiff had no evidence that defendants had assented to its form terms containing forum selection clause).

Moreover, even if there were evidence that WhoisGuard had assented to the terms, Plaintiffs' claims in this action are not within the scope of the jurisdictional clauses in either of the Namecheap agreements attached to the Complaint. *See* Complaint, Exh. 1, ¶ 30 (providing consent to jurisdiction in Arizona "in relation to any dispute arising under this Agreement") & Exh. 2, ¶ 13 (providing consent to jurisdiction in Arizona "in relation to any dispute between you and Namecheap under this Proxy Agreement"). Plaintiffs' claims for cybersquatting and trademark infringement do not "arise under" the Namecheap Domain Registration Agreement. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) ("arising under" clause is restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance"). Nor do Plaintiffs' claims involve a dispute between Namecheap and one of its customers under the Namecheap WHOIS Proxy Agreement.

Accordingly, each basis asserted by Plaintiffs for personal jurisdiction over WhoisGuard fails. The Court should therefore dismiss all claims against WhoisGuard for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

**IV.   THE COMPLAINT FAILS TO STATE A CLAIM AS TO WHOISGUARD**

In the alternative, the Court should dismiss Plaintiffs' Complaint as to WhoisGuard for the separate and independent reason that the Complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Local Rule 7.1(d)(2), WhoisGuard joins in and incorporates by reference the arguments in Namecheap's concurrently filed motion to dismiss, which are briefly summarized here.

**A.   Plaintiffs Fail to Allege a Viable Claim for Cybersquatting**

Plaintiffs' first cause of action for violation of the Anti-Cybersquatting Protection

Act ("ACPA") must be dismissed as to WhoisGuard.

First, Plaintiffs fail to plead facts to establish that WhoisGuard acted with a bad faith intent to profit specifically from Plaintiffs' marks. "The bad faith required to support a cybersquatting claim is not general bad faith, but 'a bad faith intent to profit *from the mark*.'" *Solid Host*, 652 F. Supp. 2d at 1110 (quoting 15 U.S.C. § 1125(d)(1)(A)(i)). In *Solid Host*, the District Court for the Central District of California held that Namecheap's provision of the WhoisGuard privacy service—which the court characterized as an "indisputably legal anonymous registration service"—and its refusal to reveal its customers' identity did not constitute a bad faith intent to profit from the goodwill of another's mark under the ACPA. *Id*. Although the *Solid Host* court found that the plaintiff in that case had alleged sufficient facts to plead a claim for contributory cybersquatting, the Ninth Circuit subsequently held that the ACPA does not include a cause of action for contributory cybersquatting. *Petroliam Nasional Berhad v. GoDaddy.com, Inc*., 737 F.3d 546, 553-54 (9th Cir. 2013). Further, the Complaint's allegations that WhoisGuard continued to provide its privacy service even after it received Plaintiffs' notices do not support a finding that WhoisGuard had a bad faith intent to profit "at the time of registration" as required under the ACPA. *See* 15 U.S.C. § 1125(d)(1); *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011).

Second, Plaintiffs' cybersquatting claim also fails for the separate reason that the Complaint does not plausibly establish that WhoisGuard "used," "trafficked in," or "registered" the infringing domains within the meaning of the ACPA. The Complaint alleges no facts about how WhoisGuard purportedly "used" the domains, and, contrary to Plaintiffs' bare allegation, the Namecheap WHOIS Proxy Agreement expressly provides that the customers, not WhoisGuard, retained control over the domains. Complaint, Exh. 2, ¶ 3. Nor do Plaintiffs allege that WhoisGuard received any compensation for licensing the infringing domains to the customers, but instead allege that the privacy services are provided for free. *Id*. at ¶ 61. Thus, WhoisGuard's services cannot constitute "trafficking" under the ACPA, either. *See* 15 U.S.C. § 1125(d)(1)(E) ("trafficking" refers to transfers

13

"for consideration or receipt in exchange for consideration.").

Finally, although WhoisGuard, acting as an administrator, literally registered the domain names for the customers in order to provide the privacy services, the customer, not WhoisGuard, is the "registrant" within the meaning of the ACPA. "The word 'registers,' when considered in context, obviously refers to a person who presents a domain name for registration, not to the registrar." *Solid Host*, 652 F. Supp. 2d at 1104 (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648, 650-51 (N.D. Tex. 2001) ("*Lockheed Martin II*")). Thus, the persons who "registered" the infringing domains within the meaning of the ACPA are Namecheap's customers who selected and presented the domain names for registration, not Defendants, who merely acted in the role of service providers. Accordingly, Plaintiffs' first claim for cybersquatting must be dismissed.

### B. Plaintiffs Fail to Allege Viable Claims for Trademark Infringement, False Designation of Origin, or Trademark Dilution

Plaintiffs second, third, and fourth causes of action also fail. Plaintiffs have failed to allege that WhoisGuard used their marks "in commerce" in connection with the sale or advertising of goods or services within the meaning of 15 U.S.C. §§ 1114(1) and 1125(a), a requisite element for their claims for trademark infringement, false designation of origin, and dilution. *See Gibson Brands, Inc. v. Viacom Int'l, Inc*., 640 Fed. Appx. 677, 678 (9th Cir. 2016); *Bosley Med. Inst., Inc. v. Kremer*, 403 F. 3d 672, 677 (9th Cir. 2005) (use of mark must be "in connection with a sale of goods or services").

"Registration of a domain name without more does not constitute service mark or trademark infringement." *GoPets*, 657 F.3d at 1035; *see Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840, *12 (D. Ariz. March 11, 2020) (registrant who did not market or sell goods or services in connection with infringing domains did not use marks in commerce or violate Lanham Act); *Lockheed Martin Corp. v. Network Solutions, Inc*., 985 F. Supp. 949, 959 (C.D. Cal. 1997) ("*Lockheed Martin I*") ("Where domain names are used to infringe, the infringement does not result from [the registrar's] publication of the domain name list, *but from the registrant's use of the name on a Web site*

14

or other Internet form of communication in connection with goods or services.") (emphasis added).

The Complaint is devoid of any allegations that WhoisGuard itself used the marks in connection with the sale or advertisement of any goods or services. Instead, Plaintiffs allege that WhoisGuard's licensees (*i.e.*, the customers who registered the domains) used the marks in interstate commerce. Complaint, ¶¶ 127, 137, 147. Because Plaintiffs fail to allege the requisite element of a "use in commerce" by WhoisGuard, their second, third, and fourth causes of action must be dismissed.[3]

Moreover, Plaintiffs are unable to allege that WhoisGuard accepted liability for Defendants' customers' acts under the Registrar Accreditation Agreement ("RAA"), an agreement between the Internet Corporation for Assigned Names and Numbers ("ICANN") and domain name registrars like Namecheap, because WhoisGuard is not a party to that agreement. *See id.* at Ex. 7. Further, to the extent Plaintiffs claim to be third party beneficiaries under that agreement, the Ninth Circuit has already held that RAA does not create any right or duty owed to nonparties, such as Plaintiffs. *Balsam v. Tucows, Inc.*, 627 F. 3d 1158, 1162-1163 (9th Cir. 2010). Similarly, nothing in the Namecheap's Domain Registration Agreement indicates that WhoisGuard, as the licensor of the domains, accepts liability for its customers' infringing acts. *See* Complaint, Exh. 1

Thus, each of Plaintiffs' claims against WhoisGuard fail as a matter of law. The Court should therefore dismiss all claims against WhoisGuard pursuant to Fed. R. Civ. P. 12(b)(6).

---

[3] Plaintiffs do not allege any cause of action for contributory or vicarious trademark liability, nor can they. *See Perfect 10, Inc. v. Visa Int'l. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (contributory liability requires that defendant "intentionally induced" third party's infringement or "directly controlled and monitored" the instrumentality used; vicarious liability requires a defendant and infringer had an apparent or actual partnership, authority to bind one another, or joint ownership or control over infringing product). WhoisGuard does not control the customers or the customer's use of domain names. *See* Complaint, Exh. 2, ¶ 3.

15744742

**V.     CONCLUSION**

For the reasons set forth above, the Court should dismiss the Complaint in its entirety as to WhoisGuard.

Dated: April 24, 2020

**FENNEMORE CRAIG, P.C.**

By: *s/ Mario C. Vasta*
    Ray K. Harris
    Mario C. Vasta
    Attorneys for Defendants NAMECHEAP, INC.; and WHOISGUARD, INC.

15744742