**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com


**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com

Attorneys for Defendants
Namecheap, Inc. and WhoisGuard, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Namecheap, Inc., a Delaware corporation; and WhoisGuard, Inc., a Republic of Panama corporation, <br><br> Defendants. | CASE NO. 2:20-cv-00470-GMS <br><br> **DEFENDANT WHOISGUARD INC.'S *AMENDED* MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – WITH LRCIV 12.1(C) CERTIFICATION** <br><br> *[Concurrently filed with Declaration of Vernon Emmanuel Salazar Zurita]* <br><br> (Oral Argument Requested) |

15744742

1   Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant WhoisGuard, Inc.

2   ("WhoisGuard") moves to dismiss the Complaint filed by Plaintiffs Facebook, Inc.,

3   Instagram, LLC, and WhatsApp Inc. (collectively, "Plaintiffs") for lack of personal

4   jurisdiction, or alternatively, for failure to state a claim upon which relief can be granted.

5   This motion is supported by the following memorandum of points and authorities.

6       Pursuant to LRCiv 12.1(c), WhoisGuard and Namecheap, Inc. ("Namecheap")

7   (collectively, "Defendants") certify that their counsel met and conferred with Plaintiffs'

8   counsel on April 15, 2020 at 10:30 a.m. via video conference to discuss the issues raised in

9   this Motion, as well as Namecheap's intent in seeking the Court's permission to file its

10   moving papers in excess of the page limits.  In attendance were Eugene Rome and Sridavi

11   Ganesan on behalf of Defendants, and David Steele, Howard Kroll, Steven Lauridsen, and

12   Jeffrey Sindelar.  The conference lasted approximately one hour.  During the conference,

13   the parties discussed the presented issues at length. However, Plaintiffs did not agree that

14   Defendants' proposed motions had any merit, did not propose any amendment that would

15   cure the pleading, and would not stipulate to the filing of Namecheap's brief in excess of

16   the page limits, as indicated in its Motion to Exceed Page Limit.  *See* Dkt. # 21 at 4.  As no

17   resolution could be reached between the parties, WhoisGuard files the instant Motion.

18                    **MEMORANDUM OF POINTS AND AUTHORITIES**

19   **I.      INTRODUCTION**

20       Notwithstanding the numerous reasons Plaintiffs' Complaint is deficiently pleaded

21   and devoid of substantive merit—which are set forth in detail in Namecheap's concurrently

22   filed Motion to Dismiss—this action should be dismissed with prejudice as to WhoisGuard

23   for a more basic reason: Plaintiffs fail to establish, and cannot plausibly establish, personal

24   jurisdiction over WhoisGuard.

25       WhoisGuard is incorporated in the Republic of Panama. Contrary to Plaintiffs'

26   allegations, its principal place of business is not located in Arizona. This is not an

27   "exceptional" case in which WhoisGuard has contacts that are substantial and of such a

28   nature as to render it "at home" in Arizona. *See Daimler AG v. Bauman*, 571 U.S. 117, 139

1

15744742

1   n.19 (2014). In addition, none of Plaintiffs' claims arise out of conduct by WhoisGuard that

2   occurred in or was directed toward Arizona. Nor can Plaintiffs impute Namecheap's

3   Arizona contacts to WhoisGuard to establish jurisdiction under an alter ego theory. Finally,

4   contrary to Plaintiffs' allegations, WhoisGuard did not specify Arizona in any forum

5   selection clause to which it is a party. The Court should therefore dismiss WhoisGuard with

6   prejudice for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

7          In the alternative, the Court should dismiss all claims as to WhoisGuard pursuant to

8   Fed. R. Civ. P. 12(b)(6) for the reasons set forth in Namecheap's concurrently filed motion

9   to dismiss. Pursuant to Local Rule 7.1(d)(2), WhoisGuard joins in and incorporates by

10  reference the arguments in Namecheap's motion, which equally apply to Plaintiffs' claims

11  against WhoisGuard and are recapitulated briefly in Section IV below.

12  **II.     STATEMENT OF FACTS**

13         **A.     Plaintiffs' Claims**

14         The facts of this case are set forth in detail in Namecheap's concurrently filed motion

15  to dismiss. In short, Plaintiffs allege that customers of Namecheap, an Internet domain name

16  registrar, registered and used domain names that are identical or confusingly similar to

17  Plaintiffs' trademarks. Complaint, ¶¶ 107, 110. WhoisGuard administered the domain

18  names and provided privacy protection services to Namecheap's customers which

19  prevented the customers' personal information from being made publicly available in the

20  WHOIS database.[1] *Id*. at ¶¶ 52-55 & Exh. 2, ¶ 2. Plaintiffs further allege that WhoisGuard

21  failed to disclose the identity or contact information of the customers who registered the

22  domains after Plaintiffs' representatives provided notice that the domains infringed or

23  cybersquatted on Plaintiffs' trademarks. *Id*. at ¶ 84.

24         Notwithstanding the fact that Defendants are merely service providers and did not

25  select or control the domain names at issue (*see id*. at Exh. 2, ¶¶ 2-3) Plaintiffs seek to hold

26  Namecheap and WhoisGuard liable for (1) cybersquatting, (2) trademark infringement, (3)

27  _____

28  [1] The WHOIS database is a centralized, publicly accessible database of information concerning all domain names in a top-level domain (*e.g.*, ".com," ".net," ".org," or ".edu"). *Solid Host, NL v. Namecheap, Inc*., 652 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009).

15744742

false designation of origin, and (4) dilution of their trademarks. All of Plaintiffs claims are asserted under the Lanham Act, 15 U.S.C. § 1051 *et seq.*

**B.       Allegations Relevant to Personal Jurisdiction Over WhoisGuard**

The Complaint alleges that the Court has personal jurisdiction over WhoisGuard based on the allegations that "the business of WhoisGuard is to provide services to Namecheap in Arizona;" WhoisGuard's principal place of business is in Phoenix, Arizona; WhoisGuard operates datacenters in Arizona; its headquarters and employees are in Arizona; and "Whoisguard specifies Arizona in the forum selection clauses in its contracts." Complaint, ¶ 28.

Contrary to the Complaint's allegations, WhoisGuard's principal place of business is in Panama City, Republic of Panama, not Phoenix, Arizona. Declaration of Vernon Emmanuel Salazar Zurita filed herewith ("Zurita Decl."), ¶ 3. WhoisGuard has no offices or employees in Arizona. *Id*. at ¶ 4. Also contrary to Plaintiffs' allegations, the forum selection clauses of WhoisGuard's contracts between it and users of its services specify the courts of the Republic of Panama, not Arizona, as the forum in which disputes must be resolved. *Id*. at Exh. 1, ¶ 13 & Exh. 2, ¶ 14. The business of WhoisGuard is to provide a WHOIS privacy protection service to users who registrar domain names. *Id*. at ¶ 2.

Plaintiffs allege that Namecheap is the alter ego of WhoisGuard because Namecheap describes the service as "WhoisGuard by Namecheap;" customers can enable the WhoisGuard service from their Namecheap account; the WhoisGuard service is offered for free to Namecheap's customers; in the past, when third parties requested a registrant's identity and contact information from WhoisGuard, Namecheap, instead of WhoisGuard, provided the responsive information; and when WhoisGuard is served with a subpoena or when an administrative domain name complaint is filed against WhoisGuard's licensees, Namecheap, instead of WhoisGuard, responds. Complaint, ¶¶ 59-64. Plaintiffs also allege that Namecheap previously owned the whoisguard.com domain name and, on information and belief, that it currently operates and controls the whoisguard.com website. *Id*. at ¶¶ 65-66.

15744742

1      Contrary to the Complaint's allegations, WhoisGuard and Namecheap are separate

2   corporations. Zurita Decl., ¶¶ 3, 8. WhoisGuard provides its WHOIS privacy protection

3   services to customers of Namecheap pursuant to a service agreement between WhoisGuard

4   and Namecheap. *Id*. at ¶ 7. WhoisGuard maintains its own corporate structure, has its own

5   officers, keeps its own books and records, pays its own taxes, and follows all corporate

6   formalities required under the law of the Republic of Panama. *Id*. at ¶ 8. Further,

7   WhoisGuard, not Namecheap, owns the whoisguard.com domain and website. *Id*. at ¶ 9.

8   **III.     THE COURT LACKS PERSONAL JURISDICTION OVER WHOISGUARD**

9      Plaintiffs bear the burden of establishing personal jurisdiction over WhoisGuard.

10  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where a

11  motion to dismiss for lack of personal jurisdiction is based on written submissions rather

12  than an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdictional

13  facts. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). While uncontroverted

14  allegations must be taken as true, the plaintiff cannot "simply rest on the bare allegations of

15  its complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise,

16  supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784,

17  787 (9th Cir. 1977).

18     Where, as here, there is no applicable federal statute governing personal jurisdiction,

19  federal courts follow the law of the state in which the district court is located. *Daimler*, 571

20  U.S. at 125. Under Arizona's long-arm statute, personal jurisdiction may be asserted to the

21  extent permitted by the Due Process Clause of the United States Constitution. *Brink v. First*

22  *Credit Res.*, 57 F. Supp. 2d. 848, 859 (D. Ariz. 1999); Ariz. R. Civ. P. 4.2(a). Therefore, to

23  determine whether there is personal jurisdiction over a defendant, courts inquire whether

24  the exercise of jurisdiction "comports with the limits imposed by federal due process."

25  *Ranza*, 793 F.3d at 1068 (quoting *Daimler*, 571 U.S. at 125). Courts undertake this analysis

26  based on two types of personal jurisdiction, general and specific (*id*. at 1068-69), neither of

27  which exists here as to WhoisGuard.

28

4

15744742

1

2

**A.   WhoisGuard Is Not "At Home" in Arizona for Purposes of General Jurisdiction**

3   To establish general personal jurisdiction, WhoisGuard's "affiliations with

4   [Arizona] [must be] so continuous and systematic as to render it essentially at home" in

5   Arizona. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)

6   (internal quotation marks omitted). The Supreme Court has cautioned that "only a limited

7   set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction

8   there" and that for a corporation, it is a place "in which the corporation is fairly regarded as

9   at home. With respect to a corporation, the place of incorporation and principal place of

10  business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (internal

11  citations and quotation marks omitted). Only in an "exceptional" case will "a corporation's

12  operations in a forum other than its formal place of incorporation or principal place of

13  business . . . be so substantial and of such a nature as to render the corporation at home in

14  that State." *Id*. at 139, n.19.

15  WhoisGuard's contacts with Arizona fall far short of the "continuous and

16  systematic" contacts that, in rare instances, warrant general jurisdiction over

17  non-domiciliaries. *See id.* at 138-39. Plaintiffs concede that WhoisGuard is incorporated in

18  the Republic of Panama, not Arizona. WhoisGuard's principal place of business is in

19  Panama City. Zurita Decl., ¶ 3. It is not licensed to do business in Arizona. *Id*. at ¶ 4. It does

20  not maintain offices, telephone numbers, or bank accounts in Arizona, has no employees or

21  agents for service of process in Arizona, and neither owns nor leases any real estate there.

22  *Id*. Even if WhoisGuard's datacenters are located in Arizona, that is insufficient to establish

23  personal jurisdiction. Plaintiffs "cannot rely on the fortuitous location of Defendant's

24  servers to establish personal jurisdiction. If the mere location of a server could create

25  personal jurisdiction, any state where a server is located would have personal jurisdiction

26  over any user of that server." *Man-D-Tec, Inc. v. Nylube Prods. Co.*, No. CV-11-1573-

27  PHX-GMS, 2012 WL 1831521, *2 (D. Ariz. May 18, 2012) (Snow, J.) (internal citation

28  and quotation marks omitted). Moreover, users in Arizona represent less than one percent

5

15744742

1    of WhoisGuard's total user base. Zurita Decl., ¶ 5. This is insufficient to establish general

2    jurisdiction. *See Man-D-Tec*, 2012 WL 1831521 at *3 (Arizona sales amounting to 0.5% of

3    defendant's total sales were insufficient to establish general jurisdiction where there was no

4    other evidence of systematic forum activities).

5         Accordingly, this Court lacks general jurisdiction over WhoisGuard.

6         **B.    The Court Lacks Specific Jurisdiction Over WhoisGuard**

7         For the Court to exercise specific jurisdiction over WhoisGuard, "the suit must arise

8    out of or relate to [WhoisGuard's] contacts with the forum." *Bristol-Myers Squibb Co. v.*

9    *Super. Ct.*, 137 S. Ct. 1773, 1780 (2017) (internal quotation marks and brackets omitted).

10   Three requirements must be met: (1) the defendant must have purposefully directed its

11   activities or purposefully availed itself of the benefits afforded by the forum's laws; (2) the

12   claim must arise out of or relate to the defendant's forum-related activities; and (3) the

13   exercise of jurisdiction must comport with fair play and substantial justice. *Williams v.*

14   *Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017). None of the requirements are met

15   here.

16        1.    *WhoisGuard Did Not Purposefully Direct its Activities Towards*
          *Arizona*
17

18        Under the first prong of the test for specific jurisdiction, the "purposeful availment"

19   test applies where the underlying claims arise from a contract, while the "purposeful

20   direction" test applies where the claims arise from tortious conduct. *Morrill v. Scott Fin.*

21   *Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Because Plaintiffs' cybersquatting and

22   trademark claims arise in tort, the purposeful direction test applies. *See Adidas Am., Inc. v.*

23   *Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1087 (D. Or. 2016) (because trademark claims

24   arise in tort, purposeful direction applies).

25        To establish purposeful direction, Plaintiffs must show that WhoisGuard "(1)

26   committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that

27   the defendant knows is likely to be suffered in the forum state." *Morrill*, 873 F.3d at 1142

28   (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 111 (9th Cir. 2002)).

15744742

1    Plaintiffs allege no intentional conduct by WhoisGuard aimed at Arizona. The

2    Complaint alleges only that WhoisGuard "registered, trafficked in, or used" the infringing

3    domain names, that it failed to disclose the identity or contact information of its users to

4    Plaintiffs, and that it continued to provide its privacy service even after it received notices

5    from Plaintiffs. Complaint, ¶¶ 70-73, 84, 92. None of this alleged conduct has any

6    connection to Arizona sufficient to establish jurisdiction over WhoisGuard. *See Panavision*

7    *Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("[S]imply registering someone

8    else's trademark as a domain name and posting a web site on the Internet is not sufficient

9    to subject a party domiciled in one state to jurisdiction in another."). Further, Plaintiffs are

10   not based in Arizona and do not allege that any injury was suffered in Arizona. Therefore,

11   Plaintiffs cannot demonstrate purposeful direction.

12           *2.      The Claims Do Not Arise out of any Activities of WhoisGuard in*

13                   *Arizona*

14   Under the second prong of the test for specific jurisdiction, the "arising out of"

15   requirement is met if, "but for" the contacts between the defendant and the forum state,

16   plaintiffs' cause of action would not have arisen. *Ballard v. Savage*, 65 F.3d 1495, 1500

17   (9th Cir. 1995). Again, Plaintiffs allege no activity by WhoisGuard that occurred in Arizona,

18   nor any injury that occurred in Arizona. Therefore, there is no Arizona contact "but for"

19   which their claims would not have arisen, and the second prong is not met.

20           *3.      Exercising Personal Jurisdiction Over WhoisGuard Would be*

21                   *Unreasonable*

22   In evaluating the reasonableness of the exercise of jurisdiction, courts consider the

23   burden on the defendant in defending in the forum, the interest of the forum state in

24   adjudicating the dispute, the importance of the forum to the plaintiff's interest in obtaining

25   convenient and effective relief, and considerations of judicial efficiency in adjudicating the

26   case. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). Considering that

27   WhoisGuard is a company incorporated outside of the United States, and the slight interests

28

7

1   of Plaintiffs and the State of Arizona, the exercise of jurisdiction over WhoisGuard would

2   be unreasonable and unfair.

3        Where, as in this case, a defendant is a foreign company, the "unique burdens" on

4   the defendant having to defend itself here should be given "significant weight in assessing

5   the reasonableness of stretching the long arm of personal jurisdiction over national borders."

6   *Asahi Metal Indus. Co., v. Super. Ct.*, 480 U.S. 102, 114 (1987). The concept of "fair play

7   and substantial justice" inherent in Constitutional Due Process prevents a defendant from

8   being unduly burdened by having to defend itself in a faraway and inconvenient forum. *Int'l*

9   *Shoe Co. v. Washington*, 326 U.S. 310, 323-24 (1945); *see also Republic of Panama v.*

10  *BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 944-45 (11th Cir. 1997) (summarizing

11  Supreme Court opinions on "fair play and substantial justice" requirement). It would be

12  unreasonable to require WhoisGuard, a Panamanian corporation, to defend itself in a

13  foreign nation's judicial system. *See Asahi*, 480 U.S. at 114.

14       Next, the State of Arizona has no particularized interest in adjudicating this dispute

15  given the federal nature of Plaintiffs' claims for violation of the Lanham Act. *Cf. Patent*

16  *Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010)

17  (because patent infringement is a matter of federal law, forum state's interest in "furthering

18  fundamental substantive social policies" is not implicated). Moreover, because Plaintiffs

19  are not Arizona residents, Arizona's legitimate interests in the dispute and the importance

20  of an Arizona forum to Plaintiffs' interests in obtaining relief are considerably diminished.

21  *See Asahi*, 480 U.S. at 114; Complaint, ¶¶ 20-22.

22       Accordingly, Plaintiffs' Complaint fails to meet any of the three prongs of the test.

23  This Court lacks specific jurisdiction over WhoisGuard.

24       **C.    Plaintiffs Cannot Establish Jurisdiction Under the Alter Ego Test**

25       Plaintiffs cannot establish personal jurisdiction over WhoisGuard by imputing the

26  Arizona contacts of Namecheap to it either. While there previously was an "agency test"

27  for personal jurisdiction, following the Supreme Court's opinion in *Daimler*, an agency

28  relationship is no longer sufficient to impute one entity's forum contacts to another

8

15744742

1  defendant entity. *Daimler*, 571 U.S. at 134-36; *Ranza*, 793 F.3d at 1071 (Supreme Court

2  invalidates the "agency test"). Post-*Daimler*, to justify imputing one defendant's forum

3  contacts to another, a plaintiff must demonstrate that the two defendants are "not really

4  separate entities" under the more rigorous "alter ego test." *Ranza*, 793 F.3d at 1071; *see*

5  *Davis v. Metro Prods. Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("Because the corporate form

6  serves as a shield for the individuals involved for purposes of liability as well as jurisdiction,

7  many courts search for reasons to 'pierce the corporate veil' in jurisdictional context parallel

8  to those used in liability contexts.").

9      To satisfy the alter ego test under federal law,[2] a "plaintiff must make out a prima

10  facie case (1) that there is such unity of interest and ownership that the separate personalities

11  of the two entities no longer exist and (2) that failure to disregard their separate entities

12  would result in fraud or injustice." *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal Corp.*,

13  248 F.3d 915, 926 (9th Cir. 2001)). Plaintiffs cannot meet either prong.

14      *1.   Unity of Interest and Ownership*

15      The "unity of interest and ownership" prong of the alter ego test requires a showing

16  that Namecheap controls WhoisGuard "to such a degree as to render the latter the mere

17  instrumentality of the former." *Ranza*, 793 F.3d at 1074. There must be "pervasive control,"

18  such as when a parent corporation "dictates every facet of the subsidiary's business—from

19  broad policy decisions to routine matters of day-to-day operation." *Id*. If the two entities

20  observed corporate formalities, even where a corporation is directly involved in its

21  subsidiary's decision-making and general business policies, provides loans and financing

22  to the subsidiary, and maintains overlapping directors and officers with the subsidiary, the

[2] "In federal-question cases such as this, district courts apply federal common law when determining whether they can exercise personal jurisdiction over a party based on an alter ego theory." *McGeachy v. Pinto Alley Mining Corp.*, 2:16-cv-03348 JWS, 2017 WL 3130639, *4 (D. Ariz. July 24, 2017) (internal quotation marks omitted); *but see Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 769 n.3 (9th Cir. 1992) (noting strong presumption that state law should be incorporated into federal common law where corporate law is at issue). Even if Arizona law were to apply, however, "the alter ego doctrine is substantially the same under federal and Arizona law." *McGeachy*, 2017 WL 3130639 at *4 n.1.

9

15744742

1  level of control is still insufficient to negate the entities' separate personalities. *Unocal*, 248

2  F.3d at 927-28.

3  Plaintiffs cannot show that Namecheap exerted the strict level of control over

4  WhoisGuard required under the "unity of interest and ownership" prong of the test.

5  WhoisGuard and Namecheap are two separate entities that observe their own corporate

6  formalities. Zurita Decl., ¶ 8. Further, WhoisGuard maintains its own corporate officers,

7  keeps its own books and records, and pays its own taxes. *Id*. The complaint makes no

8  showing that WhoisGuard is undercapitalized.

9  The alter ego allegations in the Complaint are insufficient to establish that

10  WhoisGuard and Namecheap are "not really separate entities." Again, Plaintiffs may not

11  simply rest on the allegations of their Complaint, but must "come forward with facts, by

12  affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys.*, 551 F.2d at 787.

13  The fact that Namecheap describes WhoisGuard's service as "WhoisGuard by

14  Namecheap" only demonstrates that WhoisGuard is a service provider of Namecheap.

15  Further, that the service is offered for free is proof of nothing, as WhoisGuard provides its

16  services to customers of Namecheap pursuant to a services agreement between WhoisGuard

17  and Namecheap. Zurita Decl., ¶ 7. Similarly, Namecheap providing customer information

18  to requests, subpoenas, or in response to administrative complaints on behalf of

19  WhoisGuard is attributable to the services agreement between the two. *See id*. Contrary to

20  Plaintiffs' suggestion, the existence of a service agreement between the two companies

21  actually weighs *against* an alter ego relationship because it shows "that the two corporations

22  were dealing with each other as separate and independent entities dealing at arm's length."

23  *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1179 (D. Ariz. 2010) (Snow,

24  J.). Plaintiffs also allege on information and belief that Namecheap currently owns the

25  whoisguard.com domain and website, but this is inaccurate. WhoisGuard, not Namecheap,

26  owns whoisguard.com. Zurita Decl., ¶ 9.

27  Merely establishing a connection between the two companies is insufficient to justify

28  disregarding their separate corporate form; Plaintiffs must present facts to establish that

15744742

1    Namecheap "exercised substantially total control over the management and activities" of

2    WhoisGuard. *Patterson*, 684 F. Supp. 2d at 1179. Plaintiffs have not met, and cannot meet,

3    this rigorous test under the first prong.

4                    *2.      Fraud or Injustice*

5            Nor can Plaintiffs demonstrate that fraud or injustice would result if WhoisGuard's

6    corporate form were not disregarded, as required by the second prong of the alter ego test.

7    To satisfy this prong, Plaintiffs would need to show that the entity was formed to perpetrate

8    a fraud or is being used for fraudulent purposes. Given that the privacy services provided

9    by WhoisGuard are "indisputably legal," (*see Solid Host, NL v. Namecheap, Inc.*, 652 F.

10   Supp. 2d 1092, 1110 (C.D. Cal. 2009)), and are offered to all of Namecheap's customers

11   (not just to cybersquatters), Plaintiffs cannot make this showing. Moreover, WhoisGuard's

12   privacy services and the relationship between Namecheap and WhoisGuard do not prevent

13   victims of trademark infringement or cybersquatting from seeking redress with the courts

14   or filing administrative actions with WIPO or ICANN. *See Rosen v. Imagevenue.com*, CV

15   13-01742 SJO (MANx), 2013 WL 12132052, *5 (C.D. Cal. Nov. 26, 2013). Indeed, by

16   Plaintiffs' own admission, when a subpoena is served on WhoisGuard or an administrative

17   trademark action (through ICANN or WIPO) is filed against it, the unmasked WHOIS

18   customer information is provided. Complaint, ¶¶ 63-64.

19           Accordingly, Plaintiffs cannot meet their burden on the second prong and cannot

20   impute Namecheap's Arizona contacts to WhoisGuard under the alter ego test.

21       **D.      WhoisGuard Did Not Agree to Litigate this Dispute in Arizona**

22           The Complaint also alleges that the Court has personal jurisdiction over WhoisGuard

23   because "WhoisGuard specifies Arizona in the forum selection clauses in its contracts," *Id*.

24   at ¶ 28, but this allegation is incorrect. The forum selection clauses of WhoisGuard's

25   contracts with its users specify the Republic of Panama, not Arizona. Zurita Decl., Exh. 1,

26   ¶ 13 & Exh. 2, ¶ 14.

27           While Namecheap's Domain Name Registration Agreement and WHOIS Proxy

28   Agreement do include Arizona forum selection clauses (*see* Complaint, Exhs. 1 & 2),

11

15744742

1   Plaintiffs cannot rely on those contracts to establish jurisdiction over WhoisGuard because

2   WhoisGuard is not a party to them. A forum selection cause may give rise to a waiver of a

3   defendants' objections to personal jurisdiction only if the defendant agreed to be bound to

4   it. *Holland Am. Line Inc. v. Wartsilla N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007); *Wu*

5   *v. BDK DSD*, No. CV-15-01898-PHX-DLR, 2016 WL 1059534, *2 (D. Ariz. March 17,

6   2016) ("Much like contract formation, personal jurisdiction based on a forum selection

7   clause is grounded on some form of consent.").

8        Both of the Namecheap contracts attached as Exhibits 1 and 2 to the Complaint are

9   agreements between it and its customers. WhoisGuard is not a party to either agreement,

10  despite Plaintiffs' inaccurate characterization of the Namecheap WHOIS Proxy Agreement

11  as "Whoisguard's Proxy Agreement." Complaint, ¶ 29. The Namecheap WHOIS Proxy

12  Agreement provides that it is a supplement to "your [*i.e.*, the customer's] Domain

13  Registration Agreement and/or Hosting Services Agreement between you on the one hand

14  and Namecheap on the other hand[.]" *Id.*, Exh. 2, ¶ 1. There is no evidence that WhoisGuard

15  assented to its terms. *See Holland Am.*, 485 F.3d at 458 (no personal jurisdiction where

16  plaintiff had no evidence that defendants had assented to its form terms containing forum

17  selection clause).

18       Moreover, even if there were evidence that WhoisGuard had assented to the terms,

19  Plaintiffs' claims in this action are not within the scope of the jurisdictional clauses in either

20  of the Namecheap agreements attached to the Complaint. *See* Complaint, Exh. 1, ¶ 30

21  (providing consent to jurisdiction in Arizona "in relation to any dispute arising under this

22  Agreement") & Exh. 2, ¶ 13 (providing consent to jurisdiction in Arizona "in relation to

23  any dispute between you and Namecheap under this Proxy Agreement"). Plaintiffs' claims

24  for cybersquatting and trademark infringement do not "arise under" the Namecheap Domain

25  Registration Agreement. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d

26  1458, 1464 (9th Cir. 1983) ("arising under" clause is restricted to "disputes and

27  controversies relating to the interpretation of the contract and matters of performance"). Nor

28

15744742

1  do Plaintiffs' claims involve a dispute between Namecheap and one of its customers under

2  the Namecheap WHOIS Proxy Agreement.

3        Accordingly, each basis asserted by Plaintiffs for personal jurisdiction over

4  WhoisGuard fails. The Court should therefore dismiss all claims against WhoisGuard for

5  lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

6  **IV.     THE COMPLAINT FAILS TO STATE A CLAIM AS TO WHOISGUARD**

7        In the alternative, the Court should dismiss Plaintiffs' Complaint as to WhoisGuard

8  for the separate and independent reason that the Complaint fails to state a claim pursuant to

9  Fed. R. Civ. P. 12(b)(6). Pursuant to Local Rule 7.1(d)(2), WhoisGuard joins in and

10  incorporates by reference the arguments in Namecheap's concurrently filed motion to

11  dismiss, which are briefly summarized here.

12        **A.     Plaintiffs Fail to Allege a Viable Claim for Cybersquatting**

13        Plaintiffs' first cause of action for violation of the Anti-Cybersquatting Protection

14  Act ("ACPA") must be dismissed as to WhoisGuard.

15        First, Plaintiffs fail to plead facts to establish that WhoisGuard acted with a bad faith

16  intent to profit specifically from Plaintiffs' marks. "The bad faith required to support a

17  cybersquatting claim is not general bad faith, but 'a bad faith intent to profit *from the*

18  *mark.*'" *Solid Host*, 652 F. Supp. 2d at 1110 (quoting 15 U.S.C. § 1125(d)(1)(A)(i)). In *Solid*

19  *Host*, the District Court for the Central District of California held that Namecheap's

20  provision of the WhoisGuard privacy service—which the court characterized as an

21  "indisputably legal anonymous registration service"—and its refusal to reveal its

22  customers' identity did not constitute a bad faith intent to profit from the goodwill of

23  another's mark under the ACPA. *Id*. Although the *Solid Host* court found that the plaintiff

24  in that case had alleged sufficient facts to plead a claim for contributory cybersquatting, the

25  Ninth Circuit subsequently held that the ACPA does not include a cause of action for

26  contributory cybersquatting. *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d

27  546, 553-54 (9th Cir. 2013). Further, the Complaint's allegations that WhoisGuard

28  continued to provide its privacy service even after it received Plaintiffs' notices do not

15744742

1   support a finding that WhoisGuard had a bad faith intent to profit "at the time of

2   registration" as required under the ACPA. *See* 15 U.S.C. § 1125(d)(1); *GoPets Ltd. v. Hise*,

3   657 F.3d 1024, 1030 (9th Cir. 2011).

4         Second, Plaintiffs' cybersquatting claim also fails for the separate reason that the

5   Complaint does not plausibly establish that WhoisGuard "used," "trafficked in," or

6   "registered" the infringing domains within the meaning of the ACPA. The Complaint

7   alleges no facts about how WhoisGuard purportedly "used" the domains, and, contrary to

8   Plaintiffs' bare allegation, the Namecheap WHOIS Proxy Agreement expressly provides

9   that the customers, not WhoisGuard, retained control over the domains. Complaint, Exh. 2,

10  ¶ 3. Nor do Plaintiffs allege that WhoisGuard received any compensation for licensing the

11  infringing domains to the customers, but instead allege that the privacy services are

12  provided for free. *Id*. at ¶ 61. Thus, WhoisGuard's services cannot constitute "trafficking"

13  under the ACPA, either. *See* 15 U.S.C. § 1125(d)(1)(E) ("trafficking" refers to transfers

14  "for consideration or receipt in exchange for consideration.").

15        Finally, although WhoisGuard, acting as an administrator, literally registered the

16  domain names for the customers in order to provide the privacy services, the customer, not

17  WhoisGuard, is the "registrant" within the meaning of the ACPA. "The word 'registers,'

18  when considered in context, obviously refers to a person who presents a domain name for

19  registration, not to the registrar." *Solid Host*, 652 F. Supp. 2d at 1104 (quoting *Lockheed*

20  *Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp. 2d 648, 650-51 (N.D. Tex. 2001)

21  ("*Lockheed Martin II*")). Thus, the persons who "registered" the infringing domains within

22  the meaning of the ACPA are Namecheap's customers who selected and presented the

23  domain names for registration, not Defendants, who merely acted in the role of service

24  providers. Accordingly, Plaintiffs' first claim for cybersquatting must be dismissed.

25      **B.**    **Plaintiffs Fail to Allege Viable Claims for Trademark Infringement, False Designation of Origin, or Trademark Dilution**

26

27        Plaintiffs second, third, and fourth causes of action also fail. Plaintiffs have failed to

28  allege that WhoisGuard used their marks "in commerce" in connection with the sale or

14

15744742

advertising of goods or services within the meaning of 15 U.S.C. §§ 1114(1) and 1125(a), a requisite element for their claims for trademark infringement, false designation of origin, and dilution. *See Gibson Brands, Inc. v. Viacom Int'l, Inc.*, 640 Fed. Appx. 677, 678 (9th Cir. 2016); *Bosley Med. Inst., Inc. v. Kremer*, 403 F. 3d 672, 677 (9th Cir. 2005) (use of mark must be "in connection with a sale of goods or services").

"Registration of a domain name without more does not constitute service mark or trademark infringement." *GoPets*, 657 F.3d at 1035; *see Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840, *12 (D. Ariz. March 11, 2020) (registrant who did not market or sell goods or services in connection with infringing domains did not use marks in commerce or violate Lanham Act); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 959 (C.D. Cal. 1997) ("*Lockheed Martin I*") ("Where domain names are used to infringe, the infringement does not result from [the registrar's] publication of the domain name list, *but from the registrant's use of the name on a Web site or other Internet form of communication in connection with goods or services.*") (emphasis added).

The Complaint is devoid of any allegations that WhoisGuard itself used the marks in connection with the sale or advertisement of any goods or services. Instead, Plaintiffs allege that WhoisGuard's licensees (*i.e.*, the customers who registered the domains) used the marks in interstate commerce. Complaint, ¶¶ 127, 137, 147. Because Plaintiffs fail to allege the requisite element of a "use in commerce" by WhoisGuard, their second, third, and fourth causes of action must be dismissed. [3]

Moreover, Plaintiffs are unable to allege that WhoisGuard accepted liability for Defendants' customers' acts under the Registrar Accreditation Agreement ("RAA"), an

---

[3] Plaintiffs do not allege any cause of action for contributory or vicarious trademark liability, nor can they. *See Perfect 10, Inc. v. Visa Int'l. Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (contributory liability requires that defendant "intentionally induced" third party's infringement or "directly controlled and monitored" the instrumentality used; vicarious liability requires a defendant and infringer had an apparent or actual partnership, authority to bind one another, or joint ownership or control over infringing product). WhoisGuard does not control the customers or the customer's use of domain names. *See* Complaint, Exh. 2, ¶ 3.

15

15744742

1  agreement between the Internet Corporation for Assigned Names and Numbers ("ICANN")

2  and domain name registrars like Namecheap, because WhoisGuard is not a party to that

3  agreement. *See id*. at Ex. 7. Further, to the extent Plaintiffs claim to be third party

4  beneficiaries under that agreement, the Ninth Circuit has already held that RAA does not

5  create any right or duty owed to nonparties, such as Plaintiffs. *Balsam v. Tucows, Inc.*, 627

6  F. 3d 1158, 1162-1163 (9th Cir. 2010). Similarly, nothing in the Namecheap's Domain

7  Registration Agreement indicates that WhoisGuard, as the licensor of the domains, accepts

8  liability for its customers' infringing acts.  *See* Complaint, Exh. 1

9       Thus, each of Plaintiffs' claims against WhoisGuard fail as a matter of law. The

10  Court should therefore dismiss all claims against WhoisGuard pursuant to Fed. R. Civ. P.

11  12(b)(6).

12  **V.      CONCLUSION**

13      For the reasons set forth above, the Court should dismiss the Complaint in its entirety

14  as to WhoisGuard.

15

16  Dated:  April 27, 2020

17                                        **ROME & ASSOCIATES, A.P.C.**

18

19                                        By: *s/ Eugene Rome*
                                              Eugene Rome
20                                            Sridavi Ganesan
                                              Brianna Dahlberg
21

22                                        **FENNEMORE CRAIG, P.C.**

23

24

25                                        By: *s/ Mario C. Vasta*
                                              Ray K. Harris
26                                            Mario C. Vasta

27                                            Attorneys for Defendants
                                              Namecheap, Inc. and Whoisguard, Inc.
28

16

15744742