David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Facebook, Inc., Instagram, LLC and
WhatsApp Inc.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>        Defendants. | Case No. CV-20-470-PHX-GMS<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT WHOISGUARD, INC.'S AMENDED MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**<br><br>(Oral Argument Requested) |

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## I.   INTRODUCTION

Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp Inc. (collectively, "Plaintiffs") own numerous famous and distinctive trademarks including FACEBOOK, INSTAGRAM and WHATSAPP (collectively, "Plaintiffs' Marks"). Defendants Namecheap, Inc. ("Namecheap") and Whoisguard, Inc. ("Whoisguard") (collectively "Defendants")[1] have registered, trafficked in, and used, with a bad faith intent to profit, 45 domain names that are identical or confusingly similar to Plaintiffs' Marks (the "Infringing Domain Names"). The Infringing Domain Names include facebo0k-login.com, facebok-security.com, 1nstagrambusinesshelp.com, instagramlogin.org, whatapp.services, and whatsappsex.club, and others that were used to perpetrate phishing, malware, spam, fraud, and other identity-fraud and financial crimes against the general public through impersonating Plaintiffs and infringing their trademarks.

Namecheap does not challenge personal jurisdiction because its principal place of business is in Arizona. Whoisguard, Namecheap's alter ego, has moved to dismiss under Fed. R. Civ. P. 12(b)(2), arguing it is not subject to personal jurisdiction in the United States because it is a Panamanian corporation based in Panama.

Personal jurisdiction exists over Whoisguard in Arizona for three independent reasons. First, as a proxy service provider, Whoisguard was required to register each Infringing Domain Name by entering into Namecheap's Domain Name Registration Agreement ("Namecheap Registration Agreement"). By repeatedly entering these agreements, Whoisguard each time expressly consented to jurisdiction in Arizona for third party suits such as this one. Second, as the alter ego of Namecheap, Whoisguard is subject to general jurisdiction in Arizona. Last, Whoisguard is subject to specific personal jurisdiction in Arizona because (1) it purposefully availed itself of the benefits of doing business in Arizona through its extensive business relationship with Arizona-based

---

[1] Namecheap is a registrar accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"), and Whoisguard is a proxy service established by Namecheap and used exclusively by Namecheap's customers to hide their identity.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Namecheap; and (2) this lawsuit arises out of that Namecheap-Whoisguard relationship, including the Namecheap Registration Agreements that select Arizona substantive law to govern disputes. Each of these reasons provides an independent basis for this Court to exercise personal jurisdiction over Whoisguard, and Whoisguard's 12(b)(2) Motion to Dismiss ("Motion") should thus be denied.

## II.    FACTUAL ALLEGATIONS

Plaintiffs are Delaware entities with their principal places of business in California. (Compl. ¶¶ 20–22.) Namecheap is subject to ICANN's Registrar Accreditation Agreement ("RAA"), which requires "Registered Name Holders[2] to enter into an electronic or paper registration agreement with Registrar." (*Id*. ¶¶ 3, 51, & Ex. 7 ¶ 3.7.7 (Doc. 1-5 at 16).) The Namecheap Registration Agreement does not include any limitation on third party beneficiaries. (*Id*. Ex. 1.)

Whoisguard, which is Namecheap's alter ego (*id*. ¶¶ 4, 25, 57–67), provides a proxy service to Namecheap's customers—and only Namecheap's customers—which they refer to as "WhoisGuard." (*Id*. ¶¶ 4, 28.) In order to provide the WhoisGuard service, Whoisguard registers domain names (as the registrant) so that it is listed as the registrant on publicly available domain name registration records, and licenses the use of the domain name to the customer. (*Id*. ¶¶ 5–6.) As required by the RAA, every time Whoisguard registers a domain name, it enters into the Namecheap Registration Agreement with Namecheap. (*Id*. ¶ 29.)[3] The terms of the Namecheap Registration Agreement (*id*. Ex. 1) and Namecheap WHOIS Proxy Agreement (*id*. Ex. 2) confirm that Whoisguard entered these agreements in order to provide the WhoisGuard proxy service.

Section 30 of the Namecheap Registration Agreement is titled "Governing law and

---

[2] The Anticybersquatting Consumer Protection Act uses the term "registrant" to refer to a person who registers and owns a domain name; ICANN and Namecheap uses the term "registered name holder" to refer to a person who registers and owns a domain name.

[3] Because Whoisguard does not provide its service for anyone other than Namecheap's customers, 100% of Whoisguard's business is secured through these Arizona-based contracts. (*Id*. ¶ 28.)

jurisdiction for disputes." (*Id.* Ex. 1, § 30 (Doc 1-2, at 17.) The first paragraph of § 30 states that it "shall be governed by the laws of the United States of America and the State of Arizona." (*Id.*) The second paragraph of § 30 states "***for the adjudication of any third party disputes*** (i.e., disputes between you and another party, not us) ***concerning or arising from use of domain names registered hereunder, you shall submit without objection***, without prejudice to other potentially applicable jurisdictions, ***to the subject matter and personal jurisdiction of the courts*** (i) of the domicile of the registrant as it appears in the public WHOIS record for the domain name(s) in controversy, and (ii) ***where we are located, currently those State or federal courts whose geographic districts include Maricopa County, State of Arizona***." (*Id.* (emphasis added).)

When registering domain names, Namecheap and Whoisguard agree that "if [Whoisguard] license[s] the use of the domain name registered to [Whoisguard] to a third party, [Whoisguard] nonetheless remain[s] the domain name holder of record, and remain[s] responsible for all obligations under this Agreement, including but not limited to . . . ensuring non-infringement of any third party intellectual property rights or other rights." (*Id.* ¶ 15.) They also agreed that Whoisguard, as the Registered Name Holder, shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information and identity of its customer. (*Id.* ¶ 16.)

When Plaintiffs sent multiple notices to Whoisguard providing reasonable evidence of actionable harm and requesting that Whoisguard disclose the identity and current contact information for the relevant Whoisguard customer, Whoisguard (1) failed to disclose the information, thereby agreeing to accept liability for the harm caused by the use of the Infringing Domain Names (*id.* ¶¶ 17–18), and (2) continued to operate its proxy service for the Infringing Domain Names (*id.* ¶ 86 & Exs. 11 & 12).

## III.   ARGUMENT

### A. Fed. R. Civ. P. 12(b)(2) Motion to Dismiss Standard

On a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff must demonstrate jurisdiction is appropriate. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653

F.3d 1066, 1073 (9th Cir. 2011). "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Harris Rutsky & Co. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Because Arizona's long-arm statute is coextensive with federal due process requirements, the jurisdictional analyses under state and federal law are the same. *See A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (analyzing personal jurisdiction in Arizona under federal law); *see also Man-D-Tec, Inc. v. Nylube Prod. Co., LLC*, No. CV-11-1573-PHX-GMS, 2012 WL 1831521, at *1 (D. Ariz. May 18, 2012) (same). Plaintiffs need only make a prima facie showing that jurisdiction is proper to defeat Whoisguard's motion. *Harris*, 328 F.3d at 1129. The Court also accepts Plaintiffs' allegations as true and resolves factual conflicts in Plaintiffs' favor. *Id.*

## B. Whoisguard consented to personal jurisdiction before this Court.

Personal jurisdiction is a waivable right, and parties may consent to personal jurisdiction, including through forum-selection clauses. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Fid. Nat. Fin., Inc. v. Friedman*, No. CIV03-1222 PHX RCB, 2010 WL 960420, at *1 (D. Ariz. Mar. 15, 2010). Here, Whoisguard consented to personal jurisdiction by agreeing to the Namecheap Registration Agreement's forum selection clause every time it registered an Infringing Domain Name. This alone confers personal jurisdiction. *Productive People, LLC v. Ives Design*, No. CV-09-1080-PHX-GMS, 2009 WL 1749751, at *1 (D. Ariz. June 18, 2009) (holding forum selection clause in registrar's terms of service agreement "alone is sufficient to confer personal jurisdiction and venue" over dispute between registrant and third party trademark holder); *see also LimoStars, Inc. v. New Jersey Car & Limo, Inc.*, No. CV-10-2179-PHX-LOA, 2011 WL 3471092, at *14 (D. Ariz. Aug. 8, 2011), *report and recommendation adopted* 2011 WL 4101100 (D. Ariz. Sept. 8, 2011) (holding New Jersey citizen consented to jurisdiction in Arizona for disputes arising out of domain name registration where registration agreement contained forum selection clause). When a domain name registration agreement's forum selection clause applies to "disputes concerning the use of

1  any domain name registered with" a registrar, that clause may be invoked by a third party

2  alleging a domain name was used to infringe its trademark rights. *Id.* at *2.

3       Every time Whoisguard registered an Infringing Domain Name, it agreed to the

4  terms of the Namecheap Registration Agreement, including its forum selection clause, and

5  therefore consented to personal jurisdiction in Arizona.

6       **1.  Whoisguard registered each Infringing Domain Name.**

7       There is no dispute that Whoisguard provides a proxy service to its customers by

8  registering domain names on their behalf. (Compl. ¶ 4; Namecheap's 12(b)(6) Motion

9  ("12(b)(6) Motion") 4:1–3 (Doc. 30).) This admission, as well as the allegations in the

10  Complaint, the Complaint Exhibits, Namecheap's contracts, and Namecheap's

11  representations to its customers make clear that Whoisguard registered each Infringing

12  Domain Name as the registrant.

13       First, and most significantly, Whoisguard is, and was, listed as the domain name

14  registrant in the WHOIS directory for each Infringing Domain Name. (Compl. ¶ 55 & Ex.

15  11.)[4] Second, the Namecheap WHOIS Proxy Agreement with customers acknowledges

16  this: "By subscribing to the Namecheap WHOIS Privacy Protection Services [], you are

17  engaging Whoisguard to administer ***and register*** each domain name controlled by you ***in***

18  ***the name of Whoisguard***." (*Id*. Ex. 2, § 2 (Doc. 1-3 at 3) (emphasis added).) Third, the

19  Namecheap Registration Agreement states that when a customer uses a proxy service, "***the***

20  ***proxy service is the Registered Name Holder***, and the proxy service licenses the use of the

21  domain name to the customer." (*Id*. Ex. 1 (Doc. 1-2 at 54) (emphasis added).)[5] Finally,

22  Namecheap admits on its website that a "potential drawback" of the WhoisGuard service

23

24  [4] Defendants admit that "ICANN requires its accredited registrars, like Namecheap, to
collect and publish data regarding its registrants in the WHOIS databases." (12(b)(6) Mot.

25  4 n.2.)

26  [5] ICANN defined a proxy service like Whoisguard as one where the "Registered Name
Holder's contact information is displayed in the Registration Data Service (Whois) or

27  equivalent services rather than the P/P Customer's contact information." (*See* RAA

28  Specification on Privacy and Proxy Registrations, ¶ 1.3 (*Id*. Ex. 7 (Doc. 1-5 at 59).)

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

"*comes down to ownership*. Technically *the domain name registrant owns the website* (in the eyes of ICANN), *not you*." (*Id*. Ex. 8 (Doc. 1-6 at 2) (emphasis added).)

### 2. In order to register each infringing Domain Name, Whoisguard entered the Namecheap Registration Agreement.

ICANN requires every domain name registrant to enter into a Registration Agreement with an ICANN-accredited domain name registrar. (*Id*. ¶ 51 & Ex. 7 ¶ 3.7.7 (Doc. 1-5 at 16).) As the registrant of the Infringing Domain Names, Whoisguard was required to (and did) enter into the Namecheap Registration Agreement with Namecheap and agree to be bound by its terms. Whoisguard is a party to this Agreement because the Agreement defines "*you*" and "*your*" to include "*the registrant listed in the WHOIS contact information for the domain name,*" which, as shown above, is Whoisguard. (*Id*. Ex. 1 (Doc. 1-2 at 3) (emphasis added).) The Namecheap Registration Agreement confirms that Whoisguard is a party to the agreement because it "sets forth the terms and conditions of *your* use of domain name registration and related services." (*Id*. Ex. 1 (Doc. 1-2 at 3) (emphasis added).) Furthermore, the "Agreement explains our obligations to *you*, and explains *your* obligations to us for various services offered by Namecheap." (*Id.* (emphasis added).) Therefore, Whoisguard is a party to the Namecheap Registration Agreement for each Infringing Domain Name.[6]

### 3. The Namecheap Registration Agreement contains a forum selection clause through which Whoisguard consented to personal jurisdiction before this Court.

Section 30 of the Namecheap Registration Agreement contains a forum selection clause that explicitly confers jurisdiction over Whoisguard in Arizona. (Compl. Ex. 1, § 30 (Doc 1-2, at 17).) The second paragraph of § 30 states "*for the adjudication of any third party disputes* (i.e., disputes between *you*[7] and another party, not us) *concerning or arising*

---

[6] To the extent Defendants challenge this obvious interpretation of their own agreements, such conflicts must be resolved in Plaintiffs' favor. *Harris*, 328 F.3d at 1129.

[7] As described above, Namecheap Registration Agreement § 1 defines "you" to include

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*from use of domain names registered hereunder, you shall submit without objection*, without prejudice to other potentially applicable jurisdictions, *to the subject matter and personal jurisdiction of the courts* (i) of the domicile of the registrant as it appears in the public WHOIS record for the domain name(s) in controversy, and (ii) *where we are located, currently those State or federal courts whose geographic districts include Maricopa County, State of Arizona*." (*Id.* (emphasis added).)

Whoisguard's Motion ignores this plain language from the second paragraph of § 30 and instead only quotes the first paragraph of § 30, which provides consent to jurisdiction in Arizona "in relation to any dispute arising under this Agreement." (Mot. 12:18–13:2.) Try as they might, Defendants cannot avoid the relevant forum selection clause, which clearly governs this dispute.[8]

"Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir. 1988) (*citing The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972)). Defendants have not met this burden, especially since they did not even address the relevant forum selection clause. Courts also hold that non-parties, like Plaintiffs, are entitled to enforce forum selection clauses. *See Productive People*, 2009 WL 1749751, at *3 ("As a party with a dispute concerning the use of a domain name registered on GoDaddy.com . . . Plaintiff may enforce the clause against the Ives Defendants."); *Novak v. Tucows, Inc.*, No. 06–CV–1909, 2007 WL 922306, at *13 (E.D.N.Y. Mar. 26, 2007) (holding forum selection clause could be applied to non-signatory to domain name registration agreement).[9]

---

Whoisguard because Whoisguard is "the registrant listed in the WHOIS contact information for the domain name."

[8] The first paragraph of § 30 states the Agreement "shall be governed by the laws of the United States of America and the State of Arizona." (Compl. Ex. 1 (Doc. 1-2 at 17).)

[9] Any argument that Plaintiffs may not enforce the forum selection clause as third parties

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    Since Whoisguard consented to personal jurisdiction in Arizona when it entered into

2   the Namecheap Registration Agreement when registering each of the Infringing Domain

3   Names, Whoisguard's Motion should be denied on these grounds alone.

4   **C. General personal jurisdiction exists over Whoisguard because it is the alter ego of Namecheap, an Arizona-based company.**

5

6    As Namecheap's alter ego, Whoisguard shares Namecheap's principal place of

7   business in Arizona. While it "is well-established that a parent-subsidiary relationship

8   alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional

9   purposes," an exception to this general rule exists, and "a subsidiary's contacts may be

10  imputed to the parent where the subsidiary is the parent's alter ego." *Harris*, 328 F.3d at

11  1134; *see also Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015) (explaining "the alter

12  ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when,

13  in actuality, the foreign entity is not really separate from its domestic affiliate"); *In re*

14  *Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598–99 & n.25 (M.D. Pa.

15  2009) ("The consolidated entity is subject to jurisdiction in any forum where it operates

16  regardless of which formal corporation maintains an in-forum presence. Courts commonly

17  exercise alter ego jurisdiction over a foreign parent based upon its control of an in-forum

18  subsidiary, but reversal of the entities' geographic placement does not restrict the

19  application of alter ego principles").

20   A prima facie case for alter ego requires allegations "(1) that there is such unity of

21  interest and ownership that the separate personalities of the two entities no longer exist and

22  (2) that failure to disregard their separate identities would result in fraud or injustice."

23  *Harris*, 328 F.3d at 1134 (alteration and quotation marks in original omitted). As shown

24

25

26  is a non-starter. The Namecheap Registration Agreement does not contain a no-third party
    beneficiaries clause. (Compl. Ex. 1.) Even if it did, such a clause would be irrelevant

27  "because 'third-party beneficiary status is not required' for non-parties to benefit from or
    be bound by forum selection clauses." *Productive People*, 2009 WL 1749751, at *3 n.4

28  (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 210 n.7 (7th Cir. 1993)).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

below, the Complaint contains numerous allegations that if proven true would establish that Whoisguard is the alter ego of Namecheap (Compl. ¶¶ 59–64)—facts that are not disputed by Defendants or the Declaration of Vernon Emmanuel Salazar Zurita ("Zurita Decl.") (Doc. 31-1).

### 1. Unity of interest and ownership exist between Namecheap and Whoisguard.

Courts find that unity of interest and ownership exist when the parent controls the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073. This can be shown through "pervasive control," when the parent:

> "dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.*

Here, Plaintiffs allege that Namecheap performs virtually all services necessary for Whoisguard's operation, utilizing Whoisguard as a shell company to conduct activities Namecheap wants performed outside of the United States. Through this arrangement, Namecheap "dictates every facet of [Whoisguard's] business." *Id.* Aside from an "address" in Panama,[10] the allegations show that Whoisguard's operations are run entirely by Namecheap in Arizona. Most tellingly, Whoisguard has admitted in responding to Plaintiffs' domain name notices that it has no control over its own proxy service. (Compl. ¶ 98.) This service is integrated within Namecheap's website, which is operated via servers located in Arizona, where Namecheap is located. (*Id.* ¶¶ 27, 60.) Namecheap's customers

---

[10] The address Zurita claims is Whoisguard's principal place of business (Bloc Office Hub, Fifth Floor, Santa Maria Business District, Panama City, Republic of Panama) is the address of the Panamanian law firm Quijano & Associates. Consistent with Defendants' attempt to evade liability in the U.S., Quijano & Associates advertises itself as a "Jurisdictional Presence" for companies who seek a business address in Panama, as well as Belize, Switzerland, Seychelles, and the British Virgin Islands. *See* Quijano & Associates, WHO WE ARE, https://www.quijano.com/offices (last accessed May 22, 2020), attached to this Opposition as Exhibit A. Pursuant to Fed R. Evid. 201(b)(2) & (c)(2), the Court may take judicial notice of Quijano & Associates' website.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

obtain the WhoisGuard service directly from their Namecheap user account. (*Id.* ¶ 60 & Ex. 10.) Whoisguard operates its data centers in Arizona.[11] (*Id.* ¶ 28.) Namecheap, not Whoisguard, responded to trademark infringement notices sent to Whoisguard. (*Id.* ¶ 62.) Namecheap, not Whoisguard, has responded to subpoenas in other litigation sent to Whoisguard. (*Id.* ¶ 63.) When administrative domain name complaints are filed against Whoisguard, Namecheap, not Whoisguard, discloses the names of Whoisguard's customers. (*Id.* ¶ 64.) Namecheap, not Whoisguard, operates the whoisguard.com website.[12] (*Id.* ¶ 66.) Neither Defendants nor the Zurita Declaration dispute these allegations, which demonstrate the pervasive control Namecheap exercises over Whoisguard. Indeed, neither Zurita nor Whoisguard identify any jurisdiction where Whoisguard has employees or conducts its operations.

Plaintiffs also allege—and Defendants do not dispute (Mot. 10:13–17)—that Whoisguard provides its service for free. (Compl. ¶ 61.) Since Whoisguard provides its proxy services solely through Namecheap,[13] there is no evidence that Whoisguard earns any income from anyone. As such, offering this proxy service for free supports that

---

[11] Whoisguard does not dispute that its data centers are located in Arizona. It merely contends that even if its servers are in Arizona, this alone does not establish jurisdiction. (Mot. 5:22–28.) Whoisguard, however, ignores Plaintiffs' other allegations establishing alter ego-based general jurisdiction over Whoisguard in Arizona.

[12] Whoisguard contends that it owns whoisguard.com (Mot. 4:7; Zurita Decl. ¶ 9) but does not dispute that Namecheap ***operates*** the domain name. Nor does it dispute that Namecheap ***controls the content*** on Whoisguard's website. (Comp. ¶ 66.)

[13] Namecheap's website explains that WhoisGuard subscriptions can be used only with domains registered with Namecheap. "Can I use my WhoisGuard subscription for a domain not registered through Namecheap? Unfortunately, it is not possible. WhoisGuard subscriptions can be used only with domains registered with Namecheap." Namecheap, *Can I use my WhoisGuard subscription for a domain not registered through Namecheap*, https://www.namecheap.com/support/knowledgebase/article.aspx/279/37/can-i-use-my-whoisguard-subscription-for-a-domain-not-registered-through-namecheap (last accessed May 21, 2020)), attached to this Opposition as Exhibit B. Pursuant to Fed. R. Evid. 201(b)(2) & (c)(2), the Court may take judicial notice of Namecheap's website.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    Namecheap has failed to adequately capitalize or finance Whoisguard.[14] If Namecheap

2    receives money from customers for registration and proxy services, and fails to pay

3    Whoisguard, the two companies improperly commingle funds.

4            Further demonstrating the companies' disregard of their supposedly separate

5    existences, Namecheap confuses the role of registrar and proxy service provider in

6    representations made to customers on Namecheap's website: "The only potential drawback

7    of domain name privacy comes down to ownership. Technically, the ***domain name***

8    ***registrant*** owns the website (in the eyes of ICANN) not you. In most cases, this will never

9    be an issue because it's unlikely that ***your registrar*** is going to steal your domain." (Compl.

10   Ex. 8 (Doc. 1-6 at 2) (emphasis added).) Because the proxy service, Whoisguard, owns the

11   domain and website, and is not the registrar, stating that "your registrar" can steal the

12   domain name admits that Namecheap, the registrar, is the same entity as Whoisguard, the

13   domain proxy service.

14           Similarly, the two purported contracts Whoisguard cites in support of its Motion

15   frequently confuse or interchange Namecheap and Whoisguard for each other or reference

16   themselves in ways that disregard their separate existence. For example, Zurita Declaration

17   Exhibit 1 describes Whoisguard as both a party and a third party to the agreement. (¶ 1.2

18   (Doc 31-1 at 5) ("This Proxy Agreement explains Whoisguard's obligations to you in

19   connection with your WHOIS privacy protection services, and explains your obligations

20   to Whoisguard for privacy protection services offered by third Whoisguard [sic].").) It also

21   states that Whoisguard reserves the right to "instruct Whoisguard." (*Id.* ¶ 8.1 (Doc 31-1 at

22   7).)

23

24   ───────────────

     [14] Defendants argue the fact "that the service is offered for free is proof of nothing," and
25   state that the service is provided "pursuant to a Service Agreement between WhoisGuard
     [sic] and Namecheap" (Mot. 10:15–17; Zurita Decl. ¶ 7). Yet, they do not argue
26   Whoisguard receives any compensation for providing the service. Notably, Whoisguard
     did not provide the Court or Plaintiffs a copy of this alleged Service Agreement. As such,
27   the Court should disregard any argument based on this document, which is not before this
     Court. Fed. R. Evid. 802 & 1002.
28

Plaintiffs allege facts showing a unity of interest and ownership between Namecheap and Whoisguard because of the pervasive control Namecheap exercises over Whoisguard. To the extent Defendants challenge these allegations, such conflicts must be resolved in Plaintiffs' favor. *Harris*, 328 F.3d at 1129.

### 2. Failure to disregard Namecheap's and Whoisguard's separate identities would result in fraud or injustice.

At the pleading stage, a plaintiff needs only "plausibly allege" an inequitable result. *See In re Packaged Seafood Prods. Antitrust Lit.*, 277 F. Supp. 3d 1167, 1188 (S.D. Cal. 2017). Observance of separate identities may result in fraud or injustice when doing so would deny recovery to a plaintiff—especially before any discovery has taken place. *See Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 729 (Ariz. 1991) ("[O]bservance of the corporate form could permit the two corporations to confuse plaintiffs and frustrate their efforts to protect their rights before suit, while allowing the party responsible . . . to avoid liability after suit.").

Here, observing Defendants' separate "corporate forms" would result in fraud and injustice. Defendants have a history of domain name abuse. (Compl. ¶¶ 7–14, 88–104.) They consistently fail to cooperate with trademark owners investigating infringement and fail to respond appropriately to reports of abuse, as required by ICANN. (*Id.* ¶¶ 7–9, 92, 96–104.) These bad acts are an integral part of Defendants' scheme to profit by attracting cybersquatters and other bad actors to their services. (*Id.* ¶¶ 7–14, 88–95.) *See Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674-CIV, 2007 WL 6862342, at *10 (S.D. Fla. Nov. 21, 2007) (findings registrars "grossly abused their position of trust to the detriment of Plaintiffs' customers and the general public, as well as Plaintiffs and countless other trademark owners").

In an attempt to avoid being held accountable for its bad acts, Namecheap set up Whoisguard as a shell of Namecheap, situated in Panama to evade U.S. jurisdiction and avoid liability for Namecheap's unlawful conduct and the conduct of Namecheap's cybersquatting customers. Observing Namecheap and Whoisguard as separate entities

would sanction fraud and injustice.

As the alter ego of Namecheap, Whoisguard is "at home" in Arizona and can be called to answer for any cause of action in this state, whether or not related to Whoisguard's Arizona-based activities. *Ranza*, 793 F.3d at 1068–69.

### D. Whoisguard is subject to specific jurisdiction in Arizona.

Whoisguard is also subject to specific personal jurisdiction in Arizona. "Specific personal jurisdiction is appropriate when three requirements are met: (1) Defendant purposefully directed his activities or consummated some transaction with the forum or a resident thereof, or performed some act by which he purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to Defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable." *Man-D-Tec*, 2012 WL 1831521, at *2. When a Rule 12(b)(2) motion is decided without an evidentiary hearing, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). If a plaintiff satisfies the first two prongs of this test, the court presumes the exercise of personal jurisdiction is reasonable, and the burden shifts to the defendant to "present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1500 (quoting *Burger King*, 471 U.S. at 477 (emphasis in original)).

### 1. Whoisguard purposefully availed itself of the benefits of doing business in Arizona.

Whoisguard has entered into numerous agreements with Namecheap, an Arizona-based company. These agreements include the Namecheap Registration Agreement and the WHOIS Proxy Agreement for each and every domain name Whoisguard registered as the Registered Name Holder. Each of these contracts identify Arizona in its forum selection clause. (Compl. Ex. 1 § 30 ¶ 2 (Doc. 1-2 at 17).) Each also identifies Arizona in its choice of law clause. (*Id.* § 30 ¶ 1.) Due to its continuous relationship with an Arizona company (Namecheap) to register domain names on behalf of that Arizona company's customers,

Whoisguard purposefully availed itself of the privilege of conducting activities in Arizona, invoking the benefits and protections of Arizona's laws. *Yahoo! v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006).

The purposeful availment prong of the minimum contacts test requires a "qualitative evaluation of the defendant's contact with the forum state," to determine whether the defendant should reasonably anticipate being hauled into court there. *Harris*, 328 F.3d at 1130. Purposeful availment exists where the defendant performs some type of affirmative act that "allows or promotes the transaction of business within the forum state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). Physical contact with the forum state is not required. *Harris*, 328 F.3d at 1130. The Ninth Circuit has "held that the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state *or if he has created continuing obligations to forum residents*." *Ballard*, 65 F.3d at 1498 (emphasis added).[15]

Whoisguard's entire business is providing services to customers of Arizona-based Namecheap. (Compl. ¶ 28.) Because Whoisguard does not provide its service for anyone other than Namecheap's customers, *see* n.13, *supra*, 100% of its business is secured through Arizona-based contracts. Further, as part of its business activities, Whoisguard operates data centers in Arizona. (Compl. ¶ 28.) Whoisguard has therefore purposefully

---

[15] Defendants argue that under the first prong of the specific jurisdiction test, courts must rigidly only apply *either* a purposeful direction or purposeful availment inquiry. (Mot. 6:18–24.) However, neither the cases they cite nor Ninth Circuit precedent support such a rule. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (a plaintiff may establish that an out-of-state defendant "*either* purposefully availed itself of the privilege of conducting activities in [the forum state], *or* purposefully directed its activities toward" the forum.) (emphasis added). The Ninth Circuit further clarified in *Yahoo!*, 433 F.3d at 1206, that the first prong "includes *both* purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; *or by some combination thereof*." (emphasis added). While courts "typically" inquire into one set of factors or the other based on the type of claims presented, both sets of factors may be used to establish jurisdiction. *Id.*

availed itself of the benefits of doing business in Arizona because it has a substantial connection with Arizona. It is thus reasonable to anticipate Whoisguard would be sued in Arizona regarding the subject matter of its extensive connections to the forum. *See Burger King*, 471 U.S. at 479 (noting "franchise dispute grew directly out of 'a contract which had a substantial connection with'" the forum state) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)); *id.* at 481–82 (holding out of state defendant "purposefully availed himself of the benefits and protections of Florida's laws by entering into contracts expressly providing that those laws would govern franchise disputes," which also demonstrated "reasonable foreseeability of possible litigation there" (internal quotation marks omitted)); *Ballard*, 65 F.3d at 1498 (explaining that "'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state *or if he has created continuing obligations to forum residents*" (emphasis added)).

### 2. Plaintiffs' claims against Whoisguard "arise out of" its Arizona activities.

The Ninth Circuit uses a "but for" test to determine whether claims arise out of the out-of-state defendant's forum contacts. *Man-D-Tec*, 2012 WL 1831521, at *5 (citing *Harris*, 328 F.3d at 1129). Here, Whoisguard's contracts with Namecheap and provision of services under those contracts form the basis of the unlawful conduct at issue in this case. The registering, use, and trafficking in of the Infringing Domain Names—the acts that form the basis of this lawsuit—could not have occurred but for Whoisguard's entering the Namecheap Registration Agreement for each Infringing Domain Name and registering those domain names as the Registered Name Holder.

### 3. Exercising jurisdiction over Whoisguard is reasonable.

Because Whoisguard purposefully availed itself of the benefits of doing business in Arizona, and Plaintiffs' lawsuit arises out of Whoisguard's Arizona activities, Whoisguard may only avoid specific personal jurisdiction if it can demonstrate a *compelling case* that some other considerations would render jurisdiction unreasonable. *Ballard*, 65 F.3d at 1500. Courts analyzing this prong look to seven factors in weighing reasonableness:

"(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Harris*, 328 F.3d at 1132. An evaluation of these factors does not suggest this is an extraordinary case where personal jurisdiction over Whoisguard would be unreasonable, and Whoisguard has failed to carry its burden to the contrary.

First, Whoisguard has extensively interjected itself into Arizona's affairs because all of Whoisguard's business is conducted through servicing Namecheap, an Arizona-based company, and its customers.

Second, Whoisguard argues it would suffer a "unique burden" if it were forced to litigate in the United States. (Mot. 8:3–11.) But contrary to the cases cited by Whoisguard, the Ninth Circuit has long recognized that "modern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988). Whoisguard's business is providing internet-based services to Namecheap in Arizona. It is represented by the same counsel as Arizona-based Namecheap. It thus cannot seriously contend litigating in Arizona is unduly burdensome.

Third, Whoisguard does not argue that litigating this dispute in Arizona would conflict with the sovereignty of Panama—nor can it. Indeed, Whoisguard's entire business involves providing services to an Arizona-based company under contracts with Arizona choice of law and forum selection clauses, which negates the existence of any conflict.

Fourth, and contrary to Whoisguard's assertion (Mot. 8:14–21), Arizona has a strong interest in litigating this dispute. It involves tortious conduct by an Arizona resident and that company's Panama-based alter ego, with allegations that those companies are involved in a scheme to avoid accountability in Arizona.

Fifth, Defendants do not suggest there is a more efficient forum for litigating this

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

dispute. Namecheap's principal place of business is Arizona, and there are no allegations or evidence that any Whoisguard officers or employees reside in Panama. Thus, Defendants concede that this Court is the most efficient forum for adjudicating the dispute.

Sixth, litigating a dispute involving four U.S.-based companies, one of which is based in Arizona, serves Plaintiffs' interests in convenient, effective relief.

Seventh, Whoisguard has not identified any alternative jurisdiction in the United States. Because all other parties are based in the United States and this lawsuit concerns domain name registrations that took place pursuant to U.S.-based contracts, there is no proper alternative forum.

## IV.    CONCLUSION

For the reasons explained above, this Court may exercise personal jurisdiction over Whoisguard on three independent bases: (1) Whoisguard consented to personal jurisdiction in Arizona; (2) as an alter ego of Namecheap, Whoisguard is subject to general jurisdiction in Arizona; and (3) this lawsuit arises out of Whoisguard's extensive contacts with the state of Arizona. Accordingly, this Court should deny Whoisguard's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2), and for the reasons explained in Plaintiffs' Opposition to Defendants' Fed. R. Civ. P. 12(b)(6) motions, this Court should deny those motions.

If this Court is not satisfied that personal jurisdiction exists over Whoisguard, it should permit Plaintiffs to conduct jurisdictional discovery. Specifically, Plaintiffs would seek discovery regarding Whoisguard's corporate structure, corporate records, contracts, ownership structure (including persons and entities who profit from or control the functions of the business), financial records, business locations and assets, employees and contractors, and customers. *See Harris*, 328 F.3d at 1135 (holding district court erred in denying motion for jurisdictional discovery to allow plaintiff to develop record and make prima facie showing of jurisdictional facts regarding whether alter ego or agency tests were met to establish jurisdiction).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

DATED: May 26, 2020                    TUCKER ELLIS LLP


                                       By: /s/ David J. Steele
                                       David J. Steele
                                       Howard A. Kroll
                                       Steven E. Lauridsen
                                       515 South Flower Street
                                       Forty-Second Floor
                                       Los Angeles, CA 90071-2223

                                       SNELL & WILMER L.L.P.
                                       David G. Barker
                                       Jacob C. Jones
                                       One Arizona Center
                                       400 E. Van Buren, Suite 1900
                                       Phoenix, Arizona 85004-2202

                                       Attorneys for Plaintiffs,
                                       FACEBOOK, INC., INSTAGRAM, LLC,
                                       and WHATSAPP INC.

## CERTIFICATE OF SERVICE

I hereby certify that, on May 26, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants of record.


By: /s/David J. Steele

19