**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com


**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com


Attorneys for Defendants
Namecheap, Inc. and WhoisGuard, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation; and WhoisGuard, Inc., a Republic of Panama corporation,<br><br>Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**REPLY IN SUPPORT OF DEFENDANT WHOISGUARD, INC.'S *AMENDED* MOTION TO DISMISS COMPLAINT**<br><br>*[Concurrently filed with Reply Declaration of Vernon Emmanuel Salazar Zurita; Declaration of Sridavi Ganesan]*<br><br>(Oral Argument Requested) |

Defendant WhoisGuard, Inc. ("WhoisGuard") hereby submits its reply in support of its Motion to Dismiss the complaint of Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp Inc. (collectively, "Plaintiffs") under Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs have failed to meet their burden of establishing personal jurisdiction over WhoisGuard. They do not dispute, and therefore concede, that WhoisGuard lacks the "continuous and systematic" contacts required for general personal jurisdiction. Plaintiffs offer no actual evidence that WhoisGuard consented to an Arizona forum selection clause, but instead rely on a strained—and unconvincing—interpretation of Namecheap's terms of service between it and its customers. As for their argument that WhoisGuard is an alter ego of Namecheap, Plaintiffs offer no affidavits or declarations to dispute the declaration testimony of WhoisGuard's representative as to WhoisGuard's separate existence and compliance with corporate formalities, but instead rest almost entirely on the Complaint's bare allegations. As for their specific jurisdiction argument, Plaintiffs resort to applying *the wrong legal standard* in a desperate effort to avoid dismissal. They also request broad jurisdictional discovery into WhoisGuard's corporate structure and operations, but they have not shown that the requested discovery would yield any pertinent facts on controverted jurisdictional issues. Finally, their Opposition does not even address WhoisGuard's 12(b)(6) arguments. Therefore, WhoisGuard respectfully asks the Court to grant its Motion.

### II. PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO ESTABLISH PERSONAL JURISDICTION OVER WHOISGUARD

#### A. WhoisGuard Did Not Consent to Personal Jurisdiction in Arizona

Plaintiffs contend that the Arizona forum selection clause in the Namecheap Registration Agreement confers jurisdiction over WhoisGuard, but they fail to offer any actual evidence WhoisGuard is a party to that agreement. To enforce a forum selection clause, there must be *actual evidence* that the defendant agreed to the clause. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (refusing to enforce forum selection clause in form purchase order where there was no evidence any

representative of defendant assented to the terms). Here, as in *Holland America*, the "fundamental element" lacking is any evidence WhoisGuard agreed to the clause. *Id.*

WhoisGuard is not a signatory to the Namecheap Registration Agreement, which is a clickwrap agreement that Namecheap's customers must enter into when they register a domain. Ganesan Decl.,¶¶ 2-5 & Exh. A; *see* Complaint, Exh. 1. Contrary to Plaintiffs' argument that WhoisGuard entered into the Agreement for each domain at issue, no person at WhoisGuard clicks through or otherwise assents to the Namecheap Registration Agreement when a user elects to use its privacy service. Reply Zurita Decl., ¶ 2. The cases Plaintiffs rely upon, *Productive People, LLC v. Ives Design*, No. CV-09-1080-PHX-GMS, 2009 WL 1749751, at *1 (D. Ariz. June 18, 2009) and *LimoStars, Inc. v. New Jersey Car & Limo, Inc.*, No. CV-10-2179-PHX-LOA, 2011 WL 3471092, at *4 (D. Ariz. Aug. 8, 2011), are distinguishable because the parties challenging jurisdiction were customers of the registrar GoDaddy who did not dispute that they had agreed to its terms of service.

Plaintiffs argue that WhoisGuard is nonetheless a party to the Namecheap Registration Agreement because the Agreement defines "you" to include "the registrant listed in the WHOIS contact information for the domain name," and WhoisGuard's information appears in the WHOIS listing when a customer uses its privacy services. Opp. at 6:9-11. However, Plaintiffs make no showing that the customers who clicked through the Agreement had any authority, actual or apparent, to bind WhoisGuard to the Agreement, and WhoisGuard unequivocally denies that it is a party. Reply Zurita Decl., ¶ 2. Further, the language stating that the Namecheap Registration Agreement "sets forth the terms and conditions of your use of domain name registration and related services" and "explains your obligations to us for various services offered by Namecheap" (Opp. at 6:13-17) does not support Plaintiffs' argument because WhoisGuard is not a user of Namecheap's services. Instead, it *provides* services through Namecheap. Zurita Decl., ¶ 2.[1] Moreover, the other obligations imposed in the Agreement obviously apply to Namecheap's customers, rather

---

[1] Plaintiffs also argue that this action is within the scope of the forum selection clause in the second paragraph of § 30 of the Namecheap Registration Agreement, but because WhoisGuard did not consent to the terms, the scope of the clause does not matter.

2

than WhoisGuard—for example, the obligation to pay Namecheap's registration fees. Complaint, Exh. 1 at 7. The obvious interpretation of the Agreement is not that WhoisGuard is a party, as Plaintiffs contend, but rather that when a Namecheap customer registers a domain for someone else, such as a website designer registering a domain name for a client, both people are bound. *See* Dkt. # 32-2, Exh. C at 13.

### B. Plaintiffs' Alter Ego Argument is Unavailing

Plaintiffs next argue that general personal jurisdiction exists over WhoisGuard because it is the alter ego of Namecheap, an Arizona-based company, but they have failed to meet their burden of making a prima facie showing that the two companies are alter egos.

Plaintiffs misunderstand the relevant legal standard. Contrary to Plaintiffs' assertion that the Complaint contains allegations "that if proven true" would establish that WhoisGuard is the alter ego of Namecheap (Opp. at 9:1-2), **the plaintiff cannot "simply rest on the bare allegations of its complaint"** once the defendant presents affirmative evidence contradicting the jurisdictional allegations of the Complaint, **but "must present proof of personal jurisdiction through affidavits and declarations."** *Nutrition Distrib. LLC v. IQ Formulations* LLC, No. CV-18-00348-PHX-GMS, 2019 WL 1077877, at *1 (D. Ariz. March 7, 2019) (Snow, J.) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). In its Motion, WhoisGuard presented affirmative evidence in the form of the Zurita Declaration contradicting Plaintiffs' alter ego allegations, but Plaintiffs have failed to present any proof through affidavits or declarations to dispute Mr. Zurita's testimony. As set forth below, Plaintiffs have not met their burden on either prong of the alter ego test: "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

*1. Plaintiffs Have Failed to Show "Unity of Interest and Ownership"*

With respect to the first prong, Plaintiffs fail to offer any declarations of their own but instead primarily rely on the bare allegations of their Complaint. *See* Opp. 9:12-11:3.

Plaintiffs offer no evidence to controvert Mr. Zurita's testimony that WhoisGuard maintains its own corporate structure and officers, that it keeps its own books and records, pays its own taxes, and follows all required corporate formalities. *See* Zurita Decl., ¶ 8. Nor do they offer any facts in support of their assertions that WhoisGuard is undercapitalized, that the two companies "improperly commingle funds," or that Namecheap operates WhoisGuard's website. *See* Opp. at 10:7-11:3. Plaintiffs argue that WhoisGuard's offering of its privacy service to Namecheap's customers for free supports a finding that "Namecheap has failed to adequately capitalize or finance Whoisguard," Opp. at 10:15-11:1, but this conclusion does not logically follow. Plaintiffs have presented no facts to show that WhoisGuard's capital was "illusory or trifling" at the time it was formed. *See Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1179 (D. Ariz. 2010) (Snow, J.) ("For an enterprise to be considered undercapitalized, the amount of capital must be illusory or trifling" when it was formed). The fact that the two companies are business partners does not undermine their separate corporate existence either. *See* Zurita Decl., ¶ 7.[2]

Plaintiffs offer no competent evidence to dispute Mr. Zurita's testimony that WhoisGuard's principal place of business is in Panama. Plaintiffs ask the Court to take judicial notice of a screenshot from the website of a Panamanian law firm which they contend is "[c]onsistent with Defendants' attempt to evade liability in the U.S.," Opp. at 9, n.10, but the truth of any representations on the website cannot be judicially noticed. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (only facts that are "not subject to reasonable dispute," "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" may be judicially noticed); *see also ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *1 (D. Ariz. Jan. 16, 2020) (denying request to take

---

[2] Mr. Zurita's testimony regarding the fact that WhoisGuard provides its services to customers of Namecheap pursuant to a Service Agreement between the two companies is not inadmissible hearsay or a violation of the best evidence rule, as Plaintiffs incorrectly suggest. *See* Opp. at 11, n.14. The fact that the Service Agreement exists is not an out-of-court "statement." *See* Fed. R. Evid. 801. Because Mr. Zurita has not offered any testimony about its content, the best evidence rule is not applicable, either. *See* Fed. R. Evid. 1002.

1  judicial notice of website advertising).³ In any case, the screenshot shows, at best, that the
2  law firm, Quijano & Associates, is "proud to offer presence across the globe with top class
3  professionals at your service" and has offices in various countries. *See* Dkt. # 33-1 at 3.

4        Plaintiffs also contend that WhoisGuard has admitted "that it has no control over its
5  own proxy service," relying upon an allegation in the Complaint that selectively quotes
6  from a January 28, 2019 communication from "WhoisGuard Support" to Facebook's
7  attorney. *See* Opp. at 9:17-19. First, the fact that this communication is from WhoisGuard
8  undermines Plaintiffs' argument that Namecheap, not WhoisGuard, responds to legal
9  notices sent to WhoisGuard. *Id.* at 10:4-5. Second, the full response demonstrates that
10 WhoisGuard Support was actually conveying, perhaps inartfully, that it is merely a service
11 provider and not the owner of the domain, and that it does not control the website at issue:

> Please be advised that **WhoisGuard does not own, administer, host or provide registration services to the Domain,** but simply provides anonymous privacy protection services to a domain registrant. We cannot remove any content, or links, from the website, provide the registrant contact information, or terminate the Privacy Protection as we do not have control over the service.

16 Reply Zurita Decl., Exh. 1 (emphasis in original). Moreover, WhoisGuard Support's
17 response also provided instructions to Facebook on how to: (1) contact the website owner
18 through an anonymized email address, (2) identify the hosting provider, (3) submit a DMCA
19 notice to remove copyright-infringing content, and (4) submit a UDRP complaint to resolve
20 disputes regarding the domain name—thus undermining Plaintiffs' accusations that
21 WhoisGuard is a "bad actor" that fails to cooperate with trademark owners or appropriately
22 respond to reports of infringement. *See* Reply Zurita Decl., Exh. 1 at 1-2.

---

³ Similarly, WhoisGuard also requests the Court to deny Plaintiffs' request to take judicial notice of a screenshot from Namecheap's website. *See* Dkt. # 33-1 at 5 ("Can I use my WhoisGuard subscription for a domain not registered through Namecheap? Unfortunately, it is not possible. WhoisGuard subscriptions can be used only with domains registered with Namecheap."). The fact which Plaintiffs seek to judicially notice from this screenshot—that "WhoisGuard provides its proxy services solely through Namecheap," Opp. at 10:13-14 & n.13—is not a fact that "can be accurately and readily determined" from the screenshot. In any event, an exclusivity arrangement between two partner companies does not render them alter egos. Given that Namecheap allows its customers to obtain WhoisGuard subscriptions for free, it would be contrary to Namecheap's business interests to allow them to transfer those subscriptions to domains with Namecheap's competitors.

Plaintiffs' arguments that Namecheap and WhoisGuard themselves confuse their roles are also without merit. The purported "representations made to customers on Namecheap's website" relied on by Plaintiffs actually come from an article on the topic of domain privacy generally, and the quoted section is not referring to WhoisGuard as Plaintiffs misleadingly imply. *See* Ganesan Decl., Exh. B (full printout). Two typographical errors in WhoisGuard's contracts are not sufficient to justify disregarding the company's separate corporate existence, either. *See Ranza*, 793 F.3d at 1073 (finding no alter ego relationship where there was no evidence of undercapitalization, that two entities failed to keep adequate records, or that they freely transferred assets); *see also In re Packaged Seafood Prods. Antitrust Lit.*, 338 F. Supp. 3d 1118, 1147 (9th Cir. 2018) ("Deviating from the rule of corporate separateness is an extreme remedy, sparingly used.").

### 2. *Plaintiffs Have Failed to Show "Fraud or Injustice"*

Nor have Plaintiffs met their burden on the second prong of the alter ego test: that treating Namecheap and WhoisGuard as separate corporate entities would "result in fraud or injustice." *Ranza*, 793 F.3d at 1073. Again, contrary to Plaintiffs' assertion, they must do more than "plausibly allege" facts in support of this prong—they must come forward with affirmative evidence to prove jurisdiction. *See Nutrition Distrib.*, 2019 WL 1077877 at *1. The opinion on which Plaintiffs rely for their belief that plausible allegations are all that is required, *In re Packaged Seafood Prods. Antitrust Lit.*, 277 F. Supp. 3d 1167, 1188 (S.D. Cal. 2017), involved a Rule 12(b)(6) challenge to claims based on alter ego allegations for purposes of liability, not a Rule 12(b)(2) motion challenging jurisdiction.

Plaintiffs allege without evidence that Namecheap set up WhoisGuard as a shell to avoid liability, *see* Opp. at 12:25-13:1, but "[c]onclusory allegations that [a defendant] structures companies to escape liability are insufficient to confer personal jurisdiction. Something more is needed." *In re Boon Global Ltd.*, 923 F.3d 643, 654 (9th Cir. 2019). Plaintiffs do not offer any evidence, for example, that WhoisGuard is undercapitalized, or that Namecheap improperly used WhoisGuard to hide assets or defraud creditors. "The fact that an incorporator wishes limited liability is not, by itself, sufficient reason to pierce the

corporate veil." *Orloff v. Allman*, 819 F.2d 904, 909 (9th Cir. 1987), *abrogated on other grounds*, *Hollinger v. Titan Corp.*, 914 F.2d 1564 (9th Cir. 1990).

Plaintiffs also argue—again without any evidence—that Defendants have a history of domain name abuse, that they fail to cooperate with trademark owners or respond appropriately to reports of abuse, and that they are engaged in a "scheme" to profit by attracting bad actors to their services. Opp. at 12:15-24. These accusations are contradicted, however, by Plaintiffs' own admissions in the Complaint that when WhoisGuard is served with a subpoena or an administrative domain name, the unmasked customer information is provided. Complaint, ¶¶ 63-64. Plaintiffs also fail to address the fact that in *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1110 (C.D. Cal. 2009), *overruled on other grounds by Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546 (9th Cir. 2013), WhoisGuard's service was held to be "indisputably legal." Moreover, protecting customer privacy is now ***mandated*** by the GDPR. *See* discussion in Dkt. # 27 at 11-13.

Finally, Plaintiffs cite *Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674-CIV, 2007 WL 6862342, at *10 (S.D. Fla. Nov. 21, 2007), a case in which registrars were active participants in a cybersquatting scheme, but the facts are starkly different. *BelgiumDomains* did not involve a proxy privacy service through which the WHOIS information of the registrar's customers was masked. Instead, the defendants *themselves* identified domain names *for their own use* that they believed would be profitable because they consisted of misspellings of famous marks. *Id*. at ¶ 18. They then repeatedly "transferred" the domains between dozens of shell entities and aliases to avoid paying registration fees, as well as to avoid detection by trademark owners. *Id*. at ¶ 22. By contrast, the allegedly infringing domains in this case were selected, purchased, and controlled at all times by Namecheap's customers, not by Defendants. *See* Complaint, Exh. 2 at ¶ 3 (Dkt. # 1-3 at 3).

### C. The Court Lacks Specific Jurisdiction Over WhoisGuard

Plaintiffs fail to satisfy the three-prong test for proving specific jurisdiction over WhoisGuard. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (three prongs are: (1) defendant "purposefully directed" its activities or "purposefully

availed itself" of benefits of forum; (2) claim arises out of or relates to defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable).

### *1. Purposeful Direction Analysis Applies, Not Purposeful Availment*

First, Plaintiffs employ the wrong legal analysis on the first prong. Because Plaintiffs' Lanham Act claims sound in tort, purposeful direction is the proper analysis, not the purposeful availment analysis Plaintiffs apply (which applies to contract claims). *See Nutrition Distrib.*, 2019 WL 1077877 at \*2 ("In tort cases, courts in this circuit apply a 'purposeful direction' analysis for the first prong. Lanham Act cases sound in tort, so that analysis applies to this case.") (internal citations omitted).

Plaintiffs contend that the Ninth Circuit "clarified" that courts may use either analysis or "some combination thereof," relying on *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). Plaintiffs ignore, however, that in that case a combination of factors was used because it was "neither a tort nor contract case." *Id*. *Yahoo!* does not stand for the proposition that the different analyses can be mixed and matched, but instead confirms that the "purposeful direction" analysis applies in tort cases:

> We have typically treated 'purposeful availment' somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant 'purposefully directs his activities" at the form state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred in the forum. By contrast, in contract cases, we typically inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummates a transaction' in the forum, focusing on activities such as delivering goods or executing a contract.

*Yahoo!*, 433 F.3d at 1206 (citing *Schwarzenegger*, 374 F.3d at 802-03). Tellingly, Plaintiffs have identified no prior case in which a court has employed purposeful availment, rather than purposeful direction, in a case consisting entirely of Lanham Act claims. Nor have they presented any valid reason to depart from a purposeful direction analysis in this case.

Thus, the analysis that applies to this case is purposeful direction and its three-part "effects" test: that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

forum state." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Plaintiffs do not respond to WhoisGuard's arguments on these factors, and thus implicitly concede that if purposeful direction applies, the Court cannot exercise jurisdiction over WhoisGuard.[4]

### 2. *Plaintiffs' Claims Do Not Arise Out of Any Forum Activities of WhoisGuard*

Even if Plaintiffs could satisfy the first prong for specific jurisdiction (and they cannot), they cannot satisfy the second prong as their claims do not arise out of the forum-related activities of WhoisGuard. Plaintiffs do not dispute that the "but for" test applies to the second prong. They argue that the alleged acts of cybersquatting and trademark infringement could not have occurred but for "Whoisguard's entering the Namecheap Registration Agreement for each Infringing Domain Name and registering those domains," Opp. at 15:19-22, but WhoisGuard is not a party to that agreement, as discussed above. Plaintiffs have not alleged that WhoisGuard's alleged acts of registering, trafficking in, or using the allegedly infringing domains occurred in Arizona, or that the customers who own the domains are Arizona residents.

### 3. *The Exercise of Jurisdiction Over WhoisGuard Is Unreasonable*

Finally, Plaintiffs have failed to rebut WhoisGuard's arguments on the third prong: that the exercise of jurisdiction is unreasonable.

---

[4] Even if the Court were to apply a purposeful availment analysis rather than purposeful direction, Plaintiffs' arguments still fail. Plaintiffs argue that WhoisGuard has availed itself of doing business by entering into the Namecheap Registration Agreement and WHOIS Proxy Agreement for each and every domain for which its privacy services were used, but as explained above and in WhoisGuard's moving papers, WhoisGuard is not a party to those agreements. *See* Sec. II(A), *supra*; Mot. at 12:8-17. WhoisGuard's own contracts with the customers specify Panama as the forum, not Arizona, undercutting Plaintiffs argument that WhoisGuard should have reasonably anticipated that it would be sued in Arizona.

Plaintiffs also argue that WhoisGuard's business relationship with Namecheap demonstrates purposeful availment, but Plaintiffs' claims for cybersquatting and trademark infringement do not directly arise out of the WhoisGuard-Namecheap relationship. Rather, they arise out of the acts of alleged infringement and cybersquatting by users. By contrast, the dispute in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) "grew directly" out of a franchise contract which had a substantial connection with the forum. In *Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir. 1990), an out-of-state law firm's representation of a forum resident was not sufficient; the key fact establishing jurisdiction was that the forum resident had executed a deed of trust to California real estate. The third case cited by Plaintiffs, *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995), is also distinguishable as the defendant relied on forum-resident customers for more than half its business. By contrast, less than one percent of WhoisGuard's users are in Arizona. Zurita Decl., ¶ 5.

9

First, Plaintiffs argue that WhoisGuard has "extensively" interjected itself into Arizona's affairs because its business is conducted through "servicing Namecheap," an Arizona-based company, but users based in Arizona actually make up a *de minimis* percentage of WhoisGuard's user base. *See* Zurita Decl., ¶ 5. "[T]he smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, (9th Cir. 1993).

Second, Plaintiffs ignore that the Supreme Court in *Ashai Metal Indus. Co., Ltd. v. Superior Court* has recognized that when, as here, the defendant is a foreign company, "severe" and "unique" burdens arise not only from the travel required, but also from requiring the defendant to submit its dispute to a foreign judicial system, and that this factor should be given "significant weight." 480 U.S. 102, 114 (1987). Plaintiffs assert that technology has significantly reduced the burden of litigating in another country, but they cannot plausibly deny that defending Plaintiffs' claims in Arizona would be more expensive and difficult for WhoisGuard compared to defending them in its home country of Panama.

Third, Plaintiffs contend that the exercise of jurisdiction would not conflict with the sovereignty of Panama because they assert that WhoisGuard provides services under contracts with Arizona choice of law and forum selection clauses (Opp. at 16:20-23), but they ignore that WhoisGuard's contracts with its users include choice of law, forum selection, and jurisdictional clauses specifying Panama. Zurita Decl., ¶ 6 & Exh. 1 & 2 thereto. "[L]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

Fourth, Plaintiffs contend that that the factor of the forum state's interest weighs in its favor, but this factor is based upon the state's interest "in providing a forum for its residents and citizens who are tortiously injured." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115-16 (9th Cir. 2002). Plaintiffs do not dispute that they are not Arizona residents. Arizona's interests are therefore "considerably diminished." *See Asahi*, 480 U.S. at 114.

Fifth, Plaintiffs contend that WhoisGuard has not shown that there is a more efficient

forum, but this factor, which focuses on the location of the evidence and witnesses, "is no longer weighed heavily given the modern advances in communication and transportation." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

Sixth, Plaintiffs state that litigating the dispute in Arizona serves their convenience, but "in this circuit, the plaintiff's convenience is not of paramount importance." *Dole Food Co.*, 303 F.3d at 116. Further, Facebook's "status as a multinational corporation somewhat mitigates the inconvenience of litigating abroad, so this factor does not weigh overwhelmingly in [Plaintiffs'] favor." *Id.*

Seventh, Plaintiffs have not demonstrated the unavailability of an alternative forum. While litigating their claims against WhoisGuard in Panama may be less convenient for Plaintiffs, they have not shown that it is unavailable forum to them.

**D.   The Court Should Deny Plaintiffs' Request for Jurisdictional Discovery**

Plaintiffs' request for broad discovery into WhoisGuard's business operations should be denied. "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995). Here, Plaintiffs' request is not for "limited" jurisdictional discovery, but encompasses WhoisGuard's "corporate structure, corporate records, contracts, ownership structure . . . financial records, business locations and assets, employees and contractors, and customers." Opp. at 17:19-23. Plaintiffs have not made any showing that any specific facts on these topics are controverted. Nor have they presented any "factual allegations that suggest with reasonable particularity" that the requested discovery would yield any pertinent jurisdictional facts. *See Neurmechanical, LLC v. Kiro Kids Pty. Ltd.*, No. CV-10-1068-PHX-GMS, 2011 WL 333337 (D. Ariz. Jan. 31, 2011). Where, as here, a request for jurisdictional discovery is "based on little more than a hunch," it should be denied. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

**III.   CONCLUSION**

Accordingly, the Court should dismiss the Complaint as to WhoisGuard.

Dated: June 10, 2020

**ROME & ASSOCIATES, A.P.C.**

By: *s/ Eugene Rome*
    Eugene Rome
    Sridavi Ganesan
    Brianna Dahlberg

**FENNEMORE CRAIG, P.C.**

By: *s/ Mario C. Vasta*
    Ray K. Harris
    Mario C. Vasta

    Attorneys for Defendants
    Namecheap, Inc. and Whoisguard, Inc.