**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com


FENNEMORE CRAIG, P.C.
Ray K. Harris (No. 007408)
Mario Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000ind
rharris@fclaw.com
mvasta@fclaw.com


Attorneys for Defendants
Namecheap, Inc. and WhoisGuard, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Namecheap, Inc., a Delaware corporation, and WhoisGuard, Inc., a Republic of Panama corporation,<br><br>Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**DEFENDANT NAMECHEAP, INC.'S REPLY IN SUPPORT OF *REFILED* MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>(Oral Argument Requested) |

15859717

Defendant Namecheap, Inc. ("Namecheap") hereby submits its reply in support of its Motion to Dismiss the complaint filed by Plaintiffs Facebook Inc., Instagram LLC, and WhatsApp Inc. (collectively, "Plaintiffs) pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion").[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In their Opposition, Plaintiffs attempt to overcome the legal and factual deficiencies in their claims for cybersquatting, trademark infringement, and trademark dilution by relying upon non-existent allegations in the Complaint and misleading arguments.  However, none of these strategies work, and only underscore that the Complaint fails to state a claim against Namecheap as a matter of law and cannot be cured with amendment.

Plaintiffs fail to refute that the Complaint is devoid of allegations that Namecheap engaged in any acts, independent of the acts of WhoisGuard, that would make it liable for violating the Anticybersquatting Consumer Protection Act ("ACPA").  Nor have Plaintiffs demonstrated that Namecheap could be liable for the acts of Defendant WhoisGuard, Inc. ("WhoisGuard") (together with Namecheap, "Defendants"), its alleged alter ego.

WhoisGuard cannot have violated the ACPA for registering domains Plaintiffs allege infringe their marks ("Infringing Domains") because it did not have the requisite intent to use the domains at registration.  Likewise, WhoisGuard did not "traffick" in the domains, because it licensed the domains for free.  Further, Plaintiffs have not demonstrated that WhoisGuard had bad faith intent to profit from Plaintiffs marks *specifically* at the time it registered and licensed the Infringing domains to Namecheap customers (whom Plaintiffs define as "Licensees").  There is no post-registration bad faith intent to profit with respect to WhoisGuard registering and licensing a domain.

---

[1] This Reply is in excess of the 11-page limit required by LRCiv. 7.2(e) by 6 pages. Namecheap filed a Motion to file this Reply in excess of the page limit (Dkt. # 34), but as of the filing of this brief, the Court has not yet issued a ruling on that motion.  Namecheap has made a good faith effort to shorten this Reply, but requests an opportunity to refile it if the Court denies its Motion to file the Reply in excess of the page limit, so that it complies with LRCiv. 7.2(e).

1

Plaintiffs are also unable to refute that WhoisGuard had bad faith intent to profit merely because its privacy services protected customers information from the public as it is required to do so under the European Union's General Data Protection Regulation 2016/679 ("GDPR").  Plaintiffs incorrectly argue that the GDPR requires WhoisGuard to turn over its customer information to Plaintiffs upon demand.

Plaintiffs are also unable to state a claim for trademark infringement or dilution against Namecheap. First, Plaintiffs do not allege that either Namecheap or WhoisGuard used the Infringing Domains in commerce. Second, even assuming *arguendo* that WhoisGuard entered into Namecheap's Domain Registration Agreement, it still did not agree to be liable for the harmful acts of the Licensees.

Plaintiffs' arguments that Namecheap can be held liable for WhoisGuard's acts under a direct participation theory fail because this theory only applies to a parent-subsidiary relationship, and no such relationship is alleged as to Defendants.

For these reasons, Plaintiffs have failed to allege their claims against Namecheap as a matter of law, and cannot cure their pleading defects with amendment.

## II. LEGAL ARGUMENT

### A. Plaintiffs' First Claim for Cybersquatting Fails as a Matter of Law

To allege a cause of action for cybersquatting under the ACPA, a trademark owner must establish that the defendant used, registered, or trafficked in a domain name that is identical or confusingly similar to the trademark owner's mark, with a bad faith intent to profit. *Bosley Med. Inst., Inc. v. Kremer,* 403 F. 3d 672, 680 (9th Cir. 2005).  Plaintiffs' Opposition demonstrates that they are not able to establish these elements against Namecheap as a matter of law.

#### 1. *Plaintiffs Cannot Allege a Claim for Cybersquatting Under the ACPA Against Namecheap, Acting as a Registrar*

As Namecheap argued in its Motion, Plaintiffs have failed to allege any facts that Namecheap, **independent from WhoisGuard**, "used, registered, or trafficked in" the Infringing Domains.  In fact, their theory of liability as to Namecheap is based entirely upon the alleged violations of the ACPA by WhoisGuard, Namecheap's supposed alter ego. *See*

2

Complaint, ¶¶ 57-68, 69-79.

Plaintiffs do not dispute that Namecheap did not "register" or "traffick in" the Infringing Domains. Instead, they argue for the first time in their Opposition that Namecheap "used" the Infringing Domains to host parked pages for advertisements. This argument fails because Plaintiffs *have not alleged a single fact* in the Complaint that supports this argument. Indeed, the factual allegations in the Complaint only pertain to use of the domains by "Licensees" (*i.e.*, Namecheap's customers to whom WhoisGuard licensed the Infringing Domains), not by Namecheap. *See id*. at ¶¶ 57-68, 69-79, 85-89. Moreover, neither the words "parked pages" nor any allegation regarding Namecheap's supposed advertising activity are alleged anywhere in the Complaint.[2]

Nonetheless, even if Plaintiffs had made allegations against Namecheap related to parked pages or advertising, their claim would still fail. Namecheap can only be held liable under the ACPA for "using" the infringing domain if it is the *domain name registrant* or the *registrant's authorized licensee*. 15 U.S.C. § 1125(d)(1)(D). Plaintiffs do not allege anywhere in the Complaint that Namecheap (independent of WhoisGuard) is the domain name registrant or authorized licensee, nor can they truthfully make such an allegation with amendment.

Since Plaintiffs do not allege that Namecheap (independent of WhoisGuard) acted in any other manner than as a domain name registrar, and Plaintiffs have failed to allege any facts demonstrating bad faith intent to profit by Namecheap (*see* Part III(A)(3), *infra*), Namecheap is entitled to the ACPA's safe harbor protection for domain name registrars. *See* 15 U.S.C. §1114(2)(D)(iii).[3]

---

[2] Exhibit 12 cited to in the Motion consists of screenshots of various websites using the Infringing Domains. Complaint, Exh. 12. This is insufficient to overcome the Complaint's factual deficit because there are no allegations as to Namecheap's participation with any of these websites, if at all. Further, in the context of the Complaint's allegations, these websites pertain to the Licensees' use of the Infringing Domains, not Namecheap's use of the same.

[3] Plaintiffs assert that Namecheap makes this same argument as to WhoisGuard in its Motion (*see* Opp. at 16:3-27), but Namecheap only argued that it—not WhoisGuard—was entitled to the ACPA safe harbor protection (*see* Mot. at 15:3-6).

3

15859717

For these reasons, Plaintiffs have failed to allege a claim for cybersquatting against Namecheap under the ACPA, and cannot cure this pleading defect with amendment.

2. *Plaintiffs Have Failed to Allege that Namecheap's Purported Alter Ego WhoisGuard "Used, Registered, or Trafficked in" the Domains*

Plaintiffs have also failed to refute Namecheap's arguments that the Complaint lacks sufficient facts to support a claim against Namecheap for cybersquatting under the ACPA for the acts of WhoisGuard, its alleged alter ego. Plaintiffs do not refute that WhoisGuard did not "use" the Infringing Domains. Instead, they argue that WhoisGuard "registered" and "trafficked in" the Infringing Domains. These arguments are unavailing.

Plaintiffs point to various allegations in the Complaint, to the Namecheap WHOIS Proxy Agreement, and to screenshots from Namecheap's website to argue that WhoisGuard "registered" the domains of Namecheap's customers who elected to use the WhoisGuard privacy service. Namecheap disputes that WhoisGuard registered these domains as the act of registering a domain is the submission of an application for use of the domain with a registrar. *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1095 (C.D. Cal. 2009). It is Namecheap's customers that submits this application with Namecheap at the time they choose Namecheap as their registrar. The option to choose WhoisGuard's service only occurs at checkout, or, as Plaintiffs acknowledge in the Complaint, at any point after the customer has already paid for and registered its domain with Namecheap. *See* Complaint, ¶ 60, Exh. 10. The only alleged "registration" of domains by WhoisGuard is through the provision of its proxy service to Namecheap's customers who select its service—and all WhoisGuard does is substitute its name and contact information for that of the customers on the public WHOIS Directory.

Nonetheless, even assuming *arguendo* that WhoisGuard "registered" the Infringing Domains, it still would not be liable for this act under the ACPA as the mere act of registering a domain alone is insufficient to establish liability under the ACPA. Indeed, in enacting the ACPA, Congress intended to target those who: (1) "register well-known domain names ***in order to*** extract payment from the rightful owners of the marks"; (2) "register well-known marks as domain names and warehouse those marks ***with the hope*** of selling them to the

4

1 highest bidder"; or  (3) "register well-known marks to prey on customer confusion by
2 misusing the domain name *to divert* customers from the mark owner's site to the
3 cybersquatter's own site." *See Lucas Nursery and Landscaping, Inc.*, 359 F. 3d 806, 809
4 (6th Cir. 2004) (*quoting* S. Rep. No. 106–140) (emphasis added). Congress did not intend to
5 target service providers like Defendants. To the contrary, it created the safe harbor for the
6 express purpose of insulating domain name registrars, registries, and other domain name
7 registration authorities from liability. 15 U.S.C. § 1114(2)(D)(iii). [4]

8       As alleged in the Complaint, WhoisGuard provides privacy services to those
9 Namecheap customers who (1) have chosen and paid for a domain to register, (2) with the
10 intent to use the domain. *See* Complaint, ¶¶ 60-61, 75, 85, 88.  Even if WhoisGuard engaged
11 in the act of registering the Infringing Domains, the Complaint is devoid of allegations to
12 support WhoisGuard's *intent to use* the domains for malfeasance. *See* Part III(A)(3)(c).  In
13 fact, as argued above, and as Plaintiffs concede, WhoisGuard never even "used" the
14 Infringing Domains at any time. *See* Opp. at 7:8-10:6; Complaint, ¶ 5. Instead, it is
15 Namecheap's customers who submitted their respective registration applications for the
16 Infringing Domains with Namecheap and selected the WhoisGuard privacy services with
17 malintent to use the domains. *See* Complaint, ¶¶ 5, 60, 85, 87-88.  As such, WhoisGuard
18 cannot be deemed to have "registered" the Infringing Domains under the ACPA.

19       Plaintiffs have also failed to refute that WhoisGuard did not "traffick in" the
20 Infringing Domains. As argued in the Motion, the ACPA defines "trafficking" to mean
21 "transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses,
22 exchanges of currency, and any other transfer *for consideration* or receipt in exchange for
23 consideration." 15 U.S.C. § 1125(d)(1)(E) (emphasis added). Plaintiffs do not dispute that
24 the Complaint fails to allege that WhoisGuard receives any consideration for licensing the
25 Infringing Domains, but instead alleges that the WhoisGuard privacy service is offered to

---

[4] Congress could not have contemplated expressly including proxy and privacy service providers like WhoisGuard in the ACPA's safe harbor because such services did not exist when the ACPA was enacted in 1999.

5

15859717

customers for free. Complaint, ¶ 61. As such, WhoisGuard's licensing of the Infringing Domains is not "trafficking" under the ACPA.[5]

In their Opposition, Plaintiffs refer to the Declaration of Emmanuel Salazar Zurita submitted in support of WhoisGuard's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2), which references the fact that a Services Agreement exists between Namecheap and WhoisGuard. Plaintiffs refer to this Services Agreement in support of its argument that WhoisGuard must have received consideration for licensing the Infringing Domains. In analyzing the merits of Fed R. Civ. P. 12(b)(6) Motions to Dismiss, however, a court may only look to four corners of the Complaint, as well as documents subject to judicial notice and documents incorporated into the Complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). As such, any reference to evidence submitted by WhoisGuard in support of its separate motion must be disregarded for purposes of Namecheap's Motion.

Even if the Court were to consider Mr. Zurita's testimony referring to the Services Agreement's existence, Plaintiffs' argument still fails. That Services Agreement is between Namecheap and WhoisGuard, with consideration running from Namecheap to WhoisGuard, for services WhoisGuard provides ***to Namecheap***. The ACPA, on the other hand, speaks of licensing the domains "in exchange for consideration." 15 U.S.C. § 1125(d)(1)(E). As Plaintiffs allege, WhoisGuard does not license the domains to Namecheap in exchange for consideration, but to Namecheap's customers. Complaint, ¶¶ 5, 61. This is because WhoisGuard does not have the ability to license a domain until the customer purchases the domain for registration with Namecheap. Since WhoisGuard licensed the Infringing Domains for free, it did not traffic in those domains.

---

[5] Correspondingly, Plaintiffs have their remedies available as to those domains under the UDRP, via *in rem* court actions such as *Facebook, Inc., et al. v. facebook-verify-inc.com, et al.*, Case No. 1:20-cv-00639-RDA-IDD, USDC Eastern District of Virginia, and against the customers in John Doe actions, none of which require the inclusion of Defendants to afford full relief.

6

15859717

For these reasons, Defendants cannot be deemed to have registered, trafficked, or used the Infringing Domains within the meaning of the ACPA.

### 3. *Plaintiffs Have Failed to Allege Facts Sufficient to Demonstrate a Bad Faith Intent to Profit by Defendants*

#### (a) Plaintiffs have not sufficiently alleged "bad faith to profit" under ACPA's nine factors

Plaintiffs argue incorrectly that the Complaint asserts "extensive allegations" demonstrating the nine non-exclusive factors enumerated under the ACPA demonstrating bad faith intent to profit. Their argument is misguided. First, Plaintiffs contend that because Namecheap did not perform a full analysis of these factors, it does not dispute that Plaintiffs adequately pled them. Contrary to Plaintiffs' argument, however, the Ninth Circuit has noted that these factors are merely ***guidelines*** and are not dispositive in establishing bad faith intent to profit from the mark. *See Lahoti v. VeriCheck, Inc.*, 596 F.3d 1190, 1202 (9th Cir. 2009) ("'We need not, however, march through the nine factors seriatim because the ACPA itself notes that use of the listed criteria is permissive.'" (citations omitted).). In fact, "the most important grounds for finding bad faith are the unique circumstances of the case..." *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002). As such, Namecheap was not required to do an analysis of these nine factors to demonstrate that Plaintiffs had not demonstrated bad faith intent to profit by Defendants.

Second, Plaintiffs ignore that Namecheap demonstrated in its Motion that at least five of the nine factors were not met. Specifically, Namecheap argued that WhoisGuard never used Plaintiffs' marks (Mot., 15:10-18); that WhoisGuard did not register the domains (that was the customers' doing); and that even if WhoisGuard registered the domains, it lacked the requisite bad faith intent to profit from Plaintiffs' marks or with the knowledge that the domain was confusing or similar to other marks (*id*. at 16:1-27). Moreover, as discussed above, Plaintiffs do not allege anywhere in the Complaint that Namecheap used the domains to host advertising parked pages.

Plaintiffs additionally misread the seventh ACPA factor related to false contact information. That factor concerns contact information provided when registering a domain

7

and the registrant's failure to maintain that information. *See id.* WhoisGuard provided its accurate contact information, as demonstrated by the fact that Plaintiffs successfully contacted WhoisGuard on based the public WHOIS information for the domains at issue. *See* Complaint, ¶¶ 83-84, 96, 98. Plaintiffs do not allege otherwise. Plaintiffs' arguments that WhoisGuard misrepresented to them that it does not own or administer the domains do not concern the accuracy of the ***contact information*** provided at the time the domain was registered. *See id.* at ¶¶ 103-104. Therefore, even if these allegations were true, which they clearly are not, they do not support a finding of bad faith under the seventh ACPA factor.

Therefore, Plaintiffs have not alleged sufficient facts to demonstrate bad faith intent to profit by Defendants pursuant to the ACPA factors.

(b) <u>Plaintiffs fail to allege that Namecheap's alleged "scheme" demonstrates bad faith intent to profit *from Plaintiffs' marks*</u>

Plaintiffs argue that they alleged facts demonstrating a scheme by Defendants "to attract cybersquatters to use their services to infringe trademarks belonging to Plaintiffs and others." However, the only alleged facts (not conclusory allegations) supporting such a scheme are (1) that Namecheap offers the WhoisGuard privacy service for free to any customer who wants it, and (2) that WhoisGuard (and by extension, Namecheap) do not reveal their customers' identity when trademark holders such as Plaintiffs present them with "reasonable" evidence of harm. *See* Complaint, ¶¶ 88-92. As argued extensively in Namecheap's Motion, identical arguments were raised and rejected by the court in *Solid Host, NL v. Namecheap, Inc.* as insufficient to demonstrate bad faith intent to profit. *See* Mot. at 9:1-11:6.

Just as in *Solid Host*, Plaintiffs fail to allege crucial factual allegations showing that Namecheap intended to profit from the goodwill associated with ***Plaintiffs' trademarks specifically***. *See Solid Host,* 652 F. Supp. 2d at 110. Plaintiffs argue that Defendants had bad faith intent to profit from Plaintiffs' marks after receiving notice from Plaintiffs of infringement when (1) Namecheap continued to host advertising parked pages; and (2) WhoisGuard continued to license the Infringing Domains to the Licensees. However, as argued above, Plaintiffs do not allege facts ***anywhere*** in the Complaint that Namecheap

8

1  "used" the Infringing Domains to host advertising parked pages. Further, as explained
2  above, WhoisGuard cannot be deemed to have "trafficked" in domains under the ACPA.
3  Moreover, bad faith intent to profit by trafficking (specifically, WhoisGuard licensing
4  domains) can only occur at the time of registration. *See* Part III(B)(3)(c), *infra*.

5        Plaintiffs also do not allege how WhoisGuard profits from continuing to license the
6  Infringing Domains. The Complaint alleges that WhoisGuard does not receive compensation
7  for licensing the domains. Nor do Plaintiffs cite to any legal authority holding that continuing
8  to license a domain after receiving notice of "reasonable evidence" of infringement
9  demonstrates bad faith intent to profit from the mark.

10                     (c) <u>Bad faith intent to profit related to WhoisGuard's registration and
11                        licensing of the domains can only occur at the time registration</u>

12       In its Motion, Namecheap argued that Plaintiffs do not sufficiently plead a bad faith
13 intent to profit from the Plaintiffs' ***specific*** marks because they do not allege that this intent
14 existed at the of the Infringing Domains' registration, as required under the ACPA. In
15 support, Namecheap cited *GoPets Ltd. v. Hise,* 657 F. 3d 1024, 1030 (9th Cir. 2011), which
16 held that a defendant's bad faith intent to profit must exist ***at the time of registration***, when
17 the basis for liability is "registration" of the domain. Plaintiffs do not dispute this. *See* Opp.
18 at 16:21-23. Instead, they argue that bad faith intent to profit may arise any time after
19 registration where the basis of liability is "use" or "trafficking in" the domains. Plaintiffs
20 arguments are unavailing.

21       Plaintiffs do not allege or even argue that WhoisGuard "used" the Infringing Domains
22 at any time, nor do they allege any facts whatsoever that Namecheap "used" the Infringing
23 Domains. Plaintiffs argument with respect to any post-registration bad faith intent to profit
24 by WhoisGuard for continuing to license the Infringing Domains to the Licensees also fails.
25 As argued above, WhoisGuard cannot be deemed under the ACPA to have trafficked in the
26 Infringing Domains because, as Plaintiffs' allege, it licensed these domains to the Licensees
27 for free. Moreover, much like "registering" a domain, licensing a domain occurs ***only once***,
28 which is at the time the Namecheap customer opts to use WhoisGuard privacy service,

9

15859717

typically at the time of registration. It is not a continuing act that can be stopped and started at any time, such as "use" of a domain.

The Complaint also does not allege any facts that WhoisGuard knew at the time it registered and licensed the Infringing Domains to the Licensees that these domains infringed on Plaintiffs' marks, nor do they allege that WhoisGuard had bad faith intent to profit from Plaintiffs' marks specifically at the time of registration and licensing. Therefore, it cannot be deemed to have had bad faith intent to profit from Plaintiffs' mark.

The cases cited by Plaintiffs are distinguishable. In those cases, the defendants engaged in some new action post-registration that demonstrated bad faith intent to profit. Specifically, the defendants "used" of "trafficked" in the domains at issue to gain some sort of leverage or personal advantage. *See DSPT Inter., Inc. v. Nahum*, 624 F.3d 1213, 1220 (9th Cir. 2010) (holding former employee had bad intent to profit under ACPA by using internet domain name containing employer's trademark that he registered years before to gain leverage for his claim for commissions); *Storey v. Cello Holdings LLC*, 347 F.3d 370, 385 (2d Cir. 2003) (finding defendant had "bad faith" intent to profit for "use" of the mark at issue by attempting to sell the domain to the mark owner or a third party for financial gain); *Virtual Works v. Volkswagen*, 238 F.3d 264, 270 (4th Cir. 2001) (holding defendant had bad faith intent to profit from the Volkswagen mark by offering to sell the mark to the mark owner or else to the highest bidder years after registration). Here, Plaintiffs do not allege that WhoisGuard engaged in any new action or altered its actions to gain leverage or personal advantage over Plaintiffs with respect to the domains after it received notice of infringement. In fact, as Plaintiffs allege, the opposite is true—WhoisGuard did nothing.

For these reasons, Plaintiffs have failed to allege bad faith intent to profit from Plaintiffs' marks to support liability under the ACPA.

    *4.*  *The GDPR prohibits disclosure of Namecheap's customer data*

Plaintiffs argue that, to comply with the GDPR, ICANN only requires "redaction" of customer information, but they cannot plausibly dispute that the GDPR requires Defendants to keep its customers' WHOIS information *private*. That Defendants opted to use a privacy service as the method to do so makes no difference as the effect is the same: customers'

10

information is kept private unless they explicitly consent otherwise. Thus, Namecheap's offering of WhoisGuard's privacy services by default brings it into compliance with the GDPR.[6]

Plaintiffs also contend that ICANN's Temp. Spec. require Defendants to disclose customer information in response to notices of alleged infringement because intellectual property protection is a "legitimate interest". However, they ignore that "legitimate interest" is a legal term of art under the GDPR which triggers a balancing test by the data controller to determine whether "such interests are overridden by the interests or fundamental rights and freedoms of the data subject which require protection of personal data[.]" Dkt. # 30-1 (GDPR Art. 6(1)(f)); Dkt. # 27-2 at 26, § 4.1; Exh. A, attached hereto at 3.[7]

Even if a third party has a "legitimate interest" based on IP rights, the European Commission has clarified that "[t]he existence of such a right needs to be substantiated and the necessity/proportionality of accessing that [customer] data [needs to be] ascertained[.]" Exh. A, attached hereto at 3. Moreover, where there are less intrusive ways to achieve the same "legitimate" purpose—*e.g.,* by filing a UDRP proceeding—disclosure by the data controller will never be "necessary" under the GDPR's balancing test. ***Accordingly, Defendants are <u>prohibited</u> under the GDPR from disclosing their customer data upon***

---

[6] Plaintiffs suggest that because WhoisGuard privacy services were also offered to customers pre-GDPR that somehow renders these services illegitimate, but the privacy services were deemed to be "indisputably legal" by the courts even pre-GDPR. *See Solid Host,* 652 F. Supp. 2d at 110.

[7] Namecheap requests that the Court take judicial notice of the European Commission's Comments on the Temp. Spec. attached hereto as Exhibit "A". This document was created by the European Commission (the executive branch of the EU) and is publicly available on ICANN's website at <https://mm.icann.org/pipermail/comments-epdp-recs-04mar19/attachments/20190417/6f0a65b2/CommentsontheTemporarySpecificationforgTLDRegistrationDataPolicyRecommendations-0001.pdf>. As such, it is appropriate for judicial notice. *See Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp.3d 1011, 1033 (courts can take judicial notice of government documents available from reliable sources on the internet); Fed. R. Evid. 201(b)(2).

15859717

*demand as Plaintiffs request.[8]* The Court should reject Plaintiffs' improper attempt to create a backdoor to the GDPR.

Further, contrary to Plaintiffs' argument, Defendants' position to Plaintiffs that they would not disclose customer data without a court order is consistent with the Temp. Spec. *See* Dkt. # 27-2 at 26, § 4.2 (registries must, in certain cases, provide reasonable access to data to third party "court order of a relevant court of competent jurisdiction concerning the GDPR"). Their position also complies with U.S. law. *See Rosen v. Imagevenue.com,* No. CV 13-01742 SJO (MANx), 2013 WL 12132052, *5 (C.D. Cal. Nov. 26, 2013) ) ("Privacy services companies should not be required to determine whether its clients are infringing on threat of contributory liability."); *Lockheed Martin Corp. v. Network Solutions, Inc*., 141 F. Supp. 2d 648, 655 (N.D. Tex. 2001). (registrars could not function "if they had to become entangled in, and bear the expense of, disputes regarding the right of a registrant to use a particular domain name.").

Thus, Plaintiffs' arguments that Defendants were required to disclose their customers' data lack merit. If Defendants were to comply with Plaintiffs' disclosure demands, they could be subjected to severe penalties under the GDPR. *See* Mot. at 12-13.

**B.     Plaintiffs' Trademark Infringement and Dilution Claims Fail as a Matter of Law**

   *1.     Plaintiffs Fail to Allege that Defendants Used the Marks in Commerce*

As noted above, Plaintiffs concede that WhoisGuard never "used" Plaintiffs' marks. Plaintiffs argue in their Opposition that Namecheap used Plaintiffs' marks in commerce by using the Infringing Domains to set up advertising parked pages. Again, however, Plaintiffs never alleged this in the Complaint. Furthermore, contrary to Plaintiffs' brand-new theory, the Complaint's trademark infringement and dilution claims state that the "***Licensees*** have used Plaintiffs' Trademarks," that the acts of the "***Licensees*** constitute trademark and service

---

[8] Moreover, even if Plaintiffs could pass the balancing test (and they cannot), neither the GDPR nor the Temp. Spec. creates any duty for Defendants to disclose their customer's information. The Temp Spec. only requires "reasonable access" to such data if the test is met. *See* Dkt. # 27-2. In any event, the GDPR is the law and it, not the Temp. Spec., controls.

1 mark infringement" or "dilution," that "*Licensees* have unfairly profited from" the
2 trademark infringement/dilution; and that Plaintiffs' suffered damages due to the "*Licensees*
3 acts." *See* Complaint, ¶¶ 127-130, 137-140, 147-150 (emphasis added). Simply put,
4 Plaintiffs allege that the Licensees used their marks, not Namecheap or WhoisGuard.

### 2. *WhoisGuard Is Not Liable for the Wrongful Acts of its Licensees*

Plaintiffs' entire basis for liability against Defendants for their trademark infringement and dilution claims is that WhoisGuard agreed to accept liability "for the harm to Plaintiffs' cause by the Licensees' use of the Infringing Domain Names" because Defendants "did not disclose the names of the Licensees in response to Plaintiffs' Notices," *See* Complaint, ¶¶ 131-132, 141-142, 151-152. This theory of liability fails as a matter of law. Moreover, Plaintiffs cannot correct this deficiency with amendment.

### (a) The novel legal theory of liability proposed by Plaintiffs is not supported by law

As a preliminary matter, Plaintiffs' theory that a defendant who ***did not*** commit any infringing acts, either directly or contributorily, can be held liable for infringement based entirely upon acceptance of liability pursuant to an agreement to which the trademark holder bringing suit is not a party, is completely unprecedented. Even if Plaintiffs are seeking to enforce the contractual provision regarding acceptance of liability as a third-party beneficiary to the Namecheap Domain Registration Agreement, the best they could do is sue for breach of contract as a third party beneficiary, not bring a claim against Defendants under the Lanham Act seeking to hold them liable for infringement by others.

Plaintiffs have not cited to *a single case* that would support such a novel legal theory or basis for liability. Nor would they be able to. It would otherwise be equivalent to a person agreeing to accept punishment for a crime he or she, the prosecutor, jury, and judge all agree was committed entirely by someone else, without the person's involvement in the bad acts. That simply would not be legally permissible. Accordingly, Plaintiffs' claims for trademark infringement and dilution are fatally flawed as a matter of law.

### (b) WhoisGuard did not agree to accept liability for the Licensees' acts of infringement

13

Plaintiffs argue that WhoisGuard as the Registered Name Holder of the Infringing Domains, entered into the Domain Registration Agreement with Namecheap, and that under the RAA, Namecheap is required to include certain provisions in its Registration Agreement. This includes a provision that the Registered Name Holder licensing use of its domain will accept liability for harm caused by a licensee, if it does not disclose the current contact information of the licensee to a party requesting the same after receiving evidence of actionable harm. *See* Dkt. # 32-2, Exh. C.[9]

Namecheap disputes that WhoisGuard is a party to Namecheap's Registration Agreement, as it is the customer who first submits his application for registration of a domain with Namecheap and subsequently at check-out (or even any time after registration of the domain) opts for the WhoisGuard privacy service. Further, Namecheap's WHOIS Proxy Agreement, which sets forth Namecheap's terms regarding its customers' use of the WhoisGuard service, is a ***supplement*** to the Registration Agreement, not the other way around. *See* Complaint, Exh. 2, ¶ 1.

However, assuming *arguendo*, that WhoisGuard is a party to Namecheap's Registration Agreement as the Registered Name Holder, WhoisGuard still did not agree to accept liability for the alleged infringing acts of the Licensees. Plaintiffs allege that WhoisGuard's privacy services are offered to Namecheap customers as part of Namecheap's registration services. Complaint, ¶¶ 60-61. Plaintiffs also allege that WhoisGuard registers the domains of Namecheap customers selecting this service in its own name and licenses the use of the domains to these customers, who Plaintiffs define as the "Licensees". Complaint, ¶¶ 5. 52. As noted by Plaintiffs, the Domain Registration Agreement defines "you" and "your" to include "you or any agent, employee, servant or person authorized to act on your behalf, ***and*** the registrant listed in the WHOIS contact information for the domain name." *Id*. at Exh. 1 (emphasis added). This means the Registration Agreement necessarily includes

---

[9] While Plaintiffs did not cite to this specific provision in Namecheap's rules and policies associated with the Domain Registration Agreement or attach it to the Complaint, they now attach it as an exhibit via a declaration submitted in support of their Opposition.

14

the Licensees (*i.e.*, customers) who paid for Namecheap's registration services and selected WhoisGuard's privacy services.

The section of Namecheap's Registration Agreement incorporating provisions required to be included by the RAA states:

> Sometimes a Registered Name Holder may register a domain name and then allow another person to use the domain name (such as a website designer registering a domain name for a client). If this happens, ***and the person actually using the name did not enter into the Registrar/Registered Name Holder Agreement (referred to as a "third party" in the RAA),*** the Registered Name Holder could be accountable for wrongful use of the domain name by the third party. This will happen if the Registered Name Holder is provided with "reasonable evidence of actionable harm" from the third party's use of the domain name. In that situation the Registered Name Holder will "accept liability for harm caused by wrongful use of the Registered Name," unless the Registered Name Holder discloses the user's identity and current contact information.

Dkt. # 32-2, Exh. C. Thus, per the language of Namecheap's Domain Registration Agreement, and assuming as Plaintiffs allege that WhoisGuard is a party to that agreement as the Registered Name Holder, WhoisGuard would only accept liability for the acts of the wrongful use of a domain by its licensee, ***if*** that licensee is not a party to the Domain Registration Agreement.

Plaintiffs allege that the Licensees are Namecheap customers using Namecheap's registration services. Complaint, ¶¶ 5, 60-61. Plaintiffs allege that the Licensees used the Infringing Domains. *See* Complaint, ¶¶ 85-87, 110, 116, 127, 137, 147. Since the Licensees used the Infringing Domains ***and***, as Namecheap's customers, entered into the Domain Registration Agreement, WhoisGuard (i.e. the Registered Name Holder) is ***not*** accountable and ***did not*** agree to accept liability for the harm caused by the Licensees' use of the Infringing Domains pursuant to the terms of the Domain Registration Agreement.

To the extent Plaintiffs contend that WhoisGuard is bound by the actual language of paragraph 3.7.7.3 of the RAA, or that Namecheap was required to incorporate that identical

language in its Registration Agreement, this argument is a non-starter.  The court in *Balsam v. Tucows* held that (1) the RAA is between Namecheap and ICANN only, not the Registered Name Holder, (2) the RAA does not confer a right or benefit to any party or third party, and (3) the RAA expressly contains a "No Third Party Beneficiary" clause that precludes third parties from successfully suing to enforce the RAA.  627 F. 3d 1158, 1162-1163 (9th Cir. 2010).  As such, WhoisGuard, and by extension Namecheap as its alleged alter ego, cannot be deemed to have accepted liability to Plaintiffs for the wrongful acts of its Licensees under the Domain Registration Agreement.

### C. Plaintiffs Cannot Establish Liability for Namecheap under a Direct Participant Liability Theory

Plaintiffs argue that Namecheap is liable for WhoisGuard's acts under a theory of direct participation liability.  However, this theory of liability is strictly limited to parent companies and their subsidiaries.  Direct participant liability, where recognized, "makes the *parent* liable for a *subsidiary's* tortious conduct by virtue of eccentric or wrongful control, which requires a showing of undue interference or egregious participation in the normal day-to-day affairs of the subsidiary company." *Martinez v. E.I. DuPont De Nemours and Co., Inc.*, 82 A.3d 1, 9 (Del. Sup. 2012) (emphasis added); *see also Allen v. Amer. Cap. Ltd.*, 287 F. Supp.3d 763, 806 (D. Ariz. 2017) ("A parent company can be liable for a subsidiary's acts…").  Plaintiffs do not allege, and cannot credibly allege, that WhoisGuard is Namecheap's subsidiary.  Therefore, Namecheap cannot be liable under this theory.

### D. Plaintiffs Do Not Request, and Should Not Be Granted, Leave to Amend

Plaintiffs do not request leave to amend should the Court grant Namecheap's Motion.  It is appropriate for the Court to dismiss this action without leave to amend where amendment would be futile.  *See Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1051–52 (9th Cir.2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.")  The Ninth Circuit has also held that "where a party did not seek leave to amend a pleading in the lower court, [it] would not remand with instructions to grant leave to amend." *See Alaska v. U.S.*, 201 F.3d 1154, 1163 (9th. Cir. 2000); *see Californians for Renewable Energy v. Cal. Pub. Utilities Comm'n*, 401 Fed. Appx. 238, 239

(9th Cir. 2010) ("The district court did not err by not giving Appellants leave to amend when they did not request it."). Each of Plaintiffs' claims fail as a matter of law and cannot be cured with amendment. As such, if the Court grants the Motion, leave to amend should not be granted.

## III.   CONCLUSION

For all the foregoing reasons, the Court should grant Namecheap's Fed. R. Civ. P. 12(b)(6) Motion and dismiss all claims asserted against Namecheap with prejudice.

Dated:  June 10, 2020

**ROME & ASSOCIATES, A.P.C.**

By: s/ *Eugene Rome*
    Eugene Rome
    Sridavi Ganesan
    Brianna Dahlberg

**FENNEMORE CRAIG, P.C.**

By: *s/ Mario C. Vasta*
    Ray K. Harris
    Mario C. Vasta

    Attorneys for Defendants
    Namecheap, Inc. and Whoisguard, Inc.