Jason M. Venditti (#022073)
**VENDITTI LAW GROUP, PLC**
20860 N. Tatum Blvd. Suite 300
Phoenix, Arizona 85050
Ph: (480) 771-3986
Fax: (480) 771-7101
Email:  jason@vendittilaw.com

Attorneys for Amicus Curiae NOYB

### THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp, Inc., a Delaware corporation, | No.  2:20-cv-00470-GMS |
| Plaintiffs, | **[PROPOSED] BRIEF OF *AMICUS CURIAE* NOYB – EUROPEAN CENTER FOR DIGITAL RIGHTS** |
| vs. | |
| Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation, | |
| Defendants. | |

*Amicus Curiae* NOYB – European Center for Digital Rights ("NOYB") hereby submits

the following brief in support of Defendants in the above captioned matter.  The proposed

brief is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      ARGUMENT.**

     **A.      The privacy services provided by Namecheap through WhoisGuard merely implement the principles of the GDPR.**

The GDPR is applicable to the data processed by Defendants. Most of the data processed by Defendants qualifies as "personal data" under Article 4(1) GDPR: emails, names, addresses, etc. (See **Exhibit** A).  Furthermore, the services offered by Defendants are offered to "data subjects" in the EU, i.e. "an identified or identifiable natural person" (Article 4(1) GDPR). Therefore, in accordance with Article 3(2)(a) GDPR, Defendants are subject to the provisions of the GDPR.

As a consequence, the processing of personal data by Defendants must, *inter alia*, comply with the relevant provisions regarding the principles of *data minimisation* (Article 5(1)(c) and *data protection by design and by default* (Article 25) GDPR.

In application of the *data minimisation* principle, Namecheap cannot process more data than necessary for the intended purpose. These data should be relevant, adequate, and limited to what is necessary in relation to the purpose for which they are processed (Article 5(1)(c) GDPR). In their Opposition Motion, Facebook concedes that the Temporary Specification is meant to deal with GDPR responsibilities (see page 17, lines 11 and 12 of the Opposition Motion of Facebook). *ICANN's Temporary Specification for gTLD Registration Data* (the "Temporary Specification" – **Exhibit** B) also refers to the implementation of the

accountability obligations set forth in the GDPR (see for example §5.5.5 of the Temporary Specification). Such an implementation of the *data minimisation* principle has been confirmed by the Article 29 Working Party ("WP29") in its Opinion 2/2003 WP 76 on the application of the data protection principles to the Whois directories (see **Exhibit C**), which was endorsed by the European Data Protection Board ("EDPB", the EU body composed of all EU data protection authorities). According to the EDPB, in light of the principle of proportionality, *"it is necessary to look for less intrusive methods that would still serve the purpose of the Whois directories without having all data directly available on-line to everybody"* (see page 3 of the opinion).

In its letter of 11 April 2018 (see **Exhibit D**), WP29 welcomed the "layer approach" suggested by ICANN in its Temporary Specification. The Working Party confirmed that *"the layered approach should indeed take into consideration varying personal data elements in WHOIS data, limited open publication of certain data elements (provided it can be established that it is indeed necessary to achieve the purposes of the processing), and access by contracting parties and third parties to certain personal data elements, in each case tied to a defined purpose for which the data elements will be used, in order to ensure a legitimate basis for such processing as required under article 6 GDPR"* (see page 3 of the Annex to the letter).

Beside complying with the *principle of data minimization*, Namecheap must also comply with the *principles of data protection by default and by design* enshrined in Article 25

GDPR. In particular, the controller has to implement technical and organizational measures for each specific purpose of the processing. This obligation applies to the amount of data collected, the extent of their processing, but also to their accessibility. In particular, the measures should ensure that, by default, personal data are not made accessible without the individual's intervention to an undefined number of natural persons (see Article 25(2) GDPR).

The WhoisGuard service offered by Namecheap simply follows the layer approach adopted in the Temporary Specification. WhoisGuard is a proxy service that allows customers to make sure that their data are not published in the WHOIS database. By doing so, Defendants are only implementing the principles of *data minimization* and *data protection by default and by design*, with a method (the use of privacy/proxy services) that is also adopted by many other registrars.

Furthermore, not using the WhoisGuard service would not make a difference in the present case since Defendants would still not be allowed to communicate the data of the domain name holder to the Plaintiffs for the reasons explained in section 2 below.

**B.    The GDPR prohibits Defendants from sharing data without appropriate legal basis.**

All processing operations (which includes the mere communication of data) must have an appropriate legal basis under Article 6(1) GDPR. We refer in this respect to Appendix C of the Temporary Specification. This document states the specific legal bases under which the various actors involved in the activities of domain name registration may rely on for each

4

processing operation.  These legal bases were developed in constant dialogue with the EDPB (see letter of 5 July 2018 from the EDPB to ICANN – **Exhibit** **E**) and provide a good assessment of possible legal bases for processing.

Collecting the data for the use of the registrar and making these data available to third parties are two different processing operations. As mentioned, each operation needs a specific legal basis under Article 6(1) GDPR. While the collection of data is necessary to perform the contract between the registrant and the registrar (see Article 6 (1)(b) GDPR and Appendix C of the Temporary Specification), *1)* the publication of the personal data in the WHOIS database and *2)* the communication to third parties need a different legal basis (see Temporary Specification, Annex C, table, lines 7 and 8). The communication of WHOIS data can therefore only take place under one of the six exhaustive legal bases under Article 6(1) GDPR.

Any communication which would not rely on such basis would be a violation of the GDPR and could lead to fines by the competent data protection authority (see Articles 58 and 83 GDPR - **Exhibit** **A**).

**C.    The legitimate interest of Facebook is not established under the GDPR.**

We understand that Plaintiffs argue that the "legitimate interest" basis under Article 6(1)(f) GDPR would give them the right to receive the data upon request.  Such reading of the GDPR is erroneous.

The legitimate interest can be the one of the data controller, such as Namecheap, or of a third party, such as the Plaintiffs. In this case, the protection of one's intellectual property rights may constitute a legitimate interest. However, the fact that the controller has such a legitimate interest in the processing of certain data does not mean that it can necessarily rely on Article 6(1)(f) as a legal ground for the processing. The legitimacy of the controller's interest is just a starting point. It is only <u>one</u> of the elements that need to be analyzed under Article 6(1)(f) GDPR. Whether Article 6(1)(f) can be relied on will depend on the outcome of the balancing test (see Opinion 06/2014 of WP29, on the notion of legitimate interest, WP 2017, p. 25 – **<u>Exhibit</u> F**).

According to Article 6(1)(f) GDPR, the processing must be <u>necessary</u> to meet the legitimate interest of the controller, and such interests should <u>not be overridden</u> by the interests of fundamental rights and freedoms of the data subject. This implies a necessity analysis and a subsequent balancing test for each specific case.

In this specific case, although Plaintiffs may have a legitimate interest to process the data collected by Defendants, the communication of this data is not <u>necessary</u> under Article 6(1)(f) GDPR. Plaintiffs can file a lawsuit, a Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding, and even communicate with the registrant directly using the WhoisGuard anonymized email address, all without the data requested. For example, Exhibit D, Temporary Specification, Appendix E section 1.2 explains how a "Doe" complaint may be

filed, after which the contact details of the registrant shall be provided as part of the UDRP proceeding. Consequently, the data is <u>not necessary</u> for Plaintiffs to fully exercise their rights as a trademark holder. Having shown lack of necessity, the test must end here.

However, even <u>if</u> the data were considered necessary, the data could be obtained in a more privacy-protective manner, *e.g.*, through a court order or under a UDRP proceeding. As such, the balancing test would fail.

When performing the balancing test of Article 6(1)(f) GDPR, which, as mentioned, one only proceeds to if the "gateway" necessity test succeeds, the following elements must be taken into account: *1)* the nature and source of the legitimate interest, *2)* the impact on the data subjects, and, following a provisional balance, *3)* additional safeguards to prevent undue impact on the data subjects (see **Exhibit F**, Opinion 06/2014 of WP29, on the notion of legitimate interest, WP 2017, section III.3.4).

In this case, *1)* the interest is merely economic and solely Plaintiffs', whereas *2)* the impact on the data subjects (i.e. registrants) would be a breach of their European fundamental rights to privacy and data protection: the data requested by Plaintiffs is non-public and registrants do not have a clear legitimate expectation that their data will be made freely available upon any request that can show any legitimate interest – which could, in abstract, also be an interest in buying the domain or placing ads on the website. Consequently, considering, *inter alia*, *i)* that the data are not public and were specifically not made public in

order to protect the registrant's privacy (which speaks to the registrant's expectations), *ii)* that the Temporary Specifications do not mention any possibility to communicate their personal data on a simple request from a third party, and *iii)* that there are more privacy-preserving methods to pursue Plaintiffs' interest, the communication of the data by the Defendants to Plaintiffs would not pass the required balancing test.

Furthermore, even if the data could be processed by Plaintiffs under Article 6(1)(f) GDPR, this provision does <u>not</u> create a legal <u>obligation</u> to communicate the data to any third party that may have a legitimate interest in receiving it. Importantly, it also not possible to circumvent Article 6(1)(f) GDPR by relying on a contractual clause that would require such disclosure. What is "necessary" for a contract depends on the core nature of the contract. For example, the core of a contract about the sale of bananas is the exchange of money for the bananas. A contractual requirement to disclose to a third party how many bananas one eats per day would is not "necessary for the performance of the contract" under Article 6(1)(b) GDPR. Any other interpretation would defeat and circumvent the specific protections foreseen by the GDPR with each of the legal bases. This approach is supported by the EDPB: "*Where a controller seeks to establish that the processing is based on the performance of a contract with the data subject, it is important to assess what is <u>objectively necessary</u> to perform the contract.*" (EDPB Guidelines 2/2019 on the processing of personal data under Article 6(1)(b) GDPR in the context of the provision of online services to data subjects, para 27 – **Exhibit G**).

All of the above has also been confirmed by the Court of Justice of the European Union ("CJEU"). The CJEU is the supreme court on interpreting European law, such as the GDPR. In a balancing test, the CJEU confirmed that the mere economic interest of the operator of a search engine cannot justify interference in the private life of the affected individuals (CJEU, *Google Spain*, C-131/12, 13 May 2014, §81 – **Exhibit H**). In a different case, the CJEU also stated that the mere legitimate interest of a company to protect its rights to intellectual property does not mean Member States must lay down an obligation upon companies, such as Internet Service Providers, to communicate the data of their customers for copyright purposes in the context of civil proceedings. Therefore, this data could not be communicated to a third party, even with a legitimate interest, except if expressly provided by national law and subject to the principle of proportionality (CJEU, 29 January 2008, *Promusicae*, C-275/06 – **Exhibit I**).

Finally, the CJEU made clear, in a case very similar to the instant case, that Article 6(1)(f) GDPR (the equivalent to Article 7(f) of Directive 95/46/EC, the predecessor to the GDPR) "*does not, in itself, set out an obligation, but expresses the possibility of processing data such as the communication to a third party of data necessary for the purposes of the legitimate interests pursued by that third party*" (CJEU, 4 May 2017, *Rigas,* C-13/16, §26 – **Exhibit J**). According to the Court, Article 6(1)(f) GDPR "*must be interpreted as not imposing the obligation to disclose personal data to a third party in order to enable him to*

9

*bring an action for damages before a civil court for harm caused by the person concerned by the protection of that data. However, Article 7(f) of that directive does not preclude such disclosure on the basis of national law"* (**<u>Exhibit J</u>**, CJEU, 4 May 2017, *Rigas,* C-13/16, §35).

## II.    CONCLUSION.

Plaintiffs cannot rely on the legitimate interest legal basis under Article 6(1)(f) GDPR to claim the right to receive the data processed by Defendants. Moreover, such out-of-proceeding communication of personal data to Plaintiffs would be a violation of the GDPR and may lead to sanctions against Defendants.

Pursuant to Fed. R. App. P. 29(4), counsel hereby avers:

1.      The proposed brief has not been authored in whole or in part by any party to the case or their counsel;

2.      No party or party's counsel contributed money to fund preparing or submitting the brief; and

3.      No person – other than *noyb*, its members or its counsel - has contributed money to fund preparing or submitting the brief.

RESPECTFULLY SUBMITTED this 11th day of September, 2020.

**VENDITTI LAW GROUP, PLC**

By:

*/s/ Jason M. Venditti*

Jason M. Venditti
20860 N. Tatum Blvd., Suite 300
Phoenix, Arizona 85050
Attorneys for *Amicus Curiae* noyb

## CERTIFICATE OF SERVICE

I hereby certify that on September 11th, 2020, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

A courtesy copy of the Notice of Electronic Filing was also mailed on this same date to the following addresses:

David G. Barker
Jacob C. Jones
Snell & Wilmer, LLP
One Arizona Center
400 East Van Buren, Suite 1900
Phoenix, Arizona 85004
Attorneys for Plaintiff
dbarker@swlaw.com
jcjones@swlaw.com

David J. Steele
Howard A. Krioll
Steven E. Lauridsen
Tucker Ellis, LLP
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Attorneys for Plaintiff
David.steele@tuckerellis.com
Howard.kroll@tuckerellis.com
Steven.lauridsen@tuckerellis.com

Eugene Rome
Sridavi Ganesan
Brianna Dahlberg
Rome & Associates, A.P.C.
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Attorneys for Defendants
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

Ray K. Harris
Mario Vasta
Fennemore Craig, PC
2394 East Camelback Road, Suite 600
Phoenix, Arizona 85016
Attorneys for Defendants
rharris@fclaw.com
mvasta@fclaw.com


                              */s/ Jason M. Venditti*
              By:    _____
                     Jason M. Venditti, Esq.