1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF ARIZONA

3                  _____

4    Facebook Incorporated, et al. )
                                    )
5                   Plaintiffs,     )      2:20-cv-0470-GMS
                                    )
6          vs.                      )      Phoenix, Arizona
                                    )      September 18, 2020
7    Namecheap Incorporated,        )
     et al.,                        )          2:15 p.m.
8                                   )
                    Defendants.     )
9    _____)

10

11

12      BEFORE:  THE HONORABLE G. MURRAY SNOW, CHIEF JUDGE

13

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS

15          TELEPHONIC MOTION HEARING

16

17

18

19

20   Official Court Reporter:
21   Charlotte A. Powers, RMR, FCRR, CRR, CSR, CMRS
     Sandra Day O'Connor U.S. Courthouse, Suite 312
22   401 West Washington Street, Spc. 40
     Phoenix, Arizona  85003-2151
23   (602) 322-7250

24   Proceedings Reported by Stenographic Court Reporter
     Transcript Prepared by Computer-Aided Transcription
25

```
 1                      A P P E A R A N C E S

 2    For the Plaintiffs:

 3              Tucker Ellis, LLP - Los Angeles, CA
                By: HOWARD ALAN KROLL, ESQ.
 4                  STEVEN ERICK LAURIDSEN, ESQ.
                    DAVID JEFFERSON STEELE, ESQ.
 5              515 S. Flower, 42nd Floor
                Los Angeles, CA  90071
 6
                Snell & Wilmer, LLP - Phoenix, AZ
 7              By:  DAVID GARY BARKER
                400 E. Van Buren
 8              Phoenix, AZ  85004

 9

10    For the Defendants:

11              Rome & Associates, APC
                By: EUGENE ROME, ESQ.
12                  BRIANNA DAHLBERG, ESQ.
                    SRIDAVI GANESAN, ESQ.
13              2029 Century Park E, Suite 450
                Los Angeles, CA  90067
14

15              Fennemore Craig, PC - Phoenix, AZ
                By: RAY KENDALL HARRIS, ESQ.
16              2394 E. Camelback Road, Suite 600
                Phoenix, AZ  85016
17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2              (Proceedings resume at 2:15 p.m.)

 3              COURTROOM DEPUTY:  This is CV20-470, Facebook v.

 4    Namecheap, on for a motion hearing.

 5              Counsel, please announce your appearances.

 6              MR. KROLL:  Howard Kroll with Tucker Ellis on behalf

 7    of the plaintiffs.

 8              MR. ROME:  Eugene Rome of Rome & Associates on behalf

 9    of the defendants.

10              THE COURT:  Good afternoon to you both.

11              I have indi -- I have filed an order indicating what

12    I'm interested in.  I'm not interested -- I realize that there

13    are several motions pending.  I'm only interested in what I've

14    indicated in my order, which is the amended motion to dismiss

15    for lack of personal jurisdiction.  I indicated that I would

16    give a limited amount of time to each side to discuss the

17    question that I've set forth.  And so Mr. Kroll, I'll give you

18    15 minutes.  I'll keep your time.

19              Thank you.

20              Please begin.

21              MR. KROLL:  Thank you, Your Honor.

22              Before I begin, though, there are a number of cases

23    that I'll be describing.  Would you like me to give you the

24    actual cites to that, or should I provide a brief later with

25    those cites?
```

UNITED STATES DISTRICT COURT

1        THE COURT:  I'm not interested in new briefing, in

2   opening up new briefing.  But you can file, if you want, just a

3   sheet with the names of the cases.

4        MR. KROLL:  Okay.  We -- we will do that, Your Honor.

5        THE COURT:  Names and citations of the cases.

6        MR. KROLL:  Yes.

7        Your Honor, WhoisGuard consented to personal

8   jurisdiction in Arizona every time WhoisGuard registered an

9   infringing domain name with Namecheap.

10        Plaintiffs believe that the facts alleged in the

11   complaint and the exhibits attached to the complaint make it

12   clear that WhoisGuard is the registrant of the infringing

13   domain names, and as such is a signatory to the registration

14   agreement.  However, regardless of whether WhoisGuard is a

15   signatory to the registration agreement, it is still bound and

16   subject to the forum selection clause based on the Ninth

17   Circuit decisions in Manetti-Farrow and Holland America.

18        The Ninth Circuit in Manetti-Farrow found that forum

19   selection clauses can be applied to nonparties to a contract

20   where the alleged conduct of the parties is so closely related

21   to the contractual relationship that the forum selection clause

22   applies.  Manetti-Farrow held that nonparties should benefit

23   from as well as be subject to forum selection clause, and there

24   are strong policy reasons to support enforcing forum selection

25   clauses against certain nonparties.

1          Judge Posner in the Seventh Circuit case, Adams versus

2     Raintree Vacation Exchange, wrote that if you don't enforce

3     forum selection clauses against affiliates of signatories, such

4     clauses could easily be evaded by shifting the business to

5     which the contract pertained to an affiliate.

6          A non-signatory like WhoisGuard impliedly consents to

7     the forum selection clause because of its connections with the

8     dispute, connections with the parties, and connections with the

9     contract at issue.  So we must analyze following the dictates

10    of Manetti-Farrow whether the alleged conduct of WhoisGuard is

11    so closely related to the contractual relationship of the

12    parties to the registration agreement.  So in Manetti-Farrow,

13    the defendant Gucci Perfumes was a signatory to the contract,

14    and other defendants included non-signatories which were either

15    Gucci-related companies or individuals who occupied prominent

16    positions within the Gucci management hierarchy.  And the Ninth

17    Circuit found that the conduct of these parties were closely

18    related to the contract at issue, and that the forum selection

19    clause applies.

20          The Third and Eleventh Circuit, in interpreting

21    Manetti-Farrow, found that a nonparty is closely related to a

22    dispute if its interests are completely derivative of and

23    directly related to, if not predicated upon, the signatory

24    parties' interest or conduct.

25          Third Circuit case is Dayhoff versus Heinz; the

1    Eleventh Circuit case is Lipcon versus Underwriters of Lloyds.

2          So in this case, what is the alleged conduct of

3    WhoisGuard at issue in this case, and how does WhoisGuard

4    actually describe its own conduct?  And then looking at that

5    conduct, is it derivative of and directly related to, if not

6    predicated upon, the interests or conduct of Namecheap and the

7    registrant of the infringing domain names?

8          Paragraph 52 of our complaint, we allege that

9    WhoisGuard provides a domain name proxy service; that

10   WhoisGuard registers the infringing domain name in its own

11   name, and as the registrant and owner of the infringing domain

12   names, licenses those infringing domain names to one of its

13   licensees for that licensee's use.

14         Exhibit 11 to our complaint is the WhoisGuard

15   directory -- the WHOIS directory, sorry -- for the infringing

16   domain names, and it lists WhoisGuard as the registered name

17   holder for those infringing domain names.

18         So despite these facts, WhoisGuard disputes that it's

19   a registrant of the infringing domain names, yet WhoisGuard

20   admits in its motion to dismiss -- that's document 31 at

21   page 14 -- that, and I quote here:  WhoisGuard, acting as an

22   administrator, literally registered the domain names for the

23   customers in order to provide the privacy services.

24         Lower on in the page, WhoisGuard actually refers to

25   itself as a service provider, service relating to the

1   registering of the domain names and offering a private -- a

2   proxy service.

3           Paragraph 60 of the complaint, we allege that

4   Whoisguard's proxy service is integrated within Namecheap's own

5   website, and Namecheap's customers obtained the WhoisGuard

6   service directly from their Namecheap user account.  This

7   allegation is actually verified by the declaration of

8   Ms. Ganesan, which is document 38 at paragraph 2, when she

9   declared that when registering her domain name on the Namecheap

10  website, she had the option at check-out to use the --

11          THE COURT:  Mr. Kroll, could you slow down a little

12  bit, please?

13          MR. KROLL:  Oh, I'm sorry, Your Honor.  Yes.

14          To the declaration of Ms. Ganesan, she declared that

15  when registering her domain name on the Namecheap web --

16  website, she had the option at check-out to use the WhoisGuard

17  proxy service at no additional cost.

18          Namecheap's website informs users of Whoisguard's

19  proxy service that WhoisGuard owns the domain names in the eyes

20  of ICANN.  This is Exhibit 8 to our complaint.

21          The complaint also alleges a close, intertwined

22  relationship between Namecheap and WhoisGuard.  Whoisguard's

23  entire business is providing proxy services to customers of

24  Namecheap.

25          Paragraph 59 of the complaint alleges that Namecheap

controls the business operations of WhoisGuard.  Paragraph 66
of the complaint:  Namecheap operates and controls the
WhoisGuard dot com domain name.  Paragraph 28 of the complaint:
WhoisGuard operates its data centers in Arizona.  And these
are, by the way, the data centers that are used to facilitate
Whoisguard's conduct in registering the infringing domain
names.

Paragraph 68, we allege that Namecheap is the direct
participant in the unlawful conduct of WhoisGuard, and we have
allegations that Namecheap and WhoisGuard are alter egos of
each other.

But not only is Whoisguard's conduct related to the
interests and conduct of both Namecheap and the registrant of
the infringing domain names, but plaintiffs' claims against
WhoisGuard also arise out of the registration and licensing of
the infringing domain names.

The registration agreement and the forum selection
clause covers the registration of domain names with Namecheap,
including the registration of these infringing domain names.

So plaintiffs allege that WhoisGuard registered as the
registered name holder domain names that are identical or
confusingly similar to plaintiffs' trademarks with a bad faith
intent to profit in violation of the ACPA.  We also allege that
WhoisGuard trafficked in those infringing domain names when it
licensed their use to Whoisguard's customers, again in

1   violation of the ACPA.

2          And finally, plaintiffs alleged that WhoisGuard, as

3   the registered name holder, accepted liability for harm caused

4   by the wrongful use of the domain name when it failed to

5   disclose the contact information of its licensee to plaintiffs

6   after plaintiffs requested it.  This allegation actually calls

7   for the interpretation of a contractual provision in the

8   registration agreement which incorporates language mandated by

9   ICANN to be in all registration agreements.  And in fact, an

10  independent basis of showing that WhoisGuard is closely related

11  to the registration agreement, there are cases which hold that

12  when resolution of an issue requires a determination and

13  interpretation of a clause in the agreement, the nonparties

14  within the scope of the forum selection clause.

15         In Manetti-Farrow, the Court said that claims cannot

16  be adjudicated without analyzing whether the parties were in

17  compliance with the contract.  And in the Southern District of

18  California in Meyer versus Howmedica Osteonics Corp., the Court

19  said because resolution of Smith's issue requires determining

20  the enforceability of a clause in the employment agreement,

21  this Court finds that Smith is sufficiently closely related to

22  the contract to bind Smith to the forum selection clause.

23         So to summarize these facts, Your Honor, WhoisGuard is

24  a proxy service that is integrated into Namecheap's website;

25  WhoisGuard registered the infringing domain names as an

administrator on behalf of Namecheap's customers.  The

registration of the infringing domain names with Namecheap is

controlled by the registration agreement.  WhoisGuard is listed

as the registrant for the infringing domain names in the WHOIS

directory; WhoisGuard licensed the infringing domain names to

its customers; WhoisGuard failed to provide contracting --

contact information of its customers when plaintiffs requested

it, as shown in the registration agreement; Whoisguard's

operations are controlled by Namecheap.  Its data centers are

in Arizona and controlled by Namecheap.  And it is the alter

ego of Namecheap.

        So these facts as alleged in the complaint and in the

document submitted by WhoisGuard shows that Whoisguard's

conduct is so closely related to the contractual relationship

between Namecheap and the registrant that the forum selection

clause should apply to WhoisGuard.

        Courts looking at this issue take a commonsense,

totality of the circumstances approach that essentially

inquires into whether in light of these circumstances it's fair

and reasonable to bind a nonparty to the forum selection

clause.  The approach places emphasis on whether it should have

been reasonably foreseeable for the non-signatory that

situations might arise in which the non-signatory would become

involved in the relevant dispute and bound by the forum

selection clause.  And this analysis and focus is consistent

1     with the Supreme Court's statement in Burger King versus

2     Rudzewicz that individuals must have fair warning that a

3     particular activity may subject them to the jurisdiction of a

4     foreign sovereign.

5              In this case, it's reasonable and foreseeable for

6     WhoisGuard to be bound to the forum selection clause based on

7     Whoisguard's conduct.  Putting aside whether WhoisGuard is

8     actually the registrant, Whoisguard's conduct evidenced that

9     it's acting as the registrant of the infringing domain name

10    because it performed registrant-like administrative functions.

11    Whoisguard's holding itself out to the public as the registrant

12    of the infringing domain names because it's listed as the

13    registrant for these names in the WHOIS directory.

14             THE COURT:  Mr. Kroll, you've speeded up again.  I

15    followed your argument pretty well.  Do you have anything more

16    to add?

17             MR. KROLL:  Yes, Your Honor.  I was going into why

18    it's reasonably -- reasonable and foreseeable to bind

19    WhoisGuard.  And the fact --

20             THE COURT:  Well, you've got -- you've got three more

21    minutes.  So use it however you want, but that's what you've

22    got.  So you'll be withholding none of it for rebuttal.

23             MR. KROLL:  Okay.  Fine, Your Honor.

24             Let's talk about the specific District case in the

25    Ninth Circuit that applied the closely related test to confer

personal jurisdiction over nonparty, non-signatory to a forum selection clause.  There's a published case of Ultratech Inc. versus Ensure Nanotech.  The District Court denied Mr. Wang's motion to dismiss based on lack of personal jurisdiction. Mr. Wang's conduct related to the contractual relationship of the sales agreement.  And the Court wrote -- this is in 2015 -- that with one exception, every District Court in our circuit that is considered -- considered whether to apply a forum selection clause to a corporate officer or related company that was not part of the agreement to which it applies has enforced the forum selection clause, provided that the claims in the suit relate to the contractual relationship.

          In the instant case, Whoisguard's conduct in acting as an administrator for its customers by registering infringing domain names is similar to those of non-signatory corporate officers like Wang who are subject to the forum selection clause.  And the facts show, as I have described earlier, that WhoisGuard is a related company to Namecheap.

          The Northern District also in Products & Ventures International versus Axus Stationery found the corporation non-signatory subject to the forum selection clause, because the corporation provided certain services connected to the agreement.  Like that corporation, WhoisGuard also provided services to its customers.  In fact, according to WhoisGuard, it literally registered the domain name for its customers and

1    provided a proxy service.

2           Central District of California in Mazal Group versus

3    Barak in 2019 denied a motion to dismiss for lack of personal

4    jurisdiction where the individual, Barrack, took actions on

5    behalf of the corporation that allegedly breached the contract.

6           In this case, WhoisGuard failed to provide contact

7    information about its customers when notified by plaintiffs as

8    it was required to do under the registration agreement.  And --

9           THE COURT:  All right.  You have reached your time,

10   Mr. Kroll.

11          MR. KROLL:  Okay.  Thank you, Your Honor.

12          THE COURT:  Thank you.

13          Mr. Rome?

14          MR. ROME:  Thank you, Your Honor.

15          I'll try and focus my arguments on the Holland

16   American Line case and the Manetti-Farrow case, but in so

17   doing, I'd like to point out that Mr. Kroll's arguments

18   ventured into the registrar accreditation agreement, and

19   additional items that are currently pending before the Court on

20   our challenge via the 12(b)(6) motion, asserted by Namecheap

21   and also stated in the WhoisGuard motion to dismiss.  And so I

22   note that those arguments have not been opposed by plaintiffs

23   in their opposition filed to Whoisguard's motion to dismiss.

24   So for one thing, they are conceded, the validity of those

25   arguments, but separately any efforts to entertain those

1    arguments I respectfully submit should necessarily entail

2    adjudication of Namecheap's --

3              THE COURT:  Do you know, Mr. Rome --

4              MR. ROME:  That said --

5              THE COURT:  Mr. Rome, you are not speaking quite as

6    quickly, but your connection is not as good, and it's slurred.

7    So we can't --

8              MR. ROME:  I apologize.

9              THE COURT:  -- hear you.  So if you can speak more

10   distinctly, that would be helpful.  And if you could repeat the

11   last two sentences, that would be helpful also.

12             MR. ROME:  Okay, Your Honor.  Is this better?

13             THE COURT:  It is better.  Thank you.

14             MR. ROME:  Okay.

15             What I had said was that any determination of matters

16   currently pending under Namecheap's motion to dismiss should be

17   adjudicated at that time if they're to be considered in

18   conjunction with Whoisguard's motion to dismiss and the pending

19   opposition.

20             That said, though, I'll turn to the Holland American

21   and Manetti-Farrow cases.

22             The Court asked us to comment upon whether or not the

23   cases are distinguishable, and they are distinguishable.  And

24   one of the key reasons for why they're distinguishable is

25   because both cases involve a different issue than the one

1    presented here.  And the issue is whether a non-signatory

2    defendant had standing to enforce a mandatory forum selection

3    clause specifying a foreign jurisdiction resulting in a

4    dismissal of the action because it was brought in an improper

5    forum, and not whether the Court itself could exercise personal

6    jurisdiction over a defendant based upon a forum selection

7    clause to which that defendant was not a party, and to do so

8    over the defendant's objection.

9            Now, the Ninth Circuit recently confirmed that the

10   scope of the Manetti-Farrow rule is narrow in its opinions in

11   AMA Multimedia, LLC versus Sagan, which was issued on

12   April 24th, 2020.  It stated the defendants as nonparties could

13   enforce the forum selection clause if their conduct was closely

14   related to the contractual relationship between the plaintiff

15   and the parties.

16           So in Manetti v. Farrow, Gucci terminated the

17   contract -- Gucci terminated the contract and Manetti-Farrow

18   filed suit in the Northern District of California against Gucci

19   Perfumes, its Italian parent company, and various individuals

20   and directors.  And the plaintiff argued that the Italian forum

21   selection clause applied only to Gucci Perfumes because it was

22   the only signatory.

23           The Ninth Circuit held that the alleged conduct was

24   closely related to the contractual relationship between

25   plaintiff and Gucci Perfumes.

1          This point, it was critical.  Whether their

2     relationship was closely related to the contractual

3     relationship between the plaintiff and Gucci Perfumes, here

4     there is no contract between the plaintiffs and WhoisGuard.

5     There is no contract between the plaintiffs and Namecheap.  And

6     that is a determinative factor.

7          So there was no issue there whether the non-signatory

8     Gucci defendants consented to be bound to the Italian forum

9     selection clause; rather, they were the ones seeking to enforce

10    the clause.  Again, a critical distinction between the facts of

11    the Manetti-Farrow case and the present one.

12         The situation was similar in Holland America where the

13    plaintiff Holland America sued a number of defendants.  One of

14    the defendants he had a contract with that included a forum

15    selection clause, and the balance of the defendants were

16    connected or closely related, claimed to be, to that

17    contracting defendant.

18         Again, the Ninth Circuit -- at least a different Court

19    there affirmed that the BV affiliates in North American cannot

20    claim the benefit of the French forum selection clause between

21    Holland America and BV.  Importantly, both Holland America and

22    Manetti-Farrow, the forum selection clauses were the basis --

23         THE COURT:  Can I -- can I have you slow down?  Can I

24    please have you slow down.

25         MR. ROME:  Sure.

1          THE COURT:  When you're -- Mr. Kroll, Mr. Rome, when

2    you're reading what you're saying, you have a tendency to go

3    fast and to keep speeding up.  So if you could just keep it

4    slow, that would be most appreciated.

5          Thank you.

6          MR. ROME:  I -- I apologize, Your Honor.  I will slow

7    down.

8          As I was saying, in both Holland America and the

9    Manetti-Farrow matter, the foreign forum selection clauses were

10   the basis of dismissing the action on the grounds that the

11   Court was not the proper forum, rather than the finding of

12   personal jurisdiction or non-signatory, which is what's

13   happening here, or at least that's the effort on the part of

14   plaintiffs.

15         Now, where the courts exercised personal jurisdiction

16   based on the forum selection clause, there has to be evidence

17   that the party consented to the clause granting jurisdiction.

18   Without consent, there's a due process problem, and it's a

19   profound one.

20         In this case, as mentioned earlier, there really is no

21   contractual agreement between any of the plaintiffs, on the one

22   hand, and Namecheap or WhoisGuard on the other hand.  Neither

23   WhoisGuard or, based on plaintiffs' arguments, Namecheap

24   could -- could anticipate this kind of a dispute having been

25   brought, nor did they contract for it.  Again, this is not a

1   case where one of Namecheap's customers is trying to initiate a

2   lawsuit against Namecheap, and it's trying to bring into the

3   fold of liability WhoisGuard.  Rather, it's a third party

4   that's a stranger to the contractual relationship by and

5   between Namecheap and its customer -- WhoisGuard and its

6   customers.

7            Rather, the facts here for this reason are more

8   analogous to a different portion than the Holland America

9   opinion where the Ninth Circuit held that Holland America had

10  failed to establish personal jurisdiction over the defendants

11  in Washington state.  Much like the plaintiffs here, Holland

12  argued that the defendants have consented to the Washington

13  state forum selection clause in their terms of services, and

14  they offered some affidavits stating that terms of services

15  were emailed.  But there was no evidence of assent.  And

16  because Holland could not demonstrate the defendants consented

17  to its Washington forum selection clause, plaintiffs failed to

18  establish a prima facie case of personal jurisdiction over

19  them.

20           Similarly here, there's no evidence that WhoisGuard

21  consented to the Arizona forum selection clause in their

22  Namecheap registration agreement.  Rather, to the contrary,

23  Whoisguard's representative, Mr. Zurita, unequivocally denied

24  it, and there's not been any evidence offered to the contrary.

25  There are naked allegations in the complaint, but the burden

1    shifts when a defendant comes forth with evidence disputing

2    such a relationship for the plaintiffs to provide affirmative

3    evidence countering it.  And no such evidence has been

4    provided.

5            So we respectfully submit plaintiffs have failed to

6    meet their burden of establishing a prima facie case for

7    personal jurisdiction over WhoisGuard in Arizona.

8            In addition, the Manetti-Farrow cases applying forum

9    selection clauses to nonparties are distinguishable on several

10   additional grounds.  The agreements that were cited by

11   Mr. Kroll are not the agreements that are at issue.  The

12   Namecheap registration agreements --

13           THE COURT:  Do you know, Mr. Rome --

14           MR. ROME:  Yes?

15           THE COURT:  I would ask you, again, you're not going

16   too fast, but you're not enunciating.  And we need to be able

17   to hear what you're saying.  So I don't know where you're

18   speaking, if you're not speaking into the handset or what, but

19   it's not coming across very clearly here.  Could you please

20   repeat the last sentence, and then please try to enunciate?

21           MR. ROME:  Yes, Your Honor.  I'm sorry.  I'm speaking

22   directly into the handset.  I'm not sure why there's a bad

23   connection.

24           What I was saying is that in this case, plaintiffs, as

25   mentioned before, are not parties to the contract containing

1    the forum selection clause.  The Namecheap registration

2    agreement is between Namecheap and users of its domain

3    registration services.  Plaintiffs are not parties to that

4    agreement.  Consequently, plaintiffs do not have to pay

5    anything to enforce the forum selection clause.

6            WhoisGuard for its part does not have a contractual

7    business or other relationship with plaintiffs, so its conduct

8    cannot be deemed to be closely related to any contractual

9    relationship with plaintiffs, as was the case in Holland

10   America and Manetti-Farrow.  In both of those cases, there was

11   a contract between the plaintiffs and at least one of the

12   defendant entities.  Here, there is none.

13           The Namecheap registration agreement pertains to

14   Namecheap registration services, and it, itself, does not

15   govern Whoisguard's privacy service.  Whoisguard's privacy

16   services are governed by different contracts.  There's one

17   between the Namecheap with proxy agreement, and that's the

18   document that's in the brief.  It's between Namecheap customers

19   and its -- Namecheap's terms for customers use of Whoisguard's

20   privacy services.

21           When the customer engages WhoisGuard, there is a

22   separate agreement, and that's the agreement that governs.  And

23   that's the WhoisGuard agreement.  That's the one that's

24   attached to the Zurita declaration filed with the motion.  And

25   that agreement stipulates for -- or -- for forum in the

1  Republic of Panama.

2    This dispute is substantially outside the scope of any

3  matter addressed in Namecheap's agreement with its customers,

4  and it simply does not fall within the forum specified in

5  Namecheap's agreement.  More to the point, it is WhoisGuard

6  that's challenging jurisdiction.  And the WhoisGuard agreement

7  unequivocally sets Panama is the appropriate forum for

8  adjudication of any disputes.

9    This action is also not a third-party dispute as

10  referenced in the briefs submitted by plaintiffs for the

11  reasons that the "you" in that agreement specifically refers to

12  Namecheap's customers.

13    The alter ego claims, they contain no evidence in

14  support thereof.  And we've cited case law in our brief that

15  stands for the proposition that when a party challenges the

16  alter ego claims as Mr. Zurita has with actual evidence, the

17  burden again shifts to the plaintiffs to come forward with

18  affirmative evidence.  They have failed to do so.

19    For all these reasons, we respectfully submit that the

20  Manetti-Farrow decision and Holland American Line decision,

21  they do not apply to this particular situation.  There is no

22  contractual relationship between the plaintiffs and any of the

23  defendants to the dispute.  And the agreement with WhoisGuard

24  specifically designate -- the WhoisGuard agreement specifically

25  designates Panama and not Arizona as the appropriate forum.

1    Thank you.

2    THE COURT:  Thank you.

3    Mr. Kroll, if you're going to submit your list of

4 cases, I would ask you to do that today.

5    We will review the matter and file an order as soon as

6 possible.

7    Thank you.  Be well, all parties.

8    MR. KROLL:  Your Honor, may I have time to rebut?

9    THE COURT:  No, you may not.  You used it all.

10    MR. KROLL:  You gave me 15 minutes.  I thought I had

11 20 minutes, Your Honor.

12    THE COURT:  Goodbye, Mr. Kroll.

13    MR. KROLL:  All right.

14    Thank you, Your Honor.

15     (Proceedings in recess at 2:45 p.m.)

16

17

18

19

20

21

22

23

24

25

```
 1                      C E R T I F I C A T E

 2

 3          I, CHARLOTTE A. POWERS, do hereby certify that I am

 4    duly appointed and qualified to act as Official Court Reporter

 5    for the United States District Court for the District of

 6    Arizona.

 7          I FURTHER CERTIFY that the foregoing pages constitute

 8    a full, true, and accurate transcript of all of that portion of

 9    the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 23rd day of September,

13    2020.

14

15                                s/Charlotte A. Powers
                                  Charlotte A. Powers, RMR, FCRR
16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT