**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook Incorporated, et al., | No. CV-20-00470-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Namecheap Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendant WhoisGuard, Inc.'s ("WhoisGuard") Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim (Doc. 31) and Defendant Namecheap, Inc.'s ("Namecheap") (collectively, "Defendants") Motion to Dismiss for Failure to State a Claim (Doc. 30). For the following reasons, WhoisGuard's Motion is denied, Namecheap's Motion is granted, and Plaintiffs shall have leave to amend their Complaint as to Defendant Namecheap.

## BACKGROUND

This case arises out of Defendants' alleged registration, trafficking, and use of domain names that encroach on the exclusive marks of Facebook, Inc., Instagram, LLC and WhatsApp, Inc. (collectively, "Plaintiffs"). Defendant Namecheap is an Internet Corporation of Assigned Names and Numbers ("ICANN") accredited domain registrar. (Doc. 1 ¶ 51.) In offering its customers domain name registry services, Namecheap allows its customers to opt into Defendant WhoisGuard's proxy service. *Id.* ¶ 52. In its proxy service, WhoisGuard registers Namecheap's customers' domain names in WhoisGuard's

name and licenses the domain names back to the customers. *Id.* As the domain name registrant, WhoisGuard's name, not the name of the customer, is listed in the WHOIS record, a directory that contains the identity and contact information for domain names. *Id.* ¶¶ 6, 55.

Several agreements relate to Namecheap's and WhoisGuard's services. As an ICANN-accredited registrar, Namecheap is subject to ICANN's Registrar Accreditation Agreement ("RAA"). *Id.* ¶ 51. The RAA requires Namecheap to enter into a registration agreement, which must include certain provisions, with each registered name holder. (Doc. 1-5 at 16.) As relevant here, one such required provision is Section 3.7.7.3 of the RAA. *Id.* at 16-17. Section 3.7.7.3 states:

> Any Registered Name Holder that intends to license use of a domain name to a third party is nonetheless the Registered Name Holder of record and is responsible for providing its own full contact information and for providing and updating accurate technical and administrative contact information adequate to facilitate timely resolution of any problems that arise in connection with the Registered Name. A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing the Registered Name Holder reasonable evidence of actionable harm.

*Id.* The Namecheap, Inc. Registration Agreement ("Registration Agreement") sets forth the terms for use of Namecheap's domain name registration and related services. (Doc. 1-2 at 3.) Plaintiffs and Defendants dispute whether WhoisGuard agreed to the terms in the Registration Agreement and whether Section 3.7.7.3, as stated above, is incorporated in the Registration Agreement. In addition to the Registration Agreement, Namecheap's customers that opt into WhoisGuard's proxy service are bound by the terms in the Namecheap WHOIS Proxy Agreement ("Proxy Agreement") and the WhoisGuard Services Agreement ("WhoisGuard Agreement"). (Doc. 1 ¶ 29.)

Plaintiffs allege that at least forty-five domains ("Infringing Domain Names") registered by WhoisGuard are identical or confusingly similar to trademarks and service

marks to which they own exclusive rights. *Id.* ¶ 69. Between October 2018 and February 2020, Plaintiffs contacted WhoisGuard about the Infringing Domain Names and requested that WhoisGuard disclose the licensees' identities. *Id.* ¶ 83. Plaintiffs allege WhoisGuard assumed liability on behalf of its licensees when it failed to disclose the identity or contact information of its licensees pursuant to Section 3.7.7.3 of the RAA. *Id.* ¶¶ 80, 84.

Plaintiffs brought this action on March 4, 2020. Plaintiffs assert causes of action for cybersquatting (Count 1), trademark infringement (Count 2), false designation of origin (Count 3), and dilution (Count 4). Defendant Whoisguard moves to dismiss Plaintiffs' Complaint for lack of personal jurisdiction and both Defendants move to dismiss all counts for failure to adequately allege sufficient facts.

## DISCUSSION

**I. Defendant WhoisGuard's Motion to Dismiss for Lack of Personal Jurisdiction**

**A. Legal Standard**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, the motion to dismiss a complaint for lack of personal jurisdiction "is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

When determining the sufficiency of a prima facie showing, "[t]he court may consider evidence presented in affidavits." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). The court must assume as true all uncontroverted facts in the complaint and must interpret all evidentiary disputes in the plaintiff's favor. *See Schwarzenegger*, 374 F.3d at 800. However, "the plaintiff cannot simply rest on the bare allegations of its complaint" if controverted by evidence incorporated into the defendant's motion. *Id.* (internal quotation omitted); *see also Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280,

1284 (9th Cir. 1977) (explaining that a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."). All evidence must be admissible to be considered. *See Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917, 923 (D. Ariz. 2003).

### B. Personal Jurisdiction

A federal court sitting in diversity "applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). The Arizona long arm statute is co-extensive with the limits of federal due process. *See Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (citing *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987)); *see also* Ariz. R. Civ. P. 4.2(a). "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe*, 112 F.3d at 1050 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction, general and specific. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 15 (1985).

The existence of a forum selection clause in this case renders personal jurisdiction proper in this Court. A contract's forum selection clause alone is sufficient to confer personal jurisdiction. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994). Plaintiffs and WhoisGuard dispute whether WhoisGuard is a party to the Registration Agreement, which contains an Arizona forum selection clause.

It is not necessary to resolve whether WhoisGuard consented to the Registration Agreement, however, as WhoisGuard is bound by the Registration Agreement's forum selection clause regardless of whether it is a signatory.[1] Where the alleged conduct of nonparties is closely related to the contractual relationship, "a range of transaction

---

[1] Whether WhoisGuard is a party to the Agreement is central to several of Plaintiffs' claims. Therefore, the averments in the affidavit related to the existence or lack of personal jurisdiction are intertwined with the merits. Deciding the jurisdictional question on alternative grounds avoids weighing on the merits at this early stage.

participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988). *See, e.g.*, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007). Here, the disputed conduct involves WhoisGuard's provision of its proxy service to Namecheap's customers. To access WhoisGuard's proxy service, a Namecheap customer must enter into several agreements with Namecheap and WhoisGuard, including the Registration Agreement. Once a Namecheap customer elects to use WhoisGuard's proxy service, WhoisGuard becomes the domain name registrant for that customer's domain. In doing so, WhoisGuard falls directly under the definition of "you" and "your" in the Registration Agreement. Therefore, the disputed conduct is "closely related" to the Registration Agreement.

Finally, the forum selection clause confers personal jurisdiction because it covers the dispute at issue. The Registration Agreement selects Arizona as the forum "for the adjudication of any third party disputes (i.e., disputes between you and another party, not us) concerning or arising from use of domain names registered hereunder." (Doc. 1-2 at 17.) As this dispute relates to WhoisGuard, who falls under the definition of "you", and a third party, Plaintiffs, regarding use of domain names registered under the Registration Agreement, the forum selection clause directly covers this dispute. Accordingly, Plaintiffs' allegations are sufficient to justify the exercise of this Court's jurisdiction over WhoisGuard.

## II.     Motions to Dismiss for Failure to State a Claim

### A. Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in

1   the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217
2   (9th Cir. 1996).  However, legal conclusions couched as factual allegations are not given a
3   presumption of truthfulness, and "conclusory allegations of law and unwarranted
4   inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d
5   696, 699 (9th Cir. 1998).

**B. Analysis**

In separate motions, Defendants Namecheap and WhoisGuard move to dismiss all of Plaintiffs' claims.  The Court addresses each motion separately.

**1. WhoisGuard**

Plaintiffs argue WhoisGuard is liable on all four counts because WhoisGuard accepted liability for its licensees' wrongful use of the Infringing Domain Names when it breached Section 3.7.7.3 of the RAA, as incorporated in the Registration Agreement.

First, Plaintiffs plausibly allege that WhoisGuard is a party to the Registration Agreement.  Plaintiffs allege that WhoisGuard is the WHOIS registrant for the Infringing Domain Names.  ICANN requires every registrant of a domain name to enter into a registration agreement, and the Registration Agreement defines "you" and "your" to include "the registrant listed in the WHOIS contact information for the domain."  (Doc. 1-2 at 3.) Drawing all reasonable inferences in favor of Plaintiffs, WhoisGuard's inclusion in the definition of the parties to the Registration Agreement makes it plausible that WhoisGuard is a party to the Registration Agreement.

Second, Plaintiffs plausibly allege that they are third-party beneficiaries to the Registration Agreement.  In order to recover as a third-party beneficiary of a contract, (1) an intention to benefit the third-party must be indicated in the contract, (2) the benefit must be intentional and direct, and (3) it must appear the parties intended to recognize the third-party as the primary party in interest. *Norton v. First Fed. Sav.*, 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981).  Drawing all reasonable inferences in favor of Plaintiffs, Section 3.7.7.3's language about third parties, as detailed previously, can be read to confer a benefit on parties like Plaintiffs.  *See Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092,

1119 (C.D. Cal. 2009) (inferring an intent to benefit trademark owners in the language of 3.7.7.3). WhoisGuard contends that Section 3.7.7.3 does not confer a right to third parties because the RAA contains a "No Third Party Beneficiary" clause. (Doc. 39 at 17.) However, WhoisGuard misconstrues Plaintiffs' argument. Plaintiffs do not argue that they are trying to enforce the RAA itself, but the RAA as incorporated in the Registration Agreement.

Finally, Plaintiffs plausibly allege that Section 3.7.7.3's language is incorporated into the Registration Agreement and that this language makes WhoisGuard liable. A provision in the Registration Agreement states that by agreeing to the services provided by Namecheap, "you have read and agree to be bound by . . . the rules, policies, or agreements published in association with specific of the Service(s) and/or which may be enforced by Internet Corporation of Assigned Names and Numbers ("ICANN")." (Doc. 1-2 at 3.) The Registration Agreement then links to a page titled "Registrant Rights, Benefits & Responsibilities." *Id.* That page explains that "ICANN has set forth various rights and responsibilities of Registrants" and links to ICANN's website. (Doc. 32-2 at 10.)[2] On ICANN's website, ICANN explains that, in accordance with the RAA, "the Registrar/Registered Name Holder Agreement must include – at minimum – the following items (as stated at Sections 3.7.7.1 – 12 of the RAA)." *Id.* at 13. Section 3.7.7.3, as detailed above, states that the registered name holder licensing use of a domain name accepts liability for wrongful use unless they disclose the contact information and identity of the licensee. Drawing all reasonable inferences in favor of Plaintiffs, the Registration Agreement plausibly incorporates Section 3.7.7.3 and WhoisGuard plausibly made itself liable pursuant to the section for the infringements of the Domain Name Licensees when it failed to disclose the identity of the Infringing Domain Name licensees.

---

[2] Courts may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The links on Namecheap's website referred to in the Registration Agreement and the terms on ICANN's website are central to whether WhoisGuard may be held liable and are not disputed by Defendants. Therefore, these terms may be properly considered in the context of the instant motions.

WhoisGuard disagrees that it agreed to accept liability for its licensees. Defendants point out that ICANN's website, which references the RAA, puts a different interpretation on Section 3.7.7.3 than Plaintiffs do. ICANN's website describes Section 3.7.7.3 in the following way:

> Whoever is listed as the Registered Name Holder must provide full contact information and is the Registered Name Holder of record. Sometimes a Registered Name Holder may register a domain name and then allow another person to use the domain name (such as a website designer registering a domain name for a client). If this happens, and the person actually using the name did not enter into the Registrar/Registered Name Holder Agreement (referred to as a "third party" in the RAA), the Registered Name Holder could be accountable for wrongful use of the domain name by the third party. This will happen if the Registered Name Holder is provided with "reasonable evidence of actionable harm" from the third party's use of the domain name. In that situation the Registered Name Holder will "accept liability for harm caused by wrongful use of the Registered Name," unless the Registered Name Holder discloses the user's identity and current contact information.

*Id.*

Based on this language, WhoisGuard argues it cannot be held liable for its licensees because those licensees also entered into the Registration Agreement and are therefore not considered third parties under Section 3.7.7.3. (Doc. 39 at 15.) It is not appropriate, on a motion to dismiss, however, to determine which language governs. Plaintiffs' interpretation of Section 3.7.7.3's language, as stated in the actual RAA, plausibly supports that WhoisGuard is liable for its licensees. Significantly, the RAA agreement does not define what a third party is anywhere in the agreement. As all reasonable inferences must be drawn in favor of Plaintiffs at this stage, Plaintiffs' plausible interpretation of Section 3.7.7.3 governs. Therefore, Plaintiffs plausibly claim that WhoisGuard is liable for its licensees' actions on all four counts.

### 2. Namecheap

#### a. Count One

To state a claim of cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), the trademark owner must establish that "(1) it has a valid

trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004). Namecheap argues Plaintiffs' cybersquatting claim fails as a matter of law because Plaintiffs fail to sufficiently allege two elements of a cybersquatting claim: that Namecheap used, registered, or trafficked the Infringing Domain Names and that Namecheap had a bad faith intent to profit. (Doc. 30.)

The ACPA imposes liability for "register[ing], traffic[king] in, or us[ing]" a domain name that is identical to or confusingly similar to a distinctive mark. 15 U.S.C. § 1125(d)(1)(A). Plaintiffs argue Namecheap "used" the Infringing Domain Names by setting up revenue-generating parking pages. (Doc. 32 at 10.) However, Plaintiffs do not allege Namecheap used the Infringing Domain Names to set up parking pages anywhere in their Complaint. The allegations Plaintiffs cite to in their Complaint only refer to how licensees used the domain names. (Doc. 1 ¶¶ 85-86.) Plaintiffs do refer to the Registration Agreement, which explains how Namecheap is permitted to host parking pages, and screenshots of some of the Infringing Domain Names, which shows Namecheap's logo, but neither of these references, standing alone, show Namecheap used the Infringing Domain Names to set up parking pages. (Doc. 32 at 10.) As Plaintiffs fail to sufficiently plead this element, the Court need not address whether Namecheap had a bad faith intent to profit.

### b. Counts Two, Three, and Four

Namecheap argues Plaintiffs fail on their second, third, and fourth causes of action because all three counts require a showing that Namecheap used the marks in commerce. To allege a claim for trademark infringement, false designation of origin, and dilution, a plaintiff must allege the infringer used the plaintiff's marks "in commerce" in connection with the sale or advertising of goods or services. 15 U.S.C. §§ 1114(1)(a), 1125(a)(1). Again, Plaintiffs argue Namecheap's use of parking pages evidences use in commerce.

(Doc. 32 at 19.) As previously addressed, Plaintiffs do not allege Namecheap used the Infringing Domain Names to set up parking pages in their Complaint. Therefore, Plaintiffs fail to sufficiently plead Counts Two, Three, and Four as to Namecheap.

### c. Alter Ego and Direct Participant Liability

Plaintiffs argue Namecheap is liable for WhoisGuard's tortious conduct on all counts as its alter ego and direct participant. To state a claim for alter ego liability, there must be "such unity of interest and ownership" that the separate personalities of the two entities fail to exist and that failure to disregard the separate identities results in "fraud or injustice." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). The unity and ownership prong requires a showing that the entity controls the other "to such a degree as to render the latter the mere instrumentality of the former." *Doe*, 248 F.3d at 926 (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)). There must be pervasive control, such as where a parent corporation "dictates "[e]very facet [of the subsidiary's] business-from broad policy decisions to routine matters of day-to-day operation[.]" *Id.* (quoting *Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Servs., Inc.,* 253 Cal. Rptr. 338, 344 (Ct. App. 1988)). Alter ego liability is not found where the two entities observe their corporate formalities or where the parent does not direct the subsidiary's routine day-to-day operations. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073–75 (9th Cir. 2015).

Plaintiffs point to the following factual allegations in their Complaint to support their argument that Namecheap and WhoisGuard are not separate entities: (1) WhoisGuard provides its proxy service on behalf of Namecheap; (2) there is no charge for WhoisGuard's service; (3) when WhoisGuard is contacted with evidence of trademark infringement, served with subpoenas seeking domain name licensee information, or receives administrative domain name complaints, Namecheap responds instead of WhoisGuard; (4) Namecheap owned the WhoisGuard domain name in the past; and (5) Namecheap currently operates the WhoisGuard domain name and controls the content available on WhoisGuard's website. (Doc. 1 ¶¶ 59-66.) Plaintiffs also point out that

Namecheap confuses the role of registrar and service provider on their website, (Doc. 1-6 at 2), and interchanged Namecheap and WhoisGuard's name twice in the Proxy Agreement, (Doc. 1-3).

Other than the conclusory allegation that "WhoisGuard is not a separate autonomous entity from Namecheap," Plaintiffs do not allege anything about failure to observe corporate formalities. (Doc. 1 ¶ 58.) And, despite Plaintiffs' argument to the contrary, the mere fact Namecheap provides WhoisGuard's service to its customers for free does not support the inference that WhoisGuard is undercapitalized or that the two companies improperly commingle funds. (Doc. 32 at 24.) Plaintiffs do allege several facts that indicate an overlap in Defendants' operations, such as Namecheap responding on WhoisGuard's behalf and Namecheap's control over WhoisGuard's website. Additional allegations are needed, however, to give rise to the plausible inference that Namecheap dictates *every facet* of WhoisGuard's business. As a result, Plaintiffs fail to adequately allege a "unity of interest" sufficient to satisfy the first prong of the alter ego test.

Plaintiffs also do not sufficiently plead direct participant liability.[3] Under direct participant liability, a parent company may be held liable "for the wrongdoing of a subsidiary where the parent directly participated in the subsidiary's unlawful actions." *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 756 (7th Cir. 1989). Plaintiffs do not allege anywhere in their Complaint that WhoisGuard is Namecheap's subsidiary. As Plaintiffs fail to sufficiently plead direct participant and alter ego liability, Namecheap cannot be held liable for WhoisGuard's conduct.

### d.  Leave to Amend

If a motion to dismiss is granted, a court should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not

---

[3] Plaintiffs argue that Namecheap concedes direct participant liability for the purposes of its motion to dismiss because Namecheap did not argue direct participant liability in its motion. (Doc. 32 at 23.) Although arguments raised for the first time in a reply brief will not be considered, arguments made *in response* to those set forth in the opposing party's opposition brief "are not new; they are rebuttal arguments, which are permitted in a reply brief." *Beckhum v. Hirsh*, No. CV 07-8129-PCT-DGC (BPV), 2010 WL 582095, at *8 (D. Ariz. Feb. 17, 2010). As Plaintiffs argue direct participant liability in their response, Namecheap may properly argue against it in its reply.

possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). As additional facts could potentially cure Plaintiffs' allegations, leave to amend is granted to Plaintiffs.

## CONCLUSION

Defendant WhoisGuard's Motion to Dismiss Plaintiffs' claims for Lack of Personal Jurisdiction and for Failure to State a Claim are denied. Defendant Namecheap's Motion to Dismiss all of Plaintiffs' claims is granted. Plaintiffs shall have leave to file an Amended Complaint as to Defendant Namecheap within thirty days of the date of this Order. Accordingly,

**IT IS HEREBY ORDERED** that Defendant WhoisGuard's Motion to Dismiss (Doc. 31) is **DENIED.**

**IT IS FURTEHR ORDERED** that Defendant Namecheap's Motion to Dismiss (Doc. 30) is **GRANTED**.

**IT IS FURTHER ORDERED** granting Plaintiffs leave to amend their Complaint as to Defendant Namecheap within thirty days of the date of this Order.

**IT IS FURTHER ORDERED** that should Plaintiffs fail to file an Amended Complaint within thirty days of the date of this Order, the Clerk of Court is directed to dismiss Plaintiffs' claims of cybersquatting, trademark infringement, false designation of origin, and dilution as to Defendant Namecheap without prejudice.

Dated this 10th day of November, 2020.

G. Murray Snow
Chief United States District Judge