**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com

Attorneys for Defendants
Namecheap, Inc. and WhoisGuard, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation, | CASE NO. 2:20-cv-00470-GMS |
| Plaintiffs, | **DEFENDANT WHOISGUARD INC.'S ANSWER AND COUNTERCLAIM** |
| v. | |
| Namecheap, Inc., a Delaware corporation; and WhoisGuard, Inc., a Republic of Panama corporation, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |
| WhoisGuard, Inc., a Republic of Panama corporation, | |
| Counterclaimant, | |
| v. | |
| Facebook, Inc., a Delaware corporation, | |
| Counterclaim Defendant. | |

1

## ANSWER

Defendant and Counterclaimant WhoisGuard, Inc. ("WhoisGuard"), by and through its attorneys, hereby answers the Complaint of Plaintiff and Counterclaim Defendant Facebook, Inc. and Plaintiffs Instagram LLC and WhatsApp Inc. ("Plaintiffs") as follows:

## I.    INTRODUCTION[1]

1.    WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint and on that basis denies them.

2.    WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint and on that basis deny them.

3.    Admit.

4.    WhoisGuard admits that it provides a proxy service to Namecheap's customers and that WhoisGuard and Namecheap refer to this service as "WhoisGuard" with a capital "G." WhoisGuard denies that it is Namecheap's alter ego.

5.    WhoisGuard denies that it registers the domains and, also, denies that it is the "registrant" within the meaning of the Anticybersquatting Consumer Protection Act ("ACPA") or otherwise. WhoisGuard further admits that Plaintiffs refer to this individual or entity as the "Licensee." WhoisGuard denies any remaining allegations of paragraph 5 of the Complaint.

6.    WhoisGuard admits that it is listed as the registrant for some domain names which use the WhoisGuard service on publicly available domain name registration records but denies that it is the "registrant" within the meaning of the ACPA or otherwise.

7.    WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the Complaint and on that basis denies them.

---

[1] WhoisGuard has included the headings listed in the Complaint simply to assist in reading the pleadings and does not admit the accuracy of the headings to the extent that they can be construed as asserting allegations of fact.

8.   Deny.

9.   Deny.

10.   WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint and on that basis denies them.

11.   WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Complaint and on that basis denies them.

12.   WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 12 of the Complaint and on that basis denies them.

13.   Deny.

14.   Deny.

15.   WhoisGuard admits that Namecheap is a party to the Domain Name Registration Agreement. It denies that it is a party to the Domain Name Registration Agreement. With respect to the contents of the Domain Name Registration Agreement, the agreement speaks for itself and therefore no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 15.

16.   WhoisGuard denies that it agreed that it is the Registered Name Holder or that it "shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee. To the extent that paragraph 16 is alluding to ICANN's RAA, WhoisGuard admits that Namecheap is a party to the RAA. With respect to the contents of the RAA, the agreement speaks for itself and therefore no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 16.

17.   WhoisGuard admits that Plaintiffs have sent notices to it requesting that it disclose the identity and current contact information of Licensees but denies that Plaintiffs

have provided reasonable evidence of actionable harm or that provision of such evidence would require action on WhoisGuard's part.

18.    Deny.

19.    WhoisGuard admits that Plaintiffs seeks the relief stated in paragraph 19 but denies that Plaintiffs are entitled to any such relief. WhoisGuard denies that Defendants are engaged in any unlawful or harmful conduct.

**II.    THE PARTIES**

20.    WhoisGuard is without knowledge or information sufficient to form a belief to the truth of the allegations in paragraph 20 of the Complaint, and on that basis denies them.

21.    WhoisGuard is without knowledge or information sufficient to form a belief to the truth of the allegations in paragraph 21 of the Complaint, and on that basis denies them.

22.    WhoisGuard is without knowledge or information sufficient to form a belief to the truth of the allegations in paragraph 22 of the Complaint, and on that basis denies them.

23.    Admit.

24.    WhoisGuard admits that it is a Republic of Panama corporation but denies that its principal place of business is in Phoenix, Arizona.

25.    Deny.

**III.    JURISDICTION AND VENUE**

26.    Paragraph 26 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, WhoisGuard admits that Plaintiffs purport to invoke federal question jurisdiction over the federal causes of action alleged in the Complaint pursuant to 28 U.S.C. § 1331.

27.    Paragraph 27 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, WhoisGuard admits that Namecheap has an office and some servers in Phoenix, Arizona; and that Namecheap

specifies Arizona in the forum selection clauses of some of its contracts. WhoisGuard denies the remaining the allegations in paragraph 27 of the Complaint.

28.     Paragraph 28 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, WhoisGuard denies the allegations of paragraph 28.

29.     WhoisGuard admits that it and Namecheap have entered into one or more contracts related to domain name registration services and proxy services but denies that these contracts were for services used in connection with an "unlawful scheme," or that a material term of these contracts was Defendants' agreement to submit to this Court's jurisdiction. WhoisGuard admits that a copy of Namecheap's Domain Name Registration Agreement is attached as part of Exhibit 1 to the Complaint but denies that Exhibit 1 is comprised of "the referenced agreements which form part of the agreement." WhoisGuard admits that attached to Exhibit 2 of the Complaint is a document titled Namecheap WHOIS Proxy Agreement but denies that this document is "Whoisguard's proxy service agreement."

30.     Paragraph 30 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, WhoisGuard denies the allegations of paragraph 30.

## IV.     FACTUAL ALLEGATIONS

### A.     Background on Plaintiffs and their Trademarks

31.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 of the Complaint and on that basis denies them.

32.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint and on that basis denies them.

33.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 33 of the Complaint and on that basis denies them.

34.     WhoisGuard admits that documents which Plaintiffs purport to be registration certificates are attached to the Complaint as Exhibit 3, and that Plaintiffs collectively refer to Facebook's asserted common law and registered trademarks as the "Facebook Trademarks." WhoisGuard is without knowledge or information sufficient to form a belief as to whether Facebook owns the common law and registered trademark rights alleged. WhoisGuard denies any remaining allegations of paragraph 34.

35.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 35 of the Complaint and on that basis denies them.

36.     WhoisGuard denies the allegations of paragraph 36 of the Complaint.

37.     WhoisGuard admits that Facebook contends that it owns numerous registrations for its "FB marks," including those identified in subparagraphs a through d to paragraph 37. WhoisGuard denies that Facebook is entitled to "extensive common law rights" or trademark rights in the registrations identified in these subparagraphs. WhoisGuard denies any remaining allegations of paragraph 37.

38.     WhoisGuard admits that documents which Plaintiffs purport to be registration certificates are attached to the Complaint as Exhibit 4, and that Plaintiffs collectively refer to Facebook's asserted common law and registered trademarks as the "FB Trademarks." WhoisGuard denies that Facebook is entitled to the common law or registered trademark rights in the FB Trademarks and denies all remaining allegations of paragraph 38.

39.     WhoisGuard denies that Facebook's use of the FB Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 39 of the Complaint and on that basis denies them.

40.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 of the Complaint and on that basis denies them.

41.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint and on that basis denies them.

42.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint and on that basis denies them.

43.     WhoisGuard admits that documents which Plaintiffs purport to be registration certificates are attached to the Complaint as Exhibit 5, and that Plaintiffs collectively refer to Instagram's asserted common law and registered trademarks as the "Instagram Trademarks." WhoisGuard is without knowledge or information sufficient to form a belief as to whether Instagram owns the common law and registered trademark rights alleged. WhoisGuard denies any remaining allegations of paragraph 43.

44.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44 of the Complaint and on that basis denies them.

45.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 of the Complaint and on that basis denies them.

46.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 of the Complaint and on that basis denies them.

47.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 of the Complaint and on that basis denies them.

48.     WhoisGuard admits that documents which Plaintiffs purport to be registration certificates are attached to the Complaint as Exhibit 6, and that Plaintiffs collectively refer to WhatsApp's asserted common law and registered trademarks as the "WhatsApp Trademarks." WhoisGuard is without knowledge or information sufficient to form a belief as to whether WhatsApp owns the common law and registered trademark rights alleged. WhoisGuard denies any remaining allegations of paragraph 48.

49.     WhoisGuard is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 of the Complaint and on that basis denies them.

50.     WhoisGuard admits that Plaintiffs collectively refer to their asserted trademarks as "Plaintiffs' Trademarks." WhoisGuard is without knowledge or information sufficient to form a belief as to whether Plaintiffs own the common law and registered trademark rights alleged. WhoisGuard denies any remaining allegations of paragraph 50.

### B.     WhoisGuard is the Registrant of the Domain Names[2]

51.     WhoisGuard admits that Namecheap is accredited by ICANN and subject to a version of ICANN's RAA. WhoisGuard is without knowledge or information sufficient to form a belief as to whether the version of the RAA attached to the Complaint as Exhibit 7 is the operative version which Namecheap entered into. WhoisGuard denies any remaining allegations of paragraph 51.

52.     WhoisGuard admits that it provides a domain registration proxy service. WhoisGuard admits that it provides privacy proxy services, but denies that it is the "registrant" within the meaning of the ACPA. WhoisGuard denies any remaining allegations of paragraph 52 of the Complaint.

53.     WhoisGuard denies that the document attached as Exhibit 2 is WhoisGuard's Proxy Agreement. With respect to the contents of the document attached as Exhibit 2, the

---

[2] WhoisGuard denies that it is the registrant of the domain names within the meaning of the ACPA.

agreement speaks for itself and therefore no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 53.

54.     To the extent that paragraph 54 is referring to or quoting the contents of the document attached as Exhibit 8, the document speaks for itself and therefore no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 54.

55.     WhoisGuard admits that its contact information is listed in the WHOIS directory. WhoisGuard denies that it is the "registrant" within the meaning of the ACPA. WhoisGuard denies the remaining allegations of paragraph 55.

56.     Deny.

**C.     Namecheap is Responsible for the Actions of Whoisguard, its Alter Ego[3]**

57.     Deny.

58.     Deny.

59.     WhoisGuard admits that Namecheap describes the service as "WhoisGuard by Namecheap" and that WhoisGuard provides a domain name registration proxy service on behalf of Namecheap. WhoisGuard is without knowledge or information sufficient to form a belief as to whether the document attached as Exhibit 9 is an annotated screen capture of Namecheap's website. WhoisGuard denies the remaining allegations of paragraph 59.

60.     WhoisGuard admits that Namecheap's customers can obtain the WhoisGuard service directly from their Namecheap user account.  WhoisGuard is without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 60, and on that basis denies them.

61.     WhoisGuard admits that its services are provided to Namecheap's users at no charge to the users, and that Namecheap provides the WhoisGuard service as part of its regular service. WhoisGuard denies any remaining allegations of paragraph 61.

---

[3] WhoisGuard denies that Namecheap is its alter ego or responsible for its actions.

62.     WhoisGuard admits that Namecheap has in the past responded to inquiries regarding registrant information. WhoisGuard denies that it was served with reasonable evidence of actionable harm. WhoisGuard denies the remaining allegations of paragraph 62.

63.     Deny.

64.     WhoisGuard lacks knowledge and information as to admit or deny the allegations in paragraph 64, and on that basis denies those allegations.

65.     Admit.

66.     Deny.

67.     Deny.

68.     Deny.

**D.      Defendants Registered, Trafficked In, and/or Used the Infringing Domain Names[4]**

69.     Deny.

70.     Deny.

71.     Deny.

72.     Deny.

73.     Deny.

74.     WhoisGuard admits that it provides privacy proxy services, but denies that it is the "registrant" within the meaning of the ACPA. WhoisGuard lacks knowledge or information sufficient to form a belief as to whether the documents attached as Exhibit 11 are genuine. WhoisGuard denies any remaining allegations of paragraph 74.

75.     WhoisGuard admits that it provides privacy proxy services, but denies that it is the "registrant" within the meaning of the ACPA. WhoisGuard denies any remaining allegations of paragraph 75.

---

[4] WhoisGuard denies that Defendants registered, trafficked in, or used the alleged Infringing Domain Names within the meaning of the ACPA.

9

76.     WhoisGuard denies that it "trafficked" in the Infringing Domain Names within the meaning of the ACPA. WhoisGuard denies any remaining allegations of paragraph 76.

77.     WhoisGuard denies that it registered, trafficked in, or used the allegedly Infringing Domain Names within the meaning of the ACPA (other than literally registering the domains as an administrator to provide privacy proxy services). WhoisGuard lacks knowledge and information as to whether the asserted Facebook Trademarks and Instagram Trademarks were distinctive or famous. WhoisGuard denies any remaining allegations of paragraph 77.

78.     WhoisGuard denies that it registered, trafficked in, or used the allegedly Infringing Domain Names within the meaning of the ACPA (other than literally registering the domains as an administrator to provide privacy proxy services). WhoisGuard denies that the asserted FB Trademarks were distinctive. WhoisGuard lacks knowledge and information as to whether the asserted WhatsApp Trademarks were distinctive and denies that allegation on that basis. WhoisGuard denies any remaining allegations of paragraph 78.

79.     WhoisGuard lacks knowledge and information as to the allegations in paragraph 79 and on that basis denies them.

**E.     Defendants' Failure to Disclose Contact Information[5]**

80.     Paragraph 80 of the Complaint contains conclusions of law to which no response is required. To the extent paragraph 80 alludes to or quotes the RAA, the RAA speaks for itself and therefore no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 80.

81.     Paragraph 81 of the Complaint contains conclusions of law to which no response is required. To the extent paragraph 81 alludes to or quotes the documents attached as Exhibits 1 and 2 to the Complaint, the documents speaks for themselves and therefore

---

[5] WhoisGuard denies that it had any obligation to disclose the registrants' contact information, or that Defendants failed to do so.

no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 81.

82.     Paragraph 81 concerns the content of Namecheap's Domain Registration Agreement. The agreement speaks for itself and therefore no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 82.

83.     WhoisGuard lacks sufficient information to admit or deny whether Plaintiffs' representatives sent notices to it concerning the alleged Infringing Domain Names along with requests that WhoisGuard disclose the identities of the registrants, and on that basis, denies those allegations. WhoisGuard denies that it was provided reasonable evidence that each of the Infringing Domain Names caused Plaintiffs actionable harm. WhoisGuard denies any remaining allegations of paragraph 83, including all subparagraphs thereto.

84.     Deny.

**F.     Defendants' Bad Faith Intent to Profit[6]**

85.     WhoisGuard lacks knowledge or information as to the allegations in paragraph 85 and on that basis denies them.

86.     WhoisGuard lacks knowledge or information as to the allegations in paragraph 86 and on that basis denies them.

87.     WhoisGuard lacks knowledge or information as to the allegations in paragraph 87 and on that basis denies them.

88.     Deny.

89.     Deny.

90.     Deny.

91.     Deny.

_____

[6] WhoisGuard deny that Defendants had a bad faith intent to profit.

92.     WhoisGuard admits that it continued to provide the WhoisGuard service after receiving Plaintiffs' Notices. WhoisGuard denies the remaining allegations of paragraph 92.

93.     WhoisGuard denies that it is "aware" that its service is being used to infringe the trademark rights of trademark owners and further states that its services are entirely automated. WhoisGuard admits that out of the millions of domains for which its services have been used, some domains have been the subject of UDRP complaints for cybersquatting. WhoisGuard denies that it is the true respondent in such actions; instead, the customer who selected and registered the domain name at issue is the true respondent in interest.  WhoisGuard lacks knowledge or information regarding Plaintiffs' search of domain name complaints filed under the UDRP or the results of that search, or the contents of the document attached as Exhibit 13. WhoisGuard notes, however, that Exhibit 13 shows that in such proceedings, the registrant's identities are revealed. WhoisGuard denies any remaining allegations of paragraph 93.

94.     Deny.

95.     WhoisGuard lacks knowledge and information regarding Plaintiffs' UDRP complaints or the results thereof. WhoisGuard denies that any such complaints can be fairly characterized as complaints "against Whoisguard" because it is not the true respondent in such actions; instead, the customer who selected and registered the domain name at issue would have been the true respondent in interest.

96.     To the extent paragraph 96 quotes or alludes to the content of Namecheap's response to Facebook's notice dated January 23, 2019, the document speaks for itself and no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations.

97.     To the extent paragraph 97 quotes or alludes to the content of Namecheap's response to Facebook's notice dated January 23, 2019, the document speaks for itself and no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations.

98.     To the extent paragraph 98 quotes or alludes to the content of WhoisGuard's response to Facebook's notice dated January 23, 2019, the document speaks for itself and no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations.

99.     To the extent paragraph 99 quotes or alludes to the content of the document attached as Exhibit 2 to the Complaint, the document speaks for itself and no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations.

100.    To the extent paragraph 100 quotes or alludes to the content of the document attached as Exhibit 2 to the Complaint, the document speaks for itself and no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations.

101.    To the extent paragraph 101 quotes or alludes to the content of the document attached as Exhibit 2 to the Complaint, the document speaks for itself and no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations. As to footnote 1, WhoisGuard lacks knowledge or information as to the allegations and on that basis denies them.

102.    To the extent paragraph 102 quotes or alludes to the content of WhoisGuard's response to Facebook's notice dated January 23, 2019, the document speaks for itself and no response is required by WhoisGuard. To the extent a response is required, WhoisGuard denies the allegations of paragraph 102. Specifically, WhoisGuard denies that it intentionally provided material and misleading false content information.

103.    Deny.

104.    Deny.

### FIRST CAUSE OF ACTION

### [Cybersquatting on Plaintiffs' Trademarks Under 15 U.S.C. § 1125(d)]

105.    WhoisGuard incorporates by reference its responses to paragraphs 1 through 105, inclusive, as though fully set forth herein.

106.    WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 106 and on that basis denies them.

107.    Deny.

108.    Deny.

109.    Deny.

110.    WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 110 and on that basis denies them.

111.    WhoisGuard admits that it has not claimed any trademark or other intellectual property rights in the alleged Infringing Domain Names. WhoisGuard lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 111 and on that basis denies them.

112.    WhoisGuard admits that the alleged Infringing Domain Names do not consist of the legal name of Defendants. WhoisGuard lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 112 and on that basis denies them.

113.    WhoisGuard admits that it has not made any use of the alleged Infringing Domain Names in connection the offering of any goods or services, whether prior to Plaintiffs' alleged use of their marks or otherwise. WhoisGuard lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 113 and on that basis denies them.

114.    WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 114 and on that basis denies them.

115.    Deny.

116.    WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 116 and on that basis denies them.

117.    Deny.

118.    Deny.

119.    Deny.

120.     WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 120 and on that basis denies them.

121.     Deny.

122.     Deny.

123.     Deny.

124.     Deny.

125.     Deny.

**SECOND CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of Plaintiffs' Trademarks Under**

**15 U.S.C. § 1114]**

126.     WhoisGuard incorporates by reference its responses to all of the preceding paragraphs, as though fully set forth herein.

127.     WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 127 and on that basis denies them.

128.     WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 128 and on that basis denies them.

129.     WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 129 and on that basis denies them.

130.     Deny.

131.     Deny.

132.     Deny.

133.     Deny.

134.     Deny.

**THIRD CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of Plaintiffs' Trademarks and False**

**Designation of Origin Under 15 U.S.C. § 1125(a)]**

135.     WhoisGuard incorporates by reference its responses to all of the preceding paragraphs, as though fully set forth herein.

136.   Deny.

137.   WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 137 and on that basis denies them.

138.   WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 138 and on that basis denies them.

139.   WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 139 and on that basis denies them.

140.   Deny.

141.   Deny.

142.   Deny.

143.   Deny.

144.   Deny.

### FOURTH CAUSE OF ACTION

**[Dilution of the Facebook Trademarks and Instagram Trademarks**

**Under 15 U.S.C. § 1125(c)]**

145.   WhoisGuard incorporates by reference its responses to all of the preceding paragraphs, as though fully set forth herein.

146.   WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 146 and on that basis denies them.

147.   WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 147 and on that basis denies them.

148.   WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 148 and on that basis denies them.

149.   WhoisGuard lacks knowledge or information sufficient to admit or deny the allegations in paragraph 149 and on that basis denies them.

150.   Deny.

151.   Deny.

152.   Deny.

1   153.   Deny.

2   154.   Deny.

3   **AFFIRMATIVE DEFENSES**

4   WhoisGuard alleges and asserts the following defenses in response to the allegations

5   contained in Plaintiffs' Complaint. WhoisGuard specifically reserves the right to assert

6   additional defenses that become known through the course of discovery.

7   **FIRST DEFENSE**

8   This Court does not have personal jurisdiction over WhoisGuard.

9   **SECOND DEFENSE**

10   Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

11   **THIRD DEFENSE**

12   Plaintiffs' Compliant is barred, in whole or in part, by the Lanham Act safe harbor

13   for domain service providers. 15 U.S.C. § 1114.

14   **FOURTH DEFENSE**

15   Plaintiffs lack standing to bring their claims, in whole or in part, because they do not

16   possess valid trademark rights in the alleged trademarks. Plaintiffs' alleged trademark

17   registrations are invalid for the reasons set forth in the below counterclaim and therefore

18   cannot support Plaintiffs' claims. Alternatively, Plaintiffs' alleged trademarks are not

19   distinctive or famous, and therefore they cannot support Plaintiffs' claims for violation of

20   the ACPA and/or for dilution.

21   **FIFTH DEFENSE**

22   On information and belief, Plaintiffs have made false or improper representations

23   with the intent to induce the U.S. Patent and Trademark Office to issue a trademark

24   representation.

25   **SIXTH DEFENSE**

26   Plaintiffs' claims are barred by the equitable defense of laches.

27   **SEVENTH DEFENSE**

28   Plaintiffs' claims are barred by the equitable defenses of estoppel and/or waiver.

17

**EIGHTH DEFENSE**

Plaintiffs' claims are barred by the doctrine of acquiescence.

**NINTH DEFENSE**

Plaintiffs' claims are barred by unclean hands.

**TENTH DEFENSE**

Plaintiffs' claims are barred by the Plaintiffs' failure to mitigate their damages, including by choosing not to seek transfer of the domains at issue by the fastest available means such as through a UDRP proceeding which would typically have been resolved far faster than the proceedings Plaintiffs chose to pursue.

**ELEVENTH DEFENSE**

Plaintiffs' claims are barred by the failure of Plaintiffs to join an indispensable party as defendant in this action, including the domain name registrants, the companies responsible for hosting the alleged websites' content, and anyone else that may be involved in the operation of the alleged websites, phishing, malware, or spam.

**TWELFTH DEFENSE**

Plaintiffs' claims are barred in whole or in part because, upon information and belief, the registrant has legitimate rights in the name, the registrant made lawful use of the domain name in connection with the good faith offering of goods or services, and/or the registrant's use of the name was noncommercial or protected by the doctrine of fair use.

**<u>WHOISGUARD'S PRAYER FOR RELIEF</u>**

WHEREFORE, WhoisGuard prays for judgment against Plaintiffs as follows:

1. That the Complaint be dismissed with prejudice in its entirety;

2. That Plaintiffs take nothing by reason of their Complaint;

3. That judgment be entered in favor of WhoisGuard;

4. For recovery of WhoisGuard's costs of suit, including its attorneys' fees to the extent recoverable; and

5. For such other and further relief as the Court deems just and equitable.

1

## COUNTERCLAIM AGAINST FACEBOOK, INC.

Defendant and Counterclaimant WhoisGuard, Inc. ("WhoisGuard"), for its counterclaim against Plaintiff and Counter Defendant Facebook, Inc. ("Facebook"), alleges as follows:

## JURISDICTION AND VENUE

1.  The Court has jurisdiction over the subject matter of this counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this counterclaim arises under the trademark laws of the United States.

2.  Venue is proper and should be maintained in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

3.  Based on the allegations in paragraph 20 of the Complaint, WhoisGuard is informed and believes and therefore alleges that Facebook is a Delaware corporation with its principal place of business in Menlo Park, California.

4.  WhoisGuard is a Panama corporation with its principal place of business in Panama City, Republic of Panama.

## FACTUAL ALLEGATIONS

5.  Based on the allegations of paragraphs 36 and 37 of the Complaint, Facebook claims to own the exclusive rights to the FB wordmark, *i.e.*, the letters "FB" in standard characters without regard to any particular design, font, or style.

6.  Based on the allegations of paragraph 37 of the Complaint, Facebook claims to own "numerous" United States registrations for its asserted FB marks, including the following federal trademark registrations (collectively, the "FB Registrations"):

a.  United States Registration Number 4,659,777;

b.  United States Registration Number 4,764,764;

c.  United States Registration Number 4,782,234; and

d.  United States Registration Number 4,782,235

7.  Based on public information made available by the United States Patent and

1

Trademark Office, the FB Registrations list the following services:

    a. '777 Registration:

        International Class 035: Promoting the goods and services of others over the Internet

    b. '764 Registration:

        International Class 042: Computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services in the nature of customized web pages featuring user defined information, personal profiles and information

    c. '234 Registration:

        International Class 045: Internet based social introduction and social networking services

    d. '235 Registration:

        International Class 038: Providing online chat rooms and electronic bulletin boards for transmission of messages among registered users in the fields of collegiate life, general interest, classifieds, virtual community, and for social networking; and peer-to-peer photo sharing services, namely, electronic transmission of digital images among Internet and mobile device users

8.    Facebook filed the application which eventually matured into the '777 Registration on July 14, 2008.

9.    Facebook filed the application which eventually matured into the '764 Registration on July 14, 2008.

10.    Facebook filed the application which eventually matured into the '234 Registration on March 12, 2012.

11.    Facebook filed the application which eventually matured into the '235 Registration on March 6, 2012.

12.     Based on public information made available by the United States Patent and Trademark Office Facebook filed the applications for each of the FB Registrations as intent-to-use applications pursuant to 15 U.S.C. § 1051(b), implying that as of the time the applications were filed Facebook was not yet using the "FB" mark.

13.     In 2014 and 2015, Facebook filed Statement of Use declarations for each of the FB Registrations. In each of the Statements of Use, Facebook's attorney declared to the United States Patent and Trademark Office under penalty of perjury that Facebook's first use in commerce of the "FB" mark occurred on "04/00/2014."

14.     In connection with its applications for each of the FB Registrations, Facebook submitted as specimens of its purported use in commerce screenshots from the FB Newswire Facebook page, representative examples of which are reproduced below:



(from the '235, '234, and '764 Registrations)

3

(from the '777 Registration)

15. The specimens submitted by Facebook do not show the FB mark in use in commerce in connection with all of the services specified in the FB Registrations.

16. Indeed, the Examining Attorney for the '777 Registration issued an Office Action on November 12, 2014 in response to Facebook's Statement of Use *rejecting* the FB Newswire specimen as "unacceptable" because the specimen does not demonstrate that Facebook is using the "FB" mark in "promoting the goods and services of others over the Internet." Nonetheless, just one week later, and without waiting for Facebook to respond to

4

the Office Action or withdrawing the Office Action, the United States Patent and Trademark Office issued a Notice of Acceptance for the Statement of Use for the '777 Registration.

17.     Upon information and belief, Facebook has never used the "FB" mark in promoting the goods and services of others over the Internet.

18.     Furthermore, Facebook ceased operating the FB Newswire page which it used to obtain the FB Registrations on or about October 18, 2016.

19.     Facebook's current brand guidelines publicly available on its Brand Resource Center website, en.facebookbrand.com, make no mention of using "FB" as a trademark for either the Facebook company or the Facebook app.

20.     While Facebook does own domain names incorporating the letters FB (*e.g.*, fb.com, which re-directs to facebook.com) the use of "FB" in a domain name is not a use of "FB" as a trademark in commerce. To qualify as a trademark use, the asserted mark must be used to identify and distinguish the trademark owner's goods and services. Mere use of a domain name incorporating an asserted mark is ***not*** a use of the mark in commerce. *Brookfield Commc'ns, Inc. v. West Coast Ent Corp*., 174 F.3d 1036, 1051 (9th Cir. 1999); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1318, 1324 (9th Cir. 1988).

21.     Upon information and belief, Facebook ceased using "FB" as a trademark in commerce in or around October 2016, when it ceased operating the FB Newswire page, and has not made any trademark use of "FB" since that time.

### FIRST CAUSE OF ACTION

### (Cancellation of FB Registrations)

### Pursuant to 15 U.S.C. § 1119

22.     WhoisGuard repeats and realleges each of the allegations set forth in the preceding paragraphs of this Counterclaim as if fully set forth herein.

23.     This Court has the power to order cancellation of the FB Registrations pursuant to 15 U.S.C. § 1119.

24.     The FB Registrations are not incontestable. While the FB Registrations are more than five years old, Facebook has not filed a declaration of incontestability for any of

1  the FB Registrations pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

2      25.   Each of the FB Registrations is comprised solely of the letters "FB," which

3  when used in connection with Facebook's services is, at best, merely descriptive thereof.

4  Facebook has not and cannot established acquired distinctiveness in the letters "FB," which

5  are in the public domain.

6      26.   On information and belief, Facebook has not used "FB" as a trademark in

7  commerce in connection with all of the services in the FB Registrations.

8      27.   On information and belief, Facebook has ceased use of "FB" as a trademark

9  in connection with some or all of the services in the FB Registrations.

10     28.   On information and belief, Facebook has no intent to resume use of "FB" as

11  a trademark in connection with all of the services in the FB Registrations.

12     29.   On information and belief, Facebook has abandoned the "FB" mark, in whole

13  or in part.

14     30.   For the reasons above, the FB Registrations are invalid.

15     31.   WhoisGuard has been damaged and will likely continue to be damaged by the

16  FB Registrations, as Facebook is relying, in part, on those registrations as a basis for this

17  action for cybersquatting and other related claims.

18     32.   Accordingly, WhoisGuard is entitled to an order from this Court canceling

19  the FB Registrations, in whole or in part.

20  **SECOND CAUSE OF ACTION**

21  **(Declaratory Judgment – Invalidity of Common Law "FB" Mark)**

22  **Pursuant to 28 U.S.C. §§ 2201 and 2202**

23     33.   WhoisGuard repeats and realleges each of the allegations set forth in the

24  preceding paragraphs of this Counterclaim as if fully set forth herein.

25     34.   WhoisGuard requests an order declaring that Facebook's alleged exclusive

26  rights in the letters "FB" are invalid and unenforceable for the following reasons:

27          a.  Facebook has not and cannot established acquired distinctiveness in the letters

28              "FB," which are in the public domain;

6

b.  On information and belief, Facebook has not used "FB" in commerce;

c.  On information and belief, Facebook has ceased use of "FB" as a trademark and has no intent to resume use of "FB" as a trademark; and

d.  On information and belief, Facebook has abandoned the "FB" mark.

35.  WhoisGuard therefore seeks a declaration that Facebook's claimed common law trademark rights in "FB" are invalid and unenforceable.

## WHOISGUARD'S PRAYER FOR RELIEF

WHEREFORE, WhoisGuard hereby requests that judgment be entered in its favor and the following relief be provided:

a.  Cancellation of Facebook's federal trademark Registration Nos. 4,659,777, 4,764,764, 4,782,234, and 4,782,235;

b.  A declaration of the invalidity of Facebook's common law trademark rights in the letters "FB;"

c.  For recovery of Defendant's costs of suit, including its attorneys' fees to the extent recoverable; and

d.  For such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

WhoisGuard demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  November 24, 2020

**ROME & ASSOCIATES, A.P.C.**


By: *s/ Eugene Rome*
  Eugene Rome
  Sridavi Ganesan
  Brianna Dahlberg


**FENNEMORE CRAIG, P.C.**


By: *s/ Ray Harris*
  Ray K. Harris
  Mario C. Vasta

  Attorneys for Defendants
  Namecheap, Inc. and Whoisguard, Inc.

8

1

## **CERTIFICATE OF SERVICE**

2

3            I hereby certify that on November 24, 2020, I electronically transmitted the attached

4    document to the Clerk's Office using the ECF System for filing and transmittal of Notice

5    of Electronic Filing to the CM/ECF registrants of record.

6

7                                                                    By: *s/ Eugene Rome*

8                                                                          Eugene Rome

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28