**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com

Attorneys for Defendants
Namecheap, Inc. and WhoisGuard, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation, | CASE NO. 2:20-cv-00470-GMS |
| | **DEFENDANT WHOISGUARD, INC.'S FIRST AMENDED COUNTERCLAIM** |
| Plaintiffs, | |
| v. | **DEMAND FOR JURY TRIAL** |
| Namecheap, Inc., a Delaware corporation; and WhoisGuard, Inc., a Republic of Panama corporation, | |
| Defendants. | |
| WhoisGuard, Inc., a Republic of Panama corporation, | |
| Counterclaimant, | |
| v. | |
| Facebook, Inc., a Delaware corporation, | |
| Counterclaim Defendant. | |

**FIRST AMENDED COUNTERCLAIM AGAINST FACEBOOK, INC.**

Defendant and Counterclaimant WhoisGuard, Inc. ("WhoisGuard"), for its First Amended Counterclaim against Plaintiff and Counter Defendant Facebook, Inc. ("Facebook"), alleges as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over the subject matter of this counterclaim pursuant to 28 U.S.C. §§ 1331 and 1338(a), as this counterclaim arises under the trademark laws of the United States.

2.      Venue is proper and should be maintained in this Court pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

3.      Based on the allegations in paragraph 20 of the original Complaint, WhoisGuard is informed and believes and therefore alleges that Facebook is a Delaware corporation with its principal place of business in Menlo Park, California.

4.      WhoisGuard is a Panama corporation with its principal place of business in Panama City, Republic of Panama.

**FACTUAL ALLEGATIONS**

**A.      Beginning in 2008, Facebook Filed Applications for the FB Mark**

5.      Based on the allegations of paragraph 37 of the original Complaint, Facebook claims to own "numerous" United States registrations for its asserted FB wordmark, *i.e.*, the letters "FB" in standard characters without regard to any particular design, font, or style (hereinafter referred to as the "FB Mark"), including the following federal trademark registrations (collectively, the "FB Registrations"):

      a.   United States Registration Number 4,659,777 (the '777 Registration);

      b.   United States Registration Number 4,764,764 (the '764 Registration);

      c.   United States Registration Number 4,782,234 (the '234 Registration); and

      d.   United States Registration Number 4,782,235 (the '235 Registration).

6. Based on public information made available by the United States Patent and Trademark Office (USPTO), the FB Registrations list the following services:

a. '777 Registration:

International Class 035: Promoting the goods and services of others over the Internet

b. '764 Registration:

International Class 042: Computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services in the nature of customized web pages featuring user defined information, personal profiles and information

c. '234 Registration:

International Class 045: Internet based social introduction and social networking services

d. '235 Registration:

International Class 038: Providing online chat rooms and electronic bulletin boards for transmission of messages among registered users in the fields of collegiate life, general interest, classifieds, virtual community, and for social networking; and peer-to-peer photo sharing services, namely, electronic transmission of digital images among Internet and mobile device users

7. Facebook filed the application which eventually matured into the '777 Registration on July 14, 2008.

8. Facebook filed the application which eventually matured into the '764 Registration on July 14, 2008.

9. Facebook filed the application which eventually matured into the '234 Registration on March 12, 2012.

10.     Facebook filed the application which eventually matured into the '235 Registration on March 6, 2012.

11.     Based on public information made available by the USPTO, Facebook filed the applications for each of the FB Registrations as intent-to-use applications pursuant to 15 U.S.C. § 1051(b), supporting an inference that as of the time the applications were filed Facebook was not yet using the FB Mark.

**B.      For Years, Facebook Filed Boilerplate Requests for Extensions of Time to Submit Proof of Use of the FB Mark in Commerce**

12.     In connection with each of the FB Registrations, Facebook filed several years of requests for extensions of time to submit Statements of Use and specimens purporting to demonstrate use in commerce to the USPTO after the applications were allowed.

13.     With respect to the '777 Registration, the USPTO issued a Notice of Allowance on November 1, 2011. Facebook requested five extensions of time. Facebook did not submit a Statement of Use and alleged specimen until October 30, 2014, almost three years after allowance. A Statement of Use and specimen must be filed no later than three years after a Notice of Allowance or the application will be deemed abandoned.

14.     With respect to the '764 Application, the USPTO issued a Notice of Allowance on November 8, 2011. Facebook requested five extensions of time. Facebook did not submit a Statement of Use and alleged specimen until November 7, 2014, almost three years after allowance.

15.     With respect to the '234 Application, the USPTO issued a Notice of Allowance on April 9, 2013. Facebook requested four extensions of time. Facebook did not submit a Statement of Use and alleged specimen until May 12, 2015, more than two years after allowance.

16.     With respect to the '235 Application, the USPTO issued a Notice of Allowance on April 9, 2013. Facebook requested four extensions of time. Facebook did not submit a Statement of Use and alleged specimen until May 12, 2015, more than two years after allowance.

17.     In each of the requests for extension for all FB Registrations, Facebook made the representation to the USPTO that it had "made the following ongoing efforts to use the mark in commerce on or in connection with each of those goods/services covered by the extension request: product or service research or development." In some of the extension requests, Facebook also stated that it was engaged in "market research." Thus, identical boilerplate grounds for extensions were repeatedly made by Facebook about its alleged ongoing efforts to use the FB Mark in commerce.

### C.     Facebook Submitted Deficient Specimens

18.     In each of the Statements of Use for the FB Registrations, Facebook's attorney declared to the USPTO under penalty of perjury on Facebook's behalf that Facebook's first use in commerce of the FB Mark occurred on "04/00/2014."

19.     Facebook submitted multiple requests for extensions of time to submit a Statement of Use *after* April 2014, the date of purported first use in commerce ultimately identified in the Statements of Use.

20.     For example, in each of the '234 and '235 Registrations, Facebook filed requests for extensions of time on October 1, 2014 and April 8, 2015. In each of these filings, Facebook represented to the USTPO that it had "a continued bona fide intention" to use the FB Mark in commerce on or in connection with all of the services—thus representing that it was not then currently using the FB Mark in connection with those services—and that it was engaged in ongoing "product or service research or development" and "market research" in connection with using the FB Mark in commerce with each of the services. When Facebook submitted its Statements of Use for the '234 and '235 Registrations, it represented that the FB Mark had been first used in commerce on "04/00/2014."

21.     In connection with its applications for each of the FB Registrations, Facebook submitted as specimens of its purported use in commerce screenshots from the FB Newswire Facebook page, representative examples of which are reproduced below:



(alleged proof of use in commerce for the '235, '234, and '764 Registrations)





(alleged proof of use in commerce for the '777 Registration)

22.     The specimens submitted by Facebook do not show the FB Mark in use in commerce in connection with all of the services specified in the FB Registrations. A service mark specimen must show the mark as actually used in the sale or advertising of the services recited in the application and must show a direct association between the mark and the services. TMEP § 1301.04; 37 C.F.R. § 2.56(b)(2). Facebook's FB Newswire specimens fail to meet these criteria with respect to the services recited in the FB Registrations.

23.     For example, a banner ad along the right side of the FB Newswire page does not show the FB Mark used in the sale or advertising of Facebook's services "promoting the goods and services of others over the Internet," nor does the specimen show a direct association between the FB Mark and any of the services at issue—particularly given that sponsored ads appear in the same position on the page for other Facebook webpages, not just the FB Newswire page.

24.     The specimens also fail to show use of the FB mark applied for and sought to be registered. The designations in the top center are a color design, "FBNewswire," ("FB" in the color blue), followed by the phrase, "POWERED BY storyful." The other use at the top left, is "FB Newswire," in white letters followed by a blue and white "check mark" in a circle design, with the word "Community" beneath in white lettering. Such uses, assuming any trademark use at all (there is none) are at best a material alteration of the FB Mark and not a trademark use of the mark sought to be registered. Such use does not function as a trademark use of the FB Mark. The displayed uses of the mark display different marks and do not display the FB Mark sought to be registered. The website screenshots are also missing important information such as a URL or browser tab and are displayed in a way that suggests they were not published. On information and belief, Facebook never used the FB Mark as a trademark or service mark prior to its filing of its Statements of Use.

25.     The Examining Attorney for the '777 Registration issued an Office Action on November 12, 2014 in response to Facebook's Statement of Use *rejecting* the FB Newswire specimen as "unacceptable" because the specimen does not demonstrate that Facebook is using the FB Mark in "promoting the goods and services of others over the Internet." Nonetheless, just one week later, and without receiving any written response from Facebook to the Office Action, withdrawing the Office Action, or noting any informal discussion to resolve the Office Action, the USPTO issued a Notice of Acceptance for the Statement of Use for the '777 Registration.

26.     The Examining Attorney for the '764 Registration issued an Office Action on November 14, 2014 *rejecting* the FB Newswire specimen as unacceptable because "the

specimen does not show the applied-for mark in use in commerce in connection with any of the services specified in the statement of use." The Examining Attorney further noted: ***"Specifically, the specimen shows use of the mark with a news and current events page and does not demonstrate use with the identified services."*** In response to the Office Action, Facebook submitted additional screenshots from the same alleged FB Newswire page. This time, the USPTO accepted the specimens and granted the registration although the specimens and the proof needed to support a Statement of Use were lacking.

27.     The FB Newswire page which Facebook used to obtain the FB Registrations ceased operating on or about October 18, 2016, after Facebook had obtained the FB Registrations.

28.     Upon information and belief, Facebook made no trademark use of the FB Mark in commerce in connection with any of the services in the FB Registrations for at least three years after the FB Newswire page was shut down.

29.     After obtaining the FB Registrations, Facebook used its FB Registrations for the purpose of initiating domain name dispute proceedings, targeting domains that contain the character string "FB." Facebook's conduct misuses our United States trademark law and registration system.

**D.     In 2019, Facebook Filed an Intent-to-use Application for the FB Mark for More Than 400 Services, Including Those in the FB Registrations**

30.     On November 4, 2019, Facebook filed an intent-to-use application pursuant to 15 U.S.C. § 1051(b) for the FB Mark, which is assigned United States Serial Number 88679058 ("2019 FB Application"). The 2019 FB Application is currently under examination although it is suspended.

31.     In the 2019 FB Application, Facebook sought to register the FB Mark (*i.e.*, the letters "FB" in standard characters without claim to any particular font style, size, or color) in connection with the following services:

a. International Class 009: Downloadable software for engaging in social networking and interacting with online communities; Downloadable computer software development tools; Downloadable application programming interface (API) software for use in building software applications; Downloadable application programming interface (API) software which facilitates online services for social networking and for data retrieval, upload, download, access and management; Downloadable software for creating, managing, and interacting with an online community; Downloadable software for organizing events, searching for events, calendaring and managing events; Downloadable software for creating, editing, uploading, downloading, accessing, viewing, posting, displaying, tagging, blogging, streaming, linking, annotating, indicating sentiment about, commenting on, embedding, transmitting, and sharing or otherwise providing electronic media or information via computer the internet and communication networks; Downloadable software for modifying and enabling transmission of images, audio, audio visual and video content and data; Downloadable software for sending and receiving electronic messages, alerts, notifications and reminders; Downloadable search engine software; Downloadable software for use in creating, managing, measuring, and disseminating advertising of others; Downloadable software for mapping; Downloadable software for planning activities with other users and making recommendations; Downloadable software for social and destination mapping; Location-aware downloadable software for searching, determining and sharing locations; downloadable software, namely, an application providing social networking functionalities; Downloadable software for creating, managing and accessing groups within virtual communities; Downloadable software for location-based searching and alerts; Downloadable software for searching and identifying employment

opportunities; Downloadable software for identifying and allowing users to contact government representatives; Downloadable software providing a virtual marketplace; Downloadable software providing location-based weather information; Downloadable software providing, linking to, or streaming news or current events information; Downloadable software in the nature of a mobile application for creating, sharing, disseminating and posting advertising; Downloadable software for geo-location based advertising and product and service promotion; Downloadable software for viewing and interacting with a feed of images, audio-visual and video content, and associated text and data; downloadable software for creating and managing social media profiles and user accounts; Downloadable software for uploading, downloading, streaming, archiving, transmitting, and sharing images, audio-visual and video content and associated text and data; Downloadable software that enables individuals, groups, companies, and brands to create and maintain an online presence for marketing purposes; Downloadable software for advertisers to communicate and interact with online communities; Downloadable software for streaming multimedia entertainment content; Downloadable software for use in taking and editing photographs and recording and editing videos; Downloadable software for sending and receiving electronic messages, graphics, images, audio and audio visual content via the internet and communication networks; Downloadable software in the nature of a mobile application for social networking; Downloadable software for online charitable fundraising and making and soliciting financial donations; Computer hardware; Downloadable software for use as an application programming interface (API); Downloadable software for modifying photographs, images and audio, video, and audio-visual content with photographic filters and augmented reality (AR) effects, namely, graphics, animations, text, drawings, geotags, metadata tags,

hyperlinks; Downloadable software for the collection, managing, editing, organizing, modifying, transmission, sharing, and storage of data and information; Downloadable e-commerce computer software to allow users to perform electronic business transactions via a global computer and communication networks; Ad server, namely, a computer server for storing advertisements and delivering advertisements to websites; Downloadable virtual reality game software; Downloadable augmented reality game software; Downloadable mixed reality game software; Downloadable virtual reality game computer hardware; Downloadable augmented reality game computer hardware; Downloadable mixed reality game computer hardware; Computer peripheral devices; Downloadable virtual reality software for use in enabling computers, video game consoles, handheld video game consoles, tablet computers, mobile devices, and mobile telephones to provide virtual reality experiences; Downloadable electronic game software for wireless devices; Downloadable electronic game software for handheld electronic devices; Downloadable electronic game software; Wearable computer peripherals for computers, tablet computers, mobile devices and mobile telephones; Downloadable virtual reality software for providing virtual reality experiences; Downloadable augmented reality software for providing augmented reality experiences; Downloadable mixed reality software for providing mixed reality experiences; Downloadable video game software; Downloadable interactive multimedia computer game programs; Downloadable electronic game programs; Downloadable computer game software; Headsets for use with computers; Laser equipment for non-medical purposes; Downloadable software for integrating electronic data with real world environments for the purposes of entertainment, education, gaming, communicating, and social networking; Downloadable software for accessing and viewing text, images and electronic data relating to conferences in the

field of software development; Downloadable software to enable development, assessment, testing, and maintenance of mobile software applications for portable electronic communication devices, namely, mobile phones, smartphones, handheld computers and computer tablets; Downloadable software for converting natural language into machine-executable commands; Downloadable software, namely, an interpretive interface for facilitating interaction between humans and machines; Downloadable artificial intelligence software, namely, machine learning software, visual perception software, speech or language recognition software, decision-making software, translation software, touch recognition software, conversational query software, software for converting natural language into machine-executable commands, and digital assistant software; Downloadable personal assistant software for searching the internet, making appointments and reservations, facilitating purchases, providing customer-specific information to meet individual need including customer-specific reminders; Downloadable social assistant software for searching the internet, making appointments and reservations, facilitating purchases, providing customer-specific information to meet individual need including customer-specific reminders; Downloadable software development tools to enable mobile software applications to access backend services, namely, data storage, push notifications, and user management; Downloadable software for making reservations and bookings; Downloadable software for ordering and/or purchasing goods and services; Downloadable software for wireless content, data and information delivery; Downloadable software to enable accessing, displaying, editing, linking, sharing and otherwise providing electronic media and information via the internet and communications networks; Downloadable software for facilitating interaction and communication between humans and AI (artificial intelligence) platforms;

Downloadable application programming interface (API) software for allowing data retrieval, upload, access and management; Downloadable software for finding content and content publishers, and for subscribing to content; Downloadable software for organizing images, video, and audio-visual content using metadata tags; Interactive photo and video equipment, namely, kiosks for capturing, uploading, editing, printing and sharing digital images and video; Downloadable software in the nature of Application programming interface (API) for use in developing AI (artificial intelligence) platforms, namely, bots, virtual agents and virtual assistants; Downloadable software for organizing events by facilitating communication between organizers and participants; Virtual reality computer hardware; Virtual reality game computer hardware; Downloadable virtual reality software for use in enabling computers, tablet computers, mobile devices, and mobile telephones to provide virtual reality experiences; Wearable peripherals for computers, tablet computers, mobile devices and mobile telephones, namely, configurable head-mounted video displays; Augmented reality computer hardware; Virtual reality headsets; Augmented reality headsets; Virtual reality glasses; Augmented reality glasses; Downloadable virtual reality software for navigating a virtual reality environment; Downloadable augmented reality software for navigating an augmented reality environment; Downloadable augmented reality software for use in enabling computers, tablet computers, mobile devices, and mobile telephones to provide augmented reality experiences; Headsets for virtual reality games; Headsets for augmented reality games; Computer peripherals in the nature of handheld virtual reality controllers; Computer peripherals in the nature of handheld augmented reality controllers; Downloadable video and computer game programs; Downloadable interactive entertainment software for online gaming; Downloadable gesture recognition software; Motion tracking

sensors for virtual reality technology; Motion tracking sensors for augmented reality technology; Downloadable computer software for controlling the operation of audio and video devices; Digital media streaming devices; Earphones; Headphones; Downloadable video display software; Video display hardware, namely, video drivers for video eyewear; Downloadable software for navigating a virtual reality environment; Downloadable software for use in enabling computers, tablet computers, mobile devices, and mobile telephones to provide virtual reality and augmented reality experiences; Downloadable virtual reality software for object tracking, motion control and content visualization; Downloadable augmented reality software for object tracking, motion control and content visualization; Downloadable virtual reality software for users to experience virtual reality visualization, manipulation and immersion; Downloadable augmented reality software for users to experience augmented reality visualization, manipulation and immersion; Downloadable virtual reality software for operating virtual reality headsets; Downloadable augmented reality software for operating augmented reality headsets; Downloadable virtual reality software for accessing interactive entertainment; Downloadable augmented reality software for accessing interactive entertainment; Virtual reality headsets; Downloadable software for recording, storing, transmitting, receiving, displaying and analyzing data from wearable computer hardware; Wearable computing devices comprised primarily of downloadable software and electronic display screens for connection to computers, tablet computers, mobile devices, and mobile phones in order to enable virtual reality and augmented reality world experiences; Goggles for enabling virtual reality, augmented reality world experiences; Downloadable software for use in creating and designing virtual reality and augmented reality software; Downloadable application programming interface (API) computer software for developing virtual reality

and augmented reality experiences; Downloadable software and firmware for running operating system programs; Downloadable computer operating systems; Downloadable software for tracking motion in, visualizing, manipulating, viewing, and displaying augmented and virtual reality experiences; Downloadable software, firmware and hardware for use in visual, voice, audio, motion, eye and gesture tracking and recognition; Computer hardware and downloadable software for operating sensor devices; Electronic motion and sound sensor devices, cameras, projectors, and microphones for gesture, facial, and voice detection, capture and recognition; Computer hardware and downloadable software for detecting objects, user gestures and commands; Downloadable software and firmware for controlling, configuring and managing controllers; Downloadable software and firmware for enabling electronic devices to share data and communicate with each other; Downloadable computer operating system software; Downloadable software driver programs for electronic devices for enabling computer hardware and electronic devices to communicate with each other; Cameras; Batteries; Battery chargers; Battery cases; Battery packs; Power battery charging and power management devices for mobile electronic devices; Battery charging docks; Battery charging stands for mobile electronic devices; Base battery chargers for mobile electronic devices; Portable battery chargers; External battery chargers; Wireless battery charging cases; Rechargeable electric battery devices, namely, rechargeable batteries and portable power supplies; Rechargeable external battery packs for use with mobile electronic devices; Chargers for batteries; Power adapters; Electrical adapters; Electrical and electronic connectors; Bags and cases specially adapted for cell phones and tablet computers; Briefcases, backpacks and carrying cases specially adapted for cell phones and tablet computers; Cases specially adapted for cell phones and tablet computers;

Faceplates for cell phones and tablet computers; Protective covers and cases for cell phones and tablet computers; Protective sleeves for cell phones and tablet computers; Holders, armbands, clips and carrying cases specially adapted for cell phones and tablet computers; Stands specially adapted for cell phones and tablet computers; Holders for cell phones and tablet computers; Remote controls for mobile electronic devices; Electrical audio and speaker cables and connectors; Audio speakers; Docking stations for mobile electronic devices; Loudspeakers; Electronic cables and structural parts thereof; Electric cables; Connection cables; Cables for optical signal transmission; Power cables and cable connectors; Microphones; Audio receivers; Audio transmitters; Wireless computer peripherals; Head-mounted video displays; Receivers of electronic signals; Video receivers; Wireless transmitters and receivers for reproduction of sound and signals; Electric sensors; Sensors for monitoring physical movements; Downloadable software for processing images, graphics, audio, video, and text; Downloadable software, namely, instant messaging software, file sharing software, communications software for electronically exchanging data, audio, video images and graphics via computer, mobile, wireless, and communication networks; Downloadable software for personal information management, and data synchronization software; Downloadable software for managing social networking content, interacting with a virtual community, and transmission of images, audio, audio-visual and video content, photographs, videos, data, text, messages, comments, advertisements, media advertising communications and information; Downloadable software for displaying and sharing a user's location and finding, locating, and interacting with other users and places; Downloadable software for customer relationship management (CRM); Downloadable software for providing consumer information; Downloadable messaging software; Downloadable software for

facilitating and arranging for the financing and distribution of fundraising and donations; Downloadable software for facilitating voice over internet protocol (VOIP) calls, phone calls, video calls, text messages, instant message and online social networking services; Telecommunications equipment for providing third party access to, and enabling the transmission of video, data and voice over, global communications networks, namely, mobile and access computer and mobile telephone terminals, base transceiver stations and structural wireless transceiver radio parts thereof, data transceivers, data repeaters, wireless routers and power switches, electronic transmission circuits, integrated circuits, computer hardware, mobile cloud computer servers, multiplexers, digital signal processors, radio frequency signal processors, mobile switching circuits being electric circuit switches, air traffic electrical controllers, mobility electrical controllers, access electrical controllers, remote port electrical controllers, radio ports being data access ports for use with electrical control panels for connecting multiple data and electrical devices, antennas, electronic radio transmitters, downloadable software for operating telecommunications applications, and mobile core networks comprising data transceivers, wireless network and gateway routers for collection, transmission and management of data, voice and video; Downloadable communication software and communication computer hardware for providing access to the Internet

b. International Class 035: Marketing, advertising and promotion services; Promoting the goods and services of others via computer and communication networks; Providing an online network environment for facilitating the exchange and sale of services and products of third parties via computer and communication networks, namely, provision of an on-line marketplace for buyers and sellers of goods and services; Providing online marketplaces for sellers and buyers of goods and/or services; Providing an online network

environment, namely, web interfaces and mobile interfaces, for connecting sellers with buyers; Advertising and information distribution services, in particular, providing classified advertising space on the internet; Online advertising services and promoting the goods and services of others via the internet; Advertising services via electronic media; Dissemination of advertising for others via a global computer network; Promoting the goods and services of others by means of distributing video advertising on the internet; Provision of market research and business information services; Business and advertising services, namely, media planning and media buying for others; Business and advertising services, namely, advertising services in the nature of tracking advertising performance for analyzing advertising data, for reporting advertising data, and for website optimization for optimizing advertising performance; Consulting services in the fields of advertising and marketing; Online retail store services featuring a wide variety of consumer goods of others, gift cards, virtual reality headsets, and virtual reality content and data; Business networking; Employment recruiting services; Providing online computer databases and online searchable databases in the field of online classified advertisements; Charitable services, in particular promoting public awareness about charitable, philanthropic, volunteer, public and community service and humanitarian activities; Organizing exhibitions and events in the field of software and hardware development for commercial or advertising purposes; Association services, namely, promoting the interests of professionals and businesses in the field of mobile software application development; Marketing and advertising consultation services; Advertising, marketing and promoting the goods and services of others by means of providing photo and video equipment at special events; Arranging and conducting special events for commercial, promotional or advertising purposes; Organizing and arranging exhibitions, tradeshows and events for

business purposes; Organizing and conducting events, exhibitions, expositions and business conferences for commercial purposes in the interactive entertainment, virtual reality, consumer electronics and video game entertainment industries; Online retail store services featuring virtual reality and augmented reality headsets, games, content and digital media; Providing telephone directory information via global communications networks; Electronic catalog services featuring a variety of consumer goods of others; Customer relationship management; Business assistance and consulting services; Providing commercial information, namely, user comments concerning business organizations and service providers, and other resources; Advertising services, namely, advertising campaign management, targeting, implementation and website optimization services; Marketing research, namely, advertising campaign and consumer preferences research and analysis; Advertising services, namely, scheduling, tracking, and reporting advertising for others; Preparation and realization of media and advertising plans and concepts; Ad serving, namely, placing advertisements on websites for others; Advertising services, namely, targeting and website optimization of online advertising; Business information management, namely, reporting of business information and business analytics in the fields of advertising and marketing; Promoting the public interest and awareness of issues involving access to the internet for the global population; Business consultation in the field of telecommunications; Business management consulting services to enable business entities, non-governmental organizations and non-profit organizations to develop, organize, and administer programs to offer greater access to global communications networks

c. International Class 038: Photo sharing and video sharing services, namely, electronic transmission of digital photo files, videos and audio visual content

among internet users; Providing access to computer, electronic and online databases; Telecommunications services, namely, electronic transmission of electronic media, data, messages, graphics, images, audio, video and information; Providing online forums for communication on topics of general interest; Providing online communications links which transfer mobile device and internet users to other local and global online locations; Provision of access to third party websites or to other electronic third party content via a universal login; Providing online chat rooms, instant messaging services, and electronic bulletin boards for transmission of messages among users in the field of general interest; Audio, text and video broadcasting services over the internet or other communications networks; Providing access to computer databases in the fields of social networking social introduction; Providing electronic bulletin boards for transmission of messages among users in the field of general interest; Providing an online community forum for users to share and stream information, audio, video, real-time news, entertainment content, or information, to form virtual communities, and to engage in social networking; Photo sharing and video sharing services, namely, electronic transmission of digital photo and video files among internet users; Providing access to computer databases and online searchable databases in the fields of social networking and social introduction; Voice over internet protocol (VOIP) services; Telephony communication services; Peer-to-peer photo and data sharing services, namely, electronic transmission of digital photo files, graphics and audio content among internet users; Telecommunications and peer-to-peer network computer services, namely, electronic transmission of images, audio-visual and video content, photographs, videos, data, text, messages, advertisements, media advertising communications and information; Chatroom services for social networking; Streaming and live streaming of video, audiovisual, and interactive audiovisual content via the

internet; Telecommunications services, namely, electronic transmission of virtual reality content and data; Video conferencing services; Teleconferencing services; Telecommunication services, namely, data transmission and reception services via telecommunication networks; Mobile phone communication services; Web messaging; Video teleconferencing; Instant messaging services; Electronic exchange of voice, data, audio, video, text and graphics accessible via computer and telecommunications networks; Encrypted electronic transmission and delivery of recovered data; Provision of access to telecommunication networks and the internet; Providing telecommunications connections to a global computer network for Internet connectivity; Information about telecommunication, namely, providing information in the field of telecommunications; Consulting in the field of telecommunication services, namely, transmission of voice, data, and documents via telecommunications networks

d. International Class 041: Providing online educational publications for software developers, namely, information relating to software development; Entertainment services, namely, providing online video games; Providing online video games; Providing online computer games and interactive video games; Providing temporary use of online non-downloadable game software; Entertainment services, namely, providing interactive online video games; Electronic publishing services for others namely, audio, visual, audio-visual, text and graphics in the field of general interest; Entertainment services, namely, providing online video games in the nature of multiplayer and single player games played via the internet or communication networks; Providing information about online computer games and video games via computer or communication networks; Arranging and conducting competitions for video gamers and computer game players for entertainment purposes; Entertainment services, namely, contest and incentive award programs

designed to recognize, reward and encourage individuals and groups which engage in self-improvement, self-fulfillment, charitable, philanthropic, volunteer, public and community service and humanitarian activities and sharing of creative work product; Entertainment services, namely, organizing contest and incentive award programs for software developers to encourage the development of software; Publication of educational materials, namely, publishing of books, journals, newsletters, and electronic articles; Educational services, in particular, organizing and conducting conferences, courses, seminars, and online training in the fields of advertising, marketing, social networking, the internet, and social media, and distribution of course material in connection therewith; Online journals, namely, weblogs being blogs featuring user-defined entertainment content; Entertainment services, namely, providing online virtual reality games and virtual reality content experiences via the internet; Entertainment services, namely, providing online augmented reality games, development and production of interactive multimedia augmented reality entertainment content; Providing an online computer game for use network-wide by network users; Providing online virtual reality games; Providing online augmented reality games; Organizing exhibitions in the field of interactive entertainment, virtual reality, consumer electronics and video game entertainment industries for cultural or educational purposes; Arranging and conducting educational conferences in the fields of software development, virtual reality, augmented reality, artificial intelligence, the internet of things (IoT), and social networking; Organizing exhibitions and events in the field of software development for educational purposes; Educational services, namely, organizing and conducting conferences and seminars in the fields of artificial intelligence and the internet of things; Training in the field of design, advertising and communication technologies; Training in the field of strategic media planning

relating to advertising, marketing and business; Online journals, namely, blogs featuring advertising, marketing and business; Providing computer, electronic and online databases in the field of entertainment; Publishing services, namely, publishing of electronic messages, text, videos, audio and audio-visual works for others; Entertainment services, namely, providing an online network environment, namely, web interfaces and mobile interfaces, for streaming entertainment content and live streaming video of entertainment events; Organizing live exhibitions and conferences in the fields of culture, entertainment and social networking for educational purposes; Entertainment services, namely, providing online virtual reality games, development and production of multimedia interactive virtual reality entertainment content; Entertainment services, namely, providing online augmented reality games, development and production of multimedia interactive virtual reality entertainment content; Entertainment services, namely, arranging and conducting of competitions for encouraging use and development of interactive entertainment, virtual reality, augmented reality, consumer electronics, and video game entertainment software and hardware; Organizing exhibitions and events for cultural, educational, or entertainment purposes in the field of virtual reality; Production of video and computer game software; Virtual reality arcade services; Augmented reality arcade services; Virtual reality game services provided online from a computer network; Augmented reality game services provided online from a computer network; Augmented reality video production; Virtual reality video production; Multimedia entertainment software production services; Multimedia production services; Entertainment services in the nature of development, creation, production and post-production services of multimedia entertainment content; Entertainment services, namely, providing online augmented reality games and development and production of

multimedia interactive virtual reality entertainment content ; Entertainment services, namely, providing software featuring online virtual reality environments in which users can interact for entertainment purposes; Entertainment services, namely, providing software featuring online augmented reality environments in which users can interact for entertainment purposes; Providing entertainment information from searchable indexes and databases of information, including text, electronic documents, databases, graphics, photographic images and audio visual information, via the internet and communication networks; Providing information about online computer games and video games via computer or communication networks; Arranging and conducting competitions and facilitating events for video gamers and computer game players for entertainment purposes; Organizing exhibitions in the field of interactive entertainment, virtual reality, consumer electronics and video game entertainment industries for cultural or educational purposes; arranging and conducting educational conferences and organizing exhibitions and events in the field of software development for educational purposes; Providing a website featuring non-downloadable entertainment publications in the nature of articles and weblogs about virtual reality technology; Providing a website featuring non-downloadable entertainment publications in the nature of articles and weblogs about augmented reality technology; Entertainment and educational services, namely, providing non-downloadable movies, television shows, webcasts, audiovisual, and multimedia works in the fields of music, sports, art, fashion, current events, recreational activities and general interest via the internet, as well as entertainment information, reviews, and recommendations regarding movies, television shows, webcasts, audiovisual, and multimedia works; Providing computer, electronic and online databases featuring entertainment and recreation information for educational, recreational and amusement use in the

field of entertainment and in the fields of secondary, collegiate, social and community interest groups

e.  International Class 042: Computer services, namely, creating virtual online communities for registered users to organize groups, meetings, and events, participate in discussions and engage in social, business and community networking; Computer services, in particular, hosting electronic websites for others for organizing and conducting meetings, events and interactive discussions via the internet and communication networks; Computer services in the nature of providing temporary use of online non-downloadable software that facilitates the creation of customized electronic personal and group profiles or webpages featuring user-defined or specified information, including, audio, video, images, text, content, and data; Providing online network environments in the nature of web interfaces and mobile interfaces featuring technology that enables online users to create personal profiles featuring social and business networking information, to transfer and share such information among multiple online facilities, to engage in social networking, and to manage their social networking accounts; Providing on-line non-downloadable software for social networking, creating a virtual community, and transmission of audio, video, images, text, content, and data; Application service provider (ASP) services, namely, hosting software applications of others; Application service provider (ASP) featuring software to enable or facilitate the creating, editing, uploading, downloading, accessing, viewing, posting, displaying, tagging, blogging, streaming, linking, annotating, indicating sentiment about, commenting on, embedding, transmitting, and sharing or otherwise providing electronic media or information via the internet and communications networks; Providing temporary use of online non-downloadable software that enables users to transfer personal identity data to and share personal identity data with and

among multiple online facilities; Providing on-line non-downloadable application programming interface (API) software for electronic messaging and transmission of audio, video, images, text, content and data; Platform as a service (PAAS) featuring computer software platforms for electronic messaging and transmission of audio, video, photographic images, text, graphics and data; Providing on-line non-downloadable software for electronic messaging; Providing on-line non-downloadable software for mapping; Application service provider (ASP) featuring software for mapping; Providing on-line non-downloadable software for sharing and displaying a user's location, planning activities with other users and making recommendations; Application service provider (ASP) featuring software to enable or facilitate the sharing and displaying a user's location, planning activities with other users and making recommendations; Providing on-line non-downloadable software for social and destination mapping; Application service provider (ASP) featuring software to enable or facilitate social and destination mapping; Providing on-line non-downloadable location-aware software for searching, determining and sharing the location of goods, services and events of interest; Application service provider (ASP) featuring location-aware software for searching, determining and sharing the location of goods, services and events of interest; Providing temporary use of non-downloadable software applications for creating, managing and accessing user-created and administered private groups within virtual communities; Providing on-line non-downloadable software for searching and identifying local and location-based points of interest, events, landmarks, employment opportunities, entertainment, cultural events, shopping and offers; Providing on-line non-downloadable software for searching and identifying employment opportunities; Providing on-line non-downloadable software for identifying and allowing users to contact government representatives;

Providing on-line non-downloadable software for providing a virtual marketplace; Providing on-line non-downloadable software for providing location-based weather information; Providing on-line non-downloadable software for providing, linking to, or streaming news or current events information; Providing online network environments in the nature of web interfaces and mobile interfaces featuring technology enabling users to engage in social networking and manage their social networking content; Providing on-line non-downloadable software for creating and managing social media profiles and user accounts; Providing on-line non-downloadable software for viewing and interacting with a feed of electronic media, namely, images, audio-visual and video content, live streaming video, commentary, advertisements, news, and internet links; Application service provider (ASP) featuring software for social networking, managing social networking content, creating a virtual community, and transmission of images, audio-visual and video content, photographs, videos, data, text, messages, advertisements, media advertising communications and information; Platform as a service (PAAS) featuring software platforms for social networking, managing social networking content, creating a virtual community, and transmission of images, audio-visual and video content, photographs, videos, data, text, messages, advertisements, media advertising communications and information; Providing on-line non-downloadable software for uploading, downloading, archiving, enabling transmission of, and sharing images, audio-visual and video content and associated text and data; Providing on-line non-downloadable software for streaming multimedia entertainment content; Providing on-line non-downloadable software for creating and maintaining an online presence for individuals, groups, companies, and brands; Providing on-line non-downloadable software for advertisers to communicate and interact with online communities; Providing

online network environments in the nature of web interfaces and mobile interfaces featuring temporary use of non-downloadable software for sending and receiving electronic messages, instant messages, electronic message alerts and reminders, photographs, images, graphics, data, audio, videos and audio-visual content via the internet and communication networks; Providing on-line non-downloadable software applications for social networking, creating a virtual community, and transmission of virtual content and data; File sharing services, namely, providing online network environments in the nature of web interfaces and mobile interfaces for others featuring technology enabling users to upload and download electronic files; Computer services, namely, hosting electronic on-line websites for others for interactive discussions via communication networks; Providing online non-downloadable software for social networking; Computer services, namely, creating an online community for registered users to engage in social networking; Providing on-line non-downloadable software for online charitable fundraising and making financial donations; User verification services, namely, providing user authentication of personal identification information using single sign-on technology for online software applications; Design and development of computer hardware and software; Computer services, namely, providing search engines for obtaining data via the internet and communications networks; Providing search engine services, namely, providing information from searchable indexes and databases of information, including text, electronic documents, databases, graphics, electronic media, images and audio visual content, via the internet and communications networks; Providing temporary use of online non-downloadable e-commerce software to allow users to perform electronic business transactions via the internet and communications networks; Computer services, in particular, application service provider featuring application programming interface

(API) software to allow users to perform electronic business transactions via a global computer network; Software as a service (SAAS) services featuring software for sending and receiving electronic messages, notifications and alerts and for facilitating electronic business transactions via the internet and communications networks; Providing temporary use of online, non-downloadable software for use in designing, managing, measuring, analyzing, disseminating, and serving advertising of others; Application service provider featuring application programming interface (API) software for managing, tracking, reporting and measuring media planning, media buying and advertising of others; Online ad-buying platform provider, namely, providing non-downloadable software programs for allowing buyers and sellers of online advertising to purchase and sell advertising inventory; Platform as a service (PAAS) featuring computer software platforms for use in purchasing and disseminating advertising; Application service provider (ASP) featuring software for use in buying, selling, designing, managing, tracking, valuing, optimizing, targeting, analyzing, delivery, and reporting of online advertising and marketing; Application service provider (ASP) featuring software for use in designing and managing online advertising and marketing campaigns; Designing and developing computer game software and video game software for use with computers, video game program systems and computer networks; Development of hardware for use in connection with electronic and interactive multimedia games; Electronic and interactive multimedia game development services; Providing websites featuring technology that enables users to upload, modify and share virtual reality content, information, experiences and data; Providing websites featuring technology that enables users to upload, modify and share augmented reality content, information, experiences and data; Design, engineering, research, development and testing services in the field of mobile application software development related to the

use and functionality of hyperlinks; Technical consultation in the field of mobile application software development related to the use and functionality of hyperlinks; Providing temporary use of online, non-downloadable software enabling development, assessment, testing, and maintenance of mobile software applications for portable computing devices; Providing user authentication services using single sign-on and software technology for e-commerce transactions; Providing user authentication services of electronic funds transfer, credit and debit card and electronic check transactions using single sign-on and software technology; Application service provider featuring an application programming interface (API) software to allow users to perform electronic business transactions via the internet; Providing temporary use of online, non-downloadable software for processing electronic payments; Platform as a service (PAAS) services featuring computer software to allow users to perform business and e-commerce transactions; Mapping services; Providing temporary use of online, non-downloadable software for making reservations and bookings; Application service provider (ASP) featuring software to enable or facilitate making reservations and bookings; Providing temporary use of online, non-downloadable software for ordering and/or purchasing goods and services; Application service provider (ASP) featuring software to enable or facilitate ordering and/or purchasing goods and services; Providing temporary use of online, non-downloadable computer software for facilitating interaction and communication between humans and AI (artificial intelligence) platforms; Application service provider (ASP) featuring software to enable or facilitate interaction and communication between humans and AI (artificial intelligence) platforms; Design of augmented reality and virtual reality effects for use in modifying photographs, images, videos and audio-visual content; Providing websites featuring technology that enables users to upload, modify

and share virtual reality content and data; Providing websites featuring technology that enables users to upload, modify and share augmented reality content and data; Providing online websites featuring technology that gives users the ability to upload, modify and share mixed reality content and data; Online video ad-buying platform provider, namely, providing non-downloadable software programs for allowing buyers and sellers of online video advertising to purchase and sell video advertising inventory; Application service provider (ASP) featuring software for use in buying, selling, tracking, valuing, optimizing, targeting, analyzing, delivery, and reporting of online advertising and marketing; Application service provider (ASP) featuring software for designing and managing online video advertising and marketing campaigns; Providing temporary use of online, non-downloadable software for modifying photographs, images and audio, video, and audio-video content with photographic filters and augmented reality (AR) effects, namely, graphics, animations, text, drawings, geotags, metadata tags, hyperlinks; Providing temporary use of non-downloadable computer software for finding content and content publishers, and for subscribing to content; Providing temporary use of online, non-downloadable software for organizing images, video, and audio-visual content using metadata tags; Computer services, namely, creating a virtual online community for registered users to share, view, subscribe to and interact with images, audio-visual and video content and related data and information; Application service provider (ASP) featuring application programming interface (API) software which facilitates online services for social networking, developing software applications; Rental of software that gives users the ability to upload, edit, and share images, videos and audio-visual content; Computer services, namely, maintaining websites featuring online user-defined content, advertisements, and social media feeds for others;

Providing temporary use of online, non-downloadable software for taking photographs and recording audio, audio-visual and video content; Providing temporary use of online, non-downloadable personal assistant software for searching the internet, making appointments and reservations, facilitating purchases, providing customer-specific information to meet individual need including customer-specific reminders; Providing temporary use of online, non-downloadable social assistant software for searching the internet, making appointments and reservations, facilitating purchases, providing customer-specific information to meet individual need including customer-specific reminders; Providing temporary use of online, non-downloadable e-commerce software to allow users to perform electronic business transactions via the internet; Providing temporary use of online non-downloadable software for accessing, collecting, displaying, editing, linking, modifying, organizing, tagging, streaming, sharing, storing, transmitting, and otherwise providing electronic media, photographs, images, graphics, audio, videos, audio-visual content, data and information via the internet and communication networks; Providing temporary use of online, non-downloadable software for use in facilitating voice over internet protocol (VOIP) calls, phone calls, video calls, text messages, electronic message, instant message, and online social networking services; Application service provider (ASP) services featuring software to enable or facilitate voice over internet protocol (VOIP) calls, phone calls, video calls, text messages, electronic message, instant message, and online social networking services; Computer services, namely, providing information in the fields of information technology and software development via the internet and communication networks; Providing temporary use of online, non-downloadable software for use in taking and editing photographs and recording and editing videos; Application service provider (ASP) featuring software to enable or facilitate

taking and editing photographs and recording and editing videos; Design and development of computer game hardware and software; Design and development of virtual reality hardware and software; Design and development of video game hardware and software; Computer services in the nature of providing customized online web pages featuring user-defined or specified information, personal profiles, virtual reality content, and augmented reality content and data; Computer programming services for creating virtual reality videos and games; Design and development of augmented reality hardware and software; Development of interactive multimedia software; Maintenance and repair of computer software; Providing temporary use of online, non-downloadable software for transmitting, sharing, receiving, downloading, displaying, interacting with and transferring content, text, visual works, audio works, audiovisual works, literary works, data, files, documents and electronic works; Computer services, namely, providing information in the fields of information technology and software development via a global computer network; Technical support services, namely, troubleshooting in the nature of diagnosing computer hardware and software problems; Computer services, namely, cloud hosting provider services; Providing temporary use of online non-downloadable cloud computing software for electronically storing data; Providing temporary use of online non-downloadable cloud computing software for creating virtual and augmented reality applications and environments; Application service provider, namely, hosting, managing, developing, and maintaining software applications, software, web sites, and database software in the fields of wireless communication, mobile information access, and remote data management for wireless delivery of content to handheld computers, laptops and mobile electronic devices; Application service provider (ASP) featuring software for social networking;

Providing an online network environment in the nature of websites featuring technology that gives users the ability to upload, modify and share audio, video, photographic images, text, graphics and data; Providing temporary use of online non-downloadable software and applications for instant messaging, voice over internet protocol (VOIP), video conferencing, and audio conferencing; Data encryption services; Providing temporary use of online, non-downloadable software and applications for customer relationship management (CRM); Application service provider (ASP) featuring software for customer relationship management (CRM); Providing temporary use of online, non-downloadable online software platform that gives users the ability to post ratings, reviews, referrals and recommendations relating to businesses, restaurants, service providers, events, public services and government agencies; Computer services, in particular, application service provider featuring application programming interface (API) software for customer relationship management (CRM); Hosting of digital content on the internet; Computer services, namely, providing remote management of information technology devices of others via computer networks, wireless networks or the internet; Providing temporary use of online, non-downloadable software for facilitating and arranging for the financing and distribution of fundraising and donations; Rental of photography and/or videography kiosks being computer hardware for capturing, uploading, editing and sharing of pictures and videos; Providing technical advice regarding the repair and maintenance of communications equipment

f. International Class 045: Internet-based social introduction and networking services; Online social networking services; Providing information in the form of databases featuring information in the fields of social networking and social introduction; Providing information in the field of personal development, namely, self-improvement and self-fulfillment; Providing

concierge services for others comprising making requested personal arrangements to meeting individual needs in the nature of booking reservations, facilitating purchases, arranging deliveries, and providing customer-specific information to meet individual needs, including customer-specific reminders

32. Facebook's filing of the 2019 FB Application as an intent-to-use application rather than an application based on use in commerce supports an inference that, as of the November 4, 2019 filing date, Facebook was **not** using the FB Mark in commerce in connection with the services listed. If Facebook was using the FB Mark in commerce for the services listed, it would have filed its application under 15 U.S.C. § 1051(a) based on that use in commerce, rather than filing its application as an intent-to-use application under 15 U.S.C. § 1051(b).

33. In connection with an intent-to-use application, an applicant is required to submit a declaration under penalty of perjury attesting, *inter alia*, that the applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application. In connection with the 2019 FB Application, Facebook filed such a declaration made by its Associate General Counsel, Scott Minden, on Facebook's behalf on November 4, 2019.

34. The 2019 FB Application includes the following services which overlap with, or in some cases are nearly identical to, those in the FB Registrations:

   a. '777 Registration:

      International Class 035: "Promoting the goods and services of others over the Internet"

   2019 FB Application:

      International Class 035: "Promoting the goods and services of others via computer and communication networks; . . . Online advertising services and promoting the goods and services of others via the internet; . . ."

b.  '235 Registration:

International Class 038: "Providing online chat rooms and electronic bulletin boards for transmission of messages among registered users in the fields of collegiate life, general interest, classifieds, virtual community, and for social networking; and peer-to-peer photo sharing services, namely, electronic transmission of digital images among Internet and mobile device users"

2019 FB Application:

International Class 038: ". . . Providing online chat rooms, instant messaging services, and electronic bulletin boards for transmission of messages among users in the field of general interest; . . . Peer-to-peer photo and data sharing services, namely, electronic transmission of digital photo files, graphics and audio content among internet users; . . ."

c.  '764 Registration:

International Class 042: "Computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services in the nature of customized web pages featuring user defined information, personal profiles and information"

2019 FB Application:

International Class 042: "Computer services, namely, creating virtual online communities for registered users to organize groups, meetings, and events, participate in discussions and engage in social, business and community networking; Computer services, in particular, hosting electronic websites for others for organizing and conducting meetings, events and interactive discussions via the internet and communication networks; Computer services in the nature of providing temporary use

of online non-downloadable software that facilitates the creation of customized electronic personal and group profiles or webpages featuring user-defined or specified information, including, audio, video, images, text, content, and data; . . ."

    d.  '234 Registration:

International Class 045: "Internet based social introduction and social networking services"

2019 FB Application:

International Class 045: "Internet-based social introduction and networking services; . . ."

35.    Facebook's filing of the 2019 FB Application as an intent-to-use based application, rather than a use based application, suggests that it had not used the FB Mark in connection with the above-identified services as of November 4, 2019, when the 2019 FB Application was filed or that it did not believe that it had existing valid registrations for those services. If Facebook already had existing valid registrations for the FB Mark that covered those services, it would not have needed to include them in the 2019 FB Application.

36.    The inclusion of the same or closely overlapping or related services in the 2019 FB Application supports an inference that Facebook's representations to the USPTO in its Statements of Use (and in a declaration of continued use in commerce filed on December 22, 2020 in connection with the '777 Registration) regarding the FB Registrations were false when made, especially in the context of the deficient specimens and other indicia of nonuse.

37.    Moreover, Facebook's inclusion of over 400 services in its 2019 intent-to-use based application for the FB Mark is a further indicium that its applications to the USPTO were made in bad faith for improper purposes.

38.     Upon information and belief, Facebook had no bona fide intent to use the FB Mark in commerce for each of the identified goods or services in the 2019 FB Application or in the FB Registrations.

**E.     Facebook Publishes No Guidelines on How to Use the FB Mark, in Contrast to its Facebook Trademark and Other Marks it Uses**

39.     Facebook's public Brand Resource Center website, en.facebookbrand.com, provides guidelines which "outline the rules" for using brand assets with respect to each of the following brands: (1) "the Facebook company," (2) "the Facebook app," (3) Messenger, (4) Instagram, (5) WhatsApp, (6) Oculus, and (7) Workplace.

40.     Facebook's Brand Resources page for "the Facebook company" identifies the Facebook wordmark as a "brand asset" and provides guidelines for how the wordmark should be used. *See* https://en.facebookbrand.com/facebookcompany/; https://en.facebookbrand.com/facebookcompany/assets/facebook-wordmark?audience=company-landing. Facebook's Brand Resources page for "the Facebook app" shows approved "brand assets" that may be used in connection with Facebook's services and provides specific phrases to be used when "[t]alking about Facebook" and copy standards to be used with respect to the word "Facebook." https://en.facebookbrand.com/facebookapp/.

41.     By contrast, Facebook's Brand Resources pages provide no guidelines or instructions on how to use any alleged FB Mark as a trademark or service mark in connection with Facebook company, the Facebook app, or any services provided by Facebook. Nor is the FB Mark included among the "brand assets" on these pages, in contrast to the Facebook trademark/service mark.

42.     This is further indicia that Facebook is not using the alleged FB Mark in commerce in connection with the services or goods in the FB Registrations. Facebook does not bother to provide guidelines for the use of the FB Mark as it does for the Facebook trademark/service mark.

43.     If a visitor to the Facebook Brand Resources webpages scrolls all the way to the bottom of the page, there is a link to a page entitled "Our Trademarks." This page includes "FB" in a glossary listing numerous marks in which Facebook and its affiliate companies claim trademark rights, including common English words such as "Face" and "Book." The page states that these purported trademarks may not be used without Facebook's permission. Facebook's assertion of exclusive trademark rights in common words is another example of its trademark overreach.

### F.     Facebook's Recent Uses of "FB" Are Not Trademark Uses of the FB Mark in Commerce for the Services in the FB Registrations

44.     While Facebook does own domain names incorporating the letters FB (*e.g.*, fb.com, which re-directs to facebook.com) the use of "FB" in a domain name is not a use of the FB Mark in commerce to identify the source of goods or services. To qualify as a trademark/service mark use, the asserted mark must be used to identify and distinguish the trademark owner's goods and services. Mere use of a domain name incorporating an asserted mark is ***not*** a use of the mark in commerce. Domain name use merely identifies an address or location on the Internet.

45.     After WhoisGuard filed its original Counterclaim for cancellation in this action, Facebook identified an image of "FB" in a rainbow-colored circle design used as a profile picture on the Facebook company's social media pages, including the Facebook company's own Facebook page:



46.     In November 2019 Facebook introduced new corporate branding to distinguish the "Facebook company" from the "Facebook app"—likely hoping to distract the public from the Cambridge Analytica data scandal, the $5 billion penalty assessed against Facebook by the Federal Trade Commission for privacy violations, controversy surrounding Facebook's policies for political advertising, and other scandals.

47.     On information and belief, Facebook began using the social media profile picture identified in paragraph 45 above in 2020 in connection with the Facebook company's new corporate branding.

48.     The social media profile pictures identified by Facebook do not constitute a trademark use in commerce of the FB Mark in connection with the services in the FB Registrations. In relation to cancellation for abandonment, "a mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and [i] the services are rendered in commerce, or [ii] the services are rendered in more than one State or in the United States and a foreign country and the person rendering

the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127. Moreover, "use in commerce" requires bona fide use of the mark made in the ordinary course of trade, and not made merely to reserve a right in a mark. *Id*.

49.     The social media pages do not display or use the FB Mark in the sale or advertising of the services in the FB Registrations. For example, as to the '777 Registration, a December 2, 2020 post on Facebook's Facebook page cited by Facebook's attorneys which asks users to share "what makes the business they love special" does not constitute a use or display of the FB Mark in commerce in connection with the sale or advertising of Facebook's service of "promoting the goods and services of others over the Internet." Upon information and belief, Facebook has not rendered the services in the FB Registrations in commerce under the FB Mark.

50.     Moreover, the profile picture of "FB" surrounded in a rainbow-colored circle, like Facebook's other alleged specimens of use, conveys a different commercial impression than the FB Mark under the FB Registrations. Consequently, the rainbow-colored design image is materially different from and is not the FB Mark. Notably, Facebook chooses not to use the circle R symbol (®) in connection with the social media profile pictures identified by Facebook.

51.     The other purported examples of "use in commerce" of the FB Mark identified by Facebook are similarly defective. For example, Facebook, through its attorney, identified the use of "FB" as the stock ticker symbol for Facebook, Inc., which does not function as a trademark or the identification of the source of the services under the FB Registrations.

52.     Finally, Facebook, through its attorney, identified an FB "favicon," or small image file, associated with the Facebook corporate Brand Resources website. In certain web browsers, the favicon is visible in the browser URL address bar, bookmarks list, or tab in which the website is loaded:

1
2
3
4
5
6
7
8
9
10
11
12
13



14      53.    The "FB" favicon is not a trademark or service use of the FB Mark in

15 commerce in connection with any of the services in the FB Registrations. While Facebook

16 currently uses the "FB" favicon on its corporate websites, it does not use or display the

17 "FB" favicon in the sale or advertising of services. Notably, the facebook.com website does

18 not use the "FB" favicon. Visitors to Facebook's corporate website are likely to perceive

19 the "FB" favicon as an indicium of Facebook, Inc.'s corporate or trade name, not as a

20 service mark for the services in the FB Registrations.

21 **FIRST CAUSE OF ACTION**

22 **(Cancellation of FB Registrations)**

23 **Pursuant to 15 U.S.C. § 1119**

24      54.    WhoisGuard repeats and realleges each of the allegations set forth in the

25 preceding paragraphs of this Counterclaim as if fully set forth herein.

26      55.    This Court has the power to order cancellation of the FB Registrations

27 pursuant to 15 U.S.C. § 1119.

28

56. The FB Registrations are not incontestable. While the FB Registrations are more than five years old, Facebook has not filed a declaration of incontestability for any of the FB Registrations pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

57. On October 30, 2014, Facebook filed a Statement of Use in support of its '777 Registration. In the Statement of Use, Facebook's Associate General Counsel, Kathleen Johnston, claimed on Facebook's behalf that "the applicant or the applicant's related company or licensee is using the mark in commerce on or in connection with all the goods/services in the application or notice of allowance, or as subsequently modified, and such use by the applicant's related company or licensee inures to the benefit of the applicant," and that "the specimen(s) shows the mark as used on or in connection with the goods/services in commerce."

58. On November 7, 2014, Facebook filed a Statement of Use in support of its '764 Registration in which Ms. Johnston made the same representations on Facebook's behalf with respect to the services in the '764 Registration.

59. On May 12, 2015, Facebook filed a Statement of Use in support of its '234 Registration in which Ms. Johnston made the same representations on Facebook's behalf with respect to the services in the '234 Registration.

60.  On May 12, 2015, Facebook filed a Statement of Use in support of its '235 Registration in which Ms. Johnston made the same representations on Facebook's behalf with respect to the services in the '235 Registration.

61. Facebook did not subsequently modify any services in its Statements of Use for the FB Registrations.

62. Upon information and belief, neither Facebook nor any related company or licensee was in fact using the FB Mark in commerce in connection with any of the services described in the Statements of Use for the FB Registrations.

63. Ms. Johnston must have known that the Statements of Use she signed were false. As Facebook's Associate General Counsel who signed numerous filings to the USPTO on Facebook's behalf regarding Facebook's purported bona fide intentions and

ongoing efforts to use its marks in commerce, including for the alleged FB Mark, Ms. Johnston necessarily would have been aware that Facebook did not use the FB Mark as a service mark in commerce for the identified services. Additionally, Ms. Johnston and Facebook were put on notice that the FB Newswire screenshots were unacceptable specimens that did not demonstrate use in commerce of the FB Mark as early as November 12, 2014, when the Examining Attorney for the '777 Registration rejected the specimen for this reason.

64. Each time Facebook submitted a request for extension of time to submit a Statement of Use and specimens of alleged proof of use in commerce for the FB Registrations, as described in paragraphs 12-17 above, Ms. Johnston represented to the USPTO on Facebook's behalf that she believed Facebook had "a continued bona fide intention" to use the FB Mark in commerce in connection with all of the services in the respective FB Registrations (either directly, or through its "related company or licensee") and that it was making ongoing efforts to use the FB Mark in commerce for all of the services.

65. On information and belief, Facebook did not have a bona fide intention to use the FB Mark in commerce for the identified services in the FB Registrations, either prior to filing the application or at the times it submitted its requests for extensions to the USPTO.

66. On information and belief, the representations were knowingly false and made with the subjective intent to deceive the USPTO into granting the FB Registrations. Facebook's fraudulent intent is based on the following facts:

a. that in November 2019, Facebook submitted its application for the FB Mark on an intent-to-use basis for services which are identical to or which overlap with or are related to those in the FB Registrations, from which it can be inferred that Facebook was *not* actually using the FB Mark in commerce in connection with those services, or alternatively that it did not believe that it had an existing valid registration that covered the services identified in the FB Registrations;

b. the FB Newswire page screenshots Facebook submitted as alleged specimens do not show trademark use/function in commerce of the FB Mark in connection with the identified services;

c. Facebook's trademark counsel is sophisticated and must have known that the representations were false, particularly after the Examining Attorneys for the first two applications rejected the initial FB Newswire screenshots submitted as specimens as unacceptable;

d. The FB Newswire page ceased operating after the USPTO granted the FB Registrations;

e. It appears that Facebook's primary use of the FB Registrations has been for initiating domain name dispute proceedings, which is not a trademark use in commerce of the FB Mark for the listed services in commerce; and

f. Facebook's conduct in connection with the FB Registrations is part of a larger pattern of trademark abuse and overreach by Facebook.

67.     In addition, in the context of all of the above facts, Facebook's fraudulent intent is further supported by Facebook's filing of numerous requests for extensions of time to file its Statements of Use and specimens of use based on identical, boilerplate reasons. In particular, for the '234 and '235 Registrations, Facebook sought requests for extensions of time as late as April 8, 2015 in which it represented that it had a continued bona fide intention to use the FB Mark, but when it ultimately filed its Statements of Use for those registrations it represented that it had first used the FB Mark in commerce on "04/00/2014." These facts, together with all of the other indicia described above, suggest that Facebook lacked a progressive and ongoing bona fide intent to use the FB Mark in commerce for the identified services.

68.     Facebook caused the fraudulent Statements of Use and requests for extension to be filed with the intent of deceiving the USPTO to obtain the FB Registrations.

69.     On information and belief, Facebook has not used the FB Mark as a service mark for the identified services under the FB Registrations for a period of at least three consecutive years.

70.     On information and belief, Facebook has no intent to use the FB Mark as a service mark for the services identified in the FB Registrations.

71.     On information and belief, Facebook has abandoned the FB Mark for the services identified in the FB Registrations.

72.     For the reasons above, the FB Registrations are invalid.

73.     WhoisGuard has been damaged and will likely continue to be damaged by the FB Registrations and may assert a counterclaim seeking cancellation of the FB Registrations because Facebook is suing WhoisGuard in this action for cybersquatting and trademark infringement based on the FB Registration and is relying, in part, on the FB Registrations as a basis for its claims against WhoisGuard.

74.     Accordingly, WhoisGuard is entitled to an order from this Court canceling the FB Registrations.

## **WHOISGUARD'S PRAYER FOR RELIEF**

WHEREFORE, WhoisGuard hereby requests that judgment be entered in its favor and the following relief be provided:

   a.  Cancellation of Facebook's federal trademark Registration Nos. 4,659,777, 4,764,764, 4,782,234, and 4,782,235;

   b.  For recovery of WhoisGuard's costs of suit, including its attorneys' fees to the extent recoverable pursuant to 15 U.S.C. § 1117 and any other applicable provision of law;

   c.  For damages under 15 U.S.C. § 1120; and

   d.  For such other and further relief as the Court deems just and equitable.

46

1

## JURY DEMAND

2          WhoisGuard demands a trial by jury of all issues so triable pursuant to Rule 38 of

3    the Federal Rules of Civil Procedure.

4

5    Dated:  January 13, 2021

6                                                    **ROME & ASSOCIATES, A.P.C.**

7

8                                                    By: *s/ Eugene Rome*
                                                         Eugene Rome
9                                                        Sridavi Ganesan
                                                         Brianna Dahlberg
10

11                                                   **FENNEMORE CRAIG, P.C.**

12

13

14                                                   By: *s/ Ray Harris*
                                                         Ray K. Harris
15                                                       Mario C. Vasta

16                                                       Attorneys for Defendants
                                                         Namecheap, Inc. and Whoisguard, Inc.
17

18

19

20

21

22

23

24

25

26

27

28