# EXHIBIT B

# Temporary Specification for gTLD (generic Top Level Domain) Registration Data

## Temporary Specification

1. Temporary Specification (Effective as of 25 May 2018)

   a. PDF Download : English (/en/system/files/files/gtld-registration-data-temp-spec-17may18-en.pdf), Arabic (/en/system/files/files/gtld-registration-data-temp-spec-17may18-ar.pdf), Chinese (/en/system/files/files/gtld-registration-data-temp-spec-17may18-zh.pdf), French (/en/system/files/files/gtld-registration-data-temp-spec-17may18-fr.pdf), Russian (/en/system/files/files/gtld-registration-data-temp-spec-17may18-ru.pdf), Spanish (/en/system/files/files/gtld-registration-data-temp-spec-17may18-es.pdf)

   b. ICANN (Internet Corporation for Assigned Names and Numbers) Board Resolution (/resources/board-material/resolutions-2018-05-17-en) [2018.05.17.01 – 2018.05.17.09]

   c. ICANN (Internet Corporation for Assigned Names and Numbers) Board Resolution (/resources/board-material/resolutions-2018-08-21-en) [2018.08.21.01 – 2018.08.21.02]

   d. ICANN (Internet Corporation for Assigned Names and Numbers) Board Resolution (/resources/board-material/resolutions-2018-11-06-en) [2018.11.06.03 – 2018.11.06.04]

   e. ICANN (Internet Corporation for Assigned Names and Numbers) Board Resolution (/resources/board-

material/resolutions-2019-01-27-en) [2019.01.27.14 –
2019.01.27.15]

2. Background

## Additional Resources

1. Advisory Statement: Temporary Specification for gTLD (generic Top
Level Domain) Registration Data (/en/system/files/files/advisory-
statement-gtld-registration-data-specs-17may18-en.pdf) [PDF, 511
KB]

2. Comparison of Calzone Model and Temporary Specification
Requirements (/en/system/files/files/calzone-model-temporary-spec-
requirements-comparison-17may18-en.pdf) [PDF, 61 KB]

3. Redline of Changes - Temporary Specification for gTLD (generic
Top Level Domain) Registration Data (/en/system/files/files/redline-
changes-gtld-registration-data-17may18-en.pdf) [PDF, 356 KB]

4. Frequently Asked Questions for implementing the Temporary
Specification for gTLD (generic Top Level Domain) Registration
Data, updated 6 July 2018 (/resources/pages/gtld-registration-data-
specs-faqs-2018-06-22-en)

5. ICANN (Internet Corporation for Assigned Names and Numbers)
Temporary Specification Model Registry-Registrar Agreement
Amendment Terms:
    - PDF: English (/en/system/files/files/rra-amendment-terms-
    temp-spec-02jul18-en.pdf), Arabic (/ar/system/files/files/rra-
    amendment-terms-temp-spec-02jul18-ar.pdf), Chinese
    (/zh/system/files/files/rra-amendment-terms-temp-spec-
    02jul18-zh.pdf), French (/fr/system/files/files/rra-amendment-
    terms-temp-spec-02jul18-fr.pdf), Russian
    (/ru/system/files/files/rra-amendment-terms-temp-spec-
    02jul18-ru.pdf), Spanish (/es/system/files/files/rra-amendment-
    terms-temp-spec-02jul18-es.pdf)

- DOCX (/en/system/files/files/rra-amendment-terms-temp-spec-docx-02jul18-en.docx) [35 KB]

6. Interim Registration Data Policy for gTLDs (/resources/pages/interim-registration-data-policy-en)

## Background

The General Data Protection Regulation (GDPR) was adopted by the European Union (EU) in April 2016 and takes full effect on 25 May 2018 across the EU countries. Over the past year, ICANN (Internet Corporation for Assigned Names and Numbers) organization (ICANN (Internet Corporation for Assigned Names and Numbers) org) has consulted with contracted parties, European data protection authorities, legal experts, and interested governments and other stakeholders to understand the potential impact of the GDPR to Personal Data that is Processed by certain participants in the gTLD (generic Top Level Domain) domain name ecosystem (including Registry Operators and Registrars) pursuant to ICANN (Internet Corporation for Assigned Names and Numbers) policies and contracts between ICANN (Internet Corporation for Assigned Names and Numbers) and such participants that are subject to the GDPR.

This Temporary Specification for gTLD (generic Top Level Domain) Registration Data (Temporary Specification) establishes temporary requirements to allow ICANN (Internet Corporation for Assigned Names and Numbers) and gTLD (generic Top Level Domain) registry operators and registrars to continue to comply with existing ICANN (Internet Corporation for Assigned Names and Numbers) contractual requirements and community-developed policies in light of the GDPR. Consistent with ICANN (Internet Corporation for Assigned Names and Numbers)'s stated objective to comply with the GDPR, while maintaining the existing WHOIS (WHOIS (pronounced "who is"; not an acronym)) system to the greatest extent possible, the Temporary Specification maintains robust collection of Registration Data (including Registrant (Registrant), Administrative, and Technical contact information), but restricts most Personal Data to layered/tiered access. Users with a legitimate and proportionate purpose for accessing the non-public Personal Data will be able to request such

access through Registrars and Registry Operators. Users will also maintain the ability to contact the Registrant (Registrant) or Administrative and Technical contacts through an anonymized email or web form. The Temporary Specification shall be implemented where required by the GDPR, while providing flexibility to Registry Operators and Registrars to choose to apply the requirements on a global basis where commercially reasonable to do so or where it is not technically feasible to limit application of the requirements to data governed by the GDPR. The Temporary Specification applies to all registrations, without requiring Registrars to differentiate between registrations of legal and natural persons. It also covers data processing arrangements between and among ICANN (Internet Corporation for Assigned Names and Numbers), Registry Operators, Registrars, and Data Escrow Agents as necessary for compliance with the GDPR.

This Temporary Specification was adopted by resolution of the ICANN (Internet Corporation for Assigned Names and Numbers) Board of Directors (ICANN (Internet Corporation for Assigned Names and Numbers) Board) on 17 May 2018, pursuant to the requirements for the establishment of Temporary Policies and Temporary Specification or Policies (as such terms are defined in ICANN (Internet Corporation for Assigned Names and Numbers)'s registry agreements and registrar accreditation agreements). An advisory statement containing a detailed explanation of the ICANN (Internet Corporation for Assigned Names and Numbers) Board's reasons for adopting this Temporary Specification is available here: https://www.icann.org/en/system/files/files/advisory-statement-gtld-registration-data-specs-17may18-en.pdf (/en/system/files/files/advisory-statement-gtld-registration-data-specs-17may18-en.pdf) [PDF, 511 KB].

## Table of Contents

### Temporary Specification for gTLD (generic Top Level Domain) Registration Data

1. Scope

2. Definitions and Interpretation

**3.** <u>Policy Effective Date</u>

**4.** <u>Lawfulness and Purposes of Processing gTLD (generic Top Level</u>
<u>Domain) Registration Data</u>

**5.** <u>Requirements Applicable to Registry Operators and Registrars</u>

**6.** <u>Requirements Applicable to Registry Operators Only</u>

**7.** <u>Requirements Applicable to Registrars Only</u>

**8.** <u>Miscellaneous</u>

<u>Appendix A: Registration Data Directory Services</u>

<u>Appendix B: Supplemental Data Escrow Requirements</u>

<u>Appendix C: Data Processing Requirements</u>

<u>Appendix D: Uniform Rapid Suspension</u>

<u>Appendix E: Uniform Domain Name (Domain Name) Dispute Resolution</u>
<u>Policy</u>

<u>Appendix F: Bulk Registration Data Access to ICANN (Internet Corporation</u>
<u>for Assigned Names and Numbers)</u>

<u>Appendix G: Supplemental Procedures to the Transfer Policy</u>

<u>Annex: Important Issues for Further Community Action</u>

<u>Implementation Notes</u>

## 1. Scope

1.1. Terms used in this Temporary Specification are defined in
Section 2.

1.2. This Temporary Specification applies to all gTLD (generic Top Level Domain) Registry Operators and ICANN (Internet Corporation for Assigned Names and Numbers)-accredited Registrars.

1.3. The requirements of this Temporary Specification supersede and replace the requirements contained in Registry Operator's Registry Agreement and Registrar's Registrar Accreditation Agreement regarding the matters contained in this Temporary Specification. To the extent there is a conflict between the requirements of this Temporary Specification and the requirements of Registry Operator's Registry Agreement and Registrar's Registrar Accreditation Agreement, the terms of this Temporary Specification SHALL control, unless ICANN (Internet Corporation for Assigned Names and Numbers) determines in its reasonable discretion that this Temporary Specification SHALL NOT control. For purposes of clarity, unless specifically addressed and modified by this Temporary Specification, all other requirements and obligations within Registry Operator's Registry Agreement and Registrar's Registrar Accreditation Agreement and consensus policies remain applicable and in force

## 2. Definitions and Interpretation

The terms "MAY", "MUST", "MUST NOT", "REQUIRED", "RECOMMENDED", "SHALL", "SHALL NOT", "SHOULD NOT" and "SHOULD" are used to indicate the requirement level in accordance with RFC (Request for Comments) 2119, which is available at http://www.ietf.org/rfc/rfc2119.txt (http://www.ietf.org/rfc/rfc2119.txt).

"Consent", "Controller", "Personal Data", "Processing", and "Processor" SHALL have the same definition as Article 4 of the GDPR.

"gTLD (generic Top Level Domain)" SHALL have the meaning given in the Registrar Accreditation Agreement.

"Interim Model" means the Interim Model for Compliance with ICANN (Internet Corporation for Assigned Names and Numbers)

Agreements and Policies in Relation to the European Union's General Data Protection Regulation published at https://www.icann.org/en/system/files/files/gdpr-compliance-interim-model-08mar18-en.pdf (/en/system/files/files/gdpr-compliance-interim-model-08mar18-en.pdf) [PDF, 922 KB] and as may be amended from time to time.

"Registered Name" SHALL have the meaning given in the Registrar Accreditation Agreement.

"Registered Name Holder" SHALL have the meaning given in the Registrar Accreditation Agreement.

"Registrar Accreditation Agreement" means any Registrar Accreditation Agreement between a Registrar and ICANN (Internet Corporation for Assigned Names and Numbers) that is based on that certain 2013 Registrar Accreditation Agreement approved by the ICANN (Internet Corporation for Assigned Names and Numbers) Board on June 27, 2013 ("2013 Registrar Accreditation Agreement") or any successor to such agreements that is approved by the ICANN (Internet Corporation for Assigned Names and Numbers) Board.

"Registration Data" means data collected from a natural and legal person in connection with a domain name registration.

"Registration Data Directory Services" refers to the collective of WHOIS (WHOIS (pronounced "who is"; not an acronym)), Web-based WHOIS (WHOIS (pronounced "who is"; not an acronym)), and RDAP services.

"Registry Agreement" means any gTLD (generic Top Level Domain) registry agreement between Registry Operator and ICANN (Internet Corporation for Assigned Names and Numbers), including any Registry Agreement that is based on the new gTLD (generic Top Level Domain) Registry Agreement approved by the ICANN (Internet Corporation for Assigned Names and Numbers) Board on 2 July 2013, as amended ("Base Registry Agreement").

If a term is capitalized but not defined in this Temporary Specification, such term SHALL have the meaning given to it in the Registry Agreement or Registrar Accreditation Agreement, as applicable.

Unless otherwise specifically provided for herein, the term "or" SHALL NOT be deemed to be exclusive.

When Registry Operator and Registrar are referenced together in a provision of this Temporary Specification, each such provision represents a separate requirement and obligation of each Registry Operator and each Registrar pursuant to its respective Registry Agreement or Registrar Accreditation Agreement.

## 3. Policy Effective Date

This Temporary Specification is effective as of 25 May 2018.

## 4. Lawfulness and Purposes of Processing gTLD (generic Top Level Domain) Registration Data

4.1. ICANN (Internet Corporation for Assigned Names and Numbers)'s mission, as set forth in Bylaws Section 1.1(a), is to "coordinate the stable operation of the Internet's unique identifier systems." Section 1.1(a) describes in specificity what this mission entails in the context of names. While ICANN (Internet Corporation for Assigned Names and Numbers)'s role is narrow, it is not limited to technical stability. Specifically, the Bylaws provide that ICANN (Internet Corporation for Assigned Names and Numbers)'s purpose is to coordinate the bottom-up, multistakeholder development and implementation of policies "[f]or which uniform or coordinated resolution is reasonably necessary to facilitate the openness, interoperability, resilience, security and/or stability of the DNS (Domain Name System) including, with respect to gTLD (generic Top Level Domain) registrars and registries" [Bylaws, Section 1.1(a) (i)], which is further defined in Annex G-1 and G-2 of the Bylaws to include, among other things:

- resolution of disputes regarding the registration of domain names (as opposed to the use of such domain names, but including where such policies take into account use of the domain names);

- maintenance of and access to accurate and up-to-date information concerning registered names and name servers;

- procedures to avoid disruptions of domain name registrations due to suspension or termination of operations by a registry operator or a registrar (e.g., escrow); and

- the transfer of registration data upon a change in registrar sponsoring one or more registered names.

4.2. The Bylaws articulate that issues surrounding the provision of Registration Data Directory Services (RDDS) by Registry Operators and Registrars are firmly within ICANN (Internet Corporation for Assigned Names and Numbers)'s mission. The Bylaws provide further insight into the legitimate interests designed to be served by RDDS. For example, the Bylaws specifically obligate ICANN (Internet Corporation for Assigned Names and Numbers), in carrying out its mandate, to "adequately address issues of competition, consumer protection, security, stability and resiliency, malicious abuse issues, sovereignty concerns, and rights protection" [Bylaws Section 4.6 (d)]. While ICANN (Internet Corporation for Assigned Names and Numbers) has neither the authority nor expertise to enforce competition or consumer protection laws, and is only one of many stakeholders in the cybersecurity ecosystem, the provision of RDDS for legitimate and proportionate uses is a critical and fundamental way in which ICANN (Internet Corporation for Assigned Names and Numbers) addresses consumer protection, malicious abuse issues, sovereignty concerns, and rights protection – enforcing policies that enable consumers, rights holders, law enforcement and other stakeholders to access the data necessary to address and resolve uses that violate law or rights.

4.3. Accordingly, ICANN (Internet Corporation for Assigned Names and Numbers)'s mission directly involves facilitation of third party Processing for legitimate and proportionate purposes related to law enforcement, competition, consumer protection, trust, security, stability, resiliency, malicious abuse, sovereignty, and rights protection. ICANN (Internet Corporation for Assigned Names and Numbers) is required by Section 4.6(e) of the Bylaws, subject to applicable laws, to "use commercially reasonable efforts to enforce its policies relating to registration directory services," including by working with stakeholders to "explore structural changes to improve accuracy and access to generic top-level domain registration data," "as well as consider[ing] safeguards for protecting such data." As a result, ICANN (Internet Corporation for Assigned Names and Numbers) is of the view that the collection of Personal Data (one of the elements of Processing) is specifically mandated by the Bylaws. In addition, other elements of the Processing Personal Data in Registration Data by Registry Operator and Registrar, as required and permitted under the Registry Operator's Registry Agreement with ICANN (Internet Corporation for Assigned Names and Numbers) and the Registrar's Registrar Accreditation Agreement with ICANN (Internet Corporation for Assigned Names and Numbers), is needed to ensure a coordinated, stable and secure operation of the Internet's unique identifier system.

4.4. However, such Processing must be in a manner that complies with the GDPR, including on the basis of a specific identified purpose for such Processing. Accordingly, Personal Data included in Registration Data may be Processed on the basis of a legitimate interest not overridden by the fundamental rights and freedoms of individuals whose Personal Data is included in Registration Data, and only for the following legitimate purposes:

4.4.1. Reflecting the rights of a Registered Name Holder in a Registered Name and ensuring that the Registered Name Holder may exercise its rights in respect of the Registered Name;

4.4.2. Providing access to accurate, reliable, and uniform Registration Data based on legitimate interests not outweighed by the fundamental rights of relevant data subjects, consistent with GDPR;

4.4.3. Enabling a reliable mechanism for identifying and contacting the Registered Name Holder for a variety of legitimate purposes more fully set out below;

4.4.4. Enabling a mechanism for the communication or notification of payment and invoicing information and reminders to the Registered Name Holder by its chosen Registrar;

4.4.5. Enabling a mechanism for the communication or notification to the Registered Name Holder of technical issues and/or errors with a Registered Name or any content or resources associated with such a Registered Name;

4.4.6. Enabling a mechanism for the Registry Operator or the chosen Registrar to communicate with or notify the Registered Name Holder of commercial or technical changes in the domain in which the Registered Name has been registered;

4.4.7. Enabling the publication of technical and administrative points of contact administering the domain names at the request of the Registered Name Holder;

4.4.8. Supporting a framework to address issues involving domain name registrations, including but not limited to: consumer protection, investigation of cybercrime, DNS (Domain Name System) abuse, and intellectual property protection;

4.4.9. Providing a framework to address appropriate law enforcement needs;

4.4.10. Facilitating the provision of zone files of gTLDs to Internet users;

4.4.11. Providing mechanisms for safeguarding Registered Name Holders' Registration Data in the event of a business or technical failure, or other unavailability of a Registrar or Registry Operator;

4.4.12. Coordinating dispute resolution services for certain disputes concerning domain names; and

4.4.13. Handling contractual compliance monitoring requests, audits, and complaints submitted by Registry Operators, Registrars, Registered Name Holders, and other Internet users.

4.5. In considering whether Processing of Personal Data contained in Registration Data is consistent with Article 6(1)(f) of the GDPR[1], the GDPR requires ICANN (Internet Corporation for Assigned Names and Numbers) to balance the legitimate interests described above with the interests, rights, and freedoms of the affected data subject. ICANN (Internet Corporation for Assigned Names and Numbers) finds that the Processing is proportionate for the following reasons:

4.5.1. The Processing of the limited Personal Data identified in this Temporary Specification is necessary to achieve the legitimate interests identified, as documented in many stakeholder comments and submissions over the course of a 12-month community consultation. This Processing specifically includes the retention of Personal Data already collected and the ongoing collection of Personal Data;

4.5.2. The tiered/layered access framework for RDDS identified in the Interim Model, and implemented in this Temporary Specification, is specifically designed to minimize

the intrusiveness of Processing while still permitting necessary Processing;

4.5.3. Processing under the tiered/layered access framework as required by this Temporary Specification minimizes the risk of unauthorized and unjustified Processing;

4.5.4. This Temporary Specification contains requirements to ensure that Registered Names Holders are notified about the contemplated Processing and about their rights with respect to such Processing;

4.5.5. This Temporary Specification contains requirements to ensure that appropriate records of Processing activities will be maintained to meet the accountability obligations set forth in the GDPR.

## 5. Requirements Applicable to Registry Operators and Registrars

5.1. **Publication of Registration Data**. Registry Operator and Registrar MUST comply with the requirements of, and MUST provide public access to Registration Data in accordance with, Appendix A attached hereto ("**Appendix A**").

5.2. **Registrar and Registry Operator Service Level Agreement**. Registry Operator and Registrar acknowledge that in its implementation of a Registration Data Access Protocol (Protocol) (RDAP) service, they MUST comply with additional Service Level Agreements. ICANN (Internet Corporation for Assigned Names and Numbers) and the contracted parties will negotiate in good faith the appropriate service levels agreements by 31 July 2018. If the contracted parties and ICANN (Internet Corporation for Assigned Names and Numbers) are unable to define such Service Level Agreements through good faith negotiations by such date, ICANN (Internet Corporation for Assigned Names and Numbers) will require Registrar and Registry Operator to comply with Service Levels that

are comparable to those service levels already existing in their respective agreements with respect to RDDS.

5.3. **Data Escrow**. Registry Operator and Registrar MUST comply with the additional requirements concerning Registration Data escrow procedures set forth in Appendix B attached hereto ("**Appendix B**").

5.4. **Data Processing Requirements**. Registry Operator and Registrar MUST comply with the requirements of, and MUST Process Personal Data in accordance with the terms and conditions set forth in Appendix C attached hereto ("**Appendix C**").

5.5. **International Data Transfers between Registry Operator, Registrar, and ICANN (Internet Corporation for Assigned Names and Numbers)**. In the course of performing the requirements under this Temporary Specification, the Registry Agreement, and Registrar Accreditation Agreement, Registry Operator, Registrar and/or ICANN (Internet Corporation for Assigned Names and Numbers) MAY be required to transfer Personal Data to a country that is not deemed adequate by the European Commission per Article 45(1) of the GDPR. In such a case, ICANN (Internet Corporation for Assigned Names and Numbers), Registry Operator, and/or Registrar MUST transfer Personal Data on the basis of adequate safeguards permitted under Chapter V of the GDPR, including the use of Standard Contractual Clauses (2004/915/EC (Empowered Community)) (or its successor clauses), and ICANN (Internet Corporation for Assigned Names and Numbers), Registry Operator and/or Registrar MUST comply with such appropriate safeguards.

5.6. **Uniform Rapid Suspension (URS (Uniform Rapid Suspension))**. Registry Operator and Registrar MUST comply with the additional requirements for the 17 October 2013 URS (Uniform Rapid Suspension) High Level Technical Requirements for Registries and Registrars set forth in Appendix D attached hereto ("**Appendix D**").

5.7. **ICANN (Internet Corporation for Assigned Names and Numbers) Contractual Compliance**. Registry Operator and Registrar MUST provide reasonable access to Registration Data to ICANN (Internet Corporation for Assigned Names and Numbers) upon reasonable notice and request from ICANN (Internet Corporation for Assigned Names and Numbers) for the purpose of investigating compliance-related inquiries and enforcement of the Registry Agreement, Registrar Accreditation Agreement, and ICANN (Internet Corporation for Assigned Names and Numbers) Consensus (Consensus) Policies.

6. Requirements Applicable to Registry Operators Only

6.1. **Bulk Registration Data Access to ICANN (Internet Corporation for Assigned Names and Numbers)**. Registry Operator MUST comply with, and MUST provide ICANN (Internet Corporation for Assigned Names and Numbers) with periodic access to Registration Data in accordance with Appendix F attached hereto ("**Appendix F**").

6.2. **Registry Monthly Reports**. ICANN (Internet Corporation for Assigned Names and Numbers) and Registry Operators will negotiate in good faith appropriate additional reporting requirements with respect to its implementation of RDAP by 31 July 2018. If ICANN (Internet Corporation for Assigned Names and Numbers) and Registry Operators are unable to define such additional reporting requirements through good faith negotiations by such date, ICANN (Internet Corporation for Assigned Names and Numbers) will require Registry Operator to comply with additional reporting requirements that are comparable to those already existing in its Registry Agreement with respect to RDDS.

6.3. **Registry-Registrar Agreements**.

6.3.1. Registry Operator MUST include Processing provisions in its Registry-Registrar Agreement with Registrar concerning

the handling of Personal Data in a manner that complies with applicable requirements of Article 28 of the GDPR.

6.3.2. Registry Operator MAY amend or restate its Registry-Registrar Agreement to incorporate data Processing terms and conditions (which itself contains EU Model Clauses to govern international data transfers, where applicable between the respective parties) substantially similar to the requirements provided at <<https://www.icann.org/resources/pages/gtld-registration-data-specs-en/#6 (/resources/pages/gtld-registration-data-specs-en/#6)>> without any further approval of ICANN (Internet Corporation for Assigned Names and Numbers), provided that Registry Operator MUST promptly deliver any such amended or restated Registry-Registrar Agreement to ICANN (Internet Corporation for Assigned Names and Numbers). Upon ICANN (Internet Corporation for Assigned Names and Numbers)'s receipt thereof, such amended or restated Registry-Registrar Agreements will be deemed to supplement or replace, as applicable, the approved Registry-Registrar Agreement that is attached as an appendix (if any) to Registry Operator's Registry Agreement.

## 7. Requirements Applicable to Registrars Only

7.1. **Notices to Registered Name Holders Regarding Data Processing**. Registrar SHALL provide notice to each existing, new or renewed Registered Name Holder stating:

7.1.1. The specific purposes for which any Personal Data will be Processed by the Registrar;

7.1.2. The intended recipients or categories of recipients of the Personal Data (including the Registry Operator and others who will receive the Personal Data from Registry Operator);

7.1.3. Which data are obligatory and which data, if any, are voluntary;

7.1.4. How the Registered Name Holder or data subject can access and, if necessary, rectify Personal Data held about them;

7.1.5. The identity and the contact details of the Registrar (as controller) and, where applicable, of the Registrar's representative in the European Economic Area;

7.1.6. The contact details of Registrar's data protection officer, where applicable;

7.1.7. The specified legitimate interest for Processing under Article 6(1)(f) of the GDPR;

7.1.8. The recipients or categories of recipients of the Personal Data, if any;

7.1.9. Where applicable, the fact that the Registrar intends to transfer Personal Data: (i) to a third country or international organization and the existence or absence of an adequacy decision by the Commission; or (ii) in the case of transfers referred to in Articles 46 or 47 of the GDPR, or the second subparagraph of Article 49(1) of the GDPR, reference to the appropriate or suitable safeguards and how to obtain a copy of them or where they have been made available.

7.1.10. The period for which the Personal Data will be stored, or if it is not possible to indicate the period, the criteria that will be used to determine that period;

7.1.11. The existence of the right to request from the Registrar access to, and rectification or erasure of Personal Data, or restriction of Processing of Personal Data concerning the Registered Name Holder or data subject, or to object to Processing, as well as the right to data portability;

7.1.12. Compliance with Article 6(1)(a) and Article 9(2)(a) of the GDPR, where the Registrar relies on consent of the Registered Name Holder for Processing;

7.1.13. The right of the Registered Name Holder or data subject to lodge a complaint with a relevant supervisory authority;

7.1.14. Whether the provision of Personal Data is a statutory or contractual requirement, or a requirement necessary to enter into a contract, as well as whether the Registered Name Holder is obliged to provide the Personal Data, and the possible consequences of failure to provide such Personal Data; and

7.1.15. The existence of automated decision-making, including profiling, referred to in Article 22(1) and (4) of the GDPR and, at least in those cases, meaningful information about the logic involved, as well as the significance and the envisaged consequences of such Processing for the data subject.

The requirements of this Section 7.1 shall supersede and replace the requirements of Section 3.7.7.4 of the Registrar Accreditation Agreement.

7.2. **Additional Publication of Registration Data**.

7.2.1. As soon as commercially reasonable, Registrar MUST provide the opportunity for the Registered Name Holder to provide its Consent to publish the additional contact information outlined in Section 2.3 of Appendix A for the Registered Name Holder.

7.2.2. Registrar MAY provide the opportunity for the Admin/Tech and/or other contacts to provide Consent to

publish additional contact information outlined in Section 2.4 of Appendix A.

7.2.3. Where such Consent is sought by Registrar, the request for Consent SHALL be presented in a manner which is clearly distinguishable from other matters (including other Personal Data Processed based on a legitimate interest). The request for Consent SHALL be in an intelligible and easily accessible form, using clear and plain language. The Registered Name Holder SHALL have the right to withdraw its Consent at any time. The withdrawal of Consent SHALL NOT affect the lawfulness of Processing based on Consent obtained before the withdrawal.

7.2.4. Registrar MUST publish the additional contact information outlined in Sections 2.3 and 2.4 of Appendix A for which it has received Consent.

7.3. **Uniform Domain Name (Domain Name) Dispute Resolution Policy**. Registrar MUST comply with the additional requirements for the Rules for the Uniform Domain Name (Domain Name) Dispute Resolution Policy set forth in Appendix E attached hereto ("**Appendix E**").

7.4. **Transfer Policy**. Registrar MUST comply with the supplemental procedures to the Transfer Policy set forth in Appendix G attached hereto ("**Appendix G**").

## 8. Miscellaneous

8.1. **No Third-party Beneficiaries**. This Temporary Specification will not be construed to create any obligation by either ICANN (Internet Corporation for Assigned Names and Numbers), Registry Operator, or Registrar to any non-party to this Temporary Specification, including Registered Name Holder.

8.2. **Modifications to Temporary Specification**. Implementation details of this Temporary Specification MAY by modified upon a two-thirds vote of the ICANN (Internet Corporation for Assigned Names and Numbers) the Board to make adjustments based on further inputs from the Article 29 Working Party/European Data Protection Board, court order of a relevant court of competent jurisdiction concerning the GDPR, applicable legislation or regulation, or as a result of the Board-GAC (Governmental Advisory Committee) Bylaws Consultation concerning GAC (Governmental Advisory Committee) advice in the San Juan Communiqué about WHOIS (WHOIS (pronounced "who is"; not an acronym)) and GDPR.

8.3. **Severability**. This Temporary Specification SHALL be deemed to be severable; the invalidity or unenforceability of any term or provisions of this Temporary Specification SHALL NOT affect the validity or enforceability of the balance of this Temporary Specification or any other term hereof, which SHALL remain in full force and effect.

# Appendix A: Registration Data Directory Services

## 1. **Registration Data Directory Services**

This Section modifies the relevant requirements of following: (i) the Registration Data Directory Service (WHOIS (WHOIS (pronounced "who is"; not an acronym))) Specification of the 2013 Registrar Accreditation Agreement; (ii) in the case of a Registry Agreement that is modeled after the Base Registry Agreement, Section 1 of Specification 4 of the Base Registry Agreement; (iii) in the case of a Registry Agreement that is not modeled on the Base Registry Agreement, the provisions of such Registry Agreement that are comparable to the provisions of Section 1 of Specification 4 of the Base Registry Agreement; and (iv) provision 10 of the Registry Registration Data Directory Services Consistent Labeling and Display Policy.

1.1. Registrar and Registry Operator MUST operate a Registration Data Access Protocol (Protocol) (RDAP) service. ICANN (Internet

Corporation for Assigned Names and Numbers) and the community will define the appropriate profile(s) by 31 July 2018. ICANN (Internet Corporation for Assigned Names and Numbers) will subsequently give notice to implement such service, and Registrar and Registry Operator SHALL implement the service no later than 135 days after being requested by ICANN (Internet Corporation for Assigned Names and Numbers). Registrar and Registry Operator MAY operate a pilot RDAP service before the date upon which an RDAP service is required.

1.2. **RDDS Search Capabilities**

1.2.1. Where search capabilities are permitted and offered, Registry Operator and Registrar MUST: (1) ensure such search capability is in compliance with applicable privacy laws or policies; (2) only permit searches on data otherwise available to the querying user, based on whether the user only has access to data publicly available in RDDS or whether the user has access to non-public Registration Data; (3) only provide results otherwise available to the querying user based on whether the user only has access to data publicly available in RDDS or whether the user has access to non-public Registration Data; and (4) ensure such search capability is otherwise consistent with the requirements of this Temporary Specification regarding access to public and non-public Registration Data.

1.2.2. Where search capabilities are permitted and offered, Registry Operator and Registrar MUST offer search capabilities on the web-based Directory Service and the RDAP service (when implemented).

2. **Requirements for Processing Personal Data in Public RDDS Where Processing is Subject to the GDPR**

2.1. Registry Operator (except where Registry Operator operates a "thin" registry) and Registrar MUST apply the requirements in

Sections 2 and 4 of this Appendix to Personal Data included in Registration Data where:

i. the Registrar or Registry Operator is established in the European Economic Area (EEA) as provided in Article 3(1) GDPR and Process Personal Data included in Registration Data;

ii. the Registrar or Registry Operator is established outside the EEA and offers registration services to Registered Name Holders located in the EEA as contemplated by Article 3(2) GDPR that involves the Processing of Personal Data from registrants located in the EEA; or

iii. the Registrar or Registry Operator is located outside the EEA and Processes Personal Data included in Registration Data and where the Registry Operator or Registrar engages a Processor located within the EEA to Process such Personal Data.

2.2. For fields that Sections 2.3 and 2.4 of this Appendix requires to be "redacted", Registrar and Registry Operator MUST provide in the value section of the redacted field text substantially similar to the following: "REDACTED FOR PRIVACY". Prior to the required date of implementation of RDAP, Registrar and Registry Operator MAY: (i) provide no information in the value section of the redacted field; or (ii) not publish the redacted field.

2.3. In responses to domain name queries, Registrar and Registry Operator MUST treat the following Registrant (Registrant) fields as "redacted" unless the Registered Name Holder has provided Consent to publish the Registered Name Holder's data:

- Registry Registrant (Registrant) ID

- Registrant (Registrant) Name

- Registrant (Registrant) Street

- Registrant (Registrant) City

- Registrant (Registrant) Postal Code

- Registrant (Registrant) Phone

- Registrant (Registrant) Phone Ext

- Registrant (Registrant) Fax

- Registrant (Registrant) Fax Ext

2.4. In responses to domain name queries, Registrar and Registry Operator MUST treat the following fields as "redacted" unless the contact (e.g., Admin, Tech) has provided Consent to publish the contact's data:

- Registry Admin/Tech/Other ID

- Admin/Tech/Other Name

- Admin/Tech/Other Organization

- Admin/Tech/Other Street

- Admin/Tech/Other City

- Admin/Tech/Other State/Province

- Admin/Tech/Other Postal Code

- Admin/Tech/Other Country

- Admin/Tech/Other Phone

- Admin/Tech/Other Phone Ext

- Admin/Tech/Other Fax

- Admin/Tech/Other Fax Ext

2.5. In responses to domain name queries, in the value of the "Email" field of every contact (e.g., Registrant (Registrant), Admin,

Tech):

> 2.5.1. Registrar MUST provide an email address or a web form to facilitate email communication with the relevant contact, but MUST NOT identify the contact email address or the contact itself.
>
> > 2.5.1.1. The email address and the URL (Uniform Resource Locator) to the web form MUST provide functionality to forward communications received to the email address of the applicable contact.
> >
> > 2.5.1.2. Registrar MAY implement commercially reasonable safeguards to filter out spam and other form of abusive communications.
> >
> > 2.5.1.3. It MUST NOT be feasible to extract or derive the email address of the contact from the email address and the URL (Uniform Resource Locator) to the web form provided to facilitate email communication with the relevant contact.
>
> 2.5.2. Registry Operator MUST provide a message substantially similar to the following: "Please query the RDDS service of the Registrar of Record identified in this output for information on how to contact the Registrant (Registrant), Admin, or Tech contact of the queried domain name."

2.6. Notwithstanding Sections 2.2, 2.3, 2.4, and 2.5 of this Appendix, in the case of a domain name registration where a privacy/proxy service used (e.g. where data associated with a natural person is masked), Registrar MUST return in response to any query full WHOIS (WHOIS (pronounced "who is"; not an acronym)) data, including the existing proxy/proxy pseudonymized email.

3. **Additional Provisions Concerning Processing Personal Data in Public RDDS Where Processing is not Subject to the GDPR**

   Registry Operator and Registrar MAY apply the requirements in Section 2 of this Appendix (i) where it has a commercially reasonable purpose to do so ,or (ii) where it is not technically feasible to limit application of the requirements as provided in Section 2.1 of this Appendix.

4. **Access to Non-Public Registration Data**

   4.1. Registrar and Registry Operator MUST provide reasonable access to Personal Data in Registration Data to third parties on the basis of a legitimate interests pursued by the third party, except where such interests are overridden by the interests or fundamental rights and freedoms of the Registered Name Holder or data subject pursuant to Article 6(1)(f) GDPR.

   4.2. Notwithstanding Section 4.1 of this Appendix, Registrar and Registry Operator MUST provide reasonable access to Personal Data in Registration Data to a third party where the Article 29 Working Party/European Data Protection Board, court order of a relevant court of competent jurisdiction concerning the GDPR, applicable legislation or regulation has provided guidance that the provision of specified non-public elements of Registration Data to a specified class of third party for a specified purpose is lawful. Registrar and Registry Operator MUST provide such reasonable access within 90 days of the date ICANN (Internet Corporation for Assigned Names and Numbers) publishes any such guidance, unless legal requirements otherwise demand an earlier implementation.

5. **Publication of Additional Data Fields**

   Registrar and Registry Operator MAY output additional data fields, subject to the Data Processing requirements in **Appendix C**.

## Appendix B: Supplemental Data Escrow Requirements

### 1. Data Processing Requirements

Registry Operator and Registrar MUST respectively ensure that any data escrow agreement between Registry Operator and the Escrow Agent and/or Registrar and the Escrow Agent includes data Processing requirements consistent with Article 28 of the GDPR. Such Escrow Agent MUST provide sufficient guarantees to implement appropriate technical and organizational measures in such a manner that Processing will meet the requirements of the GDPR and ensure the protection of the rights of the data subject.

### 2. International Transfers

In the course of performing the requirements under the agreement with the Escrow Agent, it may be necessary for the Escrow Agent to Process Personal Data in a country that is not deemed adequate by the European Commission per Article 45(1) of the GDPR. In such a case, the transfer and Processing will be on the basis of adequate safeguards permitted under Chapter V of the GDPR, including the use of Standard Contractual Clauses (2004/915/EC (Empowered Community)) (or its successor clauses), and the Escrow Agent and Controller MUST comply with such appropriate safeguards.

### 3. ICANN (Internet Corporation for Assigned Names and Numbers) Approval

Registry Operator MAY amend or restate its respective Data Escrow Agreement to incorporate data Processing terms and conditions substantially similar to the requirements provided at <<https://www.icann.org/resources/pages/gtld-registration-data-specs-en (/resources/pages/gtld-registration-data-specs-en)>> without any further approval of ICANN (Internet Corporation for Assigned Names and Numbers), provided that Registry Operator and Registrar MUST promptly deliver any such amended or restated Data Escrow Agreement to ICANN (Internet Corporation for Assigned Names and Numbers). Upon ICANN (Internet Corporation

for Assigned Names and Numbers)'s receipt thereof, such amended or restated Data Escrow Agreement will be deemed to supplement or replace, as applicable, the approved Data Escrow Agreement that is attached as an appendix (if any) to Registry Operator's Registry Agreement.

4. **Additional Requirements**

In addition to the above requirements, the data escrow agreement may contain other data Processing provisions that are not contradictory, inconsistent with, or intended to subvert the required terms provided above.

## Appendix C: Data Processing Requirements

This Appendix sets out the framework for the Processing and sharing of Registration Data containing Personal Data between the parties as Data Controllers or Data Processors, as identified in the matrix below, and defines the principles and procedures that the parties SHALL adhere to and the responsibilities the parties owe to each other. The parties collectively acknowledge and agree that Processing of Registration Data is to be performed at different stages, or at times even simultaneously, within the Internet's complex environment, by the parties. Thus, this Appendix is required to ensure that where Personal Data may be accessed, such access will at all times comply with the requirements of the GDPR. Unless defined in this Appendix, terms with initial capital letters have the meaning given under the GDPR.

| gTLD (generic Top Level Domain) Processing Activity | Registrar Role/ Legal Justification | Registry Operator Role / Legal Justification | ICANN (Internet Corporation for Assigned Names and Numbers) Role / Legal Justification |
|---|---|---|---|

| gTLD (generic Top Level Domain) Processing Activity | Registrar Role/ Legal Justification | Registry Operator Role / Legal Justification | ICANN (Internet Corporation for Assigned Names and Numbers) Role / Legal Justification |
|---|---|---|---|
| Collection of registration data from Registered Name Holder | Controller (Consent and Performance of a Contract) | Controller (Legitimate Interest and Performance of a Contract) | Controller (Legitimate Interest) |
| Transfer of registration data from Registrar to Registry Operator or Registry Operator Back-end Service Provider | Processor (Performance of a Contract) | Controller (Legitimate Interests) | Controller (Legitimate Interests) |
| Transfer of registration data from Registry Operator to Data Escrow Agent | No role | Processor (Performance of a Contract) | Controller (Legitimate Interest) |
| Transfer of registration data from Registrar to Data Escrow Agent | Processor (Performance of Contract) | No role | Controller (Legitimate Interest) |

| gTLD (generic Top Level Domain) Processing Activity | Registrar Role/ Legal Justification | Registry Operator Role / Legal Justification | ICANN (Internet Corporation for Assigned Names and Numbers) Role / Legal Justification |
|---|---|---|---|
| Transfer of registration data to ICANN (Internet Corporation for Assigned Names and Numbers) Contractual Compliance | Processor | Processor | Controller (Legitimate Interest) |
| Transfer of registration data to Emergency Back-end Registry Operator (EBERO (Emergency Back-End Registry Operator)) | No role | Processor (Performance of a Contract) | Controller (Legitimate Interest) |
| Public RDDS/WHOIS (WHOIS (pronounced "who is"; not an acronym)) | Controller (Legitimate Interest) | Controller (Legitimate Interest) | Controller (Legitimate Interest) |

| gTLD (generic Top Level Domain) Processing Activity | Registrar Role/ Legal Justification | Registry Operator Role / Legal Justification | ICANN (Internet Corporation for Assigned Names and Numbers) Role / Legal Justification |
|---|---|---|---|
| Disclosure of non-public RDDS/WHOIS (WHOIS (pronounced "who is"; not an acronym)) to third parties | Controller (Performance of a Contract [can also vary depending upon the requesting party]) | Controller (Performance of a Contract [can also vary depending upon the requesting party]) | Controller (Performance of a Contract) |
| Data retention | No role | Processor (Performance of a Contract) | Controller (Performance of a Contract) |

1. **Principles for Processing**

Each Controller will observe the following principles to govern its Processing of Personal Data contained in Registration Data, except as required by applicable laws or regulations. Personal Data SHALL:

1.1. only be Processed lawfully, fairly, and in a transparent manner in relation to the Registered Name Holders and other data subjects ("lawfulness, fairness, and transparency");

1.2. be obtained only for specified, explicit, and legitimate purposes (as outlined in Section 4 of this Temporary Specification), and SHALL NOT be further Processed in any manner incompatible with those purposes ("purpose limitation");

1.3. be adequate, relevant, and not excessive in relation to the purposes for which they are Processed ("data minimization");

1.4. be accurate and, if necessary, kept current, as appropriate to the purposes for which they are Processed ("accuracy");

1.5. not be kept in a form that permits identification of the Registered Name Holder and other data subjects for longer than necessary for the permitted purposes ("storage limitation"); and

1.6. be Processed in a manner that ensures appropriate security of the Personal Data, including protection against unauthorized or unlawful Processing and against accidental loss, destruction or damage, using appropriate technical or organizational measures ("integrity and confidentiality").

Each Registrar and Registry Operator SHALL be responsible for, and be able to demonstrate compliance with principles (1.1) to (1.6) ("accountability"). The Registrar or Registry Operator SHALL inform ICANN (Internet Corporation for Assigned Names and Numbers) immediately if such Registrar or Registry Operator (i) cannot abide by the Processing principles outlined in Section 1 of this Appendix, or (ii) receives a complaint by a Registered Name Holder or other data subject that the Registrar or Registry Operator has failed to abide by such principles.

2. **Lawfulness of Processing**

For Personal Data Processed in connection with the Registration Data Directory Services, such Processing will take place on the basis of a legitimate interests of the Controller or of the third party or parties to whom the Personal Data are disclosed, except where such interests are overridden by the interests or fundamental rights and freedoms of the data subject which require protection of Personal Data, in particular where the data subject is a child. For other Personal Data collected for other purposes, such Personal Data SHALL NOT be Processed unless a legal basis specified under Article 6(1) GDPR applies.

3. **Specific Controller Processing requirements**

In addition to the general principles and requirements for lawful Processing, each Controller SHALL comply with the following specific requirements:

3.1. **Implementing appropriate measures.** Implementing appropriate technical and organizational measures to ensure and to be able to demonstrate the Processing is performed in compliance with the GDPR, such as appropriate data protection policies, approved code of conducts or approved certification mechanisms. Such measures SHALL be reviewed regularly and updated when necessary by the Controller. The parties acknowledge and agree that they are responsible for maintaining appropriate organizational and security measures to protect such Personal Data shared between the parties in accordance with applicable laws. Appropriate organizational and security measures are further enumerated in Section 3.8 of this Appendix, and generally MUST include:

3.1.1. Measures to ensure that only authorized individuals for the purposes of this Appendix can access the Personal Data;

3.1.2. The pseudonymisation and encryption of the Personal Data, where necessary or appropriate;

3.1.3. The ability to ensure continued confidentiality, integrity, availability and resilience of its processing systems and services;

3.1.4. The ability to restore the availability and access to Personal Data in a timely manner;

3.1.5. A process for regularly testing, assessing, and evaluating the effectiveness of technical and organizational measures for ensuring the security of the processing of Personal Data; and

3.1.6. Measures to identify vulnerabilities with regard to the processing of Personal Data in its systems;

3.2. **Engaging only selected Processors.** Engaging only selected Processors and implementing a contract with each Processor that sets out the subject-matter and duration of the Processing, the nature and purpose of the Processing, the type of Personal Data and categories of data subjects and the obligations and rights of the Controller. The engagement of Processor must comply with Article 28 of the GDPR;

3.3. **Designating a Data Protection Officer.** Designating a "Data Protection Officer" where required by Article 37 of the GDPR or Member State national data protection law;

3.4. **Maintaining a record of Processing.** Maintaining a record of the Processing activities under the Controller's responsibility in accordance with Article 30 of the GDPR;

3.5. **Providing transparent information.** Taking appropriate measures to provide any information referred to in Articles 13 and 14 of the GDPR and any communication under Articles 15 to 22 and 34 of the GDPR relating to Processing to the data subject in a concise, transparent, intelligible and easily accessible form, using clear and plain language, which SHALL specifically include the following obligations:

3.5.1. The parties SHALL ensure that their privacy notices are clear and provide sufficient information to Data Subjects in order for them to understand what of their Personal Data the Parties are sharing, the circumstances in which it will be shared, the purposes for the data sharing and either the identity with whom the data is shared or a description of the type of organization that will receive the Personal Data;

3.5.2. The parties undertake to inform Data Subjects of the purposes for which it will process their Personal Data and

provide all of the information that it must provide in accordance with applicable laws, to ensure that the Data Subjects understand how their Personal Data will be processed by the Controller.

3.6. **Facilitating of the exercise of data subject rights.** Facilitating the exercise of data subject rights under Articles 15 to 22 of the GDPR. In the cases referred to in Article 11(2) of the GDPR, the Controller SHALL NOT refuse to act on the request of the data subject for exercising his or her rights under Articles 15 to 22 of the GDPR, unless the Controller demonstrates that it is not in a position to identify the data subject;

3.7. **Implementing measures for data protection by design and by default.** Implementing appropriate technical and organizational measures, both at the time of the determination of the means for Processing and at the time of the Processing itself, which are designed to implement data protection principles, in an effective manner and to integrate the necessary safeguards into the Processing in order to meet the requirements of the GDPR and to protect the rights of data subjects. Implementing appropriate technical and organizational measures for ensuring that, by default, only Personal Data which are necessary for each specific purpose of the Processing are Processed.

3.8. **Implementing appropriate security measures.** Implementing appropriate technical and organizational measures to ensure a level of security appropriate to the risk of data Processing, taking into account the state of the art, the costs of implementation and the nature, scope, context and purposes of Processing as well as the risks of varying likelihood and severity for the rights and freedoms of natural persons. Appropriate technical and organizational measures to protect the Personal Data shared against unauthorized or unlawful Processing and against accidental loss, destruction, damage, alteration or disclosure, MAY include, but not limited to:

3.8.1. Ensuring IT equipment, including portable equipment is kept in lockable areas when unattended;

3.8.2. Not leaving portable equipment containing the Personal Data unattended;

3.8.3. Ensuring use of appropriate secure passwords for logging into systems or databases containing Personal Data shared between the parties;

3.8.4. Ensuring that all IT equipment is protected by antivirus software, firewalls, passwords and suitable encryption devices;

3.8.5. Using industry standard 256-bit AES encryption or suitable equivalent where necessary or appropriate;

3.8.6. Limiting access to relevant databases and systems to those of its officers, staff, agents, vendors and sub-contractors who need to have access to the Personal Data, and ensuring that passwords are changed and updated regularly to prevent inappropriate access when individuals are no longer engaged by the party;

3.8.7. Conducting regular threat assessment or penetration testing on systems; and

3.8.8. Ensuring all authorized individuals handling Personal Data have been made aware of their responsibilities with regards to handling of Personal Data.

3.9. **Developing procedures for breach notification.** Developing procedures for breach notification to ensure compliance with the obligations pursuant to Articles 33-34 of the GDPR. Any notifications provided in connection with Articles 33-34 of the GDPR SHALL also be provided to ICANN (Internet Corporation for Assigned Names and Numbers). Where a party is not the Data Controller, it must communicate any data security breach immediately after discovery

thereof and will provide immediate feedback about any impact this incident may/will have on the Controller and any Personal Data shared with the Controller. Such notification will be provided as promptly as possible.

### 3.10. **Observing conditions for international data transfers.**
Observing conditions for international data transfers so that any transfer of Personal Data which are undergoing Processing or are intended for Processing after transfer to a third country or to an international organization SHALL take place only if the conditions laid down in Chapter V of the GDPR are complied with, including for onward transfers of Personal Data from the third country or an international organization to another third country or to another international organization. A party may only transfer Registration Data including Personal Data relating to EU individuals to outside of the EU (or if such Personal Data is already outside of the EU, to any third party also outside the EU), in compliance with the terms this Section 3.10, and the requirements of applicable laws.

### 3.11. **Cooperating with Supervisory Authorities.** Cooperating with
Supervisory Authorities, on request, in the performance of their tasks.

## Appendix D: Uniform Rapid Suspension

This Appendix contains supplemental requirements for the 17 October 2013 URS (Uniform Rapid Suspension) High Level Technical Requirements for Registries and Registrars and URS (Uniform Rapid Suspension) Rules effective 28 June 2013.

1. **URS (Uniform Rapid Suspension) High Level Technical Requirements for Registry Operator and Registrar**

   1.1. **Registry Operator Requirement**: The Registry Operator (or appointed BERO) MUST provide the URS (Uniform Rapid Suspension) provider with the full Registration Data for each of the specified domain names, upon the URS (Uniform Rapid Suspension) provider notifying the Registry Operator (or appointed

BERO) of the existence of a complaint, or participate in another mechanism to provide the full Registration Data to the Provider as specified by ICANN (Internet Corporation for Assigned Names and Numbers). If the gTLD (generic Top Level Domain) operates as a "thin" registry, the Registry Operator MUST provide the available Registration Data to the URS (Uniform Rapid Suspension) Provider.

1.2. **Registrar Requirement**: If the domain name(s) subject to the complaint reside on a "thin" registry, the Registrar MUST provide the full Registration Data to the URS (Uniform Rapid Suspension) Provider upon notification of a complaint.

2. **URS (Uniform Rapid Suspension) Rules**

Complainant's complaint will not be deemed defective for failure to provide the name of the Respondent (Registered Name Holder) and all other relevant contact information required by Section 3 o the URS (Uniform Rapid Suspension) Rules if such contact information of the Respondent is not available in registration data publicly available in RDDS or not otherwise known to Complainant. In such an event, Complainant may file a "Doe" complaint and the Examiner shall provide the relevant contact details of the Registered Name Holder after being presented with a "Doe" complaint.

# Appendix E: Uniform Domain Name (Domain Name) Dispute Resolution Policy

This Appendix contains supplemental requirements for the Rules for Uniform Domain Name (Domain Name) Dispute Resolution Policy (the "Rules").

1. **Uniform Domain Name (Domain Name) Dispute Resolution Policy**

1.1. **Registrar Requirement**: The Registrar MUST provide the UDRP (Uniform Domain-Name Dispute Resolution Policy) provider with the full Registration Data for each of the specified domain names, upon the UDRP (Uniform Domain-Name Dispute Resolution

Policy) provider notifying the Registrar of the existence of a
complaint, or participate in another mechanism to provide the full
Registration Data to the Provider as specified by ICANN (Internet
Corporation for Assigned Names and Numbers).

1.2. Complainant's complaint will not be deemed defective for failure
to provide the name of the Respondent (Registered Name Holder)
and all other relevant contact information required by Section 3 o the
UDRP (Uniform Domain-Name Dispute Resolution Policy) Rules if
such contact information of the Respondent is not available in
registration data publicly available in RDDS or not otherwise known
to Complainant. In such an event, Complainant may file a "Doe"
complaint and the Provider shall provide the relevant contact details
of the Registered Name Holder after being presented with a "Doe"
complaint.

## Appendix F: Bulk Registration Data Access to ICANN (Internet Corporation for Assigned Names and Numbers)

This Appendix replaces the requirement in: (i) Section 3.1.1 of Specification
4 of each Registry Agreement that is modeled on the Base Registry
Agreement; and (ii) the relevant provision in a Registry Agreement not
based on the Base Registry Agreement to provide Bulk Registration Data
Access to ICANN (Internet Corporation for Assigned Names and Numbers)
(also called "Whois Data Specification – ICANN (Internet Corporation for
Assigned Names and Numbers)" in some gTLD (generic Top Level
Domain) agreements).

1. **Contents.** Registry Operator MUST only provide the following data
   for all registered domain names: domain name, domain name
   repository object id (roid), Registrar ID (IANA (Internet Assigned
   Numbers Authority) ID), statuses, last updated date, creation date,
   expiration date, and name server names. For sponsoring registrars,
   Registry Operator MUST only provide: registrar name, registrar ID
   (IANA (Internet Assigned Numbers Authority) ID), hostname of
   registrar Whois server, and URL (Uniform Resource Locator) of
   registrar.

## Appendix G: Supplemental Procedures to the Transfer Policy

This Appendix provides supplemental procedures for the Transfer Policy (/resources/pages/registrars/transfers-en) applicable to all ICANN (Internet Corporation for Assigned Names and Numbers)-accredited Registrars.

1. Until such time when the RDAP service (or other secure methods for transferring data) is required by ICANN (Internet Corporation for Assigned Names and Numbers) to be offered, if the Gaining Registrar is unable to gain access to then-current Registration Data for a domain name subject of a transfer, the related requirements in the Transfer Policy will be superseded by the below provisions:

   1.1. The Gaining Registrar is not REQUIRED to obtain a Form of Authorization from the Transfer Contact.

   1.2. The Registrant (Registrant) MUST independently re-enter Registration Data with the Gaining Registrar. In such instance, the Gaining Registrar is not REQUIRED to follow the Change of Registrant (Registrant) Process as provided in Section II.C. of the Transfer Policy.

2. As used in the Transfer Policy:

   2.1. The term "Whois data" SHALL have the same meaning as "Registration Data".

   2.2. The term "Whois details" SHALL have the same meaning as "Registration Data".

   2.3. The term "Publicly accessible Whois" SHALL have the same meaning as "RDDS".

   2.4. The term "Whois" SHALL have the same meaning as "RDDS".

3. Registrar and Registry Operator SHALL follow best practices in generating and updating the "AuthInfo" code to facilitate a secure

transfer process.

4. Registry Operator MUST verify that the "AuthInfo" code provided by the Gaining Registrar is valid in order to accept an inter-registrar transfer request.

## Annex: Important Issues for Further Community Action

The purpose of this Annex is to set forth implementation issues raised during the course of development of this Temporary Specification for which the ICANN (Internet Corporation for Assigned Names and Numbers) Board encourages the community to continue discussing so that they may be resolved as quickly as possible after the effective date of the Temporary Specification. This Annex does not create new or modified requirements for Registrar or Registry Operator, nor is it intended to direct the scope of the Policy Development Process, which will be initiated as a result of the Board's adoption of this Temporary Specification.

1. Pursuant to Section 4.4, continuing community work to develop an accreditation and access model that complies with GDPR, while recognizing the need to obtain additional guidance from Article 29 Working Party/European Data Protection Board.

2. Addressing the feasibility of requiring unique contacts to have a uniform anonymized email address across domain name registrations at a given Registrar, while ensuring security/stability and meeting the requirements of Section 2.5.1 of Appendix A.

3. Developing methods to provide potential URS (Uniform Rapid Suspension) and UDRP (Uniform Domain-Name Dispute Resolution Policy) complainants with sufficient access to Registration Data to support good-faith filings of complaints.

4. Consistent process for continued access to Registration Data, including non-public data, for users with a legitimate purpose, until the time when a final accreditation and access mechanism is fully operational, on a mandatory basis for all contracted parties.

5. Distinguishing between legal and natural persons to allow for public access to the Registration Data of legal persons, which are not in the remit of the GDPR.

6. Limitations in terms of query volume envisaged under an accreditation program balanced against realistic investigatory cross-referencing needs.

7. Confidentiality of queries for Registration Data by law enforcement authorities.

## Implementation Notes

1. **Background on Board Adoption of Temporary Specification.**

1.1. On 17 May 2018, the ICANN (Internet Corporation for Assigned Names and Numbers) Board adopted the Temporary Specification for generic top-level domain (gTLD (generic Top Level Domain)) Registration Data ("Temporary Specification") pursuant to the procedures for the establishment of temporary policies in ICANN (Internet Corporation for Assigned Names and Numbers)'s agreements with Registry Operators and Registrars. The Temporary Specification provides modifications to existing requirements in the Registrar Accreditation and Registry Agreements to bring them into compliance with the European Union's General Data Protection Regulation (GDPR). Absent these modifications, ICANN (Internet Corporation for Assigned Names and Numbers), Registry Operators, and Registrars would not be able to comply with both the law and ICANN (Internet Corporation for Assigned Names and Numbers) agreements when the GDPR goes into effect on 25 May 2018. This would result in the inability of ICANN (Internet Corporation for Assigned Names and Numbers) to enforce its contracts. This would also result in each Registry Operator and Registrar making their own determination regarding what gTLD (generic Top Level Domain) Registration Data should be collected, transferred and published, leading to a fragmentation of the globally distributed WHOIS (WHOIS (pronounced "who is"; not an acronym)) system. Fragmentation of the WHOIS (WHOIS (pronounced "who is"; not an

acronym)) system would jeopardize the availability of Registration
Data, which is essential to ensuring the security and stability of the
Internet, including to mitigate attacks that threaten the stable and
secure operation of the Internet. As such, the Temporary
Specification is needed prior to 25 May 2018 to preserve the
security and stability of registry services, registrar services, and of
the Domain Name (Domain Name) System (DNS (Domain Name
System)).

1.2. See the Advisory Statement: Temporary Specification for gTLD
(generic Top Level Domain) Registration Data
(/en/system/files/files/advisory-statement-gtld-registration-data-
specs-17may18-en.pdf) [PDF, 511 KB] for additional information on
how the Temporary Specification preserves the WHOIS (WHOIS
(pronounced "who is"; not an acronym)) system in the context of
security and stability, as well as steps ICANN (Internet Corporation
for Assigned Names and Numbers) has taken to build consensus
support and to ensure that the Temporary Specification complies
with the GDPR and addresses other public policy considerations.

## 2. **References**

2.1. gTLD (generic Top Level Domain) Registration Dataflow Matrix
and Information (/resources/pages/gtld-registration-dataflow-matrix-
2017-07-24-en). With the help from Registrars and Registry
Operators as well as interested stakeholders, ICANN (Internet
Corporation for Assigned Names and Numbers) collected
information needed to help evaluate GDPR compliance in the
context of registry, registrar, and registrant data. This information
was used to inform legal analysis, as well as to engage with data
protection authorities.

2.2. Hamilton Memoranda (/resources/pages/gdpr-legal-analysis-
2017-11-17-en#memoranda). At the request of the community,
ICANN (Internet Corporation for Assigned Names and Numbers) org
commissioned European law firm Hamilton to produce three
memoranda outlining the GDPR's impact on gTLD (generic Top
Level Domain) registration directory services. The memoranda

concluded that WHOIS (WHOIS (pronounced "who is"; not an acronym)) would have to change in light of the law, responded to community questions about the law, and provided examples of how WHOIS (WHOIS (pronounced "who is"; not an acronym)) services may change to comply with the GDPR.

2.3. Statement from ICANN (Internet Corporation for Assigned Names and Numbers) Contractual Compliance (/resources/pages/contractual-compliance-statement-2017-11-02-en). On 2 November 2017, ICANN (Internet Corporation for Assigned Names and Numbers) issued a statement from ICANN (Internet Corporation for Assigned Names and Numbers)'s Contractual Compliance Department regarding the ability of Registry Operators and Registrars to comply with their WHOIS (WHOIS (pronounced "who is"; not an acronym)) and other contractual requirements related to domain name registration data in light of the European Union's General Data Protection Regulation (GDPR).

2.4. Community-Proposed Models for GDPR Compliance (/resources/pages/gdpr-legal-analysis-2017-11-17-en#community-models). In response to the Statement from ICANN (Internet Corporation for Assigned Names and Numbers)'s Contractual Compliance Department, several proposed models for GDPR compliance were submitted by various stakeholders.

2.5. ICANN (Internet Corporation for Assigned Names and Numbers) Organization's Three Proposed Interim Compliance Model (/en/system/files/files/interim-models-gdpr-compliance-12jan18-en.pdf) [PDF, 623 KB]. On 12 January 2018, ICANN (Internet Corporation for Assigned Names and Numbers) org published three proposed interim models for compliance and sought community input. The models reflected discussions from across the community and with data protection authorities, legal analyses and the proposed community models received to date.

2.6. ICANN (Internet Corporation for Assigned Names and Numbers) Org's Proposed Interim GDPR Compliance Model (Calzone) (/en/system/files/files/proposed-interim-model-gdpr-

compliance-summary-description-28feb18-en.pdf) [PDF, 728 KB].
On 28 February 2018, ICANN (Internet Corporation for Assigned
Names and Numbers) org published the Proposed Interim GDPR
Compliance Model (Calzone), which incorporated input from the
community and feedback from data protection authorities. The
Calzone provides a high-level summary of the proposed model. In
addition, ICANN (Internet Corporation for Assigned Names and
Numbers) org also published an updated Working Draft Non-Paper
(/en/system/files/files/gdpr-draft-compliance-models-comments-
28feb18-en.xlsx) [XLSX, 21 KB] that compares ICANN (Internet
Corporation for Assigned Names and Numbers)- and community-
proposed models.

2.7. ICANN (Internet Corporation for Assigned Names and
Numbers) Org's Proposed Interim GDPR Compliance Model
(Cookbook) (/en/system/files/files/gdpr-compliance-interim-model-
08mar18-en.pdf) [PDF, 922 KB]. On 8 March 2018, ICANN (Internet
Corporation for Assigned Names and Numbers) Org published the
Cookbook that contains the Proposed Interim GDPR Compliance
Model and legal justification for collection and use of the WHOIS
(WHOIS (pronounced "who is"; not an acronym)) data included in
the Calzone.

3. **Legal Basis and Purposes of Processing gTLD (generic Top
Level Domain) Registration Data Elements**

Under the GDPR, Personal Data may only be collected for specified,
explicit and legitimate purposes and not further Processed in a
manner that is incompatible with those purposes. The legal basis
and purposes of Processing gTLD (generic Top Level Domain)
Registration Data elements are detailed at
<<https://www.icann.org/resources/pages/gtld-registration-data-
specs-en (/resources/pages/gtld-registration-data-specs-en))>>

# Additional Resources

- Advisory Statement: Temporary Specification for gTLD (generic Top Level Domain) Registration Data (/en/system/files/files/advisory-statement-gtld-registration-data-specs-17may18-en.pdf) [PDF, 511 KB]

- Comparison of Calzone Model and Temporary Specification Requirements (/en/system/files/files/calzone-model-temporary-spec-requirements-comparison-17may18-en.pdf) [PDF, 61 KB]

- Redline of Changes - Temporary Specification for gTLD (generic Top Level Domain) Registration Data (/en/system/files/files/redline-changes-gtld-registration-data-17may18-en.pdf) [PDF, 356 KB]

- Frequently Asked Questions for implementing the Temporary Specification for gTLD (generic Top Level Domain) Registration Data, updated 6 July 2018 (/resources/pages/gtld-registration-data-specs-faqs-2018-06-22-en)

---

[1] Article 6(1)(f) of the GDPR permits Processing where "necessary for the purposes of the legitimate interests pursued by the controller or by a third party, except where such interests are overridden by the interests or fundamental rights and freedoms of the data subject which require protection of personal data...."