David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiff and
Counterclaim Defendant,
Facebook, Inc.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., Instagram, LLC, and WhatsApp Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc. And Whoisguard, Inc.,<br><br>Defendants.<br><br>Whoisguard, Inc.<br><br>Counterclaimant<br><br>v.<br><br>Facebook, Inc.<br><br>Counterclaim Defendant. | Case No. CV-20-470-PHX-GMS<br><br>**FACEBOOK'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS WHOISGUARD'S FIRST AMENDED COUNTERCLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>(Oral Argument Requested) |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

"In considering a motion to dismiss, the court is not required to don blinders and to ignore commercial reality." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984). This is, however, exactly what Whoisguard asks the Court to do in attempting to invalidate the FB Marks. Whoisguard's First Amended Counterclaim ("FACC") introduces selected portions of Facebook's own websites and specimens for its FB Marks.[1] Recognizing that the full documents are fatal to its claims, Whoisguard now argues the Court should not incorporate by reference or take judicial notice of these documents and instead should rely solely on the select portions Whoisguard cites. Whoisguard cannot have it both ways, particularly because the documents at issue show, without any factual dispute, that Whoisguard's claims fail as a matter of law.

For instance, Whoisguard's fraud claim is predicated primarily on its assertion that the FB Marks' specimens do not show those marks in use and that whether such use is shown is a question of fact that cannot be resolved at the motion to dismiss stage. Whoisguard is mistaken. The PTO's acceptance of a trademark specimen forecloses as a matter of law the ability to challenge the specimen's sufficiency via a fraud claim because the PTO Examining Attorney had a full opportunity to review and evaluate the specimen's contents. *Belstone Capital, LLC v. Bellstone Partners, LLC*, No. 2:16-CV-01124, 2017 WL 1153111, at *4–5 (E.D. Cal. Mar. 28, 2017) (holding plaintiff's disagreement with PTO's registration of mark based on specimens provided "does not make out a claim of fraud"). And this makes sense. By providing the PTO with the specimens, Facebook did not conceal the specimens' contents, and no material misrepresentation exists regarding the specimens' sufficiency.

Whoisguard also attempts to miscast the common PTO practice of requesting an

---

[1] Facebook's specimens are public records at the U.S. Patent and Trademark Office ("PTO") and are accessible by entering the pertinent registration numbers at the website accessible at tsdr.uspto.gov.

1

extension of time to file a statement of use into a fraud claim. Without any legal or factual support, Whoisguard argues Facebook committed fraud by asserting "a continued bona fide intention to use the mark" even though Facebook was currently using the mark. Whoisguard's Opposition fails to address or even attempt to distinguish the cases cited by Facebook explaining that use of a mark at the time an extension is requested is wholly proper. *See In Re Schering-Plough Healthcare Prods. Inc.*, 24 U.S.P.Q.2d 1709, 1992 WL 340752, at *3 (Com'r Pat. & Trademarks 1992).

Whoisguard's abandonment claim fares no better. Whoisguard's allegation that Facebook purportedly ceased using the FB Marks for a period of three years—according to Whoisguard—creates a prima facie case of abandonment. Whoisguard ignores, however, that Facebook recently renewed Reg. No. 4,659,777 on December 22, 2020, and the PTO accepted Facebook's specimen of use (Facebook's own Facebook page) on February 13, 2021. Whoisguard also ignores that it received from Facebook evidence of Facebook's ongoing use of the FB Marks (including the specimen the PTO just accepted). Whoisguard has improperly pleaded abandonment by relying on only a portion of that evidence and now seeks to block the Court from fully reviewing the very materials Whoisguard originally relied upon to support its claim. This evidence shows Facebook's use and continued intent to use the FB Marks, which eviscerates any abandonment claim. As with the fraud claim, the abandonment claim is futile and should be dismissed with prejudice.

## II. WHOISGUARD'S AMENDED PLEADING FAILS TO STATE A CLAIM.

### A. The fraud claims fail to plead a material misrepresentation.

The parties agree that Whoisguard can only state a claim for fraud by alleging, among other elements, that Facebook made a false representation of material fact. Opp. at 5; *see OTR Wheel Eng'g, Inc. v. West Worldwide Servs.*, 897 F.3d 1008, 1019 (9th Cir. 2018). Under its usual meaning, "[a] fact is 'material' if the fact may affect the outcome of the case." *Far Out Productions, Inc., v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). Likewise, "in the trademark context, a material misrepresentation arises only if the registration should not have issued if the truth were known to the examiner." *Alphaville Design, Inc. v. Knoll,*

2

*Inc.*, 627 F. Supp. 2d 1121, 1132 (N.D. Cal .2009).

Although difficult to discern from the pleadings, Whoisguard's Opposition makes clear that its fraud claim is predicated on three alleged material misrepresentations by Facebook: (1) "that the specimens Facebook submitted showed the FB Mark as used in connection with the services in commerce"; (2) "that Facebook or its related company or licensee was[, at the time each statement of use was filed,] using the FB Mark in commerce in connection with all the services stated in the respective FB Registrations"; and (3) "that Facebook had 'a continued bona fide intention' to use the FB Mark in commerce in connection with all of the services at that time." Opp. at 6. None of these statements, even if assumed to be false (which they are not), is material as a matter of law. Whoisguard's fraud claim therefore fails.

### 1. The PTO Examining Attorney had all material facts concerning the specimens in front of him when he approved the FB Marks for registration, and thus nothing was concealed.

While Whoisguard is correct that the PTO will not grant registration until it receives a specimen depicting use of the mark, both the PTO and courts hold that, as a matter of law, a party cannot state a claim for fraud by alleging that the specimens provided to the PTO do not show such use. And this makes sense: if the Examining Attorney has the specimen before him and makes a determination concerning its sufficiency, no material information or documents could have been withheld since the specimen was deemed adequate. The PTO has explained:

> Because the specimen was submitted to and accepted by the assigned Trademark Examining Attorney the question whether the specimen showed use of the applied-for mark for the goods listed in the involved application was a matter to be determined by the Examining Attorney, and ***it would have been plainly evident whether the specimen supported an application to register the mark for the listed goods***. . . . Therefore, this is ***not a case in which the applicant withheld information or material*** from the Examining Attorney which would have been necessary for the Examining Attorney to determine whether the specimen was sufficient; nor is it a case in which applicant is alleged to have outfoxed the Examining Attorney by fabricating a specimen. ***In short, any deficiency in the specimen would have been readily apparent to the Examining Attorney and could not have led to unwarranted approval of the mark for publication***.

3

*This Little Piggy Wears Cotton v. Piggy Toes*, Opposition No. 91159506, 2004 WL 1701272, at *4 (Trademark Trial and Appeal Board ("TTAB") July 13, 2004) (emphasis added); *see also W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 377 F.2d 1001, 1004 (C.C.P.A.[2] 1967) (explaining fraudulent purpose or intent cannot merely be inferred, including in situations where the alleged misrepresentation appears on the face of the specimens provided to the Examining Attorney).

Similarly, in *Belstone*, the plaintiff claimed the defendant had fraudulently registered its mark based, in part, on the defendant averring before the PTO that it used the mark "Bellstone" continuously in interstate commerce for five years when, in fact, the mark actually used was "Bellstone Partners, LLC." 2017 WL 1153111, at *4. To support its fraud claim, the plaintiff pointed to the specimens provided to the PTO demonstrating the different marks. *Id.* In holding the plaintiff had not sufficiently alleged fraud, the court explained:

> **[P]laintiffs point to the very specimen defendants provided to the USPTO, which contains the word "Bellstone."** In other words, plaintiff's own pleadings demonstrate **defendants provided the USPTO with the information plaintiff alleges defendants withheld**, undermining any allegations of fraud. **Although plaintiff may disagree with the USPTO's decision** to register the word mark "Bellstone" based on a specimen that reads "Bellstone Partners, LLC," **that disagreement does not make out a claim of fraud**.

*Id.* at *4 (emphasis added; internal citations omitted).[3]

---

[2] The Federal Circuit has adopted as binding the precedent of its predecessor court, the United States Court of Customs and Patent Appeals (C.C.P.A.). *South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982) (en banc). The Federal Circuit (like the CCPA before it) hears appeals from the TTAB. *See, e.g.*, *In re Ocean Tech., Inc.*, 2019 WL 6245131, at *7 (TTAB 2019) (referring to "our primary reviewing court (the Federal Circuit and its predecessor the Court of Customs and Patent Appeals)").

[3] *Cf.* Trademark Manual of Examining Procedure ("TMEP") § 1109.07 ("The examining attorney will examine the specimen to confirm that it shows appropriate use as a mark on or in connection with the goods/services . . . specified in the statement of use.") (citations omitted); *see also id.* at § 814 ("Sometimes, it is necessary for the examining attorney to request such additional information from an applicant . . . . ***The examining attorney may also request*** . . . general ***information concerning*** circumstances surrounding the mark, as well as, if applicable, ***its use or intended use.***") (emphasis added).

4

This is exactly the case here. Whoisguard is complaining that the Examining Attorney came to the wrong conclusion in determining that the FB Marks' specimens properly showed use. *See* Opp. at 11 ("Facebook's specimens fail to meet these criteria."; "The specimens are also defective for the separate reason that they do not show a direct association between the FB Mark and any services at issue."); FACC ¶ 22 ("The specimens submitted by Facebook do not show the FB Mark in use in commerce in connection with all of the services specified in the FB Registrations."), FACC ¶ 24 ("The specimens also fail to show use of the FB mark applied for and sought to be registered."). However, since the FB Registrations are more than five years old (FACC ¶ 56), Whoisguard is time barred from seeking cancellation of the FB Marks based on a disagreement with the Examining Attorney's decision. *See* 15 U.S.C. § 1064(3) (after five years, a petition to cancel can only be made if the mark becomes generic, is functional, has been abandoned, or if its registration was obtained fraudulently); *Park 'N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 197, 105 S.Ct. 658, 663 (1985) ("Without regard to its incontestable status, a mark that has been registered five years is protected from cancellation except on the grounds stated in §§ [1064(3) and (5)]."). Because of the time bar, Whoisguard attempts to recast its objection to the Examining Attorney's decision as a fraud claim.[4]

The FACC affirmatively alleges, however, that Facebook provided the specimens to the PTO[5] and that the Examining Attorney eventually accepted them. Countercl. ¶¶ 21–

---

[4] Whoisguard's original Counterclaim was flawed because its challenge to the FB Mark registration was time barred under 15 U.S.C. § 1064. When Facebook advised Whoisguard of this legal impediment to its claim, Whoisguard filed the FACC alleging fraud.

[5] In its Motion to Dismiss, Facebook requested that all of the specimens it submitted to the PTO in connection with the FB Mark be incorporated by reference into Whoisguard's First Amended Counterclaim. (Mot. 5 n.3.) Whoisguard ignores, and thus concedes, this request. Instead, Whoisguard argues solely that the Court should deny Facebook's additional request for *judicial notice* of these specimens because a question of fact is presented. (Opp. 9–12.) Again, Whoisguard misses the point since (a) there is no question of fact that these are the specimens that the Examining Attorney reviewed and (b) Whoisguard is time-barred from asserting that there is a question of fact as to how or why the Examining

5

22, 25–26. Whoisguard does not allege that Facebook withheld any documents, and just as in *Little Piggy* and *Bellstone*, Whoisguard cannot now allege fraud simply because it disagrees with the Examining Attorney's decision to accept the specimens Facebook submitted. In short, the fraud inquiry ends here because there can be no material misrepresentation as to what the specimens showed given the specimens were not concealed from the Examining Attorney. Whoisguard's fraud claim therefore fails as a matter of law and must be dismissed with prejudice.[6]

### 2. Whoisguard's speculative allegations that the specimens showed use that did not actually occur are insufficient to support a fraud claim as a matter of law.

Because Whoisguard cannot challenge the Examining Attorney's determination that Facebook's service mark specimens showed use of the FB Marks, Whoisguard's challenge to the specimens' sufficiency is limited to whether the specimens were fabricated. Opp. at 6–7; *see also Little Piggy*, 2004 WL 1701272, at *4 (dismissing fraud claim where opposer challenged sufficiency of specimen but not where "applicant is alleged to have outfoxed the Examining Attorney by fabricating a specimen"). However, Whoisguard has not alleged—and cannot allege consistent with the obligations imposed by Rule 11—sufficient

---

Attorney accepted the specimens to show use. 15 U.S.C. § 1064.

[6] Even if Whoisguard could challenge the sufficiency of the specimens, such a challenge would still fail as a matter of law. Whoisguard argues that the specimens fail to show the FB Marks in use with the sale or advertising of services because the specimens do not show that companies who use these services to promote their own goods are shown the FB Marks when these services are sold or advertised to them. Opp. at 10–11. Whoisguard is mistaken. *In re Metriplex Inc.*, 23 U.S.P.Q.2d 1315 (TTAB 1992) ("Although the specimens in these cases did not refer explicitly to the services identified in the respective applications, they were found to show use of the mark in the rendering, *i.e.*, sale, of the services."). Here, the specimens show the FB Marks on the same webpages where the services are being rendered and, under *Metriplex*, they are acceptable—just as the Examining Attorney determined. The Examining Attorney also found, contrary to Whoisguard's claim (Opp. at 11) that the specimens from FB Newswire webpages were acceptable to show use of the FB Marks. *Cf.* TMEP § 1109.07 ("The examining attorney will also determine whether the mark shown on the drawing [(*i.e.*, the mark shown in the application)] is a substantially exact representation of the mark as used on the specimen." (citations omitted)).

6

facts to show that the specimens were fabricated.

Rather, Whoisguard alleges and argues "the [website screenshot] specimens are also missing information such as a URL or browser tab, which are characteristics the USPTO views as indicia that a specimen may be a digitally created or altered mockup" and the URL "requirement was imposed as part of the USPTO's efforts to crack down on fraudulent specimens." Opp. at 11–12 & n.3. But it is undisputed that when Facebook submitted these specimens, the PTO did not require that a URL be shown. *See id.* at 12 n.3. Complying with the PTO requirements at the time of filing cannot constitute fraud.

Not surprisingly, Whoisguard has not alleged any facts nor cited any law to support its purported inference that Facebook's compliance with then-valid PTO requirements somehow indicates the specimens were digitally altered and thus fraudulent. To the contrary, "'[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, ***plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true***, in order to render plaintiffs' allegations plausible.'" *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (emphasis added) (citing *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (in turn quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007))). Here, Whoisguard has offered no facts to exclude the possibility that Facebook's specimens, which met PTO requirements when submitted and which were accepted by the PTO, were legitimate. Whoisguard's attack on the specimens' underlying use therefore cannot support its fraud claim, particularly given the heightened pleading requirements of Rule 9(b).

### 3. Filing a request for an extension of time to file a statement of use requires checking a box on a form, and the PTO has repeatedly stated doing so does not indicate non-use of the mark.

In its final fraud theory, Whoisguard asks the Court to infer nefarious activity from a common trademark prosecution practice. Because Facebook's statement of use for each

7

of the FB Marks alleged a date of first use of April 2014, and because Facebook filed requests for extensions of time to file each statement of use after that date, Whoisguard alleges: (1) that the FB Marks must not have actually been in use when each statement of use was filed, rendering the date of first use false and ultimately calling into question the specimens' validity (Countercl. ¶¶ 18–20, 64–65); and (2) Facebook was not making ongoing efforts in the form of "product or service research or development" or "market research" and thus somehow lacked a continuing bona fide intention to use the marks when filing the extensions (Opp. at 6). Both of these assertions are readily disposed.

With respect to filing extensions of time for a statement of use, the PTO has explained, "[i]f an applicant has asserted a 'continued bona fide intention to use the mark in commerce,' *it can be assumed* that either applicant has not yet made use of the mark in commerce on all of the goods specified in the notice of allowance, *or that even if use has already been made in commerce, an applicant may be uncertain as to whether that use is sufficient*. In either case, *applicant may seek an extension of time*." *In Re Schering-Plough*, 1992 WL 340752, at *3 (emphasis added).[7] Seeking an extension even though use has been made, therefore, does not constitute fraud.

As to the alleged misrepresentations concerning "product or service research or development" or "market research," this is yet another red herring. "The language of Section 2.89(d) [(requirements for extensions of time)] would suggest that an applicant should provide a detailed explanation and substantiation for its continued bona fide intent to use. *In actual practice, however, very terse explanations are commonly accepted by the USPTO, and are indeed facilitated by the online TEAS (Trademark Electronic Application System) form for filing* these extensions of time. Indeed, *the form has 'check*

---

[7] In fact, an applicant may state "*its bona fide intention to use the mark in commerce by declaring that it is, in fact, using the mark in commerce.*" *In re Trademark Application of Vitamin Beverage Corp.*, 37 U.S.P.Q.2d 1537, 1995 WL 805093, at *3 (Comm'r Pat. 1995) (emphasis added). Thus, an applicant who has used a mark "has surpassed the statutory requirements" of showing a continued bona fide intent to use the mark. *Id.*

8

*boxes' with pre-printed brief explanations derived from Section 2.89(d), such as 'market research' or 'promotional activities*.'" Sandra Edelman, *Proving Your Bona Fides– Establishing Bona Fide Intent to Use Under the U.S. Trademark (Lanham) Act*, 99 Trademark Rep. 763, 768–69 (2009).

Tellingly, Whoisguard does not cite a single case to support its argument that checking the boxes on the PTO's standard form constitutes a material misrepresentation, nor has Whoisguard alleged any facts to support its allegations that the stated reasons were untrue. Also, for any extensions granted after the April 2014 first use date, any "misstatement" would not have been material given that Facebook's use of the mark constituted a continued bona fide intent to use the mark as a matter of law. *Schering-Plough*, 1992 WL 340752, at *3; *Vitamin Beverage Corp.*, 1995 WL 805093 at *3.

Simply put, none of the facts alleged by Whoisguard suffices to state a fraud claim, and that claim therefore should be dismissed with prejudice.[8]

### B. The recent renewal of the FB Mark and allegations in the FACC refute any abandonment claim.

Facebook recently renewed Reg. No. 4,659,777 on December 22, 2020. This filing, on its face, shows Facebook's use and intent to continue using the FB Marks, and disproves the statutory requirement for abandonment that "use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Disregarding the import of Facebook's renewal, Whoisguard nevertheless filed the FACC twenty-two days later, asserting abandonment. Furthermore, the specimen (from Facebook's own Facebook page) and declaration of use were accepted by the PTO on February 13, 2021, eleven days before Whoisguard filed its Opposition ***challenging*** the same specimen as improper. Opp. at 16. A copy of the

---

[8] Whoisguard asserts that Facebook recently filed a new application for the FB Mark that contains overlapping or related services to the registrations at issue here. Opp. at 4. Again, Whoisguard cites no authority showing how this supports its fraud claim. And, as stated more fully above, because a trademark applicant may file an Intent To Use application for services already in use, the filing of the new application cannot support any inference of fraud as a matter of law.

9

specimen, renewal, and acceptance are attached as Exhibit A. Facebook requests that the Court take judicial notice of this public record under Fed. R. Evid. 201.

Courts hold that allegations that ignore commercial reality must be dismissed. *See, e.g.*, *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 & n.1 (1st Cir. 1999) (allegations of conspiracy that ignore commercial reality must be dismissed). Ignoring reality and applying an overly stringent reading of the rules is exactly what Whoisguard attempts to accomplish in its opposing papers. For example, after relying on Facebook's websites, such as its social media pages and Brand Resource Page, to support its claim for abandonment, Whoisguard now devotes much of its argument on abandonment seeking to block Facebook from relying on the very same evidence, which shows that the FB Marks are indeed in use and thus have not been abandoned. The reason for this is simple: the evidence demonstrates continuous use of the FB Marks, meaning the abandonment claim cannot stand and should be dismissed with prejudice.

The authority cited by Whoisguard actually supports Facebook's position. "The [incorporation by reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Such is the exact case here. *Id.* Moreover, incorporation by reference is proper when "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*

The FACC dedicates nearly five full pages to Facebook's Brand Resources website and Facebook's social media pages. Countercl. ¶¶ 39–53. In referring to these pages, Whoisguard makes allegations such as, "This is further indicia that Facebook is not using the alleged FB Mark[,]" and "The social media profile pictures identified by Facebook do not constitute a trademark use . . . ." *Id.* ¶¶ 42, 48. Furthermore, the FACC's Point Heading F on p. 39 states: "Facebook's Recent Uses of 'FB' Are Not Trademark Uses . . . ." Similarly, Whoisguard discusses the FB Mark specimens of use submitted to the PTO for nearly five full pages. *Id.* ¶¶ 18–29. Whoisguard cannot credibly contend that it has not

10

referred extensively to these documents or that they do not form a basis for its claims. Otherwise, there would be no reason for Whoisguard to discuss these documents in such great detail and at such great length.[9] *See Khoja*, 899 F.3d at 1004 (no abuse of discretion to incorporate by reference blog post from which plaintiff quoted page and a half).

As discussed extensively in Facebook's moving papers, Facebook's use of the FB Mark on Facebook's own Facebook page, which the Examining Attorney for the '777 renewal recently accepted, promotes the goods and services of others over the internet. For example, these pages include posts, with comments by users, events, and links to users' own customized web pages, and Internet-based social introductions and social networking services through Facebook's posts linking users to others and their stories, including bulletin board services transmitting message and photo sharing among registered users. Mot. at 7:15–8:17; *see Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) (recognizing incorporation by reference doctrine "applies with equal force to internet pages as it does to printed material"). In addition, Facebook continues to use the FB Mark on other social media platforms to advertise Facebook's services. Mot. at 8:18–9:2.

As evidenced in the very documents Whoisguard relies on to argue for abandonment, as well as the recent renewal of the '777 mark, the FB Marks have been continuously in use and Facebook has shown its intent to continue using the FB Marks. The abandonment claim therefore fails as a matter of law.

## III. CONCLUSION

Even after amending its counterclaim, Whoisguard has failed to state claims for fraud and abandonment. As such, the entire counterclaim should be dismissed with prejudice and without leave to amend.

---

[9] Whoisguard claims that these documents should not be incorporated by reference because the documents "merely create[] a defense to the well-pled allegations in the complaint, rather than forming the basis of the claim." (Opp. at 15, *citing Khoja*, 899 F.3d at 1002.) However, the *Khoja* court was referring to documents **not mentioned in the complaint**. *Id.* at 1002–03. Whoisguard's reliance on *Khoja* is misplaced.

11

| | |
|---|---|
| DATED: March 3, 2021 | TUCKER ELLIS LLP |
| | David J. Steele |
| | Howard A. Kroll |
| | Steven E. Lauridsen |
| | 515 South Flower Street |
| | Forty-Second Floor |
| | Los Angeles, CA 90071-2223 |
| | |
| | SNELL & WILMER L.L.P. |
| | |
| | By: s/ David G. Barker |
| | David G. Barker |
| | Jacob C. Jones |
| | One Arizona Center |
| | 400 E. Van Buren, Suite 1900 |
| | Phoenix, Arizona 85004-2202 |
| | |
| | Attorneys for Counterclaim Defendant, Facebook, Inc. |

12