**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendant Namecheap, Inc. and Defendant/Counterclaimant WhoisGuard, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>Defendants.<br><br>WhoisGuard, Inc., a Republic of Panama corporation,<br><br>Counterclaimant,<br><br>v.<br><br>Facebook, Inc., a Delaware corporation,<br><br>Counterclaim Defendant. | CASE NO. 2:20-cv-00470-GMS<br><br>**DECLARATION OF HILLAN KLEIN IN SUPPORT OF DEFENDANT NAMECHEAP, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE REGISTRAR'S CERTIFICATES; REQUEST FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**<br><br>(Oral Argument Requested) |

# DECLARATION OF HILLAN KLEIN

I, Hillan Klein, hereby declare:

1. I am the Chief Operating Officer of Namecheap, Inc. ("Namecheap"), Defendant in the above-captioned action. I have personal knowledge of the facts set forth in this declaration and if called upon to testify under oath, I could and would testify competently thereto.

2. I made this declaration in support of Namecheap's Response in Opposition to Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp, Inc.'s (collectively, "Plaintiffs") Motion to Enforce Registrar's Certificates; and Request for Sanctions Against Plaintiffs and Their Counsel.

3. On January 15, 2021 and February 22, 2021, I executed a Registrar's Certificate on behalf of Namecheap, lodging domains identified in Plaintiffs' First Amended Complaint ("FAC"), as well as allegedly infringing domains identified in the letters Plaintiffs' counsel sent Namecheap's counsel between November 14, 2020 and February 19, 2021. In these Certificates, I certified that the lodged domains have been placed on registrar lock, thus preventing them from being transferred, modified, or otherwise manipulated by customers who own those domains.

4. Namecheap voluntarily took this action in good faith in order to prevent the domain owners from transferring their domains to other domain registrars in an attempt to evade the Court's jurisdiction; and to demonstrate to the Court that Namecheap does not have an ownership interest in these domains.

5. While Namecheap can set a status code preventing *the customer* from deleting a domain, Namecheap lacks the ability to set a code to prevent a domain from expiring, even if it is under registrar locked. Namecheap also lacks the ability to set codes for expired domains that are pending deletion or that are no longer in its database. Only the domains' respective domain registries can keep set codes to keep a domain from expiring or to prevent expired domains from being deleted.

6. My representations to the Court in the Registrar's Certificates related to what

1

Namecheap could control. Therefore, when I certified that the lodged domains could not be transferred, I meant by *the customers*; and when I certified that the domains were within the Court's dominion it was for the period up until the expiration of the domains. If Plaintiffs wanted to prevent the domains from expiring and to remained locked, they simply needed to follow the Uniform Domain-Name Dispute Resolution Policy ("UDRP") process as described below.

7. Under the established process in UDRP proceedings, a party claiming that a domain has been infringed will typically open an account with registrar for that domain, and deposit renewal fees to keep the domain locked and from expiring during the course of the dispute. If the UDRP panel issues a decision in favor of the claimant, then the domain registrar transfers the domain into the account that paid the renewal fees.

8. David Steele, counsel of record for Plaintiffs in this action, has employed this procedure with Namecheap. The law firm Tucker Ellis LLP, of which Mr. Steele is a partner, currently maintains an account with Namecheap which Mr. Steele has used to manage domains for his clients by depositing renewal fees for disputed domains.

9. Namecheap treated the lodged domains as it would with a UDRP proceeding, by applying a registrar lock, and expecting Plaintiffs to pay the renewal fees while the domains were in dispute.

10. On March 4, 2021 Namecheap announced that it was changing its privacy service from WhoisGuard, Inc. ("WhoisGuard") to Withheld for Privacy ("WFP").

11. WhoisGuard acts as a ***proxy*** to its customers by appearing as the registered domain name-holder and providing its contact information in public WHOIS records for those domains, in place of that of the customers. WFP acts as a ***privacy service*** such that the customers appear as the registered domain name-holders but with WFP's contact information in place of the registrants' home addresses and phone numbers. In both instances, it is the customers that own and control the domains, not WhoisGuard or WFP or even Namecheap.

12. Namecheap specifically made sure that all of the domains lodged with the

1  Court would be unaffected by the change in privacy services. As such, none of the lodged
2  domains have been or will be impacted by this change and all will remain with
3  WhoisGuard's proxy service during the pendency of this litigation.
4      13.   Pursuant to Plaintiffs' counsel's request, on or before March 12, 2021
5  Namecheap prepared a spreadsheet demonstrating that the specific registrar codes
6  requested by Plaintiffs had been set for all lodged and disputed domains, where possible.
7      14.   If certain status codes such as "inactive," "serverHold," and "clientHold"
8  were set for the lodged domains, it would have disabled Namecheap's customers' ability to
9  use the domains, which would go beyond simply locking the domains to prevent
10 cyberflight. As such, Namecheap did not set those codes for the disputed domains.
11     15.   The cost to renew each expiring domain is minimal, for example, $12.98 for
12 a ".com" domain.
13     I declare under the laws of the United States of America that the foregoing is true
15 and correct.
16     Executed on April 5, 2021 in Dallas, Texas.

ROME & ASSOCIATES, A.P.C.

By:  *s/ Eugene Rome*
  Eugene Rome
  Sridavi Ganesan
  Brianna Dahlberg

FENNEMORE CRAIG, P.C.

 *s/ Mario C. Vasta*
Ray K. Harris
Mario C. Vasta

Attorneys for Defendants
Namecheap, Inc. and Whoisguard, Inc.

Hillan Klein