**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:   310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendant Namecheap, Inc. and Defendant/Counterclaimant WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>　　　　　　Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**DECLARATION OF EUGENE ROME IN SUPPORT OF DEFENDANT NAMECHEAP, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE REGISTRAR'S CERTIFICATES; REQUEST FOR SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL**<br><br>(Oral Argument Requested) |
| WhoisGuard, Inc., a Republic of Panama corporation,<br><br>　　　　　　Counterclaimant,<br><br>　　v.<br><br>Facebook, Inc., a Delaware corporation,<br><br>　　　　　　Counterclaim Defendant. | |

# DECLARATION OF EUGENE ROME

I, Eugene Rome, hereby declare:

1. I am counsel of record of Defendant Namecheap, Inc. ("Namecheap"), Defendant in the above-captioned action. I have personal knowledge of the facts set forth in this declaration and if called upon to testify under oath, I could and would testify competently thereto.

2. I made this declaration in support of Namecheap's Response in Opposition to Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp, Inc.'s (collectively, "Plaintiffs") Motion to Enforce Registrar's Certificates; and Request for Sanctions Against Plaintiffs and Their Counsel.

3. On November 14, 2020, Plaintiffs' counsel sent a letter to Namecheap and Defendant WhoisGuard, Inc.'s (collectively, "Defendants") counsel identifying 285 allegedly infringing domain names. Two days later, Plaintiffs' counsel sent a letter "on behalf of Facebook, Inc." identifying an additional domain alleged to infringe Facebook's OCULUS trademark. On November 22, 2020, Plaintiffs' counsel sent a letter identifying an additional domain alleged to infringe Facebook's MESSENGER trademark. On November 28, 2020, Plaintiffs' counsel sent a letter on behalf of Plaintiffs as well as Facebook Technologies, LLC, identifying an additional 146 disputed domain names. On December 3, 2020 and December 5, 2020, Plaintiffs identified an additional 28 and 731 disputed domain names, respectively. In each of their letters, Plaintiffs demanded that Defendants' counsel disclose the customers identify and contact information pursuant to Section 3.7.7.3 of Namecheap's Registrar Accreditation Agreement ("RAA") with ICANN. True and correct copies of these letters from Plaintiffs' counsel are attached hereto as Exhibit "A" and incorporated herein by reference.[1]  Defendants complied and disclosed the

---

[1] Exhibit "A" is, in full form, 1241 pages.  Exhibit "A" to this November 14, 2020 letter identifies 285 domain names at issue.  Exhibit "B" to the letter includes the complete WHOIS output for each of the 285 domains.  In the interest of keeping the exhibit short and manageable, only the first 2 pages of Exhibit "B" to the letter are being included for

1

customer information.

4. On December 16, 2020, Plaintiffs' counsel sent Defendants' counsel a letter identifying an additional 190 allegedly infringing domain names. A true and correct copy of this letter from Plaintiffs' counsel is attached hereto as Exhibit "B" and incorporated herein by reference. Again, Defendants disclosed the customer information.

5. On February 9, 2021, Plaintiffs sent Defendants a letter identifying an additional 356 disputed domains. On February 23, March 11 and 15, Plaintiffs identified an additional 1, 67, and 103 domains, respectively, that it claimed was infringing. True and correct copies of these letters from Plaintiffs' counsel are attached hereto as Exhibit "C" and incorporated herein by reference. As before, Defendants responded by disclosing the customer information.

6. In each of these instances, Defendants provided the information in good faith despite Plaintiffs' complete failure to offer *any* "reasonable evidence of actionable harm" caused by the customers' wrongful use of the domain names. Rather, Plaintiffs' letters simply state that Plaintiffs own trademarks and, in Plaintiffs' view, the subject domains infringe them. Given that the practical effect the Court's Order regarding the motion to dismiss placed Defendants in a position where, at least for the time, they remained exposed to Plaintiffs' claims, Defendants complied with Plaintiffs' requests for customer information.

7. On March 10, 2021, Plaintiffs sent another letter disclosing an additional 543 domains unrelated to Plaintiffs' trademarks, which Plaintiffs asserted had been used in a malware attack. Namecheap immediately investigated the issue, confirmed all of the domains with Namecheap were already suspended and/or were inactive, and disclosed to

---

the Court's reference. These complete WHOIS outputs for subsequent Exhibits "B" and "C" to this declaration, consisting of letters dated December 16, 2020, February 9, 2021, February 23, 2021, March 11, 2021 and March 15, 2021 are eliminated entirely for brevity. The content of the presented WHOIS outputs is not disputed. Of course, should the Court desire review of the entire letters, Defendants will lodge them or otherwise deliver them to the Court.

2

1  Plaintiffs the current customer information in its possession (many of the domains were
2  actually registered with other registrars, not Namecheap).

3        8.      On January 26, 2021, the parties held a meet and confer conference on
4  Facebook's motion to dismiss WhoisGuard's First Amended Counterclaim. David Steele,
5  counsel of record for Plaintiffs in this action, was in attendance for that meeting. During
6  the call, Plaintiffs' counsel indicated that they had "several issues" regarding the
7  Registrar's Certificates lodged by Namecheap, but was not clear as to what the issues were,
8  or which domains were impacted.[2] We invited Plaintiffs' counsel to identify their issues in
9  writing along with a specification of the locked domains at issue.

10        9.      After hearing nothing for approximately one week, Brianna Dahlberg, an
11  associate at my firm and also counsel of record in this action, sent a follow up email on
12  February 1, 2021 to Plaintiffs' counsel, again inviting them to identify their concerns.
13  Attached hereto and incorporated herein by reference was Exhibit "D" is a true and correct
14  copy of this email from Ms. Dahlberg.

15        10.      On February 25, Mr. Steele finally responded to Ms. Dahlberg's February 1
16  email by alleging, without identifying the domains at issue, that "a number of domains that
17  were lodged with the Court were not properly locked and were allowed to expire," that
18  "some were not locked to prevent transfer to other registrars, and some were disabled but
19  others were not." Mr. Steele requested that Defendants enter into a proposed stipulation
20  requiring the _**registries**_ (*i.e.*, not Namecheap) to set the server status code which would
21  prevent the disputed domains from expiring (among other codes). Attached hereto and
22  incorporated herein by reference as Exhibit "E" and "F" are true and correct copies of Mr.
23  Steele's February 25 email and proposed stipulation attached to that email, respectively.

24        11.      On March 2, 2021, Ms. Dahlberg responded that Namecheap would agree to
25  confirm that Plaintiffs' requested registrar lock codes were set for all disputed domains

---

[2] The singaporepools.online domain is mentioned in an Exhibit to the FAC but on the parties' call, Plaintiffs confirmed that it is not at issue in this case.

3

1 identified in the proposed stipulation but objected to setting codes that would disable the
2 customers' websites for all disputed domains.[3] Ms. Dahlberg further informed Mr. Steele
3 that if Plaintiffs intended to move the Court for an order requiring the registries to set
4 codes, Namecheap would not oppose the motion so long as it imposed no additional
5 obligations on Namecheap, and Namecheap customer websites would not be disabled.
6 Attached hereto and incorporated herein by reference as Exhibit "G" is a true and correct
7 copy of this March 2 email.[4]

8     12.    Also, in her March 2, 2021 email, Ms. Dahlberg informed Mr. Steele that if a
9 locked domain is expiring and Plaintiffs wished to keep it locked to prevent it from being
10 deleted by the domain registry, Plaintiffs should follow the established process that applies
11 in Uniform Domain-Name Dispute Resolution Policy ("UDRP") disputes. That process
12 would require Plaintiffs to open an account with Namecheap and deposit the renewal fees
13 for the domain.

14     13.    Pursuant to Plaintiffs' counsel's request, on March 12, Ms. Dahlberg emailed
15 to Mr. Steele a spreadsheet prepared by Namecheap demonstrating that the specific
16 registrar codes requested by Plaintiffs had been set for all disputed domains, where
17 possible.  In this email, Defendants also, again, requested that if Plaintiffs believed
18 Namecheap had overlooked any domains, they should simply let Defendants know.
19 Attached hereto and incorporated herein as Exhibit "H" is a true and correct copy of this
20 email.  Mr. Steele never sent a response.

21     14.    Also, in her March 12 email, Ms. Dahlberg reminded Mr. Steele of the

---

[3] Namecheap had already set the registrar code disabling use of the domains ("clientHold") for all domains that engaged in phishing or other abuse—in many cases, prior to receipt of any notice from Plaintiffs about the domains.

[4] Several of the status codes in Plaintiffs' proposed stipulation ("inactive," "serverHold," and "clientHold") would have caused the customers' ability to use the domains to be disabled, which goes beyond locking the domains to prevent cyberflight. There has not been any adjudication of the merits of Plaintiffs' claims to date, and Plaintiffs' proposal would terminate services to customers who may well be using the domains for legitimate purposes.

4

1  domain expiration issue and Namecheap's proposed resolution. Mr. Steele never provided
2  any response or comment to this issue both times it was raised.

3    15.    In March 2021, Namecheap received notice of decisions of UDRP
4  proceedings filed by Plaintiff WhatsApp Inc. ("WhatsApp") concerning two disputed
5  domains identified in Plaintiffs' infringement letters. WhatsApp is represented by Hogan
6  Lovells in the UDRP proceedings. The UDRP panels ruled that the two domains should be
7  transferred to WhatsApp. However, those domains are presently locked and included in
8  the Registrar's Certificates lodged with this case, preventing Namecheap from transferring
9  them.

10    16.    On March 18, 2021, I emailed WhatsApp's UDRP counsel, Jane Seager, and
11  cc'ed Mr. Steele, attaching the two UDRP decisions, and explaining why the domains
12  could not be transferred at that time. To resolve this problem, I suggested that the parties
13  enter into a stipulation for the transfer of the two domains to WhatsApp. Mr. Steele
14  responded that he would get back to me on the issue, but never did. Attached hereto and
15  incorporated herein by reference as Exhibit "I" is a true and correct copy of this email
16  exchange.

17    17.    Plaintiffs' Motion to Enforce Registrar's Certificates filed after my March 18
18  email exchange with Mr. Steele was the first time Mr. Steele or any of Plaintiffs' counsel
19  complained that the Registrar's Certificates lodged by Namecheap with the Court should
20  not have included the domains identified in Plaintiffs' letters attached as Exhibits A
21  through C hereto, or that those domains were not at issue in this case.

22    18.    On March 25, I wrote again to Ms. Seager and Mr. Steele to follow up on my
23  March 18 email about the proposed stipulation to transfer the domains subject to the UDRP
24  actions to WhatsApp. Mr. Steele responded that Plaintiffs would only agree to Defendants'
25  proposed stipulation if the Court denied Plaintiffs' Motion to Enforce. Attached hereto and
26  incorporated herein by reference as Exhibit "J" is a true and correct copy of this email
27  exchange with Mr. Steele.

28    19.    Plaintiffs have argued in their Motion that Namecheap has transferred the

lodged domains from WhoisGuard to Namecheap's new privacy service, Withheld for Privacy ("WFP"). However, the public WHOIS records for these domains show that WhoisGuard remains the proxy service and the registrant for these domains. Attached hereto and incorporated herein by reference as Exhibit "K" are true and correct copies of the public WHOIS records of a sample set of 20 of the lodged domains.

20. David Steele is the attorney of record for Plaintiffs in this action. Per his profile on his firm's website, Mr. Steele has extensive experience handling cybersquatting claims and trademark infringement claims on behalf of his clients that involve the transfer of domain names, and he lists as one of his service areas "Internet law and domain names". His profile also demonstrates his experience with ICANN administrative proceedings and his 20 years career teaching as an adjunct professor at Loyola Law School. Attached hereto and incorporated herein by reference as Exhibit "L" is a true and correct copy of Mr. Steele's profile located at Tucker Ellis LLP's website, as I saw it on April 6, 2021.

I declare under the laws of the United States of America that the foregoing is true and correct.

Executed on April 6, 2021 in Los Angeles, California.

_____
Eugene Rome