SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Facebook, Inc., Instagram, LLC and
WhatsApp Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV-20-470-PHX-GMS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE LODGING OF REGISTRAR'S CERTIFICATES**<br><br>(Oral Argument Requested) |

# I. INTRODUCTION

Plaintiffs' Motion to Enforce Lodging of Registrar's Certificates (ECF No. 88) merely seeks to enforce the terms of the Registrar's Certificates that Namecheap drafted and voluntarily lodged with the Court. Yet, Namecheap filed a 17-page Opposition in an attempt to distract from Namecheap's failure to adhere to the sworn statements of its COO and obligations to this Court. In the Registrar's Certificates, Namecheap's COO swore under penalty of perjury that Namecheap took actions that would "prevent[] the Domain Names from being transferred, modified, or otherwise managed or manipulated" and that "the Domain Names should be construed to be under the dominion and control of the Court until such time as Namecheap receives further instruction with regard to the Domain Names." (Registrar's Certificates ¶¶ 3, 5 (ECF Nos. 71 at 4, 81 at 4).) After Plaintiffs independently determined that Namecheap was permitting Domain Names to expire and leave the Court's dominion and control, Namecheap refused to take corrective action and instead attempted to shift its responsibility for maintaining the Domain Names to Plaintiffs. When it became clear that Namecheap would not take the necessary corrective action, Plaintiffs filed their Motion.

In its Opposition, Namecheap has attempted to backtrack from misleading representations made to the Court and qualify its commitments to the Court by inserting previously undisclosed limitations on Namecheap's self-professed "good faith" efforts to place the lodged Domain Names under the Court's control. Namecheap also casts aspersions on Plaintiffs and their counsel for simply bringing Namecheap's actions to the Court's attention so that corrective measures can be taken. The Court should grant Plaintiffs' Motion, enter the Proposed Order to enforce the Registrar's Certificates, deny Namecheap's frivolous sanctions request, and award Plaintiffs their attorneys' fees.

# II. ARGUMENT

## A. Namecheap willfully violated its own Registrar's Certificates.

Namecheap's COO, Hillan Klein, declared in the Registrar's Certificates that Namecheap "placed the Domain Names on registrar lock, thus preventing the Domain

1

Names from being transferred, modified, or otherwise managed or manipulated"; that Namecheap would "not modify the status of the Domain Names unless and until instructed to do so by Order of the Court in the instant case"; and that "the Domain Names should be construed to be under the dominion and control of the Court *until such time as Namecheap receives further instruction with regard to the Domain Names*." (ECF No. 71 at p.4, ¶¶ 3–5; ECF No. 81 at p.4, ¶¶ 3–5 (emphasis added).) After Plaintiffs informed Namecheap that Domain Names were expiring and provided a proposed stipulation to properly lock the lodged Domain Names and prevent further deletions, Namecheap refused to take corrective action, brazenly stating that "Namecheap bears no responsibility for tracking expiration or paying for renewal of domains during the lock period." (Steele Decl. ¶ 7 (ECF No. 88-1).)

Now that Plaintiffs seek Court intervention to properly lock the Domain Names, Namecheap and Mr. Klein seek to qualify and recast what the clear language of their prior sworn statements supposedly ***really meant***. Namecheap and Mr. Klein insist that when they pledged that "Namecheap has placed the Domain Names on registrar lock, thus preventing the Domain Names from being transferred, modified, or otherwise managed or manipulated" (Registrar's Certificates ¶ 3), what they ***really meant*** was that the Domain Names were only prevented "from being transferred, modified, or otherwise manipulated *by customers who own those domains*." (Klein Decl. ¶¶ 3, 6 (ECF No. 93-1 at ¶ 3) (emphasis added); Opp. 3:12–14, 4:10–12, 10:15–17, 11:25–27.) And when they promised the Court that "the Domain Names should be construed to be under the dominion and control of the Court until such time as Namecheap receives further instruction with regard to the Domain Names" (Registrar's Certificates ¶ 5), what they ***really meant*** was that the Domain Names could be considered to be under the Court's dominion and control only "*for the period up until the expiration of the domains*." (Klein Decl. ¶ 6 (emphasis added); Opp. 11:27–12:1.)

This is not what Namecheap pledged to the Court. Namecheap never disclosed that the Domain Names could (and would) be transferred, modified, or manipulated if they

2

expired or that Namecheap was permitting the lodged Domain Names to expire. Nor did Namecheap advise the Court when lodged Domain Names would expire, thus leaving the Court's dominion and control ineffectual and impotent.

### B. Namecheap attempts to shift its obligations to Plaintiffs.

Namecheap offers no explanation for its failure to abide by the terms of obligations it voluntarily undertook. Rather, Namecheap argues that it has no responsibility to maintain Domain Names it placed under the Court's control by ensuring they did not expire (thus leaving the Court's control). (Opp. 10:21–24.) Instead, Namecheap asserts that Plaintiffs should monitor which domain names were set to expire, open an account with Namecheap, and ***pay Namecheap*** registration fees (at a profit to Namecheap) to ensure the Domain Names do not expire (Klein Decl. ¶ 6; Opp. 4:18–5:1, 10:21–24, Steele Decl. ¶ 7.) But nowhere in the Registrar's Certificates is this proposition disclosed to the Court. Nor have Plaintiffs agreed that ***Plaintiffs*** will bear responsibility for maintaining the Domain Names.[1] Plaintiffs' Motion merely asks that Namecheap follow through on the obligations it voluntarily undertook.

Namecheap repeatedly states that it lodged the Registrar's Certificates with the Court voluntarily (Opp. 1:6, 1:27, 3:13, 8:17, 8:20, 11:15, 14:10, 17:10). This, however, may not have been an altruistic endeavor by Namecheap. Rather, Namecheap is likely trying to claim some protection under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114(2)(D)(i)(II)(aa), which provides that a registrar may be subject to injunctive relief if the registrar has "not expeditiously deposited with a court,

---

[1] Namecheap asserts that Plaintiffs must pay Namecheap to preserve Domain Names that Namecheap certified were under the Court's control because this is the procedure available in Uniform Domain Name Dispute Resolution Policy ("UDRP") proceedings. (Opp. 4:18–5:5, 10:21–24, 11:6–8, 16:22–17:1.) But Plaintiffs did not bring a UDRP proceeding to enforce their rights with respect to any of the domain names in the FAC. Namecheap cannot unilaterally elect to follow UDRP procedures in this federal court proceeding when it suits them. Moreover, forcing Plaintiffs to create a Namecheap user account and pay to register expiring lodged Domain Names would potentially implicate the terms of the Namecheap Registration Agreement against Plaintiffs, including the indemnification and hold harmless provisions. (ECF No. 1-2 at 6 ("8. Threatened legal action(s)".)

3

in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name." However, this section of the ACPA does not apply here because Namecheap waited over ten months after this case was filed before lodging a registrar's certificate and, as explained below: (a) failed to preserve the Domain Names it deposited with the Court from expiring; (b) refused to deactivate domain names, allowing them to continue to be used; and (c) lodged Domain Names that are not part of the action.

### C. Namecheap can control whether Domain Names expire.[2]

Namecheap argues it would be unfair to enforce its Registrar's Certificates (Opp. 11:3–12:5) because Namecheap cannot set registry codes (Opp. 1:10–12, 4:10–15, 10:18–20, 11:23–24), and would have to pay to maintain registrations (Opp. 11:3–6, 11:12–18).[3] Contrary to these assertions (Opp. 1:10, 10:10, 11:23–27, 17:8), Namecheap *does* control whether Domain Names expire; it is simply choosing not to do so. Furthermore, there is nothing unfair or unjust (Opp. 11:3–18) about holding Namecheap to its voluntarily undertaken commitments to the Court. And there is no logic to Namecheap's argument that it cannot be held to the terms of its own Registrar's Certificates. (Opp. 1:18, 8:19–9:4); *see Globalsantafe Corp. v. Globalsantafe.Com*, 250 F. Supp. 2d 610, 622 (E.D. Va. 2003) (holding registrar in breach of its duties under registrar certificate for failing to

---

[2] Mr. Klein states that his "representations to the Court . . . related to what Namecheap could control." (Klein Decl. ¶ 6.) As explained below, however, Namecheap has the authority to preserve expiring Domain Names.

[3] Namecheap also suggests Plaintiffs should have to pay Namecheap for each lodged Domain Name because Plaintiffs "are the ones claiming ownership of the domains and/or the right to prevent their use by others, so it is only fair that they should pay for the renewal fees." (Opp. 11:4–6.) But Plaintiffs are not claiming ownership of the domain names in the FAC. They are seeking to enforce their trademark rights with respect to the domain names. And while Plaintiffs may seek transfer as a remedy, they would then have control over the domain names, including the right to transfer them to another registrar and to prevent harmful content being hosted at the Domain Names.

transfer domain name pursuant to court order); *id.* at 617 n.16 (holding registrar bound by promises contained in registrar certificate).

### 1. Namecheap has authority to renew domain names.

While Namecheap places great weight on the fact that it cannot directly set registry codes because it is a registrar (Opp. 1:10–12, 4:10–15, 10:10–20, 11:23–27), this misleading argument ignores that (a) Namecheap has the power to ***maintain*** the registration of the Domain Names and (b) Plaintiffs only ask for an order requiring the ***registries*** to set appropriate codes to prevent expiration.[4] Indeed, Namecheap's own Registration Agreement grants Namecheap extensive rights for handling domain names upon expiration. (Registration Agreement § 23, ECF No. 56-2 at 13–14.) The Registration Agreement specifically grants Namecheap the right to "pay the registry's registration fee or otherwise provide for the registration services to be continued." *Id.* Thus, maintaining the registrations and preventing the lodged domain names from expiring is ***not*** outside of Namecheap's power and control. Instead, Namecheap simply chose not to do so. Namecheap also expressly reserves the power to fully control customer accounts and transfer domain name registrations "for any reason (as determined by Namecheap in its sole and absolute discretion)" including "to defend any legal action or threatened legal action . . . or . . . to avoid any civil or criminal liability on the part of Namecheap." *Id.* § 28 (ECF No. 56-2). Namecheap is not powerless to maintain registrations to keep the Domain Names under the Court's dominion and control.

### 2. Namecheap instructs registries which Domain Names to delete.

Namecheap's argument that it cannot set registry codes (*e.g.*, Klein Decl. ¶ 5) is also deceptive. The default protocol for most top level domain names, including for .com, is that domain names are automatically renewed and that the registrar must take the

---

[4] Namecheap notes that if Plaintiffs promised not to impose additional obligations on Namecheap (such as paying to maintain registrations) and not to seek to disable websites infringing Plaintiffs' trademarks, Namecheap would not oppose a motion ordering registries to set codes (Opp. 7:23–8:4.) These conditions were not acceptable to Plaintiffs.

5

affirmative step of executing a delete code to the registry in order to actually delete an expiring domain name.[5] That is, if the registrar does nothing, the domain name automatically renews (and the registrar is charged). For example, for each expiring .com Lodged Domain Name that expired, Namecheap *affirmatively* instructed the registry to delete the expiring Domain Name.

Namecheap can prevent lodged Domain Names from expiring but affirmatively *chooses* not to do so. Tellingly, even Namecheap's COO admits that the "cost to renew each expiring domain name is minimal." (Klein Decl. ¶ 15.) Namecheap ignored its representations to the Court and chose not to pay to renew these domain names because it did not find it fair. (Opp. 11:3–18.)

**D.   Namecheap did not set the registrar codes requested by Plaintiffs.**

Plaintiffs requested that Namecheap set the "clientHold" registrar code to prevent the Domain Names from being used for infringing and abusive purposes. But contrary to Namecheap's assertions, it did not set the "clientHold" code for all lodged Domain Names.[6] On March 2, 2021, Namecheap's counsel indicated that Namecheap agreed to confirm setting the "clientHold" status code, which would have made the Domain Names inactive. (Supplemental Declaration of David J. Steele ("Supp. Steele Decl") ¶ 2, attached hereto as Exhibit A.) However, the following day, Namecheap's counsel backed away from this commitment and stated that "clientHold" "only applies to domains that have been suspended, rather than all domains that have been locked." *Id.* at ¶ 3. In another email later that day, she stated she was still "waiting on additional information from the client on whether the 'clientHold' code applies to all domains." *Id.* On March 12, Namecheap's counsel confirmed its changed position on the "clientHold" code and that

---

[5] *See* .com Registry Agreement Appendix 7, at 3. Grace period policy, available at https://www.icann.org/en/registry-agreements/com/com-registry-agreement-appendix-7-1-12-2012-en.

[6] Namecheap states that it "already set the specific codes Plaintiffs request in their Motion, where possible." (Opp. 1 26–27; *see also id.* at 7:3–8:11.) By "where possible," Namecheap means that it would not disable the websites hosted on the Domain Names unless Namecheap subjectively decided the websites should be disabled. *Id.* at 8:3–4.

6

Namecheap would not set that code for a domain name that was not already suspended or expired. (Rome Decl. Ex. H (ECF No. 93-10) at 2.) Thus Namecheap did not set the codes that Plaintiffs requested, or even all of the codes immediately within Namecheap's control to prevent the Domain Names from being used.

### E. Namecheap included in the Registrar's Certificates Domain Names that are not included in the FAC.

The ACPA allows a registrar to deposit with a court "documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name." 15 U.S.C. § 1114(2)(D)(i)(II)(aa). However, this provision only applies in an action that "has been filed regarding the disposition of the domain name." *Id.* Contrary to this provision, Namecheap deposited with the court domain names that ***are not part of the FAC***; thus, the "disposition" of those Domain Names is not before the Court. For example, Namecheap deposited domain names that infringe the OCULUS trademark, even though the OCULUS trademark and its owner, Facebook Technologies, LLC, are not even involved in this case.

Making matters worse, when Namecheap lodged with the Court Domain Names not in the FAC, Plaintiffs' efforts to pursue separate UDRP actions to deactivate and recover the Domain Names were frustrated for two reasons. First, because Namecheap must inform UDRP providers that Domain Names are locked due to the lodging, continued UDRP proceedings will be hindered. Second, even when Plaintiffs would prevail in a UDRP case, the transfer was prohibited due to the lodging in this Court. (Supp. Steele Decl. ¶ 4.)[7] Namecheap's locking of Domain Names not listed in the FAC therefore impeded Plaintiffs' efforts to recover domain names. (*See* Opp. 6:5–9.)

---

[7] Namecheap offered to stipulate to remove Domain Names from the Registrar Certificate after this issue came to light. But Plaintiffs' counsel explained to Namecheap's counsel that Plaintiffs sought a more permanent solution than multiple stipulations with the Court to remove Domain Names not even in the FAC. Specifically, Plaintiffs' counsel explained: "Plaintiffs' proposed solution (which we appreciate you disagree with) will obviate the need to handle additional domain names by stipulation on a domain by domain basis." (Supp. Steele Decl. ¶ 5.)

7

When Namecheap changed its position and refused to set the clientHold registrar code and to prevent deletion of all of the Domain Names on the Registrar's Certificates unless Plaintiffs paid Namecheap, Namecheap's new position was not acceptable to Plaintiffs because it impeded Plaintiffs' current trademark enforcement strategy for certain Domain Names. (*See* Opp. 6:10–19; Supp. Steele Decl. ¶ 6.) Since Namecheap refused to set the clientHold registrar code as originally promised, and Namecheap refused to stop permitting domain names to expire, Plaintiffs included in their Motion a request to revise the Registrar's Certificates to only include domain names listed in the FAC. (Supp. Steele Decl. ¶ 7.)[8]

### F. Plaintiffs' Motion does not seek Namecheap's private customer information.

Namecheap asserts that Plaintiffs' Motion to enforce the Registrar's Certificates is a subterfuge to obtain all of Namecheap's private customer information (Opp. 1:14–20, 9:6–12, 14:1–8, 17–20). Namecheap is wrong. Rather, Plaintiffs' Motion seeks only ***publicly-available*** WHOIS information. Currently, Namecheap restricts Plaintiffs from accessing this information making it difficult for Plaintiffs to monitor the status of domain names, including discovering whether Namecheap is letting lodged Domain Names expire and leave the Court's dominion and control. (Supp. Steele Decl. ¶ 8.) In meet and confer emails, Mr. Steele made this point clear to Namecheap's counsel, requesting that after Namecheap set the requested codes, "we would like to have Namecheap prepare a similar spreadsheet—since Namecheap and the registries block and restrict whois lookups it is a real pain for us to pull these codes (and it's trivial for Namecheap to do so)." (Supp. Steele Decl. ¶ 9.)

Namecheap suggests there is some "private" WHOIS database that contains

---

[8] Mr. Rome's March 25 email (Opp. 6:20–23) suggesting Plaintiffs never responded to his proposed stipulation is unfounded. As Mr. Rome was aware, Plaintiffs had already filed their Motion to resolve the domain name deletion issue and the interferences of UDRP enforcement efforts caused by Namecheap's failure to disable lodged Domain Names.

8

customers' private information. But Namecheap clearly understands that Plaintiffs were referring to the public WHOIS Records, as Namecheap separately acknowledges this database in its Opposition to argue a different point. (Opp. 7:1–2, 10:4–5, 16:17–19.) As ICANN explains, "[t]he WHOIS service is a free, *publicly available directory* containing the contact *and technical information* of registered domain name registrants."[9] *Id.* Plaintiffs requested "unrestricted access to query Namecheap's *WHOIS* records *so that Plaintiffs may ensure compliance with the Court's order* going forward" (Mot. 7:16–17 (emphasis added)). There should be no confusion that Plaintiffs were seeking only unrestricted access to query already *publicly available* WHOIS records. This information does not include private customer information covered by RAA § 3.7.7.3, which Namecheap readily admits it has now begun providing to Plaintiffs when requested. (Opp. 2:26–3:2.)[10]

### G. Namecheap publicly announced it would transfer all domain names registered by Whoisguard to Withheld For Privacy.

Namecheap's website announcement states that it had "decided to **switch** domain privacy service providers **from** WhoisGuard to Withheld for Privacy." (Steele Decl. Ex. 6 at 1 (ECF No. 88-7 at 2) (emphasis added).) It further represented to the public that "***Any*** domains covered by WhoisGuard, will be protected by Withheld for Privacy," (*id.* at 2

---

[9] ICANN, *WHOIS Primer* at 1. Introduction to WHOIS, available at https://whois.icann.org/en/primer (emphasis added); *see also* ICANN, *FAQs: Domain Name Registrant Contact Information and ICANN's WHOIS Data Reminder Policy (WDRP)*, available at https://www.icann.org/resources/pages/faqs-f0-2012-02-25-en (explaining that contact information associated with a domain name registration "may be made publicly available in the Registration Data Directory Service (also commonly known as the WHOIS . . . database" and that the WHOIS database is "similar to a to a traditional telephone directory or book").

[10] Moreover, providing unrestricted access to public WHOIS data is wholly consistent with privacy and proxy services. *See WHOIS Primer*, *supra* n.9, at *3. WHOIS Requirements* (explaining under "Access" that registrars must make WHOIS data publicly available in a specific format, including specific identification, contact and technical information, but making clear under "Privacy/Proxy Services" that other reliable contact information may be listed when a privacy or proxy service is used). This means that for customers using the WhoisGuard service, Whoisguard's information would appear instead of the customer's.

9

(emphasis added)) and that Namecheap "will have ***switched*** domain privacy providers by March 17th, 2021," (*id.* at 5 (emphasis added)). Because Namecheap announced that ***any*** domain names—without exception—using Whoisguard (which includes all of the lodged Domain Names) ***would be switched*** to Withheld For Privacy, Plaintiffs and the Court could reasonably take Namecheap at its word.

### H. Namecheap is not entitled to sanctions.

Namecheap has failed to honor the commitments it made in the Registrar's Certificates. Because Plaintiffs raised this issue before the Court, Namecheap now seeks sanctions against Plaintiffs under 28 U.S.C. § 1927 and the court's inherent authority. Section 1927 sanctions require Namecheap to demonstrate that Plaintiffs acted with "subjective bad faith, which is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *BKB v. Maui Police Dept.*, 276 F. 3d 1091, 1107 (9th Cir. 2002) (internal quotation marks omitted) (quoting *In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir.1996)). To impose sanctions under its inherent authority, the Court must find "bad faith or conduct tantamount to bad faith." *Id.* at 1108 (citing *Fink v. Gomez*, 239 F. 3d 989, 994 (9th Cir. 2001)).

As explained above, Plaintiffs' Motion is entirely meritorious. Namecheap allowed lodged Domain Names to expire. After Plaintiffs raised this with Namecheap, Namecheap refused to adequately lock lodged Domain Names, reversed itself on applying the "clientHold" status code, and remarkably continues to allow lodged Domain Names to expire. Despite the propriety of Plaintiffs' Motion to advance legitimate interests, Namecheap devotes significant energy to baseless accusations against Plaintiffs and their counsel to argue for sanctions. Each is addressed below, in turn.

***First***, Plaintiffs considered adding the domain names identified in Plaintiffs' letters to the operative complaint. But when Namecheap changed its position and refused to set the clientHold registrar code and made clear it would not prevent expiration of lodged Domain Names, Namecheap's new position was not acceptable to Plaintiffs because it

impeded Plaintiffs' current trademark enforcement strategy for certain Domain Names.

***Second***, Plaintiffs could not be expected to guess that Namecheap's announcement, that it would switch all domain names covered by Whoisguard to Withheld for Privacy, excluded the lodged Domain Names. Namecheap's announcement did not contain any limitations and Namecheap failed to notify Plaintiffs or the Court that the announced change would not apply to the lodged Domain Names. Furthermore, Namecheap's argument that Plaintiffs should have known that Withheld for Privacy operates as a privacy service instead of a proxy service is a nonstarter as (1) Namecheap's announcement does not even reference that Whoisguard is a proxy service, let alone make a distinction between a privacy and a proxy service (Steele Decl. Ex. 6), and (2) even if Withheld for Privacy does not register domain names in its own name, as Whoisguard does, the natural implication of switching *from* Whoisguard (the current registrant) is that the domain names would be transferred to a new registrant.

***Third***, as explained above, Namecheap cannot unilaterally foist onto Plaintiffs responsibilities it voluntarily undertook by lodging Registrar's Certificates and require Plaintiffs to pay Namecheap (at a profit to Namecheap) to maintain the registrations of domain names actively infringing Plaintiffs' trademarks. This is not a UDRP proceeding, and Namecheap cannot impose UDRP procedures on Plaintiffs when Namecheap committed to placing the lodged Domain Names under the Court's dominion and control.

Accordingly, Namecheap's request for sanctions should be denied.

## III. CONCLUSION

For these reasons, Plaintiffs' Motion should be granted in its entirety, Namecheap's sanctions request should be denied, and the Court should enter an order consistent with Plaintiffs' Proposed Order, including granting Plaintiffs' attorneys' fees.

DATED: April 13, 2021                    SNELL & WILMER L.L.P.

                                         By: /s/ *Jacob C. Jones*
                                         David G. Barker
                                         Jacob C. Jones
                                         One Arizona Center
                                         400 E. Van Buren, Suite 1900
                                         Phoenix, Arizona 85004-2202

                                         TUCKER ELLIS LLP
                                         David J. Steele
                                         Howard A. Kroll
                                         Steven E. Lauridsen
                                         515 South Flower Street
                                         Forty-Second Floor
                                         Los Angeles, CA 90071-2223

                                         Attorneys for Plaintiffs,
                                         Facebook, Inc., Instagram, LLC,
                                         and WhatsApp Inc.