SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:     213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiff and
Counterclaim Defendant,
Facebook, Inc.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV-20-470-PHX-GMS<br><br>**SUPPLEMENTAL DECLARATION OF DAVID J. STEELE IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE LODGING OF REGISTRAR'S CERTIFICATES** |

I, David J. Steele, declare as follows:

1. I am a partner at the law firm Tucker Ellis LLP, and counsel for Plaintiffs in this action. I make this declaration of my personal knowledge and, if called as a witness, would testify competently to each of the following facts.

2. On March 2, 2021, Namecheap's counsel indicated that Namecheap agreed to confirm setting the "clientHold" client status code, which would have made the Domain Names inactive. Exhibit G to Mr. Rome's Declaration (ECF No. 93-9 at 2 of 4) shows that Namecheap's counsel, Brianna Dahlberg, stated:

> Namecheap will agree to confirm that the following requested client status codes in your draft stipulation are set for each disputed domain name for which Namecheap is the registrar, to the extent it is possible for Namecheap to do so:
> - clientDeleteProhibited;
> - clientHold;
> - clientRenewProhibited;
> - clientTransferProhibited; and
> - clientUpdateProhibited.

3. On March 3, 2021, in an email exchange that Mr. Rome omitted from his Declaration, Namecheap's counsel backed away from their offer to set the "clientHold" code. A true and correct reproduction of this email exchange is attached hereto as Exhibit A. The email exchange demonstrates that on March 3, Ms. Dahlberg stated, "Also, it's my understanding that the 'clientHold' code only applies to domains that have been suspended, rather than all domains that have been locked." (Ex. A at 1–2.) Later that day, Ms. Dahlberg stated that she was "waiting on additional information from the client on whether the 'clientHold' code applies to all domains." (Ex. A at 1.)

4. Namecheap's lodging of Domain Names that are not in the First Amended Complaint ("FAC") in this action with the Court has created issues when Plaintiffs have prevailed in UDRP cases because Domain Name transfers have been prohibited due to

1

the lodging with this Court. An email chain involving myself, Mr. Rome, and Plaintiffs' counsel in certain UDRP proceedings in which transfers of Domain Names not in the FAC were prevented because of Namecheap's lodging of the Domain Names in this case is attached hereto as Exhibit B.

5. Namecheap offered to stipulate to remove Domain Names from the Registrar Certificate after this issue came to light. But Plaintiffs' counsel explained to Namecheap's counsel that Plaintiffs sought a more permanent solution than multiple stipulations with the Court to remove Domain Names not contained in the FAC. Specifically, Plaintiffs' counsel explained: "Plaintiffs' proposed solution (which we appreciate you disagree with) will obviate the need to handle additional domain names by stipulation on a domain by domain basis." (Ex. B at 1.)

6. When Namecheap changed its position and refused to set the clientHold registrar code and to prevent deletion of all of the Domain Names on the Registrar's Certificates unless Plaintiffs paid Namecheap, Namecheap's new position was not acceptable to Plaintiffs because it impeded Plaintiffs' current trademark enforcement strategy for certain Domain Names.

7. Since Namecheap refused to set the clientHold registrar code as originally promised, and Namecheap refused to stop permitting domain names to expire, Plaintiffs included in their Motion a request to revise the Registrar's Certificates to only include domain names listed in the FAC.

8. Namecheap restricts Plaintiffs from accessing publicly-available WHOIS information, which makes it difficult for Plaintiffs to monitor the status of domain names, including discovering whether Namecheap is letting lodged Domain Names expire and leave the Court's dominion and control.

9. In meet and confer emails, I explained to Namecheap's counsel that after Namecheap set the requested codes, "we would like to have Namecheap prepare a similar spreadsheet—since Namecheap and the registries block and restrict whois lookups it is a real pain for us to pull these codes (and it's trivial for

1  Namecheap to do so)." (Ex. A at 1.)

2  I declare under penalty of perjury under the laws of the United States of America
3  that the foregoing is true and correct and that this Declaration was executed on
4  April 13, 2021, in Fullerton, California.

/s/ David Steele