UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Facebook Incorporated, et al.,)
                              )
            Plaintiffs,       )        2:20-cv-0470-GMS
                              )
      vs.                     )        Phoenix, Arizona
                              )        April 28, 2021
Namecheap Incorporated,       )
et al.,                       )             10:28 a.m.
                              )
            Defendants.       )
_____)


      BEFORE:  THE HONORABLE G. MURRAY SNOW, CHIEF JUDGE


            REPORTER'S TRANSCRIPT OF PROCEEDINGS

         TELEPHONIC DISCOVERY DISPUTE - IN CHAMBERS


Official Court Reporter:
Charlotte A. Powers, RMR, FCRR, CRR, CSR, CMRS
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 40
Phoenix, Arizona  85003-2151
(602) 322-7250

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                    A P P E A R A N C E S

 2    For the Plaintiffs:

 3              Tucker Ellis, LLP - Los Angeles, CA
               By: HOWARD ALAN KROLL, ESQ.
 4                 STEVEN ERICK LAURIDSEN, ESQ.
                   DAVID JEFFERSON STEELE, ESQ.
 5             515 S. Flower, 42nd Floor
               Los Angeles, CA  90071
 6

 7

 8    For the Defendants:

 9              Rome & Associates, APC
               By: EUGENE ROME, ESQ.
10                 BRIANNA DAHLBERG, ESQ.
               2029 Century Park E, Suite 450
11             Los Angeles, CA  90067

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

```
 1                    P R O C E E D I N G S
 2              (Proceedings resume at 10:28 a.m.)
 3          THE COURT:  Hello, it's Judge Snow.
 4          Who do I have on the line?
 5          MR. ROME:  Good morning, Judge Snow.
 6          You have Eugene Rome for defendant and counterclaimant
 7   Namecheap and WhoisGuard, Inc.
 8          THE COURT:  Good morning.
 9          No one else on the line yet?
10          MR. ROME:  Not yet, sir.
11                  (Pause in proceedings.)
12          MS. DAHLBERG:  Hi, this is Brianna Dahlberg.
13          MR. STEELE:  Hey, Brianna.  How are you?
14          MS. DAHLBERG:  I'm good.  How are you?
15          MR. STEELE:  Good.  Thank you.
16          This David Steele, and you've got Steven Lauridsen and
17   Howard Kroll as well.
18          MR. ROME:  We also have the Court, gentlemen, and
19   ladies.
20          Judge Snow, I believe all parties are on the call.
21          THE COURT:  All right.  So who asked for the
22   conference?
23          MR. STEELE:  Plaintiffs did, Your Honor.
24          THE COURT:  All right.  So what is the issue?
25          MR. STEELE:  Well, the dispute has come up over who
```

```
 1    is --

 2              THE COURT:  Wait a minute, wait a minute.  Wait a

 3    minute, please.

 4              Could you identify yourself first before you speak?

 5    And could I --

 6              MR. STEELE:  I'm sorry, Your Honor.

 7              THE COURT:  And could I ask you, because this

 8    conference is being transcribed, could I ask you not only to

 9    identify yourselves before you speak, whoever you are, but also

10    speak slowly and distinctly so what we can get an accurate

11    record, please.

12              MR. STEELE:  Sure thing.

13              Good morning, Your Honor.  That is David Steele,

14    counsel for --

15              THE COURT:  Wait, wait.

16              Okay.  David Steele, counsel for Facebook.  Who else

17    is on the phone with you?

18              MR. STEELE:  With us for plaintiffs, Your Honor, is

19    Howard Kroll and Steven Lauridsen.

20              THE COURT:  Okay.

21              And defendants?

22              MS. DAHLBERG:  Well, good morning, Your Honor.

23              This is Brianna Dahlberg on behalf of defendant

24    Namecheap and WhoisGuard.  And on the phone with me is Eugene

25    Rome.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  All right.  So who -- who now is speaking;

2     is it you, Mr. Steele?

3          MR. STEELE:  Yes, Your Honor.

4          THE COURT:  All right.

5          MR. STEELE:  So a dispute has come up, Your Honor,

6     regarding WhoisGuard's designation of information that it

7     previously provided to Facebook, not as part of any discovery

8     response and without any previous assertion of confidentiality.

9     But WhoisGuard has recently produced in discovery the same

10    information that it previously provided, and it's designated

11    that information as Attorneys' Eyes Only.  And plaintiffs

12    believe that this information is outside the scope of the

13    protective order and that those designations should be removed.

14          If it helps, I can provide some background information

15    about the documents at issue.

16          THE COURT:  All right.

17          MR. STEELE:  So pursuant to the contract system that I

18    can provide for registrars and their proxy companies like

19    WhoisGuard, Facebook sent some 13 letters requests to

20    WhoisGuard asking for information about certain harmful domain

21    names, and WhoisGuard -- we asked specifically that WhoisGuard

22    identify its customers for the domain names.

23          The Facebook requests or letters were not discovery

24    requests, the letters didn't compel WhoisGuard to provide the

25    information, and the letters were all clearly identified as

1    being sent pursuant to the ICANN contract system.

2           In turn, WhoisGuard voluntarily provided the

3    information that was requested, and Facebook has -- has used

4    this information to prevent online harm in its use.

5           WhoisGuard has made clear with the Court in other

6    filings that it's provided this very information voluntarily.

7    And with the exception of the most recent request and response

8    by WhoisGuard, WhoisGuard has placed no restrictions on the

9    information.  It's placed no restrictions on its use, and it's

10   never advised Facebook that the information it provided was

11   confidential or protected in any way whatsoever.

12          Now that the protective order has been entered in the

13   case and WhoisGuard has made their production of MIPD

14   documents, it's produced as discovery this very same

15   information, except it's now designated the information as

16   AEOs, as Attorneys' Eyes Only.  And so a dispute has come up

17   whether that information is subject to a protective order, and

18   whether those designations are proper.

19          The protective order in the case makes clear that the

20   scope of the order only covers documents which are produced or

21   generated in disclosures or responses to discovery, and so this

22   information should not be part of the protective orders.  It's

23   not covered by the protective order.  And so the information

24   should not be designated as Confidential.

25          We've -- obviously we're mindful that WhoisGuard has

1    concerns about the information of its customers being released,

2    and we've offered to treat that information confidentially,

3    we've offered to not disclose it, we've offered to only use it

4    in connection with our legitimate enforcement and abuse

5    efforts.  And we've also offered to have that information be

6    treated obviously consistent with the applicable laws on that

7    information.  But WhoisGuard insists that the information be

8    protected under the protective order because, as they put it,

9    Facebook can't be trusted to comply with the law.

10           So we'd like the Court to help us resolve this

11   dispute.

12           THE COURT:  Ms. Dahlberg?

13           MS. DAHLBERG:  Yes, Your Honor.

14           To clarify, the information at issue are spreadsheets

15   containing the personal data of approximately 1,900 Namecheap

16   customers which WhoisGuard has designated as Attorneys' Eyes

17   Only under the stipulated protective order.  And these are the

18   customers who registered domain names that the plaintiffs claim

19   are infringing upon their trademark.  They asserted claims for

20   cyber squatting and trademark infringement based on these

21   domains.

22           The defendants produced this customer information,

23   both in response to plaintiff's demand letters as well as in

24   connection with WhoisGuard's initial disclosures in the case.

25   Some of the information was first produced with the AEO

1    designation after the parties had stipulated to the productive

2    order but before it was entered with the Court.  There was --

3    there was a period of several months where the -- the terms of

4    the protective order were being negotiated; and after we agreed

5    and filed, we were waiting for the Court to enter it.

6         The basis for the -- the designation is two reasons:

7         First, the privacy interests of the customers.  These

8    are customers who had enabled the WhoisGuard privacy service

9    specifically to prevent their personal information from

10   becoming published, being made public.

11        And secondly, and -- and more importantly for

12   defendants, as domain -- a domain registrar, Namecheap is

13   subject to the European Union's General Data Protective --

14   Protection Regulation, the GDPR privacy law, which certainly

15   limits the disclosure needs of customer information.

16        If the plaintiffs were to publish this type of

17   information, or to publicly file it, defendants could

18   potentially be subject to enormous financial penalties.  So

19   therefore, disclosure of the customer information would create

20   a substantial risk of serious harm under the protective order.

21   And so therefore, we believe that that information is properly

22   designated.

23        It's notable that Facebook itself has been -- or is

24   currently subject to a number of investigations for violating

25   the GDPR.  They were also recently fined $5 billion by the FCC

1    for violations of privacy laws.  And then in the last month,

2    approximately, it came to light that there was a data breach of

3    an additional 533 million users' information that was obtained

4    by hackers through the GDPR investigation.  And so therefore we

5    have serious concerns with the security and privacy of

6    information if it were provided to Facebook without any

7    restrictions on it.

8            While plaintiffs have argued that it's not discovery

9    within the scope of the action, most of these customers

10   correspond through the dominions that are specifically

11   identified in the complaint and the first amended complaint.

12   One of plaintiffs' theories of liability in the case is that

13   defendants can be held contractually liable for harm caused by

14   the customers' registration of domains if they did not disclose

15   this information within seven days of a request from plaintiff.

16           Therefore, the -- the customers' information itself

17   and the defendants' responses to plaintiffs' requests for data

18   are essentially irrelevant to the lawsuit.  WhoisGuard produced

19   it with its initial disclosures, and therefore it falls within

20   the protective order.

21           And now in response to plaintiffs' concerns that this

22   designation would prevent them from using the information for

23   brand enforcement purposes apart from this lawsuit, we propose

24   an addendum to the protective order that was specifically

25   carved out -- carved out of this information to allow

1   plaintiffs to use it for brand enforcement purposes.  It would

2   include for any new lawsuits, for brand monitoring, for any

3   legal requirement or legal purpose.  And so under this purpose

4   we would remove the AEO designation, they would be allowed to

5   disclose the customer data to counsel and others reasonably

6   necessary to accomplish these legitimate purposes, and the

7   protection would provide even after the lawsuit.  They wouldn't

8   have to destroy the information at the end the lawsuit.

9          Plaintiffs rejected this proposal.  You know, we had

10  drafted a proposed amendment and -- and sent it to them.

11  They -- they rejected it.  They want to enter into a separate

12  agreement that will allow them to use and disclose the

13  information consistent with legitimate purposes under

14  applicable data protection law.

15         There's two problems that we have with this proposal:

16         First, there's no mechanism for defendants to enforce

17  this agreement.  We would have to file a separate lawsuit.  And

18  given the history of violations of data protection laws and

19  privacy laws, we're understandably concerned with its

20  compliance with privacy laws and with the security of the

21  information.

22         And second, the -- the language that they proposed to

23  us, that they would be able to use the -- the data consistent

24  with legitimate purposes, is unacceptably vague.  We think that

25  the proposed language that we offered in our addendum that was

1  drafted is more appropriate.  And therefore, we -- we submit

2  that the carve-out we suggested to the existing protective

3  order is a better compromise.  That would enable plaintiffs to

4  use information for legitimate brand enforcement purposes, but

5  at the same time appropriately protect the privacy of the

6  information.

7         THE COURT:  What's the docket number of the protective

8  order?

9         MS. DAHLBERG:  Just a moment.

10        It's docket number 90.

11        THE COURT:  Okay.  So why is it that a Confidential

12 designation as opposed to a Highly Confidential - Attorneys'

13 Eyes Only designation is required to achieve the protection --

14 or why is it that an Attorneys' Eyes Only as opposed to a

15 Confidential designation is required in this case -- or this

16 information?

17        MS. DAHLBERG:  Well, the proposal that we -- we're

18 offering would basically create a new designation.  So it would

19 be similar to the Confidential designation, but it would apply

20 after the action is over.  They would still be able to use the

21 information, and it would be limited to the -- rather than, you

22 know, for the -- the prosecution of the action or settlement

23 action, it would be for the legal or quasi-legal purposes that

24 I mentioned earlier related to brand enforcement.

25        THE COURT:  Mr. Steele.

1          MS. DAHLBERG:  So what we're offering is like

2     Confidential, but it's broader.

3          THE COURT:  Mr. Steele, what do you want to use the

4     information for?

5          MR. STEELE:  I'm sorry, Your Honor.  I didn't hear

6     your last sentence.

7          THE COURT:  What do you want to use the information

8     for that you can't use it for under an Attorneys' Eyes Only

9     designation?

10          MR. STEELE:  Sure.

11          Under the current order, Your Honor, under the

12     protective order, the information can only be used for

13     litigating the particular case.  And in this case here,

14     unfortunately, I guess in conflict with what -- with what

15     Ms. Dahlberg said, a number of the domain names, for example,

16     are not even part of the case.  We sent notices for domain

17     names that include trademarks that aren't in the case, owned by

18     parties that aren't -- or owned by companies that aren't

19     parties, we've sent notices for domain names that are engaged

20     in malware attacks where the domain name is just a random

21     string of letters.  And -- and WhoisGuard has designated all of

22     that information under the case as Attorneys' Eyes Only.

23          But to your specific question, Your Honor, the

24     requirement under the current order and also under the proposal

25     that defendants raise would limit our ability to share the

UNITED STATES DISTRICT COURT

1    information with security experts.  And frankly under the

2    proposal that we sent over, we wouldn't be able to send the

3    information to other third-party vendors and other third-party

4    partners who may not be vendors, but are partners in protecting

5    from malware.

6            So in the security context on the Internet, there are

7    a number of different entities who share information about

8    malicious domain names to stop malware attacks and spam attacks

9    and the like.  And if we can't use the information and disclose

10   the information with those entities who are involved in that

11   type of security, then the information has almost no effect for

12   us.  We can't use it effectively.

13           So as the order is currently written, and even under

14   the more broad suggestion that defendants have put forth, the

15   information would be limited as to who we can send it to.  As

16   it's currently written, we can't use the information for any

17   purpose except for litigation.

18           But to my original point -- I'm sorry, Your Honor, go

19   ahead.

20           THE COURT:  I didn't say anything.

21           MR. STEELE:  I beg your pardon.

22           MS. DAHLBERG:  Oh, no.  Go ahead.

23           MR. STEELE:  So to my original point, however, because

24   the information was disclosed by WhoisGuard without any indicia

25   of protection, and was disclosed not in response to discovery

```
1   requests, the information was specifically carved out of the
2   protective order, and the protective order simply should not
3   apply.
4             THE COURT:  I understand your position.
5             Ms. Dahlberg, is it your position that Facebook could
6   not transmit that information to its security consultants?
7             MS. DAHLBERG:  No, Your Honor.  This -- this is a --
8   this is a new issue that wasn't raised during the
9   meet-and-confer or -- in response to the addendum.
10            But -- well, first of all, as I look at -- you know,
11  if it would be helpful to the Court, I'd offer to submit the
12  addendum that we propose to the Court for its review.  But we
13  are -- we're willing to allow Facebook to use the
14  information -- or submit it to others, you know, to reasonably
15  accomplish those purposes.  We don't -- we don't have any
16  intention of preventing them from, you know, using the
17  information to stop malware attacks or -- or for other
18  legitimate purposes.
19            And also just to clarify, when I say that the proposal
20  that we offered is broader than the current Confidential, I
21  mean it's more favorable to -- to Facebook.  It allows them to
22  use the information for more purposes.
23            MR. STEELE:  Your Honor, if I may just ask one
24  question.  If the information can be freely disclosed to
25  vendors and the like and non-- nonparties in the litigation,
```

1    then there's effectively no protection coming from the

2    protective order.  So if defendants' proposal is that we can

3    provide the information to other entities, related or

4    otherwise, whether they sign the protective order or not, then

5    frankly I don't understand why the information -- certainly I

6    don't understand why the information is AEO, and I certainly

7    don't understand why the protective order would apply to the

8    information in the first instance.

9            THE COURT:  Well, I'm not going to be able to resolve

10   this over the phone.

11           So Mr. Steele, how many days for you to file your

12   motion challenging this Attorneys' Eyes Only designation?

13           MR. STEELE:  If we could have until next week, Your

14   Honor.  Perhaps Wednesday?

15           THE COURT:  All right.  You can have until Wednesday

16   to file your challenge to the designation.

17           And then how long do you need to file your response,

18   Ms. Dahlberg?

19           MS. DAHLBERG:  One week.

20           THE COURT:  All right.  So you'll have until the

21   following Wednesday.

22           In the meantime, I'd suggest that you see if you can

23   negotiate some sort of an agreement that will be satisfactory

24   to both sides and accomplish what you want.  Sounds to me

25   like -- I'm not terribly convinced that there's enough of a

1    dispute here to worry about.  It does seem to me that Facebook

2    ought to be allowed to use the information with its security

3    consultants to ensure its own protective purposes.  But that

4    doesn't mean there shouldn't be some limits on the use of the

5    information to the extent it involves private information.  So

6    I -- it's -- and it just sounds to me like there's not a whole

7    lot of disagreement among what uses need to be accommodated.

8          So I would suggest that you see if you can resolve it.

9    If you can't, Mr. Steele, I'll expect your motion by next

10   Wednesday, and then the response by the following Wednesday,

11   and I'll rule.

12          MR. STEELE:  Yes, Your Honor.  Thank you.

13          Your Honor, if I may just raise one more issue that's

14   unrelated to this?

15          THE COURT:  Yes.  Have you consulted and you're not

16   able to arrive at agreement?

17          MR. STEELE:  No, Your Honor.  We've not raised this

18   issue at all with the other side.  But I wanted to bring

19   something to the attention of the Court.

20          The -- the parties have filed a motion which is fully

21   briefed, which deals with the registrar certificates, which

22   have been tendered to the Court, that pertains to domain names

23   which the defendants have -- have tendered to the Court.  And

24   as -- it's fully briefed in this motion.  Those domain names

25   are expiring.  The issue in the motion, in part, Namecheap is

1    not actually renewing the domain names which they've tendered

2    to the Court, and those domain names are expiring.  And as each

3    week goes by, more and more of the domain names that they've

4    tendered to the Court are expiring.

5            So I just wanted to raise the issue to the Court that

6    as additional time goes by, more and more of those domain names

7    are -- are being dissipated.  And the issue is fully briefed

8    for the Court.

9            THE COURT:  Well, I thank you.  I will decide your

10   motions as they are -- I generally do a FIFO, F-I-F-O, and I

11   appreciate the information.  I'll get to them as soon as I can.

12           MR. STEELE:  We appreciate it, Your Honor.

13           Thank you very much.

14           THE COURT:  Thank you.

15           MR. ROME:  Thank you, Your Honor.

16           MS. DAHLBERG:  Thank you, Your Honor.

17               (Proceedings in recess at 10:51 a.m.)

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

1

2

3       I, CHARLOTTE A. POWERS, do hereby certify that I am

4  duly appointed and qualified to act as Official Court Reporter

5  for the United States District Court for the District of

6  Arizona.

7       I FURTHER CERTIFY that the foregoing pages constitute

8  a full, true, and accurate transcript of all of that portion of

9  the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12       DATED at Phoenix, Arizona, this 28th day of April,

13  2021.

14

15                    s/Charlotte A. Powers

16                   Charlotte A. Powers, RMR, FCRR

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT