SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Facebook, Inc., Instagram, LLC and
WhatsApp Inc.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV-20-470-PHX-GMS<br><br>**PLAINTIFFS' MOTION CHALLENGING WHOISGUARD'S DESIGNATION OF LICENSEE INFORMATION PROVIDED PURSUANT TO RAA § 3.7.7.3 AS HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER**<br><br>(Oral Argument Requested) |

## I. INTRODUCTION

Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp Inc. ("Plaintiffs") and related companies sent thirteen letters ("Reveal Requests") to Defendant Whoisguard, Inc. ("Whoisguard") requesting that Whoisguard, as a proxy service, disclose the identities and current contact information ("Licensee Information") for Whoisguard customers who were licensed and used infringing, harmful, or abusive domain names. (Declaration of David J. Steele ("Steele Decl.") ¶ 2, attached hereto as Exhibit 1.) Plaintiffs sent these Reveal Requests pursuant to the ICANN contractual framework which governs the business operations of Defendant Namecheap, Inc. ("Namecheap") and its alter ego Whoisguard.[1] *Id.* The Reveal Requests were thus not discovery requests in this case and ICANN does not require confidentiality for these requests.[2] Nor could the Reveal Requests be considered a discovery request since the parties have not yet conferred as required by Rule 26(f) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(d)(1).

In response to these Reveal Requests, Whoisguard—until its most recent response—provided the requested information voluntarily and without restrictions, never advising that the information provided was confidential, subject to protection in any way, or responsive to discovery in this case. Then, after the Protective Order (ECF No. 90) was entered and the parties started to produce protected documents, Whoisguard included in

---

[1] Specifically, the contract at issue is Namecheap's Registration Agreement which incorporates Section 3.7.7.3 of the Registrar Accreditation Agreement ("RAA") between ICANN and Namecheap. Section 3.7.7.3 states that a proxy service (i.e. Whoisguard) accepts liability for harm caused by wrongful use of a domain name, unless Whoisguard discloses the current contact information and identity of its licensee within 7 days to a party providing Whoisguard with notice of reasonable evidence of actionable harm caused by that domain name. *See* Order Denying Whoisguard's 12(b)(6) Motion to Dismiss (ECF No. 52.) ("Plaintiffs plausibly allege that Section 3.7.7.3's language is incorporated into the Registration Agreement and that this language makes WhoisGuard liable . . . when it failed to disclose the identity of the Infringing Domain Name licensees") (Nov. 10, 2020, Order 7:7–24.)

[2] It is standard practice for trademark owners to send Reveal Requests to proxy services for enforcement efforts, and this is usually done when litigation is not pending. (Steele Decl. ¶ 3.)

1

its MIDP production the same Licensee Information it previously provided in response to the Reveal Requests. This time, however, Whoisguard designated the Licensee Information as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY ("AEO") under the Protective Order.[3]

The Licensee Information provided by Whoisguard falls outside of the terms of the Protective Order, which the parties carefully negotiated. The Protective Order only applies to—and thus only protects—information produced or generated in disclosures or responses to discovery in this matter. Plaintiffs' Reveal Requests, sent pursuant to RAA Section 3.7.7.3, are not discovery requests in this case any more than Whoisguard's prior voluntary provision of Licensee Information are discovery disclosures or responses. Moreover, Whoisguard's subsequent production of this same information as discovery does not now sweep the information under the Protective Order, as the Order explicitly does not apply to information known to the receiving party prior to the discovery disclosure. Finally, there is no evidence that Whoisguard's prior voluntary disclosure of Licensee Information was inadvertent. Indeed, Whoisguard has not provided an Inadvertent Production Notice to Plaintiffs pursuant to Section 5.3(a) of the Protective Order.

Whoisguard now seeks to impose the requirements and burdens of the Protective Order—and, significantly, this Court's authority and enforcement power—on top of the ICANN contract framework under which Namecheap and Whoisguard agreed to operate. Whoisguard's purported (and retroactive) designation of this material interferes with Plaintiffs' ability to enforce their trademark rights and protect consumers from fraud, spam, malware and other online harm conducted by Whoisguard's licensees—the very purpose intended by ICANN in requiring these disclosures under the RAA.

---

[3] Pursuant to Section 2.8 of the Protective Order, the designation HIGHLY CONFIDENTIAL – AEO refers to "extremely sensitive 'Confidential Protected Material,' disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means."

2

Plaintiffs met and conferred with Whoisguard in an attempt to resolve the parties' different positions regarding how to treat Licensee Information disclosed pursuant to Reveal Requests. The parties also engaged in a telephonic conference with the Court, as required by the Protective Order. After being unable to resolve this dispute absent Court adjudication, Plaintiffs bring this Motion, seeking to de-designate Licensee Information inappropriately designated as HIGHLY CONFIDENTIAL – AEO under the Protective Order.

## II.   BACKGROUND

From November 20, 2020, until March 15, 2021, Whoisguard provided Licensee Information related to approximately 2,287 domain names in response to eleven Reveal Requests. (Steele Decl. ¶ 4.) This Licensee Information consists of the name, address, phone number and email address of the customer—contact information that is intended to be disclosed in the publicly available WHOIS records unless the customer uses a proxy service. This contact information[4] is distinct from the customer's account information, which could be separately produced during discovery. (Steele Decl. ¶ 5.)  During this course of dealing, Whoisguard never suggested the Licensee Information it was providing was confidential or purported to designate it so. (Steele Decl. ¶ 4.)

On March 18, Whoisguard responded to two Reveal Requests seeking Licensee Information for 170 domain names based on reasonable evidence of actionable harm. (Steele Decl. ¶ 7.) As it had done numerous times previously, and as early as November 2020, Whoisguard provided Licensee Information for the domain names identified in Plaintiffs' Reveal Requests. *Id.* For the first time, however, Whoisguard purported that it was "designating this information HIGHLY CONFIDENTIAL –

---

[4] Indeed, as highlighted in the First Amended Complaint, some of the disclosed information from Whoisguard was patently false. *See* ECF No. 56 at ¶ 125 (Whoisguard disclosed "dwqhb buywgqyug at limas st 66, Dallas, TX 75011 for the domain name facebook-marketplace.us.")

3

ATTORNEYS' EYES ONLY under the Stipulated Protective Order." *Id.*[5] On March 26, Plaintiffs objected to Whoisguard's confidentiality designation because the Licensee Information did not fall under the Protective Order and the Protective Order had yet to be entered by the Court. (Steele Decl. ¶ 8.)

In response, Whoisguard claimed on April 7 that Licensee Information must be designated confidential because of "privacy laws, including the GDPR."[6] (Steele Decl. ¶ 10.) Whoisguard also informed Plaintiffs that it would be "reproducing copies of all previously produced [Licensee Information] that are labeled with the appropriate confidentiality designations." *Id.*

The parties met and conferred but could not resolve the dispute; Plaintiffs maintain that the Reveal Requests and the Licensee Information were not discovery and thus could not and should not be governed by the Protective Order. To ensure that the Licensee Information would not be misused or published, however, Plaintiffs offered to "agree that [Plaintiffs would] only use the information in connection with their abuse investigation, mitigation and enforcement efforts, and [would] not publish the information, but may use and disclose the information consistent with these legitimate purposes and applicable data protection law." (Steele Decl. ¶ 11.) Plaintiffs' proposal would apply to any additional

---

[5] On March 12, 2021, the parties agreed to the terms of a Stipulated Protective Order, which was filed with the Court on March 16. (Steele Decl. ¶ 6; ECF No. 87.) Whoisguard previously proposed that the parties agree that the Protective Order's basic terms would govern the production of information pending entry by the Court. (Steele Decl. ¶ 5.) Plaintiffs specifically rejected this proposal given the number of issues related to the Protective Order remaining to be finalized at the time. *Id.* Therefore, there was no interim agreement between the parties concerning the designation of confidential information. *Id.* On March 31, the Court entered an Order granting the parties' Stipulation for Protective Order and the Protective Order went into effect. (Steele Decl. ¶ 9; ECF No. 90.)

[6] Of course, as Plaintiffs previously explained in Motion to Dismiss briefing, GDPR does not require such a confidentiality designation because GDPR expressly permits disclosure of personal information "for the purposes of the ***legitimate interests*** pursued by . . . a third party." (ECF No. 32 at 17 n.21 (quoting GDPR Article 6(1)(f) (emphasis added) (ECF No. 30-1 at 5)); *see also* ECF No. 32 at 17:19–21 (explaining that ICANN Temporary Specification ("Temp. Spec.") adopted to address registrar responsibilities under GDPR specifically recognizes intellectual property protection as a legitimate interest (Temp. Spec. §§ 4.4 & 4.4.8 (Doc. 30-2 at 11–12))).)

reveal requests sent by Plaintiffs, regardless of whether this case remained pending or had been resolved. *Id.*

On April 28, the Court held a telephonic discovery dispute conference with the parties. The Court ordered that if the parties could not come to an agreement, Plaintiffs were to file a Motion addressing the dispute by Wednesday, May 5, and Defendants were to respond by May 12. (Steele Decl. ¶ 12 & Ex. F (Transcript of Apr. 28, 2021, Telephonic Discovery Dispute ("Tr.")) 15:9–16:11.) No such agreement was reached because Defendants insisted that all of the Licensee Information previously disclosed be subject retroactively to the Protective Order. As a result of this impasse, Plaintiffs bring this Motion.

### III.   ARGUMENT

Whoisguard's designation of Licensee Information revealed pursuant to Reveal Requests as HIGHLY CONFIDENTIAL – AEO under the Protective Order is improper for several reasons. Pursuant to Section 6.3 of the Protective Order, "[t]he burden of persuasion in any such challenge proceeding shall be on the Designating Party." Whoisguard has not and cannot meet its burden that the information should be covered by the Protective Order and the designation should be removed.[7]

**A.   Whoisguard's disclosures of Licensee Information pursuant to RAA Section 3.7.7.3 Reveal Requests are not subject to the Protective Order and, if it were, it would hamper Plaintiffs' trademark enforcement efforts and burden the Court.**

The Licensee Information voluntarily revealed by Whoisguard in response to Plaintiffs' Reveal Requests falls outside the scope of the Protective Order. Plaintiffs sent

---

[7] During the April 28, telephonic discovery dispute conference with the parties the Court asked why the HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY designation was required by Whoisguard as to the Licensee Information. (Tr. 11:11–16.) Whoisguard did not attempt to defend their designating the Licensee Information as HIGHLY CONFIDENTIAL – AEO, and instead noted that they were offering to create a new designation under the Protective Order that they believed addressed Plaintiffs' concerns. *Id.* at 11:17–12:2.

5

Reveal Requests to Whoisguard pursuant to RAA Section 3.7.7.3 requesting Licensee Information related to infringing domain names. Whoisguard admits this fact: in "each of [Plaintiffs'] letters" containing Reveal Requests, Plaintiffs requested Licensee Information from Whoisguard "pursuant to Section 3.7.7.3 of Namecheap's RAA with ICANN" (Apr. 6, 2021, Rome Declaration ¶ 3 & n.1, Exs. A–C ("Rome Decl."; ECF No. 93-2)), which was incorporated into Namecheap's own Registration Agreement (Nov. 10, 2020, Order 7:4–6).

Whoisguard voluntarily chose to reveal the Licensee Information within seven days under the ICANN contractual framework. Again, Whoisguard agrees that Whoisguard "complied and disclosed the Licensee Information," (Rome Decl. ¶ 3). Even Defendants' proposed "'Reveal Request Addendum" to the Protective Order acknowledges this, as it defines "'Reveal Request' Protected Material" as "Licensee Information that is produced *in response to demand letters from Plaintiffs' counsel invoking Section 3.7.7.3 of ICANN's Registrar Accreditation Agreement.*" (Steele Decl. ¶ 13 (emphasis added).)

Plaintiffs' Reveal Requests (and any similar requests) were not discovery requests; and Whoisguard's voluntary responses providing Licensee Information were not "disclosure or discovery material" as contemplated by the Protective Order. Section 2.6 of the Protective Order defines "Disclosure or Discovery Material" as "items or information . . . produced or generated in disclosures or responses to discovery in this matter." There is no dispute that Whoisguard voluntarily provided Licensee Information in response to Plaintiffs' Reveal Requests under Section 3.7.7.3. Since the parties did not have a Rule 26(f) conference, no discovery request was propounded by Plaintiffs seeking this information. As significantly, Whoisguard did not initially claim that the Licensee Information was produced pursuant to its disclosure obligations and has not even tried to claw it back. Since the Licensee Information does not fall within the scope of the Protective Order, Whoisguard's attempt to apply the Protective Order to this information is inappropriate and must be rejected by the Court.

Additionally, much of the Licensee Information provided by Whoisguard involves domain names that are **independent of this lawsuit**. For example, numerous Reveal Requests involve the OCULUS trademark that is not at issue this case. (*See, e.g.*, ECF No. 94 at 8:5–9:9 (explaining that OCULUS trademark and its owner, Facebook Technologies, LLC, are not involved in this case).) Other Reveal Requests involve domain names that could not possibly involve cybersquatting as the domain names, which are comprised of random letters and numbers, are not identical or confusingly similar to any of Plaintiffs' trademarks but were used in a malicious malware attack entirely unrelated to the infringing domain names at issue in this case. (Steele Decl. ¶ 14.) It would be improper to treat the Reveal Requests for domain names not at issue in this lawsuit as part of this lawsuit and subject to the Protective Order.

Furthermore, Plaintiffs' trademark enforcement efforts against domain names not at issue in this case would be unduly hindered because of the Protective Order's restrictions on the use of Protected Material. Section 7.2 of the Protective Order provides that Protected Material may be used "only for prosecuting, defending or attempting to settle this litigation and related appeals." And even "after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs." (Protective Order § 4.) Plaintiffs' use of the Licensee Information would be limited under the Protective Order by restricting the security professionals with whom the Licensee Information can be shared, and placing additional burdens from the Protective Order on these non-party (and non-involved) security professionals. By applying the Protective Order to the Licensee Information under the Protective Order, Whoisguard has thus prevented Plaintiffs from effectively using the Licensee Information in connection with their legitimate interests in enforcing their trademark rights and protecting users of Plaintiffs' services from fraud and online abuse—as contemplated under ICANN's contractual framework.

While broad protective orders reduce certain burdens attendant to confidentiality

designations in the first instance, they can also impose separate burdens when a party over-designates material as confidential, creating hurdles for other parties seeking to use the material for proper purposes and requiring courts to adjudicate related over-designation issues as they arise. *See, e.g.*, *In re Koninklijke Philips Pat. Litig.*, No. 18-CV-01885-HSG, 2020 WL 1865294, at *2 (N.D. Cal. Apr. 13, 2020) (explaining that over-designation of confidentiality under a protective order creates issues for parties and courts when documents are later filed with the court). Including all of the Licensee Information under the Protective Order would needlessly involve this Court in policing the treatment of information voluntarily provided by Whoisguard pursuant to its obligations under the ICANN contractual framework. Entities who are not parties to this litigation, such as Facebook Technologies, LLC (the owner of the OCULUS trademark), and non-party security consultants and vendors, would be subject to the Protective Order when using Licensee Information to enforce their trademarks and prevent online abuse. The Court would undoubtedly be called upon to adjudicate Protective Order disputes arising out of Licensee Information for domain names, trademarks, and entities not at issue in this case.

Finally, it is improper to impose the Protective Order's procedures, limitations of use and potential sanctions onto contractual obligations imposed upon proxy services by ICANN. Registrars and proxy services have already agreed that they have a choice: they can voluntarily produce Licensee Information within seven days or, in the alternative, accept liability for the harm caused by their customers' domain names. Providing Licensee Information pursuant to Section 3.7.7.3 allows trademark owners to pursue claims against the customer in order to prevent online abuse. The Court should not impose additional terms and administrative burdens that frustrate the benefits of Section 3.7.7.3. Nothing in Section 3.7.7.3 permits a proxy service to restrict the use of the Licensee Information by trademark owners, and the Court should not impose such a restriction here.

**B.     Whoisguard cannot retroactively designate information confidential.**

On numerous occasions, Whoisguard voluntarily disclosed Licensee Information with no confidentiality designation.[8] Whoisguard did not make these disclosures pursuant to discovery in this case. Whoisguard has now "reproduced"[9] this information as part of its MIDP responses, applying the HIGHLY CONFIDENTIAL – AEO designations. But Whoisguard cannot "reproduce" Licensee Information already provided in order to retroactively make it confidential because the Protective Order **does not apply** to "any information known to the Receiving Party prior to the disclosure." (Protective Order § 3.) Since Whoisguard had already provided the information to Plaintiffs pursuant to Reveal Requests, and Plaintiffs knew this information **before** Whoisguard designated the information as HIGHLY CONFIDENTIAL – AEO, this previously disclosed information cannot be entitled to any protection by the Protective Order's own terms.

Furthermore, Whoisguard's prior disclosure of Licensee Information was not inadvertent. In fact, Whoisguard intentionally (and voluntarily) disclosed this information—and within 7 days—of receiving each of Plaintiffs' thirteen requests so that Whoisguard would not assume liability for the harm caused by the domain names under the ICANN contractual framework. Since the Licensee Information was produced voluntarily under Section 3.7.7.3, Whoisguard cannot now argue that it had inadvertently failed to designate Licensee Information as confidential pursuant to Section 5.3 of the Protective Order. Indeed, Whoisguard has not provided an Inadvertent Production Notice to Plaintiffs pursuant to Section 5.3(a) of the Protective Order.

**C.     Plaintiffs' agreement to use Licensee Information in connection with their abuse investigations.**

Plaintiffs have offered Whoisguard an appropriate compromise in order to ensure

---

[8] Whoisguard's confidentiality designations on March 18 were premature because they were made prior to the Protective Order being entered, and the parties agreed to withhold production of all confidential information pending entry of the Protective Order.

[9] Whoisguard uses the term "reproduce" to suggest that its earlier voluntary provision of Licensee Information was a discovery production of documents.

9

that (a) Plaintiffs can use the Licensee Information to investigate and enforce domain name abuse and (b) the Licensee Information is not published. Specifically, Plaintiffs agree that they will only use the Licensee Information in connection with their abuse investigation, mitigation and enforcement efforts, and will not publish the information.[10] Plaintiffs would be entitled to use and disclose the Licensee Information consistent with these legitimate purposes and applicable data protection laws. Plaintiffs' agreement would apply to any additional Reveal Requests sent by them or their related companies, regardless of whether this action remains pending or has been resolved. (Steele Decl. ¶ 11.)

Whoisguard has rejected this compromise. In turn, Whoisguard has proposed extending the Protective Order to include "Reveal Request Protected Material." Whoisguard's proposal is problematic because: (a) the Licensee Information previously voluntarily produced without any limitation would now be covered by the Protective Order; (b) Licensee Information involving domain names not at issue in this case would be covered by the Protective Order; and (c) Plaintiffs' use of the Licensee Information would be limited by restricting the security professionals with whom the Licensee Information can be shared and imposing additional requirements on these non-parties. For these reasons, Plaintiffs have rejected Whoisguard's proposal.

## IV. CONCLUSION

For the reasons explained above, this Court should grant Plaintiffs' Motion and order that Licensee Information provided in response to RAA Section 3.7.7.3 Reveal Requests is not subject to the Protective Order and not entitled to any protections thereunder. Whoisguard had previously provided Licensee Information in response to Plaintiffs' requests without any confidentiality protections or designations whatsoever, thus belying the position that any confidentiality designation under the Protective Order,

---

[10] Plaintiffs define "publication" as posting a significant portion of the Licensee Information received from Defendants on a publicly accessible website.

10

much less a "highly confidential" designation, is now warranted. Under LRCiv 7.2(j), the undersigned certifies that after personal consultation and sincere efforts to do so, Steele Decl. ¶ 11, counsel have been unable to satisfactorily resolve the matter.

DATED: May 5, 2021           SNELL & WILMER L.L.P.

                             By: /s/David G. Barker
                             David G. Barker
                             Jacob C. Jones
                             One Arizona Center
                             400 E. Van Buren, Suite 1900
                             Phoenix, Arizona 85004-2202

                             TUCKER ELLIS LLP
                             David J. Steele
                             Howard A. Kroll
                             Steven E. Lauridsen
                             515 South Flower Street
                             Forty-Second Floor
                             Los Angeles, CA 90071-2223

                             Attorneys for Plaintiffs,
                             Facebook, Inc., Instagram, LLC,
                             and WhatsApp Inc.