# Exhibit 1

SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:     213.430.3400
Facsimile:     213.430.3409

Attorneys for Plaintiff and
Counterclaim Defendant,
Facebook, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>Defendants. | Case No. CV-20-470-PHX-GMS<br><br>**DECLARATION OF DAVID J. STEELE IN SUPPORT OF PLAINTIFFS' MOTION CHALLENGING WHOISGUARD'S DESIGNATION OF LICENSEE INFORMATION PROVIDED PURSUANT TO RAA § 3.7.7.3 AS HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER** |
| AND RELATED COUNTERCLAIM. | |

I, David J. Steele, declare as follows:

1. I am a partner at the law firm Tucker Ellis LLP, and counsel for Plaintiffs in this action. I make this declaration of my personal knowledge and, if called as a witness, would testify competently to each of the following facts.

2. Plaintiffs Facebook, Inc., Instagram, LLC, and WhatsApp Inc. ("Plaintiffs") and related companies sent thirteen letters ("Reveal Requests") to Defendant Whoisguard, Inc. ("Whoisguard"), requesting that Whoisguard, as a proxy service, disclose the identities and current contact information ("Licensee Information") for Whoisguard customers who were licensed and used infringing, harmful, or abusive domain names. Plaintiffs sent these Reveal Requests pursuant to the ICANN contractual framework.

3. It is standard practice for trademark owners to send Reveal Requests to proxy services for enforcement efforts, and this is usually done when litigation is not pending.

4. From November 20, 2020, until March 15, 2021, Whoisguard provided Licensee Information related to approximately 2,287 domain names in response to eleven of the Reveal Requests referenced above in ¶ 2. During this course of dealing, Whoisguard never suggested the Licensee Information it was providing was confidential or purported to designate it so.

5. This Licensee Information consists of the name, address, phone number and email address of the customer—contact information that is intended to be disclosed in the publicly available WHOIS records unless the customer uses a proxy service. This contact information is distinct from the customer's account information, which could be separately produced during discovery.

6. On March 12, 2021, the parties agreed to the terms of a Stipulated Protective Order, which was filed with the Court on March 16. (ECF No. 87.) Whoisguard previously proposed that the parties agree that the Protective Order's basic terms would govern the production of information pending entry by the Court. Plaintiffs

1

specifically rejected this proposal given the number of issues related to the Protective Order remaining to be finalized at the time. Therefore, there was no interim agreement between the parties concerning the designation of confidential information. A true and correct copy of email correspondence between counsel for the parties negotiating the terms of the Stipulated Protective Order is attached to this Declaration as Exhibit A.

7. On March 18, Whoisguard responded to two Reveal Requests seeking Licensee Information for 170 domain names based on reasonable evidence of actionable harm. As it had done numerous times previously, and as early as November 2020, Whoisguard provided Licensee Information for the domain names identified in Plaintiffs' Reveal Requests. For the first time, however, Whoisguard purported that it was "designating this information HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY under the Stipulated Protective Order." A true and correct copy of the cover letter provided by Whoisguard's counsel, Eugene Rome, accompanying the two Excel spreadsheets containing the licensee information, is attached to this Declaration as Exhibit B.

8. On March 26, Plaintiffs objected to Whoisguard's confidentiality designation because the Licensee Information did not fall under the Protective Order and the Protective Order had yet to be entered by the Court. A true and correct copy of the letter I sent to Whoisguard's counsel raising these objections is attached to this Declaration as Exhibit C.

9. On March 31, the Court entered an Order granting the parties' Stipulation for Protective Order and the Protective Order went into effect. (ECF No. 90.)

10. On April 7, Whoisguard claimed that Licensee Information must be designated confidential because of "privacy laws, including the GDPR." Whoisguard also informed Plaintiffs that "[n]ow that the Court has entered the protective Order, WhoisGuard expects to produce the confidential portion of its MIDP production," and that it would be "reproducing copies of all previously produced [Licensee Information] that are labeled with the appropriate confidentiality designations." A true and correct

2

copy of Whoisguard's counsel's email response is attached to this Declaration as Exhibit D.

11. The parties met and conferred regarding this dispute, but could not resolve it. Plaintiffs maintain that the Reveal Requests and the Licensee Information were not discovery and thus could not be governed by the Protective Order. To ensure that the Licensee Information would not be misused or published, however, Plaintiffs offered to "agree that [Plaintiffs would] only use the information in connection with their abuse investigation, mitigation and enforcement efforts, and [would] not publish the information, but may use and disclose the information consistent with these legitimate purposes and applicable data protection law." Plaintiffs' proposal would apply to any additional reveal requests sent by Plaintiffs, regardless of whether this case remained pending or had been resolved. A true and correct copy of the email in which Plaintiffs made this offer is attached to this Declaration as Exhibit E.

12. On April 28, the Court held a telephonic discovery dispute conference with the parties. The Court ordered that if the parties could not come to an agreement, Plaintiffs were to file a Motion addressing the dispute by Wednesday, May 5, and Defendants were to respond by May 12. (Transcript of Apr. 28, 2021, Telephonic Discovery Dispute ("Tr.") 15:9–16:11, a true and correct copy of which is attached to this Declaration as Exhibit F.)

13. During meet and confer discussions, Whoisguard offered a proposed Stipulated Addendum to the Protective Order, which included a "Reveal Request Addendum." The Reveal Request Addendum defines "'Reveal Request' Protected Material" as "Licensee Information that is produced *in response to demand letters from Plaintiffs' counsel invoking Section 3.7.7.3 of ICANN's Registrar Accreditation Agreement.*" (emphasis added). True and correct copies of the email Whoisguard's counsel sent attaching the proposed Stipulated Addendum to the Protective Order and the attached Stipulated Addendum to the Protective Order are attached to this Declaration as Exhibit G.

3

14. Much of the Licensee Information provided by Whoisguard involves domain names that are **independent of this lawsuit**. For example, numerous Reveal Requests involve the OCULUS trademark that is not at issue this case. (*See, e.g.*, ECF No. 94 at 8:5–9:9 (explaining that OCULUS trademark and its owner, Facebook Technologies, LLC, are not involved in this case).) Other Reveal Requests involve domain names that could not possibly involve cybersquatting, as the domain names, which are comprised of random letters and numbers, are not identical or confusingly similar to any of Plaintiffs' trademarks, but were used in a malicious malware attack entirely unrelated to the infringing domain names at issue in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on May 5, 2021, in Fullerton, California.

                                                    /s/ David Steele