# Exhibit A

**Steele, David J.**

| | |
|---|---|
| **From:** | Lauridsen, Steven E. |
| **Sent:** | Friday, March 12, 2021 1:37 PM |
| **To:** | Brianna Dahlberg |
| **Cc:** | Eugene Rome; Sridavi Ganesan; Brad Cebeci; Jennifer Cho; Kroll, Howard A.; Steele, David J. |
| **Subject:** | RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008) |

Brianna,

I'm glad we could reach an agreement. Our local counsel is assisting us in finalizing all three orders with a stip so that they conform to local practice. We'll circulate final drafts of all three in "ready to file" form for your final review and approval.

Best,
Steven

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Friday, March 12, 2021 10:19 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Cc:** Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

Steven,

In light of Judge Snow's comments, we will agree to the remote access requirement for Brad so we can get the protective order finalized.  He won't download any of Plaintiffs' confidential information unless or until such a solution is in place.  If it turns out that it isn't possible to set that up for Brad, we can reassess this issue down the line.

Please add this to the draft protective order language and send me the document for our final review, along with the ESI and clawback orders and a stipulation to enter them.

Thank you,

Brianna

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Wednesday, March 10, 2021 at 10:02 AM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>, "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Steele, David J." <David.Steele@tuckerellis.com>

**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Please call me at 213.430.3308.

Steven

> On Mar 10, 2021, at 7:57 AM, Brianna Dahlberg <BDahlberg@romeandassociates.com> wrote:
>
> **<<< EXTERNAL EMAIL >>>**
>
> ---
>
> Yes, that is fine.  I will call you, then conference in the clerk.  What number can I reach you at?
>
> Sent from my iPhone
>
>> On Mar 9, 2021, at 8:41 PM, Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com> wrote:
>>
>> Brianna,
>>
>> Does 11:00 a.m. Pacific work for you?
>>
>> Steven
>>
>> **From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
>> **Sent:** Tuesday, March 9, 2021 3:49 PM
>> **To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
>> **Cc:** Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>
>> **Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)
>>
>> **<<< EXTERNAL EMAIL >>>**
>>
>> ---
>>
>> Steven,
>>
>> The clerk informs us that for purposes of scheduling the telephone conference, all parties need to be on the call with her. Please let me know when you or another attorney for Plaintiffs will be available tomorrow to do this.
>>
>> Thanks,
>> Brianna
>>
>> **From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
>> **Date:** Friday, March 5, 2021 at 12:22 PM
>> **To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>

**Cc:** Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>, "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Steele, David J." <David.Steele@tuckerellis.com>

**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Brianna,

You have failed to articulate your position with any detail besides a "no" in advance of the conference, thus obstructing the parties from actually having a substantive discussion.

I have provided several explanations as to how Brad can fully participate in this case without downloading the data, and you have not been able to articulate a single counterpoint except a blanket "this isn't acceptable." If you intend to meet and confer in good faith, I assume that you intend to address each of the points in my prior email with a legal or technical argument since you mysteriously refuse to do so over email.

I expect that, when we go to Court, you're not going to simply tell the judge, "This isn't acceptable because it somehow, without any real explanation, prevents work on the case." I therefore would hope that, during our meet and confer, you will come prepared to articulate how each of the solutions/explanations I've provided truly prevent Brad from litigating this case because they pose a true technological or practical barrier, despite your inability to articulate one via email. To the extent you cannot provide an explanation, we will inform the Court during the hearing about each technical solution we offered and how you refused to explain how it was unworkable either via email or during our meet and confer.

I have availability to meet and confer Tuesday from 10:00 a.m. to 12:00 p.m. Pacific. Let me know if there's a time in that window that works.

-Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Friday, March 5, 2021 11:04 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Cc:** Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>; Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Steven,

This isn't acceptable.  To fully participate in the case, Brad needs to be able to download confidential documents and edit/save documents on his own computer.

Again, please let me know when you are available to meet and confer.  This is my third request for a meet and confer call.

Brianna

---

**From:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Sent:** Wednesday, March 3, 2021 3:10 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Brianna,

I've been able to discuss your proposal with my client; however, we still have concerns. We understand your vendor is a reputable company that presumably offers an e-discovery platform, such as Relativity. Documents can be viewed in Relativity without the need to download them. We use Relativity for our document database, and we are fully able to participate in Facebook litigations viewing materials in Relativity and without downloading them (in fact, our instance of Relativity is configured such that even *I cannot* automatically download any files from the database).

As for viewing under seal documents, these can be viewed via the Court's ECF system. To the extent Defendants do not want to repeatedly access them in this way, the discovery vendor should have no issue setting up storage for these documents and having a Citrix virtual machine or the like to allow Mr. Cebeci to view them.

Similarly, in terms of drafting documents, the same virtual machine solution can be readily applied, assuming your firm does not already have a system where document drafts are stored and shared on a network. In short, we do not see how the restrictions would prevent Mr. Cebeci from fully participating in this case, particularly given that some or all of the solutions suggested above are already common practice for some firms, regardless of where the attorneys are located. We'd like to remind you that Namecheap has created these unusual circumstances, and while Facebook is trying to be accommodating, we cannot compromise further without a solid justification as to how the current proposal would prevent Mr. Cebeci from participating in the case.

Finally, you keep referring to vague security concerns. As I've mentioned, these concerns are very real. If you look up the *Six4Three v. Facebook* case, you'll find a prime example of where Facebook's sensitive data that was not necessarily subject to export control laws left the country despite a California federal judge's directive that it not. The data ended up in the hands of a foreign government and ultimately a journalist, resulting in a huge leak. Third parties tend to be more eager to acquire and leak Facebook's confidential data than that of many other entities, and as a result, Facebook has to exercise appropriate precautions to safeguard its data.

Once you have received the information above, please let us know what specific impediments Mr. Cebeci still faces, if any. Absent a justification as to why the above solutions are unworkable, Facebook cannot move off its current position.

-Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Tuesday, March 2, 2021 10:47 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Thank you for the update.

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Tuesday, March 2, 2021 at 10:45 AM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Brianna,

Thanks for checking in. I will follow up with our client. I know they are reviewing your proposed compromise, so I'll see where we are in getting the appropriate people to sign off/suggest a revision. I'm hopeful we can resolve this without Court intervention, but I expect we will be able to discuss by tomorrow if needed. I'll follow up once I have more information and will propose a time depending on the client's response.

-Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Tuesday, March 2, 2021 10:39 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>

**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Steven,

Just following up on this.  I am available to meet and confer this afternoon or almost any time tomorrow, if you will be ready to address this issue by then.

Brianna

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Friday, February 26, 2021 at 6:08 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Brianna,

Your demand to meet and confer on Monday, sent just after the close of business on a Friday, is unreasonable and not in the spirit of cooperation. You have just now, at 5:32 p.m. on a Friday suggested a new compromise—namely, the storage of information solely on the attorney's computer at home. I need time to run this by my client, who will need time to evaluate it, and I thus cannot yet propose a time on Monday to meet and confer. I will, however, meet and confer with you on this issue as soon as I can discuss with my client.

If we have to call the Court before my client has had a chance to evaluate your latest proposal, we will explain your last-minute offer and refusal to allow time (except the weekend) for us to evaluate it and meet and confer. I suspect the Court will not appreciate having its resources expended knowing you made a last-minute offer after business hours, gave less than one business day to consider it, and then insisted on judicial intervention. This runs contrary to the purpose of meeting and conferring.

Facebook's security concerns are well founded, and it is your firm that is making an unusual request that we have tried to accommodate. It is common not to let confidential information leave the US. The delay is thus caused by Defendants, not Facebook.

I will not address your unfounded aspersions concerning Facebook's motivations as they really are not appropriate to make. I would appreciate it if we could keep this collegial and leave rank speculation and unfounded accusations out of this; we are both professional and experienced enough to litigate this case without them.

I will be back in touch as soon as possible.

-Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Friday, February 26, 2021 5:32 PM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Steven,

The subject heading of 12.3 which we have been discussing is "Export Controls." The original first sentence of 12.3 in the first version you circulated read, "The Protected Material disclosed by the Producing Party may contain technical data subject to export control laws and therefore the release of such technical data to foreign persons or nationals in the United States or elsewhere may be restricted." You only raised data security as a secondary reason for imposing territorial restrictions after I stated on our call that this trademark case likely won't involve production of any technology subject to those laws.

We have offered the following compromises to date:
- Even though we don't think export control laws apply at all to this case, we offered to use the Export Control provision from the N.D. Cal. patent model protective order as a compromise. The model provision is appropriately balanced by requiring the producing party to identify materials subject to such laws.
- For all Protected Material (not just export control material), we offered to have our discovery vendor maintain the data in AWS data centers located solely in the United States; we will have this provision put in our contract with them; and they will sign the acknowledgement and agreement to be bound.
- We also offered to our vendor in touch with you directly so they can explain their security practices and address any specific concerns Plaintiffs may have.
- Our partner, Brad Cebeci, who is located outside the U.S., will sign the acknowledgement and agreement to be bound before receiving any Protected Material.
- Brad will also agree to refrain from viewing, downloading, copying, storing, or saving any Protected Material that Plaintiffs have identified as subject to export controls.

Additionally, to address your concerns that Brad might misplace the data, we can also agree that Brad will not allow Protected Material to be downloaded or stored anywhere other than his home computer, and that computer will not leave his house. The computer will have password protection. We are also willing to agree to other standard,

reasonable security measures you might propose for his computer. I can also assure you that the concern you raise over attorneys misplacing laptops/thumbdrives has never been an issue that prevented us from receiving confidential material in any other case our firm has handled, regardless of whether the attorneys were located in the United States or elsewhere.

It is not an reasonable option, however, to preclude attorneys from our team from fully participating in this matter just because Facebook has vague security concerns.

Finally, we have concerns that this requirement may be a tactic for Plaintiffs to further delay the MIDP ESI productions, which are already weeks overdue. To date, it appears that the only materials Plaintiff have produced are public documents.  As you know, WhoisGuard has its complete MIDP production ready to go and will produce the confidential/AEO portion once we reach an agreement on the protective order.

**Please let me know your availability for a final meet and confer call on Monday.**  If we cannot reach a resolution on the call, we will request a telephone conference from the Court so that Judge Snow can resolve this issue without further delay.

Brianna

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Friday, February 26, 2021 at 1:32 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Brianna,

It seems we are talking past each other, so let me see if I can clarify. It appears you are conflating two related but distinct concepts:

1) Technology subject to export control laws: This prohibits information from leaving the country if the US government deems it illegal to do so. For instance, providing certain military technology to foreign nationals. You keep focusing on this issue.

2) There is a separate concern about confidential information leaving the United States, regardless of whether the US government would deem it illegal. I keep stressing this point, and you keep ignoring it in your replies, or giving it short shrift just now by saying "[t]o the extent Plaintiffs' concern here is data security . . . ." We have repeatedly explained by email and during out meet and confers that this is a huge concern for Plaintiffs.

You have not proposed workable compromises in this area despite what you say

in your email below. For instance, when Mr. Cebeci leaves his laptop on a bus or puts his work on a thumb drive to take home and drops it, or any other of the myriad ways in which he could misplace the data, what is Facebook's recourse? If Mr. Cebeci is only viewing and not downloading information, the damage is (hopefully) readily contained. If it's been downloaded, there is a risk that a third party will access the data and potentially leak it to the public, something no degree of sanctions or other Court penalties can cure. This is not an acceptable option for Facebook. If you have a proposal that obviates this concern, we would be more than happy to take it back to our client.

Facebook has proposed a compromise that allows, for the convenience of Defendants, a US-barred attorney in a US case to have access to this data abroad, but there has to be a limit.

I look forward to receiving your proposed compromises; otherwise, we are comfortable taking this up with the Court if necessary. This is, however, the type of issue the parties should be able to resolve without judicial intervention.

-Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Friday, February 26, 2021 1:10 PM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Steven,

The problem here is that to participate in the case, Namecheap's outside lawyers need to do more than just "view" the Protected Material.  The restrictions Plaintiffs want on downloading/saving/storing material are unreasonable for material that isn't subject to Export Control laws.  And, as I've stressed when we met and conferred, it is extremely unlikely that this case would even involve the production of technology subject to Export Control laws. This is a trademark case, not a case involving the production of sensitive source code or military technology.

To the extent Plaintiffs' concern here is data security, we have proposed several compromises and options to you to address that concern. If Plaintiffs won't accept any of them, we will have to bring this issue before the Court unfortunately. The initial ESI productions were due weeks ago, and we need to move forward with the case.

We look forward to your response.

Brianna

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Friday, February 26, 2021 at 12:25 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Steele, David J."
<David.Steele@tuckerellis.com>, Eugene Rome
<erome@romeandassociates.com>, Sridavi Ganesan
<sganesan@romeandassociates.com>, Brad Cebeci
<bcebeci@romeandassociates.com>, Jennifer Cho
<JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order,
and ESI Order (TE No. 015949-008)

Brianna,

I will take your proposal back to my client, but as I explained previously, the section at
issue is more than just complying with export laws and regulations. My client cannot
agree to allow its sensitive or proprietary information to leave the United States in a
manner that creates a risk that the data may be in some way leaked in a foreign
jurisdiction, even if inadvertently. Even allowing the viewing of the material outside the
US is a big compromise for my client.

There are numerous ways in which Mr. Cebeci can view under seal filings or draft work
product such that it is stored solely on US computers but viewable in Guatemala. We
would strongly encourage your firm to investigate these methodologies and tools in an
effort to avoid having to bring this issue to the Court for resolution. I therefore ask you
to consider these potential workarounds one final time to see if your client can live with
the proposed language.

We will talk to our client in the meantime.

Steven

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Friday, February 26, 2021 10:37 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Steele, David J.
<David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>;
Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci
<bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI
Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

Steven,

In response to your Feb 22 email, our partner who is located in Guatemala is Brad
Cebeci.  We have no issue with him signing the acknowledgement and agreement
before receiving Protected Material, but we cannot agree that he is prohibited from

downloading, copying, saving, or storing any Protected Material.  He needs to be able to download under seal Court filings and save drafts of his own work product that might contain Protected Material (for example) in order to work on the case.

As a compromise, however, we can agree that the prohibition on downloading or viewing material outside of the US shall apply to material that Plaintiffs have identified as subject to Export Control laws.  Therefore, paragraph 12.3(a) requiring the producing party to be responsible for identifying any such controlled technical data should be reinserted.

Additionally, our e-discovery vendor, DISCO, confirmed that all data for this matter can be maintained in AWS data centers located solely in the United States. We will have them put this provision in our contract with them. They can sign the acknowledgement and agreement as well.  They are a reputable and highly qualified vendor and to the extent Plaintiffs have any questions about their security practices, our offer to put you directly in touch with them still stands.

Please confirm that this compromise is acceptable and provide a word version of your last redline.  If Plaintiffs agree, I will make these changes in the word document so we can get it on file.

Brianna

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Tuesday, February 23, 2021 at 12:54 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Hi Brianna,

We understood subsection (a) to require the Producing Party to identify any information that may not leave the territorial bounds of the United States and therefore deleted it in light of the changes to subsection (b). If subsection (a) is intended to stand alone from subsection (b), please let us know along with your reasoning, and we can bring it back to our clients.

Best,
Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Tuesday, February 23, 2021 11:41 AM

**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Thanks, Steven.  We will discuss and get back to you.

However, in briefly reviewing the document, I see that you deleted the first paragraph under 12.3 which requires the producing party to be responsible for identifying any data that is subject to export control laws.  As I noted in the comment, that language comes from the model order.  Could you provide your reasoning for removing it?

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Monday, February 22, 2021 at 2:03 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Hi Brianna,

I am attaching a clean and a redline of the Protective Order. The redline should have been run off of your last proposed changes; however, we would encourage you to run your own redline to ensure accuracy.

It looks like we are close to finalizing the document, and we are hopeful our revisions to the export control section strike a reasonable compromise. You'll see that we have provided a place to identify the outside counsel of record at issue, and it would be helpful if you could provide that information for our review as soon as possible.

We cannot, however, agree to vendors storing information outside of the United States. There are numerous highly-qualified US-based vendors who provide service abroad but maintain their servers in the US. We must hold firm on the vendor issue, but perhaps we could attempt to work around it if you could (a) identify the name of the vendor, (b) determine whether the vendor has the capability of ensuring storage for this data on US-based servers, and (c) have the vendor sign the acknowledgment and agreement to be bound.

We look forward to receiving your comments on the protective order as well as on the ESI order we previously sent.

Best,
Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Tuesday, February 9, 2021 12:43 PM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Steele, David J.
<David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>;
Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Brad Cebeci
<bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI
Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Steven,

I have accepted most of your changes, with the exception of the export control
restrictions.

As we discussed on the call, Defendants' view is that this trademark case is unlikely to
involve production of any technology subject to export control laws. As a compromise,
however, we are willing to agree to the language from the Northern District of
California's model patent protective order, which requires the producing party to
identify any data that is subject to such controls.

Additionally, as we discussed, Defendants cannot agree that no protected material may
leave the territorial boundaries of the U.S., as our firm has a partner working remotely
from Guatemala and we use a cloud-based e-discovery platform. Therefore, at a
minimum we need the parties' outside counsel and professional vendors carved out
from this provision. We are firm on this. If your clients' concern is data security, I would
be happy to put you in touch with a representative from our e-discovery vendor who
can explain the security measures they take.

Other than these provisions, my only other change was to paragraph 6.3 to clarify that
we are not altering the procedures under the Local Rules for filing another party's
designated material under seal.

Please let me know if these compromises are acceptable.

Brianna

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Tuesday, February 9, 2021 at 11:16 AM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J."
<David.Steele@tuckerellis.com>, Eugene Rome
<erome@romeandassociates.com>, Sridavi Ganesan
<sganesan@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Brad Cebeci

<bcebeci@romeandassociates.com>, Jennifer Cho
<JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Hi Brianna,

I am attaching a clean and redline (run against the version you sent us) of the protective order. We addressed the comments you and I discussed, and we also added a provision at the end of the export control section that we believe would allow the parties to strike a reasonable compromise. We look forward to receiving your comments.

We are working on the ESI order and will revert as soon as possible, hopefully later today.

Best,
Steven

---

**From:** Lauridsen, Steven E.
**Sent:** Monday, February 8, 2021 12:43 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Hi Brianna,

I'm following up with the client. We will do our best to get this turned around. However, given some of the open disputes, like the territorial issue, we would be more comfortable with the parties withholding the confidential portion of tomorrow's productions until the PO is finalized and in place.

Best,
Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Monday, February 8, 2021 9:59 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

Hi Steven,

Following up on this again.  At a minimum, we would like to get the protective order finalized so that we can meet tomorrow's deadline for the initial MIDP production.

Brianna

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Date:** Thursday, February 4, 2021 at 11:18 AM
**To:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Steven,

Thank you for the call yesterday.  I believe we were able to make progress and look forward to finalizing the orders shortly so that we will not have to further delay the initial ESI production deadline.

For Section 4(b) the ESI order, I had told you I would get back to you with our proposal for a date limit for preservation. Out of the disputed domains, the earliest one was first registered on August 14, 2006.  Therefore, we propose that that provision read, "Only ESI created or received on or after August 14, 2006 will be preserved."

I look forward to receiving the updated redline versions of the orders from you.

Brianna

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Wednesday, February 3, 2021 at 8:32 AM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Great. I will send an invite for a Zoom session. In the meantime, here are the discussion points we would like to flag for each of Defendants' proposed revisions:

**Protective Order**

Section 5.2(a) – We do not think this change is feasible. It would require an extremely burdensome and expensive review process, and the actual mechanics of labeling various portions of each page with different levels of protection is prone to error.  Further, how would a party abide by the sharing provisions if parts of each page were separately designated?  This would require extensive redaction and/or paring out portions of text from each page so as not to violate sharing provisions of this Stipulated PO.  Finally, this would greatly complicate the use of documents at deposition, as exhibits, or evidence at trial.

Section 5.2(b) – Same comment. Further, this is already provided for below, but with appropriate caveats: "If only a portion or portions of the Protected Material warrant protection, the Producing Party, to the extent practicable and not burdensome, shall identify the protected portion(s) and specify the level of protection being asserted."

Section 5.3 – We'd like to discuss your reasoning behind this proposed change.

Section 6.3 – We do not read the local rules as requiring the procedure you propose. However, in reviewing Judge Snow's form case management order, it looks like the Court would prefer we have a telephonic conference for such a dispute. Let us know if you agree. See, e.g., n.3.

Section 12.3 – We cannot remove the export control provision. Information brought outside of the United States may be leaked and may not be subject to the same confidentiality laws as here. We propose a reasonable exception request process whereby Defendants must disclose the identity of the person and the country to which they seek to transmit Plaintiffs' materials before doing so, which could replace the express written content provision in the 2nd paragraph of the export control provision. We look forward to discussing this.

**ESI Order**

Section 4(b) – We cannot agree to unlimited data preservation and need to discuss an appropriate timeframe. The N.D. Cal model ESI order contains such a provision. Also, we would like to understand your proposed change concerning the number of custodians per party. These are generally standard provisions for ESI orders.

Section 4(d) –We need to understand the reasoning for the deletion of these data sources and why they would not be reasonably accessible.

Section 5 – This section functions to allow the parties to cull down the data subject to preservation for the particular matter. We'd like to discuss your basis for deleting the language at the beginning of this section. Perhaps a compromise would be to add a provision that the parties will meet and confer to determine whether any data  sources fall into this category.

Section 5(a) – The deleted language is from the model N.D. Cal. order and comports with our experience for e-discovery (e.g., meeting and conferring on search terms for RFPs). You have not made an alternative proposal for keyword formulation and searching.

Section 7 – the phasing of discovery comes from the N.D. Cal. model order, and we do not understand your basis for deleting it.

FRE 502(d) language – We would like to discuss this deletion and how the provision relates to the separate FRE 502(d) order.

Section 8(b) – We cannot agree to log all communications between in-house counsel that post-date the filing of the lawsuit. This would be a logistical nightmare and would require constant supplementation of the privilege log.

Section 8(e) – Let's discuss privilege log timing; we should be able to get onto the same page.

Appendix A, Section 4 – These are standard fields needed for document production databases. We'd like to understand your reasoning for proposing this deletion as it will make data management more difficult for all parties.

Best,
Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Wednesday, February 3, 2021 7:41 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

I am available this afternoon at 1.

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Tuesday, February 2, 2021 at 5:53 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Brad Cebeci <bcebeci@romeandassociates.com>, Jennifer Cho <JCho@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Brianna,

Are you available to discuss some of these edits and Plaintiffs' comments to them tomorrow? I have availability all day except from 10:00-11:00 a.m. I will follow up tonight with written comments/edits, but I wanted to reach out now about getting the conference on the schedule.

Best,
Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Friday, January 29, 2021 7:51 AM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Brad Cebeci <bcebeci@romeandassociates.com>; Jennifer Cho <JCho@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

**<<< EXTERNAL EMAIL >>>**

---

Steven,

Our proposed edits to the protective order and ESI protocol are attached. We have no revisions to the clawback order other than the change to our signature block. If these versions are acceptable to Plaintiffs, you have my permission to accept all changes, add my e-signature, and file.

We are willing to agree to a one-week extension to allow time for the Court to enter the orders, but we would need Court permission to do so. The MIDP Order provides that: "Unless the Court orders otherwise, a party must produce the ESI identified under paragraph B.3 within 40 days after serving its initial response." If Plaintiffs prepare a stipulation and order, we will work with you to get it on file today.

Alternatively, we would be willing to agree to treat all documents produced in accordance with the terms of the protective order pending entry of the Order by the Court.

Brianna

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Thursday, January 28, 2021 at 5:49 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J." <David.Steele@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>
**Subject:** RE: Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Brianna,

Following up on this, given that Defendants will need time to review these documents and given that the Court will need some time to review and enter the various orders once we agree on them, we propose that the parties agree to push out the February 2 document production deadline by a week.

We would like a formalized protective order in place before production, and it makes sense to have the ESI protocol finalized and agreed upon by the parties before we start producing large amounts of ESI documents.

Please let us know if you agree. Our understanding from our local counsel is that we can make this agreement among the parties and do not need to file a stipulation with the Court.

Best,
Steven

---

**From:** Lauridsen, Steven E.
**Sent:** Thursday, January 28, 2021 12:04 AM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>; Steele, David J. <David.Steele@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>
**Subject:** Facebook v. Namecheap - Draft Protective Order, FRE 502(d) Order, and ESI Order (TE No. 015949-008)

Counsel:

I am attaching a draft protective order, FRE 502(d) clawback order and agreement, and ESI order. We look forward to receiving your comments.

Best,
Steven

**Steven E. Lauridsen | Attorney | Tucker Ellis LLP**
515 South Flower Street, Forty-Second Floor| Los Angeles, CA 90071
Direct: 213-430-3308 | Fax: 213-430-3409
steven.lauridsen@tuckerellis.com
tuckerellis.com

Exhibit B



2029 Century Park East, Suite 450        Phone: **310.282.0690**
Los Angeles, CA 90067                         Fax:    **310.282.0691**

www.romeandassociates.com

March 18, 2021

**VIA EMAIL ONLY**

David Steele
Tucker Ellis LLP
515 Flower Street, Suite 4200
Los Angeles, CA 90071
Email: david.steele@tuckerellis.com

> **Re:**    ***Facebook, Inc. et al. v. Namecheap, Inc. et al.***, No. 2:20-cv-00470-GMS
> ***Domain Name Disclosure Requests***

Dear David,

I write in response to your letters emailed to us on March 11, 2021 and March 15, 2021, in which Facebook and its affiliates request disclosure of the identity and current contact information provided by the licensee for 67 and 103 domain names pursuant to RAA § 3.7.7.3. I note that the March 11 letter actually doesn't even bother to affirmatively state that my client is associated with all the domains you have identified. Rather, you write: "Whoisguard, Inc. is listed as the registered name holder ***for many*** of the 67 domain names listed on Exhibit A." What is your expectation as to my client's obligations for the domains that are unaffiliated with Whoisguard?

As you know, Section 3.7.7.3 provides that "A Registered Name Holder licensing use of a Registered Name according to this provision shall accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing the Registered Name Holder reasonable evidence of actionable harm."

Assuming, arguendo, that it applies, which it clearly does not since the RAA carves out third party beneficiaries in unambiguous language, your clients have plainly failed to offer ***any*** "reasonable evidence of actionable harm" caused by wrongful use of the domain names. As with your previous letters, there is no evidence provided whatsoever regarding any use of the domain names, let alone wrongful use. With these recent two letters, you have failed to even provide the WHOIS records for the domains which would show whether the domains are active, suspended, or expired. Domains that are already suspended or expired obviously cannot be used for "wrongful use."

Moreover, without any screenshots or other evidence showing how the domains have been used, you have failed to provide "reasonable evidence" of infringement. For many of the domains, it is not clear that the domain name is even referring to your clients at all (*e.g*., the numerous "realestate-fb-listing" and "real-estate-item" domains). Others may be legitimate noncommercial or fair uses, like the domain jokesforwhatsapp.com. The evident contention that even a whisper

March 18, 2021
David Steele
Page 2

of your clients' respective name is somehow actionable as infringement is without basis in law, as you well know.

Without any evidence of how the domains have been used, it is impossible to make a determination that "actionable harm" has occurred. Nor can we verify your client's bare conclusive statements that the domains were used in bad faith in violation of the Uniform Domain Name Dispute Resolution Policy, or that the registrants acted with a "bad faith intent to profit" in violation of the ACPA.

The evidence of this boilerplate language without any analysis whatsoever is apparent. Your inclusion of references to the ownership of marks like OCULUS that are not even relevant to the listed domains shows that your letters are boilerplate form letters. This is plainly not what was intended by Section 3.7.7.3's requirement of providing "reasonable evidence of actionable harm."  Rather, this practice of sending letters bereft of any analysis but presenting broad claims of abuse is plainly abusive.

Notwithstanding the above, however, we are producing the requested information in good faith out of an abundance of caution based upon Judge Snow's Order of November 11, 2020 on the motions to dismiss. Attached are two excel spreadsheets containing the registrant's identity and current contact information provided by the registrant for the requested domains. We are designating this information HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY under the Stipulated Protective Order.

This response is not intended as, nor should be deemed to constitute, a waiver or relinquishment of our clients' rights, defenses, or remedies, all of which are expressly reserved.

Very truly yours,

*Eugene Rome*

Eugene Rome


Attachments:
Domain contacts 03-11 letter HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY.xlsx
Domain contacts 03-15 letter HIGHLY CONFIDENTIAL – ATTORNEYS EYES ONLY.xlsx

Exhibit C

# Tucker
# Ellis | LLP

515 South Flower Street, Forty Second Floor | Los Angeles, CA 90071-2223 | TEL 213.430.3400 | FAX 213.430.3409

Direct Dial 213.430.3360 | david.steele@tuckerellis.com

**Via Email to:**
        erome@romeandassociates.com

March 26, 2021

Eugene Rome, Esq.
Rome & Associates
2029 Century Park East, Suite 450
Los Angeles, California 90067

Re:     *Facebook, Inc. v. Namecheap, Inc.*, No. 2:20-cv-00470-GMS
        Domain Name Disclosure Requests
        *Tucker Ellis Matter No. 015949-008*

Dear Eugene:

        I write in response to your March 18, 2021 letter in which you provided two spreadsheets containing certain of your clients' customers' identities and current contact information ("customer information"). As you know, this information was provided in response to Facebook's notice of actionable harm disclosure requests concerning various domain names pursuant to RAA 3.7.7.3.[1] While we appreciate your clients having provided this information, we note that you have attempted to designate the information as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY pursuant to the terms of the stipulated—but not entered— protective order in this action. This designation is improper for a number of reasons.

        As an initial matter, because the protective order has not been entered in this action, its terms providing for confidentiality designations do not yet apply. During negotiations concerning the terms of the protective order, your clients proposed that the parties agree that the protective order's basic terms would govern the production of information pending entry by the Court. Plaintiffs specifically rejected this proposal given the number of issues remaining to be finalized. As such, there was no interim agreement concerning the designation of confidential information. Indeed, all confidential information has been—per agreement of the parties— withheld from production pending entry of the protective order. Designation of any information as subject to the protective order is thus premature.

        Even after the protective order is entered by the Court, the confidentiality designations are still improper because the customer information is not subject to the protective order. That Facebook sent your clients requests concerning various domain names does not *per se* sweep those domain names into this action, nor does it make the customer information "Discovery Material" subject to the protective order. Section 2.6 of the protective order defines Discovery Material as "items or information . . . produced or generated in disclosures or responses to

---

[1] As you also know, Facebook uses this information in connection with its legitimate interest to enforce its trademark rights and to protect Facebook's users.

CHICAGO   CLEVELAND   COLUMBUS   LOS ANGELES   SAN FRANCISCO   ST. LOUIS | tuckerellis.com

# Tucker
# Ellis | LLP

Eugene Rome, Esq.
March 26, 2021
Page 2

discovery in this matter." Your clients voluntarily provided the customer information in response to Facebook's disclosure request separate and apart from any disclosure or discovery requirement in this action. As a result, the customer information does not fall within the ambit of the protective order at all, making your clients' designation of that information as Protected Material warranting a confidentiality designation of any kind improper. Section 7.2 of the protective order provides that Protected Material may be used "only for prosecuting, defending or attempting to settle this litigation and related appeals." Given the customer information was not provided in connection with this litigation, restricting Facebook's use of the customer information in this manner would inappropriately limit Facebook's brand enforcement efforts outside of this lawsuit. In fact, your clients have previously provided this same type of information in response to Facebook's requests without any confidentiality protections whatsoever, thus belying any claim that any confidentiality protection, much less a "highly confidential" designation, is now warranted.

We therefore request that your clients immediately de-designate these documents, particularly given that the designation appears to have been calculated to interfere with our client's ability to review this information and make decisions related to its ongoing brand enforcement separate and apart from this lawsuit. If you refuse to withdraw the designation of the customer information, Plaintiffs will challenge the designation pursuant to Section 6.2 of the protective order and request a conference of counsel within 14 days of the date of this letter.[2]

To avoid Court intervention, we look forward to receiving confirmation that your clients have withdrawn these designations. Otherwise, please provide several dates and times when you are available to meet and confer.

Sincerely,
TUCKER ELLIS LLP

David J. Steele
Attorney

cc:     All counsel of record

DJS:dd

---

[2] While the protective order does not govern your clients' voluntary disclosure of this information, Plaintiffs will challenge your clients' improper designations pursuant to the protective order's procedure for challenging confidentiality designations under Section 6.2.

Exhibit D

**Steele, David J.**

| | |
|---|---|
| **From:** | Brianna Dahlberg <BDahlberg@romeandassociates.com> |
| **Sent:** | Wednesday, April 7, 2021 11:16 AM |
| **To:** | Steele, David J. |
| **Cc:** | Kroll, Howard A.; Lauridsen, Steven E.; Eugene Rome; Sridavi Ganesan; Brad Cebeci |
| **Subject:** | Facebook v. Namecheap - meet and confer |

**<<< EXTERNAL EMAIL >>>**

---

Dear David,

I am writing in response to your March 26 letter to Eugene regarding the confidentiality designations of Namecheap's customer information.  We disagree with the positions taken in your letter, and in particular, your allegation that Namecheap designated this material confidential in order to interfere with your client's brand enforcement efforts. The customers' personal information is subject to privacy laws, including the GDPR, which necessitates confidentiality.  We also disagree with your statement that the information was not provided in connection with the litigation.

We are available to meet and confer Friday afternoon at 2:30. On the same call, we would like to discuss the timing of the remainder of the parties' initial MIDP productions.  Now that the Court has entered the protective Order, WhoisGuard expects to produce the confidential portion of its MIDP production either this afternoon or tomorrow.  Please note that in this production, we will be reproducing copies of all previously produced customer information that are labeled with the appropriate confidentiality designations.

Please let us know if 2:30 on Friday afternoon works for you.

Brianna

Exhibit E

**Steele, David J.**

---

| | |
|---|---|
| **From:** | Steele, David J. |
| **Sent:** | Monday, April 19, 2021 4:58 PM |
| **To:** | Brianna Dahlberg |
| **Cc:** | Kroll, Howard A.; Eugene Rome; Sridavi Ganesan; Brad Cebeci; Lauridsen, Steven E.; Sindelar, Jeffrey C. |
| **Subject:** | RE: Facebook v. Namecheap - meet and confer |

Brianna,

Thank you for sending us the proposed addendum to the protective order. We have reviewed it with our clients; however, it does not sufficiently address the issues we raised. As discussed in our letter, the reveal request information should not be governed by the protective order in this action at all. Still, we understand your clients' concerns raised during our conference of counsel about preventing the misuse and publication of customer information. We accordingly propose the following compromise.

Plaintiffs agree that they will only use the information in connection with their abuse investigation, mitigation and enforcement efforts, and will not publish the information, but may use and disclose the information consistent with these legitimate purposes and applicable data protection law. Plaintiffs' agreement would apply to any additional reveal requests sent by our clients, regardless of whether this action remains pending or has been resolved. For the purposes of this agreement, publication is defined as posting a significant portion of the information received from Defendants from these disclosure requests on a publicly accessible website.

The proposed compromise accomplishes all parties' goals while keeping the procedure for handling such information as streamlined as possible. Please let us know whether this is agreeable to you and your clients.

David

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Tuesday, April 13, 2021 5:57 PM
**To:** Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Steele, David J. <David.Steele@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - meet and confer

**<<< EXTERNAL EMAIL >>>**

---

Steven,

We have considered your position and offer the following proposed stipulated addendum to the protective order, which we believe allows Plaintiffs to meet their brand enforcement objectives while appropriately balancing the privacy concerns over the customers' personal information.

We have drafted the brand enforcement carve-out to broadly include any other legal or quasi-legal matters. We have also included a provision that states that by entering into the addendum, the parties are not agreeing or disagreeing that the domains at issue are properly part of the action.

Please let us know whether these terms are acceptable to Plaintiffs.  We would appreciate a response no later than the end of the day on Friday.

Brianna

---

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Monday, April 12, 2021 at 4:38 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J." <David.Steele@tuckerellis.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - meet and confer

Brianna,

We appreciate you and your team taking the time to meet with us today. As we discussed, Defendants will provide a proposed carve-out compromise for customer data by close of business tomorrow. We also agreed that our conference of counsel today covered both the documents identified in David Steele's March 26, 2021 letter as well as analogous documents contained in Whoisguard's confidential MIPD production. Please let me know as soon as possible if your understanding differs.

Best regards,
Steven

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Thursday, April 8, 2021 10:29 AM
**To:** Steele, David J. <David.Steele@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - meet and confer

**<<< EXTERNAL EMAIL >>>**

---

David,

3 pm on Monday works for us.

Brianna

---

**From:** "Steele, David J." <David.Steele@tuckerellis.com>
**Date:** Wednesday, April 7, 2021 at 7:48 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan

<sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - meet and confer

Brianna,

Unfortunately, Friday is booked solid.

Are you available on any of the following days/times: Monday at 2:00 pm or 3:00 pm , or 4:00 pm; Tuesday at 10:00 am, or 2:00 pm; or Wednesday at 11:00 am, or 2:00 pm?

David

---

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Wednesday, April 7, 2021 11:16 AM
**To:** Steele, David J. <David.Steele@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** Facebook v. Namecheap - meet and confer

**<<< EXTERNAL EMAIL >>>**

---

Dear David,

I am writing in response to your March 26 letter to Eugene regarding the confidentiality designations of Namecheap's customer information.  We disagree with the positions taken in your letter, and in particular, your allegation that Namecheap designated this material confidential in order to interfere with your client's brand enforcement efforts. The customers' personal information is subject to privacy laws, including the GDPR, which necessitates confidentiality.  We also disagree with your statement that the information was not provided in connection with the litigation.

We are available to meet and confer Friday afternoon at 2:30. On the same call, we would like to discuss the timing of the remainder of the parties' initial MIDP productions.  Now that the Court has entered the protective Order, WhoisGuard expects to produce the confidential portion of its MIDP production either this afternoon or tomorrow.  Please note that in this production, we will be reproducing copies of all previously produced customer information that are labeled with the appropriate confidentiality designations.

Please let us know if 2:30 on Friday afternoon works for you.

Brianna

# Exhibit F

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Facebook Incorporated, et al.,)
                              )
          Plaintiffs,         )      2:20-cv-0470-GMS
                              )
     vs.                      )      Phoenix, Arizona
                              )      April 28, 2021
Namecheap Incorporated,       )
et al.,                       )          10:28 a.m.
                              )
          Defendants.         )
_____)


BEFORE:  THE HONORABLE G. MURRAY SNOW, CHIEF JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS

TELEPHONIC DISCOVERY DISPUTE - IN CHAMBERS


Official Court Reporter:
Charlotte A. Powers, RMR, FCRR, CRR, CSR, CMRS
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 40
Phoenix, Arizona  85003-2151
(602) 322-7250

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

<u>A P P E A R A N C E S</u>

For the Plaintiffs:

       Tucker Ellis, LLP - Los Angeles, CA
       By: HOWARD ALAN KROLL, ESQ.
          STEVEN ERICK LAURIDSEN, ESQ.
          DAVID JEFFERSON STEELE, ESQ.
       515 S. Flower, 42nd Floor
       Los Angeles, CA  90071

For the Defendants:

       Rome & Associates, APC
       By: EUGENE ROME, ESQ.
          BRIANNA DAHLBERG, ESQ.
       2029 Century Park E, Suite 450
       Los Angeles, CA  90067

```
 1                      P R O C E E D I N G S

 2              (Proceedings resume at 10:28 a.m.)

 3         THE COURT:  Hello, it's Judge Snow.

 4         Who do I have on the line?

 5         MR. ROME:  Good morning, Judge Snow.

 6         You have Eugene Rome for defendant and counterclaimant

 7    Namecheap and WhoisGuard, Inc.

 8         THE COURT:  Good morning.

 9         No one else on the line yet?

10         MR. ROME:  Not yet, sir.

11                   (Pause in proceedings.)

12         MS. DAHLBERG:  Hi, this is Brianna Dahlberg.

13         MR. STEELE:  Hey, Brianna.  How are you?

14         MS. DAHLBERG:  I'm good.  How are you?

15         MR. STEELE:  Good.  Thank you.

16         This David Steele, and you've got Steven Lauridsen and

17    Howard Kroll as well.

18         MR. ROME:  We also have the Court, gentlemen, and

19    ladies.

20         Judge Snow, I believe all parties are on the call.

21         THE COURT:  All right.  So who asked for the

22    conference?

23         MR. STEELE:  Plaintiffs did, Your Honor.

24         THE COURT:  All right.  So what is the issue?

25         MR. STEELE:  Well, the dispute has come up over who
```

```
 1    is --
 2              THE COURT:  Wait a minute, wait a minute.  Wait a
 3    minute, please.
 4              Could you identify yourself first before you speak?
 5    And could I --
 6              MR. STEELE:  I'm sorry, Your Honor.
 7              THE COURT:  And could I ask you, because this
 8    conference is being transcribed, could I ask you not only to
 9    identify yourselves before you speak, whoever you are, but also
10    speak slowly and distinctly so what we can get an accurate
11    record, please.
12              MR. STEELE:  Sure thing.
13              Good morning, Your Honor.  That is David Steele,
14    counsel for --
15              THE COURT:  Wait, wait.
16              Okay.  David Steele, counsel for Facebook.  Who else
17    is on the phone with you?
18              MR. STEELE:  With us for plaintiffs, Your Honor, is
19    Howard Kroll and Steven Lauridsen.
20              THE COURT:  Okay.
21              And defendants?
22              MS. DAHLBERG:  Well, good morning, Your Honor.
23              This is Brianna Dahlberg on behalf of defendant
24    Namecheap and WhoisGuard.  And on the phone with me is Eugene
25    Rome.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  All right.  So who -- who now is speaking;

2    is it you, Mr. Steele?

3          MR. STEELE:  Yes, Your Honor.

4          THE COURT:  All right.

5          MR. STEELE:  So a dispute has come up, Your Honor,

6    regarding WhoisGuard's designation of information that it

7    previously provided to Facebook, not as part of any discovery

8    response and without any previous assertion of confidentiality.

9    But WhoisGuard has recently produced in discovery the same

10   information that it previously provided, and it's designated

11   that information as Attorneys' Eyes Only.  And plaintiffs

12   believe that this information is outside the scope of the

13   protective order and that those designations should be removed.

14          If it helps, I can provide some background information

15   about the documents at issue.

16          THE COURT:  All right.

17          MR. STEELE:  So pursuant to the contract system that I

18   can provide for registrars and their proxy companies like

19   WhoisGuard, Facebook sent some 13 letters requests to

20   WhoisGuard asking for information about certain harmful domain

21   names, and WhoisGuard -- we asked specifically that WhoisGuard

22   identify its customers for the domain names.

23          The Facebook requests or letters were not discovery

24   requests, the letters didn't compel WhoisGuard to provide the

25   information, and the letters were all clearly identified as

1          being sent pursuant to the ICANN contract system.

2                  In turn, WhoisGuard voluntarily provided the

3          information that was requested, and Facebook has -- has used

4          this information to prevent online harm in its use.

5                  WhoisGuard has made clear with the Court in other

6          filings that it's provided this very information voluntarily.

7          And with the exception of the most recent request and response

8          by WhoisGuard, WhoisGuard has placed no restrictions on the

9          information.  It's placed no restrictions on its use, and it's

10         never advised Facebook that the information it provided was

11         confidential or protected in any way whatsoever.

12                 Now that the protective order has been entered in the

13         case and WhoisGuard has made their production of MIPD

14         documents, it's produced as discovery this very same

15         information, except it's now designated the information as

16         AEOs, as Attorneys' Eyes Only.  And so a dispute has come up

17         whether that information is subject to a protective order, and

18         whether those designations are proper.

19                 The protective order in the case makes clear that the

20         scope of the order only covers documents which are produced or

21         generated in disclosures or responses to discovery, and so this

22         information should not be part of the protective orders.  It's

23         not covered by the protective order.  And so the information

24         should not be designated as Confidential.

25                 We've -- obviously we're mindful that WhoisGuard has

1   concerns about the information of its customers being released,

2   and we've offered to treat that information confidentially,

3   we've offered to not disclose it, we've offered to only use it

4   in connection with our legitimate enforcement and abuse

5   efforts.  And we've also offered to have that information be

6   treated obviously consistent with the applicable laws on that

7   information.  But WhoisGuard insists that the information be

8   protected under the protective order because, as they put it,

9   Facebook can't be trusted to comply with the law.

10          So we'd like the Court to help us resolve this

11  dispute.

12          THE COURT:  Ms. Dahlberg?

13          MS. DAHLBERG:  Yes, Your Honor.

14          To clarify, the information at issue are spreadsheets

15  containing the personal data of approximately 1,900 Namecheap

16  customers which WhoisGuard has designated as Attorneys' Eyes

17  Only under the stipulated protective order.  And these are the

18  customers who registered domain names that the plaintiffs claim

19  are infringing upon their trademark.  They asserted claims for

20  cyber squatting and trademark infringement based on these

21  domains.

22          The defendants produced this customer information,

23  both in response to plaintiff's demand letters as well as in

24  connection with WhoisGuard's initial disclosures in the case.

25  Some of the information was first produced with the AEO

1    designation after the parties had stipulated to the productive

2    order but before it was entered with the Court.  There was --

3    there was a period of several months where the -- the terms of

4    the protective order were being negotiated; and after we agreed

5    and filed, we were waiting for the Court to enter it.

6            The basis for the -- the designation is two reasons:

7            First, the privacy interests of the customers.  These

8    are customers who had enabled the WhoisGuard privacy service

9    specifically to prevent their personal information from

10   becoming published, being made public.

11           And secondly, and -- and more importantly for

12   defendants, as domain -- a domain registrar, Namecheap is

13   subject to the European Union's General Data Protective --

14   Protection Regulation, the GDPR privacy law, which certainly

15   limits the disclosure needs of customer information.

16           If the plaintiffs were to publish this type of

17   information, or to publicly file it, defendants could

18   potentially be subject to enormous financial penalties.  So

19   therefore, disclosure of the customer information would create

20   a substantial risk of serious harm under the protective order.

21   And so therefore, we believe that that information is properly

22   designated.

23           It's notable that Facebook itself has been -- or is

24   currently subject to a number of investigations for violating

25   the GDPR.  They were also recently fined $5 billion by the FCC

1    for violations of privacy laws.  And then in the last month,

2    approximately, it came to light that there was a data breach of

3    an additional 533 million users' information that was obtained

4    by hackers through the GDPR investigation.  And so therefore we

5    have serious concerns with the security and privacy of

6    information if it were provided to Facebook without any

7    restrictions on it.

8           While plaintiffs have argued that it's not discovery

9    within the scope of the action, most of these customers

10   correspond through the dominions that are specifically

11   identified in the complaint and the first amended complaint.

12   One of plaintiffs' theories of liability in the case is that

13   defendants can be held contractually liable for harm caused by

14   the customers' registration of domains if they did not disclose

15   this information within seven days of a request from plaintiff.

16          Therefore, the -- the customers' information itself

17   and the defendants' responses to plaintiffs' requests for data

18   are essentially irrelevant to the lawsuit.  WhoisGuard produced

19   it with its initial disclosures, and therefore it falls within

20   the protective order.

21          And now in response to plaintiffs' concerns that this

22   designation would prevent them from using the information for

23   brand enforcement purposes apart from this lawsuit, we propose

24   an addendum to the protective order that was specifically

25   carved out -- carved out of this information to allow

plaintiffs to use it for brand enforcement purposes.  It would

include for any new lawsuits, for brand monitoring, for any

legal requirement or legal purpose.  And so under this purpose

we would remove the AEO designation, they would be allowed to

disclose the customer data to counsel and others reasonably

necessary to accomplish these legitimate purposes, and the

protection would provide even after the lawsuit.  They wouldn't

have to destroy the information at the end the lawsuit.

Plaintiffs rejected this proposal.  You know, we had

drafted a proposed amendment and -- and sent it to them.

They -- they rejected it.  They want to enter into a separate

agreement that will allow them to use and disclose the

information consistent with legitimate purposes under

applicable data protection law.

There's two problems that we have with this proposal:

First, there's no mechanism for defendants to enforce

this agreement.  We would have to file a separate lawsuit.  And

given the history of violations of data protection laws and

privacy laws, we're understandably concerned with its

compliance with privacy laws and with the security of the

information.

And second, the -- the language that they proposed to

us, that they would be able to use the -- the data consistent

with legitimate purposes, is unacceptably vague.  We think that

the proposed language that we offered in our addendum that was

1    drafted is more appropriate.  And therefore, we -- we submit

2    that the carve-out we suggested to the existing protective

3    order is a better compromise.  That would enable plaintiffs to

4    use information for legitimate brand enforcement purposes, but

5    at the same time appropriately protect the privacy of the

6    information.

7            THE COURT:  What's the docket number of the protective

8    order?

9            MS. DAHLBERG:  Just a moment.

10           It's docket number 90.

11           THE COURT:  Okay.  So why is it that a Confidential

12   designation as opposed to a Highly Confidential - Attorneys'

13   Eyes Only designation is required to achieve the protection --

14   or why is it that an Attorneys' Eyes Only as opposed to a

15   Confidential designation is required in this case -- or this

16   information?

17           MS. DAHLBERG:  Well, the proposal that we -- we're

18   offering would basically create a new designation.  So it would

19   be similar to the Confidential designation, but it would apply

20   after the action is over.  They would still be able to use the

21   information, and it would be limited to the -- rather than, you

22   know, for the -- the prosecution of the action or settlement

23   action, it would be for the legal or quasi-legal purposes that

24   I mentioned earlier related to brand enforcement.

25           THE COURT:  Mr. Steele.

1     MS. DAHLBERG:  So what we're offering is like

2  Confidential, but it's broader.

3     THE COURT:  Mr. Steele, what do you want to use the

4  information for?

5     MR. STEELE:  I'm sorry, Your Honor.  I didn't hear

6  your last sentence.

7     THE COURT:  What do you want to use the information

8  for that you can't use it for under an Attorneys' Eyes Only

9  designation?

10     MR. STEELE:  Sure.

11     Under the current order, Your Honor, under the

12  protective order, the information can only be used for

13  litigating the particular case.  And in this case here,

14  unfortunately, I guess in conflict with what -- with what

15  Ms. Dahlberg said, a number of the domain names, for example,

16  are not even part of the case.  We sent notices for domain

17  names that include trademarks that aren't in the case, owned by

18  parties that aren't -- or owned by companies that aren't

19  parties, we've sent notices for domain names that are engaged

20  in malware attacks where the domain name is just a random

21  string of letters.  And -- and WhoisGuard has designated all of

22  that information under the case as Attorneys' Eyes Only.

23     But to your specific question, Your Honor, the

24  requirement under the current order and also under the proposal

25  that defendants raise would limit our ability to share the

1   information with security experts.  And frankly under the

2   proposal that we sent over, we wouldn't be able to send the

3   information to other third-party vendors and other third-party

4   partners who may not be vendors, but are partners in protecting

5   from malware.

6           So in the security context on the Internet, there are

7   a number of different entities who share information about

8   malicious domain names to stop malware attacks and spam attacks

9   and the like.  And if we can't use the information and disclose

10  the information with those entities who are involved in that

11  type of security, then the information has almost no effect for

12  us.  We can't use it effectively.

13          So as the order is currently written, and even under

14  the more broad suggestion that defendants have put forth, the

15  information would be limited as to who we can send it to.  As

16  it's currently written, we can't use the information for any

17  purpose except for litigation.

18          But to my original point -- I'm sorry, Your Honor, go

19  ahead.

20          THE COURT:  I didn't say anything.

21          MR. STEELE:  I beg your pardon.

22          MS. DAHLBERG:  Oh, no.  Go ahead.

23          MR. STEELE:  So to my original point, however, because

24  the information was disclosed by WhoisGuard without any indicia

25  of protection, and was disclosed not in response to discovery

1    requests, the information was specifically carved out of the

2    protective order, and the protective order simply should not

3    apply.

4            THE COURT:  I understand your position.

5            Ms. Dahlberg, is it your position that Facebook could

6    not transmit that information to its security consultants?

7            MS. DAHLBERG:  No, Your Honor.  This -- this is a --

8    this is a new issue that wasn't raised during the

9    meet-and-confer or -- in response to the addendum.

10           But -- well, first of all, as I look at -- you know,

11    if it would be helpful to the Court, I'd offer to submit the

12    addendum that we propose to the Court for its review.  But we

13    are -- we're willing to allow Facebook to use the

14    information -- or submit it to others, you know, to reasonably

15    accomplish those purposes.  We don't -- we don't have any

16    intention of preventing them from, you know, using the

17    information to stop malware attacks or -- or for other

18    legitimate purposes.

19           And also just to clarify, when I say that the proposal

20    that we offered is broader than the current Confidential, I

21    mean it's more favorable to -- to Facebook.  It allows them to

22    use the information for more purposes.

23           MR. STEELE:  Your Honor, if I may just ask one

24    question.  If the information can be freely disclosed to

25    vendors and the like and non-- nonparties in the litigation,

1    then there's effectively no protection coming from the

2    protective order.  So if defendants' proposal is that we can

3    provide the information to other entities, related or

4    otherwise, whether they sign the protective order or not, then

5    frankly I don't understand why the information -- certainly I

6    don't understand why the information is AEO, and I certainly

7    don't understand why the protective order would apply to the

8    information in the first instance.

9            THE COURT:  Well, I'm not going to be able to resolve

10   this over the phone.

11           So Mr. Steele, how many days for you to file your

12   motion challenging this Attorneys' Eyes Only designation?

13           MR. STEELE:  If we could have until next week, Your

14   Honor.  Perhaps Wednesday?

15           THE COURT:  All right.  You can have until Wednesday

16   to file your challenge to the designation.

17           And then how long do you need to file your response,

18   Ms. Dahlberg?

19           MS. DAHLBERG:  One week.

20           THE COURT:  All right.  So you'll have until the

21   following Wednesday.

22           In the meantime, I'd suggest that you see if you can

23   negotiate some sort of an agreement that will be satisfactory

24   to both sides and accomplish what you want.  Sounds to me

25   like -- I'm not terribly convinced that there's enough of a

1    dispute here to worry about.  It does seem to me that Facebook

2    ought to be allowed to use the information with its security

3    consultants to ensure its own protective purposes.  But that

4    doesn't mean there shouldn't be some limits on the use of the

5    information to the extent it involves private information.  So

6    I -- it's -- and it just sounds to me like there's not a whole

7    lot of disagreement among what uses need to be accommodated.

8              So I would suggest that you see if you can resolve it.

9    If you can't, Mr. Steele, I'll expect your motion by next

10   Wednesday, and then the response by the following Wednesday,

11   and I'll rule.

12             MR. STEELE:  Yes, Your Honor.  Thank you.

13             Your Honor, if I may just raise one more issue that's

14   unrelated to this?

15             THE COURT:  Yes.  Have you consulted and you're not

16   able to arrive at agreement?

17             MR. STEELE:  No, Your Honor.  We've not raised this

18   issue at all with the other side.  But I wanted to bring

19   something to the attention of the Court.

20             The -- the parties have filed a motion which is fully

21   briefed, which deals with the registrar certificates, which

22   have been tendered to the Court, that pertains to domain names

23   which the defendants have -- have tendered to the Court.  And

24   as -- it's fully briefed in this motion.  Those domain names

25   are expiring.  The issue in the motion, in part, Namecheap is

```
 1    not actually renewing the domain names which they've tendered
 2    to the Court, and those domain names are expiring.  And as each
 3    week goes by, more and more of the domain names that they've
 4    tendered to the Court are expiring.
 5            So I just wanted to raise the issue to the Court that
 6    as additional time goes by, more and more of those domain names
 7    are -- are being dissipated.  And the issue is fully briefed
 8    for the Court.
 9            THE COURT:  Well, I thank you.  I will decide your
10    motions as they are -- I generally do a FIFO, F-I-F-O, and I
11    appreciate the information.  I'll get to them as soon as I can.
12            MR. STEELE:  We appreciate it, Your Honor.
13            Thank you very much.
14            THE COURT:  Thank you.
15            MR. ROME:  Thank you, Your Honor.
16            MS. DAHLBERG:  Thank you, Your Honor.
17                (Proceedings in recess at 10:51 a.m.)
18
19
20
21
22
23
24
25
```

1          <u>C E R T I F I C A T E</u>

2

3          I, CHARLOTTE A. POWERS, do hereby certify that I am

4     duly appointed and qualified to act as Official Court Reporter

5     for the United States District Court for the District of

6     Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8     a full, true, and accurate transcript of all of that portion of

9     the proceedings contained herein, had in the above-entitled

10    cause on the date specified therein, and that said transcript

11    was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 28th day of April,

13    2021.

14

15                              s/Charlotte A. Powers
                          Charlotte A. Powers, RMR, FCRR
16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

Exhibit G

**Steele, David J.**

| | |
|---|---|
| **From:** | Brianna Dahlberg <BDahlberg@romeandassociates.com> |
| **Sent:** | Tuesday, April 13, 2021 5:57 PM |
| **To:** | Lauridsen, Steven E.; Steele, David J. |
| **Cc:** | Kroll, Howard A.; Eugene Rome; Sridavi Ganesan; Brad Cebeci |
| **Subject:** | Re: Facebook v. Namecheap - meet and confer |
| **Attachments:** | Facebook vs  NameCheap - Addendum to Protective Order(2).docx |

**<<< EXTERNAL EMAIL >>>**

Steven,

We have considered your position and offer the following proposed stipulated addendum to the protective order, which we believe allows Plaintiffs to meet their brand enforcement objectives while appropriately balancing the privacy concerns over the customers' personal information.

We have drafted the brand enforcement carve-out to broadly include any other legal or quasi-legal matters. We have also included a provision that states that by entering into the addendum, the parties are not agreeing or disagreeing that the domains at issue are properly part of the action.

Please let us know whether these terms are acceptable to Plaintiffs.  We would appreciate a response no later than the end of the day on Friday.

Brianna

**From:** "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>
**Date:** Monday, April 12, 2021 at 4:38 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>, "Steele, David J." <David.Steele@tuckerellis.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - meet and confer

Brianna,

We appreciate you and your team taking the time to meet with us today. As we discussed, Defendants will provide a proposed carve-out compromise for customer data by close of business tomorrow. We also agreed that our conference of counsel today covered both the documents identified in David Steele's March 26, 2021 letter as well as analogous documents contained in Whoisguard's confidential MIPD production. Please let me know as soon as possible if your understanding differs.

Best regards,
Steven

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Thursday, April 8, 2021 10:29 AM
**To:** Steele, David J. <David.Steele@tuckerellis.com>

1

Cc: Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** Re: Facebook v. Namecheap - meet and confer

**<<< EXTERNAL EMAIL >>>**

David,

3 pm on Monday works for us.

Brianna

**From:** "Steele, David J." <David.Steele@tuckerellis.com>
**Date:** Wednesday, April 7, 2021 at 7:48 PM
**To:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Cc:** "Kroll, Howard A." <Howard.Kroll@tuckerellis.com>, "Lauridsen, Steven E." <Steven.Lauridsen@tuckerellis.com>, Eugene Rome <erome@romeandassociates.com>, Sridavi Ganesan <sganesan@romeandassociates.com>, Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** RE: Facebook v. Namecheap - meet and confer

Brianna,

Unfortunately, Friday is booked solid.

Are you available on any of the following days/times: Monday at 2:00 pm or 3:00 pm , or 4:00 pm; Tuesday at 10:00 am, or 2:00 pm; or Wednesday at 11:00 am, or 2:00 pm?

David

**From:** Brianna Dahlberg <BDahlberg@romeandassociates.com>
**Sent:** Wednesday, April 7, 2021 11:16 AM
**To:** Steele, David J. <David.Steele@tuckerellis.com>
**Cc:** Kroll, Howard A. <Howard.Kroll@tuckerellis.com>; Lauridsen, Steven E. <Steven.Lauridsen@tuckerellis.com>; Eugene Rome <erome@romeandassociates.com>; Sridavi Ganesan <sganesan@romeandassociates.com>; Brad Cebeci <bcebeci@romeandassociates.com>
**Subject:** Facebook v. Namecheap - meet and confer

**<<< EXTERNAL EMAIL >>>**

Dear David,

I am writing in response to your March 26 letter to Eugene regarding the confidentiality designations of Namecheap's customer information.  We disagree with the positions taken in your letter, and in particular, your allegation that Namecheap designated this material confidential in order to interfere with your client's brand enforcement efforts. The customers' personal information is subject to privacy laws, including the GDPR, which necessitates confidentiality.  We also disagree with your statement that the information was not provided in connection with the litigation.

We are available to meet and confer Friday afternoon at 2:30. On the same call, we would like to discuss the timing of the remainder of the parties' initial MIDP productions.  Now that the Court has entered the protective Order, WhoisGuard expects to produce the confidential portion of its MIDP production either this afternoon or tomorrow.  Please note that in this production, we will be reproducing copies of all previously produced customer information that are labeled with the appropriate confidentiality designations.

Please let us know if 2:30 on Friday afternoon works for you.

Brianna

1
2
3
4
5
6
7 **IN THE UNITED STATES DISTRICT COURT**

8 **FOR THE DISTRICT OF ARIZONA**

9
10

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation, | Case No. CV-20-470-PHX-GMS |
| | **[PROPOSED] STIPULATED ADDENDUM TO PROTECTIVE ORDER** |
| Plaintiffs, | |
| v. | |
| Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation, | |
| Defendants. | |
| AND RELATED COUNTERCLAIM. | |

Plaintiff and Counterclaim Defendant Facebook, Inc., Plaintiffs Instagram, LLC and WhatsApp Inc. (collectively, "Plaintiffs") and Defendant Namecheap, Inc. and Defendant and Counterclaimant WhoisGuard, Inc. (together, "Defendants") (collectively, with Plaintiffs, "the Parties"), through their respective counsel, hereby stipulate as follows:

WHEREAS, a dispute has arisen over Defendants' designation of certain customer information as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY";

WHEREAS, Defendants produced the customer information at issue both in response to demand letters sent by Plaintiffs' counsel as well as in WhoisGuard's Mandatory Initial Discovery Pilot Project ("MIDP") document production;

WHEREAS, Plaintiffs, through their counsel, have represented that the designations will interfere with their ongoing brand enforcement efforts separate and apart from this lawsuit;

WHEREAS, Defendants deny that any material was improperly designated; and

WHEREAS on April 12, 2021, counsel for the Parties met and conferred via video conference for approximately 45 minutes in an effort to resolve this dispute without the need for Court intervention.

NOW, THEREFORE, without admitting or denying that the domain names in Plaintiffs' demand letters are part of Plaintiffs' claims in this action, IT IS HEREBY STIPULATED that the Protective Order entered by the Court on March 31, 2021 (Doc. No. 90) shall include the following addendum:

### "REVEAL REQUEST" ADDENDUM

1.  <u>DEFINITIONS</u>:

1.1   <u>"REVEAL REQUEST" Protected Material</u>: customer information that is produced in response to demand letters from Plaintiffs' counsel invoking Section 3.7.7.3 of ICANN's Registrar Accreditation Agreement.

1.2     All other definitions set forth in Section 2 of the Stipulated Protective Order shall apply to this Addendum.

2.     MANNER AND TIMING OF DESIGNATIONS:

2.1     "REVEAL REQUEST" Protected Material shall be designated in the same manner as other categories of Protected Material.

2.2     For material that was previously produced, the Producing Party shall reproduce copies of the Protected Material that are labelled with the appropriate designation. The Receiving Party shall promptly destroy or return the previously produced copies.

3.     ACCESS TO AND USE OF "REVEAL REQUEST" PROTECTED MATERIAL:

3.1     A Receiving Party may use "REVEAL REQUEST" Protected Material for the following purposes: brand enforcement, including but not limited to initiating and maintaining new lawsuits; proceedings under Uniform Domain-Name Dispute-Resolution Policy ("UDRP"); arbitration proceedings; and/or any other legal or quasi-legal matter, which specifically includes pre-litigation advocacy such as sending cease and desist letters, serving subpoenas, and engaging in ongoing monitoring efforts with respect to the domains and/or registrants at issue.

3.2     A Receiving Party may disclose "REVEAL REQUEST" Protected Material to:

(a) outside counsel, as well as their employees, to whom disclosure is reasonably necessary for the purposes in Section 3.1 above; and

(b) all categories of persons to whom "CONFIDENTIAL" Protected Material may be disclosed pursuant to Section 7.2 of the Stipulated Protective Order.

3.3     A Receiving Party must store and maintain Protected Material at a location and in a secure manner that ensures that access is limited to authorized persons.

3.4     After the final disposition of this action, the Receiving Party may continue

to use "REVEAL REQUEST" Protected Material for the brand enforcement purposes in Section 3.1 above.

3.5     All other terms of the Stipulated Protective Order shall otherwise apply and remain in effect, unless the Designating Party agrees otherwise in writing or a court order otherwise directs.

3.6     By entering into this Addendum to the Stipulated Protective Order, the Parties do not agree or disagree that the domains subject of the REVEAL REQUESTS are properly  part of this action. This Addendum shall not be introduced into evidence during trial of this action.

**SO ORDERED.**