**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA 90067
Telephone: 310-282-0690
Facsimile: 310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendant Namecheap, Inc. and Defendant/Counterclaimant WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**DEFENDANTS NAMECHEAP, INC. AND WHOISGUARD, INC.'S OPPOSITION TO PLAINTIFFS' MOTION CHALLENGING DESIGNATION OF LICENSEE INFORMAION (DOC. 98)**<br><br>Filed with: Declaration of Brianna Dahlberg; Proposed Addendum to Stipulated Protective Order |
| WhoisGuard, Inc., a Republic of Panama corporation,<br><br>Counterclaimant,<br><br>v.<br><br>Facebook, Inc., a Delaware corporation,<br><br>Counterclaim Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff and Counterclaim Defendant Facebook, Inc. ("Facebook") and Plaintiffs Instagram, LLC, and WhatsApp Inc. (collectively with Facebook, "Plaintiffs") have filed a motion to de-designate the non-public personal customer information associated with approximately 2,400 domain names, which Defendant and Counterclaimant WhoisGuard, Inc. ("WhoisGuard") designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY ("AEO") under the Stipulated Protective Order.

Contrary to Plaintiffs' arguments, the customer information was appropriately designated under the Stipulated Protective Order which provides that materials may be designated AEO when their disclosure would create "a substantial risk of serious harm that could not be avoided by less restrictive means." Doc. 90 at p. 3, § 2.8. The information at issue is personal data subject to the European Union's General Data Protection Regulation 2016/679 ("GDPR"), which imposes strict limitations on its use and disclosure in order to protect privacy. Defendant Namecheap, Inc. ("Namecheap") and WhoisGuard (collectively, "Defendants") are mandated to comply with the GDPR, and violations may result in the imposition of draconian financial penalties. Accordingly, widespread disclosure of the customer data would create "a substantial risk of serious harm" to Defendants, as well as to the privacy interests of the impacted customers.

Plaintiffs argue that the designation of the material interferes with their ability to address trademark violations outside this litigation. At the telephonic conference with the Court held on April 28, 2021, Plaintiffs also raised for the first time their desire for the information to be transmitted to their security consultants to address malware attacks. To address these issues, Defendants offered to amend the Stipulated Protective Order to specifically allow Plaintiffs to use the information for these purposes.

The compromise proposal offered by Defendants strikes an appropriate balance that protects the privacy of the customer information while permitting Plaintiffs to use the information for legitimate purposes. In short, Defendants' proposal allows Plaintiffs to use

the customer information for every purpose they have requested. Indeed, at the telephonic conference, the Court noted that there is not a lot of disagreement about what uses need to be accommodated and instructed the parties to see if they could negotiate an agreement. Plaintiffs, however, ignored Defendants' further meet-and-confer communications and, rather than abide by the Court's instructions to work out a solution, filed this unnecessary Motion.

Because there is good cause to keep the customer information protected, the Motion should be denied. Instead, Defendants respectfully request the Court to enter the Proposed Addendum to the Stipulated Protective Order submitted herewith (*i.e.*, the compromise proposal Defendants offered to Plaintiffs) which would meet Plaintiffs' stated objectives.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Background on the Action

In this cybersquatting and trademark infringement action, Plaintiffs have asserted claims against Namecheap, an Internet domain registrar, and WhoisGuard, a domain privacy service, seeking to hold them liable for their customers' acts of registering domain names that Plaintiffs contend are identical or confusingly similar to their trademarks. *See generally* Doc. 56 (First Amended Complaint) ("FAC"); *see also* Doc. 52 (11/10/2020 Order on Mot. to Dismiss) at 2-3. Among other things, Plaintiffs allege that WhoisGuard contractually assumed liability for the customers' wrongful use of domains unless it disclosed the customers' identity and contact information within seven days of receiving a request from Plaintiffs, under terms contained in Section 3.7.7.3 of the Registrar Accreditation Agreement ("RAA") between Namecheap and the Internet Corporation of Assigned Names and Numbers ("ICANN").[1]

---

[1] Plaintiffs allege that Section 3.7.7.3 of the RAA is incorporated into Namecheap's Registration Agreement with its customers, and that WhoisGuard is also a party to the Registration Agreement. Plaintiffs further contend that Namecheap is liable for WhoisGuard's actions as its alter ego. Defendants deny these claims.

2

In the operative First Amended Complaint, Plaintiffs allege that Defendants are liable for "at least" 996 allegedly infringing domain names. FAC, ¶ 20. Thus far, Plaintiffs have not provided a definitive list of the domains that they consider to be part of the action despite Defendants' requests. Indeed, Defendants have no practical means of ascertaining which domains presented by Plaintiffs as part of their reveal requests under Section 3.7.7.3 during the course of this litigation will be made a part of Plaintiffs' claims.

### B.     The Customer Data at Issue

This subject of this designations dispute is 13 spreadsheets produced by WhoisGuard that contain the personal customer information for approximately 2,400 domain names, which WhoisGuard designated AEO under the Stipulated Protective Order entered in the action (Doc. 90). For each of these domain names, the customer who selected and registered the domain used WhoisGuard's privacy service, which protects the customer's information from being made available in WHOIS, a public database that contains the identity and contact information of domain name registrants. When WhoisGuard's privacy service is enabled for a domain, the public WHOIS record lists WhoisGuard's information instead of the customer's information. FAC, ¶ 85.

WhoisGuard produced the customer data at issue both in connection with its Mandatory Initial Discovery Pilot Project ("MIDP") disclosures and in response to a series of demand letters from Plaintiffs, all of which were directed to Defendants' counsel and done so after this litigation was commenced. Following the Court's November 10, 2020 Order finding that the complaint sufficiently alleged that WhoisGuard had contractually assumed liability for its customers' actions with respect to the 45 disputed domain names that were at issue in the original complaint (Doc. 52 at 7-8), Plaintiffs' counsel sent Defendants twelve demand letters requesting the customer information for approximately 1,900 additional allegedly infringing domains. In addition, on March 10, 2021 Plaintiffs sent an additional letter requesting customer data for 543 domains unrelated to Plaintiffs' trademarks, which Plaintiffs asserted had been used in a malware attack. In each of their letters, Plaintiffs demanded that Defendants' counsel disclose the customers' identity and contact information

pursuant to Section 3.7.7.3 of the RAA, the same contractual provision giving rise to Plaintiffs' claims in this case. (Plaintiffs refer to all such letters as "Reveal Requests.") For all requests, WhoisGuard complied and disclosed the customer information, noting that they were doing so in response to the Court's Order out of an abundance of caution.

In order to facilitate disclosure and discovery in this action, the parties submitted a Stipulated Protective Order on March 16, 2021. Doc. 87-1. Two of the thirteen spreadsheets at issue were originally produced by WhoisGuard with the AEO designation on March 18, after the parties had stipulated to the Protective Order but before it was entered by the Court. Shortly after the Court entered the parties' Stipulated Protective Order on March 31, 2021 (Doc. 90) WhoisGuard reproduced all previously produced customer data with the AEO designation.

WhoisGuard designated the customer data AEO both to protect the customers' privacy interests and to minimize its own liability under the General Data Protection Regulation ("GDPR"), a regulation in European Union ("EU") law. As noted in Defendants' filings since the beginning of the lawsuit and reinforced in the separately filed motion to file an amicus brief by NOYB – European Center for Digital Rights, Defendants as domain service providers are legally mandated by the GDPR to protect the privacy of customers' personal information. *See* discussions in Doc. 27 (Namecheap's Mot. to Dismiss) at 11-13; Doc. 76 (Defs.' Mot. to Dismiss FAC) at 15-16; Doc. 44 (NOYB's proposed amicus brief). Violations of the GDPR may result in enormous financial penalties. From the beginning of this action, Defendants have asserted that Plaintiffs' demands that they turn over customer information upon request are in violation of the GDPR. However, following the Court's November 10 Order, Defendants' counsel began providing customer information in response to Plaintiffs' demand letters. As soon as WhoisGuard had the opportunity to designate the information AEO, it did so. This is consistent with the principal of "data minimization" under the GDPR, which provides that the processing of personal data should be limited to that which is necessary to achieve a given purpose. *See* Art. 5 of the GDPR, available at https://gdpr-info.eu/art-5-gdpr/.

Facebook itself is certainly familiar with the obligations of the GDPR—in fact, the press has reported that it is presently under investigation by EU authorities for GDPR violations. In December 2020, it was reported that Facebook had set aside € 302 million for expected GDPR fines. *See* Decl. of Brianna Dahlberg filed herewith ("Dahlberg Decl."), Ex. A. These fines were anticipated ***before*** news broke in April 2021 of a data breach resulting in the personal information of 533 million Facebook users being leaked to hackers in 2019. *Id*. at Ex. B. According to news reports, Facebook failed to disclose the data breach to users or regulators at the time of the breach, which has triggered a new GDPR investigation. *Id*. Separate from its violations of the GDPR, Facebook was also fined $5 billion by the FTC for violations of U.S. privacy laws in 2019. *Id*. at Ex. C. Clearly, Defendants have a credible basis for taking all available measures to ensure that their customers' information be provided maximum protection given that Facebook has a pattern of violating privacy rights, both deliberately as was the case with the Cambridge Analytica scandal resulting in the $5 billion fine and, apparently, negligently in the most recent instance of the data breach.

### C. Defendants' Proposed Addendum to the Protective Order

In a letter dated March 26, 2021 and on a call between the parties on April 12, 2021, Plaintiffs' counsel challenged WhoisGuard's designation of the customer data as AEO, asserting that the designations were preventing them from using the customer data for brand enforcement purposes separate and apart from this lawsuit. The Stipulated Protective Order provides that "a Receiving Party may use Protected Material only for prosecuting, defending, or attempting to settle this litigation and associated appeals." Doc. 90, p. 11 at § 7.1. It further provides that within 60 days after the final disposition of this action, all Protected Material must be returned or destroyed. *Id*. at p. 19, § 13.

In an attempt to resolve this dispute without Court intervention, Defendants proposed an addendum to the Stipulated Protective Order with a carve-out to allow Plaintiffs to use the customer data at issue outside the lawsuit for the very brand enforcement purposes identified by Plaintiffs. *See* Dahlberg Decl., ¶ 6, Ex. D. The addendum would create a new

designation for "REVEAL REQUEST" Protected Material, which may be used for the following additional purposes:

> brand enforcement, including but not limited to initiating and maintaining new lawsuits; proceedings under [the] Uniform Domain-Name Dispute-Resolution Policy ("UDRP"); arbitration proceedings; and/or any other legal or quasi-legal matter, which specifically includes pre-litigation advocacy such as sending cease and desist letters, serving subpoenas, and engaging in ongoing monitoring efforts with respect to the domains and/or registrants at issue.

*Id*. at p. 3 of proposed addendum, § 3.1. Plaintiffs would be permitted to disclose the data to outside counsel and their employees reasonably necessary for those purposes, as well as all categories of persons to whom "CONFIDENTIAL" material may be disclosed under the existing Stipulated Protective Order. *Id*. at § 3.2. Defendants' proposed addendum further provided that Plaintiffs may continue to use "REVEAL REQUEST" protected material for those purposes after the final disposition of the action. *Id*. at p. 4 of proposed addendum, § 3.4. Defendants tailored the language to specifically address the brand enforcement concerns Plaintiffs had raised on the meet and confer call.

On April 19, Plaintiffs rejected Defendants' proposed compromise. Rather than proposing any changes to Defendants' addendum, Plaintiffs proposed that the parties enter into a new agreement separate from the litigation under which Plaintiffs would "agree that they will only use the information in connection with their abuse investigation, mitigation and enforcement efforts, and will not publish the information, but may use and disclose the information consistent with these legitimate purposes and applicable data protection law." Ex. E to Steele Decl. (Doc. 98-2 at 30). Plaintiffs proposed that the definition of "publication" for purposes of the agreement be limited to "posting a significant portion of the information received from Defendants from these disclosure requests on a publicly accessible website." *Id*.

Plaintiffs' counterproposal was unacceptable for several reasons.

*First*, if Plaintiffs were to violate the agreement by misusing the customer data, Defendants would be limited to filing a separate lawsuit to enforce the agreement. Under

Defendants' proposal to amend the existing Stipulated Protective Order, there is already a mechanism built in for the Court to enforce any violations.

*Second*, Plaintiffs' proposal that they be permitted to use and disclose the information "consistent with these legitimate purposes and applicable data protection law" was unacceptably vague, particularly in light of Facebook's own track record of failing to comply with data protection laws. *See* Dahlberg Decl., Exs. A-C.

*Finally*, Plaintiffs' proposal to limit the definition of "publication" was not acceptable. Under Plaintiffs' proposal, they would be permitted to publicly post the customers' personal information online so long as the amount posted is not deemed by Plaintiffs to constitute "a significant portion" of the information received from Defendants. Plaintiffs would also be able to freely publish the customters' identifying information in any other form of media other than a public website without any restrictions at all. This is exactly the type of conduct the GDPR seeks to prevent as allowing for such "publication" could undermine legitimate interests, both ones protected by the GDPR as well as the U.S. Constitution, such as the right to engage in anonymous speech. *See McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 341-42 (1995).

Defendants invited Plaintiffs to reconsider their rejection of the proposed addendum to the existing Protective Order, which permits them to use the information for the Plaintiffs' requested purposes.

### D.    The Telephonic Conference with the Court

Without engaging in any further substantive discussions with Defendants, Plaintiffs initiated a telephonic discovery conference with the Court which took place on April 28, 2021. During the conference, the Court asked Plaintiffs what they want to use the information for. Tr. of 04/28/2021 Telephonic Hr'g, Ex. F to Steele Decl. (Doc. 98-2) at 12:7-9. In response, Plaintiffs' counsel raised the need to disclose the customer information to security consultants to stop malware and spam attacks, which he stated Plaintiffs would be unable to do under either the current Stipulated Protective Order or Defendants' broader proposal. *Id*. at 12:23-13:17. However, as Defendants' counsel noted at the conference, the request for

security consultants to access the data was a new issue that Plaintiffs had not raised during meet and confer discussions. *Id*. at 14:5-9.

The Court suggested to the parties to see if they could negotiate an agreement satisfactory to both sides, noting:

> I'm not terribly convinced that there's enough of a dispute here to worry about. It does seem to me that Facebook ought to be allowed to use the information with its security consultants to ensure its own protective purposes. But that doesn't mean there shouldn't be some limits on the use of the information to the extent it involves private information. . . . [I]t just sounds to me like there's not a whole lot of disagreement among what uses need to be accommodated.
>
> So I would suggest that you see if you can resolve it. If you can't, Mr. Steele, I'll expect your motion by next Wednesday, and then the response by the following Wednesday, and I'll rule.

*Id*. at 15:25-16:11.

Following the telephonic conference, pursuant to the Court's instructions, Defendants attempted to continue negotiating an agreement with Plaintiffs. On April 30, Defendants sent a revised version of their proposed addendum that specifically allowed the data at issue to be disclosed to security consultants and other people necessary for the purpose of addressing malware attacks and other forms of domain abuse and security threats. Dahlberg Decl., ¶ 7; Ex. E (redlined version of the Proposed Addendum to Stipulated Protective Order submitted herewith). Plaintiffs ignored this proposal, not even providing the courtesy of a response to Defendants' email before filing their Motion. *Id*. at ¶ 8.

**III.   ARGUMENT**

    **A. Designation of the Customers' Personal Information as AEO Is Proper Because Its Disclosure Would Create a Substantial Risk of Serious Harm**

Contrary to Plaintiffs' arguments, WhoisGuard's designation of the personal customer information is appropriate. Under the Stipulated Protective Order, the AEO

designation applies to "extremely sensitive 'Confidential Protected Material,'[2] disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means." Doc. 90 at p. 3, § 2.8. WhoisGuard designated the information AEO because it is legally mandated by the GDPR to protect the privacy of customers' personal information. *See* discussions in Doc. 27 (Namecheap's Mot. to Dismiss) at 11-13, Doc. 76 (Defs.' Mot. to Dismiss FAC) at 15-16. The parties do not dispute that the customers' information at issue is personal data that is subject to the GDPR. The penalties for non-compliance with the GDPR are severe. Authorities can impose fines up to €20 million, or 4% of the company's total worldwide revenue from the preceding financial year, whichever is higher. Doc. 76-1 (Art. 83 of the GDPR previously filed in support of Defs.' Mot. to Dismiss the FAC) (also available at https://gdpr-info.eu/art-83-gdpr/). Accordingly, widespread disclosure of the customer information would "create a substantial risk of serious harm that could not be avoided by less restrictive means," and therefore the designation is appropriate.

### B.    The Customer Information Was Produced as Part of This Case

Plaintiffs argue that any designation is improper because the customer information at issue is "not disclosure or discovery material" and the thirteen spreadsheets include domain names that are not at issue in this lawsuit, but these arguments are unavailing. The customer data spreadsheets were properly part of WhoisGuard's initial disclosures in response to the Mandatory Initial Discovery Pilot Project governing this case. *See* Doc. 7 (MIDP Order). Request 3 within the Court's MIDP Order requires the parties, without waiting for a

---

[2] "'CONFIDENTIAL' Protected Material' is broadly defined as "Disclosure or Discovery Material that qualifies for protection under Federal Rule of Civil Procedure 26(c)." Doc. 90 at p. 3, § 2.3. Because the GDPR mandates Defendants to protect the privacy of the information, and because the information is non-public personal data of customers who used WhoisGuard's domain privacy service specifically to keep their information from becoming public, Defendants have also satisfied the standard of "good cause" for keeping the information from public view which applies under Rule 26(c). *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

discovery request from an opposing party, to produce all documents and ESI that "may be relevant to any party's claims or defenses." Doc. 7 at 7.

The customer information spreadsheets plainly fall within the scope of ESI that "may be relevant to any party's claims or defenses." In their FAC, Plaintiffs allege that Defendants "engage in a pattern and practice of refusing to disclose customer information . . . in order to attract business from cybercriminals and trademark infringers," (FAC, p. 29, heading "H"); that domains registered with Defendants are used in connection with malware and other online abuse (*id*. at ¶ 19); and that Defendants agreed to accept liability for the harm caused by their customers because they purportedly did not "timely and accurately" disclose the customers' information in response to Plaintiffs' demand letters (*id*. at ¶¶ 43, 271).

Therefore, the customer information spreadsheets produced in response to Plaintiffs' demand letters are plainly relevant to the claims in the lawsuit—regardless of whether every single domain name included on them is the subject of Plaintiffs' cybersquatting and trademark claims in this case.[3] This plain reality is reinforced by the fact that the Reveal Requests only started coming from Plaintiffs *after* this lawsuit was initiated. Thus, this information is not "independent of this lawsuit" as Plaintiffs incorrectly assert. Even when Defendants' counsel first provided some of the spreadsheets at issue in response to Plaintiffs' demand letters invoking Section 3.7.7.3, Defendants did so out of an abundance of caution stemming from the Court's November 11, 2020 Order on the Motions to Dismiss, in which the Court held that Plaintiffs had "plausibly" alleged that WhoisGuard was subject to the disclosure requirements of Section 3.7.7.3. Doc. 52 at 7-8. The majority of domains that are

---

[3] Furthermore, the specific domain names that are at issue in this case have been a moving target. Originally, the complaint listed 45 allegedly infringing domains. Then, the FAC increased the domains at issue to "at least" 996 allegedly domains. The approximately 2,400 domains included in Plaintiffs' demand letters overlap with the domains stated in the FAC and largely concern the same trademarks. In a February 2021 proposed stipulation concerning the parties' dispute over registrar's locks, Plaintiffs' counsel represented that the domains included in Plaintiffs' letters to date were at issue in the case. *See* Doc. 93 (Opp. to Pls.' Mot. to Enforce Registrar's Certificates) at 6:16-19. To date, Plaintiffs have refused Defendants' requests to provide a definitive list of the domains that are at issue in the case.

specified in the FAC were also specified in Plaintiffs' demand letters. Plaintiffs' contention that the demand letters were sent "outside the litigation" is unavailing and belied by the actual chronology of this litigation.

Plaintiffs also argue that WhoisGuard cannot "retroactively" designate information confidential, but WhoisGuard designated the information AEO upon its first opportunity to do so, as soon as the parties agreed upon the Stipulated Protective Order's terms. Plaintiffs therefore cannot argue that WhoisGuard waived its right to secure protection for the information. *See United States v. Olano*, 507 U.S. 725, 733 (1993) (waiver is relinquishment of a known right). Further, some of the information was produced in the period after the parties signed the Stipulated Protective Order, but before it was entered by the Court. Plaintiffs are bound to the stipulation by their signature and must honor WhoisGuard's designations. Finally, even for the portion of the information that was first produced in response to Plaintiffs' letters, the Stipulated Protective Order provides that parties may make corrections to designations. Doc. 90 at p. 8, § 5.2(c).

**C.     Defendants' Proposed Compromise Appropriately Protects the Customers' Privacy While Enabling Plaintiffs to Use the Information for Legitimate Brand Enforcement and Security Purposes**

Plaintiffs argue that the designation of the customer information is impeding their trademark enforcement efforts separate from this lawsuit and preventing them from protecting users of their services from malware and online abuse. They ignore, however, that Defendants' Proposed Addendum to the Stipulated Protective Order resolves each one of their concerns.  Under Defendants' proposed compromise, Plaintiffs can use the information for brand enforcement purposes, for addressing malware attacks and other forms of domain abuse or security threats, and for "any other legal or quasi-legal matter." They can continue to use the information after final disposition of this litigation. Their security consultants are specifically included among the categories of persons to whom the information may be disclosed. In short, Defendants' proposal was drafted specifically to give Plaintiffs the ability to use the information for the legitimate purposes they requested.

Plaintiffs complain of "burdens" and "hurdles" placed upon them and their security professionals, but they do not even identify in their moving papers what these supposed burdens or hurdles are, let alone substantiate them with any evidence. Rather, Plaintiffs reference in general terms the burdens created when a party over-designates material as confidential, but they offer no evidence that Defendants have, or would be likely to, over-designate any material at issue here. The customer information consists of thirteen spreadsheets, not a vast number of documents.

Plaintiffs also argue that Defendants' proposal would require their vendors and other non-parties to be subject to the Protective Order, but the existing Order already includes an "Acknowledgement and Agreement to Be Bound" for non-parties, including professional vendors, to sign. Doc. 90 at p. 21. This is not an unreasonable or unusual burden for a non-party seeking access to protected information. Plaintiffs argue that the Court would be called upon to adjudicate future Protective Order disputes, but as long as Plaintiffs and their vendors comply with the Stipulated Protective Order's terms, further involvement of the Court will not be necessary.[4]

## IV. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court to deny Plaintiffs' Motion to de-designate the customer data and instead enter the Proposed Addendum to the Stipulated Protective Order submitted herewith.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

---

[4] Plaintiffs also argue that it is improper to impose the Protective Order's terms "onto contractual obligations imposed upon proxy services by ICANN," but even assuming *arguendo* that WhoisGuard is subject to any such contractual obligations (it is not), the Stipulated Protective Order and Federal Rule of Civil Procedure 26(c) govern the issue of whether documents may be designated confidential in this case, not ICANN's Registrar Accreditation Agreement. Moreover, Defendants' proposal does not frustrate Plaintiffs from using the customer information for trademark enforcement, as Plaintiffs argue. It specifically allows the information to be used for that purpose.

**ROME & ASSOCIATES, A.P.C.**

By: *s/ Eugene Rome*
DATED: May 12, 2021
    Eugene Rome
    Sridavi Ganesan
    Brianna Dahlberg

**FENNEMORE CRAIG, P.C.**

 *s/ Mario C. Vasta*
Ray K. Harris
Mario C. Vasta

Attorneys for Defendants
Namecheap, Inc. and Whoisguard, Inc.

**ROME & ASSOCIATES, A.P.C.**

By:  */s/ Eugene Rome*
    Eugene Rome
    Sridavi Ganesan
    Brianna Dahlberg

**FENNEMORE CRAIG, P.C.**
    Ray K. Harris
    Mario C. Vasta

Attorneys for Defendant Namecheap, Inc. and Defendant/Counterclaimant Whoisguard, Inc.