**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook Incorporated, et al., <br><br>    Plaintiffs, <br><br> v. <br><br> Namecheap Incorporated, et al., <br><br>    Defendants. <br> WhoisGuard, Inc., <br><br>    Counterclaimant, <br><br> v. <br><br> Facebook, Inc., <br><br>    Counterclaim Defendant. | No. CV-20-00470-PHX-GMS <br><br> **ORDER** |

    Pending before the Court is Defendants Namecheap, Inc. and Defendant/ Counterclaimant WhoisGuard, Inc.'s (collectively, "Defendants") Motion to Dismiss and/or Strike the First Amended Complaint; Memorandum of Points and Authorities in Support Thereof. (Doc. 76.) Also before the Court is Plaintiff/Counterclaim Defendant Facebook, Inc.'s Motion to Dismiss WhoisGuard's First Amended Counterclaim, (Doc. 80), and Plaintiff/Counterclaim Defendant Facebook, Plaintiff Instagram, LLC, and Plaintiff WhatsApp Inc.'s (collectively, "Plaintiffs") Motion to Enforce Lodging of

Registrar's Certificates, (Doc. 88). For the following reasons, the motions are denied.[1]

**BACKGROUND**

Namecheap is an Internet Corporation of Assigned Names and Numbers ("ICANN") accredited domain registrar. (Doc. 56 ¶ 3.) In offering its customers domain name registry services, Namecheap allows its customers to opt into Defendant WhoisGuard's proxy service. *Id.* ¶ 11. Plaintiffs allege that Defendants have registered, trafficked in, or used domains ("Infringing Domain Names") that are identical or confusingly similar to trademarks and service marks in which they own exclusive rights. *Id.* ¶ 20.

The Court denied WhoisGuard's initial motion to dismiss and granted Namecheap's motion to dismiss with leave to amend ("November 10th Order"). (Doc. 52.) On November 24, 2020, WhoisGuard filed an answer to Plaintiffs' original Complaint and a Counterclaim against Facebook, (Doc. 53), and subsequently filed its First Amended Counterclaim, (Doc. 68). The First Amended Counterclaim alleges that Facebook claims to own United States registrations for its FB Mark; specifically,'777 Registration, '764 Registration, '234 Registration, and '235 Registration (collectively, "FB Registrations"). (Doc. 68 ¶ 5.) WhoisGuard alleges that the FB registrations are invalid and seeks cancellation of the registrations. *Id.* ¶¶ 72–73. WhoisGuard contends that it is damaged by the FB Registrations as Facebook relies, in part, on the FB Registrations for its claims against WhoisGuard. *Id.* ¶ 73.

Additionally, as relevant here, Namecheap filed Registrar's Certificates with the Court on January 15 and February 22, 2021. (Docs. 71, 81.) Plaintiffs contend that Namecheap has violated its declarations made to the Court in these certificates. (Doc. 88 at 2.)

Defendants now move to dismiss and strike portions of the First Amended Complaint, (Doc. 76), and Facebook moves to dismiss WhoisGuard's First Amended

---

[1] The parties requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Counterclaim, (Doc. 80). Plaintiffs also move for the Court to enforce the lodging of the Registrar's Certificates filed in January and February of 2021. (Doc. 88.)

**DISCUSSION**

**I. Motions to Dismiss**

**a. Legal Standards**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

A court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and impertinent matter are "statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotations and citation omitted). "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robbins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028,

1033 (C.D. Cal. 2002). "Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." *Id.* (internal quotation marks and citation omitted).

### b. Analysis

#### 1. Defendants' Motion to Dismiss

##### A. Additional Allegations as to WhoisGuard

In its November 10th Order, the Court stated that Plaintiffs had leave to file an amended complaint as to Namecheap. (Doc. 52 at 12.) The First Amended Complaint includes new allegations as to Namecheap and increases the number of Infringing Domain Names in which WhoisGuard allegedly trafficked. Although the Order allowed leave to amend as to Namecheap specifically, leave to amend is freely given when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). As discussed in greater detail in the November 10th Order, the original Complaint plausibly alleged that WhoisGuard is liable for infringement by its licensees unless it timely discloses its customers' identity. (Doc. 52 at 2, 8.) In the First Amended Complaint, Plaintiffs continue to allege that WhoisGuard failed to timely disclose the identity of its licensees and additionally allege that WhoisGuard disclosed fake or false identification in other instances. (Doc. 56 ¶¶ 43–44.) These allegations appear to apply to both the Infringing Domain Names alleged in the original Complaint and the additional Infringing Domain Names added in the First Amended Complaint. Accordingly, the Court's reasoning in the November 10th Order supports the amendment of the additional Infringing Domain Names. Therefore, Defendants' motion to dismiss the claims against WhoisGuard is denied.

##### B. Alter Ego Liability

To state a claim for alter ego liability, there must be "such unity of interest and ownership" that the separate personalities of the two entities fail to exist and that failure to disregard the separate identities results in "fraud or injustice." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). The unity and ownership prong requires a showing that the entity controls the other "to such a degree as to render

the latter the mere instrumentality of the former." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)). There must be pervasive control, such as where a parent corporation "dictates '[e]very facet [of the subsidiary's] business—from broad policy decisions to routine matters of day-to-day operation[.]'" *Id.* (quoting *Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Servs., Inc.,* 253 Cal. Rptr. 338, 344 (Ct. App. 1988)). Alter ego liability is not found where the two entities observe their corporate formalities or where the parent does not direct the subsidiary's routine day-to-day operations. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073–75 (9th Cir. 2015).

The First Amended Complaint includes several allegations that, taken together, plausibly allege unity of interest and ownership, including that (1) Namecheap "spun off the portion of its business that provides the WhoisGuard proxy service and began operating the service through a wholly-controlled Panamanian shell company[,]" WhoisGuard, (Doc. 56 ¶ 189); (2) WhoisGuard does not exercise control over the WhoisGuard proxy service, *id.* ¶ 191; (3) Namecheap, not WhoisGuard, decides whether WhoisGuard will reveal customer information and decided that the WhoisGuard proxy service would be a feature of Namecheap and free for customers, *id.* ¶¶ 213, 220, 222; and (4) several of Namecheap's current and past employees were involved in the technical development and business analysis of the WhoisGuard proxy service, *id.* ¶ 235. Plaintiffs also allege, on information and belief, that Namecheap and WhoisGuard share common ownership, WhoisGuard has no independent business interest, the two companies do not properly document transactions between each other or compensate each other for services, Namecheap directly pays WhoisGuard's expenses, WhoisGuard has no employees, and that when WhoisGuard is served with a subpoena seeking WhoisGuard's licensees' information, Namecheap responds. *Id.* ¶¶ 196, 198, 202–03, 205, 228, 234. Drawing all reasonable inferences in favor of Plaintiffs, these allegations sufficiently allege unity of interest and ownership.

Plaintiffs also plausibly allege fraud or injustice. The First Amended Complaint

alleges that "WhoisGuard was created and operates solely to shield Namecheap from liability for Namecheap's provision of the WhoisGuard proxy service" and that "WhoisGuard was established in Panama in an attempt to avoid U.S. jurisdiction and liability." *Id.* ¶¶ 238–39; *see also G. E. J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 757 (9th Cir. 1962) (finding the second requirement for an alter-ego relationship satisfied where it would be "unjust to allow [the defendant] to escape liability by operating through a puppet corporation organized with insufficient capital to meet its prospective liabilities").

Accordingly, Plaintiffs plausibly allege that Namecheap is liable for WhoisGuard's tortious conduct. In the November 10th Order, the Court found that Plaintiffs plausibly claimed that WhoisGuard is liable for its licensees' actions on all counts. (Doc. 52 at 8.) Therefore, as Plaintiffs plausibly allege that Namecheap is liable on all four counts, Defendants' Motion to Dismiss is denied.

### C. Cybercrime Allegations

The First Amended Complaint includes the following allegations:

1. Domain names used in a 2018 ransomware scam were primarily registered through Namecheap. (Doc. 56 ¶¶ 27–28.)
2. Defendants facilitated a "predatory wire fraud scheme exploiting the COVID-19 pandemic" through a domain name that WhoisGuard registered and licensed. *Id.* ¶¶ 29–34.
3. Namecheap is the "registrar of choice for cybercriminals." *Id.* ¶ 25.
4. Defendants "facilitate" the shielding of cybercrime and intentionally attract cybersquatters to use its services. *Id.* ¶¶ 7, 35, 126, 133, 142, 179.

Defendants argue these allegations should be stricken because they do not bear relation to the legal claims that Plaintiffs assert. (Doc. 76 at 27.)

Plaintiffs allege violation of the Anticybersquatting Consumer Protection Act ("ACPA"). To state a claim of cybersquatting under ACPA, Plaintiffs must establish, among other requirements, that Defendants had a "bad faith intent to profit from that mark." 15 U.S.C. § 1125(d)(1)(A)(i). Specifically, Plaintiffs must show that Defendants intended to profit "specifically from the goodwill associated with another's trademark."

*Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1109 (C.D. Cal. 2009), *rev'd on other grounds*, 737 F.3d 546 (9th Cir. 2013). Although the allegations referenced above, on their own, are not enough to show that Defendants intended to profit from Plaintiffs' trademarks specifically, Defendants' alleged awareness of how its services are used and willingness to facilitate cybersquatting is relevant to evaluating the nature of Defendants' intentions regarding Plaintiffs' trademarks, as well as others. Accordingly, Defendants' motion to strike is denied.

### 2. Facebook's Motion to Dismiss

A federal court may cancel a trademark registration if it is abandoned. 15 U.S.C. § 1064(3). A trademark is deemed abandoned if its "use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Trademark use means use that "includes placement on goods sold or transported in commerce; is bona fide; is made in the ordinary course of trade; and is not made merely to reserve a right in a mark." *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 936 (9th Cir. 2006). Non-use for three consecutive years constitutes prima facie evidence of abandonment. *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013). Determining whether a use is in "the ordinary course of trade" is often an "intensely factual undertaking." *Electro Source, LLC*, 458 F.3d at 940.

The First Amended Counterclaim alleges that the FB Newswire page, which Facebook used to obtain the FB Registrations for the FB mark, ceased operating on or about October 18, 2016. (Doc. 68 ¶ 27.) WhoisGuard asserts that, upon information and belief, Facebook made no use of the FB Mark in commerce in connection with the services listed in the FB Registrations for at least three years after the FB Newswire page ceased operations and that Facebook has no intent to use the FB Mark for the designated services. *Id.* ¶¶ 28, 70. WhoisGuard further alleges that the lack of published guidelines for how to use a FB Mark, in contrast to the Facebook trademark, indicates that Facebook does not use the FB Mark in commerce in connection with the services listed in the FB Registrations. *Id.* ¶¶ 41–42. Drawing all reasonable inferences in favor of WhoisGuard, WhoisGuard

sufficiently states a claim for abandonment.

In the First Amended Counterclaim, WhoisGuard refutes several examples identified by Facebook that purportedly show the FB Mark used in commerce in connection with the services in the FB Registrations. *See id.* ¶¶ 45–53. In its motion to dismiss, Facebook provides further detail on these examples and explains why it believes its selected images prove that the FB Mark has not been abandoned. Whether or not the images provided by Facebook may be incorporated by reference or judicially noticed, determining whether the images show use in commerce for the services cited in the FB Registrations is a factual determination inappropriate at the motion to dismiss stage. Accordingly, Facebook's motion to dismiss is denied.[2]

## II. Motion to Enforce Lodging of Registrar's Certificates

The Registrar's Certificates filed in January and February of 2021 contain the following identical language:

> 3. Namecheap has placed the Domain Names on registrar lock, thus preventing the Domain Names from being transferred, modified, or otherwise managed or manipulated.
> 4. Namecheap will not modify the status of the Domain Names unless and until instructed to do so by Order of the Court in the instant case.
> 5. Therefore, the Domain Names should be construed to be under the dominion and control of the Court until such time as Namecheap receives further instruction with regard to the Domain Names.

(Docs. 71 at 4; 81 at 4.) Namecheap clarifies that the registrar lock "prevent[s] the domain owners from transferring their domains to other domain registrars in an attempt to evade the Court's jurisdiction." (Doc. 93-1 ¶ 4.) Read together, the clauses indicate that the Court's control is defined by sections 3 and 4.

In arguing that Namecheap has violated its declarations in the Registrar's Certificates, Plaintiffs primarily contend that Namecheap has allowed many of the lodged domain names to expire. However, the declarations do not state that Namecheap will

---
[2] As WhoisGuard plausibly alleges abandonment, it is not necessary to determine whether WhoisGuard also plausibly alleges fraud.

prevent the domain names from expiring. As Namecheap explains, Namecheap lacks the ability to prevent domain names from expiring or to prevent expired domains from being deleted. *Id.* ¶ 5. Further, although Plaintiffs express concern about Namecheap transferring the registration of the lodged domain names to a new entity, Namecheap declares that "all of the domains lodged with the Court would be unaffected by the change in privacy services." *Id.* ¶ 12. Accordingly, Plaintiffs have not shown that Namecheap violated its declarations.

However, the Court recognizes Plaintiffs' concern that the Registrar's Certificates list domain names that are not listed in the First Amended Complaint. To address this issue, Plaintiffs may provide Namecheap with a list of the domain names at issue, along with an attestation that no other domain names are subject to the dispute, and Namecheap shall thereafter file a corrected Registrar's Certificate with the Court.

## CONCLUSION

For the reasons provided above, the motions are denied. The parties are further notified that, absent truly unusual circumstances, future motions to exceed page limits will be denied. The instant briefing failed to make effective use of the increased page limits.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants Namecheap, Inc. and WhoisGuard, Inc.'s Motion to Dismiss and/or Strike the First Amended Complaint; Memorandum of Points and Authorities in Support Thereof (Doc. 76) is **DENIED.**

**IT IS FURTHER ORDERED** that Facebook's Motion to Dismiss WhoisGuard's First Amended Counterclaim Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of Points and Authorities in Support of Motion (Doc. 80) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Enforce Lodging of Registrar's Certificates (Doc. 88) is **DENIED.** Plaintiffs may provide Namecheap with a list of the domain names at issue, along with an attestation that no other domains are subject to the dispute. Within ten (10) days of receipt of such list, Namecheap shall file a corrected Registrar's Certificate with the Court.

**IT IS FURTHER ORDERED** that the Court's order staying further discovery (Doc. 107) is vacated.

**IT IS FURTHER ORDERED** that an Order setting a Rule 16 Scheduling Conference will follow.

Dated this 8th day of July, 2021.

_____
G. Murray Snow
Chief United States District Judge