SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiff and Counterclaim Defendant Facebook, Inc. and Plaintiffs Instagram, LLC and WhatsApp Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV-20-470-PHX-GMS<br><br>**JOINT CASE MANAGEMENT REPORT** |

On August 10, 2021, the parties met and conferred in accordance with Federal Rule of Civil Procedure 26(f) and to address the items listed in the Court's July 8, 2021 Order. (ECF No. 110). The parties respectfully submit this Joint Case Management Report ("Report") in preparation of the Telephonic Case Management Conference set on August 20, 2021 and accessible via the following call-in number: 669-900-6833; meeting ID: 99078024618.

**1.    The parties who attended the rule 26(f) meeting and assisted in developing the case management report:**

The following counsel conferred by video conference on August 10, 2021 and assisted in the development of this Report on behalf of Plaintiff and Counterclaim Defendant Facebook, Inc. and Plaintiffs Instagram, LLC and WhatsApp Inc. (collectively, "Plaintiffs"):

    1.    David J. Steele, Howard A. Kroll, Steven E. Lauridsen, Jeffrey C. Sindelar, Jr., and Helena M. Guye of Tucker Ellis LLP.

The following counsel conferred by video conference on August 10, 2021 and assisted in the development of this Report on behalf of Defendants and Counterclaimants Namecheap, Inc. and WhoisGuard, Inc. (collectively, "Defendants"):

    1.    Eugene Rome, Sridavi Ganesan,[1] and Brianna Dahlberg of Rome & Associates, A.P.C.; and

    2.    Ray K. Harris of Fennemore Craig, P.C.

**2.    A list of parties in the case, including any parent corporations or entities:**

Plaintiffs in this case are:

    1.    Facebook, Inc. ("Facebook"), who is also a Counterclaim Defendant,

    2.    Instagram, LLC, a subsidiary of Facebook ("Instagram"), and

    3.    WhatsApp Inc., a subsidiary of Facebook ("WhatsApp").

---

[1] Ms. Ganesan was in attendance for part of the conference.

Defendants and Counterclaimants in this case are:

 1. Namecheap, Inc. ("Namecheap"), and
 2. WhoisGuard, Inc. ("WhoisGuard").

**3. A short statement of the nature of the case:**

    **a. Plaintiffs' Statement**

Cybercrime is highly dependent on registered domain names, which are used to send spear phishing emails, operate malware, and engage in other types of online abuse. According to the Internet Corporation of Assigned Names and Numbers (ICANN), as of June 2021, there were over 950,000 resolving domain names used for phishing, malware, spam, and botnets. Cybercriminals often use services provided by domain name registrars and their related entities to conceal their identities, including the information listed on publicly available domain name registration records. These services, like the proxy service offered by Defendants, are used increasingly by cybercriminals in order to conceal their identities and evade detection.

Namecheap is an ICANN-accredited domain name registrar, and Whoisguard provides Namecheap's proxy service. Namecheap is a direct participant in Whoisguard's activities, and they are alter egos of one another. Plaintiffs are currently aware of more than 1,100 domain names that infringe Plaintiffs' trademarks that were unlawfully registered, trafficked in, or used by Defendants or their customers or licensees for unlawful activities. Many of these domain names are used in connection with phishing attacks, installing malware on consumers' computers, stealing Plaintiffs' users' personal and financial information by deception, or generating revenue through commercial parking pages or other unlawful commercial activity.

Pursuant to ICANN's Registrar Accreditation Agreement, Plaintiffs have sent multiple notices to Defendants providing evidence of domain name abuse and infringement, but Defendants did not address many of Plaintiffs' notices. As a result of Defendants' failure to comply with their obligations to disclose the current and accurate contact information of the registrant of the domain names at issue within seven days of

Plaintiffs' notices, Defendants are liable for the harm caused by the wrongful use of those domain names. In addition, Plaintiffs seek relief from Namecheap and its alter ego, Whoisguard (in whose activities Namecheap is also a direct participant), who have registered (as the registrant), used, and trafficked in domain names that infringe Plaintiffs' trademarks. Plaintiffs seek damages and injunctive relief against Defendants under the Lanham Act, including the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125) ("ACPA").

Defendants have filed counterclaims to cancel the registrations for Facebook's FB Mark[2] on grounds of abandonment and fraud. Facebook contends that it has not discontinued use of the FB Mark with the intent not to resume such use, as required to establish legal abandonment, and maintains that it did not make any misrepresentations to the United States Patent and Trademark Office when it claimed an intent to use the FB Mark.

b. **Defendants' Statement**

This is a cybersquatting case against Internet service providers. Namecheap is the second largest Internet domain name registrar with over 12 million domains under management. WhoisGuard is a provider of domain name privacy services. Plaintiffs allege that Defendants are liable for registering, trafficking in, and using domain names that are identical or confusingly similar to Plaintiffs' trademarks.

The disputed domains at issue were selected and purchased by Namecheap's customers. Defendants do not claim any ownership interest in any of the domains. Nonetheless, Plaintiffs seek to hold Defendants liable for the infringing actions of the customers. Plaintiffs' claims are at odds with legal precedent establishing that registrars have no legal duty to police the trademarks of third parties.

First, Plaintiffs allege that they contacted WhoisGuard about 46 allegedly

---

[2] The "FB Mark" refers to Facebook's FB mark, which is the subject mark of the following U.S. Service Mark Registrations: No. 4,659,777; No. 4,764,764; No. 4,782,234; and No. 4,782,235.

3

infringing domains before this lawsuit was filed and requested that WhoisGuard disclose the customers' identities and contact information. Plaintiffs allege that WhoisGuard contractually assumed liability for the customers' infringement when it failed to disclose the information within seven days of being provided with "reasonable evidence of actionable harm." They further allege that Namecheap is liable for WhoisGuard's conduct as its alter ego. Defendants deny: (1) that WhoisGuard ever contractually agreed to assume liability, (2) that Plaintiffs provided "reasonable evidence of actionable harm" for each domain, (3) that WhoisGuard failed to disclose the information within seven days for each of the 46 domains, or (4) that Namecheap and WhoisGuard are alter egos.

Second, Plaintiffs allege that Defendants are liable for registering, using, or trafficking in 900+ additional domains for which Plaintiffs acknowledge WhoisGuard did disclose customer information.[3] Plaintiffs allege that WhoisGuard is liable for these domains because it "registered" and "trafficked in" them in the course of providing its privacy service. Plaintiffs also allege that Namecheap used some domains to operate "parking pages" containing advertising (an industry standard practice). They further allege that Namecheap is liable for some expired domains because it purportedly assumed the domains' registration during a brief period before the domains were deleted by the registry operator. Defendants deny all liability. Many of Plaintiffs' claims are barred by the registrar safe harbor of the ACPA. Moreover, Defendants did not act with a bad faith intent to profit from Plaintiffs' trademarks, a prerequisite for liability under the ACPA.

Defendants have also asserted counterclaims to cancel Facebook's registrations for the FB Mark on grounds of fraud and abandonment. Defendants allege that Facebook made false representations to the USPTO about its use of the FB Mark in commerce. Additionally, in numerous requests for extensions of time to file a Statement of Use, Facebook falsely represented that it was at those times engaged in "product or service

---

[3] Following the Court's Order denying WhoisGuard's motion to dismiss, Plaintiffs requested the customer information for hundreds of additional domains. WhoisGuard disclosed the information, noting that it was doing so out of an abundance of caution.

research or development" and "market research" in connection with the FB Mark. Defendants further allege that Facebook abandoned the FB Mark by failing to use the mark for a period of at least three consecutive years.

**4.     The jurisdictional basis for the case, describing the basis for jurisdiction and citing specific jurisdictional statutes:**

The Court has federal question jurisdiction over the federal causes of action alleged in Plaintiffs' First Amended Complaint and Defendants' Counterclaims pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a). There are no issues concerning venue.

The Court has general jurisdiction over Namecheap because its principal place of business is in Phoenix, Arizona. Plaintiffs assert that the Court has general and specific jurisdiction over WhoisGuard. WhoisGuard maintains this Court lacks personal jurisdiction over it and has pled that as an affirmative defense. WhoisGuard's appeal of this Court's denial of its motion to dismiss for lack of personal jurisdiction is currently pending before the Ninth Circuit.

**5.     Any parties which have not been served and an explanation of why they have not been served, and any parties which have been served but have not answered or otherwise appeared:**

All parties have been served and all parties have answered.

**6.     A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings:**

Plaintiffs contend that after they filed their case, Defendants began providing a service used to conceal the identity of their customers, licensees, or themselves using a different alter ego, Withheld for Privacy ehf ("Withheld for Privacy"), based in Iceland. Plaintiffs are investigating whether Withheld for Privacy should be added as a party. Due to the anticipated difficulties in uncovering the relationship between Defendants and Withheld for Privacy, Plaintiffs anticipate needing 180 days to complete their investigation.

Defendants request that the pleading amendment deadline also serve as the deadline for Plaintiffs to add new disputed domain names to the case.

**7.  A listing of contemplated motions and a statement of the issues to be decided by these motions:**

Depending on the information learned from Plaintiffs' investigation and in discovery, Plaintiffs contemplate filing a motion for leave to amend to add one or more additional parties and a motion for summary judgment as to liability on their claims and Defendants' counterclaims. Defendants anticipate filing a motion for summary judgment as to all claims asserted by Plaintiffs, as well one on their counterclaims for cancellation of the FB Mark.

The parties may also move *in limine* for the preclusion of evidence at trial, and they may move pursuant to Federal Rules of Evidence 702, *et seq.* after expert discovery.

**8.  Whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference or trial:**

At this time, the parties do not request that the case be referred to a U.S. Magistrate Judge for a settlement conference and do not consent to reference to a U.S. Magistrate Judge for trial.

**9.  The status of related cases pending before other courts or other judges of this Court:**

There are no related cases pending before other courts or other judges of this Court. The parties note that WhoisGuard filed an interlocutory appeal of this Court's denial of its motion to dismiss for lack of personal jurisdiction, which is currently pending before the Ninth Circuit. *Facebook, Inc. v. Whoisguard, Inc.,* No. 21-80023 (9th Cir. 2021).

**10.  A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information:**

On March 31, 2021, this Court entered a Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation (ECF No. 92), which governs issues relating to the preservation, disclosure, and discovery of electronically stored

information ("ESI"), including the form(s) in which it will be produced.

The parties have taken different views on the meet and confer requirements for searching for ESI responsive to Rule 34 requests as stated in the Stipulated ESI Order. Further court intervention may therefore be necessary.

**11.   A discussion of any issues relating to claims of privilege or work product:**

On March 31, 2021, this Court entered a Stipulated Protective Order (ECF No. 90) and a Stipulated Federal Rule of Evidence 502(d) Order and Clawback Agreement (ECF No. 91), which together govern issues relating to claims of privilege and work product, including temporal limitations on what privileged documents need to be logged.

### a.   Timing of Exchange of Privilege Logs

The parties take different views as to the appropriate dates for the exchange of privilege logs. Pursuant to Section 8(e) of the Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation, the parties are to agree on a date for the production of privilege logs. Plaintiffs' position is that privilege logs should be exchanged once document productions have been substantially completed. Defendants' position is that privilege logs should be exchanged at the same time or shortly after the production of documents. Plaintiffs intend to continue to discuss this issue with Defendants and do not anticipate requiring court intervention to resolve this issue at this time.

### b.   Issues Relating to Claims of Privilege

The parties also disagree as to the scope of protection provided by the attorney-client privilege and work-product doctrine with respect to certain discovery requests propounded by Defendants.

Specifically, Plaintiffs have raised concerns that that certain documents and communications related to Facebook's attorney's preparation of Facebook's statements of use may be protected by the attorney-client privilege. Defendants contend that the Court should overrule Plaintiffs' privilege objections to WhoisGuard's request for production of documents evidencing the "product or service research or development"

7

and "market research" referenced in Facebook's filings with the USPTO in connection with its trademark applications for the FB Mark (WhoisGuard's RFP 20). Defendants contend that these representations are centrally relevant to Defendants' counterclaims for cancellation based on fraud.

Defendants will also seek to depose Kathleen Johnston, the former in-house counsel at Facebook who made the representations and declarations to the USPTO on which Defendants' fraud claims are predicated. Defendants' view is that Ms. Johnston is a fact witness who possesses unique and critical information, and that her deposition should not be barred simply because she happens to be an in-house attorney for Facebook (she is not counsel of record in this case).

While the parties have engaged in discussions related to these issues, a resolution is not foreseen at this time. Plaintiffs maintain that court intervention is premature and unnecessary in connection with a Rule 26(f) report and a Rule 16 conference, and remain willing to discuss these issues with Defendants. Plaintiffs contend that discussion concerning any potential deposition of current or former Facebook attorneys is premature until specific witnesses are identified and noticed for deposition and any potential privilege issues arise and become ripe for judicial intervention (if they cannot first be resolved by the parties at that time).

**12. A discussion of whether an order under Federal Rule of Evidence 502(d) is warranted in this case:**

See ¶ 11, *supra*.

**13. A discussion of the parties' compliance to date with the MIDP, whether any issues have arisen under the MIDP:**

The parties have provided responses and produced certain documents pursuant to the MIDP. Additional responses are called for under the MIDP due to recently answered pleadings, and those responses are due on August 23, 2021. Given the timing of the additional responses, the parties anticipate meeting and conferring regarding any issues.

At the Rule 26(f) conference, the parties discussed outstanding disagreements

relating to their respective MIDP responses, and were able to resolve a number of disputes. As of the date of this filing, however, a number of issues remain, as detailed below. Plaintiffs' and WhoisGuard's Mandatory Initial Discovery Responses are attached as Exhibits 1 and 2, respectively ("Plaintiffs' Responses" and "WhoisGuard's Responses").

### a. Plaintiffs' position

Plaintiffs contend that Whoisguard's Responses do not comply with the requirements of General Order 17-08 (ECF No. 7) as follows:

Request No. 2 requires Whoisguard to state the names and, if known, the addresses and telephone numbers of all persons who have given written or recorded statements relevant to any party's claims or defenses. Whoisguard did not identify any statements, yet Plaintiffs identified a statement by Richard Kirkendall, CEO of Namecheap, in Plaintiffs' Responses. At the Rule 26(f) meeting, it became clear the parties disagree as to what qualifies as a statement to be disclosed.

Request No. 3 requires Whoisguard to disclose documents, ESI, and tangible things that may be relevant to any party's claims or defenses. Plaintiffs identify the following categories of documents identified in Whoisguard's Responses for which there are either few or no corresponding documents in Whoisguard's production:

1. Documents concerning the use of domains by Namecheap's customers;
2. Any documents evidencing the customers' intent in selecting and using the domains;
3. Documents evidencing actual or likely consumer confusion, or lack thereof;
4. Documents related to the customers' registration of the challenged domain names and implementation of the Whoisguard proxy service for those domains;
5. Documents related to the status of the challenged domain names;

9

6. All correspondence (if any) between Defendants and the customers who selected and purchased the domain names;

7. Corporate documents evidencing the separate nature of Whoisguard and Namecheap and Defendants' compliance with applicable corporate formalities;

8. Documents related to Namecheap's policies and procedures;

9. Documents evidencing Defendants' lack of willfulness or bad faith; and

10. Documents and communications related to damages Plaintiffs suffered, if any.

By way of example, Plaintiffs note that Whoisguard has not produced the service agreement between Whoisguard and Namecheap, pursuant to which Whoisguard alleges it provides its services to Namecheap's customers. (Whoisguard Inc.'s Mot. To Dismiss 4:2-4 (ECF No. 31).) By way of another example, Whoisguard has not provided full and accurate customer account information as called for by Category No. 4, above.

Request No. 4 requires Whoisguard to disclose the facts relevant to each of its claims and defenses and the theory upon which its claims and defenses are made. Whoisguard's responses contain a bare recitation of the elements of its defenses and counterclaims, offered with the barest recitation of supporting facts and no explanation of its legal theories or citation to case law.

b. **Defendants' position**

WhoisGuard disagrees with Plaintiffs' allegations regarding its MIDP disclosures and production. However, WhoisGuard has agreed to supplement its disclosures and production to attempt to address Plaintiffs' issues. In particular, WhoisGuard notes that with respect to MIDP Request 3, most of the documents Plaintiffs allege were not provided would be in the possession, custody, or control of parties other than WhoisGuard (such as Namecheap or Plaintiffs). With respect to MIDP Request 2, WhoisGuard did not interpret the blog posts of Namecheap's CEO at issue to be responsive "written or

recorded statements" given by a witness, but Defendants have no objection to producing the posts.

Defendants contend that Plaintiffs' MIDP disclosures are deficient for the following reasons:

(1) Plaintiffs have not yet disclosed the list of domain names that are at issue in the case. Defendants' position is that all domains should have been disclosed in Plaintiffs' response to MIDP Request 4. At the Rule 26(f) conference, Plaintiffs represented that they would be producing the list of disputed domains currently known by Plaintiffs by August 20, 2021.

(2) Plaintiffs must make a complete production of all "reasonable evidence of actionable harm" they contend was provided to Defendants.

(3) Plaintiffs must disclose the factual and legal support for their contention that WhoisGuard entered into the Namecheap Registration Agreement for domain name registration services. Plaintiffs have made a bare statement that WhoisGuard is a party to the Namecheap Registration Agreement—an online contract to which Namecheap's customers click their assent when registering domain names—but have not explained how or when WhoisGuard consented to the Registration Agreement, or who on WhoisGuard's behalf accepted its terms. *See* Plaintiffs' Initial MIDP Responses, p. 10, lines 1-2. This information is responsive to MIDP Request 4.

(4) Plaintiffs must disclose the factual and legal support for their contention that the Namecheap Registration Agreement includes the language of Section 3.7.7.3 (*i.e.*, the provision stating that a registered name holder who licenses a domain name to a third party shall accept liability for harm caused by wrongful use the registered domain name, unless it discloses within seven days the name and contact information of the licensee to the third party providing reasonable evidence of harm). Plaintiffs have made a bare statement that the Registration Agreement "includes these required terms," *see id.*, p. 9, lines 20-26, but the provision at issue is not in the Registration Agreement. This information is also responsive to MIDP Request 4.

11

Plaintiffs disagree with Defendants' contentions but have agreed to supplement their MIDP responses to the extent necessary to address these alleged deficiencies.

**14.  A discussion of necessary discovery:**

> **a.  The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case:**

This action involves claims and counterclaims that are complex, including claims under the ACPA and the Lanham Act. In addition, the events underlying the claims and counterclaims date back to at least 2008, when Facebook began filing registration applications for its FB Mark. The disputed domains were originally registered as early as 2006. The parties also expect that discovery of nonparties will be necessary and that discoverable materials and information will be located in multiple jurisdictions, including Arizona, California, Panama, and Iceland. Accordingly, the parties anticipate a longer discovery period will be necessary.

Plaintiffs anticipate taking discovery concerning at least the following topics:

1. Defendants' alleged registration, trafficking in, and use of domain names, including those containing terms confusingly similar to Plaintiffs' trademarks and including both Defendants' direct use of the domain names and trafficking of domain names through proxy and privacy companies, secondary sales, and hosting;

2. Defendants' licensees' alleged registration, trafficking in, and use of domain names, including those containing terms confusingly similar to Plaintiffs' trademarks;

3. Whether Defendants had a bad faith intent to profit from Plaintiffs' trademarks, including Defendants' and Defendants' licensees' history of cybersquatting;

4. Whether Defendants' licensees had a bad faith intent to profit from Plaintiffs' trademarks, including Defendants' licensees' history of cybersquatting;

5. Whether WhoisGuard is an alter ego of Namecheap and whether Namecheap is a direct participant in the actions of WhoisGuard;

6. Whether Withheld for Privacy is an alter ego of Namecheap and/or WhoisGuard;

7. Defendants' compliance or lack thereof with Plaintiffs' requests to identify the registrants of the domain names at issue, including Defendants' responses, or lack thereof, to Plaintiffs' notices of reasonable evidence of actionable harm;

8. WhoisGuard's activities in the United States and in Arizona, including any activities that would form the basis for this Court's personal jurisdiction over WhoisGuard; and

9. Defendants' profits.

Defendants anticipate taking discovery on at least the following topics:

1. Plaintiffs' ownership and registration of the marks;

2. The prosecution history of the marks at issue, including the alleged fraudulent representations to the USPTO regarding the FB Mark;

3. Facebook's use of the FB Mark in commerce, including the "FB Newswire" webpage submitted to the USPTO as specimens of use;

4. The relative strength of Plaintiffs' marks and whether consumers recognize them as distinctive or famous;

5. Evidence of any actual or likely consumer confusion or diversion of users from Plaintiffs' own websites, or the lack thereof;

6. Evidence of the likelihood of dilution by blurring or tarnishment, or the lack thereof;

7. Discovery related to the due diligence performed by Plaintiffs regarding their cybersquatting and trademark allegations, if any, prior to contacting Defendants about the disputed domains;

8. Communications between Plaintiffs and the customers who registered the domains;
9. Evidence of damages Plaintiffs suffered, if any;
10. Evidence relevant to laches; and
11. Evidence relevant to unclean hands.

**b. Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure:**

Plaintiffs believe the Court's limits on discovery, including limiting each side to twenty-five interrogatories, twenty-five requests for production, and twenty-five requests for admission are fair and reasonable. Defendants propose that, due to this case's complexity and amount in controversy, the written discovery limitations in this Court's standard case management order be increased so that each side may propound up to fifty interrogatories, fifty requests for production of documents, and fifty requests for admission. The parties do not currently propose any modifications or limitations to the federal discovery rules except that the parties agree that expert depositions will not count against the total number of depositions a party may take in this action.

**c. The number of hours permitted for each deposition:**

Except for depositions involving an interpreter, the parties agree that each deposition of a witness shall be subject to the presumptive limit of one day of seven hours as provided in Federal Rule of Civil Procedure 30(d)(1).

**15. A statement of when the parties served their MIDP discovery responses:**

Plaintiffs served their MIDP discovery responses on December 24, 2020 and produced supplemental ESI in accordance with the MIDP on February 9, 2021 and April 7, 2021. Additional responses from Plaintiffs are due August 23, 2021.

WhoisGuard served its initial MIDP responses on December 24, 2020 and produced ESI in accordance with the MIDP on February 9, 2021 and April 7, 2021.

Namecheap's initial MIDP discovery responses are due August 23, 2021. Namecheap's production of ESI will be due October 4, 2021.

14

**16.   Proposed specific dates for each of the following**

| Event | The Parties' Proposal |
|---|---|
| Completion of fact discovery and final supplementation of MIDP discovery responses | August 19, 2022 |
| Last day to serve initial expert reports | September 2, 2022 |
| Deadline to complete face-to-face good faith settlement talks | September 2, 2022 |
| Last day to serve rebuttal expert reports | October 7, 2022 |
| Deadline for completion of all expert depositions | November 18, 2022 |
| Deadline for filing dispositive motions | January 20, 2023 |

**17.   Whether a jury trial has been requested and whether the request for a jury trial is contested:**

The parties have requested a jury trial.

**18.   The prospects for settlement, including any request of the Court for assistance in settlement efforts:**

The parties have engaged in initial discussions regarding settlement. The parties agree that private mediation would have the highest chance of a successful resolution of this action.

**19.   Any other matters that will aid the Court and parties in resolving this case:**

None at this time.

15

| | |
|---|---|
| DATED: August 13, 2021 | SNELL & WILMER L.L.P. |
| | |
| | By: /s/ *Jacob C. Jones* |
| | David G. Barker |
| | Jacob C. Jones |
| | One Arizona Center |
| | 400 E. Van Buren, Suite 1900 |
| | Phoenix, Arizona 85004-2202 |
| | |
| | TUCKER ELLIS LLP |
| | David J. Steele |
| | Howard A. Kroll |
| | Steven E. Lauridsen |
| | 515 South Flower Street |
| | Forty-Second Floor |
| | Los Angeles, CA 90071-2223 |
| | |
| | Attorneys for Plaintiff and Counterclaim Defendant Facebook, Inc. and Plaintiffs Instagram, LLC and WhatsApp Inc. |
| DATED: August 13, 2021 | ROME & ASSOCIATES, A.P.C. |
| | |
| | By: /s/ *Brianna Dahlberg (with permission)* |
| | Eugene Rome |
| | Sridavi Ganesan |
| | Brianna Dahlberg |
| | |
| | FENNEMORE CRAIG, P.C. |
| | Ray K. Harris |
| | Mario C. Vasta |
| | |
| | Attorneys for Defendants and Counterclaimants Namecheap, Inc. and WhoisGuard, Inc. |

16