EXHIBIT 2

**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario Vasta (No. 033254)
2394 E. Camelback Road
Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com

Attorneys for Defendants
Namecheap, Inc. and WhoisGuard, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> Namecheap, Inc., a Delaware corporation, and Whoisguard, Inc., a Republic of Panama corporation, <br><br> Defendants. | CASE NO. 2:20-cv-00470-GMS <br><br> **DEFENDANT WHOISGUARD, INC.'S INITIAL MIDP RESPONSES** |

Pursuant to the Court's Notice to Parties – Mandatory Initial Discovery Pilot ("MIDP") Project (Doc. 7) and General Order 17-08 ("MIDP Order"), Defendant WhoisGuard, Inc. ("WhoisGuard") hereby serves its initial responses to the Mandatory Initial Discovery Requests in Part B of the MIDP Order.

These responses are made based on the information reasonably and currently available to WhoisGuard as of the date of these responses. WhoisGuard expressly reserves the right to supplement, modify, or withdraw these disclosures based on information developed in the course of this lawsuit through discovery, additional factual investigation, and/or modification of the scope of this proceeding. By making these responses, WhoisGuard does not admit that all of the information disclosed herein is relevant, proportional, or admissible. WhoisGuard does not waive, and expressly reserves, the right to object to the admission of the information provided in this response and the right to object to any inspection, demand, or discovery related to this response or the subject matter thereof. In addition, by disclosing this information, WhoisGuard does not waive and expressly reserves its right to object to the disclosure of any information insulated by one or more privileges, protections, or immunities from discovery, such as the attorney-client privilege, joint defense privilege, or work product doctrine.

**I.     MIDP ORDER, ¶ B.1**:

> **State the names and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses, and provide a fair description of the nature of the information each such person is believed to possess.**

WhoisGuard's investigation of this matter is continuing, but at this time, WhoisGuard believes that the following individuals are likely to have discoverable information relevant to the parties' claims or defenses:

| Individuals | Subject |
|---|---|
| Rule 30(b)(6) witness(es) for Facebook, Inc., c/o counsel for Plaintiffs | The Rule 30(b)(6) witnesses for Facebook are likely to have discoverable information |

| | |
|---|---|
| | regarding Plaintiffs' claims made in the First Amended Complaint ("FAC"). |
| Rule 30(b)(6) witness(es) for Instagram, LLC, c/o counsel for Plaintiffs | The Rule 30(b)(6) witnesses for Instagram are likely to have discoverable information regarding Plaintiffs' claims made in the FAC. |
| Rule 30(b)(6) witness(es) for WhatsApp Inc., c/o counsel for Plaintiffs | The Rule 30(b)(6) witnesses for Instagram are likely to have discoverable information regarding Plaintiffs' claims made in the FAC. |
| Rule 30(b)(6) witness(es) for WhoisGuard, Inc. c/o counsel for Defendants | The Rule 30(b)(6) witnesses for WhoisGuard are likely to have discoverable information regarding WhoisGuard's affirmative defenses and the claims made in WhoisGuard's Counterclaim. |
| Vernon Emmanuel Salazar, Director of Barrowgate International Inc., which is the President of WhoisGuard, c/o counsel for Defendants. | Mr. Salazar is likely to have discoverable information regarding relevant matters including but not limited to WhoisGuard's business and proxy service; WhoisGuard's compliance with corporate formalities; the separate nature of WhoisGuard and Namecheap; and the fact that WhoisGuard is not a party to the Namecheap Registration Agreement. |
| Rule 30(b)(6) witness(es) for Namecheap, Inc. c/o counsel for Defendants | The Rule 30(b)(6) witnesses for Namecheap are likely to have discoverable information regarding the claims made in Plaintiffs' FAC; Namecheap's business and role as a registrar; the automated nature of its services; the separate nature of WhoisGuard and |

| | |
|---|---|
| | Namecheap; and the fact that WhoisGuard is not a party to the Namecheap Registration Agreement. |
| Namecheap's customers who selected and purchased the domain names at issue. The customers' current contact information known to WhoisGuard has been previously produced to Plaintiffs' counsel in spreadsheet form. | The customers are likely to have discoverable information regarding their registration and use of the domain names at issue; their intent in selecting and purchasing the domain names; other factors relevant to bad faith intent to profit; and the existence of any consumer confusion. |
| Expert witnesses (TBD) | WhoisGuard may designate one or more expert witnesses to testify on the validity and/or strength of the trademarks at issue; likelihood of confusion; the domain registration system; and damages. |
| Any and all witnesses identified by Plaintiffs in their initial MIDP responses or by any party during the course of discovery in this matter | |

WhoisGuard's investigation concerning this case is continuing, and WhoisGuard reserves the right to supplement or modify the above list as additional information becomes available. The fact that persons are identified in these initial disclosures shall not constitute a waiver of any privileged communication to which such person(s) may have been a party.

**II.     MIDP ORDER, ¶ B.2**:

> **State the names and, if known, the addresses and telephone numbers of all persons who you believe have given written or recorded statements relevant to any party's claims or defenses. Unless you assert a privilege or work product protection against disclosure under applicable law, attach a copy of each such statement if it is in your possession, custody, or control. If not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.**

3

Based on information currently available, WhoisGuard is not aware of any persons who have given written or recorded statements responsive to this request.

### III.     MIDP ORDER, ¶ B.3:

> **List the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control. For documents and tangible things in your possession, custody, or control, you may produce them with your response, or make them available for inspection on the date of the response, instead of listing them. Production of ESI will occur in accordance with paragraph C.2 below.**

Based on the information currently available, WhoisGuard identifies the following categories of documents and ESI that may be relevant to the parties' claims or defenses:

1. Documents regarding Plaintiffs' ownership and registration of the marks at issue.
2. Documents evidencing the prosecution history of the marks at issue, including the USPTO file wrappers.
3. Documents evidencing the relative strength of Plaintiffs' marks and whether consumers recognize them as distinctive or famous.
4. Documents concerning the use of the domains by Namecheap's customers.
5. Any documents evidencing the customers' intent in selecting and using the domains.
6. Documents evidencing actual or likely consumer confusion, or the lack thereof.
7. Documents evidencing likelihood of dilution by blurring or tarnishment, or the lack thereof.
8. Documents related to the customers' registration of the challenged domain names and implementation of the WhoisGuard proxy service for those domains.

9. Documents related to the status of the challenged domain names (*i.e.*, whether they were suspended or disabled prior to their inclusion in the lawsuit, whether they were pointed to any server, etc.).

10. Correspondence between Plaintiffs and Defendants regarding the challenged domain names, including any evidence of "actionable harm" Plaintiffs provided.

11. Documents and communications related to the due diligence performed by Plaintiffs, if any, prior to sending such notices.

12. All correspondence (if any) between Defendants and the customers who selected and purchased the domain names.

13. Corporate documents evidencing the separate nature of WhoisGuard and Namecheap and Defendants' compliance with applicable corporate formalities.

14. Documents related to Namecheap's policies and procedures.

15. Documents evidencing Defendants' lack of willfulness or bad faith.

16. Documents and communications related to damages Plaintiffs suffered, if any.

17. Documents related to intellectual property infringement, spam, scams, hacking, phishing, malware, and other forms of abuse occurring on Plaintiffs' own platforms and Plaintiffs' actions in response thereto, which are relevant to Plaintiffs' unclean hands.

18. Documents regarding Plaintiffs' pattern of overreaching, aggressive, anticompetitive trademark positions and enforcement actions (*e.g.*, Facebook's purported trademark ownership of common words like "face" and "book").

19. Documents regarding Plaintiffs' egregious failures to protect their own users' privacy.

20. All other documents relevant to the claims, counterclaims, or affirmative defenses.

21. Any documents listed by Plaintiffs in their MIDP responses.

The documents which are in WhoisGuard's possession, custody, or control exist in the form of ESI. WhoisGuard will produce its ESI within 40 days of service of these initial responses in accordance with paragraph C.2 of the MIDP Order. WhoisGuard reserves the right to supplement this list as discovery has just begun and its investigation is ongoing.

### IV. MIDP ORDER, ¶ B.4:

**For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based.**

Based on the information currently available, WhoisGuard provides the following response:

**A. WhoisGuard's Counterclaim:**

<u>First Cause of Action</u>: WhoisGuard seeks to cancel Facebook's "FB" trademark registrations pursuant to 15 U.S.C. § 1119 on the grounds that Facebook has not used "FB" as a trademark in commerce in connection with all of the services specified in Facebook's registrations, and/or has ceased use of "FB" as a trademark with no intent to resume use, among other grounds. In particular, the specimens submitted by Facebook to the USPTO in connection with its applications, which are screenshots of a FB Newswire page, do not show use of the mark in connection with "promoting the goods and services of others." Moreover, it appears Facebook ceased operating the FB Newswire page in or around October 2016.

<u>Second Cause of Action</u>: WhoisGuard seeks a declaration of the invalidity of Facebook's purported common law "FB" marks pursuant to 28 U.S.C. §§ 2201 and 2202, for the same reasons.

**B. WhoisGuard's Affirmative Defenses:**

WhoisGuard states the following facts relevant to its affirmative defenses in its Answer to the Complaint. Since that time, Plaintiffs have filed a First Amended Complaint ("FAC"). WhoisGuard reserves the right to serve new responses to this MIDP request if and when it files an Answer to the FAC.

<u>First Defense</u>: WhoisGuard asserts that this Court does not have personal jurisdiction over it because it is incorporated and has its principal place of business in the Republic of Panama; none of Plaintiffs' claims arise out of conduct by WhoisGuard that occurred in or was directed towards Arizona; WhoisGuard and Namecheap are separate corporations; and WhoisGuard did not consent to the forum selection clause in Namecheap's Registration Agreement.

<u>Second Defense</u>: Plaintiffs' Complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) for the reasons stated in Defendants' motions to dismiss.

<u>Third Defense</u>: Plaintiffs' Complaint is barred, in whole or in part, by the Lanham Act's safe harbor for domain service providers. 15 U.S.C. § 1114(2)(D)(iii) provides that "[a] domain name

registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name." WhoisGuard falls within the safe harbor because its provision of privacy services for Namecheap is a core domain registration function following the enactment of the GDPR.

<u>Fourth Defense</u>: Plaintiffs lack standing to bring their claims, in whole or in part, because they do not possess valid trademark rights in all of the alleged trademarks. In particular, Plaintiffs' alleged trademark registrations in "FB" are invalid for the reasons set forth in WhoisGuard's counterclaim and therefore cannot support Plaintiffs' claims. Alternatively, Plaintiffs' alleged trademarks are not distinctive or famous, and therefore they cannot support Plaintiffs' claims for violation of the ACPA and/or for dilution.

<u>Fifth Defense</u>: On information and belief, Plaintiffs have made false or improper representations with the intent to induce the U.S. Patent and Trademark Office to issue a trademark registration. This defense specifically relates to Facebook's "FB" registrations and representations made regarding Facebook's purported use of the marks in commerce. Upon information and belief, Facebook has not actually used the FB mark in commerce in connection with all of the services specified in the registrations, including "promoting the goods and services of others over the Internet," and/or has ceased using the mark in commerce. In particular, the specimens submitted by Facebook to the USPTO in connection with its applications, which are screenshots of a FB Newswire page, do not show use of the mark in connection with "promoting the goods and services of others." Moreover, it appears Facebook ceased operating the FB Newswire page in or around October 2016.

<u>Sixth, Seventh, and Eighth Defenses</u>: WhoisGuard intends to learn through discovery whether the equitable defenses of laches, estoppel and/or waiver, or acquiescence apply to Plaintiffs' claims by seeking discovery regarding the time that has elapsed since Plaintiffs learned of the customers' registration and use of the domains at issue. WhoisGuard recognizes that depending upon the development of facts, these defenses may ultimately not be applicable.

Ninth Defense: Plaintiffs claims are barred by the equitable defense of unclean hands. Plaintiffs have engaged in bad faith inequitable conduct that relates to the subject matter of their claims, including:

- By failing to appropriately respond to intellectual property infringement, spam, scams, hacking, phishing, malware, and other forms of abuse occurring on Plaintiffs' own platforms, including deliberately turning a blind eye and failing to enforce their own policies regarding such behavior if it would result in financial losses for Plaintiffs;[1]

- By engaging in a pattern of overreaching, aggressive, anticompetitive trademark positions and enforcement actions (*e.g.*, Facebook's purported trademark ownership of common words like "face" and "book").

- By issuing demand letters in response to domains that make lawful, legitimate use of Plaintiffs' marks or are otherwise clear examples of fair use (*e.g.*, fuckyourinstagram.com; getinstagramfollowers.club; gramho.com); and

- By engaging in egregious violations of their own users' privacy, such as the Cambridge Analytica scandal which culminated in a $5 billion penalty assessed against Facebook by the FTC.

WhoisGuard reserves the right to supplement this response as discovery has just begun and its investigation is ongoing.

Tenth Defense: Plaintiffs' claims are barred by the Plaintiffs' failure to mitigate their damages, including by choosing not to seek transfer of the domains at issue by the fastest available means such as through a UDRP proceeding which would typically have been resolved far faster than the proceedings Plaintiffs chose to pursue.

---

[1] C. Silverman and R. Mac, "Facebook Profits As Users Are Ripped Off By Scam Ads," Buzzfeed News, Dec. 10, 2020, available at: https://www.buzzfeednews.com/article/craigsilverman/facebook-ad-scams-revenue-china-tiktok-vietnam (last accessed December 18, 2020).

8

Eleventh Defense: Plaintiffs' claims are barred by the failure of Plaintiffs to join an indispensable party as defendant in this action, including the domain name registrants, the companies responsible for hosting the alleged websites' content, and anyone else that may be involved in the operation of the alleged websites, phishing, malware, or spam.

Twelfth Defense: Plaintiffs' claims are barred in whole or in part because, upon information and belief, the registrant has legitimate rights in the name, the registrant made lawful use of the domain name in connection with the good faith offering of goods or services, and/or the registrant's use of the name was noncommercial or protected by the doctrine of fair use. For example, some of the domains at issue appear to be unconnected to Plaintiffs or their trademarks (*e.g.*, instaview.site), appear to be intended for purposes of criticism (*e.g.*, fuckyourinstagram.com), or are otherwise unlikely to result in consumer confusion.

WhoisGuard reserves the right to supplement this list as discovery has just begun and its investigation is ongoing.

**V.     MIDP ORDER, ¶ B.5**:

> **Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.**

WhoisGuard has not asserted any claim for damages. It will seek to recover all attorneys' fees and costs incurred, as permitted by law, in connection with this matter.

**VI.     MIDP ORDER, ¶ B.5**:

> **Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment. You may produce a copy of the agreement with your response instead of describing it.**

WhoisGuard is unaware of any such agreement.

Dated: December 24, 2020                **ROME & ASSOCIATES, A.P.C.**

By:   */s/ Eugene Rome*
    Eugene Rome
    Sridavi Ganesan
    Brianna Dahlberg
Attorneys for Defendants NAMECHEAP, INC.; and WHOISGUARD, INC.

## VERIFICATION

I, Vernon Emmanuel Salazar Zurita, am the Director of Barrowgate International Inc., which is the President of WhoisGuard, Inc. I am duly authorized to sign the foregoing Initial MIDP Responses ("Responses"). I have read the Responses and am aware of their contents. To the best of my knowledge, information, and belief, formed after a reasonable inquiry, the Responses are complete and correct as of today's date.

I declare under penalty of perjury under the laws of the Republic of Panama and the laws of the United States that the foregoing is true and correct.

Executed on December 23, 2020 in Panama City, Panama.

_____
Vernon Emmanuel Salazar Zurita

## VERIFICATION

I, Eshan Ponnadurai, declare as follows:

I have read **PLAINTIFFS' MANDATORY INITIAL DISCOVERY RESPONSES**, I know the contents of the Responses, and I am authorized to sign the Responses on behalf of Plaintiff WhatsApp LLC. The facts set forth in the Responses are true to the best of my knowledge, after a reasonable inquiry.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 14 day of January, 2021.

_____
ESHAN PONNADURAI

1