**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>    Plaintiffs,<br>  v.<br>Namecheap, Inc., a Delaware corporation; and WhoisGuard, Inc., a Republic of Panama corporation,<br><br>    Defendants.<br><br>And related Counterclaims. | CASE NO. 2:20-cv-00470-GMS<br><br>**NOTICE OF SUBMISSION OF THE TEXT OF WHOISGUARD, INC.'S DISCOVERY REQUESTS** |

Pursuant to the Court's request made during the telephonic discovery dispute conference on August 20, 2021, Defendant and Counterclaimant WhoisGuard, Inc. hereby submits the text of its Interrogatories and Requests for Production propounded to Plaintiff/Counterclaim Defendant Facebook, Inc. and Plaintiffs Instagram, LLC and WhatsApp Inc. so that the Court may determine whether the sets exceed the limit of 25.

## INTERROGATORIES

1. IDENTIFY all DISPUTED DOMAINS.

2. For each DISPUTED DOMAIN, state the date(s) and circumstances under which PLAINTIFFS first learned of its registration and/or use.

3. State all factual and legal bases for YOUR allegation that the language of Section 3.7.7.3 of the RAA is part of Namecheap's Domain Name Registration Agreement.

4. State all factual and legal bases for YOUR allegation WhoisGuard agreed to be bound by Section 3.7.7.3 of the RAA.

5. IDENTIFY all COMMUNICATIONS in which YOU provided WhoisGuard with "reasonable evidence of actionable harm" within the meaning of Section 3.7.7.3.

6. For each COMMUNICATION identified in response to interrogatory number [5], describe the investigation and due diligence, if any, PLAINTIFFS conducted before contacting WHOISGUARD.

7. IDENTIFY each DISPUTED DOMAIN [] for which YOU claim WhoisGuard failed to timely disclose the identity and contact information for the licensee.

8. State all facts which support YOUR allegation that DEFENDANTS acted with a bad faith intent to profit from the MARKS, in connection with each of the DISPUTED DOMAINS.

9. State all facts which support YOUR allegation that DEFENDANTS' licensees acted with a bad faith intent to profit from the MARKS, in connection with each of the DISPUTED DOMAINS.

10. State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a result of the alleged registration, trafficking, or use of the DISPUTED DOMAINS.

11. For the damages stated in YOUR response to Interrogatory No. 10, describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT.

12. IDENTIFY all instances of consumer confusion caused by the DISPUTED DOMAINS.

13. IDENTIFY all instances in which users have been diverted away from PLAINTIFFS' websites as alleged in as alleged in paragraphs 98, 107, 133, 152, 258 and 267 of the First Amended Complaint.

14. IDENTIFY all DISPUTED DOMAINS which YOU contend Namecheap registered in its own name, as the registrant.

15. IDENTIFY all DISPUTED DOMAINS YOU contend Namecheap used to operate revenue-generating "parking pages."

16. State all facts which support YOUR allegations that Defendants "have acted to further an intentional and continuous scheme to attract cybersquatters to use their services to infringe trademarks through the fraudulent registration of domain names used for malicious activity, including phishing, malware, spam, fraud, and trademark infringement," as alleged in paragraph 35 of the First Amended Complaint.

17. IDENTIFY, with specificity, all alleged uses by DEFENDANTS of the MARKS which form the basis for PLAINTIFFS' claims.

18. IDENTIFY, with specificity, all alleged uses by DEFENDANTS' licensees of the MARKS which form the basis for PLAINTIFFS' claims.

19. For each instance of alleged use of PLAINTIFFS' MARKS which form the basis for PLAINTIFFS' claims, state the date(s) and circumstances under which PLAINTIFFS first learned of the use.

20. State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a result of the alleged infringement of their MARKS.

21. For the damages stated in YOUR response to Interrogatory 20, describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT.

22. State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a result of the alleged dilution of their MARKS and describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT.

23. State all facts which support YOUR allegation that this is an "exceptional case" entitling PLAINTIFFS to an award of attorneys' fees.

24. For the customer data DEFENDANTS have disclosed in response to PLAINTIFFS' demand letters invoking Section 3.7.7.3, IDENTIFY all PERSONS (natural persons and entities) who have access to the data including their title/role and relationship to PLAINTIFFS (e.g., employee, contractor, etc.).

25. For the customer data DEFENDANTS have disclosed in response to PLAINTIFFS' demand letters invoking Section 3.7.7.3, IDENTIFY all locations where the data is, or has been, stored, downloaded, viewed, or accessed, and describe in detail the security measures employed to protect the data at each location.

**DOCUMENT REQUESTS**

1. All COMMUNICATIONS with DEFENDANTS related to each of the DISPUTED DOMAINS, including the "evidence of actionable harm" (within the meaning of RAA Section 3.7.7.3) that was provided to DEFENDANTS.

2. All COMMUNICATIONS with Namecheap customers related to any of the DISPUTED DOMAINS or the MARKS.

3. All COMMUNICATIONS with any third party relating to any of the DISPUTED DOMAINS, the instant case, or either of the DEFENDANTS.

4. All DOCUMENTS related to or evidencing YOUR allegation that DEFENDANTS acted with a bad faith intent to profit from the MARKS in connection with any of the DISPUTED DOMAINS.

5. All DOCUMENTS related to the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

6. All DOCUMENTS relating to or evidencing the date(s) and circumstances under which PLAINTIFFS first learned of the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

7. All DOCUMENTS relating to or evidencing any complaints made by PLAINTIFFS' users or any other third party regarding any confusion caused by the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

8. All DOCUMENTS relating to or evidencing any diversion of users away from PLAINTIFFS' websites as alleged in paragraphs 98, 107, 133, 152, 258 and 267 of the First Amended Complaint.

9. All DOCUMENTS relating to or evidencing any dilution caused by the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

10. All DOCUMENTS evidencing, referencing, or which YOU contend otherwise support YOUR allegations that PLAINTIFFS have been harmed by the alleged use of the MARKS.

11. All consent agreements, co-existence agreements, settlement agreements, purchase agreements, assignment agreements, domain name transfer agreements, assignments, and other written agreements between PLAINTIFFS and any third party concerning any of the MARKS.

12. All DOCUMENTS and COMMUNICATIONS relating to complaints regarding online abuse, phishing, malware, spam, hacking, trademark infringement, and other forms of abuse occurring on, or being facilitated by, PLAINTIFFS' own platforms, and PLAINTIFFS' actions in response thereto. The time period for this request is January 1, 2018 to the present.

13. DOCUMENTS sufficient to identify all investigations, complaints, and other proceedings brought by the EU Data Protection Commissioner, or any other regulatory or government entity, against PLAINTIFFS alleging violations of the GDPR or other privacy laws. The time period for this request is January 1, 2018 to the present.

14. All COMMUNICATIONS exchanged with the Ireland Data Protection Commission relating to statutory inquiries into PLAINTIFFS' compliance with the GDPR.

15. All COMMUNICATIONS between PLAINITFFS and ICANN regarding PLAINTIFFS' efforts to influence or alter WHOIS policy. The time period for this request is January 1, 2018 to the present.

16. All internal DOCUMENTS relating to PLAINTIFFS' broader strategies and goals in connection with WHOIS policy, including DOCUMENTS reflecting any generalized strategy of suing registrars in U.S. courts; efforts to influence ICANN or other policymakers; efforts to influence industry stakeholders; and/or strategies to obtain WHOIS data from registrars based in the European Union. The time period for this request is January 1, 2018 to the present.

17. DOCUMENTS setting forth PLAINTIFFS' policies and procedures for handling and maintaining the security of the customer data that DEFENDANTS have disclosed in response to demand letters.

18. All DOCUMENTS relating to Facebook's development, creation, design, search, selection, and adoption of its purported FB mark.

19. DOCUMENTS which evidence the date of Facebook's first use in commerce of its purported FB mark.

20. All DOCUMENTS related to or evidencing the "product or service research or development" and "market research" referenced in Facebook's requests for extensions of time filed in connection with its trademark applications for its purported FB mark.

21. All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "promoting the goods and services of others

over the Internet" that existed prior to or on July 14, 2008 (the date of the filing of the trademark application which matured into U.S. Registration No. 4,659,777).

22. All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; [and] computer services in the nature of customized web pages featuring user defined information, personal profiles and information" that existed prior to or on July 14, 2008 (the date of the filing of the trademark application which matured into U.S. Registration No. 4,764,764).

23. All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "Internet based social introduction and social networking services" that existed prior to or on March 12, 2012 (the date of the filing of the trademark application which matured into U.S. Registration No. 4,782,234).

24. All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "providing online chat rooms and electronic bulletin boards for transmission of messages among registered users in the fields of collegiate life, general interest, classifieds, virtual community, and for social networking; and peer-to-peer photo sharing services, namely, electronic transmission of digital images among Internet and mobile device users" that existed prior to or on March 6, 2012 (the date of the filing of the trademark application which matured into U.S. Registration No. 4,782,235).

25. All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with each of the goods and services listed under

the service mark application U.S. Serial No. 88679058 that existed prior to or on November 4, 2019 (the date of filing of the application).

Dated: August 20, 2021           **ROME & ASSOCIATES, A.P.C.**


By: _____*/s/ Brianna Dahlberg*_____
      Eugene Rome
      Sridavi Ganesan
      Brianna Dahlberg
      Attorneys for Defendants and Counterclaimants Namecheap, Inc. and WhoisGuard, Inc.