1              UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF ARIZONA

3         _____

4    Facebook Incorporated, et al.,)
                                   )
5                     Plaintiffs,  )      2:20-cv-0470-GMS
                                   )
6          vs.                     )      Phoenix, Arizona
                                   )      August 20, 2021
7    Namecheap Incorporated,       )
     et al.,                       )         11:02 a.m.
8                                  )
                      Defendants.  )
9    _____)

10

11

12        BEFORE:  THE HONORABLE G. MURRAY SNOW, CHIEF JUDGE

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15           TELEPHONIC SCHEDULING CONFERENCE

16

17

18

19

20
     Official Court Reporter:
21   Charlotte A. Powers, RMR, FCRR, CRR, CSR, CMRS
     Sandra Day O'Connor U.S. Courthouse, Suite 312
22   401 West Washington Street, Spc. 40
     Phoenix, Arizona  85003-2151
23   (602) 322-7250

24   Proceedings Reported by Stenographic Court Reporter
     Transcript Prepared by Computer-Aided Transcription
25

```
 1                    A P P E A R A N C E S

 2      For the Plaintiffs:

 3              Tucker Ellis, LLP - Los Angeles, CA
                By: HOWARD ALAN KROLL, ESQ.
 4                  STEVEN ERICK LAURIDSEN, ESQ.
                    DAVID JEFFERSON STEELE, ESQ.
 5              515 S. Flower, 42nd Floor
                Los Angeles, CA  90071
 6
                Snell & Wilmer, LLP - Phoenix, AZ
 7              By:  JACOB CHRISTENSEN JONES
                400 E. Van Buren
 8              Phoenix, AZ  85004

 9

10      For the Defendants:

11              Rome & Associates, APC
                By: EUGENE ROME, ESQ.
12                  BRIANNA DAHLBERG, ESQ.
                2029 Century Park E, Suite 450
13              Los Angeles, CA  90067

14              Fennemore Craig, PC - Phoenix, AZ
                By: RAY KENDALL HARRIS, ESQ.
15              2394 E. Camelback Road, Suite 600
                Phoenix, AZ  85016
16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2              (Proceedings resume at 11:02 a.m.)

 3              COURTROOM DEPUTY:  This is CV20-470, Facebook, et al.

 4    v. Namecheap, et al., on for discovery dispute hearing.

 5              Counsel, please announce your appearances.

 6              MR. KROLL:  Good morning, Your Honor.

 7              Howard Kroll, Steven Lauridsen, and David Steele on

 8    behalf of the plaintiff.

 9              MS. DAHLBERG:  Good morning, Your Honor.

10              This is Brianna Dahlberg, and with me I have Eugene

11    Rome and Ray Harris on behalf of defendant.

12              THE COURT:  Who will be --

13              MR. JONES:  Good morning, Your Honor.

14              Also Jacob Jones here on behalf of the plaintiffs.

15              Thank you.

16              THE COURT:  Who will be doing the speaking for the

17    plaintiffs?

18              MR. KROLL:  Your Honor, this is Howard Kroll.

19              I will be speaking on behalf of the plaintiffs with

20    respect to the discovery dispute, and Mr. Steven Lauridsen will

21    be speaking on behalf of the plaintiffs with respect to the

22    Rule 16 report.

23              THE COURT:  Thank you.

24              How about the defendants?

25              MS. DAHLBERG:  Your Honor, this is Brianna Dahlberg.
```

1        I will be speaking with respect to the discovery

2  dispute initiated by defendants, and Eugene Rome will also be

3  speaking on the case management conference.

4        THE COURT:  Okay.

5        I would like to begin actually with the case

6  management conference, please.  So are the people necessary to

7  do that on the line?

8        MR. LAURIDSEN:  This is Steven Lauridsen, Your Honor.

9        Yes.  I'm available.

10       MR. ROME:  Yes, Your Honor.

11       Eugene Rome speaking.  I'm available.

12       THE COURT:  All right.

13       One of the difficult -- I'm going to ask you all for

14  this hearing, and for the next, to identify yourself by name

15  prior to speaking so we can have an accurate record, and also

16  to speak as slowly -- well, clearly and distinctly and not too

17  fast, please.

18       What are the difficulties anticipated in uncovering

19  the relationship between Namecheap and Withheld for Privacy?

20       MR. LAURIDSEN:  This is Steven Lauridsen, Your Honor.

21       I'm sorry.  I didn't quite hear that.  Could you

22  please repeat the question?

23       THE COURT:  Well, you indicate in your report that you

24  want 180 days to amend this complaint.  I am not inclined to

25  give you that much time.  That is a lot of time to get this

1    suit under way, which has already been around for a long time.

2    But you've indicated that you need that time because of

3    difficulties anticipated in uncovering the relationship between

4    Namecheap and Withheld for Privacy.

5           What are those difficulties that would justify

6    allowing the parties to be amended for six more months?

7           MR. LAURIDSEN:  This is Steven Lauridsen.

8           Yes, Your Honor.

9           Withheld for Privacy is located in Iceland, and

10   therefore we anticipate that under the Hague Convention, taking

11   foreign discovery of an entity in Iceland, particularly a third

12   party at this juncture, will take an extended period of time

13   just because of the procedures involved in foreign discovery.

14   We hope to obtain as much discovery as possible from defendants

15   in this action on the issue, but we're concerned that we may

16   ultimately have to resort to foreign discovery, which will be a

17   time-consuming process.

18          MR. ROME:  Your Honor, this is Eugene Rome speaking

19   for defendants.

20          May I respond to that?

21          THE COURT:  You may.

22          MR. ROME:  Your Honor, there's no basis for this

23   expected difficulty, as articulated by plaintiffs.  Namecheap

24   is in a position to explain its relationship with Withheld for

25   Privacy.  Fully.  In other words, there's two parties to this

1   relationship.  There's absolutely no reason to expect that

2   Namecheap will somehow conceal this relationship, will mislead

3   about this relationship.  Namecheap is in the case.  It hasn't

4   been asked about this relationship in a way where its response

5   has been misleading or avoiding the issue.

6          So this supposed challenge articulated by plaintiffs

7   is entirely contrived.  There's absolutely no basis for this

8   expectation.  It is a service provider, with whom Namecheap has

9   dealings.  Namecheap is fully prepared to explain it.  The

10  relationship is explained on Withheld for Privacy's website.

11  Namecheap itself explains what the nature of this relationship

12  is.  And since the ultimate intent, as we can discern from

13  plaintiffs' position, is to hold Namecheap liable for the

14  doings of Withheld for Privacy.  If -- if that's their

15  intention, then certainly discovery taken from Namecheap would

16  illustrate the issue.

17          THE COURT:  All right.

18          What I'm going to do is give you 90 days to amend the

19  complaint.  If you can establish, Mr. Lauridsen, after that

20  time that you need more time and that you've made efforts to

21  discover material out of Iceland that you think is -- justifies

22  more time, then submit to me the request before the 90 days

23  expires, and I may well, depending upon what the situation is,

24  grant you additional time.  But initially you're only going to

25  get 90 days.  All right?

1          MR. LAURIDSEN:  This is Steven Lauridsen.

2          Understood, Your Honor.  Thank you.

3          THE COURT:  As for the rest of your deadlines, I

4  assume we've already begun written discovery.  We've had

5  certainly enough discovery disputes, so I'll excuse you for not

6  putting in initial deadlines on discovery requests or notice of

7  depositions.

8          And -- and even though I don't like it, I will give

9  you the dates you've stipulated to.  It's a long time.  Don't

10 come back and ask for extensions, because you won't get them,

11 absent a truly unusual circumstance.  So I don't have any major

12 problems with your other dates, though, and I will enter them.

13         You did set forth a number of disputes that you're

14 having, but indicated that you thought you could resolve those

15 disputes and didn't want to necessarily reserve the time to do

16 it during the case management conference.  The only one that I

17 didn't see that attestation to is to Docket 92, which is the

18 clawback order.

19         What do we have going on there?

20         MR. LAURIDSEN:  This is Steven Lauridsen, Your Honor.

21         THE COURT:  Well --

22         MR. LAURIDSEN:  Sorry.

23         THE COURT:  Is that something the parties wanted to

24 address at the scheduling conference or not?

25         MR. LAURIDSEN:  This is Steven Lauridsen, Your Honor.

1      We do not believe we have -- plaintiffs do not believe

2   that we need to discuss the clawback order or the privilege

3   issues that have been raised by defendants at this juncture.

4   We believe it's premature and that we should wait until any

5   privilege issues are ripe for adjudication and the parties have

6   had a chance to see what those issues actually are, try to work

7   them out amongst themselves.  And then if they cannot, if they

8   reach an impasse, then come to the Court for judicial

9   intervention.  And we do not think it's a good use of the

10   Court's resources at this time to discuss those issues now.

11      THE COURT:  All right.

12      Is there anything else then that we need to discuss in

13   the scheduling conference?

14      MS. DAHLBERG:  Your Honor --

15      MR. ROME:  This is -- go ahead, Brianna.

16      MS. DAHLBERG:  Your Honor, this is Brianna Dahlberg.

17      With the 90-day deadline for amending the complaint,

18   defendants had also requested that a deadline be set for adding

19   additional domain names to the case.

20      THE COURT:  Yeah, I'm not inclined to do that as

21   you've requested.  I do think it's reasonable to have those

22   names be set -- be disclosed 90 days before discovery cutoff,

23   and maybe even 120 days if you can convince me.  But not in --

24   not at the same time as the amendment.  So, no.

25      MS. DAHLBERG:  All right.

1          Defendants would be fine with 90 days before the

2   discovery cutoff.

3          THE COURT:  All right.  I'll note that.

4          I do think privilege --

5          MR. LAURIDSEN:  Your Honor --

6          THE COURT:  -- for what it's worth, I do think

7   privilege logs ought to be more or less contemporaneous with

8   document production.  And if you're not going to do that,

9   you're going to have to give me an awfully good reason why.

10          MR. LAURIDSEN:  This is Steven Lauridsen.

11          Your Honor, would you like to discuss that issue now,

12   or would you like the parties to continue to work among

13   themselves and bring the issue to you later?

14          THE COURT:  I would appreciate it if you would discuss

15   the issue among yourselves, but I'm just indicating to you what

16   my inclination would be.

17          MR. LAURIDSEN:  Understood, Your Honor.

18          MR. ROME:  This is -- this is Eugene Rome speaking.

19          We've had that discussion, and our understanding is

20   that plaintiffs are not amenable to that.  And our challenge is

21   this, and that's something we articulated to plaintiff, it's

22   that they would like to submit the privilege log at the

23   completion of discovery.  The problem with that is all the way

24   at the end is when we find out --

25          THE COURT:  It's not going to happen.  There's no way,

1    Mr. Rome, that I'm going to let them do privilege logs at the

2    end of discovery.  So if that's what the plaintiffs are

3    thinking, forget it.  It won't happen.

4              MR. ROME:  Understand.

5              Thank you, Your Honor.

6              MR. LAURIDSEN:  This is Steven Lauridsen, Your Honor.

7              I would just like to clarify.  Plaintiffs are not

8    proposing that privilege logs be provided at the end of

9    discovery.  Instead, we've been proposing to defendants that

10   privilege logs be provided once document productions are

11   substantially complete --

12             THE COURT:  And --

13             MR. LAURIDSEN:  -- in --

14             THE COURT:  -- my reaction to --

15             MR. LAURIDSEN:  Your Honor?

16             THE COURT:  My reaction to that would also be

17   negative.  There is no reason that --

18             MR. LAURIDSEN:  Understood, Your Honor.

19             THE COURT:  -- as you roll documents, there's no

20   reason that you can't prepare privilege logs and provide them

21   so that the other side has a timely basis on which to evaluate

22   your privilege logs and raise them and discuss them with you.

23             Anything else?

24             All right.

25             MR. ROME:  Your Honor, for the defendants -- okay.

1       THE COURT:  The discovery dispute, unless there was

2  something else to be raised.

3       What's the discovery dispute?

4       MS. DAHLBERG:  Your Honor, this is Brianna Dahlberg

5  for the defendants.

6       The parties are at an impasse regarding the

7  plaintiffs' refusal to produce any substantive responses or

8  documents in response to any of Whoisguard's 25 requests for

9  production or 25 interrogatories.  And we believe the requests

10  that these items, such as the plaintiffs' communications

11  related to the domain names in the case, documents evidencing

12  the alleged infringing uses of the plaintiffs' trademarks that

13  they're suing on, identification of the domain names that

14  they're suing on under each of the alleged different legal

15  theories in the case, and other information that's relevant to

16  our defenses and to our counterclaim for canceling Facebook's

17  FB trademark, and these are the same discovery requests that

18  were at issue in two of the prior telephonic discovery dispute

19  conferences.  The requests were first served back in April, and

20  then in June -- on June 1st the Court resolved a dispute over

21  whether the discovery requests were prematurely served and set

22  the date on which they were deemed served, on July 1st, which

23  is the date that the responses would have been due.  The Court

24  then granted plaintiffs' request to stay discovery until the

25  Court ruled on a motion to dismiss, and that's due to expire on

UNITED STATES DISTRICT COURT

1    July 8th.

2         And so despite granting the plaintiffs an additional

3    extension of time after that to respond, they served responses

4    that consist purely of objections with no responsive

5    information or documents produced in response to any requests.

6         And we've met and conferred extensively, over about

7    three hours of video conferences.  We were able to resolve some

8    of the objections, but plaintiffs are still responding --

9    refusing to respond to any requests or to produce documents or

10   even just begin searching for documents.

11        And the basis is two main objections:  First, they

12   object that the number of requests within each -- of each type

13   exceeds the limit of 25.  Whoisguard served 25 interrogatories

14   and 25 requests for production, but the plaintiffs contend that

15   some of the requests or interrogatories contain subparts.  And

16   so, therefore, they've refused to respond to any request or any

17   interrogatories in each set.

18        We don't believe that their objection is well-taken.

19   The requests do not contain discrete subparts that exceed the

20   limit.  We've extended them case law explaining that if

21   interrogatories are logically or factually subsumed within a

22   main question, it should count as one.  So, for example, we

23   have a number of interrogatories that ask the plaintiff state

24   all factual and legal bases for a specific allegation in the

25   complaint, and plaintiff has objected that they should each

1    count as 2.  We don't -- we don't believe that's correct.  We

2    believe that a factual legal basis for an allegation is

3    subsumed within the main primary question of what is the basis

4    for plaintiffs' allegation, and it's not unduly unbursomeness or

5    unfair to require the plaintiffs to disclose both the facts and

6    the legal basis for their own allegations.

7         You know, we can submit the full text of the disputed

8    request to the Court if the Court wishes.  But in any case, the

9    plaintiffs' belief that some requests may contain subparts

10   should not be a valid basis for refusing to respond at all to

11   any of the requests.  They should have at least responded to

12   what they consider to be the first 25.

13        And during the meet-and-confer conferences, we asked

14   plaintiffs' counsel whether they would agree to do that in

15   order to narrow the issues in dispute and offered that they

16   could preserve their objection to the -- the limit of 25 for

17   the remaining requests.  They refused to do that, and so the

18   result is we still don't have any responses or any documents to

19   these requests that were served back in April.

20        And now a second and related issue is that the

21   plaintiffs are refusing to search for or produce any responsive

22   documents on the grounds that they do not believe that the

23   parties have sufficiently met and conferred regarding search

24   methods for electronically stored information.  This objection

25   is not well-taken either.  The ESI order in the case provides

1    that the party will -- will meet and confer about methods to

2    search for ESI.  We submit that we have, in fact, met and

3    conferred with them about this, including the time period for

4    certain requests and the search terms that should be used, and

5    we offered to meet and confer further, but the plaintiffs have

6    refused to do so.  Nothing about the meet-and-confer

7    requirement in the ESI order alters the parties' obligations

8    under Rule 34 to conduct a diligent good faith search for

9    documents.

10            And Rule 34 also requires that a party objecting to a

11   document request must state the -- state whether responsive

12   materials are being withheld on the basis of each objection.

13   And the objection to part of a request should specify the part

14   and permit production or inspection of the rest.  And because

15   plaintiffs are refusing to search, we don't know if responsive

16   documents exist, we don't know if anything is being withheld,

17   and, if so, what are the objections.

18            And this is now the -- the third time that the same

19   set of discovery requests is before the Court.  It's obvious

20   that the plaintiffs simply do not want to produce any discovery

21   in the case.  They have sued our clients, they're disparaging

22   us in the --

23            THE COURT:  Good, good, good, good, Ms. Dahlberg.

24            Mr. Rome?

25            MR. KROLL:  It's Howard Kroll, Your Honor, on behalf

1   of plaintiff.

2           THE COURT:  I'm sorry.

3           MR. KROLL:  I'd like to respond to comments made by

4   defense counsel.

5           So to -- to be clear, the defendant Whoisguard

6   propounded the same interrogatories to each of the three

7   plaintiffs in this case -- Facebook, Instagram, and WhatsApp --

8   and they propounded the same document request to each of the

9   three plaintiffs in this case.

10          The plaintiffs objected to these interrogatories and

11  to the document requests because when combined with their

12  discrete subparts, they exceeded the permissible number of

13  interrogatories permitted by Rule 33, as well as the Court's, I

14  guess, form case management order, paragraph 3, talking about

15  whether -- limiting discovery to each side propounding up to 25

16  interrogatories.

17          We believe that the only issue before the Court, Your

18  Honor, is whether it was proper for plaintiffs to object to the

19  interrogatories on numerosity grounds.  We believe that it was

20  proper to do that based on case law, and at the meet and confer

21  we continuously asked the defendants to pick the 25

22  interrogatories that they wanted us to answer, and then we

23  would review those interrogatory responses and respond

24  accordingly.

25          Defendants refused to do that.  Defendants refused to

1    meet and confer on the issue of numerosity and going through

2    each specific one that we've identified as having more than one

3    subpart.

4           And so for our purposes, we'd like the Court's

5    guidance on the best approach to respond to documents that,

6    frankly, there were 75 interrogatories sent by Whoisguard to

7    the plaintiffs, 75 document requests sent by defendants -- by

8    defendant to plaintiffs, and the objection on the discrete

9    subparts, whether we can request the Court to inform defendants

10   to pick the 25 and we'll answer those.

11          With respect to the search for responsive documents,

12   we can't necessarily search for responsive documents when we

13   don't know what document requests are being requested, since

14   there are much more than 25.

15          THE COURT:  Well --

16          MR. KROLL:  If the Court would like, we can give an

17   example of an interrogatory that has several subparts, we can

18   give examples of document requests that have several subparts.

19          THE COURT:  No.  Here's what my reaction is,

20   Mr. Kroll.  If you're suggesting that 25 per side -- and I do

21   think that's what I say generally -- but if 25 per side means

22   they only get to ask eight to Facebook, eight to Instagram, and

23   eight to WhatsApp, then I'd be inclined to allow 75.  To the

24   extent that they're the same 25 to all three, I think all three

25   can answer them.

1        To the extent that you believe nevertheless that they

2   are -- there are subparts that should be counted as individual

3   interrogatories, I'm going to require Ms. Dahlberg to provide

4   me with the exact interrogatories and document productions

5   requested.  I will look at them.  I will be prepared to meet

6   with you again, and we will go over the number that I think --

7   or go over the ones, if any, that I think are -- are -- should

8   be counted as two, or I'll enter an order to that effect and

9   then you can both proceed.

10        It doesn't excuse any party from -- because you got --

11   you are under the new discovery -- you're under the

12   experimental discovery protocol.  So this is all really very

13   moot.  You're obliged, regardless of the document production

14   requests you get, to search for relevant documents and disclose

15   them.  And so -- because that is the discovery protocol, if

16   you've read it, that you're under.  You're under -- and so you

17   better get on those.

18        So I would --

19        MR. KROLL:  Your Honor, I'm sorry.  It's Howard Kroll.

20        Just to be clear, we have produced documents,

21   supplemental documents under an MIDP are going to be produced,

22   I believe, it was either today or Monday.  So there are

23   thousands of pages of documents that are -- have been produced.

24   We are not shirking our obligations under that.

25        THE COURT:  All right.  Well, I'm glad to know that.

1    So Ms.Dahlberg, when can you have the discovery and

2    the RFPs provided to my office?

3    MS. DAHLBERG:  Oh.  Would you like just the texts of

4    the interrogatories or requests, or do you want a brief?

5    THE COURT:  I just want the interrogatories and the

6    requests.  And then I want you to get together --

7    MS. DAHLBERG:  If --

8    THE COURT:  And then I want you get together and --

9    with the parties and schedule another -- well, no.  I just want

10   the interrogatories and the requests.  And then if I decide I

11   want oral argument on them or I have any questions, I will -- I

12   will enter a text order, or I will enter an order scheduling

13   another conference.  If I can just rule, I'll rule.  Okay?

14   MR. KROLL:  Your Honor, this is Howard Kroll.

15   MS. DAHLBERG:  All right.

16   MR. KROLL:  One more thing.

17   In our responses to the interrogatories and in our

18   responses to the document requests, we identified the specific

19   interrogatories and document requests that we believe contain

20   more than one discrete subpart.

21   THE COURT:  If you want to provide me a list of those,

22   you may.

23   MR. KROLL:  Thank you, Your Honor.

24   THE COURT:  All right.  Thank you all.

25   MR. KROLL:  And I --

UNITED STATES DISTRICT COURT

```
 1              THE COURT:  Go ahead.

 2              MS. DAHLBERG:  Thank you, Your Honor.

 3              MR. ROME:  Your Honor, this is Eugene Rome speaking.

 4    We'll provide them today.  You asked when they could be

 5    delivered to you.  It will be today.

 6              THE COURT:  All right.

 7              Thank you.

 8              MR. ROME:  Thank you.

 9              MR. KROLL:  Your Honor, I -- I've been informed that I

10    actually inadvertently made a misstatement that production of

11    documents is scheduled for October 4th, the supplemental

12    production of documents.  But in the past we have produced

13    documents to the defendants.

14              MR. ROME:  Could I -- could I -- this is Eugene Rome

15    speaking.

16              Could I ask a practical question?

17              The requests have been outstanding since April.  Why

18    are responses only coming in October?

19              MR. KROLL:  Supplemental responses.

20              MR. ROME:  Why are supplemental responses coming in

21    October?

22              THE COURT:  You gentlemen can -- you gentlemen can

23    discuss this offline.  You can discuss this offline.  If you

24    feel like you've got a basis for sanctions or a motion to

25    compel, we can raise that later.
```

1          MR. ROME:  We will be bringing it.

2          Thank you, Your Honor.

3          MR. HARRIS:  Your Honor, this is Ray Harris.

4          I have one practical question.  Because there are

5     three sets of discovery that are identical, is it -- is it

6     satisfactory to the Court if just one set of these identical

7     requests is submitted?  I don't want to have, you know, three

8     copies of everything to the Court, if it's just going to --

9          THE COURT:  Absolutely.  Absolutely.

10          MS. DAHLBERG:  If it's -- it's one set that each one

11     is -- is propounded to the three defendants.

12          THE COURT:  That will be fine.

13          Thank you all.

14          MS. DAHLBERG:  Thank you, Your Honor.

15          THE COURT:  Have a nice weekend.

16          MR. KROLL:  Thank you, Your Honor.

17          MR. LAURIDSEN:  Thank you, Your Honor.

18               (Proceedings in recess at 11:27 a.m.)

19

20

21

22

23

24

25

1              <u>C E R T I F I C A T E</u>

2

3          I, CHARLOTTE A. POWERS, do hereby certify that I am

4    duly appointed and qualified to act as Official Court Reporter

5    for the United States District Court for the District of

6    Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 20th day of August,

13   2021.

14

15                              s/Charlotte A. Powers

16                         Charlotte A. Powers, RMR, FCRR

17

18

19

20

21

22

23

24

25