# Exhibit C

**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:     310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fclaw.com
mvasta@fclaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., a Delaware corporation; Instagram, LLC, a Delaware limited liability company; and WhatsApp Inc., a Delaware corporation,<br><br>                   Plaintiffs,<br>       v.<br>Namecheap, Inc., a Delaware corporation; and WhoisGuard, Inc., a Republic of Panama corporation,<br><br>                   Defendants.<br><br>And related Counterclaims. | CASE NO. 2:20-cv-00470-GMS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO PARTIALLY DE-DESIGNATE SERVICE AGREEMENT BETWEEN DEFENDANTS (DOC. 141)**<br><br>**[REDACTED PUBLIC VERSION]**<br><br>*[Concurrently filed with Declaration of Hillan Klein]* |

Defendants Namecheap, Inc. ("Namecheap") and WhoisGuard, Inc. ("WhoisGuard") file their Response to Plaintiffs' Motion to Partially De-Designate the Service Agreement.

## I. INTRODUCTION

This dispute concerns Defendants' Service Agreement setting forth the terms under which WhoisGuard provides its domain privacy services to Namecheap's customers. Namecheap properly designated the Service Agreement Attorneys' Eyes Only ("AEO") because if it were disclosed to Namecheap's competitors in the domain industry, it would create a "substantial risk of serious harm" to Namecheap. *See* Klein Decl. at ¶¶ 4-6.

This includes disclosure to Plaintiff Facebook, Inc. ("Facebook"), which is presently a competitor of Namecheap. Facebook has two wholly owned subsidiaries that are ICANN-accredited domain name registrars. Plaintiffs state that presently, these companies offer their services only to Plaintiffs, but domain industry publications have reported that Facebook might be entering the retail registrar business soon. Klein Decl., Ex. A ("Facebook to enter the retail registrar business?"). Namecheap therefore has a legitimate fear of competitive harm if the Service Agreement were disclosed to Facebook's non-legal employees who are not involved in the litigation.

The AEO designation appropriately balances Namecheap's need to protect its extremely sensitive confidential information while permitting Plaintiffs' outside counsel and designated client representatives to view the Service Agreement for purposes of the litigation. In response to Plaintiffs' assertion that other non-attorney decision makers also need to see the document, Defendants offered to amend the Protective Order to permit the parties to designate non-attorneys as client representatives who may view AEO material. Plaintiffs rejected this reasonable compromise, even though it would eliminate all of the purported prejudice they claim.

Plaintiffs also assert that the Service Agreement is "key evidence" that directly bears on ultimate issues in the action, but their characterization of its content is severely flawed.

Finally, Plaintiffs also argue that the AEO designation is preventing them from providing fulsome discovery responses, but their counsel may answer and sign the responses.

Accordingly, the Court should deny Plaintiffs' motion to de-designate the document.

## II. BACKGROUND

### A. Relevant Background on Plaintiffs' Claims

This is a cybersquatting case against Internet service providers. Namecheap is an Internet domain name registrar. WhoisGuard is a provider of domain name privacy services. Plaintiffs allege, *inter alia*, that they contacted WhoisGuard about certain domain names that allegedly infringed their trademarks, but WhoisGuard did not disclose the contact information of the customers who selected and registered the domain names. Doc. 56, ¶ 122.

Plaintiffs allege that under Namecheap's Registration Agreement with its customers, WhoisGuard agreed that it "shall accept liability for harm caused by wrongful use of a domain name," unless WhoisGuard timely discloses the customer's information within seven days of being provided with "reasonable evidence of actionable harm." *Id*. at ¶ 41. The contractual language at issue is not in Namecheap's Registration Agreement. Instead, it appears in Section 3.7.7.3 of the Registrar Accreditation Agreement ("RAA") between Namecheap and the Internet Corporation of Assigned Names and Numbers ("ICANN"). *Id*. at ¶ 119. Plaintiffs allege, however, that Section 3.7.7.3 is incorporated by reference into the Namecheap Registration Agreement. Order on Mot. to Dismiss, Doc. 52 at 7.

Defendants deny Plaintiffs' allegations. In particular, they deny that WhoisGuard is a party to the Namecheap Registration Agreement, or that it contractually agreed to assume liability for the customers' actions. Doc. 112 at ¶ 41. In addition, WhoisGuard has a pending interlocutory appeal before the Ninth Circuit challenging the Court's exercise of personal jurisdiction over it. *Facebook, Inc. v. WhoisGuard, Inc*., No. 21-15875 (9th Cir. 2021).

## III. ARGUMENT

### A. Disclosure Would Create a Substantial Risk of Serious Harm

Namecheap has appropriately designated the Service Agreement as AEO. The Stipulated Protective Order provides that an AEO designation may be used when disclosure of confidential material would "create a substantial risk of serious harm that could not be avoided by less restrictive means." Doc. 90 at § 2.8. The Service Agreement qualifies as

AEO because Namecheap has a legitimate fear of harm if it were disclosed to competitors, including to employees of Facebook not involved in the litigation. Courts routinely find that an AEO designation for sensitive business documents is warranted to protect parties from the specific harm of providing proprietary information to competitors. *See Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 610 (W.D. Wash. 2013) (AEO designation was proper to shield license agreements from potential competitor).

The Declaration of Namecheap's COO, Hillan Klein, establishes that the terms of the Service Agreement are competitively sensitive. Klein Decl., ¶¶ 4-6. Every major domain registrar offers privacy services similar to those offered by WhoisGuard. *Id*. at ¶ 4. Only Namecheap's most senior officers are aware of the Service Agreement's terms, and they are not shared with anyone outside of Namecheap. *Id*. at ¶ 5. Namecheap has spent substantial resources cultivating its relationships with its vendors, including WhoisGuard, and determining the corresponding terms of dealing. *Id.* at ¶ 6. Accordingly, disclosure of those terms would provide competitors with an unfair advantage over Namecheap. *Id.*

Contrary to Plaintiffs' arguments, Facebook is presently a competitor of Namecheap. Facebook does not dispute it owns two subsidiaries, RegistrarSEC, LLC and RegistrarSafe, LLC, that are ICANN-accredited domain registrars like Namecheap. While Plaintiffs argue that Facebook is not presently a competitor of Namecheap because its registrars only offer their services to Plaintiffs, that does not mean that Namecheap's fear of future competitive harm is not legitimate. In *Nutratech, Inc. v. Syntech (SSPF) International, Inc.*, 242 F.R.D. 552 (C.D. Cal. 2007), the court refuted the same argument Plaintiffs make here, noting that the two parties sold the same product: "Although Nutratech asserts that it currently sells to different buyers, this assertion does not mean that Nutratech will not choose to become a direct competitor of Syntech in the future." *Id*. at 555. The same is true here. Facebook's registrars presently offer the exact same service as Namecheap: domain name registration.

Moreover, domain industry press has reported that Facebook may soon be offering domain registration services to the same business customers that Namecheap serves. Klein Decl., Ex. A. Facebook has announced that it will launch a set of business web-hosting

services. *Id*. As one industry blog stated, "[D]omains almost always go hand in hand with hosting. The fact that a company with Facebook's reach is venturing into hosting will surely worry registrars . . ." *Id*.; *see* Klein Decl., ¶ 9. Thus, Namecheap's fear of harm is legitimate.

### B. The AEO Designation Will Not Impair Plaintiffs' Prosecution of the Case

Plaintiffs' arguments of prejudice are unavailing. The AEO designation avoids the risk of harm by the "least restrictive means" by permitting Plaintiffs' counsel, their designated client representatives, and others to view the document, but prohibiting disclosure to Plaintiffs' non-legal employees who are not involved in the litigation.[1]

First, Plaintiffs argue that the Service Agreement must be de-designated because it shows that WhoisGuard is bound by Section 3.7.7.3 of the RAA (*i.e.*, the language stating that a registered name holder "shall accept liability for harm caused by wrongful use" of a domain). But the Service Agreement does not state that WhoisGuard is "bound" by Section 3.7.7.3 or that WhoisGuard agrees to accept liability for a customer's use of domain name under any circumstances. It merely states ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Service Agreement at § 1.1(b). Plaintiffs further ignore that in this action, they have taken the position that they are not "trying to enforce the RAA itself, but the RAA as incorporated in the [Namecheap] Registration Agreement." Doc. 52 at 7:4-6.[2] The Service Agreement has no bearing on whether WhoisGuard is bound by the RAA allegedly incorporated into the Registration Agreement.

Plaintiffs also argue that they cannot provide fulsome responses to interrogatories because the individuals verifying the responses cannot view AEO material, but this is not a valid basis for de-designating the document or for failing to provide fulsome responses. In such situations, courts have held that a party's counsel, acting as the party's agent, may answer and sign the discovery responses. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 386 (S.D.N.Y. Dec. 7, 2010).

---

[1] AEO material may be disclosed to Designated House Counsel of the parties. Doc. 90 at § 7.3. Thus far, Plaintiffs have designated three Designated House Counsel.
[2] Plaintiffs cannot enforce the RAA itself as it has a No Third Party Beneficiaries Clause.

Plaintiffs next argue that the Service Agreement bears on WhoisGuard's contacts with Arizona for personal jurisdiction. They are wrong. The Service Agreement does not mention Arizona. ████████████████████████████████. Plaintiffs accuse WhoisGuard of a "lack of complete candor to the Court" and assert that in its motion to dismiss, WhoisGuard "disputed that it was bound by any forum selection clauses except for those specifying the Republic of Panama." This is inaccurate. WhoisGuard actually stated that "[t]he forum selection clauses of WhoisGuard's contracts **with its users** specify the Republic of Panama, not Arizona" as Plaintiffs alleged in their complaint. Doc. 31 at 11 (emphasis added). This is a true statement. *See* Doc. 31-1, Ex. 1-2 (user contracts at issue).

### C. Namecheap Did Not Over-Designate the Document

Finally, Plaintiffs' contention that Namecheap must make an AEO showing for each provision of the Service Agreement is incorrect. The Protective Order provides that documents must be designated on a part-by-part basis only "[t]o the extent it is practical and not burdensome to do so." Doc. 90 at § 5.2(a). In this action involving tens of thousands of pages of documents, would be impractical and burdensome for Defendants to designate each of their AEO documents on a part-by-part basis. Nonetheless, Namecheap made a good faith effort to de-designate the non-substantive portions, line-by-line. *See* Ex. 2 to Pl.'s Mot.

Plaintiffs argue that this is insufficient because "ICANN requires all proxy services to agree to Section 3.7.7.3 of the RAA," and therefore certain provisions can never qualify as AEO. Plaintiffs are incorrect as to ICANN's requirements, however. They cite to Section 3.7.7 of the RAA, but this section merely sets forth requirements about registrar registration agreements, not proxy service agreements.[3] The RAA's rules for proxy services are found in a different part of the RAA altogether.[4] Finally, even the provisions that Plaintiffs consider to be "boilerplate" are substantive terms which should be protected from disclosure.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

---

[3] https://www.icann.org/resources/pages/approved-with-specs-2013-09-17-en at § 3.7.7.
[4] https://www.icann.org/resources/pages/approved-with-specs-2013-09-17-en#privacy-proxy.

Dated: October 22, 2021              **ROME & ASSOCIATES, A.P.C.**

By: ___*/s/ Brianna Dahlberg*___
       Eugene Rome
       Sridavi Ganesan
       Brianna Dahlberg
Attorneys for Defendants and
Counterclaimants Namecheap, Inc. and
WhoisGuard, Inc.