SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Facebook, Inc., Instagram, LLC and
WhatsApp LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Facebook, Inc., et al., | Case No. CV-20-470-PHX-GMS |
| Plaintiffs, | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO PARTIALLY DE-DESIGNATE SERVICE AGREEMENT BETWEEN DEFENDANTS [139]** |
| v. | |
| Namecheap, Inc., et al., | |
| Defendants. | **[CORRECTED REDACTED PUBLIC VERSION]** |
| AND RELATED COUNTERCLAIMS. | |

I.   INTRODUCTION

Defendants have failed to carry their burden to show disclosure of the Agreement "would create a substantial risk of serious harm that could not be avoided by less restrictive means" as required for a "Highly Confidential – Attorneys' Eyes Only" ("AEO") designation. ECF No. 90 § 2.8. Defendants' purported evidence of competitive harm comprises a ***third-party article*** from ***over a year ago*** that ***speculates*** that Plaintiffs' then-newly announced data hosting services *might* (1) branch out into domain name registration services, such as those offered by Namecheap, and (2) an assertion that proxy services that are the subject of the Agreement are often provided with domain name registration services. Based on this highly attenuated chain of logic, Defendants assert Plaintiffs *may* offer proxy services in the future and thus *may* become competitors. This multi-level speculation cannot give rise to a "substantial risk of serious harm." Regardless, over a year later, there is ***no evidence*** that Plaintiffs entered into the domain name registration business, let alone started offering competitive proxy services, and there remains no evidence that they intend to. Further, Defendants have offered nothing more than conclusory statements that the Agreement contains highly confidential terms in the proxy services business, without any explanation as to why each provision they designate should be AEO. For this reason alone, the Court should grant Plaintiffs' motion and de-designate the Agreement. Finally, Defendants argue it would be "impractical and burdensome for Defendants to designate each of their AEO documents on a part-by-part basis" (Opp. at 5), but this motion is about requiring specific and proper designations in one seven-page document, not every document in Defendants' production. Accordingly, the motion should be granted.

II. **DEFENDANTS HAVE NOT CARRIED THEIR BURDEN TO SHOW A SUBSTANTIAL RISK OF SERIOUS HARM.**

   A. **Defendants rely on a third party's speculation from a year ago that never came to fruition and that even contradicts Defendants' concerns.**

The only "evidence" that Defendants have put forth in support of their assertion that the parties offer the same services and are thus competitors consists of one October 26, 2020 article written by a ***third party, over a year ago, speculating*** as to what

1

services Plaintiffs may offer. Such third-party speculation cannot establish a substantial risk of serious competitive harm, particularly given that this very same article contradicts Defendants' assertions that Plaintiffs intend to compete in the domain name registrar space, let alone the proxy and privacy space on which the Agreement focuses.

First, the article merely states that Plaintiffs intend to provide data hosting services in connection with their WhatsApp product. Klein Decl. Ex. A, ECF No. 145-2. That is: Plaintiffs, via WhatsApp, allow their business customers to store and manage their WhatsApp chats using Plaintiffs' hosting services.[1] The article does not state otherwise and instead concedes "[t]here's no mention of domain [registration services] . . . ." The article then echoes Plaintiffs' explanation that Plaintiffs' registrars are used for Plaintiffs' own domain name portfolio without offering third-party domain registration services: "Facebook already owns at least two ICANN-accredited registrars, RegistrarSEC and RegistrarSafe, ***but they do not sell domains to third parties***." *Id.* (emphasis added).

Given these statements, Defendants lean heavily on mere speculation in the article that "domains [registration] almost always go hand in hand with hosting." *Id.* A year later, Defendants can offer no evidence that this speculation came true, let alone that Plaintiffs then further branched out to offer proxy services, which are the subject of the Agreement and were not mentioned in the article. Instead, Defendants rely on a conclusory statement from their COO. *See id.* ¶ 4 ("every major domain registrar offers domain privacy or proxy services"). Thus, unlike in *Nutratech, Inc. v. Syntech (SSPD) Int'l, Inc.* 242 F.R.D. 552, 555 (C.D. Cal. 2007), not only do the parties here not offer the same services, but Defendants' argument hinges on an attenuated chain of year-old speculation that never came to fruition. This does not demonstrate a "substantial risk of serious harm."

**B.     Defendants did not show the Agreement's terms are highly confidential.**

Defendants have offered merely conclusory statements that the Agreement's information is "highly confidential" and known to "only Namecheap's most senior

---

[1] https://about.fb.com/news/2020/10/privacy-matters-whatsapp-business-conversations/

2

officers" because "if shared with its competitors," the terms' disclosure "would significantly harm Namecheap's competitive position . . . ." Klein Decl. ¶¶ 5-6. But there is no explanation as to what harm or what advantage would be conferred for any particular provision. In fact, while arguing the evidentiary value of the Agreement, Defendants tacitly admit certain provisions are not confidential. Opp. at 4 ██████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ (emphasis added). It is hard to see how a logical duty is a confidential one. And again, Defendants have not explained what harm of any kind, let alone serious harm, could come from a competitor knowing ██████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ Defendants' reliance on blanket assertions of confidentiality cannot carry their burden to show AEO protection is warranted.

    **C.**    **Defendants' proposed solutions do not solve their improper designation.**

Defendants have suggested that Plaintiffs' attorneys verify interrogatory responses as Plaintiffs' agents. Defendants' proposal at best should serve as a backstop for necessary AEO designations and does not provide an AEO justification in itself. Allowing such a workaround without it being absolutely necessary simply encourages over-designations. Further, this proposal potentially ameliorates only one possible concern and does not address how over-designations will affect non-attorney decisions makers' abilities to make strategic decisions ranging from motion practice to settlement. On the other hand, Plaintiffs' solution to re-designate the Agreement as confidential, and redact those limited terms that Plaintiffs have agreed could be redacted for purposes of sharing with non-attorney party members, would solve all of these problems. Defendant have not explained why this simple solution would not work.

**III.   CONCLUSION**

Defendants have failed to carry their burden, so the motion should be granted.

3

| | |
|---|---|
| DATED: October 27, 2021 | SNELL & WILMER L.L.P. |
| | By: */s/ Jacob C. Jones* |
| | David G. Barker |
| | Jacob C. Jones |
| | One Arizona Center |
| | 400 E. Van Buren, Suite 1900 |
| | Phoenix, Arizona 85004-2202 |
| | |
| | TUCKER ELLIS LLP |
| | David J. Steele |
| | Howard A. Kroll |
| | Steven E. Lauridsen |
| | 515 South Flower Street |
| | Forty-Second Floor |
| | Los Angeles, CA 90071-2223 |
| | |
| | Attorneys for Plaintiffs, |
| | Facebook, Inc., Instagram, LLC, and |
| | WhatsApp LLC |

4