**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Meta Platforms, Inc., et al.,<br>　　　　Plaintiffs,<br>　v.<br>WhoisGuard, Inc., et al.,<br>　　　　Defendants.<br>WhoisGuard, Inc., et al.,<br>　　　　Counterclaimants,<br>　v.<br>Meta Platforms, Inc.,<br>　　　　Counterclaim Defendant. | CASE NO. 2:20-cv-00470-GMS<br><br>**DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DISCOVERY** |

Defendants and Counterclaimants Namecheap, Inc. ("Namecheap") and WhoisGuard, Inc. ("WhoisGuard") (together, "Defendants") move the Court for an Order compelling Plaintiff and Counterclaim Defendant Meta Platforms, Inc. ("Facebook") and Plaintiffs Instagram, LLC and WhatsApp LLC (collectively, "Plaintiffs") to produce further discovery responses and documents responsive to WhoisGuard's First Set of Requests for Production ("RFPs") and First Set of Interrogatories, and the Mandatory Initial Discovery Pilot project Order (the "MIDP Order," Doc. 7) pursuant to Federal Rule of Civil Procedure 37(a)(1). Defendants also seek monetary sanctions against Plaintiffs and their counsel pursuant to the MIDP Order and Federal Rule of Civil Procedure 37(b)(2) in the amount of $11,025.

Pursuant to LRCiv 7.2(j), the undersigned counsel certifies that the parties' counsel met and conferred via video conference on July 21, July 23, August 27, September 21, and November 8, 2021 to discuss the issues raised in this Motion. *See* concurrently filed Declaration of Brianna Dahlberg ("Dahlberg Decl."), ¶¶ 11, 19, 21, 31. In total, the parties held more than six hours of meet-and-confer discussions. The parties were unable to satisfactorily resolve the disputes, despite sincere efforts to do so. The discovery requests at issue in this Motion were also the subject of three informal telephonic discovery hearings held on June 1, July 1, and August 20, 2021. *See* Docs. 104, 107, 122. At the August 20 hearing, the Court invited Defendants to bring a motion for sanctions or motion to compel if they felt they had a basis to do so. 08/20/2021 Hearing Tr. at 19:23-25 (attached as Ex. 7 to Dahlber Decl.).

Pursuant to LRCiv 37.1, Defendants are concurrently filing a separate statement setting forth the text of the discovery requests at issue, the responses received, and the reasons why said responses are deficient.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This Motion to Compel arises from Plaintiffs' failure to produce relevant evidence that is responsive to the MIDP Order as well as to WhoisGuard's First Sets of RFPs and Interrogatories propounded in April of 2021. Under the MIDP Order, Plaintiffs were required

to disclose all documents and facts relevant to the parties' claims and defenses no later than December 28, 2020. *See* Doc. 7 at 3. Under an extension granted by the Court, all electronically stored information ("ESI") was required to be produced no later than February 9, 2021. Doc. 28. At the telephonic hearing held on August 20, 2021, Plaintiffs' counsel represented to the Court that supplemental documents would be produced on October 4, 2021. However, those supplemental responses and documents remain deficient.

To date, none of the three Plaintiffs have produced <u>any</u> internal documents from their own companies. Notably absent from Plaintiffs' document productions to date is any evidence of the phishing, malware attacks, or other cybercrimes that Plaintiffs allege were facilitated by Defendants using the disputed domain names. Nor have Plaintiffs identified any notices to Defendants in which they were provided with "reasonable evidence of actionable harm" caused by wrongful use of the disputed domain names, which is an essential requirement under Plaintiffs' theory that Defendants contractually assumed liability for their customers' use of the domain names by failing to disclose the customers' information in response to such notices. Defendants further discovered that Plaintiffs are withholding damaging communications between their own legal departments and the customers at issue who selected and registered the domain names at issue in the case. Plaintiffs are also withholding ESI regarding their own past ownership of some of the disputed domains at issue, along with records that would show how, when, and why they lost or relinquished their ownership of the disputed domain names.

Plaintiffs assert that they need additional time to locate and produce responsive documents, despite having had many months to do so. Plaintiffs' counsel has failed to substantively respond to Defendants' repeated requests as to when their production will be complete, asserting that the documents will be produced on a "rolling" basis, but failing to specify when that will happen. In essence, with respect to the production, Plaintiffs are stating, "you'll get it when you get it." The Court should not tolerate such tactics, which violate (1) the MIDP Order, (2) the Stipulated Order Re: Discovery of ESI (Doc. 92), and (3) Federal Rule of Civil Procedure 34(b)(2)(B).

Accordingly, Defendants request the Court to order Plaintiffs to produce supplemental

responses that are compliant with the Federal Rules of Civil Procedure and MIDP Oder and all responsive documents within 30 days of its order. The Court should also impose monetary sanctions in the amount of $11,025 to reimburse Defendants for their reasonable attorneys' fees incurred in enforcing the discovery requests. *See* Dahlberg Decl., ¶¶ 32-33 (calculation of fees). If Plaintiffs still fail to produce compliant responses and all responsive documents in that timeframe, Defendants request permission to file a motion for more severe sanctions, up to and including terminating sanctions.

## II.   BACKGROUND

### A.   Relevant Background on the Parties' Claims

#### 1.   *Plaintiffs' Claims*

This is a cybersquatting case against Internet service providers. Namecheap is an Internet domain name registrar. First Am. Compl. ("FAC"), Doc. 56 at ¶ 3. WhoisGuard is a provider of domain name privacy services. *See id.* at ¶ 12. Plaintiffs allege that Defendants are liable for registering, trafficking in, and using domain names that are identical or confusingly similar to Plaintiffs' trademarks. *Id*. at ¶ 20. The disputed domain names were selected and purchased by Namecheap's customers. Defendants do not claim any ownership interest in any of the domains. Nonetheless, Plaintiffs seek to hold Defendants liable for the wrongful actions of their customers based on a variety of different legal theories.

First, Plaintiffs allege that they contacted WhoisGuard about 46 allegedly infringing domain names before this lawsuit was filed and requested that WhoisGuard disclose the customers' identities and contact information, but assert that WhoisGuard did not provide the information. *Id*. at ¶ 122. Plaintiffs contend that WhoisGuard contractually agreed that it "shall accept liability for harm caused by wrongful use of a domain name," unless WhoisGuard timely discloses the customer's information within seven days of being provided with "reasonable evidence of actionable harm." *Id*. at ¶ 41. Thus, Plaintiffs allege that WhoisGuard contractually assumed liability for harm caused by the customers' wrongful use of the domains by failing to timely disclose the information. Among other things, Defendants deny that Plaintiffs provided "reasonable evidence of actionable harm" caused by "wrongful use" for

each domain name.

Second, Plaintiffs allege that Defendants are liable for "registering," "using," or "trafficking in" "at least 996" domain names. *Id*. at ¶ 20. These include domains for which Plaintiffs acknowledge WhoisGuard *did* disclose the customer information to Plaintiffs. *See id*. at ¶ 124. Plaintiffs allege that Defendants are nonetheless liable for the customers' wrongful use of these domains because WhoisGuard "registered" and "trafficked in" them in providing its privacy service, or because some of the customer information WhoisGuard disclosed was fake. FAC at ¶¶ 44, 82, 87, 94.

Third, Plaintiffs also allege that Namecheap used some of the disputed domain names to operate "parking pages" containing advertising. *Id*. at ¶¶ 98, 100.

Fourth, Plaintiffs further allege that Namecheap is liable for some expired domains names because Namecheap purportedly assumed the domains' registration during a brief period before the expired domains were deleted by the registry operator. *Id*. at ¶ 112.

Defendants deny all liability under any of Plaintiffs' theories.

### 2.  *Defendants' Counterclaims*

Defendants have asserted counterclaims to cancel Facebook's trademark registrations for the characters FB ("FB Mark") on grounds of fraud and abandonment. Doc. 68; Doc. 112. Defendants allege that for each registration, Facebook filed numerous requests for extensions of time to submit proof that it was using the FB Mark in commerce. Doc. 112, ¶¶ 12-16. In those extension requests, Facebook's Associate General Counsel falsely represented to the USPTO that Facebook had at those times made ongoing efforts to use the mark in commerce for each of the services in the application consisting of "product or service research or development" and/or "market research." *Id.* at ¶¶ 17, 20, 64.

Defendants also allege that when Facebook submitted its Statements of Use, it falsely represented to the USPTO that the FB Mark was being used in commerce in connection with all of the services in the respective applications. *Id*. at ¶¶ 57-60. Facebook submitted deficient specimens consisting of an "FB Newswire" Facebook page which one USPTO examiner had previously rejected, and which ceased operating after the registrations were granted. *Id*. at ¶

4

26-27. Defendants further allege that Facebook abandoned the FB Mark by failing to use it in commerce for a period of at least three consecutive years. *Id.* at ¶¶ 28, 69.

## B. Plaintiffs' Deficient Discovery Responses

Since this lawsuit was filed in March 2020, Plaintiffs have attempted to avoid providing basic information underlying their own claims. This case is governed by the MIDP Order. Doc. 7. WhoisGuard filed its first responsive pleading in November 2020. Doc. 53. Plaintiffs were therefore required to provide compliant MIDP responses disclosing all facts and documents that are relevant to their case, whether favorable or unfavorable, by December 28, 2020. *See* Doc. 7 at 3. Under an extension granted by the Court, Plaintiffs were required to produce all ESI no later than February 9, 2021. Doc. 28.

### 1. *Plaintiffs' Initial MIDP Responses and Productions*

Plaintiffs served their initial MIDP responses on December 28, 2020, but the responses omitted basic information such as a list of the domain names in dispute. *See* Doc. 53-1 at 9 (stating that "Plaintiffs are currently aware of well over 900 Infringing Domain Names" but providing only examples, not a full list).

Plaintiffs stated in their initial MIDP responses that "Defendants or their customers or licensees" used "many of these domain names . . . in connection with phishing attacks, installing malware on consumers' computers, to steal Plaintiffs' users [sic] personal and financial information by deception, or to generate revenue through commercial parking pages or other unlawful activity." *Id*. Yet, Plaintiffs failed to produce any evidence of whatsoever of such phishing, malware, or other cybercrimes committed in connection with the disputed domain names—let alone evidence that Defendants facilitated such crimes. Plaintiffs' initial MIDP document production consisted of 570 documents, all of which were publicly available, such as the file wrappers of Plaintiffs' own trademark filings, print outs of Internet articles, and publicly filed documents from domain name dispute proceedings. Dahlberg Decl., ¶ 2. On April 7, 2021, Plaintiffs made a production of 32 additional documents, which consisted of boilerplate requests for registration data from Plaintiffs' agents to Defendants, and Defendants' responses to a few of those requests. *Id*. at ¶ 3.

In their MIDP Responses, Plaintiffs also failed to disclose a computation of each category of their damages as required by MIDP Request 5. *See* Doc. 53-1 at 25 (stating "[i]t is unknown at this time the full extent to which Plaintiffs have been damaged" and failing to state either a number value or computation for any category of damages). Plaintiffs stated that they "will supplement their response when they make their expert disclosures." *Id.*

### 2. *Plaintiffs' Deficient Responses to the RFPs and Interrogatories*

After receiving Plaintiffs' deficient MIDP Responses, WhoisGuard served its First Sets of RFPs and Interrogatories on April 23, 2021. Dahlberg Decl., ¶ 4. Most of these requests seek material that is responsive to the MIDP Order but which was omitted from Plaintiffs MIDP production, such as Plaintiffs' communications related to the disputed domain names (RPFs 1-3); documents evidencing the alleged infringement of Plaintiffs' trademarks (RFP 5); an identification of the domain names that are at issue under each of Plaintiffs' different legal theories (Rogs 7, 14-14); evidence supporting Plaintiffs' allegations of consumer confusion, diversion, or other harm (RFPs 7-10); documents and information relevant to WhoisGuard's affirmative defenses of laches and unclean hands (Rog 2, RFP 12); and documents relevant to Defendants' counterclaim for cancellation of the FB Mark (RFP 11, 18-25).

At first, Plaintiffs refused to provide substantive responses to any of the RFPs or Interrogatories, necessitating three telephonic discovery dispute hearings before the Court over the same sets of requests. Initially, Plaintiffs refused to answer these discovery requests at all, asserting that they were premature. Dahlberg Decl., ¶ 5 & Ex. 1 (5/12/2021 Ltr. from D. Barker). Plaintiffs also argued that the requests had been defectively served. *Id*. WhoisGuard agreed to extend Plaintiffs' time to respond while Plaintiffs initiated a telephonic discovery conference with the Court to resolve these initial objections. Dahlberg Decl., at ¶ 7. On June 1, 2021, the Court deemed the 25 Interrogatories served as of that day, and ruled that the RFPs would be deemed served on the day that WhoisGuard narrowed its original set of RFPs down to 25. Doc. 104. WhoisGuard did so the same day. *Id.*

Following that Order, Plaintiffs initiated a second telephonic discovery conference with the Court seeking a stay of all discovery, including their obligation to respond to the

Interrogatories and RFPs, until the Court ruled on the parties' pending motions to dismiss. *Id*. at ¶ 8. On July 1, 2021, the Court granted Plaintiffs' request for a stay. Doc. 107. One week later, on July 8, 2021, the Court issued its Order denying the parties' respective motions to dismiss. Doc. 109. At that time, Plaintiffs then requested an additional one-week extension of time to respond to the RFPs and Interrogatories, which Defendants granted. Dahlberg Decl., Ex. 3 (07/08/2021 emails with D. Steele).

On July 15, 2021, Plaintiffs served responses consisting entirely of objections, with no substantive responses or documents produced in response to any Interrogatories or RFPs. *See generally* Pls.' Original Responses in Separate Statement. The parties met and conferred for approximately three hours over video conferences on July 21 and July 23 and were able to resolve some of Plaintiffs' objections, but Plaintiffs still refused to respond substantively to any RFP or Interrogatory or to conduct any searches for responsive documents. Dahlberg Decl., ¶ 11; *see* Exs. 4-6 (meet-and-confer letters). This time, Plaintiffs' primary ground for refusing to respond was that they believed the number of requests of each type exceeded the limit of 25. Ex. 5. They also contended that the parties needed to further meet-and-confer about search methods. *Id*.

On August 20, 2021, the Court held a third telephonic discovery dispute hearing. The Court asked the parties to submit the requests so that it could evaluate Plaintiffs' objection as to the number of requests. Doc. 122. As for Plaintiffs' objections to searching for documents, the Court reminded Plaintiffs that they are obliged to search for and produce relevant documents under the MIDP:

> You're obliged, regardless of the document production requests you get, to search for relevant documents and disclose them. And so – because that is the discovery protocol, if you've read it, that you're under. You're under—and so you better get on those.

08/20/2021 Hearing Tr. at 17:13-17 (attached as Ex. 7 to Dahlberg Decl.). In response, Plaintiffs' counsel stated that supplemental MIDP documents were going to be produced "either today or Monday." *Id*. at 17:20-22.

Later in the hearing, however, Plaintiffs' counsel clarified that Plaintiffs' production of

documents was actually scheduled for October 4th. *Id*. at 19:9-12. Defendants' counsel asked why supplemental responses were only coming in October, when the requests had been outstanding since April. *Id*. at 19:17-22. The Court responded, "You can discuss this offline. ***If you feel like you've got a basis for sanctions or a motion to compel, we can raise that later.***" *Id*. at 19:23-25 (emphasis added).

### 3. Plaintiffs' Deficient Supplemental MIDP Responses

On August 23, 2021, Plaintiffs served supplemental MIDP Responses, but the responses remained deficient. Despite Plaintiffs' representations at the parties' Rule 26(f) conference and to the Court in the Joint Report submitted that Plaintiffs "would be producing the list of disputed domains currently known to Plaintiffs by August 20, 2021," (Doc. 120 at 11:7-9), the supplemental MIDP Responses still failed to include a list of the domain names at issue in the case. *See* Separate Statement at p. 95. Nor did Plaintiffs identify or produce copies of any of their purported "reasonable evidence of actionable harm" sent to WhoisGuard. *Id*.

With respect to Defendants' counterclaim for cancellation of the FB Mark for fraud on the USPTO, Plaintiffs stated that "Facebook was engaged in the product or service research or development activities listed on each extension request (and the market research activities listed on one) at the time the request was filed," *id*. at 37:24-26, but failed to provide any specific facts regarding Facebook's purported research or development activities.

Plaintiffs produced no documents with their Supplemental MIDP Responses.

### 4. The Court Overrules Plaintiffs' Numerosity Objections; Defendants Grant Plaintiffs Yet Another Extension

On August 26, 2021, the Court issued an Order finding that each of WhoisGuard's interrogatories and RFPs count as one interrogatory and request, and that WhoisGuard had not violated the numerical limits of 25 for each type of written discovery request. Doc. 131.

Following the Court's Order, Plaintiffs requested an additional two-week extension to produce responses and documents responsive to both the RFPs and MIDP Order because two of their attorneys were going on vacation. Dahlberg Decl., ¶ 18 & Ex. 8 (08/26/2021 email from S. Lauridsen). The parties held another meet-and-confer conference on August 27, 2021.

Id. at ¶ 19. On that call, Plaintiffs' counsel represented to Defendants that Plaintiffs' documents would be produced on a rolling basis, and that October 4, 2021 would be the completion date for Plaintiffs' document production. *Id.*; Ex. 9 (08/28/2021 email from B. Dahlberg).

### 5. *Plaintiffs' Supplemental Responses Remain Deficient*

On September 27, 2021, Plaintiffs provided supplemental responses to the Interrogatories and RFPs, and produced additional documents on September 22 and October 4, but these responses and production remained deficient. For example, to date, none of the three Plaintiffs have produced a single internal document from their own companies. Dahlberg Decl., ¶¶ 22, 27. No evidence of any cybercrimes or user confusion or diversion was produced. *Id*. No notices providing "reasonable evidence of actionable harm" to Defendants was included in the productions, either. *Id*. These productions also included data dumps of irrelevant documents, such as blank pages, duplicate documents, and illegible documents. *Id*. at ¶ 27.

Plaintiffs' written responses to many of the RFPs were ambiguous as to whether any responsive documents existed or would be produced. *See* Separate Statement at RFPs 1-5, 7-10. The responses also failed to specify a date by which production of responsive documents would be completed. In addition, in response to some RFPs, Plaintiffs simply refused to produce any documents at all.

Defendants' counsel followed up several times with Plaintiffs asking whether additional documents would be produced, and if so, by when. Dahlberg Decl., ¶ 19, Ex. 11 (09/27/2021 email to S. Lauridsen) & Ex. 12 (9/29/2021 Ltr. to D. Steele). Plaintiffs ignored these communications, not even offering the courtesy of a response. Dahlberg Decl., ¶ 25. Defendants warned Plaintiffs that if they continued to ignore their communications, Defendants would have no choice but to move for sanctions. *Id*. at Ex. 12 (Letter to Steele). Again, Plaintiffs' counsel failed to substantively respond. Dahlberg Decl., ¶ 25.

Plaintiffs' supplemental responses to the Interrogatories were similarly defective. For example, in response to certain interrogatories, Plaintiffs stated that "pursuant to Rule 33(d), Facebook has produced and will produce documents containing information responsive to this interrogatory," but failed to identify any documents as required by Rule 33(d). *See* Separate

Statement, Rogs 5, 7, 12, 13, 17, 18. Moreover, in response to the Interrogatories on damages, Plaintiffs cut-and-pasted the paragraph from their deficient response to MIDP Request 5 stating that their damages are "unknown at this time" but that they "reserve[] the right to supplement this response as additional information becomes available." Separate Statement, Rogs 9-12, 20-22.

Further, Plaintiffs failed to comply with their own prior agreements with Defendants' counsel. In response to certain Interrogatories, the parties had agreed during their meet-and-confer conferences that Plaintiffs could produce charts containing responsive information. Dahlberg Decl. ¶ 13, Ex. 5 (08/02/2021 Steele Letter); Separate Statement, Rogs 2, 7, 14, 19. For example, Interrogatory 7 requested Plaintiffs to "IDENTIFY each DISPUTED DOMAIN for which YOU claim WhoisGuard failed to timely disclose the identity and contact information for the licensee." Plaintiffs' counsel confirmed in a letter that "the parties agreed a chart or a list would be acceptable as a response." Dahlberg Decl. ¶ 13, Ex. 5 at p. 3 (08/02/2021 Steele Letter). Rather than producing a chart or list of responsive information, Plaintiffs' responses merely state, "[T]he parties agreed that Plaintiffs can produce a chart responsive to this interrogatory," and that they reserve their right to supplement their response. Separate Statement, Rogs 2, 7, 14, 19.

Finally, Plaintiffs have entirely withheld several categories of important documents. First, they have withheld their own communications with the Namecheap customers who registered the disputed domains, which are responsive both to MIDP Request 3 as well as RFPs 2 and 3. Dahlberg Decl. ¶ 29. For example, in October of 2018, Namecheap forwarded Plaintiffs' trademark notice about the domain name uninstagrammable.com to the customer who had registered the domain. The customer responded to Facebook stating that he registered the domain without being aware of the trademark issue and that he had not linked anything to the domain or "made it online" yet. Dahlberg Decl. ¶ 29, Ex. 13 (NC_000774). He asked Facebook, "please let me know what is the next step if my registration is not valid," but Facebook never responded to him. *Id.* Defendants only recently discovered the existence of this communication when the customer forwarded it to them. This communication shows that

Facebook knew the identity and contact information of the customer all along (including the time they claim they requested it from WhoisGuard), and also that the domain was not even in use (undercutting their "wrongful use" argument). Facebook's failure to respond also supports Defendants' affirmative defenses of waiver and laches. Examples of other responsive communications which the customers forwarded to Defendants, but which were not included in Plaintiffs' production, are attached as Exhibit. 13. The full scope of customer correspondence that Plaintiffs are improperly withholding is unknown at this time.

Defendants also learned that in the past, Plaintiffs themselves owned some of the disputed domain names. For example, Namecheap or other registrars previously transferred ownership of the domains to Plaintiffs after they prevailed in UDPR domain name dispute proceedings. *See* Dahlberg Decl., ¶ 30. Yet, Plaintiffs are refusing to produce ESI reflecting how, why, and when they lost or relinquished ownership of those domains thereafter. Dahlberg Decl., ¶ 30. On a meet-and-confer call, Plaintiffs asserted that Defendants could reference public WHOIS records to learn this information, but the public records do not include this information. Plaintiffs flatly refused Defendants' requests for them to produce the ESI relevant to the disputed domain names. *Id*.; *see* Ex. 12 at p. 3 (09/27/2021 Ltr. to D. Steele).

On November 8, 2021, the parties' counsel held one final meet-and-confer call to attempt to resolve these disputes without further Court intervention. *Id*. at 31. Despite Defendants' good faith efforts, the parties were not able to resolve the disputes. In particular, while Plaintiffs acknowledged that their production to date was still incomplete and that additional documents and/or supplements would be produced on a "rolling" basis, they would not provide any indication as to when that would happen. *Id.*

**III.   ARGUMENT**

    **A. The Court Should Compel Plaintiffs to Produce Full, Non-Evasive Responses and All Responsive Documents**

Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production where a party fails to answer an interrogatory submitted under Rule 33, or fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(B)(iii)-(iv). In

addition, the MIDP establishes "court-ordered mandatory initial discovery pursuant to the Court's inherent authority to manage cases." Doc. 7 at 1. One of the "key features" of the MIDP is that "responses must be based on information available to the parties as of the time they are made, and must be timely supplemented as additional relevant information becomes available." *Nyerges v. Hillstone Restaurant Group, Inc.*, No. CV-19-02376-PHX-DWL, 2021 WL 3299625, *13 (D. Ariz. Aug. 2, 2021). Among other things, the MIDP requires parties to produce the documents and ESI that "may be relevant to any party's claims or defenses" (MIDP Request 3), state the facts relevant to each of the party's claims or defenses (MIDP Request 4), and "[p]rovide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered" (MIDP Request 5). As described below and in the Separate Statement, Plaintiffs have failed to fully comply with their discovery obligations under the MIDP or in responding to the RFPs and Interrogatories.

   1. <u>Plaintiffs' RFP Responses Are Ambiguous as to Whether Responsive Documents Exist or Will Be Produced</u>

Here, in response many of WhoisGuard's RFPs, Plaintiffs' written responses are ambiguous as to whether any responsive documents exist or will be produced. These RFPs include the following categories:

- Communications about the disputed domains (RFP 1-3), including any notices of "reasonable evidence of actionable harm" from wrongful use of the domains that Plaintiffs contend were provided to Defendants (RFP 1);
- Documents evidencing Plaintiffs' allegation that Defendants acted with a bad faith intent to profit from Plaintiffs' trademarks (RFP 4);
- Documents evidencing the alleged trademark infringement (RFP 5);
- Documents relevant to Defendants' defenses of laches (RFP 6);
- Documents evidencing Plaintiffs' allegations of consumer confusion, diversion, dilution, or other harm (RFP 7-10); and
- Documents related to Facebook's development and use of the FB Mark (RFP

18-25), including documents that would show whether or not Facebook's representations to the USPTO were true.

Each of these requests seeks documents that are also responsive to the MIDP Order, as the documents are unquestionably relevant to the parties' claims or defenses.[1]

In response to all of these requests, Plaintiffs responded that they "will produce non-privileged documents responsive to this request that are in [Plaintiffs'] possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request." *See* Separate Statement. Plaintiffs' responses are improper because they are ambiguous as to whether any responsive documents exist or will be produced. "In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *In re Rivera*, Case No. CV 16-4676 JAK (SSx), 2017 WL 5163695, *3 (C.D. Cal. April 14, 2017). For most of the RFPs, Defendants have located no documents that are responsive within Plaintiffs' productions to date. Dahlberg Decl. ¶ 27.

Plaintiffs' responses also fail to specify the time by which the production will be completed. Rule 34(b)(2)(B) requires that the production must be completed "no later than the time for inspection specified in the request or another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). In addition, in the parties' Stipulated ESI Order, Plaintiffs agreed that when a party wishes to schedule productions on a rolling basis, the parties must meet-and-confer and agree upon "a certain end date by which production will conclude." Doc. 92 at ¶ 7 (Phasing). By refusing to specify a production completion date, Plaintiffs have violated both Rule 34 and the Stipulated ESI Order. Moreover, because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced all documents no later than December 28, 2020, and all responsive ESI no later than February 9,

---

[1] In addition, Plaintiffs have refused to produce any documents in response to RFPs 11-17. The Court should compel Plaintiffs to produce documents responsive to these RFPs for the reasons set forth in the Separate Statement.

2021. *See* Doc. 7 at 3; Doc. 28. Thus, Plaintiffs' responsive documents are long overdue.

If Plaintiffs have any evidence that supports their allegations, they cannot delay producing it any longer. In addition, as discussed above, even within the categories of documents they did produce, Plaintiffs have withheld communications with the Namecheap customers who registered the domain names. They have also withheld ESI related to their own past ownership of some of the disputed domain names, which is unquestionably responsive to the MIDP Order.

The Court should put a stop to such gamesmanship. Plaintiffs should be compelled to serve RFP responses that are compliant with Rule 34, and produce all non-privileged documents responsive to the RFPs and MIDP Order without further delays.

2.  <u>Plaintiffs Must Provide Complaint, Non-Evasive Interrogatory Answers</u>

In addition, Plaintiffs provided vague and evasive answers to WhoisGuard's Interrogatories. These Interrogatories are seeking basic information regarding Plaintiffs' own allegations, which Defendants need in order to defend themselves and which should have been provided in Plaintiffs' MIDP responses. For example:[2]

- Rog 1 asks Plaintiffs to "IDENTIFY all DISPUTED DOMAINS." Rather than identifying the disputed domains, Plaintiffs have improperly referenced lists of domains in their prior letters to Defendants. *See Lawman v. City and County of San Francisco*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016) (interrogatory answer should be complete in itself and not refer to other documents). Plaintiffs must provide a full, responsive answer under oath, as required by Rule 33(b)(3).

- Rog 7 asks Plaintiffs to "IDENTIFY each DISPUTED DOMAIN [] for which YOU claim WhoisGuard failed to timely disclose the identity and contact information for the licensee." Similarly, Rog 14 asks Plaintiffs to identify all disputed domains which they contend Namecheap registered in its own name, as the registrant, and Rog 15 asks Plaintiffs to identify all disputed domains which they contend Namecheap used to operate "parking pages". In

---

[2] The text of all contested Interrogatory responses and the reasons why they are deficient is set forth in the Separate Statement.

response to each of these Interrogatories, Plaintiffs state that "the parties agreed that Plaintiffs can produce a chart" and that Plaintiffs "will supplement this response with the Bates numbers of that chart once it has been produced." Separate Statement, Rogs 7, 14 & 15. These answers are evasive and non-responsive. Plaintiffs also use the same tactic to avoid responding to Rogs 2 and 19, which seek facts relevant to Defendants' laches defense.

- Rog 5 requests Plaintiffs to identify all communications in which they provided WhoisGuard with "reasonable evidence of actionable harm." Plaintiffs responded by stating that pursuant to Rule 33(d), "Facebook has produced and will produce documents containing information responsive to this interrogatory," but no documents are identified. Separate Statement, Rog 5. Plaintiffs have made no attempt to identify the business records, let alone specify them "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). Plaintiffs use the same tactic to avoid responding to Rogs 12 and 13, which ask them to identify the instances in which consumers were confused or diverted away as alleged in Plaintiffs' FAC, and Rogs 17 and 18, which asks them to identify the alleged infringing uses of Plaintiffs' trademarks. Plaintiffs' counsel are experienced and sophisticated lawyers. They certainly know that answering interrogatories in this manner is improper.

- Rogs 10, 11, and 20-22 seek information about Plaintiffs' alleged damages and methods of calculating them. Rather than providing any numbers or computations, or identifying supporting evidence, Plaintiffs cut-and-pasted their deficient initial MIDP response in which they state that their damages are unknown. If Plaintiffs are claiming any damages, they must provide a computation and total amount for each category.

- Rog 23 asks Plaintiffs to "State all facts which support YOUR allegation that this is an 'exceptional case' entitling Plaintiffs to an award of attorneys' fees." Plaintiffs *admitted* in their recent Motion to Partially De-Designate the Service Agreement Between Defendants that their response to this Interrogatory was "vague and incomplete." Doc. 141 at 5:9-10. Plaintiffs blamed their failure to provide fulsome responses on Defendants' designation of the service agreement as "Attorneys' Eyes Only." *Id*. at 4:16-19. This is not a

valid basis for failing to provide full responses. In such situations, courts have held that a party's counsel, acting as the party's agent, may answer and sign the discovery responses. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 368 (S.D.N.Y. 2010). In any case, the Court has now partially de-designated the provisions of the service agreement in dispute, and therefore Plaintiffs cannot use the AEO designation as an excuse to avoid providing a full response.

Accordingly, the Court should compel Plaintiffs to serve full, non-evasive responses to the contested Interrogatories that are compliant with Rule 33.

### B. The Court Should Impose Monetary Sanctions

Rule 37(a)(5) provides that if a motion to compel is granted, or if the requested discovery is produced after the motion was filed, the moving party is entitled to recover his or her expenses, including reasonable attorney's fees, unless the losing party was substantially justified in opposing the motion or other circumstances make such an award unjust. In addition, Rule 37(b)(2) provides for sanctions where a party fails to comply with the MIDP. Doc. 7 at 4. If a party fails to comply with their discovery obligations under the MIDP, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Because Plaintiffs cannot address their failure to serve compliant discovery responses, much less show that "the failure was substantially justified" or that "other circumstances make an award of expenses unjust," the Court should impose monetary sanctions in the amount of Defendants' reasonable attorneys' fees incurred in enforcing the discovery requests. *See id.* In particular, Plaintiffs' refusals to substantively respond to Defendants' counsel's numerous inquiries regarding timing of the production, and their conduct in producing thousands of pages of inconsequential or previously available documents, demonstrates that Plaintiffs and their counsel have not acted in good faith.

To date, Defendants' counsel has reasonably spent at least 18.0 hours engaging in meet-

and-confer efforts and preparing this Motion and supporting papers, at a rate of $525.00 per hour, and expect to spend an additional 3.0 hours preparing a Reply in support of this Motion. Dahlberg Decl., ¶¶ 32-33. Accordingly, Defendants seek sanctions in the amount of $11,025 ($525.00 x 21.0 hours). *See Van Gerwen v. Guarantee Mut. Life Co*., 214 F.3d 1041, 1045 (9th Cir. 2000) (Ninth Circuit's lodestar approach to calculating fees requires multiplying number of hours reasonably expended by a reasonable hourly rate).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion and order Plaintiffs to produce all non-privileged documents responsive to RFPs 1-25 and produce full, non-evasive answers to Interrogatories 1, 2, 5-7, 10-15, and 17-25 within 30 days. To the extent Plaintiffs withhold any privileged documents, they should update their privilege log to identify them. The Court should further order Plaintiffs and their counsel to pay to Defendants monetary sanctions in the amount of $11,025.00.

Dated: November 19, 2021            **ROME & ASSOCIATES, A.P.C.**

By:   *s/ Brianna Dahlberg*
         Eugene Rome
         Sridavi Ganesan
         Brianna Dahlberg

And

**FENNEMORE CRAIG, P.C.**

Ray K. Harris
Mario C. Vasta

Attorneys for Defendants and Counterclaimants Namecheap, Inc. and WhoisGuard, Inc.