**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Meta Platforms, Inc., et al., | CASE NO. 2:20-cv-00470-GMS |
| Plaintiffs, | **DEFENDANTS' SEPARATE STATEMENT IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS TO PRODUCE DISCOVERY** |
| v. | |
| WhoisGuard, Inc., et al., | |
| Defendants. | |
| WhoisGuard, Inc., et al., | |
| Counterclaimants, | |
| v. | |
| Meta Platforms, Inc., | |
| Counterclaim Defendant. | |

## SEPARATE STATEMENT IDENTIFYING DEFICIENT
## DISCOVERY RESPONSES

Pursuant to LRCiv 37.1(a), Defendants and Counterclaimants Namecheap, Inc. ("Namecheap") and WhoisGuard, Inc. ("WhoisGuard") (together, "Defendants") hereby file the following a separate statement setting forth each of the discovery requests propounded, the responses received, and the reasons why said responses are deficient.

### WHOISGUARD'S REQUESTS FOR PRODUCTION TO PLAINITFFS

**RFP 1:**

All COMMUNICATIONS with DEFENDANTS related to each of the DISPUTED DOMAINS, including the "evidence of actionable harm" (within the meaning of RAA Section 3.7.7.3) that was provided to DEFENDANTS.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 1:**

Facebook[1] objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 1:**

Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control, if any, that are located after a reasonable

---

[1] WhoisGuard propounded all of the discovery requests at issue to all three Plaintiffs. Each Plaintiff served separate responses, but their responses are substantively identical. Accordingly, in the interest of avoiding unnecessary repetition, Defendants reproduce the full text of Facebook's responses only.

search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 1 IS INADEQUATE:**

Plaintiffs' response is ambiguous as to whether any responsive documents exist or will be produced. "In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *In re Rivera*, Case No. CV 16-4676 JAK (SSx), 2017 WL 5163696, *3 (C.D. Cal. April 14, 2017). Within Plaintiffs' production to date, Defendants have located no "evidence of actionable harm" that was provided to Defendants prior to the lawsuit. Decl. of Brianna Dahlberg filed herewith ("Dahlberg Decl."), ¶ 27.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the parties' Stipulated Order Re: Discovery of Electronically Stored Information for Standard Litigation ("ESI Order"), Doc. 92 at ¶ 7 (Phasing). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020, and all responsive electronically stored information ("ESI") no later than February 9, 2021. *See* Doc. 7 at 3 (MIDP responses were due 30 days after first responsive pleading) & Doc. 53 (WhoisGuard filed the first responsive pleading to Plaintiffs' complaint on November 24, 2020); Doc. 28 (Order granting Plaintiffs an extension to February 9, 2021 to produce ESI identified in initial MIDP responses).

**RFP 2:**

All COMMUNICATIONS with Namecheap customers related to any of the DISPUTED DOMAINS or the MARKS.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 2:**

Facebook objects to this request as constituting two requests, including discrete

subparts, and thus as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this request is not limited to the trademarks asserted in this action. Facebook objects to this request as overly broad and unduly burdensome in that the true identities of Namecheap's customers constitutes information in the possession of Namecheap and/or Whoisguard as opposed to in the possession of Facebook. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 2:**

Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome in that the true identities of Namecheap's customers constitutes information in the possession of Namecheap and/or Whoisguard as opposed to in the possession of Facebook. Facebook objects to this request as being harassing and oppressive. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agreed to limit the temporal

scope of this request to the last three years, to narrow this request to omit the words "or the MARKS," and to replace "Namecheap's customers" with "third parties" that would not include Facebook's attorneys.

Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

## REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 2 IS INADEQUATE:

Plaintiffs' response is ambiguous as to whether any responsive documents exist or will be produced. "In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *In re Rivera*, 2017 WL 5163696, at *3. Within Plaintiffs' production to date, Plaintiffs have withheld responsive communications with Namecheap customers regarding the disputed domains. Defendants know that responsive documents exist because some of Namecheap's customers have forwarded emails they have exchanged with Plaintiffs that are responsive to this request, which should have been produced by Plaintiffs. Dahlberg Decl., ¶ 29 & Ex. 13. The full extent of documents being withheld is unknown.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

## RFP 3:

All COMMUNICATIONS with any third party relating to any of the DISPUTED DOMAINS, the instant case, or either of the DEFENDANTS.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 3:**

Facebook objects to this request as constituting three requests, including discrete subparts, and thus as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 3:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action.

Facebook objects to this request as being harassing and oppressive. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agreed to limit temporal scope of this request to the last three years and to further limit the scope of this request to COMMUNICATIONS related to the DISPUTED DOMAINS, the instant case, or DEFENDANTS regarding the DISPUTED DOMAINS or the instant case.

Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 3 IS INADEQUATE:**

Plaintiffs' response is ambiguous as to whether any responsive documents exist or will be produced. "In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *In re Rivera*, 2017 WL 5163696, at *3. Within Plaintiffs' production to date, Plaintiffs have withheld responsive communications with Namecheap customers regarding the disputed domains. Dahlberg Decl., ¶ 29 & Ex. 13. Defendants also learned that Plaintiffs owned some of the disputed domain names at issue in the past. *Id.* at ¶ 30. Responsive communications between Plaintiffs and their own registrar should exist for these domains. However, no such communications have been produced. *Id.*

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 4:**

All DOCUMENTS related to or evidencing YOUR allegation that DEFENDANTS acted with a bad faith intent to profit from the MARKS in connection with any of the DISPUTED DOMAINS.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 4:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this request is not limited to the trademarks asserted in this action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 4:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook

objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Subject to and without waiving its objections, Facebook responds as follows: Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that MARKS means any trademarks and service marks identified in the operative complaint and asserted by Plaintiffs in this action.

Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 4 IS INADEQUATE:**

Plaintiffs' response is ambiguous as to whether any responsive documents exist or will be produced. "In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *In re Rivera*, 2017 WL 5163696, at *3.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 5:**

All DOCUMENTS related to the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 5:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 5:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that MARKS means any trademarks and service marks identified in the operative complaint and asserted by Plaintiffs in this action. In addition, the parties agree that this request relates only to the alleged infringing uses of the MARKS by Defendants and Defendants' licensees which form the basis of Plaintiffs' claims and further agree to limit the temporal scope of this request to the last three years.

Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 5 IS INADEQUATE:**

Plaintiffs' response is ambiguous as to whether any responsive documents exist or will be produced. "In responding to discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." *In re Rivera*, 2017 WL 5163696, at *3.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 6:**

All DOCUMENTS relating to or evidencing the date(s) and circumstances under which PLAINTIFFS first learned of the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 6:**

Facebook objects to this request as constituting two requests, including discrete subparts, and thus as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this request is not limited to the trademarks asserted in this action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 6:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in

temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that MARKS means any trademarks and service marks identified in the operative complaint and asserted by Plaintiffs in this action and, in addition, the parties agreed that Plaintiffs can produce a chart responsive to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 6 IS INADEQUATE:**

This RFP seeks information that is essential to Defendants' affirmative defense of laches. *See Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109, 115 (9th Cir. 2018) (laches bars a trademark claim where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time). The domains at issue were first registered as early as 2006, yet Plaintiffs did not file suit until 2020. Therefore, Defendants are seeking documents that would show the dates and circumstances under which Plaintiffs first learned of the alleged infringement at issue.

Plaintiffs' response accurately reflects that Defendants agreed that they could produce a chart responsive to this request, but no such chart has been produced. Dahlberg Decl., _.

Plaintiffs have also asserted privilege objections, but the underlying facts of when and how Plaintiffs first learned of the alleged infringement would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not prevent disclosure of the underlying facts by those who communicated with the attorney."). Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log. Plaintiffs' privilege log does not identify any withheld documents responsive to this request.  *See* Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 7:**

All DOCUMENTS relating to or evidencing any complaints made by PLAINTIFFS' users or any other third party regarding any confusion caused by the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 7:**

Facebook objects to this request as constituting two requests, including discrete subparts, and thus as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this request is not limited to the trademarks asserted in this action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having

1  exceeded the permissible number of requests each side may propound on the opposing side.

2  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 7:**

3      Facebook objects to this request as seeking documents protected by the attorney-client

4  privilege and the attorney work-product doctrine, as well as any other applicable immunity

5  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

6  objects to this request as overly broad and unduly burdensome in that it requests "[a]ll

7  DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules

8  26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook

9  objects to this request as being overly broad and unduly burdensome in that it is unlimited in

10 temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

11     Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties'

12 July 26, 2021 and August 2, 2021 correspondence, the parties agree that MARKS means any

13 trademarks and service marks identified in the operative complaint and asserted by Plaintiffs

14 in this action.

15     Facebook will produce a limited quantity of non-privileged documents evidencing

16 complaints responsive to this request and a limited quantity of non-privileged documents

17 related to these complaints that are in Facebook's possession, custody, or control, if any, that

18 are located after a reasonable search within a reasonable time frame commensurate with this

19 request. Facebook reserves the right to supplement its response to this request.

20 **REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 7 IS**

21 **INADEQUATE:**

22     This request seeks documents evidencing Plaintiffs' allegations in the FAC that the

23 allegedly infringing domains caused confusion among their users and/or other third parties.

24 Thus, the documents requested are centrally relevant to the claims. Defendants are entitled

25 to know whether any such user complaints actually exist.

26     Plaintiffs' vague response that they will produce only "limited quantities" of

27 responsive documents is improper. Plaintiffs should not be permitted to selectively withhold

28 responsive documents. All responsive documents should be produced.

Plaintiffs' response is also ambiguous as to whether any responsive documents exist or will be produced. To date, Plaintiffs have produced no responsive documents at all. Indeed, none of the Plaintiffs appear to have produced any internal documents from their own companies in the litigation. Dahlberg Decl., ¶ 27.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 8:**

All DOCUMENTS relating to or evidencing any diversion of users away from PLAINTIFFS' websites as alleged in paragraphs 98, 107, 133, 152, 258 and 267 of the First Amended Complaint.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 8:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as overly broad and unduly burdensome in that it seeks

1   information in the possession of Namecheap and/or Whoisguard as opposed to in the

2   possession of Facebook. Facebook objects to this request as being overly broad and unduly

3   burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any

4   documents it is withholding because it objects to conducting a search for documents in light

5   of Whoisguard having exceeded the permissible number of requests each side may propound

6   on the opposing side.

7   **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 8:**

8   Facebook objects to this request as seeking documents protected by the attorney-client

9   privilege and the attorney work-product doctrine, as well as any other applicable immunity

10  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

11  objects to this request as overly broad and unduly burdensome in that it requests "[a]ll

12  DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules

13  26 and 34. Facebook objects to this request as seeking documents neither relevant to the

14  claim or defense of any party nor reasonably proportional to the needs of the action.

15  Facebook objects to this request as being harassing and oppressive. Facebook objects to this

16  request as overly broad and unduly burdensome in that it seeks information in the possession

17  of Namecheap and/or Whoisguard as opposed to in the possession of Facebook. Facebook

18  objects to this request as being overly broad and unduly burdensome in that it is unlimited in

19  temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

20  Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties'

21  July 26, 2021 and August 2, 2021 correspondence, the parties agreed to narrow this request

22  to eliminate the words "relating to."

23  Facebook will produce non-privileged documents responsive to this request that are

24  in Facebook's possession, custody, or control, if any, that are located after a reasonable

25  search within a reasonable time frame commensurate with this request. Facebook reserves

26  the right to supplement its response to this request.

27

28

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 8 IS INADEQUATE:**

Plaintiffs' response is ambiguous as to whether any responsive documents exist or will be produced. Indeed, none of the Plaintiffs appear to have produced any internal documents from their own companies in the litigation. Dahlberg Decl., ¶ 27.

Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log but Plaintiffs' privilege log does not identify any documents responsive to this request. *See* Dahlberg Decl., Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order, Doc. 92 at ¶ 7 (Phasing). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 9:**

All DOCUMENTS relating to or evidencing any dilution caused by the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 9:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents

based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this request is not limited to the trademarks asserted in this action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 9:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that MARKS means any trademarks and service marks identified in the operative complaint and asserted by Plaintiffs in this action and, in addition, the parties agreed to narrow this request to eliminate the words "relating to."

Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control, if any, that are located after a reasonable

1  search within a reasonable time frame commensurate with this request. Facebook reserves

2  the right to supplement its response to this request.

3  **REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 9 IS**

4  **INADEQUATE:**

5     Plaintiffs' response is ambiguous as to whether any responsive documents exist or

6  will be produced. To date, Plaintiffs have produced no responsive documents at all. Indeed,

7  Plaintiffs have not produced any internal documents in the litigation. Dahlberg Decl., ¶ 27.

8     Moreover, to the extent any documents were withheld based on an assertion of

9  privilege, Plaintiffs were required to identify them on their privilege log but Plaintiffs'

10  privilege log does not identify any documents responsive to this request. *See* Dahlberg Decl.,

11  Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they

12  must identify them on their privilege log in a manner sufficient to enable other parties to

13  assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

14     Plaintiffs' response also fails to specify the time by which the production will be

15  completed, as required by Rule 34(b)(2)(B) as well as the ESI Order, Doc. 92 at ¶ 7 (Phasing).

16  Because the documents requested are also responsive to the MIDP Order, Plaintiffs should

17  have produced the responsive documents no later than December 28, 2020 and all responsive

18  ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

19  **RFP 10:**

20     All DOCUMENTS evidencing, referencing, or which YOU contend otherwise

21  support YOUR allegations that PLAINTIFFS have been harmed by the alleged use of the

22  MARKS.

23  **PLAINTIFFS' ORIGINAL RESPONSE TO RFP 10:**

24     Facebook objects to this request as exceeding the permissible number of requests for

25  production one side may propound on the other side in this action when counted with all of

26  the propounded requests, including their discrete subparts. Facebook will not conduct a

27  search for responsive documents until the parties have met and conferred and until

28  Defendants have selected which twenty-five requests for production, including discrete

1  subparts, they wish to propound. Facebook objects to this request as seeking documents

2  protected by the attorney-client privilege and the attorney work-product doctrine, as well as

3  any other applicable immunity from disclosure. Facebook expects to withhold documents

4  based on this objection. Facebook objects to this request as overly broad and unduly

5  burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs

6  of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad

7  and unduly burdensome and as seeking documents neither relevant to the claims or defenses

8  of any party nor reasonably proportional to the needs of the action in that this request is not

9  limited to the trademarks asserted in this action. Facebook objects to this request as being

10  harassing and oppressive. Facebook objects to this request as being overly broad and unduly

11  burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any

12  documents it is withholding because it objects to conducting a search for documents in light

13  of Whoisguard having exceeded the permissible number of requests each side may propound

14  on the opposing side.

15  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 10:**

16        Facebook objects to this request as seeking documents protected by the attorney-client

17  privilege and the attorney work-product doctrine, as well as any other applicable immunity

18  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

19  objects to this request as overly broad and unduly burdensome in that it requests all

20  agreements concerning the "MARKS" and thus is not proportional to the needs of the action

21  as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly

22  burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs

23  of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad,

24  unduly burdensome and premature in light of the fact that this request calls for information

25  in the possession of Defendants and third parties. Facebook objects to this request as being

26  harassing and oppressive. Facebook objects to this request as being overly broad and unduly

27  burdensome in that it is unlimited in temporal scope. Facebook intends to withhold

28  documents based on each of these objections.

Subject to and without waiving its objections, Facebook responds as follows: Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control showing general harm to Plaintiffs and their brands, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 10 IS INADEQUATE:**

Plaintiffs' response is ambiguous as to whether any responsive documents exist or will be produced. To date, Plaintiffs have produced no responsive documents at all. Indeed, Plaintiffs have not produced any internal documents in the litigation. Dahlberg Decl., ¶ 27.

Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log but Plaintiffs' privilege log does not identify any documents responsive to this request. *See* Dahlberg Decl., Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order, Doc. 92 at ¶ 7 (Phasing). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 11:**

All consent agreements, co-existence agreements, settlement agreements, purchase agreements, assignment agreements, domain name transfer agreements, assignments, and other written agreements between PLAINTIFFS and any third party concerning any of the MARKS.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 11:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests all agreements concerning the "MARKS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this request is not limited to the trademarks asserted in this action. Facebook objects to this request as being harassing and oppressive. Facebook further objects to this request as being overly broad and unduly burdensome to the extent it conflicts with any confidentiality provisions in the requested agreements. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 11:**

Facebook objects to this request as overly broad and unduly burdensome in that it requests all agreements concerning the "MARKS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll" agreements and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as

being harassing and oppressive. Facebook further objects to this request as being overly broad and unduly burdensome to the extent it conflicts with any confidentiality provisions in the requested agreements. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook intends to withhold documents based on each of these objections.

## REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 11 IS INADEQUATE:

Defendants narrowed this request to seek consent and co-existence agreements related to the FB Mark only. Dahlberg Decl., Ex. 4 at p. 8 (07/26/2021 Ltr to D. Steele). However, even with those limitations, Plaintiffs still refuse to produce any responsive documents.

Plaintiffs' consent and co-existence agreements permitting others to use the characters "FB" are relevant to assessing the validity, scope, and strength of Plaintiffs' rights in the FB Mark. Other courts have permitted discovery on consent or co-existence agreements in trademark actions. *See Healthier Choice Flooring, LLC v. CCA Global Partners, Inc.*, 2013 WL 12101905, *7 (N.D. Ga. Jan. 4, 2013). In this case, Defendants are informed and believe that at least one such agreement exists between Facebook and the American Farm Bureau Federation, which opposed Facebook's registration for the FB Mark in the USPTO before entering into a settlement with Facebook. The Farm Bureau presently owns and uses the domain name fb.org.

Plaintiffs' objections to producing the responsive agreements are not well-founded. To the extent any agreements are confidential, Facebook may designate them confidential or attorneys' eyes only under the Stipulated Protective Order (Doc. 90). The request is not "harassing" or "oppressive," as Plaintiffs contend, given that the documents are centrally relevant to the defenses and counterclaims. Plaintiffs have not explained how locating and producing the agreements would be unduly burdensome, particularly for a large company with Facebook's resources.

Finally, Plaintiffs' object that this request is not limited in temporal scope, but the disputed domain names at issue in the case were first registered as early as 2006. Therefore,

the validity of Facebook's trademark rights dating back to that timeframe are at issue in the litigation. Defendants have already substantially narrowed this request as a good faith compromise, to address Plaintiffs' objections.

**RFP 12:**

All DOCUMENTS and COMMUNICATIONS relating to complaints regarding online abuse, phishing, malware, spam, hacking, trademark infringement, and other forms of abuse occurring on, or being facilitated by, PLAINTIFFS' own platforms, and PLAINTIFFS' actions in response thereto. The time period for this request is January 1, 2018 to the present.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 12:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and "all COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 12:**

Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work- product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and "all COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook intends to withhold documents based on each of these objections.

## REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 12 IS INADEQUATE:

This request seeks documents relevant to Defendants' affirmative defense of unclean hands. Under this defense, Defendants allege that Plaintiffs engaged in bad faith inequitable conduct that relates to the subject matter of their claims, including by turning a blind eye to intellectual property infringement, abuse, and cybercrime occurring on their own platforms (*i.e.*, engaging in the same bad faith conduct of which they falsely accuse Defendants).[2]

Defendants narrowed this request to seek a representative sample of documents only. In the parties' meet-and-confer conferences, Plaintiffs agreed to produce a sample of responsive documents as a compromise, which was acceptable to Defendants, provided that the sample would be representative and not "cherry picked" by Plaintiffs' counsel. Dahlberg Decl., Ex. 5 at p. 4 (08/02/2021 Ltr from Steele) ("a sample was only offered as a concession"); Ex. 6 at p. 2 (08/03/2021 Ltr to Steele).

---

[2] For example, the same "Internet security expert" whom plaintiffs quote in their FAC has reported on Facebook's tolerance of cybercrime groups who operate openly on its social media platform. *See* Brian Krebs, "A Year Later, Cybercrime Groups Still Rampant on Facebook," April 8, 2019, available at https://krebsonsecurity.com/2019/04/a-year-later-cybercrime-groups-still-rampant-on-facebook.

However, when Plaintiffs produced their supplemental response to this RFP, they now are refusing to produce any responsive documents at all. The Court should compel Plaintiffs to produce a representative sample of documents showing the complaints they receive within each category of abuse of which they accuse Defendants, and Plaintiffs' responses thereto.

**RFP 13:**

DOCUMENTS sufficient to identify all investigations, complaints, and other proceedings brought by the EU Data Protection Commissioner, or any other regulatory or government entity, against PLAINTIFFS alleging violations of the GDPR or other privacy laws. The time period for this request is January 1, 2018 to the present.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 13:**

Facebook objects to this request as constituting three requests, including discrete subparts, and thus as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook intends to withhold documents based on each of these objections.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 13:**

Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product

doctrine, as well as any other applicable immunity from disclosure. Facebook intends to withhold documents based on each of these objections.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 13 IS INADEQUATE:**

The requested documents are relevant to Defendants' defense that any refusal to disclose customer data to Plaintiffs was justified because Plaintiffs do not comply with the GDPR or other privacy laws. The request is limited in scope as to time and seeks only documents "sufficient to identify" the regulatory proceedings at issue.

Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log but Plaintiffs' privilege log does not identify any documents responsive to this request. *See* Dahlberg Decl., Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

**RFP 14:**

All COMMUNICATIONS exchanged with the Ireland Data Protection Commission relating to statutory inquiries into PLAINTIFFS' compliance with the GDPR.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 14:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing

1    and oppressive. Facebook objects to this request as being overly broad and unduly

2    burdensome in that it is unlimited in temporal scope. Facebook intends to withhold

3    documents based on each of these objections.

4    **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 14:**

5         Facebook objects to this request as seeking documents neither relevant to the claim

6    or defense of any party nor reasonably proportional to the needs of the action. Facebook

7    objects to this request as seeking documents protected by the attorney-client privilege and

8    the attorney work- product doctrine, as well as any other applicable immunity from

9    disclosure. Facebook objects to this request as overly broad and unduly burdensome in that

10    it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the

11    action as required by Rules 26 and 34. Facebook objects to this request as being harassing

12    and oppressive. Facebook objects to this request as being overly broad and unduly

13    burdensome in that it is unlimited in temporal scope. Facebook intends to withhold

14    documents based on each of these objections.

15    <u>**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 14 IS**</u>

16    <u>**INADEQUATE:**</u>

17         The requested documents are relevant to Defendants' defense that any refusal to

18    disclose customer data to Plaintiffs was justified because Plaintiffs do not comply with the

19    GDPR or other privacy laws. The request is limited in scope as it seeks only communications

20    with one regulatory body, the Ireland Data Protection Commission. In response to Plaintiffs'

21    regarding the time period, Defendants are willing to narrow the time period January 1, 2018

22    to the present.

23         Plaintiffs' assertion of privilege is not well-founded because communications with an

24    independent third-party regulatory agency would not be privileged. Moreover, to the extent

25    any documents were withheld based on an assertion of privilege, Plaintiffs were required to

26    identify them on their privilege log but Plaintiffs' privilege log does not identify any

27    documents responsive to this request. *See* Dahlberg Decl., Ex. 14. Plaintiffs are withholding

28    any documents based on assertions of privilege, they must identify them on their privilege

log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

**RFP 15:**

All COMMUNICATIONS between PLAINTIFFS and ICANN regarding PLAINTIFFS' efforts to influence or alter WHOIS policy. The time period for this request is January 1, 2018 to the present.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 15:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook intends to withhold documents based on each of these objections.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 15:**

Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook intends to withhold documents based on each of these objections.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 15 IS INADEQUATE:**

This request seeks documents relevant to Plaintiffs' motives in bringing this lawsuit, which is one in a series of similar lawsuits against domain name registrars. When Plaintiffs first filed this lawsuit, Facebook's IP enforcement and DNS policy lead has publicly announced to all of the major registrars at an ICANN public forum that Facebook "will" continue to file such lawsuits, but its "preference is instead to have ICANN enforce and fully implement new policies. . . and establish better rules for Whois." http://domainincite.com/25301-facebook-will-sue-more-registrars-for-cybersquatting. Accordingly, the requested communications between Plaintiffs and ICANN are relevant to Plaintiffs' motives in embarking on a campaign of lawsuits against registrars to obtain changes to existing WHOIS policies. The communications are also responsive to MIDP Request 2, which seeks "written or recorded statements relevant to any party's claims or defenses." Doc. 7 at 6.

Plaintiffs' objections that the request is overly broad, unduly burdensome, and not proportional are not well taken.  The request is limited in time from January 1, 2018 to the present, and seeks communications with a single entity narrowed to a specific topic. The request is not "harassing" or "oppressive," as they are responsive to the MIDP Order. The Court should overrule Plaintiffs' objections and compel them to produce the documents.

**RFP 16:**

All internal DOCUMENTS relating to PLAINTIFFS' broader strategies and goals in connection with WHOIS policy, including DOCUMENTS reflecting any generalized strategy of suing registrars in U.S. courts; efforts to influence ICANN or other policymakers; efforts to influence industry stakeholders; and/or strategies to obtain WHOIS data from registrars based in the European Union. The time period for this request is January 1, 2018 to the present.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 16:**

Facebook objects to this request as constituting four requests, including discrete subparts, and thus as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook intends to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll internal DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook intends to withhold documents based on each of these objections.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 16:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook intends to withhold documents based on this objection. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll internal DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook intends to withhold documents based on each of these objections.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 16 IS INADEQUATE:**

This request seeks documents relevant to Plaintiffs' motives in bringing this lawsuit, which is one in a series of similar lawsuits against domain name registrars. When Plaintiffs first filed this lawsuit, Facebook's IP enforcement and DNS policy lead has publicly announced to all of the major registrars at an ICANN public forum that Facebook "will" continue to file such lawsuits, but its "preference is instead to have ICANN enforce and fully implement new policies. . . and establish better rules for Whois." http://domainincite.com/25301-facebook-will-sue-more-registrars-for-cybersquatting. Accordingly, the requested documents are relevant to Plaintiffs' goals and motives in embarking on a campaign of lawsuits against registrars to obtain changes to existing WHOIS policy.

Plaintiffs' objections that the request is overly broad, unduly burdensome, and not proportional are not well taken.  The request is limited in time from January 1, 2018 to the present, and seeks communications with a single entity narrowed to a specific topic. The request is not "harassing" or "oppressive," as they are responsive to the MIDP Order. The Court should overrule Plaintiffs' objections and compel them to produce the documents.

Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log but Plaintiffs' privilege log does not identify any documents responsive to this request. *See* Dahlberg Decl., Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

**RFP 17:**

DOCUMENTS setting forth PLAINTIFFS' policies and procedures for handling and maintaining the security of the customer data that DEFENDANTS have disclosed in response to demand letters.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 17:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "DOCUMENTS," and thus appears to request "all DOCUMENTS," and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook expects to withhold documents based on each of these objections. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 17:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as overly broad and unduly burdensome in that it requests "DOCUMENTS," and thus appears to request "all DOCUMENTS," and thus is not proportional to the needs of the action

as required by Rules 26 and 34. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook expects to withhold documents based on each of these objections.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 17 IS INADEQUATE:**

The requested documents are relevant to Defendants' defense that any refusal to disclose customer data to Plaintiffs was justified because Plaintiffs do not maintain the security of customer data that is provided to them.

The request is limited in scope as to time and seeks only documents "sufficient" to set forth Plaintiffs' security policies and procedures for maintaining the security of the customer data at issue. It does not request all documents in existence on this topic, as Plaintiffs incorrectly contend.

Plaintiffs have also asserted privilege objections, but their security policies and procedures for customer data would not be privileged information. Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log but Plaintiffs' privilege log does not identify any documents responsive to this request. *See* Dahlberg Decl., Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

**RFP 18:**

All DOCUMENTS relating to Facebook's development, creation, design, search, selection, and adoption of its purported FB mark.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 18:**

Facebook objects to this request as constituting five requests, including discrete subparts, and thus as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded

1  requests, including their discrete subparts. Facebook will not conduct a search for responsive

2  documents until the parties have met and conferred and until Defendants have selected which

3  twenty-five requests for production, including discrete subparts, they wish to propound.

4  Facebook objects to this request as seeking documents protected by the attorney-client

5  privilege and the attorney work-product doctrine, as well as any other applicable immunity

6  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

7  objects to this request as overly broad and unduly burdensome in that it requests "[a]ll

8  DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules

9  26 and 34. Facebook objects to this request as seeking documents neither relevant to the

10  claim or defense of any party nor reasonably proportional to the needs of the action.

11  Facebook objects to this request as being harassing and oppressive. Facebook objects to this

12  request as being overly broad and unduly burdensome in that it is unlimited in temporal

13  scope. Facebook cannot yet identify any documents it is withholding because it objects to

14  conducting a search for documents in light of Whoisguard having exceeded the permissible

15  number of requests each side may propound on the opposing side

16  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 18:**

17       Facebook objects to this request as seeking documents protected by the attorney-client

18  privilege and the attorney work-product doctrine, as well as any other applicable immunity

19  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

20  objects to this request as seeking documents neither relevant to the claim or defense of any

21  party nor reasonably proportional to the needs of the action. Facebook's "development,

22  creation, design, search and selection" of the FB mark are not relevant to this action.

23  Facebook objects to this request as overly broad and unduly burdensome in that it requests

24  "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by

25  Rules 26 and 34. Facebook objects to this request as being overly broad and unduly

26  burdensome in that it is unlimited in temporal scope. Subject to and without waiving its

27  objections, Facebook responds as follows:

28

Facebook will produce non-privileged documents responsive to this request as to the adoption and use of the FB mark that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 18 IS INADEQUATE:**

The documents sought are relevant to Defendants' counterclaims seeking cancellation of the FB Mark on grounds of fraud and abandonment. Evidence concerning the development, creation, design, and selection of the mark is necessary for Defendants to test whether Facebook's representations to the USPTO at issue were fraudulent.

Plaintiffs have also asserted privilege objections, but the underlying facts of when and how Plaintiffs developed, created, designed, and selected the mark was would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not prevent disclosure of the underlying facts by those who communicated with the attorney."). Presumably, Facebook's business and marketing people would have led the design and development of the mark.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 19:**

DOCUMENTS which evidence the date of Facebook's first use in commerce of its purported FB mark.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 19:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a

1   search for responsive documents until the parties have met and conferred and until

2   Defendants have selected which twenty-five requests for production, including discrete

3   subparts, they wish to propound. Facebook objects to this request as seeking documents

4   protected by the attorney-client privilege and the attorney work-product doctrine, as well as

5   any other applicable immunity from disclosure. Facebook expects to withhold documents

6   based on this objection. Facebook objects to this request as seeking documents neither

7   relevant to the claim or defense of any party nor reasonably proportional to the needs of the

8   action. Facebook objects to this request as being harassing and oppressive. Facebook objects

9   to this request as being overly broad and unduly burdensome in that it is unlimited in

10  temporal scope. Facebook cannot yet identify any documents it is withholding because it

11  objects to conducting a search for documents in light of Whoisguard having exceeded the

12  permissible number of requests each side may propound on the opposing side.

13  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 19:**

14          Facebook objects to this request as seeking documents protected by the attorney-client

15  privilege and the attorney work-product doctrine, as well as any other applicable immunity

16  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

17  objects to this request as being overly broad and unduly burdensome in that it is unlimited in

18  temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

19          Facebook will produce non-privileged documents responsive to this request that are

20  in Facebook's possession, custody, or control, if any, that are located after a reasonable

21  search within a reasonable time frame commensurate with this request. Facebook reserves

22  the right to supplement its response to this request.

23  <u>**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 19 IS**</u>

24  <u>**INADEQUATE:**</u>

25          The documents sought are relevant to Defendants' counterclaims seeking cancellation

26  of the FB Mark on grounds of fraud and abandonment. Evidence concerning the date

27  Facebook first used the FB Mark in commerce is necessary for Defendants to test whether

28  Facebook's representations to the USPTO at issue were fraudulent.

Plaintiffs have also asserted privilege objections, but the underlying facts of when Plaintiffs first used the mark in commerce was would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log. Plaintiffs' privilege log does not appear to identify any withheld documents responsive to this request. *See* Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 20:**

All DOCUMENTS related to or evidencing the "product or service research or development" and "market research" referenced in Facebook's requests for extensions of time filed in connection with its trademark applications for its purported FB mark.

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 20:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs

of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 20:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

Facebook will produce non-privileged documents responsive to this request that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**<u>REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 20 IS INADEQUATE:</u>**

The documents sought are relevant to Defendants' counterclaims seeking cancellation of the FB Mark on grounds of fraud and abandonment. The responsive documents are necessary for Defendants to test whether Facebook's representations to the USPTO at issue were fraudulent. "[W]hether an applicant had a 'bona fide intent' to use the mark in commerce at the time requires objective evidence of intent." *M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1376 (Fed. Cir. 2015) (citing 15 U.S.C. § 1051(b)(1)). A general

lack of documentary evidence from the time of filing showing actual plans to use a mark in commerce, as opposed to merely advance the prosecution of a trademark application, supports a finding that the applicant lacked the requisite level of intent. *Id*. at 1377.

Plaintiffs have also asserted privilege objections, but the underlying facts reflecting the "product or service research or development" and "market research" that Facebook conducted would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Presumably, Facebook's business and marketing people would have led such efforts.

Moreover, to the extent any documents were withheld based on an assertion of privilege, Plaintiffs were required to identify them on their privilege log. Plaintiffs' privilege log does not appear to identify any withheld documents responsive to this request. *See* Ex. 14. If Plaintiffs are withholding any documents based on assertions of privilege, they must identify them on their privilege log in a manner sufficient to enable other parties to assess the claim. *See* Fed. R Civ. P. 26(b)(5)(A).

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 21:**

All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "promoting the goods and services of others over the Internet" that existed prior to or on July 14, 2008 (the date of the filing of the trademark application which matured into U.S. Registration No. 4,659,777).

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 21:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a

search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 21:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

Facebook will produce a sample of non-privileged documents evidencing Facebook's bona fide intent to use the FB mark that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 21 IS INADEQUATE:**

The documents sought are relevant to Defendants' counterclaims seeking cancellation of the FB Mark on grounds of fraud and abandonment. The responsive documents are necessary for Defendants to test whether Facebook's representations to the USPTO at issue were fraudulent. "[W]hether an applicant had a 'bona fide intent' to use the mark in commerce at the time requires objective evidence of intent." *M.Z. Berger & Co.*, 787 F.3d at 1376. A general lack of documentary evidence from the time of filing showing actual plans to use a mark in commerce, as opposed to merely advance the prosecution of a trademark application, supports a finding that the applicant lacked the requisite level of intent. *Id.* at 1377.

Plaintiffs have also asserted privilege objections, but the underlying facts reflecting efforts to use the mark in commerce with the services at issue would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Facebook's business and marketing people would have been involved in such efforts, not attorneys.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 22:**

All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; [and] computer services in the nature of customized web pages featuring user defined information, personal profiles and information" that existed prior to

1  or on July 14, 2008 (the date of the filing of the trademark application which matured into
2  U.S. Registration No. 4,764,764).

3  **PLAINTIFFS' ORIGINAL RESPONSE TO RFP 22:**

4        Facebook objects to this request as exceeding the permissible number of requests for
5  production one side may propound on the other side in this action when counted with all of
6  the propounded requests, including their discrete subparts. Facebook will not conduct a
7  search for responsive documents until the parties have met and conferred and until
8  Defendants have selected which twenty-five requests for production, including discrete
9  subparts, they wish to propound. Facebook objects to this request as seeking documents
10  protected by the attorney-client privilege and the attorney work-product doctrine, as well as
11  any other applicable immunity from disclosure. Facebook expects to withhold documents
12  based on this objection. Facebook objects to this request as overly broad and unduly
13  burdensome in that it requests "[a]ll DOCUMENTS and COMMUNICATIONS" and thus
14  is not proportional to the needs of the action as required by Rules 26 and 34. Facebook
15  objects to this request as seeking documents neither relevant to the claim or defense of any
16  party nor reasonably proportional to the needs of the action. Facebook objects to this request
17  as being harassing and oppressive. Facebook objects to this request as being overly broad
18  and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet
19  identify any documents it is withholding because it objects to conducting a search for
20  documents in light of Whoisguard having exceeded the permissible number of requests each
21  side may propound on the opposing side.

22  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 22:**

23        Facebook objects to this request as seeking documents protected by the attorney-
24  client privilege and the attorney work-product doctrine, as well as any other applicable immunity
25  from disclosure. Facebook expects to withhold documents based on this objection. Facebook
26  objects to this request as overly broad and unduly burdensome in that it requests "[a]ll
27  DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the
28  action as required by Rules 26 and 34. Facebook objects to this request as being overly broad

and unduly burdensome in that it is unlimited in temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

Facebook will produce a sample of non-privileged documents evidencing Facebook's bona fide intent to use the FB mark that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 22 IS INADEQUATE:**

As with RFP 21, the documents sought are relevant to Defendants' counterclaims seeking cancellation of the FB Mark on grounds of fraud and abandonment. The responsive documents are necessary for Defendants to test whether Facebook's representations to the USPTO at issue were fraudulent. "[W]hether an applicant had a 'bona fide intent' to use the mark in commerce at the time requires objective evidence of intent." *M.Z. Berger & Co.*, 787 F.3d at 1376. A general lack of documentary evidence from the time of filing showing actual plans to use a mark in commerce, as opposed to merely advance the prosecution of a trademark application, supports a finding that the applicant lacked the requisite level of intent. *Id*. at 1377.

Plaintiffs have also asserted privilege objections, but the underlying facts reflecting efforts to use the mark in commerce with the services at issue would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Facebook's business and marketing people would have been involved in such efforts, not attorneys.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 23:**

All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "Internet based social introduction and social networking services" that existed prior to or on March 12, 2012 (the date of the filing of the trademark application which matured into U.S. Registration No. 4,782,234).

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 23:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any documents it is withholding because it objects to conducting a search for documents in light of Whoisguard having exceeded the permissible number of requests each side may propound on the opposing side.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 23:**

Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity

from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as being overly broad and unduly burdensome in that it is unlimited in temporal scope. Subject to and without waiving its objections, Facebook responds as follows:

Facebook will produce a sample of non-privileged documents evidencing Facebook's bona fide intent to use the FB mark that are in Facebook's possession, custody, or control, if any, that are located after a reasonable search within a reasonable time frame commensurate with this request. Facebook reserves the right to supplement its response to this request.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 23 IS INADEQUATE:**

As with RFP 21 and 22, the documents sought are relevant to Defendants' counterclaims seeking cancellation of the FB Mark on grounds of fraud and abandonment. The responsive documents are necessary for Defendants to test whether Facebook's representations to the USPTO at issue were fraudulent. "[W]hether an applicant had a 'bona fide intent' to use the mark in commerce at the time requires objective evidence of intent." *M.Z. Berger & Co.*, 787 F.3d at 1376. A general lack of documentary evidence from the time of filing showing actual plans to use a mark in commerce, as opposed to merely advance the prosecution of a trademark application, supports a finding that the applicant lacked the requisite level of intent. *Id*. at 1377.

Plaintiffs have also asserted privilege objections, but the underlying facts reflecting efforts to use the mark in commerce with the services at issue would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Facebook's business and marketing people would have been involved in such efforts, not attorneys.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced

the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 24:**

All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with "providing online chat rooms and electronic bulletin boards for transmission of messages among registered users in the fields of collegiate life, general interest, classifieds, virtual community, and for social networking; and peer-to-peer photo sharing services, namely, electronic transmission of digital images among Internet and mobile device users" that existed prior to or on March 6, 2012 (the date of the filing of the trademark application which matured into U.S. Registration No. 4,782,235).

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 24:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as seeking documents neither relevant to the claim or defense of any party nor reasonably proportional to the needs of the action. Facebook objects to this request as being harassing and oppressive. Facebook objects to this request as being overly broad and unduly

1  burdensome in that it is unlimited in temporal scope. Facebook cannot yet identify any

2  documents it is withholding because it objects to conducting a search for documents in light

3  of Whoisguard having exceeded the permissible number of requests each side may propound

4  on the opposing side.

5  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 24:**

6       Facebook objects to this request as seeking documents protected by the attorney-client

7  privilege and the attorney work-product doctrine, as well as any other applicable immunity

8  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

9  objects to this request as overly broad and unduly burdensome in that it requests "[a]ll

10  DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the

11  action as required by Rules 26 and 34. Facebook objects to this request as being overly broad

12  and unduly burdensome in that it is unlimited in temporal scope. Subject to and without

13  waiving its objections, Facebook responds as follows:

14       Facebook will produce a sample of non-privileged documents evidencing Facebook's

15  bona fide intent to use the FB mark that are in Facebook's possession, custody, or control, if

16  any, that are located after a reasonable search within a reasonable time frame commensurate

17  with this request. Facebook reserves the right to supplement its response to this request.

18  **REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 24 IS**

19  **INADEQUATE:**

20       The documents sought are relevant to Defendants' counterclaims seeking cancellation

21  of the FB Mark on grounds of fraud and abandonment. The responsive documents are

22  necessary for Defendants to test whether Facebook's representations to the USPTO at issue

23  were fraudulent. "[W]hether an applicant had a 'bona fide intent' to use the mark in

24  commerce at the time requires objective evidence of intent." *M.Z. Berger & Co.*, 787 F.3d at

25  1376. A general lack of documentary evidence from the time of filing showing actual plans

26  to use a mark in commerce, as opposed to merely advance the prosecution of a trademark

27  application, supports a finding that the applicant lacked the requisite level of intent. *Id*. at

28  1377.

Plaintiffs have also asserted privilege objections, but the underlying facts reflecting efforts to use the mark in commerce with the services at issue would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Facebook's business and marketing people would have been involved in such efforts, not attorneys.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

**RFP 25:**

All DOCUMENTS and COMMUNICATIONS (including all plans, memos, emails, or other alleged proof) related to or evidencing Facebook's bona fide intent to use the FB mark in commerce in connection with each of the goods and services listed under the service mark application U.S. Serial No. 88679058 that existed prior to or on November 4, 2019 (the date of filing of the application).

**PLAINTIFFS' ORIGINAL RESPONSE TO RFP 25:**

Facebook objects to this request as exceeding the permissible number of requests for production one side may propound on the other side in this action when counted with all of the propounded requests, including their discrete subparts. Facebook will not conduct a search for responsive documents until the parties have met and conferred and until Defendants have selected which twenty-five requests for production, including discrete subparts, they wish to propound. Facebook objects to this request as seeking documents protected by the attorney-client privilege and the attorney work-product doctrine, as well as any other applicable immunity from disclosure. Facebook expects to withhold documents based on this objection. Facebook objects to this request as overly broad and unduly burdensome in that it requests "[a]ll DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the action as required by Rules 26 and 34 as amended in 2015. Facebook objects to this request as seeking documents neither relevant to the claim or

1  defense of any party nor reasonably proportional to the needs of the action. Facebook objects

2  to this request as seeking documents neither relevant to the claim or defense of any party nor

3  reasonably proportional to the needs of the action. In particular, this request seeks documents

4  concerning a counterclaim that is subject to a motion to dismiss. Facebook objects to this

5  request as being harassing and oppressive. Facebook objects to this request as being overly

6  broad and unduly burdensome in that it is nearly unlimited in temporal scope. Facebook

7  cannot yet identify any documents it is withholding because it objects to conducting a search

8  for documents in light of Whoisguard having exceeded the permissible number of requests

9  each side may propound on the opposing side.

10  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 25:**

11      Facebook objects to this request as seeking documents protected by the attorney-client

12  privilege and the attorney work-product doctrine, as well as any other applicable immunity

13  from disclosure. Facebook expects to withhold documents based on this objection. Facebook

14  objects to this request as overly broad and unduly burdensome in that it requests "[a]ll

15  DOCUMENTS and COMMUNICATIONS" and thus is not proportional to the needs of the

16  action as required by Rules 26 and 34 as amended in 2015. Facebook objects to this request

17  as being overly broad and unduly burdensome in that it is nearly unlimited in temporal scope.

18  Subject to and without waiving its objections, Facebook responds as follows:

19      Facebook will produce a sample of non-privileged documents evidencing Facebook's

20  bona fide intent to use the FB mark that are in Facebook's possession, custody, or control, if

21  any, that are located after a reasonable search within a reasonable time frame commensurate

22  with this request. Facebook reserves the right to supplement its response to this request.

23  <u>**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO RFP 25 IS**</u>

24  <u>**INADEQUATE:**</u>

25      The documents sought are relevant to Defendants' counterclaims seeking cancellation

26  of the FB Mark on grounds of fraud and abandonment. The responsive documents are

27  necessary for Defendants to test whether Facebook's representations to the USPTO at issue

28  were fraudulent. "[W]hether an applicant had a 'bona fide intent' to use the mark in

commerce at the time requires objective evidence of intent." *M.Z. Berger & Co.*, 787 F.3d at 1376. A general lack of documentary evidence from the time of filing showing actual plans to use a mark in commerce, as opposed to merely advance the prosecution of a trademark application, supports a finding that the applicant lacked the requisite level of intent. *Id.* at 1377.

Plaintiffs have also asserted privilege objections, but the underlying facts reflecting efforts to use the mark in commerce with the services at issue would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981). Facebook's business and marketing people would have been involved in such efforts, not attorneys.

Plaintiffs' response also fails to specify the time by which the production will be completed, as required by Rule 34(b)(2)(B) as well as the ESI Order (Doc. 92). Because the documents requested are also responsive to the MIDP Order, Plaintiffs should have produced the responsive documents no later than December 28, 2020 and all responsive ESI no later than February 9, 2021. *See* Doc. 7 at 3 & Doc. 53; Doc. 78.

## WHOISGUARD'S INTERROGATORIES TO PLAINITFFS

**Rog 1:**

IDENTIFY all DISPUTED DOMAINS.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 1:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 1:**

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means "list."

Plaintiffs have produced a list of domain names that Plaintiffs have determined are subject to this dispute as attachments to letters from David J. Steele to Eugene Rome on August 27, 2021 and September 14, 2021. As Plaintiffs determine that additional domain names are subject to the dispute (e.g., as discovery continues), Plaintiffs may provide Defendants with one or more additional lists of those domain names, on or before May 20, 2022, pursuant to the Court's Case Management Order (ECF No. 125).

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 1 IS INADEQUATE:**

Rog 1 asks Plaintiffs to "IDENTIFY all DISPUTED DOMAINS." Rather than provide a full answer under oath as required by Rule 33(b)(3), Plaintiffs have improperly attempted to incorporate by reference lists of domains in their correspondence to Defendants. *See Lawman v. City and County of San Francisco*, 159 F. Supp. 3d 1130, 1140 (N.D. Cal. 2016) (interrogatory answer should be complete in itself and not refer to other documents).

Moreover, the lists of domain names provided in Plaintiffs' letters to date have been a moving target, with the same domains added, removed, and added back into the case. In order to fairly defend themselves, Defendants must be provided with a definitive list of all (not some) disputed domain names currently known to Plaintiffs which are at issue in the litigation.

**Rog 2:**

For each DISPUTED DOMAIN, state the date(s) and circumstances under which PLAINTIFFS first learned of its registration and/or use.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 2:**

Facebook objects to this interrogatory as constituting two interrogatories, including discrete subparts, and thus as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects

to this interrogatory as overly broad and unduly burdensome in light of the number of DISPUTED DOMAINS in this action.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 2:**

Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the number of DISPUTED DOMAINS in this action. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agreed that Plaintiffs can produce a chart responsive to this interrogatory. Facebook will supplement this response with the Bates numbers of that chart once it has been produced.

Discovery and investigation in this matter are continuing, and Facebook reserves the right to supplement its response to these interrogatories as it obtains further evidence.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 2 IS INADEQUATE:**

This Interrogatory seeks information that is essential to Defendants' affirmative defense of laches. *See Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109, 115 (9th Cir. 2018) (laches bars a trademark claim where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time). The domains at issue were first registered as early as 2006, yet Plaintiffs did not file suit until 2020. Therefore, Defendants are seeking the dates and circumstances under which Plaintiffs first learned of the alleged infringement at issue.

Plaintiffs' response accurately reflects that Defendants agreed that they could produce a chart responsive to this request, but no such chart has been produced. Dahlberg Decl., ¶ 28.

Plaintiffs have also asserted privilege objections, but the underlying facts of when and how Plaintiffs first learned of the alleged infringement would not be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("The [attorney-client] privilege only protects

1    disclosure of communications; it does not prevent disclosure of the underlying facts by those

2    who communicated with the attorney.”).

3    **Rog 5:**

4         IDENTIFY all COMMUNICATIONS in which YOU provided WhoisGuard with

5    “reasonable evidence of actionable harm” within the meaning of Section 3.7.7.3.

6    **PLAINTIFFS’ ORIGINAL RESPONSE TO ROG 5:**

7         Facebook objects to this interrogatory as exceeding the permissible number of

8    interrogatories one side may propound on the other side in this action when counted with all

9    of the propounded interrogatories, including their discrete subparts. Facebook objects to this

10   interrogatory as being overly broad and unduly burdensome and as seeking information

11   neither relevant to the claims or defenses of any party nor reasonably proportional to the

12   needs of the action in that this interrogatory is not limited to notices of “reasonable evidence

13   of actionable harm” sent in connection with domain names at issue in this action. Facebook

14   objects to this interrogatory as overly broad and unduly burdensome in light of the fact that

15   this interrogatory calls for information in the possession of Defendants.

16   **PLAINTIFFS’ SUPPLEMENTAL RESPONSE TO ROG 5:**

17        Facebook objects to this interrogatory as overly broad and unduly burdensome in light

18   of the fact that this interrogatory calls for information in the possession of Defendants.

19   Subject to and without waiving its objections, Facebook responds as follows:

20        Pursuant to the parties’ July 21 and 23, 2021 conferences, as reflected in the parties’

21   July 26, 2021 and August 2, 2021 correspondence, the parties agree that this interrogatory is

22   limited to communications involving the domain names at issue in this action.

23        The answer to this interrogatory may be determined by examining, auditing,

24   compiling, abstracting, or summarizing Facebook’s business records, and the burden of

25   deriving or ascertaining the answer will be substantially the same for either party; therefore,

26   pursuant to Rule 33(d), Facebook has produced and will produce documents containing

27   information responsive to this interrogatory.

28

Discovery and investigation in this matter are continuing, and Facebook reserves the right to supplement its response to these interrogatories as it obtains further evidence.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 5 IS INADEQUATE:**

Rog 5 requests Plaintiffs to identify all communications in which they provided WhoisGuard with "reasonable evidence of actionable harm." Plaintiffs responded by stating that pursuant to Rule 33(d), "Facebook has produced and will produce documents containing information responsive to this interrogatory," but no documents are identified. Plaintiffs have made no attempt to specify the business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). Nor do any responsive document appear to have been produced to date.  Dahlberg Decl., ¶ 27. This is evasive and non-responsive.

**Rog 6:**

For each COMMUNICATION identified in response to interrogatory number [5],[3] describe the investigation and due diligence, if any, PLAINTIFFS conducted before contacting WHOISGUARD.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 6:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as vague and ambiguous in light of its use of the undefined term "WHOISGUARD." Facebook objects to this interrogatory as unintelligible in that it seeks information concerning COMMUNICATIONS identified in response to Interrogatory No. 4, yet that interrogatory does not request that Facebook identify any

---

[3] This Interrogatory contained a numbering error and originally read "4."

1  communications. Facebook further objects to this interrogatory as being vague and
2  ambiguous with respect to the phrase "due diligence."

3  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 6:**

4      Facebook objects to this interrogatory as unintelligible in that it seeks information
5  concerning COMMUNICATIONS identified in response to interrogatory no. 4, yet that
6  interrogatory does not request that Facebook identify any communications. Facebook further
7  objects to this interrogatory to the extent it calls for information protected by the
8  attorney-client privilege, the attorney work-product doctrine, or any other applicable
9  immunity from disclosure.

10  **REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 6 IS**
11  **INADEQUATE:**

12      During the meet and confer conferences, Defendants explained that by "investigation
13  and due diligence they we mean what steps did Plaintiffs take before contacting
14  WhoisGuard—*i.e.*, did Plaintiffs check whether the domain was already suspended? Did they
15  visit the website associated with the domain? Did they contact the customer who had
16  registered the domain?  These facts are relevant to issues of whether Plaintiffs mitigated their
17  own alleged damages, whether they already had the customers' contact information in their
18  own possession, and issues relevant to damages, among other issues. The Interrogatory is
19  not "unintelligible" as Plaintiffs contend because Defendants clarified it in the meet-and-
20  confer process.

21      Plaintiffs refuse to answer based on privilege, but a statement of the factual steps and
22  actions Plaintiffs took (including, for example, the third parties they reached out to) would
23  not be privileged. This would be the case even if Plaintiffs' agents communicated with
24  attorneys about those facts. *See Upjohn Co. v. United States*, 449 U.S. at 396 (1981). To the
25  extent Plaintiffs are withholding any responsive information as privileged, they must identify
26  the information on their privilege log in a manner that "will enable other parties to assess the
27  claim." Fed. R. Civ. P. 26(b)(5)(A).

28

**Rog 7:**

IDENTIFY each DISPUTED DOMAIN [] for which YOU claim WhoisGuard failed to timely disclose the identity and contact information for the licensee.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 7:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects to this interrogatory as overly broad and unduly burdensome given the number of DISPUTED DOMAINS at issue in this action.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 7:**

Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants. Facebook objects to this interrogatory as overly broad and unduly burdensome given the number of DISPUTED DOMAINS at issue in this action. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means "list" and, in addition, the parties agreed that Plaintiffs can produce a chart responsive to this interrogatory.

Discovery and investigation in this matter are continuing, and Facebook reserves the right to supplement its response to these interrogatories as it obtains further evidence.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 7 IS INADEQUATE:**

Rog 7 asks Plaintiffs to "IDENTIFY each DISPUTED DOMAIN [] for which YOU claim WhoisGuard failed to timely disclose the identity and contact information for the licensee," which is one of the theories of liability they are asserting in the litigation. Plaintiffs responded by stating that pursuant to Rule 33(d), "Facebook has produced and will produce documents containing information responsive to this interrogatory," but no documents are identified. Plaintiffs have made no attempt to specify the business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). This is evasive and non-responsive.

**Rog 10:**

State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a result of the alleged registration, trafficking, or use of the DISPUTED DOMAINS.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 10:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants. Facebook objects to this interrogatory as premature in that it calls for expert testimony.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 10:**

Facebook objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants and third parties.

Facebook objects to this interrogatory as premature in that it calls for expert testimony. Subject to and without waiving its objections, Facebook responds as follows:

It is unknown at this time the full extent to which Plaintiffs have been damaged. For Defendants' alleged acts of cybersquatting, Plaintiffs may seek statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d). Plaintiffs note that Namecheap sought statutory damages and was awarded judgment of $50,000 per domain name against cybersquatters who registered domain names confusingly similar to Namecheap's own service mark. Plaintiffs also may seek, in an amount according to proof, either their actual damages or Defendants' profits, as well as the costs of this action, for Defendants' alleged trademark and service mark infringement, false designation of origin, and willful dilution pursuant to 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Plaintiffs will seek to have these damages trebled pursuant to 15 U.S.C. § 1117(a). Plaintiffs will further seek permanent injunctive relief pursuant to 15 U.S.C. § 1116. Finally, Plaintiffs will seek their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Facebook therefore reserves the right to supplement this response as additional information becomes available.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 10 IS INADEQUATE:**

Rog 10 seeks the amount of Plaintiffs' alleged actual damages on their cybersquatting claim. Rather than providing any numbers or computations, or identifying supporting evidence, Plaintiffs cut-and-pasted their deficient initial MIDP response in which they state that their damages are unknown. The response does not provide an amount of actual damages.

If Plaintiffs are claiming any actual damages, they must provide a computation and total amount for each category. If Plaintiffs contend that their actual damages are ongoing and continuing to accrue, then they should provide the total amount incurred to date.

**Rog 11:**

For the damages stated in YOUR response to Interrogatory No. 10, describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 11:**

Facebook objects to this interrogatory as constituting three interrogatories, including discrete subparts, and thus as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 11:**

Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony. Subject to and without waiving its objections, Facebook responds as follows:

It is unknown at this time the full extent to which Plaintiffs have been damaged. For Defendants' alleged acts of cybersquatting, Plaintiffs may seek statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d). Plaintiffs note that Namecheap sought statutory damages and was awarded judgment of $50,000 per domain name against cybersquatters who registered domain names confusingly similar to Namecheap's own service mark. Plaintiffs also may seek, in an amount according to proof, either their actual damages or Defendants' profits, as well as the costs of this action, for

Defendants' alleged trademark and service mark infringement, false designation of origin, and willful dilution pursuant to 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Plaintiffs will seek to have these damages trebled pursuant to 15 U.S.C. § 1117(a). Plaintiffs will further seek permanent injunctive relief pursuant to 15 U.S.C. § 1116. Finally, Plaintiffs will seek their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Facebook therefore reserves the right to supplement this response as additional information becomes available.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 11 IS INADEQUATE:**

Rog 10 seeks a computation of Plaintiffs' alleged actual damages on their cybersquatting claim, including the facts on which they are based. Rather than providing any numbers or computations, or identifying supporting evidence, Plaintiffs cut-and-pasted their deficient initial MIDP response in which they state that their damages are unknown. The response does not provide a computation of damages or identity any facts related to actual damages.

If Plaintiffs are claiming any actual damages, they must provide a computation and total amount for each category. If Plaintiffs contend that their actual damages are ongoing and continuing to accrue, then they should provide a computation and facts supporting the damages incurred to date.

**Rog 12:**

IDENTIFY all instances of consumer confusion caused by the DISPUTED DOMAINS.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 12:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects

to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 12:**

Facebook objects to this interrogatory as overly broad, unduly burdensome and premature in light of the fact that this interrogatory calls for information in the possession of Defendants and third parties. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means "list."

The answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Facebook's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party; therefore, pursuant to Rule33(d), Facebook has produced and will produce documents containing information responsive to this interrogatory.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 12 IS INADEQUATE:**

Rog 12 asks Plaintiffs identify the instances of alleged consumer confusion caused by the domain names, which is alleged in Plaintiffs' FAC and related to a central element of their trademark infringement claim. Plaintiffs responded by stating that pursuant to Rule 33(d), "Facebook has produced and will produce documents containing information responsive to this interrogatory," but no documents are identified. Plaintiffs have made no attempt to specify the business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). This is evasive and non-responsive.

**Rog 13:**

IDENTIFY all instances in which users have been diverted away from PLAINTIFFS' websites as alleged in as alleged in paragraphs 98, 107, 133, 152, 258 and 267 of the First Amended Complaint.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 13:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the number of DISPUTED DOMAINS at issue in this action. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 13:**

Facebook objects to this interrogatory as overly broad, unduly burdensome and premature in light of the fact that this interrogatory calls for information in the possession of Defendants and third parties. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means "list."

The answer this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Facebook's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party; therefore, pursuant to Rule33(d), Facebook has produced and will produce documents containing information responsive to this interrogatory.

Discovery and investigation in this matter are continuing, and Facebook reserves the right to supplement its response to these interrogatories as it obtains further evidence.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 13 IS INADEQUATE:**

Rog 13 asks Plaintiffs identify the instances of alleged diversion of users, which is alleged in Plaintiffs' FAC and related to a central element of their trademark claim. Plaintiffs responded by stating that pursuant to Rule 33(d), "Facebook has produced and will produce documents containing information responsive to this interrogatory," but no documents are identified.   Plaintiffs have made no attempt to specify the business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). This is evasive and non-responsive.

**Rog 14:**

IDENTIFY all DISPUTED DOMAINS which YOU contend Namecheap registered in its own name, as the registrant.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 14:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 14:**

Facebook objects to this interrogatory as overly broad, unduly burdensome and premature in light of the fact that this interrogatory calls for information in the possession of Defendants and third parties. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means "list" and, in addition, the parties agreed that Plaintiffs can produce a chart responsive to this interrogatory.

Facebook will supplement this response with the Bates numbers of that chart once it has been produced.

Discovery and investigation in this matter are continuing, and Facebook reserves the right to supplement its response to these interrogatories as it obtains further evidence.

## REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 14 IS INADEQUATE:

Rog 14 asks Plaintiffs to identify all disputed domain names they contend Namecheap registered in its own name, as the registrant, which is relevant to Plaintiffs' theory that Namecheap is liable for assuming the registration of expired domain names. In order to fairly defend themselves, Defendants need to know which domain names are the subject of the accusation.

Plaintiffs' response accurately reflects that Defendants agreed that they could produce a chart responsive to this request, but no such chart has been produced. Dahlberg Decl., ¶ 28.

**Rog 15:**

IDENTIFY all DISPUTED DOMAINS YOU contend Namecheap used to operate revenue-generating "parking pages."

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 15:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects

to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 15:**

Facebook objects to this interrogatory as overly broad, unduly burdensome and premature in light of the fact that this interrogatory calls for information in the possession of Defendants and third parties. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means "list" and, in addition, the parties agreed that Plaintiffs can produce a chart responsive to this interrogatory. Facebook will supplement this response with the Bates numbers of that chart once it has been produced.

Discovery and investigation in this matter are continuing, and Facebook reserves the right to supplement its response to these interrogatories as it obtains further evidence.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 15 IS INADEQUATE:**

Rog 15 asks Plaintiffs to identify all disputed domain names on they contend Namecheap operated revenue-generating "parking pages," which is relevant to Plaintiffs' theories that Namecheap's operation of such pages constitutes cybersquatting and/or trademark infringement. In order to fairly defend themselves, Defendants need to know which domain names are the subject of the accusation.

Plaintiffs' response accurately reflects that Defendants agreed that they could produce a chart responsive to this request, but no such chart has been produced. Dahlberg Decl., ¶ 28.

**Rog 17:**

IDENTIFY, with specificity, all alleged uses by DEFENDANTS of the MARKS which form the basis for PLAINTIFFS' claims.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 17:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants. Facebook objects to this interrogatory as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this interrogatory is not limited to the trademarks asserted in this action.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 17:**

Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means "list" and MARKS to mean any trademarks and service marks identified in the operative complaint and asserted by Plaintiffs in this action.

The answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Facebook's business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party; therefore, pursuant to Rule 33(d), Facebook has produced and will produce a limited quantity of documents containing information responsive to this interrogatory and that comprises a representative sample of screenshots exemplifying how Defendants' domain names are used in connection with phishing attacks, installing malware on consumers' computers, to steal

Plaintiffs' users personal and financial information by deception, or to generate revenue through commercial parking pages or other unlawful commercial activity.

Discovery and investigation in this matter are continuing, and Facebook reserves the right to supplement its response to these interrogatories as it obtains further evidence.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 17 IS INADEQUATE:**

Rog 17 asks Plaintiffs to identify the instances of alleged infringing uses of their trademarks by Defendants, on which they are suing claims Defendants. Plaintiffs responded by stating that pursuant to Rule 33(d), "Facebook has produced and will produce documents containing information responsive to this interrogatory," but no documents are identified. Plaintiffs have made no attempt to specify the business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). This is evasive and non-responsive.

Plaintiffs' vague response that they will produce only a "limited quantity" of responsive documents is improper. Plaintiffs should provide a proper response disclosing all instances of alleged infringement on which they are suing.

**Rog 18:**

IDENTIFY, with specificity, all alleged uses by DEFENDANTS' licensees of the MARKS which form the basis for PLAINTIFFS' claims.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 18:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants. Facebook objects to this

1  interrogatory as overly broad and unduly burdensome and as seeking documents neither

2  relevant to the claims or defenses of any party nor reasonably proportional to the needs of

3  the action in that this interrogatory is not limited to the trademarks asserted in this action.

4  **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 18:**

5      Facebook objects to this interrogatory as overly broad and unduly burdensome in light

6  of the fact that this interrogatory calls for information in the possession of Defendants.

7  Subject to and without waiving its objections, Facebook responds as follows:

8      Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties'

9  July 26, 2021 and August 2, 2021 correspondence, the parties agree that IDENTIFY means

10  "list" and MARKS means any trademarks and service marks identified in the operative

11  complaint and asserted by Plaintiffs in this action.

12      The answer to this interrogatory may be determined by examining, auditing,

13  compiling, abstracting, or summarizing Facebook's business records, and the burden of

14  deriving or ascertaining the answer will be substantially the same for either party; therefore,

15  pursuant to Rule 33(d), Facebook has produced and will produce a limited quantity of

16  documents containing information responsive to this interrogatory and that comprises a

17  representative sample of screenshots exemplifying how Defendants' domain names are used

18  in connection with phishing attacks, installing malware on consumers' computers, to steal

19  Plaintiffs' users personal and financial information by deception, or to generate revenue

20  through commercial parking pages or other unlawful commercial activity.

21      Discovery and investigation in this matter are continuing, and Facebook reserves the

22  right to supplement its response to these interrogatories as it obtains further evidence.

23  **REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 18 IS**

24  **INADEQUATE:**

25      Rog 18 asks Plaintiffs to identify the instances of alleged infringing uses of their

26  trademarks by Namecheap's customers that are part of their claims in the FAC. Plaintiffs

27  responded by stating that pursuant to Rule 33(d), "Facebook has produced and will produce

28  documents containing information responsive to this interrogatory," but no documents are

identified.  Plaintiffs have made no attempt to specify the business records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could," as required by Rule 33(d). This is evasive and non-responsive.

Plaintiffs' vague response that they will produce only a "limited quantity" of responsive documents is improper. Plaintiffs should provide a proper response disclosing all instances of alleged infringement on which they are suing.

**Rog 19:**

For each instance of alleged use of PLAINTIFFS' MARKS which form the basis for PLAINTIFFS' claims, state the date(s) and circumstances under which PLAINTIFFS first learned of the use.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 19:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions. Facebook objects to this interrogatory as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this interrogatory is not limited to the trademarks asserted in this action.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 19:**

Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Subject to and without waiving its objections, Facebook responds as follows:

1   Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties'

2   July 26, 2021 and August 2, 2021 correspondence, the parties agree that MARKS means any

3   trademarks and service marks identified in the operative complaint and asserted by Plaintiffs

4   in this action and, in addition, the parties agreed that Plaintiffs can produce a chart responsive

5   to this interrogatory. Facebook will supplement this response with the Bates numbers of that

6   chart once it has been produced.

7   Discovery and investigation in this matter are continuing, and Facebook reserves the

8   right to supplement its response to these interrogatories as it obtains further evidence.

9   **REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 19 IS**

10  **INADEQUATE:**

11  This Interrogatory seeks information that is essential to Defendants' affirmative

12  defense of laches. *See Eat Right Foods Ltd. v. Whole Foods Market, Inc.*, 880 F.3d 1109,

13  115 (9th Cir. 2018). The domains at issue were first registered as early as 2006, yet Plaintiffs

14  did not file suit until 2020. Therefore, Defendants are seeking the dates and circumstances

15  under which Plaintiffs first learned of the alleged infringement at issue.

16  Plaintiffs' response accurately reflects that Defendants agreed that they could produce

17  a chart responsive to this request, but no such chart has been produced. Dahlberg Decl., ¶ 28.

18  Plaintiffs have also asserted privilege objections, but the underlying facts of when and

19  how Plaintiffs first learned of the alleged infringement would not be privileged. *See Upjohn*

20  *Co. v. United States*, 449 U.S. at 396 (1981).

21  **Rog 20:**

22  State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a

23  result of the alleged infringement of their MARKS.

24  **PLAINTIFFS' ORIGINAL RESPONSE TO ROG 20:**

25  Facebook objects to this interrogatory as exceeding the permissible number of

26  interrogatories one side may propound on the other side in this action when counted with all

27  of the propounded interrogatories, including their discrete subparts. Facebook objects to this

28  interrogatory to the extent it calls for information protected by the attorney-client privilege,

the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as premature given that knowledge of the full scope of infringement is in the possession of Defendants and/or third parties. Facebook objects to this interrogatory as overly board and unduly burdensome and as seeking information neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that it is not limited to the infringing activity of Defendants and/or their licensees. Facebook further objects to this interrogatory as overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony. Facebook objects to this interrogatory as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this interrogatory is not limited to the trademarks asserted in this action.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 20:**

Facebook objects to this interrogatory as premature given that knowledge of the full scope of infringement is in the possession of Defendants and/or third parties. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, Facebook interprets MARKS to mean any trademarks and service marks identified in the operative complaint and asserted by Plaintiffs in this action.

It is unknown at this time the full extent to which Plaintiffs have been damaged. For Defendants' alleged acts of cybersquatting, Plaintiffs may seek statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d). Plaintiffs note that

Namecheap sought statutory damages and was awarded judgment of $50,000 per domain name against cybersquatters who registered domain names confusingly similar to Namecheap's own service mark. Plaintiffs also may seek, in an amount according to proof, either their actual damages or Defendants' profits, as well as the costs of this action, for Defendants' alleged trademark and service mark infringement, false designation of origin, and willful dilution pursuant to 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Plaintiffs will seek to have these damages trebled pursuant to 15 U.S.C. § 1117(a). Plaintiffs will further seek permanent injunctive relief pursuant to 15 U.S.C. § 1116. Finally, Plaintiffs will seek their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 20 IS INADEQUATE:**

Rog 20 seeks the amount of Plaintiffs' alleged actual damages on their trademark claims. Rather than providing any numbers or computations, or identifying supporting evidence, Plaintiffs cut-and-pasted their deficient initial MIDP response in which they state that their damages are unknown. The response does not provide an amount of actual damages.

If Plaintiffs are claiming any actual damages, they must provide a computation and total amount for each category. If Plaintiffs contend that their actual damages are ongoing and continuing to accrue, then they should provide the total amount incurred to date.

**Rog 21:**

For the damages stated in YOUR response to Interrogatory 20, describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 21:**

Facebook objects to this interrogatory as constituting three interrogatories, including discrete subparts, and thus as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to

the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as premature given that knowledge of the full scope of infringement is in the possession of Defendants and/or third parties. Facebook objects to this interrogatory as overly board and unduly burdensome and as seeking information neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that it is not limited to the infringing activity of Defendants and/or their licensees. Facebook further objects to this interrogatory as overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 21:**

Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as premature given that knowledge of the full scope of infringement is in the possession of Defendants and/or third parties. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony. Subject to and without waiving its objections, Facebook responds as follows:

It is unknown at this time the full extent to which Plaintiffs have been damaged. For Defendants' alleged acts of cybersquatting, Plaintiffs may seek statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d). Plaintiffs note that Namecheap sought statutory damages and was awarded judgment of $50,000 per domain name against cybersquatters who registered domain names confusingly similar to Namecheap's own service mark. Plaintiffs also may seek, in an amount according to proof, either their actual damages or Defendants' profits, as well as the costs of this action, for

Defendants' alleged trademark and service mark infringement, false designation of origin, and willful dilution pursuant to 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Plaintiffs will seek to have these damages trebled pursuant to 15 U.S.C. § 1117(a). Plaintiffs will further seek permanent injunctive relief pursuant to 15 U.S.C. § 1116. Finally, Plaintiffs will seek their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Facebook therefore reserves the right to supplement this response as additional information becomes available.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 21 IS INADEQUATE:**

Rog 21 seeks a computation of Plaintiffs' alleged actual damages on their trademark claims, including the facts on which the computation is based. Rather than providing any numbers or computations, or identifying supporting evidence, Plaintiffs cut-and-pasted their deficient initial MIDP response in which they state that their damages are unknown. The response does not provide an amount of actual damages.

If Plaintiffs are claiming any actual damages, they must provide a computation and total amount for each category, including all underlying facts. If Plaintiffs contend that their actual damages are ongoing and continuing to accrue, then they should provide the total amount incurred to date.

**Rog 22:**

State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a result of the alleged dilution of their MARKS and describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 22:**

Facebook objects to this interrogatory as constituting four interrogatories, including discrete subparts, and thus as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney

work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as premature given that knowledge of the full scope of infringement is in the possession of Defendants and/or third parties. Facebook objects to this interrogatory as overly board and unduly burdensome and as seeking information neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that it is not limited to the unlawful activity of Defendants and/or their licensees. Facebook further objects to this interrogatory as overly broad and unduly burdensome in that it is unlimited in temporal scope. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony. Facebook objects to this interrogatory as overly broad and unduly burdensome and as seeking documents neither relevant to the claims or defenses of any party nor reasonably proportional to the needs of the action in that this interrogatory is not limited to the trademarks asserted in this action.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 22:**

Facebook objects to this interrogatory as premature given that knowledge of the full scope of dilution is in the possession of Defendants and/or third parties. Facebook further objects to this interrogatory given that the unlawful conduct at issue in this action is ongoing, and thus Facebook's damages continue to accrue. Facebook objects to this interrogatory as premature in that it calls for expert testimony. Subject to and without waiving its objections, Facebook responds as follows:

Pursuant to the parties' July 21 and 23, 2021 conferences, as reflected in the parties' July 26, 2021 and August 2, 2021 correspondence, Facebook interprets MARKS to mean any trademarks and service marks identified in the operative complaint and asserted by Plaintiffs in this action.

It is unknown at this time the full extent to which Plaintiffs have been damaged. For Defendants' alleged acts of cybersquatting, Plaintiffs may seek statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d). Plaintiffs note that

Namecheap sought statutory damages and was awarded judgment of $50,000 per domain name against cybersquatters who registered domain names confusingly similar to Namecheap's own service mark. Plaintiffs also may seek, in an amount according to proof, either their actual damages or Defendants' profits, as well as the costs of this action, for Defendants' alleged trademark and service mark infringement, false designation of origin, and willful dilution pursuant to 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Plaintiffs will seek to have these damages trebled pursuant to 15 U.S.C. § 1117(a). Plaintiffs will further seek permanent injunctive relief pursuant to 15 U.S.C. § 1116. Finally, Plaintiffs will seek their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Facebook therefore reserves the right to supplement this response as additional information becomes available.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 22 IS INADEQUATE:**

Rog 22 seeks the amount and computation of Plaintiffs' alleged actual damages on their dilution claim, including the facts on which the computation is based. Rather than providing any numbers or computations, or identifying supporting evidence, Plaintiffs cut-and-pasted their deficient initial MIDP response in which they state that their damages are unknown. The response does not provide an amount of actual damages.

If Plaintiffs are claiming any actual damages, they must provide a computation and total amount for each category, including all underlying facts. If Plaintiffs contend that their actual damages are ongoing and continuing to accrue, then they should provide the total amount incurred to date.

**Rog 23:**

State all facts which support YOUR allegation that this is an "exceptional case" entitling PLAINTIFFS to an award of attorneys' fees.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 23:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this

interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 23:**

Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as overly broad and unduly burdensome in light of the fact that this interrogatory calls for information in the possession of Defendants. Subject to and without waiving its objections, Facebook responds as follows:

Defendants have registered, trafficked in and used over 1,200 domain names at issue in this action with a bad faith intent to profit from the MARKS. Defendants failed to provide any contact information of their licensees until the Court ruled on Defendants' motion to dismiss in November 2020 and, even then, provided false contact information with respect to several domain names. Defendants continued to provide their services to known repeat infringers and continued to protect them by refusing to disclose their contact information. Furthermore, Defendants have continued to register, traffic in and use several domain names at issue in this action despite being provided notice of actionable harm.

Namecheap created off-shore shell alter ego companies, like Whoisguard and Withheld For Privacy, to conduct illegal activities like cybersquatting and to prevent the cooperation with brand holders seeking to stop infringement and to protect their customers from fraud and abuse Whoisguard and Withheld For Privacy were created in an effort to evade this Court's jurisdiction and to avoid liability.

Namecheap is in a position of trust as an ICANN-accredited registrar and obligated to comply with ICANN to maintain its accredited status. By concealing its unlawful activities, and by registering, trafficking in and using the domain names at issue in this action, Namecheap has grossly abused their position of trust to the detriment of Plaintiffs' customers and the general public, as well as Plaintiffs and countless other trademark owners.

Finally, Defendants' counsel have engaged in abusive litigation practices by concealing key relevant documents, making material misstatements to Plaintiffs' counsel, making material misrepresentations regarding a registrar's duties and obligations under the Registrar Accreditation Agreement, and evidencing a lack of complete candor to the Court with respect to whether Whoisguard is subject to jurisdiction in the United States and in Arizona.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 23 IS INADEQUATE:**

Rog 23 asks Plaintiffs to "State all facts which support YOUR allegation that this is an 'exceptional case' entitling Plaintiffs to an award of attorneys' fees." Plaintiffs ***admitted*** in their recent Motion to Partially De-Designate the Service Agreement Between Defendants that their response to this Interrogatory was "vague and incomplete." Doc. 141 at 5:9-10. Plaintiffs blamed their failure to provide fulsome responses on Defendants' designation of the service agreement as "Attorneys' Eyes Only." *Id*. at 4:16-19. This is not a valid basis for failing to provide full responses. In such situations, courts have held that a party's counsel, acting as the party's agent, may answer and sign the discovery responses. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 386 (S.D.N.Y. Dec. 7, 2010). In any case, the Court has now partially de-designated the provisions of the service agreement in dispute, and therefore Plaintiffs cannot use the AEO designation as an excuse to avoid providing a full response.

**Rog 24:**

For the customer data DEFENDANTS have disclosed in response to PLAINTIFFS' demand letters invoking Section 3.7.7.3, IDENTIFY all PERSONS (natural persons and entities) who have access to the data including their title/role and relationship to PLAINTIFFS (e.g., employee, contractor, etc.).

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 24:**

Facebook objects to this interrogatory as exceeding the permissible number of interrogatories one side may propound on the other side in this action when counted with all

of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as seeking information that is not relevant to the claims or defenses of any party.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 24:**

Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as seeking information that is not relevant to the claims or defenses of any party.

**REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 24 IS INADEQUATE:**

This Interrogatory seeks the identity and role of the persons to whom Plaintiffs have disclosed the customer data provided by Defendants. The requested information is relevant to determine how Plaintiffs have used the information provided to them to date, and whether their requests for disclosure data were made in bad faith. The information is also relevant to refute Plaintiffs' argument that they had a legitimate purpose under the GDPR in requesting and using the customer data.

Plaintiffs refuse to answer this Interrogatory based on privilege, but the identity of the persons who received the information and their role is not privileged information.

**Rog 25:**

For the customer data DEFENDANTS have disclosed in response to PLAINTIFFS' demand letters invoking Section 3.7.7.3, IDENTIFY all locations where the data is, or has been, stored, downloaded, viewed, or accessed, and describe in detail the security measures employed to protect the data at each location.

**PLAINTIFFS' ORIGINAL RESPONSE TO ROG 25:**

Facebook objects to this interrogatory as constituting three interrogatories, including discrete subparts, and thus as exceeding the permissible number of interrogatories one side

may propound on the other side in this action when counted with all of the propounded interrogatories, including their discrete subparts. Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as seeking information that is not relevant to the claims or defenses of any party. Facebook further objects to this interrogatory as being vague and ambiguous with respect to the defined term "IDENTIFY" in that the interrogatory does not refer to a person or entity, a DOCUMENT, or a COMMUNICATION as set forth in the Definitions and Instructions.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 25:**

Facebook objects to this interrogatory to the extent it calls for information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable immunity from disclosure. Facebook objects to this interrogatory as seeking information that is not relevant to the claims or defenses of any party.

**<u>REASONS WHY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO ROG 25 IS INADEQUATE:</u>**

This Interrogatory seeks information regarding the locations where Plaintiffs have moved or stored the customer data provided by Defendants, and security practices at each location. The requested information is relevant to Defendants' argument that any refusal to turn over customer data was justified because Plaintiffs do not comply with the GDPR and other privacy laws, and to refute Plaintiffs' arguments that their practices are in compliance with such laws.

Plaintiffs refuse to answer this Interrogatory based on privilege, but the locations where the data is stored and the security practices at each location is not privileged information.

## **PLAINITFFS' MIDP RESPONSES**

**MIDP REQUEST NO. 3:**

List the documents, electronically stored information ("ESI"), tangible things, land,

or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control. For documents and tangible things in your possession, custody, or control, you may produce them with your response, or make them available for inspection on the date of the response, instead of listing them. Production of ESI will occur in accordance with paragraph C.2 in the MIDP Order.

**PLAINTIFFS' ORIGINAL RESPONSE TO MIDP REQUEST NO. 3**

Plaintiffs object to the extent that producing all ESI is unduly burdensome and not proportional to the needs of the case and the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege, immunity, and/or protection. Plaintiffs disclose the following relevant categories of documents currently in their possession, custody, or control:

- Documents concerning Plaintiffs' trademark rights, including but not limited to, the enforcement of, and validity of, Plaintiffs' trademark rights.
- Documents concerning Defendants' alleged registration, trafficking in, and use of domain names, including those containing terms confusingly similar to Plaintiffs' trademarks and the trademarks of others;
- Documents concerning whether Defendants had a bad faith intent to profit, including Defendants' history of cybersquatting;
- Documents concerning whether Defendant Whoisguard is an alter ego of Defendant Namecheap and whether Namecheap is a direct participant in the actions of Whoisguard;
- Documents concerning notices of abuse or of reasonable evidence of actionable harm sent to Defendants (including those sent by Plaintiffs);

- Documents concerning Defendants' compliance, or lack thereof, with Plaintiffs' requests to identify the registrants of the domain names at issue, including Defendants' responses, or lack thereof, to Plaintiffs' notices of reasonable evidence of actionable harm;

- Documents concerning Defendants' compliance with applicable policies or contracts as required by ICANN;

- Documents concerning Defendant Whoisguard's activities in the United States and in Arizona, including any activities that would form the basis for this Court's personal jurisdiction over Whoisguard (in the possession of Defendants and third parties);

- Documents concerning any prior lawsuits against any Defendant or any of Defendants' customers or licensees (collectively, "Licensees") for cybersquatting as well as any UDRP complaints and decisions;

- Documents concerning Defendants' use of aliases and/or false identities;

- Documents concerning the identities of Defendants' customers or licensees (in the possession of Defendants and third parties); and

- Documents concerning Plaintiffs' damages, including its [*sic*] actual damages and Defendants' profits.

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO MIDP REQUEST NO. 3:**

Plaintiffs object to the extent that producing all ESI is unduly burdensome and not proportional to the needs of the case and the extent it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and/or any other applicable privilege, immunity, and/or protection. Plaintiffs disclose the following relevant categories of documents currently in their possession, custody, or control:

- Documents concerning Plaintiffs' trademark rights, including but not limited to, the enforcement of, and validity of, Plaintiffs' trademark rights, including but not limited it [*sic*] Facebook's rights in the FB Mark and its subject registrations;

- Documents concerning Defendants' and Licensees' alleged registration, trafficking in, and use of domain names, including those containing terms confusingly similar to Plaintiffs' trademarks and the trademarks of others;

- Documents concerning whether Defendants and Licensees' had a bad faith intent to profit, including Defendants' and Licensees' history of cybersquatting;

- Documents concerning whether Whoisguard is an alter ego of Namecheap and whether Namecheap is a direct participant in the actions of Whoisguard;

- Documents concerning whether Withheld for Privacy is an alter ego of Namecheap and/or Whoisguard (primarily in the possession of Defendants, Withheld for Privacy, and third parties);

- Defendants' and Withheld for Privacy's use of or provision of services to hide the identity of persons who unlawfully use domain names (primarily in the possession of Defendants, Withheld for Privacy, and third parties);

- Documents concerning notices of abuse or of reasonable evidence of actionable harm sent to Defendants (including those sent by Plaintiffs) or Withheld for Privacy;

- Documents concerning Defendants' or Withheld for Privacy's compliance, or lack thereof, with Plaintiffs' requests to identify the Licensees of the domain names at issue, including Defendants' responses, or lack thereof, to Plaintiffs' notices of reasonable evidence of actionable harm;

- Documents concerning Defendants' or Withheld for Privacy's compliance with applicable policies or contracts as required by ICANN;

- Documents concerning Whoisguard's activities in the United States and in Arizona, including any activities that would form the basis for this Court's personal jurisdiction over Whoisguard (in the possession of Defendants and third parties), and the provision of false and misleading contact data of Licensees;

- Documents concerning any prior lawsuits against any Defendant, Withheld for Privacy, or any of Licensees for cybersquatting as well as any UDRP complaints and decisions, including and particularly complaints and decisions showing the provision of false data even in response to UDRP complaints. *See*, *e.g.*, CVS Pharmacy, Inc. v. Withheld for Privacy Purposes, Privacy service provided by Withheld for Privacy ehf /best man, D2021-1404 (WIPO 2021) and Caspari, Inc. v. Privacy Service Provided by Withheld for Privacy ehf /Domain Admin, D2021-1650 (WIPO 2021);

- Documents concerning Defendants', Withheld for Privacy, and Licensees' use of aliases and/or false identities;

- Documents concerning the identities of Licensees (in the possession of Defendants, Withheld for Privacy, and third parties); and

- Documents concerning Plaintiffs' damages, including their actual damages and Defendants' profits.

## REASONS WHY PLAINTIFFS' RESPONSE TO MIDP REQUEST NO. 3 IS INADEQUATE:

As demonstrated above, Plaintiffs have withheld entire categories of evidence that is unquestionably relevant and responsive to the MIDP Order. None of the Plaintiffs appear to have produced any internal documents from their own companies in the litigation. Dahlberg Decl., ¶ 27. They have withheld their own communications with the Namecheap customers who registered the disputed domains, which are responsive both to MIDP Request 3 as well as RFPs 2 and 3. *See id*. at ¶ 29 & Ex. 13. Defendants also learned that in the past, Plaintiffs themselves owned some of the disputed domain names. For example, Namecheap or other registrars previously transferred ownership to Plaintiffs after they prevailed in UDPR domain name dispute proceedings.). Dahlberg Decl., ¶ 30. Yet, Plaintiffs are refusing to produce ESI reflecting how, why, and when they lost or relinquished ownership of those domains thereafter. *Id*. The full scope of responsive documents that Plaintiffs continue to withhold are unknown to Defendants.

It is improper for Plaintiffs to withhold this improper evidence based on boilerplate objections that the MIDP Order is "unduly burdensome and not proportional." It also appears from the categories in the response and documents produced to date that Plaintiffs are selectively producing only evidence they believe is helpful to their case, but the MIDP's discovery obligations are court-ordered mandatory discovery that supersede the disclosures required by Rule 26(a)(1). Doc. 7 at 3. It requires parties to disclose *all* relevant evidence, whether favorable or unfavorable, and regardless of whether a party intends to use it in its own case. *Id*.

**MIDP REQUEST NO. 4:**

For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based.

**PLAINTIFFS' RESPONSE TO MIDP REQUEST NO. 4 (Facts Only):**

**I. Cybersquatting on Plaintiffs' Trademarks Under 15 U.S.C. § 1125(d) in Violation of the Anti-Cybersquatting Consumer Protection Act ("ACPA")**

**A. Relevant Facts**

Plaintiffs own numerous famous and/or distinctive trademarks, including FACEBOOK, FB, INSTAGRAM, and WHATSAPP (collectively, "Plaintiffs' Marks"). Plaintiffs seek to enforce the rights and protect the public from malicious domain names that are identical or confusingly similar to Plaintiffs' Marks, including all the domain names in this action (the "Infringing Domain Names"). Plaintiffs are currently aware of well over 1,100 Infringing Domain Names including, but not limited to, faceboOk- login.com, faceboksecurity.com, lnstagrambusinesshelp.com, instagramlogin.org, whatapp.services, whatsappsex.club, that were unlawfully registered, trafficked in, or used by Defendants or the Licensees for unlawful activities. Many of these domain names are used in connection with phishing attacks, installing malware on consumers' computers, to steal Plaintiffs' users personal and financial information by deception, or to generate revenue through commercial parking pages or other unlawful commercial activity. Several examples include: facebo0k-login.com, faceb0ok-security-dept.com, facebokloginpage.site, faceooklogin.com, and m-

1   faceebook.com.

2       Namecheap is an Internet Corporation for Assigned Names and Numbers ("ICANN")

3   accredited domain name registrar. Whoisguard is a proxy service[2] established by Namecheap

4   and used exclusively by Namecheap's customers to hide their identity. As an ICANN-

5   accredited domain name registrar, Namecheap is subject to ICANN's Registrar

6   Accreditation Agreement ("RAA"). The RAA is a standard agreement required by ICANN

7   describing the rules and policies governing all generic domain name registrations and the

8   obligations applicable to registrants in order to create accountability for the registration and

9   use of domain names. The RAA requires "Registered Name Holders to enter into an

10  electronic or paper registration agreement with Registrar." The RAA also requires that the

11  agreement between Registrars and Registered Name Holders (*i.e.*, the registrant) include

12  language requiring registrants to accept liability for harm caused by a domain name

13  licensee's wrongful use of the registrant's domain name unless the registrant promptly

14  discloses the licensee's identity and contact information upon the registrant being provided

15  with "reasonable evidence of actionable harm." Namecheap's registration agreement with

16  its Registered Name Holders ("Namecheap Registration Agreement") includes these

17  required terms.

18      Defendants cannot dispute that the Namecheap Registration Agreement incorporated

19  all terms required by ICANN, including Section 3.7.7.3 of the RAA, which states:

20      A Registered Name Holder licensing use of a Registered Name according to
        this provision shall accept liability for harm caused by wrongful use of the
21      Registered Name, unless it discloses the current contact information provided
        by the licensee and the identity of the licensee within seven (7) days to a party
22      providing the Registered Name Holder reasonable evidence of actionable
        harm.
23

24  RAA § 3.7.7.3; *see also Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092,

25  1118 (C.D. Cal. 2009) ("paragraph 3.7.7.3 is not itself a term of the ICANN agreement; the

26  agreement merely required that NameCheap include such a provision in future contracts

27  between it and parties to whom it registered domain names"). The following annotated

28

screenshots (Figures 1-4) show that this language is incorporated into the Namecheap Registration Agreement:

[Screenshot]

The highlighted portion of Section 1 to the Agreement explains that the registrant of a Namecheap-hosted domain name agrees to the terms of the Agreement and all referenced agreements. The right side of Figure 1 consists of a column containing seven hyperlinks. When someone accesses this website, he or she may click on one of these hyperlinks to navigate to one of the agreements incorporated by reference in Section 1 of the Agreement. The hyperlinks change color such that the link for the agreement currently displayed in the web browser is shown in cyan while the remaining links are shown in black. For instance, the "Domain Registration Agreement" link on Figure 1 is shown in cyan to signify that is the agreement being displayed in the left portion of the window.

When a user clicks on the "Registration Rights, Benefits & Responsibilities" hyperlink, which is marked with a red box on Figure 1, the user's browser navigates to the webpage available at www.namecheap.com/legal/domains/registrant-rights-benefits- and-responsibilities/, which is shown below in Figure 2. Of note, the "Registrant Rights, Benefits & Responsibilities" hyperlink is colored in cyan in Figure 2 to demonstrate which of the incorporated portions of the Agreement the user is viewing.

[Screenshot]

When a user subsequently clicks on the "Registrant Rights & Responsibilities" link on Figure 2, which is highlighted with a red box and a red arrow, the user's browser navigates to the website www.icann.org/resources/pages/responsibilities-201-03-14-en. When a user scrolls down, he or she will eventually encounter the text highlighted in yellow at the top of the screenshot of Figure 3. This text contains another hyperlink, which again is highlighted with a red box and a red arrow.

[Screenshot]

If a user does not click on the link in Figure 3 but instead scrolls further down on this same page, he or she will see the text displayed at the middle portion of Figure 3, which is highlighted with a red box around it.

If a user does click the link in Figure 3, his or her web browser navigates to a webpage at www.icann.org/resources/pages/ra-agreement-2009-05-21-en#3.7.7.1 showing Section 3.7.7.3 of the ICANN RAA, which is highlighted and shown with a red box on the screenshot of Figure 4.

[Screenshot]

Thus, as these figures show, Section 3.7.7.3 of the RAA is incorporated into the Namecheap Registration Agreement. The Namecheap Registration Agreement does not include any limitation on third party beneficiaries. Namecheap and Whoisguard entered into the Namecheap Registration Agreement for domain name registration services.

Defendants and/or their Licensees registered multiple domain names that infringe the trademark rights of third parties. In fact, Whoisguard has been a named respondent in complaints filed under ICANN's Uniform Domain Name Dispute Resolution Policy ("UDPR"), with the result that Whoisguard was forced to transfer the domain name to the owner of the mark being infringed. A search of UDRP complaints found over one thousand UDRP complaints filed against Whoisguard for cybersquatting, with the vast majority of these UDRP complaints decided against Whoisguard, resulting in the transfer of the domain name(s) to the trademark owner bringing the complaint. Whoisguard has also been subject to default judgment in numerous ACPA complaints, in which the WhoisGuard proxy service was used to shield the identities of individuals or entities infringing the trademark rights of trademark owners. Similarly, Namecheap has been subject to default judgment in at least one ACPA complaint, in which the WhoisGuard proxy service was used to shield the identities of individuals or entities infringing the trademark rights of trademark owners. In addition to Whoisguard being the named respondent in numerous UDRP complaints, Whoisguard's Licensees have been the subject of numerous UDRP complaints.

Namecheap and Whoisguard also directly used some of the Infringing Domain Names to set up revenue-generating advertising "parking pages" that divert consumers away from Plaintiffs' legitimate websites. The Licensees have also used some of the Infringing Domain Names to host infringing websites as well as those that contain malicious content.

As the domain name registrant, Whoisguard is listed in the WHOIS record for domain names utilizing the WhoisGuard service, which uses a capital 'G' to distinguish the service from the Whoisguard entity. Upon registering each domain name that utilizes the WhoisGuard service, including all of the Infringing Domain Names, Whoisguard agreed under the Namecheap Registration Agreement to

> accept liability for harm caused by wrongful use of the Registered Name, unless it discloses the current contact information provided by the licensee and the identity of the licensee within seven (7) days to a party providing [Whoisguard] reasonable evidence of actionable harm.

*See* Namecheap Registration Agreement. Thus, Whoisguard agreed, when it registered the domain names pursuant to the domain name registration agreement, that "if [Whoisguard] license[s] the use of the domain name registered to [Whoisguard] to a third party, [Whoisguard] nonetheless remain[s] the domain name holder of record, and remain[s] responsible for all obligations under this Agreement . . . ." *See Id.* Whoisguard is a party to this agreement because the agreement defines "you" and "your" to include "***the registrant listed in the WHOIS contact information for the domain name,***" which is Whoisguard. *Id.* (emphasis added). The language of the agreement confirms that Whoisguard is a party to the agreement because it "sets forth the terms and conditions of ***your*** use of domain name registration and related services." *Id.* Further, "[t]his Agreement explains our obligations to ***you***, and explains ***your*** obligations to us for various services offered by Namecheap." *Id.* (emphasis added).[3]

Further, Whoisguard's Proxy Agreement provides, "[b]y subscribing to the Namecheap WHOIS Privacy Protection Services . . . you [the Licensee] are engaging Whoisguard to administer and register each domain name controlled by you . . . in the name

of WhoisGuard." This language plainly shows that Whoisguard is the registrant of the domain names for which its services are used.

Because Whoisguard was listed as the registrant of the Infringing Domain Names in the ownership records (the WHOIS data), Whoisguard registered, and thus is the legal owner of, each of the infringing domain names. Whoisguard trafficked in the Infringing Domain Names because it licenses those domain names for use by its customers/Licensees.

Prior to the Court's order denying Whoisguard's Motion to Dismiss (ECF No. 52) on November 10, 2020, Plaintiffs' authorized representatives sent Whoisguard notices with reasonable evidence that the Infringing Domain Names caused Plaintiffs actionable harm and requested that Whoisguard disclose its customers' (aka the "Licensees") identities and contact information. After receiving these notices, Whoisguard failed to disclose the identity or contact information of any of the Licensee(s).

Even after the Court denied Whoisguard's motion to dismiss, Whoisguard provided only incomplete or inaccurate information concerning its Licensees' identities and contact information.

In addition to this failure to disclose, Namecheap, Whoisguard, and their Licensees engaged in numerous acts that demonstrate bad faith intent to profit from using, registering, and trafficking in the Infringing Domain Names. Indeed, they continued to license and directly use the Infringing Domain Names, and continued to permit unlawful use, even after receiving Plaintiffs' notices of infringement. Because Defendants refuse to take steps to respond to domain name abuse or disclose the identities of Licensees when presented with reasonable evidence that Licensees are using Whoisguard's domain names to cause harm, Namecheap has become the world's most popular domain name registrar for malicious actors. When Defendants do provide information related to the Infringing Domain Names some of the information is plainly false.

At all times material to this action, Whoisguard was the alter ego of Namecheap. All relevant acts of Whoisguard were undertaken in the scope of such relationship. In doing the acts and failing to act as Plaintiffs have alleged each Defendant acted with the knowledge,

permission, and consent of the other Defendant, and each Defendant aided and abetted the other Defendant in the acts or omissions alleged in this First Amended Complaint. In addition, Namecheap is liable for the actions of Whoisguard under the theory of direct participant liability because Namecheap, in exercising complete control over all of Whoisguard's actions, was a direct participant in all of Whoisguard's actions, including those giving rise to liability in this case. This alter ego relationship and direct participation is shown by the following facts.

Previously, Namecheap provided its WhoisGuard proxy service to customers directly and under Namecheap's own name. At that time, when a customer used the WhoisGuard proxy service, Namecheap became the registered owner of the domain name and then licensed the domain name to the customer. As the registered owner of domain names registered through the WhoisGuard proxy service, Namecheap was listed as the registrant for the domain names in the public WHOIS database.

In a 2009 lawsuit, *Solid Host, NL, v. Namecheap, Inc.*, 652 F. Supp. 2d 1092,1103-05 (C.D. Cal. 2009) a federal court rejected Namecheap's argument that its actions in providing the WhoisGuard proxy service were immune from liability under the ACPA. The *Solid Host* court held that, "to the extent that NameCheap was the registrant of the domain name and 'used' the name, this section [of the ACPA] would support the imposition of liability on it, not a grant of immunity to it." As a result of this holding, Namecheap subsequently spun off the portion of its business that provides the WhoisGuard proxy service and began operating the service through a wholly-controlled Panamanian shell company it created for that purpose, namely, Whoisguard.

Namecheap continues to exercise complete control over the WhoisGuard proxy service, even though it is nominally provided by Whoisguard. Whoisguard does not exercise control over the WhoisGuard proxy service operated under its name. For example, in response to one of Plaintiffs' notices, Whoisguard stated that it "does not own, administer, host or provide registration services to the Domain, but simply provides anonymous privacy protection services to a domain registrant. We cannot remove any content, or links, from the

website, provide the registrant contact information, or terminate the Privacy Protection as we do not have control over the service."

The fact that Whoisguard does not have any control over the WhoisGuard proxy service it nominally provides demonstrates that Namecheap exercises complete control and direction over Whoisguard's day-to-day business operations. Whoisguard was established by Namecheap for the sole purpose of providing a paper company that Namecheap can point to as providing the WhoisGuard proxy service.

Namecheap established WhoisGuard as a Panamanian shell company in an attempt by Namecheap to escape United States jurisdiction and ACPA liability for Namecheap's provision of the WhoisGuard proxy service, as contemplated in the *Solid Host* holding. No public information is available demonstrating Namecheap and Whoisguard engage in proper corporate formalities between each other. Namecheap's CEO has admitted that Namecheap itself, as the registrar, is also the proxy service that registers domain names on behalf of its customers, stating "Most services you will encounter are Whois proxy services. The proxy is the domain registrar (such as Namecheap.com) which registers the domain on your behalf."

Namecheap's CEO has also made public statements to customers referencing Namecheap and Whoisguard as interchangeable entities, acknowledging that Namecheap "set up" Whoisguard to replace customers' identifying information and that "when we do that we are exposed to all the legal issues that come with the territory, which costs quite a bit to defend. We spend millions of dollars per year safeguarding user information and not simply turning off whoisguard without a proper legal order."

Namecheap directly participates in the registration of domain names in Whoisguard's name by exercising complete control over Whoisguard's provision of the WhoisGuard proxy service. Namecheap, as a direct participant in Whoisguard's actions, receives notices from trademark holders of domain names that are registered by Whoisguard, as the registrant, that are causing actionable harm to the trademark holder. Namecheap, as a direct participant in Whoisguard's actions, decides whether Whoisguard will reveal customer information when

presented with reasonable evidence of actionable harm. The WhoisGuard proxy service is integrated within Namecheap's own website, and Namecheap's customers obtain the WhoisGuard proxy service directly from their Namecheap user account.

When a Namecheap customer complained to Namecheap's CEO about having to manually add WhoisGuard to his cart when purchasing a domain name through Namecheap, Namecheap's CEO responded that this "is coming on our next iteration and Whoisguard will simply be a feature in the future." In fact, Namecheap refers to its WhoisGuard service as a feature of Namecheap's service in blog posts on Namecheap's website. Namecheap customers are enrolled in the WhoisGuard proxy service exclusively through Namecheap's website. Customers cannot access the WhoisGuard proxy service through Whoisguard's website, but only through the customer's Namecheap user account.

It is evident that Whoisguard has no control over who its customers are. Namecheap, not Whoisguard, decided that the WhoisGuard proxy service would simply be a feature of Namecheap. Namecheap does not charge its customers for the WhoisGuard proxy service. Namecheap simply provides Namecheap's WhoisGuard proxy service to its customers as a part of Namecheap's regular service. Namecheap, not Whoisguard, decided that WhoisGuard proxy service would be provided to customers for free. Namecheap's website explains that "WhoisGuard subscriptions can be used on domains registered with Namecheap only." Because the WhoisGuard proxy service is provided by Namecheap for free and is exclusive to Namecheap, Whoisguard is financially captive to Namecheap for its existence. In the past, when Whoisguard was served with reasonable evidence of actionable harm and a request for Whoisguard's Licensees' information, Namecheap, instead of Whoisguard, provided the responsive information concerning the Whoisguard Licensee to the noticing party. Namecheap and Whoisguard now fail to disclose the responsive information to the noticing party.

When some customers have used Namecheap's free WhoisGuard proxy service, they had their contact email information changed to legal@namecheap.com. When administrative domain name complaints are filed against Whoisguard's Licensees using the WhoisGuard

proxy service, Namecheap, instead of Whoisguard, discloses the name of Whoisguard's Licensees to the dispute provider's administrator. According to historic WHOIS information for whoisguard.com (Whoisguard's domain name), Namecheap owned the domain name in the past, and Namecheap was also listed as the technical contact. Today, the WHOIS information for whoisguard.com is hidden by the WhoisGuard proxy service.

Further, once the Court ruled that Namecheap may be liable for Whoisguard's conduct and that Defendants may be liable for failing to disclose the identify and contact information of their Licensees, Defendants formed another shell entity in Iceland, Withheld for Privacy, and unilaterally transferred ownership of domain names registered by Whoisguard to Withheld for Privacy in an effort to evade jurisdiction and liability, without consent of the Licensees. Namecheap and Withheld for Privacy continue to provide inaccurate information to third parties in an effort to shield their Licensees from liability for cybersquatting.

In view of the facts above, observing the separate corporate form of Whoisguard from Namecheap would sanction a fraud and promote injustice. Whoisguard was created and operates solely to shield Namecheap from liability for Namecheap's provision of the WhoisGuard proxy service.

**REASONS WHY PLAINTIFFS' RESPONSE TO MIDP REQUEST NO. 4 IS INADEQUATE:**

Plaintiffs' response is lengthy but omits basic information such as a list of the domain names in dispute. Despite Plaintiffs' representations at the parties' Rule 26(f) conference and to the Court in the Joint Report submitted that Plaintiffs "would be producing the list of disputed domains currently known to Plaintiffs by August 20, 2021," (Doc. 120 at 11:7-9), the supplemental MIDP Responses still failed to include a list of the domain names at issue in the case.

**MIDP REQUEST NO. 5:**

Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials

bearing on the nature and extent of the injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.

**PLAINTIFFS' RESPONSE TO MIDP REQUEST NO. 5:**

It is unknown at this time the full extent to which Plaintiffs have been damaged. For Defendants' alleged acts of cybersquatting, Plaintiffs may seek statutory damages in the amount of $100,000 per domain name pursuant to 15 U.S.C. § 1117(d). Plaintiffs note that Namecheap sought statutory damages and was awarded judgment of $50,000 per domain name against cybersquatters who registered domain names confusingly similar to Namecheap's own service mark. Plaintiffs also may seek, in an amount according to proof, either their actual damages or Defendants' profits, as well as the costs of this action, for Defendants' alleged trademark and service mark infringement, false designation of origin, and willful dilution pursuant to 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c). Plaintiffs will seek to have these damages trebled pursuant to 15 U.S.C. § 1117(a). Plaintiffs will further seek permanent injunctive relief pursuant to 15 U.S.C. § 1116. Finally, Plaintiffs will seek their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

Plaintiffs' damages are also the subject of expert opinion and testimony, so Plaintiffs will supplement their response when they make their expert disclosures.

Documents supporting these damages contentions including Defendants' financial documents are expected to be produced by Defendants during discovery, and Plaintiffs will supplement this response once Defendants produce these documents.

**REASONS WHY PLAINTIFFS' RESPONSE TO MIDP REQUEST NO. 5 IS INADEQUATE:**

In their FAC, Plaintiffs are seeking multiple categories of damages, including actual damages and profits on each of their four claims for (1) cybersquatting, (2) trademark infringement, (3) false designation of origin, and (4) dilution. Plaintiffs' response fails to provide any damages numbers, computations, or facts for any category except for statutory damages pursuant to 15 U.S.C. § 1117(d), on which Plaintiffs state that they will seek $100,00 per domain name.

If Plaintiffs intend to seek any other category of damages from Defendants, they must disclose the amounts and computations for each category, and provide a description of the evidentiary materials on which it is based, including material bearing on the nature and extent of the injuries suffered. If Plaintiffs contend that their damages are ongoing and continuing to accrue, then they should provide the total amounts and computations for those incurred to date.

As for the category of statutory damages, Plaintiffs have disclosed only a single fact in support ("Plaintiffs note that Namecheap sought statutory damages and was awarded judgment of $50,000 per domain name against cybersquatters . . ."). Plaintiffs should disclose the total amount sought for this category, and identify all evidentiary support for their calculation that exists.

Dated: November 19, 2021          **ROME & ASSOCIATES, A.P.C.**


By:_____*s/ Brianna Dahlberg*_____
                    Eugene Rome
                    Sridavi Ganesan
                    Brianna Dahlberg

          And

          **FENNEMORE CRAIG, P.C.**

          Ray K. Harris
          Mario C. Vasta

          Attorneys for Defendants and
          Counterclaimants Namecheap, Inc. and
          WhoisGuard, Inc.