# Exhibit 4



Rome & Associates

2029 Century Park East, Suite 450    Phone: **310.282.0690**
Los Angeles, CA 90067                Fax:   **310.282.0691**

www.romeandassociates.com

Brianna Dahlberg
bdahlberg@romeandassociates.com
Cell: 818.274.1357

July 26, 2021

**VIA EMAIL ONLY**

David Steele
Tucker Ellis LLP
515 Flower Street, Suite 4200
Los Angeles, CA 90071
Email: david.steele@tuckerellis.com

> Re:    ***Summary of Meet and Confer Conferences on Deficiencies in
>         Plaintiffs' Responses to WhoisGuard's First Sets of
>         Interrogatories and RFPs***

Dear David,

　　This letter summarizes the parties' meet and confer discussions that occurred during the video conferences on July 21 and July 23 regarding the deficiencies in Plaintiffs' written discovery responses served on July 15 to WhoisGuard's First Set of Interrogatories and Amended First Set of Requests for Production. I have prepared this summary based on my own notes. If I have incorrectly stated any of Plaintiffs' positions, please let me know.

## I.    GLOBAL NUMEROSITY OBJECTIONS

　　As you know, we requested the meet and confer conference because despite being granted several extensions of time, Plaintiffs have refused to provide any substantive answers or documents responsive to any request. Plaintiffs object that WhoisGuard's interrogatories and RFPs have exceeded Judge Snow's limit of 25 because they believe some requests contain discrete subparts that should count as more than one request.

　　We do not believe Plaintiffs' numerosity objections are well-taken. First, we disagree that WhoisGuard has exceeded the limit of 25 for either set of discovery. During the July 21 conference, Eugene provided you authority explaining that interrogatory subparts are to be counted as one interrogatory if they are "logically or factually subsumed within and necessarily related to the primary question." *Reed v. Barcklay*, 2013 WL 12177162, at *2 (D. Ariz. April 30, 2013) (citing *Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998)). Under this approach, we submit that WhoisGuard's interrogatories and RFPs do not exceed the limit of 25.

July 26, 2021
David Steele
Tucker Ellis LLP
Page 2

Second, and more importantly, Plaintiffs' belief that some interrogatories or RFPs contain subparts is not a legitimate basis for completely refusing to provide any substantive answers or documents. *See Avila v. Mohave County*, 2015 WL 6660187, *9 (D. Ariz. Nov. 2, 2015) (quoting *Paananen v. Cellco Partnership*, 2009 WL 3327227, *5 (W.D. Wash. 2009) ("the best rule, and the one this Court applies here, is that a responding party must answer the first 25 interrogatories")).

During the meet and confer discussions, we asked Plaintiffs whether they would agree to respond to what they consider to be the first 25 interrogatories and RFPs in order to narrow the issues in dispute, preserving the numerosity objection as to the remainder for the Court to decide. Plaintiffs rejected our proposal and refused to provide any substantive responses or documents unless WhoisGuard agreed to permanently withdraw the discovery requests which Plaintiffs consider to be in excess of 25 (which we could not agree to as it would prejudice Defendants). Plaintiffs also refused to let us know where, within the set of interrogatories, they believed WhoisGuard had reached the limit of 25, stating that we could calculate it for ourselves.

## I.   <u>INTERROGATORIES</u>

### A.   <u>Interrogatories Which Plaintiffs Stated They Would Answer if The Numerosity Objection Was Resolved</u>

Apart from the numerosity objections, we believe the parties made significant process in narrowing the issues in dispute. Here is a summary of the interrogatories for which Plaintiffs agreed they would provide at least some responsive information, if the numerosity objection to the set was resolved:

**Rog 1** ("IDENTIFY all DISPUTED DOMAINS."): We clarified that for purposes of this interrogatory, "identify" means to list the domain. Plaintiffs stated they would answer.

**Rog 2** ("For each DISPUTED DOMAIN, state the date(s) and circumstances under which PLAINTIFFS first learned of its registration and/or use."): We clarified that we would accept an answer in the form of a chart or an answer specifying business records pursuant to Rule 33(d). Plaintiffs stated they would answer.

**Rog 3** ("State all factual and legal bases for YOUR allegation that the language of Section 3.7.7.3 of the RAA is part of Namecheap's Domain Name Registration Agreement."): Plaintiffs stated they would answer.

**Rog 4** ("State all factual and legal bases for YOUR allegation WhoisGuard agreed to be bound by Section 3.7.7.3 of the RAA."): Plaintiffs stated they would answer.

July 26, 2021
David Steele
Tucker Ellis LLP
Page 3

**Rog 5** ("IDENTIFY all COMMUNICATIONS in which YOU provided WhoisGuard with "reasonable evidence of actionable harm" within the meaning of Section 3.7.7.3."): Plaintiffs stated they would answer with respect to the domains in the lawsuit.

**Rog 7** ("IDENTIFY each DISPUTED DOMAIN for which YOU claim WhoisGuard failed to timely disclose the identity and contact information for the licensee."): We clarified that we would accept an answer in the form of a chart. Plaintiffs stated they would answer.

**Rog 8** ("State all facts which support YOUR allegation that DEFENDANTS acted with a bad faith intent to profit from the MARKS, in connection with each of the DISPUTED DOMAINS") and **Rog 9** (state all such facts "in connection with each of the DISPUTED DOMAINS"): Plaintiffs stated they would provide a narrative based on categories of domains, making an effort not to be "too generalized."

**Rog 10** ("State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a result of the alleged registration, trafficking, or use of the DISPUTED DOMAINS") and **Rog 11** (for such damages, "describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT"): Plaintiffs maintain their objection that these interrogatories are premature at this stage, but indicated that they would produce this information later in discovery if they are going to elect actual damages.

**Rog 12** ("IDENTIFY all instances of consumer confusion caused by the DISPUTED DOMAINS."): Plaintiffs stated would answer, to the extent that they are aware of any such confusion.

**Rog 13** ("IDENTIFY all instances in which users have been diverted away from PLAINTIFFS' websites as alleged in as alleged in paragraphs 98, 107, 133, 152, 258 and 267 of the First Amended Complaint."): Plaintiffs stated they would answer.

**Rog 14** ("IDENTIFY all DISPUTED DOMAINS which YOU contend Namecheap registered in its own name, as the registrant.") and **Rog 15** ("IDENTIFY all DISPUTED DOMAINS YOU contend Namecheap used to operate revenue-generating 'parking pages.'"): Plaintiffs stated they would answer.

**Rog 16** ("State all facts which support YOUR allegations that Defendants 'have acted to further an intentional and continuous scheme to attract cybersquatters to use their services to infringe trademarks through the fraudulent registration of domain names used for malicious activity, including phishing, malware, spam, fraud, and trademark infringement,' as alleged in paragraph 35 of the First Amended Complaint."): Plaintiffs stated they would answer.

July 26, 2021
David Steele
Tucker Ellis LLP
Page 4

**Rog 17** ("IDENTIFY, with specificity, all alleged uses by DEFENDANTS of the MARKS which form the basis for PLAINTIFFS' claims") and **Rog 18** (all such uses "by DEFENDANTS' licensees"): Plaintiffs stated they would provide representative examples of the types of infringement at issue.

**Rog 19** ("For each instance of alleged use of PLAINTIFFS' MARKS which form the basis for PLAINTIFFS' claims, state the date(s) and circumstances under which PLAINTIFFS first learned of the use"): Plaintiffs stated they would answer this interrogatory by providing "one big chart."

**Rog 20** ("State, in dollars and cents, the actual damages that PLAINTIFFS have suffered as a result of the alleged infringement of their MARKS"); **Rog 21** (for such damages, "describe in detail YOUR methods of calculation of such damages, including all facts to support alleged causation for each DEFENDANT and each licensee of any DEFENDANT"); and **Rog 22** (same damages information for dilution): Plaintiffs maintain their objection that these interrogatories are premature at this stage, but indicated that they would produce this information later in discovery if they are going to elect actual damages.

**Rog 23** ("State all facts which support YOUR allegation that this is an 'exceptional case' entitling PLAINTIFFS to an award of attorneys' fees."): Plaintiffs stated they would answer.

## B. <u>Interrogatories With Additional Objections in Dispute</u>

For the following specific interrogatories, there are additional objections which remain in dispute in addition to Plaintiffs' numerosity objection:

**Rog 6** ("For each COMMUNICATION identified in response to interrogatory number 4, describe the investigation and due diligence, if any, PLAINTIFFS conducted before contacting WHOISGUARD."): We explained that by "investigation and due diligence," we mean what steps did Plaintiffs take before contacting WhoisGuard—*i.e.*, did Plaintiffs check whether the domain was already suspended? Did they visit the website associated with the domain? Etc.

Plaintiffs stated that even if the numerosity objection was resolved, they would refuse to answer this interrogatory based on privilege. We disagree that a statement of the factual steps taken by Plaintiffs would be privileged. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not prevent disclosure of the underlying facts by those who communicated with the attorney.").

July 26, 2021
David Steele
Tucker Ellis LLP
Page 5

**Rog 24** ("For the customer data DEFENDANTS have disclosed in response to PLAINTIFFS' demand letters invoking Section 3.7.7.3, IDENTIFY all PERSONS (natural persons and entities) who have access to the data including their title/role and relationship to PLAINTIFFS (e.g., employee, contractor, etc.)" and **Rog 25** ("For the customer data DEFENDANTS have disclosed in response to PLAINTIFFS' demand letters invoking Section 3.7.7.3, IDENTIFY all locations where the data is, or has been, stored, downloaded, viewed, or accessed, and describe in detail the security measures employed to protect the data at each location."): Plaintiffs stated that even if the numerosity objection was resolved, they would refuse to answer these interrogatories based on privilege and relevance. For the same reasons as Rog 6, we disagree that the facts sought by these interrogatories would be privileged. We also disagree with the relevance objections, as Plaintiffs' demands for the customer data at issue are a core issue of the lawsuit and relevance for purposes of discovery is defined broadly.

## II.    REQUESTS FOR PRODUCTION

### A.    Plaintiffs' Global Objection to Searching for Documents

Plaintiffs explained that in addition to the numerosity objection to the set of RFPs, their refusal to search for responsive documents is also separately based on their belief that Defendants are "in violation" of Section 5(a) of the Stipulated ESI Order because they have not met and conferred about ESI search methods. Section 5(a) provides that:

> The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

Plaintiffs' refusal to search for responsive documents based on this objection fails for multiple reasons.

First, the parties did meet and confer about methods to search for ESI on the July 23 call, including discussions of the search terms and time periods appropriate for certain requests. And, specifically in response to this objection, we offered to further discuss search methods with you on the July 23 call, to the extent Plaintiffs felt there were still unresolved issues. Plaintiffs did not take us up on that offer. Yet, Plaintiffs still refuse to conduct a search or produce any documents responsive to WhoisGuard's RFPs.

Second, nothing in Section 5(a) of the ESI Order alters Plaintiffs' discovery obligations to conduct a reasonable, diligent, good faith search under Rule 34 and complete

July 26, 2021
David Steele
Tucker Ellis LLP
Page 6

the production within a reasonable specified time. Even if WhoisGuard had refused to meet and confer with you (and we did not refuse), that would not be a valid excuse for Plaintiffs' refusal to produce any documents.

Third, we note that Section 5(a)'s meet and confer requirement arises "*in responding*" to a Rule 34 request, and therefore if any party is in violation of the order, it would be Plaintiffs and not WhoisGuard. WhoisGuard's initial Rule 34 requests were served on April 23, 2021. Plaintiffs initiated two prior telephonic discovery hearings on these same requests and received multiple extensions of time, yet Plaintiffs never requested WhoisGuard to meet and confer on ESI search methods.

For all of these reasons, we have serious concerns that Plaintiffs' raising of this issue for the first time now is a delay tactic.

## C. RFPs for Which Plaintiffs Stated They Would Produce Responsive Documents, if Plaintiffs' Global Objections Were Resolved

Notwithstanding the issues above, the parties still made progress in narrowing the disputed issues. Here is a summary of the RFPs for which Plaintiffs agreed they would provide at least some responsive documents, if Plaintiffs' global objections were resolved:

**RFP 1** ("All COMMUNICATIONS with DEFENDANTS related to each of the DISPUTED DOMAINS, including the 'evidence of actionable harm' (within the meaning of RAA Section 3.7.7.3) that was provided to DEFENDANTS."): Plaintiffs stated that they would produce responsive documents.

**RFP 2** ("All COMMUNICATIONS with Namecheap customers related to any of the DISPUTED DOMAINS or the MARKS."): Plaintiffs stated they would produce communications, within the last 3 years, with third parties related to any of the disputed domain names.

**RFP 3** ("All COMMUNICATIONS with any third party relating to any of the DISPUTED DOMAINS, the instant case, or either of the DEFENDANTS."): Plaintiffs stated they would produce communications, within the last 3 years, relating to the instant case.

**RFP 4** ("All DOCUMENTS related to or evidencing YOUR allegation that DEFENDANTS acted with a bad faith intent to profit from the MARKS in connection with any of the DISPUTED DOMAINS."): Plaintiffs stated they would produce non-privileged responsive documents.

July 26, 2021
David Steele
Tucker Ellis LLP
Page 7

**RFP 5** ("All DOCUMENTS related to the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims."): We clarified that "alleged uses of the MARKS" means alleged infringing uses. Plaintiffs stated they would produce non-privileged documents, within the last 3 years, related to the alleged infringing uses of the marks which form the basis for their claims.

**RFP 6** ("All DOCUMENTS relating to or evidencing the date(s) and circumstances under which PLAINTIFFS first learned of the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims."): Plaintiffs maintain that responsive documents would be privileged, but stated they would provide a chart of responsive information in their response to Rog 2.

**RFP 7** ("All DOCUMENTS relating to or evidencing any complaints made by PLAINTIFFS' users or any other third party regarding any confusion caused by the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims."): Plaintiffs stated they would produce (1) non-privileged documents evidencing the complaints, and (2) non-privileged documents related to specific complaints (but *not* documents related to their general policies about handling such complaints).

**RFP 8** (All DOCUMENTS relating to or evidencing any diversion of users away from PLAINTIFFS' websites as alleged in paragraphs 98, 107, 133, 152, 258 and 267 of the First Amended Complaint.") and **RFP 9** (All DOCUMENTS relating to or evidencing any dilution caused by the alleged uses of the MARKS which form the basis for PLAINTIFFS' claims."): We agreed to narrow these requests by dropping the phrase "relating to" from them. Plaintiffs stated they would produce responsive documents evidencing any diversion or dilution.

**RFP 18** ("All DOCUMENTS relating to Facebook's development, creation, design, search, selection, and adoption of its purported FB mark"): Plaintiffs stated they would produce non-privileged responsive documents.

**RFP 19** ("DOCUMENTS which evidence the date of Facebook's first use in commerce of its purported FB mark"): Plaintiffs stated they would produce non-privileged responsive documents.

**RFP 21-25** (seeking documents "related to or evidencing Facebook's bona fide intent to use the FB mark in commerce" in connection with the respective goods/services in its trademark applications): For each of these RFPs, Plaintiffs stated they would produce a sample of documents sufficient to evidence Facebook's then-existing bona fide intent.

July 26, 2021
David Steele
Tucker Ellis LLP
Page 8

**B. <u>RFPs with Additional Objections in Dispute</u>**

For the following RFPs, there are additional objections which remain in dispute in addition to Plaintiffs' global objections:

**RFP 10** ("All DOCUMENTS evidencing, referencing, or which YOU contend otherwise support YOUR allegations that PLAINTIFFS have been harmed by the alleged use of the MARKS"): We clarified that "alleged use of the MARKS" means alleged infringing uses, and that this request is directed at documents that Plaintiffs intend to use in the litigation. However, the parties were unable to resolve Plaintiffs' overbreadth objection.

**RFP 11** ("All consent agreements, co-existence agreements, settlement agreements, purchase agreements, assignment agreements, domain name transfer agreements, assignments, and other written agreements between PLAINTIFFS and any third party concerning any of the MARKS"): We offered to narrow the request to consent and co-existence agreements related to the FB mark only. Even with those limitations, Plaintiffs stated that they would still refuse to produce any responsive documents based on overbreadth, relevance, "temporal concerns," and undue burden. We disagree with those objections.

**RFP 12** ("All DOCUMENTS and COMMUNICATIONS relating to complaints regarding online abuse, phishing, malware, spam, hacking, trademark infringement, and other forms of abuse occurring on, or being facilitated by, PLAINTIFFS' own platforms, and PLAINTIFFS' actions in response thereto. The time period for this request is January 1, 2018 to the present"): We stated the documents sought are relevant to unclean hands. Plaintiffs indicated that the responsive documents would be too voluminous to produce and stated they would produce a "sample"—*i.e.*, 10 examples, total—of counsel's choosing but "not a representative sample." We do not have any issue with sampling if the responsive documents are in fact voluminous, but the sample should not be cherry-picked by counsel.

**RFP 13** ("DOCUMENTS sufficient to identify all investigations, complaints, and other proceedings brought by the EU Data Protection Commissioner, or any other regulatory or government entity, against PLAINTIFFS alleging violations of the GDPR or other privacy laws. The time period for this request is January 1, 2018 to the present.") and **RFP 14** ("All COMMUNICATIONS exchanged with the Ireland Data Protection Commission relating to statutory inquiries into PLAINTIFFS' compliance with the GDPR."): Plaintiffs would not produce any responsive documents based on relevance and objections that these RPFs are "abusive." We disagree with these objections.

**RFP 15** ("All COMMUNICATIONS between PLAINTIFFS and ICANN regarding PLAINTIFFS' efforts to influence or alter WHOIS policy. The time period for this request

July 26, 2021
David Steele
Tucker Ellis LLP
Page 9

is January 1, 2018 to the present.") and **RFP 16** ("All internal DOCUMENTS relating to PLAINTIFFS' broader strategies and goals in connection with WHOIS policy, including DOCUMENTS reflecting any generalized strategy of suing registrars in U.S. courts; efforts to influence ICANN or other policymakers; efforts to influence industry stakeholders; and/or strategies to obtain WHOIS data from registrars based in the European Union. The time period for this request is January 1, 2018 to the present."): We explained these documents are relevant to Plaintiffs' motives and goals in bringing the lawsuit. We also offered to supply a list of Facebook custodians who have been involved with ICANN. Even with these limitations, Plaintiffs would not produce any responsive documents based on relevance and overbreadth objections. We disagree with these objections.

**RFP 17** ("DOCUMENTS setting forth PLAINTIFFS' policies and procedures for handling and maintaining the security of the customer data that DEFENDANTS have disclosed in response to demand letters."). Plaintiffs refuse to produce any responsive documents based on relevance. We disagree. We believe that the documents are relevant for the same reasons that Rogs 24-25 are relevant.

**RFP 20** ("All DOCUMENTS related to or evidencing the "product or service research or development" and "market research" referenced in Facebook's requests for extensions of time filed in connection with its trademark applications for its purported FB mark."): We offered to remove the phrase "related to" to narrow this request. We also clarified that the request is seeking the facts of what research or development activity was occurring at Facebook the time it made the representations at issue in its requests for extensions to the USPTO, and that we are not intending to seek attorney-client communications or attorney mental impressions. Plaintiffs maintain their refusal to produce any responsive documents based on privilege. We disagree that documents evidencing the research or development at issue would be covered by any privilege.

Sincerely,

*Brianna Dahlberg*

Brianna Dahlberg