SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Meta Platforms, Inc. (fka Facebook, Inc.),
Instagram, LLC, and WhatsApp LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Meta Platforms, Inc., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Namecheap, Inc., et al.,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV-20-470-PHX-GMS<br><br>**PLAINTIFFS' BRIEF CONCERNING NAMECHEAP'S ASSERTION OF PRIVILEGE WITH RESPECT TO REQUEST FOR PRODUCTION NOS. 1-2 [158]** |

## I. INTRODUCTION

Defendant Namecheap, Inc. ("Namecheap") is stonewalling Plaintiffs in discovery concerning Namecheap's relationship with the newly-formed Icelandic entity Withheld for Privacy ehf ("WFP"). Plaintiffs have reason to believe that WFP either may be an alter ego of Namecheap or may otherwise be involved in Namecheap's unlawful cybersquatting scheme. However, Plaintiffs need further information in discovery to substantiate this claim.

Namecheap previously represented to the Court that it could produce in discovery documents sufficient to "fully explain" its relationship with WFP. Despite this representation, Namecheap initially refused to produce anything beyond a handful of documents, all but one of which are publicly available.[1] Moreover, Namecheap has asserted dubious privilege claims to avoid producing additional responsive documents, all while refusing to log any of these purportedly privileged documents even though WFP was not formed until after the filing of the complaint, thus giving rise to new facts. While Plaintiffs acknowledge that the parties agreed that they need not log privileged communications generated after the filing of the complaint in this action, the purpose of that agreement was to alleviate the substantial burden involved in logging the numerous communications between the parties and their counsel about this litigation. This agreement was not intended to shield new factual information concerning events that occurred during the pendency of this action. Plaintiffs therefore respectfully request that the Court order Namecheap to log all purportedly privileged documents related to WFP and produce them to the Court for in-camera inspection so that the Court can determine the propriety of Namecheap's privilege

---

[1] Following a telephonic discovery hearing on the matter, Namecheap produced on November 25, 2021, fifteen additional documents, including some documents concerning WFP's incorporation, ███████████████████████████████████████████ ███████████████████ It is facially apparent that these documents should have been produced initially and were not the subject of any proper privilege claim. That these documents were initially withheld underscores the need for the Court's adjudication of Namecheap's privilege claims.

claims.

## II.     STATEMENT OF FACTS

Following the Court's November 10, 2020 order denying Whoisguard's motion to dismiss (ECF No. 52), Defendants formed the Icelandic company WFP after purportedly "[h]aving scoured the globe for a domain privacy service that matches" Namecheap's needs.[2] Just as Plaintiffs have alleged that Whoisguard is an alter ego of Namecheap, Plaintiffs' initial investigation into WFP indicates that WFP may also be an alter ego of Namecheap, with WFP having been formed solely in an attempt to further shield Namecheap from liability for the cybersquatting claims in this action, including for newly registered domain names that are confusingly similar to Plaintiffs' trademarks and that use WFP to shield the identity of the registrant.

During the subsequent case management conference in this action, Plaintiffs explained to the Court that they needed an extended period of time to investigate whether the complaint should be amended to add WFP. Defendants pushed back, and their counsel Eugene Rome represented to the Court that Namecheap was in the position to provide complete information to Plaintiffs concerning the relationship between Namecheap and WFP: "Namecheap is in a position to *fully explain* its relationship with Withheld for Privacy. *Fully.* In other words, there's two parties to this relationship. *There's absolutely no reason to expect that Namecheap will somehow conceal this relationship.*" ECF No. 132 at 5:23-6:3 (emphasis added). Mr. Rome further represented to the Court that "[WFP] is a service provider, with whom Namecheap has dealings. *Namecheap is fully prepared to explain it.* . . . And since *the ultimate intent, as we can discern from plaintiffs' position, is to hold Namecheap liable for the doings of Withheld for Privacy.* If -- if that's their intention, then *certainly discovery taken from Namecheap would illustrate the issue.*" *Id.* at 132 at 6:8-16 (emphasis added).

Relying on these representations, Plaintiffs served two requests for production on

---

[2] *See* https://www.namecheap.com/blog/domain-privacy-is-changing-at-namecheap/

2

Namecheap targeted at determining the relationship between Namecheap and WFP.[3] Declaration of Steven E. Lauridsen ("Lauridsen Decl.") ¶ 2 & Ex. 1. However, Namecheap—with full knowledge of the type of information Plaintiffs sought—produced only the Service Agreement between itself and WFP together with a few public blog posts. *Id.* ¶ 3. As for its written responses, WFP served a litany of objections spanning multiple pages. *See id.* ¶ 3 & Ex. 2.

In particular, Namecheap's spurious objections include:

- Relevance: Namecheap maintains that the information sought is not relevant to the claims at issue in this litigation despite Mr. Rome having stated in open court that he understood the purpose of the information being sought and that his client would provide it.

- Burden: Namecheap asserts that the requests are overly burdensome, despite the fact the WFP is not even a year old and despite the fact that Namecheap only produced a handful of documents without articulating any specific burden. Further, at no point during the case management conference did Namecheap's counsel discuss any sort of burden, and again, Namecheap's counsel stated that Namecheap would produce responsive documents.

- Privilege: Namecheap has asserted numerous privilege objections without making it clear what specific objections apply to which documents and without explaining how nearly every document in an arms' length transaction between two entities could be privileged. Relying on the provision in the ESI Order that states the parties are not required to log post-complaint communications, Namecheap also has refused to produce a privilege log for

---

[3] **REQUEST FOR PRODUCTION NO. 1:** DOCUMENTS regarding YOUR relationship with WITHHELD FOR PRIVACY, including but not limited to all contracts, service agreements and/or other documents reflecting the specifics of the relationship.

**REQUEST FOR PRODUCTION NO. 2:** DOCUMENTS regarding your research and due diligence in selecting WITHHELD FOR PRIVACY as part of YOUR "having scoured the globe for a domain privacy service that matches" YOUR needs.

these documents.

*Id.* While Plaintiffs maintain that each of these objections is meritless, the privilege objections are particularly not well taken and are the subject of this briefing.[4] As explained more fully below, ample documents containing factual, non-privileged information should exist in a truly arms' length relationship, and those documents should be made known to Plaintiffs and to the Court.

## III. DEFENDANTS HAVE IMPERMISSIBLY USED VAGUE PRIVILEGE OBJECTIONS IN AN ATTEMPT TO WITHHOLD DOCUMENTS FROM DISCOVERY.

### A. Namecheap's privilege objections are not well founded and would not be applicable in an arm's length business relationship.

It is unclear from Namecheap's objections which privileges purportedly apply and how many documents are at issue. Indeed, by refusing to provide a privilege log, Namecheap has obfuscated whether there are *any* responsive documents at all.[5] Regardless, these privilege objections are not well founded.

"The prerequisites necessary to the creation of the attorney-client privilege are: (1) legal advice must be sought, (2) from a professional legal advisor in his or her legal capacity, (3) the communications must relate to that legal advice, (4) they must be made in confidence, (5) by the client or the attorney, (6) the privilege is asserted by the client, (7) from disclosure by the client or the attorney, and (8) the protection must not be waived." *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 555 (D. Ariz. 2011) (Snow, J.) (citing *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)).

"The party asserting the [attorney-client] privilege bears the burden of proving each

---

[4] Although the Court only ordered the parties to brief the privilege issues with respect to these two requests for production (ECF No. 158), Plaintiffs reserve the right to challenge Namecheap's remaining objections.

[5] Plaintiffs note that a lack of responsive documents would indicate that Namecheap and WFP are not engaged in an arms' length business relationship and would point to an alter ego relationship instead. Thus, even the number of allegedly privileged documents is relevant to whether Plaintiffs should amend their complaint to name WFP as a defendant.

4

essential element." *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009). "The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable. The scope of the privilege should be strictly confined within the narrowest possible limits." *United States v. Christensen*, 828 F.3d 763, 803 (9th Cir. 2015) (internal quotation omitted).

Accordingly, the privilege does not cover communications in their entirety. Rather, "[i]f the nonprivileged portions of a communication are distinct and severable, and their disclosure would not effectively reveal the substance of the privileged legal portions, the court must designate which portions of the communication are protected and therefore may be excised or redacted prior to disclosure." *Id.* The attorney-client privilege thus "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *United States v. Castillo*, 621 F. Supp. 2d 760, 763 (D. Ariz. 2008) (Snow, J.) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)).

To qualify for work-product protection, documents must: (1) be "prepared in anticipation of litigation or for trial" and (2) be prepared "by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011); *see also S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 548 (D. Ariz. 2002) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Similar to the attorney-client privilege, the burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion. *S. Union*, 205 F.R.D. at 549. Finally, the protection provided by the work-product doctrine may be overcome if the party seeking the documents can show they have a "substantial need for the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means." *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1023 (D. Ariz. 2020); Fed. R. Civ. P. 26(b)(3)(A)(ii). This compelling need may be present, for example, where the facts contained within the document are at-issue in the litigation. *Id.*

While it is difficult to argue in a vacuum why various privilege assertions are not

well founded, Plaintiffs would expect that, in an arms' length business relationship, at least the following non-privileged documents would exist:

- Drafts of the Service Agreement;
- Correspondence between WFP and Namecheap;
- Correspondence regarding the Service Agreement and the negotiations thereof, including its terms, preparation, and the exchange of drafts;
- The Service Agreement references ▮▮▮▮▮▮▮▮▮▮ which would be responsive;
- Documents reflecting the manner ▮▮▮▮▮▮▮▮▮▮
- Documents reflecting how any other requirements or terms of the Agreement are fulfilled;
- ▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮▮▮▮▮▮
- Any corporate formation documents or other indicia provided to Namecheap to show that WFP is an active company in good standing;
- Documents reflecting Namecheap informing Whoisguard that Namecheap would be switching service providers for many of the domain names that used Whoisguard's service; and
- Documents reflecting the transition from Whoisguard as a service provider to WFP for many of the domain names that used Whoisguard's service.

None of these documents would be considered privileged or subject to the attorney work product doctrine. *Castillo*, 621 F. Supp. 2d at 763 (privilege covers communications and not underlying facts); *Christensen*, 828 F.3d at 803 (non-privileged portions of documents that are distinct must be severed from privileged portions). Even if Namecheap and WFP executed conflict waivers and were represented by the same attorney, the facts underlying the various documents and communications between WFP and Namecheap

would not be privileged and must be disclosed. *See Castillo*, 621 F. Supp. 2d at 763. Further, to the extent that facts concerning WFP's relationship with Namecheap exist only in attorney work product, a compelling need warrants their disclosure. *Cont'l Cirs.*, 435 F. Supp. 3d at 1023 (work-product doctrine may be overcome if there is a substantial need for the information that cannot be obtained via other means without undue hardship). Moreover, it is unclear how Namecheap's research and due diligence in locating and selecting WFP as part of Namecheap's "having scoured the globe for a domain privacy service" would be privileged.

### B. Namecheap is concealing discoverable information by misusing an agreement meant to prevent unmanageable privilege logs.

By refusing to produce a privilege log concerning the WFP documents, Namecheap is preventing Plaintiffs from testing whether any of the documents withheld are truly privileged. Rule 26 requires that a party withholding a document on the basis of privilege must "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(6)(A)(ii). As commonly occurs in civil litigation, the parties agreed they would not log documents created after this action commenced so as to avoid having to log the numerous attorney-client emails exchanged during, and related to management of, the litigation. *See* ECF No. 90 at § 12.5; ECF No. 92 at ¶ 8(b). But this agreement was not intended to—nor could it—shield discoverable facts that arose after the filing of the complaint. Rather, the purpose was to mitigate against unmanageable privilege logs flooded with hundreds of clearly privileged emails concerning the litigation of this action. Namecheap, however, is now improperly invoking the attorney-client privilege and work-product doctrine protections in an attempt to withhold non-privileged factual information from discovery.

Namecheap's refusal to provide a log concerning the WFP documents should not be condoned, especially in light of Namecheap's representation in open court that it had nothing to hide.

7

## IV. CONCLUSION

Namecheap is hiding behind dubious privilege claims to avoid disclosing discoverable information about its relationship with WFP. Plaintiffs therefore respectfully request that the Court order that Namecheap log all purportedly privileged documents and produce them to the Court for in-camera inspection.

DATED: December 1, 2021                    SNELL & WILMER L.L.P.

By: /s/ Jacob C. Jones
David G. Barker
Jacob C. Jones
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

TUCKER ELLIS LLP
David J. Steele
Howard A. Kroll
Steven E. Lauridsen
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223

Attorneys for Plaintiffs,
Meta Platforms, Inc. (fka Facebook, Inc.),
Instagram, LLC, and WhatsApp LLC