**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Meta Platforms, Inc., et al.,<br>      Plaintiffs,<br>  v.<br>WhoisGuard, Inc., et al.,<br>      Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**DEFENDANTS' BRIEF RE: PLAINTIFFS' REQUESTS FOR ADDITIONAL DOMAIN NAME DATA AND PAYMENT INFORMATION** |
| WhoisGuard, Inc., et al.,<br>      Counterclaimants,<br>  v.<br>Meta Platforms, Inc.,<br>      Counterclaim Defendant. | |

On November 17, 2021, the Court held a telephonic discovery dispute hearing concerning several categories of discovery that Plaintiff and Counterclaim Defendant Meta Platforms, Inc. ("Facebook") and Plaintiffs Instagram, LLC and WhatsApp LLC (collectively, "Plaintiffs") have informally demanded from Defendants and Counterclaimants Namecheap, Inc. ("Namecheap") and WhoisGuard, Inc. ("WhoisGuard") (together, "Defendants"), which Plaintiffs contend are responsive to the Model Initial Discovery Pilot project Order (General Order No. 17-08, Doc. 7) (the "MIDP Order").

Relevant to this brief, Plaintiffs have requested the Court to compel Defendants[1] to produce the following information and documents:

(1) for each customer account associated with any of the domain names at issue in the case, a list of all other domain names associated with that customer account;

(2) payment information for each account;

(3) all contact and account information provided by each customer; and

(4) all notices and complaints associated with each customer account identified, or any domain name associated with the customer account (regardless of whether that domain name is at issue in the case), including all notices of infringement or Uniform Domain-Name Dispute-Resolution Policy ("UDRP") complaints. *See* Ex. A to Decl. of Brianna Dahlberg filed herewith ("Dahlberg Decl.") at 1-2 (10/29/2021 Ltr. from D. Steele setting forth requests).

During the telephonic conference on November 17, 2021, the Court granted Defendants permission to file a brief in support of their objections that the requested material is not relevant and/or not proportional. Doc. 158. Defendants submit this brief pursuant to the Court's Order.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs' requests for information and documents related to other domain names

---

[1] Although Plaintiffs directed their discovery requests to both Defendants, Requests 1, 2 and 4 are inapplicable to WhoisGuard as it does not maintain customer accounts. As for Request 3, both Defendants have already produced the customer contact information for each of the domain at issue in the litigation, as discussed below.

1

registered by Namecheap customers who registered the 1,241 domains identified by Plaintiffs to be at issue in this litigation, are not only irrelevant to any claims or defenses in the case, but are also not proportional to the needs of this case.

***First***, information concerning the domains not at issue in this litigation is not relevant because it would not show **Defendants'** bad faith intent to profit from Plaintiffs' trademarks. Plaintiffs contend that the information is relevant to domain name "warehousing," one of the nine, non-exclusive bad faith factors of the Anti-Cybersquatting Consumer Protection Act (ACPA). Plaintiffs are incorrect. Even if the information offered some evidence of the ***customers'*** bad faith intent to profit, Plaintiffs cannot impute any such bad faith intent to Defendants, who are service providers with millions of domains under management. As discussed below, courts have held that domain name registrars such as Namecheap do not have a duty to screen domains registered by their customers for potential trademark infringement. Thus, the requested material is not relevant or within the scope of the MIDP Order.

***Second***, the time and effort for Namecheap to obtain information related to these other domains would be extremely onerous and expensive, given what little utility such information would yield. The disputed domains in the case correspond to approximately 980 customer accounts. While most of the accounts have only one or two domains in them, there is one account that has approximately **16,000** domains in it (this customer is likely a domain name reseller, registering domains for its own customers). Compiling lists of the other domain names associated with each of the 980 accounts would require time-consuming manual labor.

With respect to payment information associated with all these transactions, the only information kept by Namecheap is the form of payment (*e.g.*, credit card, PayPal, etc.) and a transaction identifier (*e.g.*, transaction number or the last four digits of the credit card) since payments occur in a PCI-compliant[2] environment through a third party. Plaintiffs have requested the payment information to help them verify the customers' identities, but Plaintiffs

---

[2] The Payment Card Industry ("PCI") Security Standards are a set of data security standards applicable to all companies that accept, process, or transmit card payments. *See* https://www.pcisecuritystandards.org/pci_security/maintaining_payment_security.

have no information other than transaction identifiers to provide since the payment processors rather than Namecheap have the complete payment information.

Conducting a search for complaints and notices of infringement for each of the other domains would also be incredibly time-consuming and burdensome to Namecheap, requiring at least 640 hours of attorney time to conduct the document review.

In sum, given what little benefit the information related to these other domains may yield, Plaintiffs' requests are simply not proportional to the needs of the case.

**Finally**, Defendants have already provided the customer contact information related to the 1,241 disputed domain names at issue in the litigation. As such, there is nothing for the Court to compel from Defendants with respect to this request.

For these reasons, the Court should deny Plaintiffs' motion to compel.

## II. BACKGROUND

### A. Relevant Background on Plaintiffs' Claims

This is a cybersquatting case against Internet service providers. Namecheap is an Internet domain name registrar. First Am. Compl. ("FAC"), Doc. 56 at ¶ 3. WhoisGuard is a provider of domain name privacy services. *See id.* at ¶ 12. Plaintiffs allege that Defendants are liable for registering, trafficking in, and using domain names that are identical or confusingly similar to Plaintiffs' trademarks. FAC, ¶ 20. The disputed domain names were selected and purchased by Namecheap's customers. Defendants do not claim any ownership interest in any of the domains. Nonetheless, Plaintiffs seek to hold Defendants liable for the wrongful actions of their customers based on a variety of different legal theories.

First, Plaintiffs allege that they contacted WhoisGuard about 46 allegedly infringing domain names before this lawsuit was filed and requested that WhoisGuard disclose the customers' identities and contact information, but assert that WhoisGuard did not provide the information. *Id.* at ¶ 122. Plaintiffs allege that WhoisGuard contractually assumed liability for harm caused by the customers' wrongful use of these domains by failing to timely disclose the customer's identity and contact information within seven days of being provided with "reasonable evidence of actionable harm." *Id.* at ¶ 41.

Second, Plaintiffs allege that Defendants are liable for "registering," "using," or "trafficking in" "at least 996" domain names. *Id*. at ¶ 20. Plaintiffs allege that Defendants are liable for the customers' wrongful use of these domains because WhoisGuard "registered" and "trafficked in" them in providing its privacy service, or because some of the customer information WhoisGuard disclosed was fake. *Id*. at ¶¶ 44, 82, 87, 94.

Third, Plaintiffs allege that Namecheap used some of the disputed domain names to operate "parking pages" containing advertising. *Id*. at ¶¶ 98, 100.

Fourth, Plaintiffs allege that Namecheap is liable for some expired domain names because Namecheap purportedly assumed the domains' registration during a brief period before the expired domains were deleted by the registry operator. *Id*. at ¶ 112.

Defendants deny all liability under any of Plaintiffs' theories.

**B.  The Contested Requests at Issue**

This case is governed by the MIDP Order. Doc. 7. The MIDP establishes "court-ordered mandatory initial discovery pursuant to the Court's inherent authority to manage cases." *Id*. at 3. Among other things, the MIDP Order requires parties to produce the documents and electronically stored information ("ESI") that "may be relevant to any party's claims or defenses." *Id*. at 7. For a defendant, initial MIDP responses are due 30 days after filing a responsive pleading. *Id*. at 5.

WhoisGuard filed its answer to the original complaint on November 24, 2020. Doc. 53. It timely served its initial MIDP responses on December 24, 2020 and made productions of ESI responsive to the MIDP Order on February 9, 2021, April 7, 2021, and August 19, 2021. Namecheap filed its answer to the operative First Amended Complaint on July 22, 2021 (Doc. 112), and timely served its initial MIDP responses on August 23, 2021. *See* Doc. 128. WhoisGuard served its first supplemental MIDP responses the same date. *See* Doc. 129.

On September 21, 2021, the parties held a video conference call during which they discussed, among other issues, the scope of the parties' respective ESI searches and productions. Dahlberg Decl., ¶ 3. Defendants agreed to run keyword searches for each of the disputed domain names listed in Plaintiffs' letters sent on August 27, 2021 and September 14,

2021. *Id*. Together, these lists identify 1,241 disputed domain names. *Id*. Plaintiffs also requested Defendants to produce additional information related to all other domain names registered by each customer, including domains that are *not* at issue in the litigation, but Defendants explained that this would vastly dilate the scope of discovery but produce little information of value to the case. *Id*.

On October 4, 2021, Namecheap timely served its initial production of ESI responsive to the MIDP Order, consisting of 12,725 pages/files. *Id*. at ¶ 4; s*ee* Doc. 138. On October 8, 2021, both Defendants supplemented their written MIDP responses. *See* Doc. 140.

On October 29, 2021, Plaintiffs' counsel sent a letter to Defendants asserting that Defendants' ESI production was deficient under the MIDP Order and requesting that Defendants produce the following additional categories of information and documents:

> (1) for each customer account associated with any of the domain names at issue in the case, a list of all other domain names associated with that customer account;
>
> (2) payment information for each account;
>
> (3) all contact and account information provided by each customer; and
>
> (4) all notices and complaints associated with each customer account identified, or any domain name associated with the customer account (regardless of whether that domain name is at issue in the case), including all notices of infringement or UDRP complaints.

Ex. A to Dahlberg Decl., at 1-2.

On November 8, 2021, the parties held a meet-and-confer conference during which Plaintiffs' requests at issue were discussed, among other discovery issues. *Id*. at ¶ 6. On the call, Defendants noted that they had already produced the customer contact information associated with each of the disputed domain names, and reiterated their objections to producing information associated with domains that are not at issue in the case. *Id*.

Plaintiffs then initiated a telephonic discovery conference in which they asked the Court to compel Defendants to produce the contested discovery, which was held on November 17,

2021. *Id*. at ¶ 7. During the hearing, the Court granted permission for Defendants to brief their objections to Plaintiffs' requests. Doc. 158.

### III.   ARGUMENT

####   A.   The Information Regarding Other Domain Names Not at Issue in the Case Is Not Relevant

Plaintiffs are requesting the identification of all domains associated with customers that have registered any of the 1,241 domains identified by Plaintiffs to be infringing, regardless of whether these other domains can be deemed to infringe on Plaintiffs marks. According to Plaintiffs, this information "is directly relevant to this litigation as the information relates to the ACPA bad faith factor concerning the registration of multiple infringing domain names." Plaintiffs are wrong.

The ACPA sets forth nine non-exclusive factors courts may consider when evaluating the element of a defendant's subjective bad faith intent to profit from the plaintiffs' trademarks. Plaintiffs allude to Factor 8, which is the "registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks or others that are distinctive at the time or registration of such domain names, or dilutive of famous marks of others . . ." 15 U.S.C. § 1125(d)(1)(B)(i)(VIII). This factor is intended to address the "cyberpiracy practice known as 'warehousing,' in which a cyberpirate registers multiple domain names—sometimes hundreds, even thousands—that mirror the trademarks of others." H.R. REP. NO. 106-412, 13 (Oct. 25, 1999).

Contrary to Plaintiffs' assumption, the Ninth Circuit has noted that the nine factors are merely permissive criteria. *Lahoti v. VeriCheck, Inc*., 586 F.3d 1190, 1202 (9th Cir. 2009). "[T]he most important grounds for finding bad faith are the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress." *Interstellar Starship Servs., Ltd. v. Epix, Inc*., 304 F.3d 936, 946 (9th Cir. 2002). Critically, in cases involving domain name registrars, Factor 8 is either inapplicable or weighs strongly in the registrar's favor. *See AMPAS v. GoDaddy.com, Inc.*, Case No. CV 10-03738 AB (CWx), 2015 WL 5311085, at *47 (C.D. Cal. Sept. 10, 2015) ("This factor again highlights

why the unique, case-specific considerations discussed above are better gauges of bad faith in this action than a mere sum of the nine, non-exclusive statutory factors.").

Importantly, even if the other domain names offered some evidence that the *customers* were engaged in warehousing of infringing domains, such an evidentiary showing would prove nothing as to **Defendants'** subjective intent. The customers' bad faith cannot be attributed to Defendants. ***It is settled law that registrars have no affirmative duty to police the trademarks of third parties.*** *AMPAS v. GoDaddy.com*, 2015 WL 5311085 at *52; *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 966 (C.D. Cal. 1997), *aff'd on other grounds*, 194 F.3d 980 (9th Cir. 1999). Defendants have millions of domains under management. Requiring them to "analyze [their] customer's subjective intent with respect to each domain name" would be an "impossible task." *AMPAS v. GoDaddy.com*, 2015 WL 5311085 at *47 (quoting *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F. 3d 546, 553 (9th Cir. 2013)).

As such, as the information regarding other domains not at issue in the case simply is not relevant to Plaintiffs' claims against Defendants.

**B.     The Information Regarding Domains Not at Issue in the Case Is Not Proportional Under Rule 26(b)(1)**

Even if the other unrelated domains bore some minimal relevance to Plaintiffs' claims, the information sought exceeds the scope of permissible discovery. The 2015 amendments to Rule 26 added the requirement that discovery must be "proportional" to the needs of the case. Under Rule 26(b)(1) "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liability Lit.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). Considerations in assessing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The effort and expense for Defendants to produce the requested information would be enormous. The 1,241 disputed domains correspond to approximately 980 customer accounts. Decl. of Hillan Klein filed herewith ("Klein Decl."), ¶ 3. While most of these accounts have only one or two domains, there are others with 18 or more domains and one account with just under 16,000 domains. *Id*. at ¶¶ 6, 9. To gather information on these other domains, Namecheap would have to pull the information manually. *Id*. at ¶ 3. Thus, even compiling lists of the other domains for each account in response to Request 1 would be unduly burdensome.

As for payment information sought in Request 2, the only information retained by Namecheap would be the type of payment method (*i.e.*, credit card, PayPal, etc.), and an identifier such as the last four digits of a credit card number or a transaction number. *Id*. at ¶ 4. No other information is retained. *Id*. Plaintiffs state that they requested the payment information to help identify customers who registered domains under fake names, but unless Plaintiffs were to were to track down each of these transactions from the various banks and credit card companies, the limited information that Namecheap possesses would not be useful to them. It would, however, be extraordinarily burdensome for Namecheap to manually collect, given the voluminous number of other domains/transactions at issue. As a practical matter, Plaintiffs' stated argument regarding the need to identify customers who registered domains under fake names is simply not credible in this case given that the only defendants Plaintiffs have named are the service providers, *i.e.*, Namecheap and WhoisGuard. Not one of the customers for the 1,241 domain names has been named as a defendant despite Plaintiffs' broad claims regarding these customers' abusive registrations.

Finally, collecting the complaints or notices of infringement sought in Request 4 would also be onerous. As an illustration of the effort and expense to Namecheap in order to collect this information, Namecheap's ESI search for such communications associated with the 1,241 disputed domain names yielded 5,823 results, which counsel spent more than 30 hours reviewing. Klein Decl., ¶ 7. Assuming a similar number of responsive "hits" per domain and documents reviewed per hour, conducting a review of the complaints/notices for

the domains of just the one account containing 16,000 domains would likely take about 390 attorney hours. *Id*. at ¶ 8. For two attorneys to conduct this review full time at 8 hours a day, it would take approximately 25 days to conduct the review. *Id*. That is just for a single account. *Id*.

There are almost 1,000 customer accounts associated with the 1,241 domains at issue in this litigation. The total review would easily take at least 40 days for two attorneys working 8 hours per day (*i.e.*, at least 640 attorney hours). *Id*. For the review to be conducted sooner, five or more attorneys would have to conduct the review *full time*, and even then, it would take more than 10 days for the review to be completed. *Id*. And this does not include the additional time and expense to prepare the documents for production. *Id*.

Therefore, the requested discovery regarding domains that are not at issue in the case is not proportional to the needs of the case.

### C. Defendants Have Already Produced the Customer Contact Information Associated with Each Disputed Domain

With respect to Plaintiffs' Request 3, which seeks "all contact and account information provided by each customer," Defendants had already produced the customer contact information for each of the 1,241 disputed domains identified by Plaintiffs *before* Plaintiffs initiated this discovery dispute. Defendants produced the information both in response to Plaintiffs' reveal request letters, as well as in their MIDP productions. Dahlberg Decl., ¶ 8 (listing Bates numbers). As such, there is nothing further for the Court to compel.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

Dated: December 8, 2021              **ROME & ASSOCIATES, A.P.C.**

By: *s/ Brianna Dahlberg*
Eugene Rome
Sridavi Ganesan
Brianna Dahlberg

9

And

**FENNEMORE CRAIG, P.C.**

Ray K. Harris
Mario C. Vasta

Attorneys for Defendants and Counterclaimants Namecheap, Inc. and WhoisGuard, Inc.