**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:    310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Meta Platforms, Inc., et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>WhoisGuard, Inc., et al.,<br><br>　　　　Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**DECLARATION OF HILLAN KLEIN IN SUPPORT OF DEFENDANTS' BRIEF RE: PLAINTIFFS' REQUESTS FOR ADDITIONAL DOMAIN NAME DATA AND PAYMENT INFORMATION** |
| WhoisGuard, Inc., et al.,<br><br>　　　　Counterclaimants,<br><br>v.<br><br>Meta Platforms, Inc.,<br><br>　　　　Counterclaim Defendant. | |

# DECLARATION OF HILLAN KLEIN

I, Hillan Klein, hereby declare:

1. I am the Chief Operating Officer of Namecheap, Inc. ("Namecheap"), Defendant in the above-captioned action. I have personal knowledge of the facts set forth in this declaration and if called upon to testify under oath, I could and would testify competently thereto.

2. I make this declaration in support of Defendants' Brief Re: Plaintiffs Meta Platforms, Inc., Instagram, LLC, and WhatsApp, LLC's (collectively, "Plaintiffs") Requests for Additional Domain Name Data and Payment Information.

3. I understand that Plaintiffs are seeking information concerning all domain names registered by Namecheap customers who have also registered any of the 1,241 domains identified by Plaintiffs in this litigation to be subject to the dispute. The disputed domains correspond to approximately 980 customer accounts. Each Namecheap customer account will have information on active domains registered by that customer. Namecheap would have to pull this information manually. In short, the process is not as easy as generating an electronic report and would require time-consuming manual labor.

4. I also understand that Plaintiffs are seeking "payment information" for each customer who registered any of the 1,241 domains identified by Plaintiffs. The only customer payment information retained by Namecheap would be the type of payment method (*i.e.*, credit card, PayPal, etc.), and an identifier such as the last four digits of a credit card number or a transaction number. No other information is retained by Namecheap.

5. I understand that Plaintiffs also seek customer complaints and notices of infringement related to any domains registered by customers who registered any of the 1,241 domains identified by Plaintiffs. This task would be incredibly onerous and expensive for Namecheap. To complete this task, Namecheap would be required to collect electronically stored information ("ESI") of the relevant custodians (*e.g.*, the individuals who receive emails sent to the email address legal@namecheap.com) and perform searches through Namecheap's email ticket database. From the collected ESI, Namecheap would need to

perform keyword searches for communications concerning the customer accounts and other domains associated with them, and then manually review and sort out non-responsive communications (such as tickets related to customer support or service needs).

6. This effort is compounded for customer accounts owned by domain name resellers registering hundreds of domains. Resellers often have hundreds or thousands of active domains that they have registered for their own customers. I can represent that one of the customer accounts at issue has just under 16,000 active domains in it. This customer is likely a domain name reseller.

7. Namecheap previously conducted a search of its records for the 1,241 domain names identified by Plaintiffs per their agreement with Defendants, working closely with its counsel as well as a professional e-discovery vendor (CS Disco). I understand that the search "hits" from this first search produced 5,823 results, which Namecheap's counsel spent more than 30 hours reviewing. This yields a rate of review of about 41 domains per hour.

8. For just the one customer account with approximately 16,000 domains, to conduct a review of communications associated with the additional domain names that are *not* subject to the dispute would, at a rate of about 41 domains per hour, likely take about 390 hours. For two attorneys to conduct this review full time at 8 hours a day, it would take approximately 25 days to conduct the review. That is just for a single account.

9. Again, there are approximately 980 customer accounts associated with the 1,241 domains at issue in this litigation. While most of these accounts only have one or two active domains associated with them, there are other accounts with 18 or more domains. Therefore, the review for customer complaints and notices of infringement would easily take at least 40 days for two attorneys conducting the review, working full time for 8 hours per day. For the review to be conducted sooner, five or more attorneys would have to be pulled away from their tasks to conduct the review *full time*, and even then, it would take more than 10 days for the review to be completed. And this does not include the additional time and expense to prepare the documents for production.

I declare under the laws of the United States of America that the foregoing is true and correct.

Executed on December  6 , 2021 in Dallas, Texas.

_____
Hillan Klein