SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Meta Platforms, Inc. (fka Facebook, Inc.),
Instagram, LLC, and WhatsApp LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Meta Platforms, Inc., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Namecheap, Inc., et al.,<br><br>　　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV-20-470-PHX-GMS<br><br>**DECLARATION OF STEVEN E. LAURIDSEN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO PRODUCE DISCOVERY [161]**<br><br>**(ORAL ARGUMENT REQUESTED)** |

I, Steven E. Lauridsen, declare:

1.  I am an attorney at Tucker Ellis LLP, counsel of record for Plaintiffs in this action. I make this declaration based on my personal knowledge and, if called as a witness, would testify competently to each of the following facts.

2.  On November 8, 2021, two of my colleagues, David Steele and Howard Kroll, and I met and conferred with Defendants' counsel concerning Plaintiffs' intention to move to compel documents related to Withheld for Privacy ehf and Defendants' refusal to turn over certain customer, financial, and domain name information. During this meeting, the parties also briefly discussed the status of Plaintiffs' document production. I explained the extensive ESI collection process in which Plaintiffs were engaging and also stated where Plaintiffs were in the process. I also expressed that Plaintiffs would be in a better position to provide a date certain once all ESI had been collected and processed for review. Defendants did not raise this issue again, either with Plaintiffs or the Court, until they filed their motion to compel, despite the fact the Court inquired as to whether there were any additional outstanding discovery issues when it held the telephonic discovery conference concerning Plaintiffs' own motions to compel.

3.  Defendants assert that Defendants granted numerous extensions of time for Plaintiffs to respond to discovery. In one such instance, Defendants state that, following the Court's August 26, 2021 order ruling that each of Defendants' discovery requests counted as a single request, they met and conferred with me on August 27, 2021. Rather than meet and confer on the discovery requests as expected, Defendants asserted that Plaintiffs' MIDP ESI was tardy despite the productions Plaintiffs had already made. Defendants' counsel initially demanded that all documents be produced within ten days despite the fact that I would be on vacation out of the country, as would another attorney on my team, Howard Kroll.

4.  I explained that Plaintiffs' Rule 24 document collection efforts had already begun before the Court issued its order and that Plaintiffs would make rolling productions on my return. I also stated that Plaintiffs intended to supplement on October 4, 2021 their

1

MIDP ESI production related to Defendants' counterclaims with the documents available at that time. I did not represent that Plaintiffs would complete their entire document production by that date.

5. As reflected in the parties' correspondence, my colleagues and I repeatedly sought to meet and confer with Defendants' counsel concerning ESI search terms, as required by the ESI Order in this action. Despite having never provided a list of proposed search terms, Defendants insisted these meet and confer efforts were a delay tactic. To date, Defendants have not provided proposed ESI search terms, forcing Plaintiffs to formulate their own unilaterally.

6. I am familiar with Plaintiffs' document productions in this action. According to my searches in Plaintiffs' document production database, prior to making their fifth document production on December 8, 2021, Plaintiffs had produced approximately 409 notices of actionable harm coupled with approximately 4,037 screenshots of websites accessible at the infringing domain names. This is a conservative estimate based on my searches and how the documents have been tagged. These notices were sent by various vendors of Plaintiffs, and Plaintiffs are still receiving and producing additional notices as they arrive from these vendors. Some of these notices were stored in a spreadsheet with each notice constituting a row on that spreadsheet.

7. As an example, Plaintiffs have produced as FB_NAME_00031078-91 a notice plus contemporaneously captured screenshots for the website at ads-faceobook.com, which comprises a spoof login page for the Facebook platform designed to steal user login information.

8. Defendants assert that Plaintiffs are withholding correspondence with Defendants' customers. Plaintiffs have not purposefully withheld such correspondence.

9. Turning to Defendants' first example of allegedly withheld correspondence for the domain name uninstagrammable.com, Plaintiffs sent Defendants a notice of actionable harm on October 11, 2021, which was produced as FB_NAME_00019061, though Plaintiffs and their vendors do not have a record of the return correspondence cited

2

by Defendants. I inquired with Plaintiffs' vendor that sent the original notice of actionable harm, and I was informed that a system shutdown at the vendor caused the email to never have been received.

10. The second item of correspondence regarding the domain name bestwhatsappimages.com was recently provided by one of Plaintiffs' vendors, was already tagged and slated for production when the instant motion was filed, and was subsequently produced on December 8, 2021.

11. According to my search of Plaintiffs' document production database, Plaintiffs have produced at least twenty-four exemplars of use of the FB Mark during the period relevant for Defendants' abandonment claim.

12. As explained in the Declaration of Nicholas Wong, Plaintiffs have been engaged in an extensive ESI collection effort. While that effort is ongoing, Plaintiffs have already produced documents for one of the key custodians, Kathleen Johnston, the Meta in-house counsel who signed the submissions to the PTO for the FB Mark that Defendants assert were fraudulent.

13. Plaintiffs promptly produced a privilege log listing any of Ms. Johnston's privileged communications regarding any use or potential use of the FB Mark. Defendants did not challenge the sufficiency of this privilege log.

14. The parties previously agreed that they would make rolling productions of privilege logs within two weeks of each document production. Thus, when a population of documents has been reviewed and produced, all privileged documents withheld from that specific production must be logged within two weeks.

15. In their motion, Defendants state that Plaintiffs have produced blank pages, though Defendants have not met and conferred on this issue. Due to the lack of a conference of counsel, I am not completely sure as to what documents Defendants are referring. Based on my review of Plaintiffs productions, I suspect that Defendants are referring to blank pages consisting of screenshots of the infringing domain name websites that have been automatically captured from time to time, as is the case with the screenshot produced as

3

FB_NAME_00021772.

16. I am not aware of duplicate documents in Plaintiffs productions. In accordance with the ESI Order in this action, Plaintiffs' ESI vendor performed an automated global de-duplication process on all documents before they were reviewed by Plaintiffs' attorneys. This process is, however, imperfect and may not catch every duplicate in a large document population. Defendants had not previously raised this issue.

17. I am also unaware of any illegible documents in Plaintiffs' productions. I suspect any illegible documents are the result of a processing error during those documents' production; however, I cannot be sure because Defendants did not bring any such documents to my attention before filing their motion to compel (and still did not identify any in the motion).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on December 10, 2021 in West Hollywood, California.

                                            /s/Steven E. Lauridsen
                                              STEVEN E. LAURIDSEN