**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:    310-282-0690
Facsimile:      310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Meta Platforms, Inc., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WhoisGuard, Inc., et al.,<br><br>    Defendants. | CASE NO. 2:20-cv-00470-GMS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF CONCERNING NAMECHEAP'S ASSERTION OF PRIVILEGE WITH RESPECT TO REQUESTS FOR PRODUCTION NOS. 1-2 (DOC. 167)** |
| WhoisGuard, Inc., et al.,<br><br>    Counterclaimants,<br><br>v.<br><br>Meta Platforms, Inc.,<br><br>    Counterclaim Defendant. | |

On November 17, 2021, the Court held a telephonic hearing concerning several items of disputed discovery which Plaintiff and Counterclaim Defendant Meta Platforms, Inc. ("Facebook") and Plaintiffs Instagram, LLC and WhatsApp LLC (collectively, "Plaintiffs") have requested from Defendants and Counterclaimants Namecheap, Inc. ("Namecheap") and WhoisGuard, Inc. ("WhoisGuard") (together, "Defendants").

Relevant to this brief, Plaintiffs have requested the Court to order Namecheap to log all privileged documents that are responsive to Requests 1 and 2 within Plaintiffs' First Set of Requests for Production ("RFP") and produce them to the Court for *in camera* inspection.

During the telephonic conference on November 17, 2021, the Court granted Plaintiffs permission to file a brief in support of their challenge to Namecheap's invocation of the attorney-client privilege as to due diligence conducted with respect to Withheld for Privacy ehf ("WFP"). Doc. 158; *see* Docs. 167-69.[1] Namecheap submits this brief in response.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The Court should deny Plaintiffs' request for a privilege log as moot. Namecheap has produced a log identifying the responsive documents withheld on the basis of privilege in order to resolve this discovery dispute, even though it was under no obligation to do so under the parties' stipulation providing that post-filing documents need not be logged.

Notably, in light of the Court's comments at the November 17, 2021 telephonic hearing, Namecheap had asked Plaintiffs *before* they filed their brief, on the parties' follow-up November 23, 2021 meet-and-confer call, if producing a privilege log would resolve this dispute. Plaintiffs told Namecheap they would get back to them, but never did. Instead, they proceeded to file their brief, unnecessarily burdening the Court with discovery disputes that could have been resolved through the meet-and-confer process.[2]

---

[1] Plaintiffs have lodged under seal an unredacted version of their brief. Doc. 168. Defendants do not consider the material at issue to be confidential and have no objection to the unredacted version of Plaintiffs' brief being publicly filed.

[2] Plaintiffs are apparently attempting to manufacture various discovery disputes in order to attempt to distract the Court from their own continued failure to produce <u>any</u> internal

Because Namecheap's privilege log sets forth all information needed to assess the claims of privilege, and Plaintiffs have failed to make the required factual showing, Plaintiffs' request for an *in camera* inspection should be denied.

Finally, the Court should disregard Plaintiffs' litany of accusations of discovery misconduct related to WFP, which are unfounded. Plaintiffs complain that Namecheap has failed to produce numerous items *that were not even* requested in RFPs 1 and 2 (*e.g.*, corporate formation documents, a proprietary algorithm, payment documents, etc.). Nonetheless, Namecheap has cooperated with Plaintiffs in good faith to respond to Plaintiffs' new requests for additional WFP-related documents, which were first propounded informally in an email to counsel on November 11, 2021. None of these other purported issues are even properly before the Court, as the Court instructed the parties to meet and confer more thoroughly on those issues and limited this briefing to the privilege issue. *See* Doc. 158.

Accordingly, the Court should deny Plaintiffs' motion to compel.

## II.   BACKGROUND

### A. Background on Plaintiffs' Claims and Withheld for Privacy

This is a cybersquatting case against Internet service providers. Namecheap is an Internet domain name registrar. First Am. Compl. ("FAC"), Doc. 56 at ¶ 3. WhoisGuard is a provider of domain name privacy services. *See id.* at ¶ 12. Plaintiffs allege that Defendants are liable for registering, trafficking in, and using domain names that are identical or confusingly similar to Plaintiffs' trademarks. FAC, ¶ 20. Defendants deny all liability.

This case was filed on March 4, 2020. Doc. 1. On March 4, 2021, Namecheap announced it was changing its privacy service from WhoisGuard to a new provider, Withheld for Privacy ("WFP"). Doc. 93 at 6. WFP operates differently from WhoisGuard. Customers who use WFP's privacy service remain the Registered Name Holder of their domain names, but WFP provides alternative, reliable contact information for display in public Whois records, shielding the customer's actual name and contact information from publication. *See* ICANN

---

documents from their own companies in this litigation, despite their MIDP ESI production being originally due in December of 2020. *See generally* Defs.' Mot. to Compel (Doc. 161).

Registrar Accreditation Agreement ("RAA") Specification on Privacy and Proxy Registrations, §§ 1.1.2 & 1.1.3, available at https://www.icann.org/resources/pages/approved-with-specs-2013-09-17-en#privacy-proxy (definitions for "Privacy Service" and "Proxy Service"). WFP is incorporated in Iceland. *See* Pl.'s Br. (Doc. 167) at 1.

Namecheap's switch of privacy providers has not impacted any of the disputed domain names identified by Plaintiffs as being at issue in the case. *See* 07/08/21 Order on Pl.'s Mot. to Enforce Lodging of Registrar's Certificates (Doc. 109), at 9:3-7. Nonetheless, Plaintiffs have indicated that they may amend their complaint to add WFP as a defendant because they believe it is an alter ego of Namecheap.

**B. The Contested Discovery Requests**

On October 1, 2021, Plaintiffs served their First Set of RFPs to Namecheap, consisting of the following two RFPs:

> **RFP 1:** DOCUMENTS regarding YOUR relationship with WITHHELD FOR PRIVACY, including but not limited to all contracts, service agreements and/or other documents reflecting the specifics of the relationship.
>
> **RFP 2:** DOCUMENTS regarding your research and due diligence in selecting WITHHELD FOR PRIVACY as part of YOUR "having scoured the globe for a domain privacy service that matches" YOUR needs.

*See* Doc. 167-2 at 4.

On November 1, 2021, Namecheap served its responses. Doc. 167-3. On the same date, Namecheap produced documents responsive to RFP 1,[3] including a Service Agreement between WFP and Namecheap dated March 1, 2021, which was at the time the sole contract in existence between the two entities and which sets forth all terms of their business relationship.[4] With respect to RFP 2, Namecheap stated in its response that after conducting a

---

[3] Namecheap's November 1 production also included additional MIDP documents.

[4] Namecheap and WFP subsequently entered into a written Joint Defense Agreement on November 22, 2021. In addition to being privileged, the Joint Defense Agreement itself (and

1  good faith, diligent search, it had located no non-privileged responsive documents.

2  On November 8, 2021, the parties held a meet-and-confer conference during which RFPs 1 and 2 were discussed, among other discovery issues. With respect to RFP 1, Namecheap's counsel explained that the sole contract had been produced; that Namecheap was not withholding any documents based on relevance objections; and that the portion of the request seeking "other documents reflecting the specifics of the relationship," did not describe with reasonable particularity the additional items sought. Nonetheless, in the interest of cooperation, Namecheap told Plaintiffs that if they would specify the additional categories of documents they were seeking, Namecheap would likely be willing to produce additional documents. *See* Ex. 1 to Dahlberg Decl. at p. 4 ("In the meantime, if you can offer any specificity about additional categories of documents that Plaintiffs believe are responsive to their RFP 1, that would be helpful towards resolving the dispute.").

With respect to RFP 2, Namecheap's counsel explained that the research and due diligence regarding the geographic location of its new privacy service had been conducted by lawyers and that no non-privileged documents existed. Namecheap also reminded Plaintiffs that pursuant to the parties' Stipulated Order Re: Discovery of ESI, they had agreed that privileged communications involving inside or outside counsel that post-date the filing of the complaint need not be placed on a privilege log. Doc. 92 at 7. The complaint was filed on March 4, 2020. Doc. 1. Nearly all responsive privileged communications post-date the filing of the complaint, and thus Namecheap was not required to log them.

On November 10, 2021, Plaintiffs proceeded to schedule a telephonic discovery dispute with the Court. *See* Ex. 1 to Dahlberg Decl. at p. 3. Only after scheduling the telephonic hearing did Plaintiffs respond to Namecheap's request to specify the additional categories of WFP documents they were seeking. *Id*. at p. 2. These new requests mirror the categories set forth in Plaintiffs' brief. *See id.* & Doc. 169 at 6. Contrary to the suggestion in Plaintiffs' brief,

---

its drafts) are not discoverable because they are irrelevant. *See Warren Distr. Co. v. InBev USA L.L.C.*, Civil No. 07-1053 (RBK), 2008 WL 4371763, *3 (D. N.J. Sept. 18, 2008) ("[C]ourts addressing the issue have doubted [a joint defense agreement's] relevance to issues in dispute and have barred their production.") (citing cases).

4

Namecheap has not refused to produce documents responsive to these requests on the basis of privilege. Rather, these are brand new requests that were not even provided to Namecheap until after Plaintiffs initiated the dispute before the Court.

During the November 17, 2021 telephonic conference, the Court instructed the parties consult more thoroughly on the specifics of the requested information. Doc. 158. The Court further held that to the extent Plaintiffs challenge Namecheap's invocation of privilege, they may file a brief. *Id*.

On November 23, 2021, the parties' counsel held a follow-up meet and confer video conference call. Dahlberg Decl., ¶ 3. On the call, Namecheap agreed to produce further documents responsive to Plaintiffs' new requests within 30 days, with certain items, like proof of payments to WFP and corporate formation documents, to be produced sooner.[5] *Id*. For certain requests, Namecheap explained that responsive documents may not exist, but Namecheap agreed to search. *Id*. For other requests seeking proprietary technical information unrelated to the issues in the case, such as Plaintiffs' request for production of a certain proprietary algorithm, Namecheap's counsel explained that they would work with their client to provide general information regarding the workflows of the systems. *Id*.

On the November 23 call, Namecheap also asked Plaintiffs' counsel whether the need to submit the instant privilege dispute to the Court could be avoided if Namecheap would agree to provide a privilege log, notwithstanding the parties' prior stipulation. *Id*. at ¶ 4. Plaintiffs' counsel stated that they would check with their clients and get back to Namecheap, but they never did. *Id*. Instead, Plaintiffs proceeded to file their brief on December 1, 2021 without any further discussion on the issue. *Id*.

On December 15, 2021, Namecheap produced its privilege log for documents

---

[5] Namecheap produced these items on November 25, 2021, along with a copy of WFP's office service agreement and some recent communications between Namecheap and WFP. Contrary to Plaintiffs' accusation that these items were "initially withheld," neither of the RFPs at issue request WFP's corporate formation documents, payment receipts, or all communications between the two companies. Rather, these documents were produced in response to Plaintiffs' new requests emailed on November 11, specifically for these items.

responsive to Plaintiffs' RFPs 1 and 2. Dahlberg Decl., ¶ 5. The privilege log consists of 135 entries. Ex. 2 to Dahlberg Decl.

### III. ARGUMENT

#### A. Plaintiffs' Request for a Privilege Log Is Moot

Because Namecheap has produced its privilege log, Plaintiffs' request for the log is moot. As noted above, under the parties' stipulation Namecheap was not required to log post-filing communications. Namecheap produced its log voluntarily, as a compromise in order to eliminate disputes before the Court.[6] The privilege log provides sufficient information to demonstrate that the materials are privileged. *See* Ex. 2 to Dahlberg Decl. Thus, there is nothing further for the Court to compel with respect to this portion of Plaintiffs' motion. Had Plaintiffs more fully met and conferred with Namecheap, this dispute could have been avoided.

#### B. Plaintiffs' Request for *In Camera* Inspection Should Be Denied

Plaintiffs also request the Court to conduct an *in camera* inspection of the privileged documents, but this request should be denied because Plaintiffs have not even attempted to establish the requisite factual basis for an *in camera* inspection.

In the Ninth Circuit, courts may conduct an *in camera* review of documents only if the party challenging the assertion of privilege has shown, through nonprivileged evidence, "a factual basis sufficient to support a reasonable, good faith belief that in *camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992).

Even where the challenging party makes such a showing, "the decision whether to conduct the review rests within the discretion of the district court." *Id*. at 1075. The court's discretion is guided by the factors enumerated by the Supreme Court in *United States v.*

---

[6] Namecheap reserves its right to rely on the parties' stipulation going forward, and will not be logging all future privileged correspondence regarding WFP. As Plaintiffs themselves acknowledge, there is a substantial burden involved in logging the numerous communications between the parties and their counsel about the litigation, which the stipulation was intended to alleviate. Pls.' Br. at 1.

*Zolin*, 491 U.S. 554 (1989). *In re Grand Jury Investigation*, 974 F.2d at 1072. Specifically, "[o]nce the threshold showing is made to allow in *camera* review, courts should make the decision to review in light of the amount of material they have been asked to review, the relevance of the alleged privilege material to the case, and the likelihood that *in camera* review will reveal evidence to establish the applicability of the [privilege] exception." *Id*. at 1072-73 (citing *Zolin*, 491 U.S. at 572).

Here, Namecheap's privilege log is sufficient to establish that the withheld documents are privileged. *See In re Grand Jury Investigation*, 974 F.2d at 1075. Plaintiffs have failed to present evidence showing "a factual basis sufficient to support a reasonable, good faith belief" that an *in camera* inspection may reveal evidence that the materials are not privileged. *Id*. at 1074. Contrary to Plaintiffs' arguments, Namecheap's assertion of privilege over material prepared by Namecheap's in-house and outside lawyers is not "dubious." Before partnering with WFP, Namecheap's lawyers performed research concerning legal issues of various geographic jurisdictions and drafted memorandums summarizing their research. Namecheap's lawyers also communicated with various personnel about legal issues related to the change in privacy service. These documents are protected work product and attorney-client communications. Plaintiffs have presented no evidence to the contrary.

Moreover, even if Plaintiffs had been able to make the required factual showing (they have not), each of the *Zolin* factors weighs against an *in camera* review. As to the first factor, Namecheap's log consists of over 130 documents which would need to be reviewed. As to the second factor, the material concerning Namecheap's change in privacy services bears minimal, if any, relevance to the issues in this cybersquatting case, especially given the fact that the change did not impact any of the disputed domains at issue in the case. Finally, as to the third factor, the privilege log produced by Namecheap demonstrates that an *in camera* review is unlikely to reveal that the documents are not privileged.

///

///

///

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

Dated: December 15, 2021         **ROME & ASSOCIATES, A.P.C.**

By:   *s/ Brianna Dahlberg*
         Eugene Rome
         Sridavi Ganesan
         Brianna Dahlberg

And

**FENNEMORE CRAIG, P.C.**

Ray K. Harris
Mario C. Vasta

Attorneys for Defendants and Counterclaimants Namecheap, Inc. and WhoisGuard, Inc.