**ROME & ASSOCIATES, A.P.C.**
Eugene Rome (admitted pro hac vice)
Sridavi Ganesan (admitted pro hac vice)
Brianna Dahlberg (admitted pro hac vice)
2029 Century Park East, Suite 450
Los Angeles, CA  90067
Telephone:   310-282-0690
Facsimile:     310-282-0691
erome@romeandassociates.com
sganesan@romeandassociates.com
bdahlberg@romeandassociates.com

**FENNEMORE CRAIG, P.C.**
Ray K. Harris (No. 007408)
Mario C. Vasta (No. 033254)
2394 E. Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 916-5000
rharris@fennemorelaw.com
mvasta@fennemorelaw.com

Attorneys for Defendants and Counterclaimants
Namecheap, Inc. and WhoisGuard, Inc.

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Meta Platforms, Inc., et al., <br><br>  Plaintiffs, <br><br> v. <br><br> WhoisGuard, Inc., et al., <br><br>  Defendants. | CASE NO. 2:20-cv-00470-GMS <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL PLAINTIFFS TO PRODUCE DISCOVERY** |
| WhoisGuard, Inc., et al., <br><br>  Counterclaimants, <br><br> v. <br><br> Meta Platforms, Inc., <br><br>  Counterclaim Defendant. | |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs Meta Platforms, Inc. ("Facebook"), Instagram, LLC, and WhatsApp LLC (collectively, "Plaintiffs") feign confusion and surprise about this motion, but the issue here is straightforward: Defendants Namecheap, Inc. and WhoisGuard, Inc. (collectively, "Defendants") seek an order compelling Plaintiffs to produce the relevant documents and information in their possession, as they are obligated to do under the Mandatory Initial Discovery Pilot project Order ("MIDP Order," Doc. 7) and the Federal Rules of Civil Procedure, without further delay or gamesmanship.

Plaintiffs cannot dispute that they have produced no internal documents to date (they have not identified any such documents in their Opposition).[1] With respect to most of the contested discovery requests at issue, Plaintiffs do not even dispute that Defendants are entitled to obtain the documents and information sought. Plaintiffs further do not dispute that they have violated the Stipulated Order Re: Discovery of ESI ("ESI Order," Doc. 92 at ¶ 7), which requires rolling productions to have a definitive end date. Yet, Plaintiffs have unjustifiably delayed producing documents and substantive answers for many months, causing prejudice to Defendants and necessitating the Court's intervention.

In an attempt to try to distract the Court, Plaintiffs falsely assert that Defendants failed to "fully" meet and confer on this Motion. In reality, the parties met and conferred no fewer than five times. Defendants expressly warned Plaintiffs multiple times (including on August 20, August 27, and September 29, 2021) that they would have no choice but to move for sanctions. Even after Defendants incurred attorneys' fees in connection with this Motion, they still have no indication when, if ever, Plaintiffs' production will be complete. Plaintiffs argue that Defendants have failed to consider the documents they have produced to date, but

---

[1] Plaintiffs state that they have produced documents from one custodian, in-house counsel Kathleen Johnston, but the majority of the 86 Johnston documents consist of blank "Withheld for Privilege" placeholder sheets, and none are internal Facebook documents. Previous Decl. of Brianna Dahlberg (Doc. 161-2) ("Previous Dahlberg Decl.") at ¶ 26. Plaintiffs do not dispute this point in their Opposition.

they must produce *all* (not just some) relevant and responsive ESI within their possession, custody, or control—not just the documents that are favorable to their case. It is undisputed that Plaintiffs continue to withhold some of the most important responsive documents. Plaintiffs assert that they are still in the process of identifying their relevant custodians, which according to them is an "iterative process" that "cannot be finalized until all custodial interviews are substantially complete." Opp. at 6. This is a new excuse, but more of the same gamesmanship and dilatory behavior from Plaintiffs.

Similarly, Plaintiffs have offered no justification for their failure to provide responsive interrogatory answers. Plaintiffs assert that they have produced "hundreds of notices" and "thousands of screenshots" allegedly sent to Defendants. Yet, they offer no justification for their failure to identify any of these purported notices by Bates number in response to the contested interrogatories. Plaintiffs also offer no valid justification for their other deficient interrogatory responses, which evasively allude to charts that have not yet been produced, or invoke Rule 33(d) without identifying any business records. Plaintiffs' counsel are sophisticated lawyers. They certainly know that such tactics are not permissible.

In sum, Plaintiffs unquestionably have additional documents and information responsive to the discovery requests and MIDP Order which they have not produced. The Court should grant this Motion and order Plaintiffs to produce fully compliant supplemental responses and all responsive documents within 30 days, and impose monetary sanctions against Plaintiffs and their counsel to deter such dilatory tactics going forward.

**II.   ARGUMENT**

**A. Plaintiffs' Contention That Defendants Failed to Meet and Confer Is Wrong**

Plaintiffs accuse Defendants of "grossly exaggerating" the timeline of this dispute and their meet and confer efforts. These accusations lack merit. As the Dahlberg Declaration and attached exhibits demonstrate, Defendants have been attempting to obtain the discovery at issue since April 2021, shortly after Plaintiffs served their initial deficient MIDP productions. Plaintiffs asserted a variety of meritless objections and initiated multiple telephonic discovery conferences with the Court, in a successive, piecemeal fashion.

1    At the August 20 hearing, the Court rejected the very same excuse Plaintiffs make here about needing to further confer about ESI search terms before they could begin their search, reminding Plaintiffs that because they are under the MIDP, ***"this is all really very moot. You're obliged, regardless of the document production requests you get, to search for relevant documents and disclose them . . . and so you better get on those."*** 08/20/2021 Hearing Tr. at 17 (Ex. 7 to Previous Dahlberg Decl.) (Doc. 161-9) (emphasis added).

Defendants expressly warned Plaintiffs on multiple occasions that a motion for sanctions would be coming if they did not comply with their discovery obligations. At the August 20 hearing, after the Court commented, "If you feel like you've got a basis for sanctions or a motion to compel, we can raise that later," Defendants' counsel responded, "We will be bringing it." *Id*. at 19-20. Then, on the next August 27, 2021 meet-and-confer call, Defendants again warned Plaintiffs that if they did not comply with their obligations, a motion would be forthcoming. Defendants agreed, however, to an additional extension of time for Plaintiffs' production because two of Plaintiffs' attorneys were going on vacation.

Plaintiffs then produced additional documents and responses at the end of September, but their productions remained deficient and incomplete. Defendants wrote to Plaintiffs on September 27, asking whether additional documents would be produced, to which Plaintiffs admit they did not respond. *See* Opp. at 3, n2 ("Another response was not needed."). On September 29, Defendants warned Plaintiffs that if they continued to ignore their communications, they would have no choice but to move for sanctions. Ex. 12 to Previous Dahlberg Decl. (Doc. 161-14) at p. 3. Again, Plaintiffs did not substantively respond.

On October 4, Plaintiffs produced 477 additional documents, but these did not address the deficiencies and primarily consisted of non-substantive correspondence related to trademark prosecutions by Plaintiffs' outside law firms (as well as many blank "Withheld For Privilege" placeholder sheets). Previous Dahlberg Decl., ¶ 26. The parties met and conferred about Plaintiffs' failure to adequately respond *yet again* on November 8, 2021. *Id*. at ¶ 31. Contrary to Plaintiffs' suggestion, this conference did not only concern Plaintiffs' discovery issues related to Withheld for Privacy. *See* Doc. 174-2 (11/05/2021 email from

Ms. Dahlberg to Mr. Lauridsen: "On the same call, we would like to address deficiencies in Plaintiffs' responses and document production."). The vague, non-committal "update" Plaintiffs provided on this call did not resolve this dispute.

Plaintiffs also argue that Defendants refused to meet and confer regarding ESI search terms, and therefore attempt to blame their own delay on Defendants, but as noted above, the Court already rejected this excuse at the August 20 hearing. Moreover, the accusation is false. The parties did in fact meet and confer about ESI search terms. *See* Ex. 4 to Previous Dahlberg Decl. (Doc. 161-6) at p. 5; *see also* Ex. 12 (Doc. 161-14) at p. 6 (Defendants proposed that the same search keywords should apply to both sides).

In sum, Plaintiffs' contention that Defendants' counsel did not comply with their meet and confer obligations is unfounded. To the contrary, Defendants have made substantial efforts to resolve this dispute, over many months, but Plaintiffs have responded with dilatory tactics at every turn and have refused to specify a definitive date when they will produce complete, compliant responses.[2]

**B.  Plaintiffs' Excuses for their Delay Are Not Justified**

As "substantial justification" for their delay in producing responsive documents, Plaintiffs assert that the process of identifying custodians and collecting their corresponding data is an "iterative" one. Wong Decl. (Doc. 172), ¶ 4. However, Plaintiffs do not explain why the process of identifying custodians and collecting documents is any more "iterative" in this case than in other litigation in which a party would be expected to timely produce documents, or why such an "iterative process" would take over a year to complete. Instead, Plaintiffs are vague and non-committal.

For instance, Plaintiffs repeatedly reference twenty internal custodial interviews Plaintiffs conducted in order to identify twenty-nine key custodians who possess responsive

---

[2] Finally, the fact that Defendants did not raise this discovery dispute at the November 17, 2021 telephonic discovery hearing on Plaintiffs' own discovery motions does not show that Defendants are acting in bad faith, as Plaintiffs argue. Defendants interpreted the Court's question at that hearing about whether there were any further issues to mean further issues regarding Plaintiffs' own discovery disputes that were the subject of that hearing.

documents and ESI. *Id*. at ¶¶ 3, 4, 5, 7. Yet, Plaintiffs have not indicated *when* they conducted the initial custodial interviews, and, if these interviews were conducted earlier in the case, why the process has taken such a long time, or, if these interviews were conducted later in the case, why Plaintiffs waited so long to begin. Clearly, Plaintiffs lack a "substantial justification" in either scenario.

Moreover, Plaintiffs have not clearly indicated whether the custodial interviews and identification of key custodians are even complete. Mr. Wong's statements that "*[t]o date*, Plaintiffs have interviewed twenty internal custodians . . ." and that "Plaintiffs have identified twenty-nine key custodians *to date* . . ." imply that Plaintiffs may still be contemplating additional internal custodial interviews and/or identifying additional key custodians. *Id*. at ¶¶ 3, 5 (emphasis added). Mr. Wong's statement that the "final set of key custodians is an iterative process and cannot be finalized until all custodian interviews are substantially complete" further suggests that the final set of key custodians has not yet been finalized. *Id*. at. ¶ 4. Again, Plaintiffs offer no explanation for the year-long delay in simply *identifying* individuals who might have relevant documents or ESI, let alone producing their documents.

Plaintiffs also fail to indicate whether any of the key custodians' ESI has even been collected or reviewed at this point. Indeed, to date, Plaintiffs have not produced internal documents from any of the three Plaintiff companies. Nor have Plaintiffs indicated how long the review of documents from "key custodians" is expected to take, or when Plaintiffs' production will be complete. The fact that documents must be collected from "a large number of custodians across numerous departments in a large organization" is not "substantial justification" for Plaintiffs' delay. Large organizations are under the same obligations as anyone else to timely produce documents in discovery. If anything, a large organization has greater resources and sophistication to enable compliance with discovery deadlines.

**C. Plaintiffs Do Not Dispute that Defendants Are Entitled to Obtain Most of the Disputed Discovery at Issue**

Plaintiffs state that "only a fraction" of the RFPs, Interrogatories, and MIDP Requests are truly at issue. Opp. at 9, 12. The Court should compel Plaintiffs to produce all of the

uncontested items without further delay. For the few requests for which Plaintiffs have asserted objections, the objections should be overruled.

1. *Plaintiffs Must Produce Additional Responses to the RFPs*

**RFP 1 & 2:** These RFPs seek communications about the disputed domains, including any notices of "reasonable evidence of actionable harm" that Plaintiffs contend were provided to Defendants. In their Separate Statement, Defendants noted Plaintiffs' responses were ambiguous as to whether any documents existed and failed to specify when the production will be completed, as required by Rule 34 as well as the ESI Order. Sep. Statement (Doc. 161-1) at 2, 4. Plaintiffs do not dispute that Defendants are entitled to the documents, and contend that some responsive documents have been produced.[3] Plaintiffs should produce all (not just some) responsive documents within 30 days.

**RFP 3:** This RFP seeks communications with third parties concerning Defendants and the domains. The only disputed portion is Plaintiffs' communications with their own registrar regarding their own past ownership of some of the domains. *See* Opp. at 9. Plaintiffs do not dispute that they must produce other responsive communications. As to the registrar communications, Plaintiffs' objection lacks merit because all documents and ESI related to the disputed domains are within the scope of the MIDP Order, regardless of whether they are within the scope of this particular RFP.

**RFPs 4-5:** These RFPs seek documents evidencing Plaintiffs' allegation that Defendants acted with a bad faith intent to profit and evidence of the alleged trademark infringement. As with RFPs 1 and 2, Plaintiffs do not dispute these items are discoverable.

---

[3] The sole purported notice they cite, FB_NAME_00031078-79, is addressed to a customer's masked WhoisGuard email address and states that the domain name ads-faceobook.com infringes and dilutes the Facebook trademark. This email is not a communication to Defendants. Nor does it contain any allegations regarding phishing or any other specific wrongful use of the domain. Plaintiffs assert that FB_NAME_00031080-91 are "contemporaneously captured screenshots" for a phishing website at that domain, but these screenshots were not ever provided to Defendants prior to the lawsuit. In addition, other screenshots produced by Plaintiffs show that this customers' account was already suspended as of March 2020 (FB_NAME_00031092), many months before Plaintiffs first complained about this domain to Defendants on December 16, 2020.

**RFP 6:** This RFP seeks documents relevant to laches. Plaintiffs agreed to produce a chart in response to these requests. They must produce the chart without further delays. Plaintiffs also asserted privilege objections, but did not respond to Defendants' arguments as to why the underlying facts would not be privileged. *See* Sep. Statement at 12.

**RFP 7:** This RFP seeks documents evidencing any complaints of confusion caused by the alleged infringement. Plaintiffs contend it would be unduly burdensome to search for all documents, but they must produce all responsive documents they intend to rely upon at trial (to date, they have produced none). If none exist, they should say so in their response.

**RFP 8-10:** These RFPs seek evidence of Plaintiffs' allegations of diversion, dilution, or other harm. Plaintiffs do not dispute that these documents must be produced.

**RFP 11**: This RFP seeks coexistence and consent agreements related to the FB Mark. Contrary to Plaintiffs' arguments, such agreements would have bearing on the scope of Plaintiffs' rights in the purported mark, their use of the mark, and legitimate use of the mark by third parties. Defendants cited *Healthier Choice Flooring, LLC v. CCA Global Partners, Inc.*, Case No. 1:11-CV-2504-CAP, 2013 WL 12101905, *7 (N.D. Ga. Jan. 4, 2013) for the proposition that such agreements are discoverable in trademark actions. *See* Sep. Statement at 23. Contrary to Plaintiffs' assertion, the parties discussed this RFP in the July meet-and-confer conferences. *See* Ex. 4 to Previous Dahlberg Decl. (Doc. 161-6) at p. 8.

**RFP 12**: This request seeks documents related to complaints of abuse and infringement on Plaintiffs' own platforms, which are relevant to Defendants' unclean hands defense. Plaintiffs previously agreed to produce a sample of responsive documents as a compromise. *See* Sep. Statement at 25. Now, they refuse to produce any documents at all. The Court should compel Plaintiffs to produce a representative sample of documents showing the complaints they receive within each category of abuse of which they accuse Defendants in the lawsuit, and Plaintiffs' responses thereto.

**RFP 13-14**: These requests seek documents related to investigations or complaints against Plaintiffs for violations of the GDPR or other privacy laws, which are relevant to Defendants' defense that any hesitancy in disclosing customer data to Plaintiffs was justified

because Plaintiffs do not comply with the GDPR or other privacy laws. The documents are limited in scope and time period and, contrary to Plaintiffs' arguments, are relevant to the issues of consumer privacy implicated in the case.

**RFPs 15-16:** These requests seek documents related to Plaintiffs' efforts to lobby ICANN to alter its WHOIS policy, which are relevant to Plaintiffs' motives in bringing this lawsuit. This is one in a series of similar lawsuits Facebook has filed against domain name registrars. Facebook has publicly announced to registrars at an ICANN forum that it will continue filing such lawsuits until ICANN changes its rules for Whois data disclosure. Sep. Statement at 32. The documents bear on issues relevant to an award of attorneys' fees under the Lanham Act, such as whether this is a frivolous claim brought to obtain an advantage outside of the litigation.

**RFP 17**: This request seeks documents sufficient to set forth Plaintiffs' policies and procedures for handling the consumer data Defendants have disclosed. The documents are relevant to whether Defendants' hesitancy in disclosing customer data to Plaintiffs was justified because Plaintiffs are notorious for failing to maintain the security of such data, as well as to testing the veracity of Plaintiffs' own representations of the purposes for which they use such data. Plaintiffs have asserted privilege objections, but policies and procedures for handling customer data would not be privileged information. *See* Sep. Statement at 34.

**RFP 18-25:** These requests seek documents related to Defendants' counterclaim to cancel the FB registrations. Plaintiffs do not dispute that Defendants are entitled to obtain these documents. They state they have produced some documents, but notably missing is any evidence of the "product or service research" or "market research" activities which Facebook represented were ongoing in their submissions to the USPTO, or any concrete evidence of Facebook's purported "bona fide intent" to use FB in commerce at the time of the submissions at issue (not just recent exemplars of use). If any such documentary evidence exists, it is highly relevant to Defendants' cancellation claims and must be produced. *See M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1377 (Fed. Cir. 2015). The underlying facts regarding any such plans or activities would not be privileged.

### 2. *Plaintiffs Must Supplement Their Interrogatory Responses*

**Rog 1 and MIDP Request 4**: This request asks Plaintiffs to list the disputed domain names. Plaintiffs improperly answered by referencing lists provided in their past letters, but Plaintiffs' letters have made the claims into a moving target with the same domains added, removed, and later added back into the case. *See* Sep. Statement at 52. Contrary to Plaintiffs' assertion, the parties met and conferred on this issue. *See* Ex. 12 to Previous Dahlberg Decl. (Doc. 161-3) at 2; *see also* Not. of Filing of Supp. Registrar's Cert. (Doc. 135) at 1. Plaintiffs state that they can easily amend their response to list the domains. They should do so.

**Rogs 2, 7, 14-15 & 19:** Plaintiffs agreed to provide the requested information in chart form, but they have not produced the charts. They now contend they "cannot finalize their chart at this time" because the task is complex, but it was Plaintiffs' own choice to sue Defendants on 1,241 domain names. Defendants need the information to defend themselves. Plaintiffs also assert that they were never requested to provide the information currently available to them and supplement new information as it becomes known, but this is exactly what they are obligated to do under the MIDP Order and Rule 26(e).

**Rog 5, 12-13, and 17-18:** For these interrogatories, Plaintiffs answered by invoking Rule 33(d), but they have not identified any business records in their answers as required by Rule 33(d). Plaintiffs vaguely assert that it was "understood" that document collection efforts were ongoing, and that Plaintiffs would supplement these responses at some unspecified point in the future, but Defendants never agreed to any such understanding (which would be contrary to the MIDP Order and Rule 33). Plaintiffs must produce the responsive information now, not at the close of discovery. In particular, for Interrogatories 17-18, which seek information regarding the alleged infringement, Plaintiffs must disclose all of the responsive information on which they intend to rely upon at trial.

**Rog 6:** This interrogatory requests information about the due diligence Plaintiffs conducted before sending notices to WhoisGuard. It originally contained a numbering error, which Defendants clarified during the July conferences. *See* Sep. Statement at 55, n3. Plaintiffs' refusal to answer on this basis is not in good faith, as they clearly understand that

it refers to the communications identified in Interrogatory 5. Plaintiffs do not respond to Defendants' arguments as to why Plaintiffs' privilege objections lack merit, given that this interrogatory seeks underlying facts. *Id*. at 56. Plaintiffs' objections should be overruled.

**Rogs 10-11 and 20-22 and MIDP Request 5:** These requests seek information about damages and methods of calculating them. Plaintiffs do not deny that their responses are deficient, but argue that they need a full record and "complete discovery" from Defendants to fully respond. However, the MIDP Order expressly states that "[a] party is not excused from providing its response because it has not fully investigated the case, it challenges the sufficiency of another party's response, or another party has not provided a response." MIDP Order (Doc. 7) at 4. Moreover, contrary to Plaintiffs' assertion, Defendants have produced financial data for the disputed domains (*e.g.*, NC_002462). Plaintiffs should provide a computation and amount for each category of damages they are seeking.

**Rog 23:** This interrogatory seeks the factual basis for Plaintiffs' allegation that this is an "exceptional case" entitling them to attorneys' fees. Plaintiffs argue that they cannot fully respond until the end of discovery, but state that they have responded with nearly a full page of facts. Plaintiffs must provide a full response with *all* facts currently known to them.

**Rogs 24-25:** These interrogatories seek the identity of the persons to whom Plaintiffs have disclosed the customer data provided by Defendants, and locations of the data. Plaintiffs object based on relevance, but that the information is relevant to testing Plaintiffs' assertions that they had a legitimate purpose under the GDPR for requesting and using the customer data, among other reasons. *See* Sep. Statement at 80. Also, contrary to Plaintiffs' argument, the Court did not rule that the customer data is a topic outside the scope of discovery. *See* Doc. 117 at 2-3 (ruling only that Licensee Information provided prior to the March 31 entry of the protective order was not subject to its terms). Finally, the identity of persons and locations of data are not privileged simply because they "implicate" enforcement efforts, as Plaintiffs contend. The underlying facts are not privileged.

### D. Monetary Sanctions Are Appropriate

If a party fails to comply with their discovery obligations "the court *must* order the

disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); MIDP Order at 4. A discovery dispute that has been presented to the court under the MIDP procedures is in substance a motion to compel. *See Brown v. City of Glendale*, 2019 WL 3412585, at *3 (D. Ariz. July 29, 2019). Thus, a party's failure to comply with a court's order to produce documents and/or the MIDP warrants sanctions under Rule 37(b)(2) unless (1) the failure to comply with the order was substantially justified; or (2) if "other circumstances make an award of expenses unjust."

Here, Defendants raised these discovery disputes with the Court under the MIDP Order. Indeed, at the hearing on August 20, the Court reiterated to Plaintiffs that they were under an obligation to comply with the MIDP Order. Thus, Plaintiffs' failure to produce documents responsive to Defendants' requests amounts to a failure to comply with the MIDP Order and calls for monetary sanctions.

Neither of the exceptions to the mandatory sanctions provided by Rule 37(b) applies here. As discussed *supra*, Plaintiffs have not offered any "substantial justification" for their delay in producing documents or providing meaningful responses to Defendants' interrogatories. Plaintiffs have not explained why the "iterative" process of identifying key custodians and producing relevant documents would justify Plaintiffs' failure to produce documents for many months after the MIDP-imposed deadline. And Plaintiffs have identified no other circumstances that would make an award of expenses unjust. Defendants have expended considerable time and resources trying to get Plaintiffs to produce even the most basic documents and information in support of their claims, and Defendants are entitled to recover their reasonable attorneys' fees incurred in this pursuit.

### III.  CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs to produce all of the contested discovery within 30 days and impose monetary sanctions in the amount of $11,025.

[SIGNATURES ON FOLLOWING PAGE]

Dated: December 17, 2021        **ROME & ASSOCIATES, A.P.C.**

By: _s/ Brianna Dahlberg_
    Eugene Rome
    Sridavi Ganesan
    Brianna Dahlberg

And

**FENNEMORE CRAIG, P.C.**

Ray K. Harris
Mario C. Vasta

Attorneys for Defendants and Counterclaimants Namecheap, Inc. and WhoisGuard, Inc.