SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Meta Platforms, Inc. (fka Facebook, Inc.),
Instagram, LLC, and WhatsApp LLC

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Meta Platforms, Inc., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Namecheap, Inc., et al.,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. CV-20-470-PHX-GMS<br><br>**PLAINTIFFS' REPLY BRIEF CONCERNING NAMECHEAP'S ASSERTION OF PRIVILEGE WITH RESPECT TO REQUEST FOR PRODUCTION NOS. 1-2 [158]** |

## I. INTRODUCTION

Defendant Namecheap, Inc. ("Namecheap") has not shown that its refusal to produce Withheld for Privacy ehf ("WFP") documents is justified. Defendants spend the vast majority of their brief telling a story how Plaintiffs supposedly jumped the gun in bringing this dispute, and dedicate only two pages to arguing their legal position. *See generally* ECF No. 174. This lack of argument on the merits of this dispute is telling. In reality, none of Defendants' arguments concerning volume, relevance, or sufficiency of their privilege claims obviates the need to test Defendants' privilege claims. These privilege claims are plainly being used to shield discoverable information concerning Defendants' relationship with WFP. Plaintiffs' motion should therefore be granted, and Defendants should be ordered to produce these allegedly privileged documents to the Court for *in camera* inspection.

## II. THE REQUEST FOR *IN CAMERA* INSPECTION IS PROPER.

### A. Plaintiffs have shown a factual basis sufficient to support a reasonable, good faith belief concerning non-privileged information.

"To empower the district court to review the disputed materials *in camera*, the party opposing the privilege **need only show** a factual basis **sufficient to support a reasonable, good faith belief** that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992) (emphasis added). This "minimal threshold" does not require a prima facie showing that the information is not privileged. *Id.*

The requesting party must also show more than a "hunch" that privileged communications may contain additional facts subject to disclosure. *Nyerges v. Hillstone Rest. Grp. Inc.*, No. CV-19-02376-PHX-DWL, 2020 WL 5846606, at *1 (D. Ariz. Oct. 1, 2020), *reconsideration denied*, 2021 WL 4503796 (D. Ariz. Oct. 1, 2021). For example in *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2019 WL 1178635, *4 (E.D. Cal. 2019), the defendant did not meet the minimal threshold for *in camera* review of redacted material where it argued that most of the redacted information was not privileged because the

redactions appeared to be "heavy handed." In *Dolby Lab'ys Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 864 (N.D. Cal. 2019), on the other hand, the plaintiff more than met the minimal threshold after it offered examples of the defendant's privilege log descriptions that appeared inadequate and generic, and therefore insufficient to allow the Plaintiff to analyze the Defendant's claim of privilege. *Id.*

In particular, the court in *Adobe* found the plaintiff "more than met the minimum threshold" where the subject lines on the defendant's privilege log appeared to reference business-related communications and where the privilege log contained generic descriptions insufficient to allow the plaintiff to evaluate the claim of privilege. 402 F. Supp. 3d at 864-65. Finally, the defendant reduced the number of entries on its log several times, thus indicating that it was potentially over designating documents as being privileged. *Id.* at 864 & n.4.

As in *Adobe*, Defendants' privilege log is rife with email subject lines that reflect business-related communications as opposed to the transmission of legal advice. These include subject lines such as "Country Review"; "Re: URGENT Touching base re: change to Privacy service"; "WithHeldForPrivacy Docs"; "Iceland LLC";[1] and "Privacy Service." ECF No. 174-3 at 2-4. Moreover, Defendants' privilege log contains numerous generic descriptions that do not allow the reader to evaluate any of the privilege claims, such as "Communication with Legal Department regarding change to privacy service," which is the closest entry to a substantive privilege description and which is repeated sixty-seven times, leaving sixty-two entries that are blank and six entries containing descriptions like "Attorney-client communication regarding Joint Defense Agreement."[2] *Id.* at 9. Accordingly, these entries point toward *in camera* review.

---

[1] The subject line "Iceland LLC" provides a prime example as to why these documents are relevant and likely not privileged. Namecheap's counsel, Eugene Rome, is communicating with Namecheap about an LLC that is supposed to be an arms-length unrelated company. But advice concerning establishing WFP would not be privileged as to Namecheap.

[2] Defendants also cite no authority for the proposition that a joint defense agreement or a common interest agreement provides any additional privilege or can otherwise shield business communications. Simply put, it cannot.

**B.     The pertinent factors favor *in camera* review.**

"If the party makes such a [sufficient factual] showing, the decision whether to conduct the review rests within the discretion of the district court." *In re Grand Jury Investigation*, 974 F.2d at 1075. "The court's discretion, however, is guided by the factors enumerated in *Zolin*." *Id.* (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). These factors include (1) the volume of materials the district court has been asked to review; (2) the relative importance to the case of the alleged privileged information; and (3) the likelihood that the evidence produced through *in camera* review, together with the other available evidence then before the court, will establish the privilege does not apply or that an exception to the privilege applies. *See id.*

Defendants submit their privilege log as evidence that the *Zolin* factors do not favor *in camera* review. But courts examining similar privilege logs have exercised their discretion to conduct an *in camera* review. *See, e.g.*, *Adobe*, 402 F. Supp. 3d at 864-66.

**1.     The volume of documents does not point away from review.**

***First,*** Defendants assert that the "over 130 documents" on their privilege log lean against *in camera* review (ECF No. 174 at 8), but the court in *Adobe* ordered *in camera* review for a privilege log containing over 4,000 entries. 402 F. Supp. 3d at 864 & n.4. In particular, "upon review of the entries, the court determined that there was adequate basis to support a limited *in camera* review to enlighten the court about the issues underlying the discovery dispute." *Id.* at 865. The court therefore ordered the challenging party to select fifteen sample documents on the privilege log to be lodged with the court for review. *Id.*

**2.     The information on the log is highly relevant.**

***Second,*** for relevance, Defendants argue "the material concerning Namecheap's change in privacy services bears minimal, if any, relevance to the issues in this cybersquatting case . . . ." ECF No. 174 at 8. But this is not true. Leaving aside that Defendants' attorney already stated in open court that he understood the purpose of this information and that his client would provide it (*id.* at 2-3), these documents bear directly on whether WFP is an alter ego of Namecheap, just as Plaintiffs suspect to be the case.

3

WFP was purchased by Sergio Hernandez in February 2021. Mr. Hernandez is a former Namecheap employee and the stepfather of Richard Kirkendall, the CEO of Namecheap. Mr. Hernandez is also a director of WFP. In addition, Mr. Kirkendall's mother, Irma Gomez Hernandez, is a director and the Deputy Chairman of the Board of WFP. These allegedly privileged communications go to the very heart of this issue, and this factor therefore favors *in camera* inspection.

### 3. Defendants have failed to support their privilege claims.

***Third,*** without citation to any authority, Defendants advance the bare argument "as to the third factor, the privilege log produced by Namecheap demonstrates that an *in camera* review is unlikely to reveal that the documents are not privileged." ECF No. 174 at 8. But these very entries are of the type the court in *Adobe* found to more than meet the threshold required for *in camera* review. 402 F. Supp. 3d at 864-65 & n.4. Defendants' privilege log therefore does not tilt this factor in their favor. To the contrary, Defendants have produced a dearth of documents related to WFP. ECF No. 169 at 1; ECF No. 167.01 ¶ 3. While Defendants have promised to search for numerous categories of documents, there is no guarantee that any such documents exist. *Id.* This lack of evidence combined with the dubious entries on Defendants' privilege log points toward *in camera* review.

Further, Defendants have not through their privilege log met their burden of showing that the WFP materials are privileged. For instance, Defendants have submitted no substantive declarations to support their privilege claims despite the fact that even "[a] cursory review of the case law demonstrates that attorney declarations generally are necessary to support the designating party's position in a dispute about attorney-client privilege." *Adobe Inc.*, 402 F. Supp. 3d at 865–66 (citing *Datel Holdings Ltd. v. Microsoft Corp.*, No. 09-cv-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011) (holding that attorney-client privilege did not protect communications between employees where there was "no showing that the results of the investigation were ever conveyed to counsel"); *Oracle Am., Inc. v. Google, Inc.*, No. 10-cv-03561-WHA (DMR), 2011 WL 3794892, at *3 (N.D. Cal. Aug. 26, 2011) (finding an attorney's affidavit insufficient to establish

privilege where the attorney did not testify that the document was "connected to the work he requested . . . as part of the provision of legal advice he describes in his declaration.")). This lack of attorney declaration renders the entries on Defendants' privilege log especially suspect. Given the subject matters listed on the privilege log, Defendants have not met their burden to support their privilege claims.

Further, Defendants do not address Plaintiffs' arguments about the substantial need for Plaintiffs to review the allegedly work-product materials concerning Namecheap's alleged due diligence. ECF No. 167 at 6-7. Unlike the attorney-client privilege, the work product doctrine may be overcome by a party's showing of "need and undue hardship." *In re Seagate Tech.*, LLC, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citing Fed. R. Civ. P. 26(b)(3)). The degree of showing required, however, depends on whether the sought-after material "is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not." *Id.* (citations omitted). Factual materials simply require a demonstration of "substantial need and undue hardship," while materials reflecting mental processes receive greater, "nearly absolute" protection. *Id.* (citations omitted).

According to Defendants, they possess no due diligence documents that are not privileged. ECF No. 174 at 4. Based on this assertion, Plaintiffs have argued that there is a substantial need to review Defendants' allegedly privileged documents because they are the only source for the factual information contained therein. Defendants have proffered no arguments or evidence concerning other means by which Plaintiffs can acquire this factual information, thus indicating *in camera* review would be appropriate.

Defendants have not sufficiently supported their privilege claims, facts which point to the Court conducting an *in camera* inspection of the allegedly privileged documents.

*   *   *

Because all three *Zilon* factors weigh in favor of *in camera* review, Plaintiffs respectfully request that the Court order a review of the documents listed on Defendants' privilege log.

5

### C. Defendants' remaining arguments have not obviated this dispute.

As Plaintiffs explained in their opening papers, following a telephonic discovery hearing on the matter, Namecheap produced on November 25, 2021, fifteen additional documents, including some documents concerning WFP's incorporation, an office service agreement, proof of payment for services rendered for September to November 2021, and some recent email threads from November 9 and 19, 2021. ECF No. 169 at 1 & n.1. It is facially apparent that these documents should have been produced initially and were not the subject of any proper privilege claim. *Id.* That these documents were initially withheld underscores the need for the Court's adjudication of Namecheap's privilege claims. *Id.*

Defendants dedicate little of their brief to the merits of the issues before the Court, and instead tell a story as to how Plaintiffs have manufactured this dispute to distract from their own purported discovery deficiencies. *See generally* ECF No. 174 at 1-6 & n.2. This narrative is primarily a distraction, though Plaintiffs must address a few inaccuracies. First, while Defendants did offer to provide a privilege log, they did not do so in a way that would have obviated this dispute. Defendants requested that Plaintiffs agree to withdraw this dispute if Defendants agreed to furnish a privilege log at some unspecified time in the future after Plaintiffs' court-ordered briefing deadline had passed. Lauridsen Decl. ¶ 2. Plaintiffs could not agree upfront[3] in a vacuum that Defendants furnishing a privilege log would obviate this dispute, and as the vague entries on the log filed by Defendants has shown, these concerns were well founded.

Next, Defendants assert that they have not withheld documents and that Plaintiffs propounded new requests for production on November 11, 2021. ECF No. 174 at 4-6 & n.5. Again, this is false. Plaintiffs provided on November 11 a list of the types of documents they would expect to be responsive to the requests for production they

---

[3] Defendants assert that Plaintiffs stated they would get back to them and then never provided the courtesy of a response. ECF No. 174 at 1, n.2. This is false. Plaintiffs' counsel, as they have done many times over, provided Defendants with their position but also stated they would get back to Defendants if further conversations with their clients changed their position at all. Lauridsen Decl. ¶ 5. This is not the same as promising to get back to someone and then failing to do so.

6

propounded over a month prior. Plaintiffs provided this same list of documents to Defendants during the parties' November 8 meet-and-confer call that took place before the parties contacted the Court. These documents are thus long overdue.

Further, while Defendants assert they have since produced some responsive documents, this production remains woefully incomplete. For instance, Defendants produced proof of payment from Namecheap to WFP for the last several months, but they have not provided proof of payment since the relationship began, which would be probative as to whether there truly is an arms-length relationship between the companies. Lauridsen Decl. ¶ 3. Defendants have not supplemented this production since then. *Id.* ¶ 4. As a result, the few documents produced by Namecheap to date do nothing to shed light on whether WFP is an alter ego of Namecheap, rendering *in camera* review necessary. The Court should therefore grant Plaintiffs' motion.

### III.   CONCLUSION

None of Defendants' arguments obviate the need to test their privilege claims. Plaintiffs therefore respectfully request that their motion be granted and that Defendants be ordered to produce their allegedly privileged WFP documents for *in camera* inspection.

| | |
|---|---|
| DATED: December 22, 2021 | SNELL & WILMER L.L.P. |

                                                By: /s/ *Jacob C. Jones*
David G. Barker
Jacob C. Jones
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

TUCKER ELLIS LLP
David J. Steele
Howard A. Kroll
Steven E. Lauridsen
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223

Attorneys for Plaintiffs,
Meta Platforms, Inc. (fka Facebook, Inc.),
Instagram, LLC, and WhatsApp LLC