SNELL & WILMER L.L.P.
David G. Barker (#024657)
dbarker@swlaw.com
Jacob C. Jones (#029971)
jcjones@swlaw.com
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070

TUCKER ELLIS LLP
David J. Steele (*pro hac vice*)
david.steele@tuckerellis.com
Howard A. Kroll (*pro hac vice*)
howard.kroll@tuckerellis.com
Steven E. Lauridsen (*pro hac vice*)
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: (213) 430-3400
Facsimile: (213) 430-3409

Attorneys for Plaintiffs,
Meta Platforms, Inc. (fka Facebook, Inc.),
Instagram, LLC, and WhatsApp LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Meta Platforms, Inc., et al., <br><br> Plaintiffs, <br><br> v. <br><br> Namecheap, Inc., et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Case No. CV-20-470-PHX-GMS <br><br> **PLAINTIFFS' [PROPOSED] SUR-REPLY TO DEFENDANTS' REPLY IN SUPPORT OF BRIEF RE: PLAINTIFFS' REQUESTS FOR ADDITIONAL DOMAIN NAME DATA AND PAYMENT INFORMATION** <br> **(DOC. 178)** |

Defendants' Reply in Support of Brief re: Plaintiffs' Requests for Additional Domain Name Data and Payment Information (Doc. 178) inaccurately asserts that the information Plaintiffs seek regarding customer accounts associated with infringing domain names (including other domain names associated with those customer accounts, customer payment information, customer contact information, and infringement notices and complaints) is not relevant to this lawsuit because the "other domain names registered *by the customers* bears [*sic*] no possible relevance to proving **Defendants'** bad faith." (Doc. 178 at 1:27–28 (emphasis in original).)

Defendants falsely assert that Plaintiffs have not alleged that Defendants *themselves* registered domain names (as the registrant) when providing the WhoisGuard proxy service (FAC (Doc. 56) ¶¶ 13, 17–18) and hosting certain revenue-generating parking pages (*id.* ¶¶ 15–16, 110–16). Defendants also ignore that, under the Namecheap Registration Agreement's incorporation of RAA § 3.7.7.3 (FAC ¶¶ 21–24, 78–91, 119–25), Whoisguard agreed to accept liability for harm when it failed to disclose the identity and current contact information of Licensees within seven days of being provided reasonable evidence of actionable harm. Moreover, Defendants ignore the Court's own recognition of these allegations and legal theories. (*See* Order (Doc. 52) at 1:27–2:1 ("In its proxy service, WhoisGuard registers Namecheap's customers' domain names in WhoisGuard's name and licenses the domain names back to the customers."); 5:7–8 ("Once a Namecheap customer elects to use WhoisGuard's proxy service, WhoisGuard becomes the domain name registrar for that customer's domain."); 6:14–15 ("Plaintiffs allege that WhoisGuard is the WHOIS registrant for the Infringing Domain Names."); 7:21–24 (". . . the Registration Agreement plausibly incorporates Section 3.7.7.3 and WhoisGuard plausibly made itself liable pursuant to the section for the infringements of the Domain Name Licensees when it failed to disclose the identity of the Infringing Domain Name Licensees.").

Defendants advance these intentionally misleading arguments to suggest the *BelgiumDomains* and *Transamerica* cases are "distinguishable because they involved registrars who were *themselves* alleged to have selected and owned the infringing domain

names at issue. By contrast, here there are not allegations that Defendants selected or owned any of the disputed domain names." (Doc. 178 at 2:9–16 (internal citations omitted); *see also id.* at 3:20–21 (referencing "domains not at issue in this litigation that are registered by those customers").) But, as Defendants are well aware, Plaintiffs *have* alleged with factual support—as the Court has recognized—that Namecheap and Whoisguard ***did themselves register and own*** Infringing Domain Names. (FAC ¶¶ 13, 15–18, 110–16, Ex. 8 (Doc. 56–2 at 197) (Namecheap website on benefits of WHOIS protection, explaining the "only potential drawback of domain privacy comes down to ownership. Technically the domain name registrant owns the website (in the eyes of ICANN), not you. In most cases, this will never be an issue because it's unlikely that your registrar is going to steal your domain."); Doc. 52 at 1:27–2:1, 5:7–8.) Indeed, Exhibit 8 to the FAC demonstrates that prior to this lawsuit, Defendants readily admitted that they—not their customers—owned domain names utilizing the WhoisGuard service. (*Id.*)

Thus, contrary to Defendants' arguments that these cases are distinguishable and this evidence is irrelevant, domain name registrant and ownership status evidence is directly relevant to Defendants' liability. Defendants' own status as a registrant goes to their own bad faith, and because Defendants have agreed to accept liability for the harm caused by the Infringing Domain Names under the terms of the Namecheap Registration Agreement, the bad faith of customers who registered multiple domain names that infringed on others' trademarks (and Defendants' knowledge thereof) is relevant to Defendants' liability under the Anticybersquatting Consumer Protection Act. The requested customer information, therefore, is clearly discoverable and should be produced.

Defendants now attempt to circumvent the consequences of their registering and owning domain names used to cause harm by arguing they did not "select and own" the domain names (Doc. 178 at 4:5–6, 14–16), but this sophistry attempts to shield Defendants' ***registrant*** activities by virtue of the fact that Namecheap is also a registrar. *See Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1105 (C.D. Cal. 2009) ("Nothing in *Lockheed Martin II*, however, suggests that a registrar is immune under the ACPA when it

2

acts other than as a registrar. Indeed, to the extent that NameCheap was the registrant of the domain name and 'used' the name, this section would support the imposition of liability on it, not a grant of immunity to it.").

      Defendants seek to misdirect the Court as to the role they play in registering (as the registrant) Infringing Domain Names in order to conceal evidence of the extent of their customers' and their own cybersquatting. Plaintiffs respectfully request that the Court grant their motion to compel.

DATED: January 12, 2022        SNELL & WILMER L.L.P.

By: /s/ David G. Barker
David G. Barker
Jacob C. Jones
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

TUCKER ELLIS LLP
David J. Steele
Howard A. Kroll
Steven E. Lauridsen
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223

Attorneys for Plaintiffs,
Meta Platforms, Inc. (fka Facebook, Inc.),
Instagram, LLC, and WhatsApp LLC